# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CANDI McCULLOCH | : | CIVIL ACTION NO. |
| | | 301CV1115(AHN) |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| HARTFORD LIFE AND ACCIDENT | : | |
| INSURANCE COMPANY, and EDUCATORS | : | |
| MUTUAL LIFE INSURANCE COMPANY | : | |
| Defendants. | : | October 31, 2003 |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR DEFAULT

### INTRODUCTION

For the past two years, defendant Hartford Life and Accident Company ("Hartford") has waged an unrelenting war of attrition against plaintiff in this action. Defendant has consistently required plaintiff to obtain court orders before it would produce documents or provide substantive responses to discovery requests. Defendant has failed to comply with these court orders in a timely fashion, and has failed to produce responsive documents that were subject to the court orders until after their disclosure during depositions and after the depositions of key employees. Not only should Defendant should have produced many of these documents in response to plaintiff's previous Notice of Deposition Duces Tecum, with which the court had ordered defendant to comply. Hartford Life has now refused to produce a single document requested in plaintiff's Notice of Deposition Duces Tecum of Hartford's Record Keeper *and has refused to discuss any compromise of this position*. This court should enter a default against Hartford as a sanction for its bad faith conduct.

## STATEMENT OF FACTS

In addition to the history set forth in the ruling of this Court on November, 2002, and our plaintiff's pending Motion to Compel regarding expense reports, dated August 20, 2003, and incorporated by reference herein, Hartford has engaged in numerous other instances of discovery misconduct, including, *but not limited to*, the following :

### A.     FAILURE AND REFUSAL TO PRODUCE WITNESS AND DOCUMENTS RELATED TO ACTUARIAL REVIEW OF EDUCATOR'S CLAIMS

- On May 24, 2003, plaintiff served a notice of deposition duces tecum to Hartford's corporate representative(s). The notice of deposition sought the defendant to produce an individual or individuals competent to testify regarding, among other things. due diligence review and actuarial review and claim review of the Educators Mutual files which were subject to the bid submitted by the Hartford prior to entering into the so-called "Reinsurance Agreement,"[1] as well as the any current claim review and current actuarial review of the transferred claims since November, 2000, and the relationship with Educators Mutual and the preparation of the bid to enter into the "Reinsurance Agreement." The Notice also required the corporate representative(s) to bring with them, among other things, any documents relating to any of the topics, such as, but not limited to, claims due diligence reports, actuarial reports, current claim review and current actuarial

---

[1]     Plaintiff was insured through defendant Educators Mutual Insurance Company ("Educators"), which had accepted her claim for disability. On or about July 1999, Educators and Hartford entered a "Reinsurance Agreement" wherein Educators transferred the reserves associated with its disability claims, including plaintiff's claim, to Hartford in return for Hartford's assumption of responsibility for those claims. Hartford subsequently terminated plaintiff's disability payments and retained the reserves associated with plaintiff's claim.

2

review. (Id.)

•     Hartford refused to comply with plaintiff's Notice. Following argument on June 27, 2003 the Court ordered Hartford to comply. Accordingly, plaintiff re-noticed the deposition, seeking the same due diligence, actuarial, and claims review information that was the subject of Hartford's first objection and the court's order.[2]

•     Purportedly in response, Hartford produced Pamela Mormino, who testified that she was not involved in the due diligence review or the actuarial review of the claims. (Exhibit A - Mormino Trans. pp.8-10, 66-72, 86-88, 109-110, 130-131, 137:18-21; 223-226.)[3] Indeed, Ms. Mormino was not involved at all in the Educator's "buy out". (Id., p.86.)

•     Ms. Mormino did not produce any actuarial records, as required by the notice and the court order. (Id., p.226.) However, Ms. Mormino disclosed the existence of specific claims and actuarial records that should have been produced, including, reserve reports, DLR "open liability records," "true up" records, Quarterly Reserve Reports, and various calculations relating to reserves in the Educators "block of business," about which Ms. Mormino was not qualified to

---

[2]As noted in plaintiff's pending motion, and in argument before the court on June 27th, 2003 , plaintiff also sought to avoid having to conduct several depositions by seeking to depose a corporate representative most knowledgeable with the decision to terminate the claim of the plaintiff. Defendant argued there was no one and this representation was accepted by the court. However according to the head of the department, Mormino, there was an individual who was in charge of the claim file and should have been so designated to act on behalf of the defendant.

[3] Defendant has sought a protective order to prevent plaintiff from taking the deposition of the individual who did conduct the due diligence review. Ms. Mormino informed plaintiff's counsel that the individual who conducted the actuarial review left the company between four and six months ago. (Id., at 226.) Thus, this individual would have been available for deposition as an agent of Hartford at the time of plaintiff's original notice.

testify. (Id., pp.19, 25, 39-41, 45, 47-49, 66-71, 104-105, 223-226.)

