UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CANDI McCULLOCH | § | CIVIL ACTION NO.: |
|    Plaintiff, | § | 301CV1115(AHN) |
| | § | |
| vs. | § | |
| | § | |
| HARTFORD LIFE AND ACCIDENT | § | |
| INSURANCE COMPANY AND | § | |
| EDUCATORS MUTUAL LIFE | § | |
| INSURANCE COMPANY | § | |
|    Defendants. | § | November 6, 2003 |

## MEMORANDUM IN SUPPORT OF EDUCATORS MUTUAL LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

Educators Mutual Life Insurance Company ("Educators") issued Plaintiff's disability policy and administered and paid Plaintiff's disability claim until July 1, 1999. At that time, Educators entered into a Reinsurance Agreement with Hartford Life and Accident Insurance Company ("Hartford"), pursuant to which Educators ceded 100 percent of the liability and administration of professional association claims, including Plaintiff's, to Hartford. Thereafter, Educators had no involvement in the administration of Plaintiff's claim, and no knowledge or involvement in Hartford's decision to terminate Plaintiff's disability benefits in November 2000. As a matter of law, Educators is not liable for the damages Plaintiff seeks to recover.

The Policy at issue was freely assignable both as a matter of well-settled law and under the express terms of the Policy itself. Educators advised Plaintiff and other insureds that their claims would be administered by Hartford. Neither Educators' assignment of Plaintiff's claim to Hartford nor Educators' subsequent acts or omissions can support Plaintiff's claims for breach of contract, tortious interference, CUTPA, or CUIPA. Educators is entitled to summary judgment as a matter of law.

## **MATERIAL UNDISPUTED FACTS**

In 1969, Educators contracted with Group Insurance Administrators ("GIA") to underwrite and administer a group long-term disability plan for the American College of Physicians ("ACP").[1] Plaintiff Candi McCulloch applied for disability benefits through ACP in September 1994. Her disability coverage became effective on September 24, 1994.[2]

On October 11, 1995, through her attorney, Plaintiff made a claim for disability benefits under the Policy, claiming to be disabled due to neck pain resulting from a fall while skiing eight months earlier.[3] Educators began paying Plaintiff benefits on March 22, 1996.[4]

On April 15, 1997, GIA and ACP terminated their relationship with Educators, and moved their long-term disability plan to another insurance company.[5] After April 1997, Educators was no longer writing professional association policies or accepting premiums; its only involvement was the administration of open disability claims such as Plaintiff's.[6] This prompted Educators to begin negotiations with Hartford to sell all of its open professional association disability claims.[7]

On July 1, 1999, Educators and Hartford executed a Reinsurance Agreement, by which Educators ceded 100 percent of its liability for and the administration of its open professional association claims, including Plaintiff's, to Hartford.[8] In August of 1999, Educators wrote to Plaintiff and the other claimants subject to the Reinsurance Agreement, advising them that

---

[1] Local Rule 56(a)(1) Statement, ¶ 2.
[2] *Id.* ¶ 3.
[3] *Id.* ¶ 9.
[4] *Id.* ¶ 10.
[5] *Id.* ¶ 7.
[6] *Id.*
[7] *Id.*
[8] *Id.* ¶ 11.

Hartford had assumed responsibility for administration of their claims.[9] The letter to Plaintiff also advised her that Educators would issue her benefit payment through October 31, 1999, after which she would receive her payments from Hartford. Educators also advised Plaintiff to contact Hartford directly if she had any questions regarding her claim.[10]

## ARGUMENTS & AUTHORITY

### I. EDUCATORS HAD A LEGAL AND CONTRACTUAL RIGHT TO ASSIGN ITS RIGHTS AND DUTIES UNDER THE POLICY TO HARTFORD.

Plaintiff asserts Educators "breached its contract with plaintiff by entering into the Reinsurance Agreement." This theory of recovery is barred both by the contractual limitation period for filing suit and by Educator's expressly reserved right to change the terms of the Policy.

#### A. Plaintiff Did Not Timely File Her Claim.

Under the Policy, Plaintiff was required to bring any actions to recover on the policy within three years.[11] Educators ceded all responsibility and liability for Plaintiff's claim to Hartford in July of 1999, and so informed her by letter in August 1999. To the extent Plaintiff claims the execution of the Reinsurance Agreement itself was a breach of the Policy, she was required to assert this claim no later than August 26, 2002. Plaintiff's proposed amendment to add this claim to her lawsuit on October 22, 2003, is time barred..

