UNITED STATES DISTRICT COURT    FILED
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CANDI McCULLOCH | § | CIVIL ACTION NO.: |
|    Plaintiff, | § | 301CV1015(AHN) |
| | § | |
| vs. | § | US DISTRICT COURT |
| | § | BRIDGEPORT CT |
| HARTFORD LIFE AND ACCIDENT | § | |
| INSURANCE COMPANY AND | § | |
| EDUCATORS MUTUAL LIFE | § | |
| INSURANCE COMPANY | § | |
|    Defendants. | § | November 6, 2003 |

**DEFENDANT EDUCATORS MUTUAL LIFE INSURANCE COMPANY'S
LOCAL RULE 56(a)(1) STATEMENT**

In accordance with Local Rule 56(a)(1), Defendant Educators Mutual Life Insurance Company ("Educators") attaches the following statement of material facts as to which there are no genuine issues to be tried to its Motion for Summary Judgment.

1. Educators is a mutual life and health insurance company whose primary business is writing group life, dental and short and long-term disability products for employers.[1]

2. In 1969, Educators Mutual Life Insurance Company ("Educators") contracted with Group Insurance Administrators ("GIA") to underwrite and administer a group long-term disability plan for the American College of Physicians ("ACP").[2]

3. Plaintiff Candi McCulloch applied for disability benefits through ACP in September 1994. Her disability coverage became effective on September 24, 1994.[3]

---

[1] Declaration of Kimberly Rankin, ¶ 3, is attached as Exhibit A.

[2] True and correct copies of excerpts from Kimberly Rankin's May 13, 2003 deposition ("Rankin depo.") at 5:4-7:19, are attached as Tab 1 to the Declaration of Jessica Spangler Taylor, which is attached as Exhibit B.

063670.0229 WEST 5393499 v1                    1

4. Plaintiff's policy states that "[t]he master policy, the copy of the application of the policyholder attached to it and the applications submitted by members constitute the entire contract between the parties."[4]

5. The policy states that "This policy may be changed at any time. This can be done only by written agreement between the policyholder and us. No consent of any person insured hereunder is needed for such a change."[5]

6. The policy also states that "No action at law or in equity shall be brought to recover on this policy before 60 days after proof of loss has been filed. No such action shall be brought after three years from the end of the period within which proof of loss is required by the policy."[6]

7. Plaintiff's attorney submitted a disability claim on behalf of Plaintiff to Educators on October 11, 1995, describing neck and back pain as a result of fall she claimed she had while skiing eight months earlier. She requested a leave of absence from her employment on October 3, 1999.[7]

8. Educators initially determined Plaintiff met the definition of total disability under the Policy and began paying Plaintiff disability benefits on March 22, 1996.[8]

---

[3] A true and correct copy of Plaintiff's application for participation in the American College of Physicians Insurance Trust Group Long Term Disability Program is attached as Tab 1 to the Affidavit of Deborah Laughran, which is attached as Exhibit C. Plaintiff also had disability insurance through her employer and UNUM.

[4] A true and correct copy of the group long term disability policy is attached as Tab 2 to the Laughran Aff.

[5] *Id.* at 13.

[6] *Id.* at 11.

[7] A true and correct copy of the October 11, 1995 letter is attached as Tab 3 to the Laughran Aff.

[8] True and correct copies of excerpts from Kenneth Wasnock's May 13, 2003 deposition ("Wasnock depo."), at 35:10-24, are attached as Tab 3 to the Taylor Dec.

9.  On April 15, 1997, GIA and ACP terminated their relationship with Educators and moved their long-term disability plan to New York Life Insurance Company. After April 1997, Educators was no longer writing professional association policies or accepting premiums; its only involvement was the administration of open disability claims such as Plaintiff's.[9] This prompted Educators to begin negotiations with Hartford to sell all of its open professional association disability claims.[10]

10. As part of the negotiation of the agreement, Hartford conducted due diligence of Educators' claim files to determine pricing.[11] Hartford reviewed 11 of approximately 80 professional associations claims; Plaintiff's claim was not selected for review as part of the due diligence.[12] Educators had no communication with Hartford regarding Plaintiff's particular claim prior to or after the execution of the Reinsurance Agreement.[13]

11. On July 1, 1999, Hartford and Educators executed a Reinsurance Agreement by which it ceded 100 percent of its liability for and the administration of its open professional association claims, including Plaintiff's claim, to Hartford.[14]

12. The reinsurance agreement was the first and only time Educators sold off a book of claims.[15]

---

[9] Rankin depo. at 9:15-21; 11:10-12:13.

[10] Id. at 11:19-12:13.

[11] True and correct copies of excerpts from Pamela Mormino's July 28, 2003 deposition ("Mormino depo."), at 137:18-139:18, are attached as Tab 2 to the Taylor Dec.

[12] Id. at 73:15-73:23. Those reviewed were selected based on apparent discrepancies between the diagnosis, the length of disability, or the age of the claimant. Id at 139:8-12.

[13] Mormino depo. at 74:9-23.

[14] Rankin depo. 13:7-14:4. A true and correct copy of the Reinsurance Agreement is attached as Exhibit 10 to the Rankin depo.

[15] Rankin. Dec. ¶ 4.

13. Educators informed Plaintiff, as well as all the other claimants subject to the reinsurance agreement, by letter that Hartford would be responsible for the administration of their claims after August 1999.[16]

14. The August 29, 1999 letter to Plaintiff advised her Educators had contracted with Hartford to administer her benefits. It also advised her it was paying her in advance through October 31, 1999, and thereafter, she would receive her benefit payments from Hartford. Educators also advised Plaintiff to contact her directly if she had any questions regarding her claim.[17]

---

[16] Wasnock depo. at 69:12-71:12.

[17] A true and correct copy of the August 26, 1999 letter is attached as Tab 4 to the Laughran Aff.

By: _____
Barry A. Chasnoff (ct11162)
Roberta J. Sharp (ct24407)
Jessica S. Taylor (ct24408)
AKIN GUMP STRAUSS HAUER & FELD L.L.P.
300 Convent Street, Suite 1500
San Antonio, Texas 78205
Telephone: (210) 281-7000
Telecopier: (210) 224-2035

AND

Donald E. Frechette (ct 08930)
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103
Phone: (860) 525-5065
Facsimile: (860) 527-4198

ATTORNEYS FOR DEFENDANT
EDUCATORS MUTUAL LIFE
INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was sent via certified mail, return receipt requested to the following attorney on the ___7th___ day of November, 2003:

Eliot B. Gersten
Gersten & Clifford
214 Main Street
Hartford, CT 06106
Phone (860) 527-7044
Facsimile (860) 527-4968

ROBERTA J. SHARP
JESSICA S. TAYLOR