•    On August 8, 2003,  plaintiff noticed the deposition of Hartford's Record Keeper and, again, requested production of the actuarial records that defendant should have produced in response to the first and amended notices of deposition and the court's order.   Notwithstanding the previous court orders, defendant has, once again, refused to produce the records.  (Exhibit1 - Objection dated October 1, 2003), and has refused to discuss and compromise from this refusal.

### B.    FAILURE AND REFUSAL TO DISCLOSE CORRESPONDENCE WITH EDUCATORS

In November 2001, plaintiff requested that defendant identify and produce all documents that describe the relationship between Hartford and Educators, with a corresponding request for production of those documents.  See Interrogatory 21, Request for Production 25. The Court ordered defendant to produce responsive documents because "whether plaintiff is preparing her evidence, preparing her proposed jury charges, or responding to a motion to dismiss or motion for summary judgment, plaintiff is entitled to understand the nature of the relationship between Hartford and Educators in the handling of plaintiff's claim."  Order, p.5 & n.7.  After two months later, and a few several attempts to comply with the order,  Hartford finally identified and produced a single multi page document - a "reinsurance agreement" between Hartford and Educators.  (Court Order, pp.5-6; Defendant's Better Answers to Interrogatories, No. 21.)  Hartford now refuses to produce any other documentation exchanged between Hartford and Educators, asserting, among other things, a relevance objection that this court previously rejected, and a "joint defense privilege" that it had not previously raised. Objection to Deposition Duces Tecum, ¶ 9.

4

**B.    FAILURE AND REFUSAL TO PRODUCE DOCUMENTS RELATED TO PERFORMANCE OF CLAIMS HANDLING DEPARTMENT**

In the May 24, 2003 notice of deposition duces tecum, plaintiff also requested that defendant produce documents related to "any financial incentives or bonuses provided to individuals employed by the BMS division of the defendant between 1999 and 2002, and the basis for such an award." and the "performance of claims handling department and tracking performance." Notwithstanding that defendant did not object to this request prior to the deposition, Ms. Mormino failed to produce documents responsive to this request at her deposition.

However, Ms. Mormino, disclosed the identity of specific responsive documents including "roll up records," "pending claim reports" and "SIU reports." (Exhibit A, pp.14-17, 18-21.) Also, Hartford employee Mr. McGoldrick identified other responsive documents in his deposition, including "Monthly Management Letters" and monthly and quarterly performance reviews. (Exhibit B - McGoldrick Transcript, pp.129-131, 144-147.) In an attempt to obtain these documents, which Hartford should have produced pursuant to the May 24, 2003 Notice of Deposition, plaintiff requested them yet again, but with more specificity, in the notice of deposition duces tecum of Hartford's Record Keeper. Defendant has refused to produce these documents. (Exhibit 1 - Objection dated October 1, 2003).

**C.    FAILURE TO PRODUCE CLAIM FILE DOCUMENTS**

Hartford misled plaintiff and the court to believe, for almost two years, that it had produced plaintiff's entire claim file.

• In opposition to plaintiff's first motion to compel, Hartford represented to the

5

Court that "[i]n response to Plaintiff's discovery, <u>Hartford produced its entire claim file</u>."

(Opposition to Motion to Compel, dated April 26, 2002, at p.2, (emphasis in original.); p.3

("This is not a case in which Hartford has played 'hide the ball' by refusing to answer

interrogatories <u>and</u> by selectively providing documents. Here, Hartford has unreservedly served

up its claim file . . .") (emphasis in original.))

    •    Hartford's representation to the Court was, in fact, false and Hartford had no

reasonable basis to make this representation. On July 10, 2003, after plaintiff had conducted the

depositions of the two key personnel involved in adjudicating plaintiff's claim, Susan Wilk and

Kim Gabrielson,[4] another Hartford employee, John McGoldrick produced, **for the first time**, the

plaintiff's case file that Ms. Gabrielson had compiled. This file, which was approximately 3

inches thick and included documents that defendant had not previously produced. (Exhibit B  -

McGoldrick Trans., pp.15-16, 21, 51, 59.) Apparently, the claims department and the Special

Investigation Unit (SIU) each maintained claim files regarding plaintiff, which was disclosed

only after the depositions of two of the individuals employed by the defendant from the SIU had

concluded, and  had only produced the claims department file, but not the SIU file utilized by

those deponents. Defendant's counsel acknowledged that this file should have been produced as

part of defendant's previous discovery compliance. (<u>Id</u>., p.23.)

    •    There is no excuse for defendant's failure to produce this file previously. The file

was not lost, missing or inaccessible in any way: Mr. McGoldrick did not "discover" the file, "it

was there all along" - he simply asked the secretary for plaintiff's file, and she provided it to him.