#### B. The Policy Reserves To Educators The Right To Change the Policy Without Plaintiff's Consent.

"A contractual right can be assigned unless assignment is validly precluded by contract." *Rumbin v. Utica Mut. Ins. Co.*, 757 A.2d 526, 531 (Conn. 2000) (citing 3 RESTATEMENT (SECOND) OF CONTRACTS § 317 (1981)).

---

[9] *Id.* ¶ 14.
[10] *Id.*
[11] *Id.* ¶ 6.

Educators issued the Policy to the American College of Physicians ("ACP") as the policy holder. Plaintiff is not the policyholder but an insured under the Policy.

The Policy expressly reserved Educators' right to modify the Policy without the consent of insured members of ACP: "This policy may be changed at any time....No consent of any person insured hereunder is needed for such a change."[12] The Policy does not prohibit the assignment of the liability for or administration of Plaintiff's claim to Hartford.

"'[T]he terms of an insurance policy are to be construed according to the general rules of contract construction. The determinative question is the intent of the parties, that is, what coverage the...plaintiff expected to receive, and what the defendant was to provide, as disclosed by the provisions of the policy.'" *Yale Univ. v. Cigna Ins. Co.*, 224 F. Supp. 2d. 402, 405-06 (D. Conn. 2002) (quoting *Heyman Assocs. No. 1 v. Ins. Co. of the State of Pa.*, 653 A.2d 122, 130 (Conn. 1995)). As a result, "[i]f the terms of the policy are clear and unambiguous, then the language... must be accorded its natural and ordinary meaning." *Id.* The policy change clause and Connecticut law unequivocally permitted the assignment of Educators' rights and duties under the Policy and preclude Plaintiff's breach of contract claim.

II. **AFTER ASSIGNMENT TO HARTFORD OF EDUCATORS' DUTIES UNDER THE POLICY, EDUCATORS OWED NO CONTRACTUAL DUTY TO PLAINTIFF.**

Plaintiff claims Educators is liable not only for termination of her benefits ("Count I") but for "failing to service" and "failing to oversee" her claim after execution of the Reinsurance Agreement ("Count Two").

Plaintiff's cause of action for breach of contract arising out of the termination of her benefits (if any) is against Hartford, not Educators. *See, e.g., Janicki v. Paul Revere Life Ins.*

---

[12] *Id.* ¶ 5.

*Co.*, No. 3:98CV1242 (RNC), 2001 U.S. Dist. LEXIS 22308, at *5 (D. Conn. Dec. 6, 2001).[13] In *Janicki*, the Provident Companies acquired an interest in the Paul Revere Life Insurance Company just before Paul Revere terminated the plaintiff's disability benefits. *Id.* at *1-2. The plaintiff sued both companies for breach of contract and CUTPA violations, among other claims. The court dismissed all claims against Provident because there was no evidence that "Provident played a role in, or influenced, the handling of plaintiff's disability claim." *Id.* at *2-5.

It is undisputed that Educators had no role or influence in Hartford's handling of Plaintiff's claim. Educators paid benefits to Plaintiff during the period Educators administered her claim. After execution of the Reinsurance Agreement, Educators no longer had any knowledge of, control over, or involvement in the administration, investigation, or termination of Plaintiff's benefits. Plaintiff's claim was not discussed by Educators or Hartford during negotiation of the Reinsurance Agreement. The decision to terminate her benefits was a decision made by Hartford alone, as Plaintiff concedes in her complaint.[14] As in *Janicki*, the Court should grant summary judgment for Educators on Counts One and Two of Plaintiff's Second Amended Complaint.

### III. AFTER ASSIGNMENT OF EDUCATORS' CONTRACTUAL DUTIES TO HARTFORD, EDUCATORS OWED NO DUTY OF "GOOD FAITH" TO PLAINTIFF.

While not entirely clear from her Complaint, Plaintiff appears to assert that Educators' assignment of rights and duties under the Policy to Hartford and subsequent "failure" to oversee her claims after execution of the Reinsurance Agreement constitutes "bad faith." The Court should dismiss this claim as a matter of law as well.

---

[13] Attached as Exhibit D.