_____

    [4] Ms. Gabrielson wrote the termination letter and Ms. Wilk, testified that Ms. Gabrielson was ultimately responsible for the decision to terminate plaintiff's benefits. Later Mormino indicated Wilk was in error.

(Exhibit C - McGoldrick Trans., pp.5, 8-11, 21, 75-76.) This file was readily available to numerous Hartford personnel, including those whose testimony had been obtained already . Ms. Gabrielson. (Id., p.43).

•    The file had apparently been handled since the inception of the lawsuit because, as produced, it was completely out of order, which was not the manner in which it was kept in the ordinary course of business. (Id., pp.24-25.) It required almost a full day of deposition to provide some semblance of organization to the file. (Id.)

D.    **FAILURE TO PRODUCE CLAIMS MANUALS**

Hartford misled plaintiff to believe that only one version of the claim manual existed, and that it had produced that manual:

•    On November 26, 2001, plaintiff requested that defendant identify and produce "any document which serves as a policy book for . . . investigating claims . . . or otherwise describes the claims handling process." ( Interrogatory No. 20; Request for Production No. 1.) Plaintiff also requested that defendant produce these documents. (Request for Production No. 1.) Defendant refused to respond to the interrogatory, or to produce the documents, claiming the interrogatory was overbroad, unduly burdensome, and sought documents that were "confidential proprietary in nature." ( Def. Resp. to Interrogatories, No. 20.)

•    On July 9, 2002, this Court ordered defendant to respond to Interrogatory Number 20. ( Ruling, pp.3-4.) The Court held that the request sought relevant documents and that defendant had failed to establish that the request was overly broad or unduly burdensome, or that any claim of confidentiality could not be cured by an appropriate order. (Id.) Pursuant to F.R.C.P. 26(e), defendant was required to produce the documents identified as a supplementation

7

to its responses to plaintiff's request for production.

     •    On September 20, 2002, purporting to comply with the Court's ruling, defendant identified and produced an "intranet site" on CD-Rom that was largely unusable without instructions that defendant failed to provide to plaintiff for months, despite repeated requests. Defendant's representation that only two documents were responsive to plaintiff's interrogatory revealed that its previous claim that the request was overly broad and unduly burdensome was without any foundation. Defendant did not attempt to confer with plaintiff to narrow the request. Further, defendant made no confidentiality designation with this production. (Id.)

     •    Defendant's counsel again represented to plaintiff on October 28, 2002 that only one manual existed - the intranet manual - and that it had produced that manual to plaintiff.

     •    On June 24, 2003, almost one year after this Court' s order, Ms. Wilk disclosed during her deposition that there are five claim manuals, in hard copy, that were (1) in effect when she adjudicated plaintiff's claim; and (2) which may currently be in her office desk. (Exhibit C - Wilk Trans., pp.11-12, 93.) These hard copy versions are not identical to the intranet manual that defendant previously produced to plaintiff. (Id.)

The foregoing are only examples of the practice and pattern followed by Hartford, capped off by the recent objections to discovery, and the action of refusing to even attempt to engage in a dialogue to resolve these disputes which generates this motion, as enough should be enough.


## ARGUMENT

### A.    THE COURT SHOULD ENTER A DEFAULT

The discovery provisions of the Federal Rules of Civil Procedure are designed to achieve

the disclosure of all evidence relevant to the merits of a controversy. It is intended that this disclosure of evidence proceed at the initiative of the parties, free from the time consuming and costly process of court intervention. When a party frustrates this design by disobeying discovery orders, thereby preventing disclosure of facts essential to an adjudication of the merits, severe sanctions are appropriate.

Daval Steel Products v. M/V Fakredine, 951 F.2d 1357, (2nd Cir. 1991). The Court "should not shrink from imposing harsh sanctions where . . . they are clearly warranted." Cine Forty-Second Street Theatre v. Artists Pictures Corp., 602 F.2d 1062, 1068 (2nd Cir. 1979) (affirming evidence preclusion that would effectively result in judgment for plaintiff); Metropolitan Opera Ass'n. v. Local 100, Hotel Empl., 00 CIV 3613 (LAP) (S.D.N.Y. January 28, 2003) (granting motion for judgment as to liability and attorney's fees as sanction.) "[T]his circuit's recent decisions have made clear that the era when courts shied away from the imposition of the full range of sanctions enumerated in Rule 37, including dismissal, is a thing of the past." Metropolitan Opera, supra.