[14] Indeed, Educators had no knowledge of any of Hartford's actions until sued by Plaintiff on June 15, 2001.

To establish bad faith, Plaintiff must prove Educators engaged in conduct designed to mislead or deceive her, or that it neglected or refused to fulfill a contractual obligation under the policy that was not prompted by an honest mistake as to its rights or duties. *Martin v. Am. Equity Ins. Co.*, 185 F. Supp. 2d. 162, 164 (D. Conn. 2002) (citing *Buckman v. People Express, Inc.*, 530 A.2d 596, 599 (Conn. 1987)). "Bad faith is not simply bad judgment or negligence, but rather it implies *the conscious doing of a wrong* because of dishonest purpose or moral obliquity...it contemplates a state of mind affirmatively operating with furtive design or ill will." *Id.* (emphasis added). In other words, to prevail on her bad faith claim, Plaintiff must prove that Educators consciously acted with dishonest purpose or ill will towards her.

Plaintiff has pointed to no act or omission by Educators designed to mislead or deceive her, and as noted above, none of the acts or omissions Plaintiff recites constitute the breach of a contractual obligation. Moreover, Educators had no knowledge of any of Hartford's actions regarding her claim after execution of the Reinsurance Agreement and as a matter of law cannot have had the state of mind necessary to establish bad faith. Educators did not consciously wrong Plaintiff—out of dishonest purpose, moral obliquity, or otherwise—nor did it operate with furtive design or ill will. Educators is entitled to summary judgment on Plaintiff's claim for bad faith because it owed her no contractual duties and was not involved in the termination of her benefits.

## IV. PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE FAILS AS A MATTER OF LAW.

### A. Plaintiff's Claim is Barred by the Statute of Limitations.

Plaintiff's claim for tortious interference with contractual relations and expectations is barred by the three year statute of limitations set forth in CONN. GEN. STAT. § 52-577 (2003). *Collum v. Chapin*, 671 A.2d 1329, 1331 (Conn. App. Ct. 1995) (Section 52-577 is applicable to tortious interference with contract claim). Section 52-577 provides "[n]o action founded upon a

tort shall be brought but within three years from the date of the act or omission complained of." The three-year statute of limitations begins with the date of the act or omission complained of, not the date the plaintiff first discovers an injury. *Id.*

More than three years elapsed between the wrongful conduct alleged by Plaintiff and the filing of her Second Amended Complaint, in which she asserted her tortious interference with contract claim for the first time. Plaintiff alleges various wrongful acts purportedly committed by Defendants, including: "making written representations on several dates between July 1999 and September 2000," "making representations to plaintiff on several dates between February 2000 and August 2000,"and "assembling information requiring plaintiff to undergo independent medical examinations" in August 2000.[15] Plaintiff alleges no wrongful acts by Educators after September 2000. The claim for tortious interference asserted for the first time in Plaintiff's proposed Second Amended Complaint on October 22, 2003 is time-barred.

### B.  Educators Cannot Interfere With Its Own Contract.

To the extent Plaintiff's "tortious interference" claim against Educators is based upon Educators' assignment of the claim to Hartford, Educators is entitled to summary judgment because it cannot be held liable for tortious interference with its own contract. *Urashka v. Griffin Hospital*, 841 F. Supp. 468, 475 (D. Conn. 1994) (dismissing tortious interference with contract claim). Because it is legally impossible for Educators to tortiously interfere with its own insurance policy, Plaintiff's claim fails as a matter of law.[16]

---

[15] Plaintiff's Second Amended Complaint, ¶¶ 18, 40.

[16] To the extent Plaintiff's "tortious interference" claim is founded on the allegedly wrongful acts enumerated in her proposed Second Amended Complaint, Educators did not engage in the conduct at issue and Plaintiff has offered no authority for the proposition that Educators is vicariously liable for Hartford's conduct.