A default judgment is warranted where a defendant fails to produce documents and witnesses required by court orders, misrepresents that it has made full production, and continually produces of additional documents only after requiring plaintiff to make telephone calls, write letters, attend conferences and seek court intervention. See Metropolitan Opera (where defendant "continually professed full compliance - falsely . . . and without making a reasonable inquiry - constitutes such gross negligence as to rise to intentional misconduct.")[5]; Barsoum v. New York City Housing Authority, 00 Civ. 3679 (RWS) (S.D.N.Y. April 3, 2001) (party's misconduct was compounded by her failure to disclose the existence of the undisclosed

---

[5] In particular, the court noted that "[c]ounsel's responses to the Met's discovery requests, in formal responses, in letters and to the Court — particularly counsel's repeated representations that all responsive documents had been produced — were made without any real reflection or concern for their obligations under the rules governing discovery and, in the absence of an adequate search for responsive documents, without a reasonable basis." Metropolitan Opera.

evidence until it was revealed during a deposition.) (attached).

In this case, the court should not shy away from imposing the most severe sanction. Hartford has engaged in the precise type of misconduct that justified a default in Metropolitan Opera. Among other things, Hartford: (1) failed to produce knowledgeable witnesses and documents regarding its actuarial and due diligence review of the Educator's claims, despite this court's order that it do so, and has now (a) refused to produce responsive documents that were disclosed during depositions and (b) initiated further motion practice to avoid producing the witness that this court's order required it to produce; (2) failed and refused to produce documents related to its relationship with Educators, despite this court's order that it do so; (3) failed to produce documents regarding the performance of the claims handling department, as required by a notice of deposition duces tecum to which it did not object, and now refuses to produce responsive documents that the deponent identified during the deposition; (4) misrepresented to plaintiff and the court that it had produced plaintiff's entire claim file, a significant portion of which it produced for the first time at a recent deposition; and (5) failed to produce claim manuals responsive to plaintiff's November 2000 request for production and that were subject to a court order compelling production, and misrepresented to plaintiff that it had produced all claim manuals.

In Tarlton v. Cumberland County Correctional Facility, 192 F.R.D. 165, 170 (D.N.J. 2000), relied upon by Metropolitan Opera, the court explained that:

> The client is charged with knowledge of what documents it possesses. It was not their option to simply react to plaintiff's fortuitous discovery of the existence of relevant documents by making disjointed searches, each time coming up with a few more documents, and each time representing that that was all they had. Under the federal rules, the burden does not fall on plaintiff to learn whether, how and where defendant keeps

relevant documents.

Hartford's conduct in this case is even more egregious because, even after their disclosure during depositions, Hartford is still refusing to produce documents that were responsive to previous document requests and court orders. (See October 1, 2003 Objection - Exhibit 1.) This conduct is inexcusable, and further support the propriety of a default in this case. Metropolitan Opera (defendant's refusal to produce documents responsive to plaintiff's previous request for production, after plaintiff discovered their existence and requested them "demonstrated their utter contempt for their discovery obligations.")

Finally, a default is warranted because Hartford's failure to produce documents, or to produce them in a timely fashion - often after the depositions of key witnesses - has prejudiced plaintiff by preventing her from adequately planning and preparing her case. Metropolitan Opera (defendant's untimely and dilatory document production denied plaintiff "the opportunity to plan its strategy in an organized fashion as the case proceeded.") For example, by waiting almost three years into the case to produce the SIU's file on plaintiff, and the five volumes of claim procedure manuals upon which the claim adjudicator relied in adjudicating plaintiff's claim, Hartford has (1) denied plaintiff's expert an opportunity to review the contents of the file in preparing her initial opinion on whether Hartford's adjudication of plaintiff's claim was improper or in bad faith and (2) preventing plaintiff from inquiring about those documents in the depositions of key witnesses. Additionally, Hartford has prevented plaintiff for over six months, from preparing her defense to Hartford's counterclaim and developing her theory of bad faith, by failing and refusing to produce the documents related to Hartford's assumption of plaintiff's disability claim (i.e., the actuarial and due diligence documents). See Section B, infra.

11

Hartford's conduct in this case practically mirrors the conduct in <u>Metropolitan Opera</u> and, as in that case, justifies a default.

## **CONCLUSION**

For the foregoing reasons, the Court should enter a default judgment against Hartford.

PLAINTIFF,
CANDI MCCULLOCH

By: _____

Eliot B. Gersten (ct05321)
Gersten & Clifford
214 Main Street
Hartford, CT 06106
Tel: (860) 527-7044
Fax: (860) 527-4968
Her Attorney

12

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed , postage prepaid, on October 31, 2003 to all counsel and pro se parties of record, as follows:

Roberta J. Sharp, Esq.
Barry A. Chasnoff, Esq.
Jessica Spangler Taylor, Esq.
Akin Gump Strauss Hauer & Feld, LLP
300 Convent Street, Suite 1500
San Antonio, TX 78205
*Tel: 210-281-7146*
*Fax: 210-224-2035*

Donald E. Frechette, Esq
Joshua L. Milrad, Esq.
Charles F. Gfeller, Esq.
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103
Phone (860) 525-5065
Facsimile (860) 527-4198

_____
Eliot B. Gersten