V.  **PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES FAILS AS A MATTER OF LAW.**

To recover punitive damages, Plaintiff must prove Educator's conduct was malicious, outrageous, with bad motive, or in reckless disregard of Plaintiff's rights. *Uberti v. Lincoln Nat'l Life Ins. Co.*, 144 F. Supp. 2d. 90, 107 (D. Conn. 2001). Malice requires an intent or design to cause harm. *Sharkey v. Skilton*, 77 A. 950, 951 (Conn. 1910). Outrageous conduct is conduct that is "so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bombalicki v. Pastore*, 804 A.2d 856, 859 (Conn. App. Ct. 2002). Finally, "conduct in reckless disregard of the rights of others is improper or wrongful conduct, and constitutes wanton misconduct, evincing a reckless indifference to consequences to the life, or limb, or health, or reputation or property rights of another." *Bordonaro v. Zenk*, 147 A. 136, 137 (Conn. 1929). The degree of culpability required to recover punitive damages is thus even higher than that necessary to establish bad faith. The evidence falls far short of that necessary to establish even ordinary "bad faith," and her claim for punitive damages must fail as well.

In light of the undisputed evidence that Educators had no involvement in or even knowledge of Hartford's termination of Plaintiff's disability benefits, as a matter of law Plaintiff cannot establish the requisite culpability on Educators' part to recover punitive damages. *See Uberti*, 144 F. Supp. at 107 (evidence of bad motive, wantonness, or outrageousness necessary to warrant imposition of punitive damage).

VI. **PLAINTIFF'S CUTPA ALLEGATIONS FAIL AS A MATTER OF LAW.**

A.  **Plaintiff's CUTPA Claims Are Barred by the Statute of Limitations.**

A claim for a violation of CUTPA must be brought within three years of the occurrence of the alleged violation. *Izzarelli v. R.J. Reynolds Tobacco Co.*, 117 F. Supp 2d. 167, 177 (D. Conn.

2000); CONN. GEN. STAT. § 42-110g(f) (2003). A CUTPA violation occurs when a misrepresentation is made, and the statute of limitations commences running the moment the act or omission complained of occurs. *Timmons v. City of Hartford*, 2003 WL 22228989, at *6 (D. Conn. Sept. 16, 2003) (dismissing CUTPA claim because barred by statute of limitations).[17]

More than three years elapsed between the wrongful conduct alleged by Plaintiff and the filing of her Second Amended Complaint, in which she asserted her CUTPA claim for the first time. Plaintiff alleges Defendants violated CUTPA by:

> misrepresenting that Hartford was administering the claims on behalf of Educators when, in fact, it was administering claims on its own behalf and for its own benefits, and failing to inform plaintiff and other claimants of this fact as well as the fact that Educators had ceded any and all responsibility regarding the claims to Hartford.[18]

Elsewhere in her Second Amended Complaint, Plaintiff describes when these alleged acts occurred. Plaintiff alleges Defendants made:

> written representations on several dates between July 1999 and September 2000, including but not limited to the correspondence addressed to the plaintiff in which Hartford represented that it was acting as an administrator for Educators and/or on behalf of Educators, when it was in fact acting on its own benefit and without any involvement of Educators.[19]

The Reinsurance Agreement became effective in July of 1999, and the last misrepresentation of which Plaintiff complains occurred in September 2000. Plaintiff did not seek leave to file her Second Amended Complaint until October 22, 2003, more than three years from the date of the last act alleged. The statute of limitations therefore bars these claims, and Educators is entitled to summary judgment.

---

[17] Attached as Exhibit E.
[18] Plaintiff's Second Am. Complaint, ¶ 44.
[19] *Id.* ¶ 40.

**B.     Educators Was Not Engaged in Trade or Commerce in Connecticut.**

Under CUTPA, "no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. § 42-110b(a) (2003). "Trade" and "commerce" are defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value *in this state.*" CONN. GEN. STAT. § 42-110a(4) (2003) (emphasis added). Educators, a Pennsylvania company, insured Plaintiff while she was a resident of Massachusetts. Educators was not involved in any trade or commerce *in Connecticut*, and therefore the provisions of CUTPA simply do not apply to Educators.

**C.     Plaintiff's Claims Do Not Arise Out Of Educators' Trade or Commerce.**

Even if CUTPA did apply to Educators, "a CUTPA violation may not arise out of conduct that is merely incidental to the performance of one's trade or commerce." *Cornerstone Realty, Inc. v. Dresser Rand Co.*, 993 F. Supp. 107, 113 (D. Conn. 1998) (dismissing CUTPA claim where alleged violation was incidental to defendant's primary business); *see also Brandewiede v. Emery Worldwide*, 890 F. Supp. 79, 81 (D. Conn. 1994) ("There is no viable claim under CUTPA when the practice complained of is incidental to the true trade or business conducted").

The acts and omissions by Educators forming the basis of Plaintiff's complaint are merely incidental to Educator's trade or commerce. *See, e.g., Cornerstone Realty, Inc.* 993 F. Supp. at 113; *Brandewiede*, 890 F. Supp. at 81. In *Dresser Rand,* an intended purchaser of an abandoned manufacturing plant sued the partnership that had formerly owned the facility after the proposed transaction fell through. *Dresser Rand*, 993 F. Supp. at 109-110. Among its other claims, the plaintiff brought an action under CUTPA, alleging that the trade of the defendant was

the sale of real estate. *Id.* at 111-12. However, the primary business of the defendant was actually industrial manufacturing, and therefore the sale of a closed manufacturing facility was incidental to its true business. *Id.* at 112. CUTPA simply did not apply in this situation, and the claim was dismissed. *Id.* at 112-113.

Similarly, in *Brandewiede* the plaintiff alleged CUTPA violations an connection with the defendant's failure to pay a finder's fee under an aircraft leasing agreement. *Brandewiede*, 890 F. Supp. at 81. The defendant was "primarily engaged in the business of overnight freight delivery." *Id.* Despite the fact that the defendant occasionally purchased, sold, and leased aircraft, any leasing of aircraft was merely "incidental to its primary business of providing overnight freight service." *Id.* CUTPA did not govern the conduct at issue. *Id.*

Educators' primary business is writing group life, dental and short and long-term disability products for employers, not selling off claims.[20] Like the defendant's sale of a closed facility in *Dresser Rand*, Educators' sale of its open professional association claims to Hartford in 1999 was a single transaction incidental to its true trade or business. As in *Dresser Rand* and *Brandewiede*, CUTPA does not apply to or prohibit conduct at issue here.

### D.  Plaintiff Has Suffered No Ascertainable Loss.

Plaintiff must prove "some loss, deprivation or injury in order to satisfy CUTPA's ascertainable loss requirement." *Tragianese v. Blackmon*, 993 F. Supp. 96, 100 (D. Conn. 1997); CONN. GEN. STAT. § 42-110g(a) (2003). Educators' execution of the 1999 Reinsurance Agreement with Hartford did not cause any loss, deprivation, or injury to Plaintiff. Educators' notification to Plaintiff that Hartford was administering her claim did not cause her to suffer any ascertainable loss. Plaintiff did not change her position as a result of this information, and her

---

[20] Rankin Dec. ¶ 1.

benefits did not cease. Because Plaintiff has no evidence that any CUTPA violation by Educators caused her to suffer any ascertainable loss, Educators is entitled to summary judgment.[21]

### VII. PLAINTIFF'S CUIPA CLAIM FAIL TO STATE A CLAIM AGAINST EDUCATORS.

No private right of action exists for a violation of CUIPA. *Martin v. Am. Equity Ins. Co.*, 185 F. Supp 2d. 162, 166 (D. Conn. 2002). Therefore, Educators is entitled to judgment as a matter of law on Plaintiff's CUIPA claims.

### CONCLUSION

Educators asks that the Court enter summary judgment in its favor on all of Plaintiff's claims for breach of contract, bad faith, violations of CUIPA and CUTPA, tortious interference, and punitive damages.

---

[21] Any argument by Plaintiff that but for Educators' "failure to oversee" her claim it would not have been terminated is entirely speculative and finds no support in the evidence.

By: /s/ [signature]

Barry A. Chasnoff (ct11162)
Roberta J. Sharp (ct24407)
Jessica S. Taylor (ct24408)
AKIN GUMP STRAUSS HAUER & FELD L.L.P.
300 Convent Street, Suite 1500
San Antonio, Texas 78205
Telephone: (210) 281-7000
Telecopier: (210) 224-2035

AND

Donald E. Frechette (ct 08930)
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103
Phone: (860) 525-5065
Facsimile: (860) 527-4198

ATTORNEYS FOR DEFENDANT
EDUCATORS MUTUAL LIFE
INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was sent ~~via facsimile and~~ certified mail, return receipt requested to the following attorney on the \_\_\_7th\_\_\_ day of November, 2003:

Eliot B. Gersten
Gersten & Clifford
214 Main Street
Hartford, CT 06106
Phone (860) 527-7044
Facsimile (860) 527-4968

_____
ROBERTA J. SHARP
JESSICA S. TAYLOR