# *Exhibit A*

# GERSTEN & CLIFFORD

ATTORNEYS AT LAW
214 Main Street
Hartford. CT 06106-1881
Telephone (860) 527-7044
Telecopier (860) 527-4968
(E-mail: EliotG@gersten-clifford.com)

ELIOT B. GERSTEN. ESQUIRE

February 11, 2003

Our File No. 3425-001

Roberta J. Sharp, Esq.
Akin Gump Strauss Hauer & Feld LLP
300 Convent Street, Suite 1500
San Antonio, TX 78205-3732
by fax only 210-224-2035

Re:  <u>Candi McCulloch. M.D. v. Hartford Life and Accident Insurance Company. et al.</u>

Dear Attorney Sharpe,

Rather than to simply file a motion with the court, especially because of your earlier assistance in obtaining a better disc to read the manual. I wanted to first bring your attention to the current status of non compliance with the outstanding discovery orders in the hope that perhaps you can help again, viz:

1) The judge granted the motion to compel in December, just before Christmas, which by my calculation required compliance no later than January 7th, 2003. When I appeared in court on January 9th, 2003, defense counsel indicated that more time was needed than contemplated by the rules, and agreed to produce outstanding compliance by February 10th. The court accepted the representation. ( see Order dated January 13th, 2003).

As of today, while I received a response yesterday on behalf of Educators, Defendant Hartford failed to file its response to Interrogatory 25. I have tried to obtain this information since September, and was forced to seek relief from court to obtain it. I hope you do not think it unreasonable to ask for compliance no later than 4pm ( EST) on Thursday, February 13, or I will bring the non compliance to the attention of the court. Your client can try to comply thereafter and we can consider whether to continue to pursue the motion, but enough time has passed for me to justify a deadline.

2) I reviewed the answers filed by Educators sent yesterday to the outstanding request for discovery. I note a few issues in the hopes of obtaining explanation or clarification. For example:

Question 9 asked:
Identify any and all transmittals by Educators and Hartford relating to the Reinsurance Agreement of July 1, 1999, including any communications on the transmittal of funds exchanged between Educators and Hartford and any reporting on the status of claims set forth in the Reinsurance Agreement.

Sent By: Aviva Cuyler Attorney at Law;    415 663 0680;    Nov-11-03  3:18PM;    Page 3
Received:                                                                      Page 3 of 22
FEB-11-2003  20:03           GERSTEN & CLIFFORD            1 860 527 4968    P.02/02

Case 3:01-cv-01115-AHN   Document 142-2   Filed 11/12/2003   Page 3 of 22

Roberta J. Sharp, Esq.
February 12, 2003
Page 2

The answer provided to me yesterday simply referred me to the previously produced documents " H81113-40", which seems to include only the Reinsurance Agreement of July 1, 1999. It does not include "any communications on the transmittal of funds exchanged between Educators and Hartford and any reporting on the status of claims set forth in the Reinsurance Agreement." The Reinsurance Agreement of July 1, 1999 specifically calls for these kinds of communications and transmittals. Therefore it appears there is either non compliance with this question by simply failing to answer and produce the documents that are identified or by failing to state there are no documents. I would appreciate some prompt follow up on this apparent deficiency.

Additionally, back in November of 2002, this defendant indicated that it was continuing to search for the existence of documentation relating to the April 2002 request 3 which asked the defendant to " Identify any and all communications, including documents or contracts, relating to the assumption of the function of administrator for the contract from Hartford Life and Accident Insurance Company." Please understand t hat a t t he time I issued the request, the only indication of a relationship between the two defendants was the title "Administrator" as evidenced in the correspondence from the Hartford. After the court ordered production of documents, I learned that the relationship arose out of the "Reinsurance Agreement ". Regardless of title, i.e. administrator or reinsurer, I am hard pressed to believe that documents do not exist relating to the negotiation of that agreement, including documents such as, but not necessarily limited to, reserve reviews, calculations of premiums (including reinsurance premium), GAAP Reserve Reports, reserve opinions, "bordereaux exits" and quarterly or monthly reviews, ADA records reviewed to perform any of the reserve reviews, calculations of premiums (including reinsurance premium), and quarterly or monthly reviews in connection with the "Reinsurance Agreement," or actuarial records of those who provided a reserve review to support the transaction set forth in the Reinsurance Agreement. The answer of November 22, 2002 to my inquiry indicated that these "may" exist. With the passage of time, I think it would seem reasonable to obtain a definitive answer as to whether these documents exist or not, and not an equivocating response of "may".

I believe there are similar deficiencies to other questions, for example, the answer to request number 3 in the November production and the objection to request Number 6 ( answer dated January 8, 2003). Please let me know your thoughts on the above questions relating to the answers to discovery. Additionally yesterday's production response indicates that your client is continuing to search for responsive documents. I am hoping you can obtain a date by which the search will be completed so we can proceed with the next phase of discovery since I have been seeking answers for almost one year.

By the way, I received the disk late today and will advise you within a few days if I can follow the directions set forth in your letter. Thanks again for your help.

Very truly yours,

Eliot B. Gersten

# *Exhibit B*

# AKIN GUMP
# STRAUSS HAUER & FELD L.L.P.
### Attorneys at Law

ROBERTA J. SHARP
210.281.7146/fax: 210.224.2035
rsharp@akingump.com

February 12, 2003

VIA FACSIMILE

Eliot B. Gersten
Gersten & Clifford
214 Main Street
Hartford, CT 06106-1881

RE:   *Candi McCulloch v. Hartford Life and Accident Insurance Company and Educators Mutual Life Insurance Company;* Civil Action No. 3:01 cv 1115 (AHN); In the United States District Court, District of Connecticut

Dear Attorney Gersten:

I received your letter this morning and I am working to respond to your inquiries as quickly as I can.  Here is an interim report:

For reasons I cannot presently account for, while I was at a dentist appointment Monday afternoon, my office served the Educators' discovery responses by certified mail and facsimile, but served the Hartford discovery responses only by certified mail.  I suspect this is why you have thus far received only the Educators' response.  In any event, Hartford's response is attached hereto (by facsimile) and you should be receiving both by CMRR shortly.  I believe we have fully responded to Interrogatory 25.

With respect to the substance of the Educators' response, as you know, I am relatively new to the mix and I need to determine what the status is there.  My understanding at the moment is that the search has been ongoing; I appreciate your forbearance and will endeavor to get you a further response this week – in particular, I will attempt to determine the anticipated date of completion of the search, whether any responsive documents have been found thus far and, if so, arrange for production on a "rolling" basis.  I will continue to do everything I can to expedite responses.

Finally, I do want to address the concerns in your next to last paragraph regarding "similar deficiencies to other questions," but I am having difficulty identifying which requests/responses you are referring to.  I cannot tell what you are referring to by "the answer to request number 3 in the November production."  Can you please identify the request by (a) party directed to (i.e., Hartford or Educators), (b) type of request (interrogatory, request for production, or request for

300 Convent Street, Suite 1500 / San Antonio, Texas 78205 / 210.281.7000 / fax: 210.224.2035 / www.akingump.com

Austin / Brussels / Dallas / Houston / London / Los Angeles / Moscow / New York / Philadelphia / San Antonio / Washington, D.C.

063670.0229.032182 v.1

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Eliot B. Gersten
Page 2
February 5, 2003

admission), and (c) date (either of the request, the response, or both).  On receipt of clarification, I will attempt to answer your questions.

As to "the objection to request Number 6 (answer dated January 8, 2003)," am I correct in assuming you are referring to Educators' response to Interrogatory No. 6 regarding the identity of manuals used to train adjusters?  If so, I was under the impression we had communicated to you that no such manuals exist.  You may be asking Educators to withdraw its objection in light of that, but please clarify.

I will continue to work on the remaining questions.

Regards,

Roberta J. Sharp

Enclosure

# *Exhibit C*



Hartford Life

November 17, 2000

Candi McCulloch M.D.
63 Grove Ave.
Leeds, MA 01053

Policy Holder:   The American College Of Physicians Insurance Trust
Claimant:   Candi Mcculloch M.D.
SSN:   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
Policy Number:   GLT401500

Dear Ms. McCulloch:

We are writing to you regarding your claim for Long Term Disability "LTD" income benefits under the above-captioned Group Insurance Policy ("Policy").

We have completed our review of your claim for benefits and have determined that the evidence submitted in support of your claim does not establish that you continue to meet the policy's definition of Total Disability on or after 8/14/00. Accordingly, LTD benefits are no longer payable to you under the terms of the Policy and your claim has been terminated as of 8/14/00.

Because benefits were paid after 8/14/00, an overpayment has occurred. An explanation of how this overpayment occurred follows in the body of this letter.

Hartford Life and Accident Insurance Company assumed the administration of Educators Mutual Life Insurance Company 11/1/99. The Hartford is adjudicating your claim based on the Educators Mutual Life Insurance Company Long Term Disability policy.

Your Policy contains the following Definitions, please refer to Page 5 of your LTD Policy Booklet, ✓ which defines Total Disability as follows:

1.  "Disability" or "Total Disability" means that:
    (a)  As a direct result of injury or sickness the member is unable to perform the material and substantial duties of the member's occupation as it existed at the time disability began; and
    (b)  The member is not working in any gainful occupation; and
    (c)  The disability began while this insurance was in force; and
    (d)  The member is under the regular and direct care of a licensed physician other than a person in the members family.

Hartford Life Insurance Companies
Simsbury Disability Claim Office
200 Great Pond Drive
Windsor, CT 06095
Facsimile (860) 843-5997

HL 001

Mailing Address: P.O. Box 2999

11/17/00
Page 2
Candi McCulloch M.D.

Next please refer to Page 6 of your LTD Policy Booklet, which defines "LONG TERM DISABILITY BENEFIT" as:

" In the event of a member's total disability, we will pay the Monthly Benefit Amount for each complete month of disability. For any partial month of disability, payment will be made on a pro rata basis. Coverage for this benefit and the amount of this benefit shall be determined from the Schedule of Benefits.

Payment is subject to all of the following conditions:

1. Disability must begin while the member is covered under this benefit provision; and
2. During any period of disability, the member must be under the regular and direct care of a physician; and
3. Benefits will be paid for the period that disability continues beyond the Disability Waiting Period shown in the Schedule of Benefits; and
4. Benefits will not be paid for any period of disability beyond the Maximum Benefit Period shown in the Schedule of Benefits; and
5. On the policy anniversary on or next following the member's 65th birthday, the Monthly Benefit Amount will be reduced to $1000.00, if it is greater than $1000.00."

We have based our decision to terminate your claim for LTD benefits upon Policy language and all documents contained in your claim file, viewed in its entirety, including the following specific information:

1. The Claimant Questionnaire you completed on 4/20/00.
2. Medical records from Carine Porfiri M.D. dated from 11/18/99 to 4/20/00.
3. Our letter dated 10/13/00 to Carine Porfiri M.D.
4. Medical records from Rollin M. Johnson M.D., dated 4/15/00.
5. Our letter dated 10/13/00 to Rollin M. Johnson M.D.
6. Medical records from Beverly Walters M.D. from 9/21/98 to 4/25/00.
7. Medical records from Bruce Coulombe D.C., from 7/12/99 to 6/05/00.
8. Medical records from Richard Norris M.D., dated from 6/1/00 to 6/19/00, including an undated note received in our office on 11/13/00.
9. Our letter dated 10/13/00 to Richard Norris M.D.
10. Medical records from Andrew Salvin, D.D.S. from 7/5/00 to 7/10/00.
11. Medical record from Jordon Grabel, M.D. dated 7/7/00.
12. Medical records from Ignacio Magana, M.D., from 7/11/00 to 10/31/00.
13. Our letter dated 10/13/00 to Ignacio Magana, M.D.
14. Medical record from Christine Baker, M.D. dated 9/5/00.
15. Our telephone call to Christine Baker, M.D. dated 10/31/00.

HL 002

11/17/00
Page 3
Candi McCulloch M.D.

16. A consultation report of the 10/5/00 Discography procedure performed by R. Hicks M.D. at Baystate Medical Center.

17. Surveillance records from our representative vendor, Security Services of Connecticut, Inc. (DBA Fact Finder Investigations) on 5/22/00, 5/23/00, 6/20/00 and 6/21/00.

18. Your interview and statements to Hartford Life Investigators William Moryto and Edward T. Golden on 9/8/00.

19. Records of prescription services rendered to you from CVS Pharmacy, 90 North Main, Northampton, MA.

20. Reports of a pharmacy canvass performed on 9/21/00, 10/17/00, and 11/10/00 by our representative vendor, Master Sleuth Investigations.

21. Independent Medical Examination (IME) and Functional Capacity Evaluation (FCE) reports for services performed by Asha Garg, M.D. on 8/14/00.

22. Job description as Director of Women's Health Center Services, contained in the Educators Mutual Life Insurance Company's claim file, labeled exhibit A.

23. Job Description as Internal Medicine Physician contained in the Educators Mutual Life Insurance Company's claim file, labeled exhibit A.

24. Hartford Life's Medical Department's review dated 11/09/00.

Your claim file reflects you stopped working on 10/3/95 as a result of a disability caused by chronic shoulder and neck pain after a fall while skiing in March 1995. At that time you were working approximately 30 hours per week as a Director of Phyllis Rothman Women's Health Center and as an Internal Medicine Physician approximately 16 hours per week. Accordingly, pursuant to the Policy's definition of Totally Disabled, you became entitled to LTD benefits as the evidence submitted showed that you were unable to perform the material and substantial duties of your occupation.

When Hartford Life assumed the management of your claim, we contacted you for information regarding your current treatment and attending physicians. Subsequently we learned, on 2/28/00, you were involved in a motor vehicle accident, which according to medical records collected for this review, caused pain in the lower to mid back with intermittent pain and numbness in the right gluteal region and upper thigh.

We received your completed forms on 1/19/00. In your Claimant Questionnaire you provided the names of 6 physicians that were currently treating you, (Carine Porfiri M.D., Beverly Walters M.D., Bruce Coulombe D.C., Susan Glover M.D., Lorraine Bello, M.D. and Susan Silverstein, M.D.).

In January 2000, we received an Attending Physicians Statement dated 11/18/99 from Carine Porfiri M.D.. In her statement, Dr. Porfiri relayed that your diagnosis was "...Chronic Pain, Herniated Cervical Disk, TMJ, Migraines...", and that your subjective symptoms include pain in your neck, upper back, right shoulder, jaw pain, severe head pain and migraines. Your medications include Ultram, and Vicodin or Percocet, vitamins, calcium, Glucosamine, Chondroitin Sulfate and

HL 003

11/17/00
Page 4
Candi McCulloch M.D.

herbal remedies. She further comments that "...the chronic condition of pt's (patient's) cervical neck pathology likely to worsen, rather than improve over time..." The last entries in the records we were provided are three phone calls. on 2/29/00, 3/30/00 and 4/20/00. In these calls, information was relayed to Dr. Porfiri regarding your motor vehicle accident on 2/28/00 and the medical treatment rendered concerning that accident. Included in Dr Porfiri's notes was a record of a consultation with Rollin M. Johnson, M.D. dated 4/15/00.

In the consultation report from Dr. Johnson, your subjective symptoms were noted as "...low back pain of about two months duration...following a motor vehicle accident on 2/28/00...". "She reports that ever since, she has persisting problems...are described as pain in the right gluteal region radiating to the lower glutei and to the groin on the right and to the thigh anteriorly and medially. She notes a burning sensation and numbness. Her symptoms are aggravated by flexion of the back...". You told Dr. Johnson that you had a C6-7 fusion and a C5-6 herniation, that you receive chiropractic care on a regular basis two to three times per week.

Upon examination, Dr. Johnson relays in part that; "...She is remarkably flexible despite that fact that she is in pain and has had to reduce her flexibility in both flexion, extension, lateral bend, and rotation." Further, Dr. Johnson relays that symptoms were not reproduced in the examination, that while straight leg raise was positive on the right and produced gluteal pain on the right, the femoral stretch was negative, reflexes were brisk and equal in both lower extremities, and that manual motor and sensory exams were normal. He commented that you had sensitivity on flexion and internal rotation during a range of motion exam of the right hip. Dr. Johnson commented that he suspected you had a "...L4-5 disc on the right with irritation of the L5 nerve root."

We received information from Dr. B. Walters. These records reflect that you were first treated on 9/21/98 for complaints of pain in your neck and upper back. Surgical treatment was suggested in the form of anterior cervical decompression and fusion. Your next office visit was on 6/10/99, after relaying to Dr. Walters you had been in two motor vehicle accidents. Surgery was once again discussed, however not pursued by you. Dr. Walters informed us that you were last treated on 6/10/99, however you did phone her office on 3/15/00 and 4/13/00 to relate that you had been in a car accident on 2/28/00. You were referred for a cervical and lumbar MRI and refused an appointment for 6/29/00, stating you would go to a different physician, because you did not want to wait.

We received information from Everest Chiropractic. B. Coulombe D.C. relays that your subjective and objective restrictions/limitations are essentially the same as you relayed to Drs. Porfiri, Johnson and Walters. The records reflect that you are treated on several occasions between 7/12/99 and 6/05/00 (the last record of treatment we have).

Dr. Johnson referred you to Dr. Norris for treatment. We received information from Dr. Richard Norris. His records reflect that you were seen for a consultation on 6/01/00. Upon examination, Dr.

HL 004

11/17/00
Page 5
Candi McCulloch M.D.

Norris relays that your subjective and objective restrictions/limitations regarding your lower back pain and neck & right shoulder pain are essentially the same as you relayed to Drs. Porfiri, Johnson, Walters and B. Coulombe D.C. Dr. Norris opines that his diagnostic impression was that you had "...a right sided L4 radiculitis..." and possibly "...some component from the L5 both from the disc bulge and the central stenosis..." Dr. Norris further opined that "...factor in some mild right sided sacroliliac pain...". His notes reflect that his plan was to start physical therapy and to perform a right L4-5 transforaminal epidural steroid injection under fluoroscopic guidance. This injection was performed on 6/9/00.

On 6/19/00, Dr Norris saw you in follow-up to the 6/9/00 injection. At that time you relayed that the injection had afforded you 100% relief of pain for approximately 2 days, (approximately 6/11/00). After two days, your pain symptoms returned in your lower back. Dr. Norris opined that an additional epidural or selective nerve root block could confirm the response she had to the prior injection. Further, he opined that if the same clinical response was obtained that a surgical reduction could be considered.

On 6/19/00, Dr. Norris examined your neck and right shoulder. Upon examination Dr. Norris relays that your subjective and objective restrictions/limitations are essentially the same were relayed to Drs. Porfiri, Johnson, Walters and B. Coulombe D.C. It is not clear, based on the notes we were provided, if the additional epidural or selective nerve root block treatments recommended by Dr. Norris took place. In addition, it is also not clear if his recommendation regarding treatment with Neurontin or the alternative topical Capsaicin for your neck and right shoulder pain, and/or gradually increased amounts of Amitriptyline for insomnia, took place.

In July and August of 2000, we contacted you relative to scheduling independent medical examinations and functional capacity evaluations. During the scheduling process, you provided us with the names and addresses of additional treating physicians. We subsequently obtained records of treatment from Drs. A. Slavin, J. Grabel and I. Magana.

Dr. Slavin treated you for bilateral jaw joint facial discomfort. He notes that this is a re-injury to the temporomandibular joint as a result of the motor vehicle accident of 2/28/00. You were treated with bilateral joint lavage and corticosteroid injection on 7/06/00. There is no indication of any functional limitation that would preclude you from performing your own occupation as a Director of Women's Health Center Service and as a Internal Medicine Physician.

On 7/7/00 you saw Dr J. Grabel in consultation for your chronic lumbar and cervical pain conditions. Dr. Grabel opined that additional cervical surgery would not be helpful and further that another opinion should be sought regarding a surgical approach to your lumbar spine.

On 7/11/00, you were seen in consultation by I. Magana M.D. Dr. Magana relays that it is his impression that you have chronic mechanical cervical pain and radiculopathy, in addition to

HL 005

11/17/00
Page 6
Candi McCulloch M.D.

spondylitic changes and a protruding disc at C5-6 along with some mechanical low back pain. His recommendations included a continuation of conservative measures, epidural steroid injections, or surgery. He suggested "...cervical flexion-extension x-rays and lumbar Discography at L3-4, L4-5, and L5-S1. She will consider her options."

We contacted C. Baker M.D. for medical records. We received Dr. Baker's treatment notes for 9/5/00. There is no indication of any functional limitation that would preclude you from performing your own occupation as a Director of Women's Health Center Service and as a Internal Medicine Physician.

Dr. Baker's notes contained a consultation report of the 10/05/00 Discography procedure performed by R. Hicks M.D. at Baystate Medical Center. Dr. Hicks opined that there was a L4-5 right anterolateral annular tear which when tested, produced a significant pain response.

On 5/22 and 5/23/00, 6/20 and 6/21/00 our representative surveillance vendor, Security Services of Connecticut, Inc. (DBA Fact Finder Investigations) observed you.

During this period you were observed driving children from your residence to the Hilltown Cooperative Charter School in Williamsburg Massachusetts over local roads. You drove two vehicles, a 1999 Subaru Forrester SW, Massachusetts plate #RT76BK and a late model Porsche 911 Massachusetts Plate #RW89TU. We note that the Porsche is a manual transmission vehicle, requiring (specifically) the use of your left leg and right arm used in concert to maximize the efficiency of this vehicle's operation. We note that during the time we observed you driving this vehicle, the operation appeared to be smooth and non-eventful. In addition, we note that during this period you are seen pivoting out of the vehicles without assistance or hand support.

While driving the Subaru, you were observed to pull the driver's side seatbelt down and engage it in the lock with your right arm/hand, move your neck, shoulders and arms in an unrestricted manner. While backing up all vehicles, you turned and used your neck/head to look in all directions for oncoming traffic or obstructions.

On 5/22 on two occasions, you used both arms to reach above your head to pull the Subaru hatchback closed. On 5/22 and 5/23 you were observed to open and close your car door and a door to the school multiple times.

On 6/20 you were observed driving the Porsche to Hilltown Cooperative Charter School. You carried what appeared to be a paper grocery sack and an artificial plant while walking from your vehicle into the school. These items appeared to be awkward to hold as, while walking, you held the items first with both arm, then balanced the items on your left hip and held them with your left arm. You walked to your vehicle. While backing up the vehicle, you used your neck and head to look in all directions for oncoming traffic or obstructions.

HL 006

11/17/00
Page 7
Candi McCulloch M.D.

Later that same evening you were observed at what appeared to be a party for the school. During this time from 7:18 PM to 8:53 PM you were observed to:

1.  Demonstrate the ability to stand and walk for an extended period of time.
2.  Show the ability to move your head, neck, arms, upper and lower torso and extremities freely and independently.
3.  Demonstrate the ability to twist your upper torso at the waist, lift your left leg and spin on your right heel to complete a 360-degree turn. These movements were performed on multiple occasions during the evening.
4.  Between 7:18 PM and 8:53 PM, you sat for approximately 5 minutes. During this approximately 5 minute period you leaned forward, sometimes with your arms resting on your thighs. You conversed with people located on either side of you. You kept your shoulders in a static position, while utilizing your neck to turn your head in the direction of the person you were speaking to.
5.  Demonstrate the ability to dance and use all parts of your body. While dancing, you were seen to bend and twist at the waist, squat and immediately return to a standing position, hop, move your hips from side to side, lift your arms to shoulder and above head level, swing your arms, extend your legs and point your toes, flex your neck and back, move your head and neck in a bouncing motion, and bend at the waist to almost 180 degrees to pick an item off the ground.
6.  Carrying flowers in your left hand and a paper grocery sack in your right hand to your car.
7.  Driving your Porsche from the parking lot to the party location. You got out of the vehicle and before getting back into the driver's compartment, you moved the drivers seat forward, bent at the waist, placed your head and shoulders inside the rear passenger compartment and retrieved an item from the rear passenger seat. Prior to getting into the driver's seat you repeated these movements to place the item back in the rear passenger compartment. Once seated in the driver's seat you twisted at the waist to adjust the front passenger's seat, closed the driver's side door and drove away.

On 6/21 between the hours of 9:56 AM and 10:34 AM, you were observed driving the Porsche and a red Volkswagen Jetta, entering several businesses in the town of Leeds/Northampton, MA and walking through the downtown area of town. During this period, you demonstrate the ability to stand, walk briskly, and swing your arms, drive, move your shoulders, head, neck and arms independently and without visible restrictions.

On 9/8/00, Hartford Life Investigators, William Moryto and Edward T. Golden interviewed you at the law offices of Valerie Botter, 16 Center Street, Northampton MA. Ms. Botter was not present and it is our understanding that you are not represented by counsel for this claim.

During the interview, you were positively identified as the person depicted in the video surveillance discussed earlier in this letter. At this time, you were asked to detail the limitations to your daily activities caused by your disability, how those limitations restrict your ability to perform your

HL 007

11/17/00
Page 8
Candi McCulloch M.D.

occupation and to provide information regarding your medical treatment. Your responses to the investigator's questions were put into statements, which you were given the opportunity to read, correct and sign.

In your signed statement you relayed the following, in part:

" I have been asked to describe my limitations relative to my disability.   The only thing I can tell you is that when I get up in the morning I am in pain.  If I bend over, it ends up increasing the pain. A couple of hours into the day, I try not to bend and pick up anything. It will just make it worse. I look at something before I decide to pick it up.  If I do it, I will pay for it dearly.  I will be in more pain and have to take more medication.  Sometimes I don't bother bending to pick up anything because of what the additional pain will do to me. My limitation is pain.  I go to sleep with it and get up with it.  I can't stay in one position for very long.  It is a risk benefit ratio to whatever I do.

I have been asked what I do on an average day.  I don't sleep well through the night.  An average night is not sleeping well.  I don't remember the last night I sleep well.  I get up in the morning.  I need to get my kids to school.  I take a hot shower or hot tub either before or after getting the kids off to school.  I get them cereal or something quick for breakfast.  I drive them the two miles to their school.

Once a week I go to the massage therapist, the chiropractor, doctor's appointment and a knitting class.  I will write letters.  I read books.  I read a lot.  I pay bills.  I walk the dog for ten or fifteen minutes.

I pick up the kids after school.  I bring them home for a snack, then drive them to soccer.  During the season it is six days a week.  I also take them for other activities.

I make dinner.  If I have to do errands and have to carry anything, I usually bring the kids with me. My son will carry things for me.

I don't do any heavy cleaning.  The only cleaning I do is laundry.  I presently have someone come in once a week to clean.  It is not enough.  I am considering having someone come in five or more days a week.  I need a housekeeper.   I had a housekeeper six days a week until this summer.   I don't do any yard work.  I have a herb garden and will spend a few minutes weeding it.

On Monday nights I go to yoga.  I am there from about 6:30 for a sauna, then the yoga until about 8:45PM.  The knitting is a two-hour class in Northampton.

There is a lot of live music and concerts in Northampton.  I might go two to three times a month. The music is played at local places and outside during the summer months.  I don't do any dancing. I wish I could."

HL 008

11/17/00
Page 9
Candi McCulloch M.D.

" I have been asked to describe a good day.  A good day is a day with less pain.  On a good cycle, I will take less pain medication.  A good day is being able to have a pain level that will let me enjoy just sitting reading with my children, or just braiding my daughter's hair.  A good day is a day of not thinking of the pain constantly.

I have been asked to describe a bad day.  On a real bad day, I can't do anything, but I do it anyway.  I cry.  I do the same things I have to do.  I take more medication.  Right now everyday, is a bad day.  If I am in a good cycle, I might have two bad days a week.  In a good cycle of pain, I am still in pain.

I have been asked what prevents me from returning to work.  It is the pain.  Pain is a very subjective.  I have constant pain in my neck.  It is between my shoulder blades and my neck.  The neurological pain is in my shoulder.  It is a very deep pain.  The pain in my neck and scapula is always there.  It is a burning pain.

My jaw is sometimes good and sometimes bad.  I wear a mouthpiece at night.  My jaw pain is a dull ache.  When my muscles tense, my jaw hurts more.

Now I have a lower back pain.  It is deep in my lower spine.  It goes into my lower right hip.  Sometimes it goes into my thigh.

I can't live with my neck and back the way it is.  I have to do something to get it better.  I have tried acupuncture with four or five different people, acupressure, feldenkreis, Alexander technique, hands on healing, Reiki, herbal therapies such as Chinese herbal medicines, aroma therapies and essential oils, antidepressants, and membrane stabilizers during the past four to five years.

I have been asked what duties and activities relative to my profession I unable to perform.  It is all of them.  I believe it is unethical and immoral to be on narcotics and practice medicine.  My limitation is pain.  I can't think and examine people while I am in pain and on narcotics. "

During the interview, you were told of the surveillance. You gave a second statement, but you refused to sign it. In that statement, you provided the following information in part:

" I have been informed a surveillance had been performed on my activities.  I am told I am shown dancing outside of my children's school.  I remember the day.  I was drinking and taking medications that day.

I would love to dance more.  If I could ever get to the point where I could do it without taking booze and lots of drugs, I would do it.

HL 009

11/17/00
Page 10
Candi McCulloch M.D.

I am told I am not shown displaying any impairments or wincing from pain while walking, moving about or driving. I limp a lot. I don't limp all of the time. Once I get moving, I don't limp as much, but it still hurts."

We obtained records from CVS Pharmacy in Northampton MA for prescription service rendered from 3/25/00 to 9/13/00. These prescriptions include 5 services of 100 pills (500 total) of Ultram and 2 services of 50 pills (100 total) of Hydrocodone/APAP. Ultram, a non-narcotic and Hydrocodone a narcotic, are used for the treatment of pain. Dr. Porfiri prescribed these services.

We also canvassed 44 pharmacies, (8 Eckerd's and 36 other pharmacies) in the West Palm Beach, FL area for information regarding prescription services rendered to you from 11/01/99 to present. Of the 44 pharmacies, we found only 2 prescriptions, at the Walgreen Drug Store located at 1255 Palm Beach Lakes Blvd in West Palm Beach FL. The prescriptions were for 100 tablets of Roxicet, a narcotic, on 2/28/00 and 100 tablets of Hydrocodone on 11/9/00. Dr. Porfiri prescribed both of these services.

On 8/14/00, an Independent Medical Examination and Functional Capacity Evaluation was performed by A. Garg M.D. at Vernon Medical Center, Worcester MA. In addition to Dr. Garg's comments regarding the examinations, we requested Dr. Garg's comments on the video surveillance. Dr. Garg identified you in the video as the person she examined on 8/14/00.

Dr. Garg opines (in part), in her report dated 9/8/00, as follows, "...The functionality shown by Ms. McCulloch in the video does not correspond to the way she presented for the examination...The functionality shown in the video changes my opinion some what in terms that she's able to function pretty well in her routine activities...After reviewing detailed medical information, obtaining history from the patient, and examination, as well as reviewing the videos this is my opinion that she should be able to work as an internist 16 hours a week and administrator work in the Women's clinic 30 hours a week..."

In the FCE report, Dr. Garg relays, quoted here, in part, "...Restrictions & Limitations...Avoidance of heavy lifting, more than 10 lbs.....Frequent bending, stooping, twisting, and kneeling should be avoided...Avoidance of one continuance constant positioning for more than one hour...she should be able to do light duty work without any problems with the above limitations."

On 10/13/00, we contacted to Drs. C. Porfiri, R. Norris, R. Johnson, and I. Magana and requested that they provide their comments on the IME/FCE, surveillance and interview. On 10/31/00, we contacted Dr. C. Baker for her comments on these items, also. We asked that responses are received by 11/03/00, and if responses were not received, we would assume that they were in agreement with Dr. Garg's assessment. As of the date of this letter Drs. Porfiri and Johnson have not responded. On 10/31/00 Dr. Baker indicated that it was not her practice to review video or IME

HL 010

11/17/00
Page 11
Candi McCulloch M.D.

no response to this – my involvement in Dr. McCulloch's care was rather limited...I prefer to not comment on this...".

On 10/31/00, Dr. Magana provided the following, quoted here in part, "...I agree with Dr. Gargs that the patient in the video tape would seem capable of doing what would seem independent in her activities of daily living...It is my opinion that this patient is capable of working in the following manner: She should be allowed to change her position every hour, she should avoid lifting more than 20 pounds, occasionally or 10 pounds repetitively. Within these restrictions, she would seem capable of working a full eight hour day. She would, in my opinion, be capable of practicing medicine two days per week as she was doing prior to her injury."

Our Medical Department reviewed your file including medical data, videos and your interview/statement. The weight of the evidence contained in your file does not support your inability to perform the duties of your occupation as it existed at the time of your leave from work on or after 8/14/00. Consequently, it is our determination that you no longer meet the Policy's definition of Totally Disability as of 8/14/00, and as such your claim has been terminated.

Because benefits have been paid beyond 8/14/00, an overpayment of $19,655.53 has occurred. This overpayment occurred as follows:

| | |
|---|---|
| Benefits paid 8/14/00 to 8/31/00 | $7658.00 |
| Should have paid | $3318.47 |
| Overpaid | $4339.53 |
| | |
| Benefits paid 9/1/00 to 10/31/00 | $15,316.00 |
| Should have paid | $0.00 |
| Overpaid | $15,316.00 |
| | |
| Total Overpayment | $19,655.53 |

Please submit your check for $19,655.53 made payable to Hartford Life and Accident Insurance Company.

If you have any additional information, not previously submitted, which you believe will assist us in evaluating your claim for LTD benefits, please forward that to us for our consideration within sixty (60) days from the date of your receipt of this letter. In particular, as medical information from any attending physicians including restrictions/limitations placed on your activities, prescription records, hospitalization records, office notes, narrative reports, testing and laboratory results that may assist us in further evaluating your claim for benefits. The Hartford will review any additional information, along with previously submitted information, and notify you of the results of our review.

11/17/00
Page 12
Candi McCulloch M.D.

If you do not have additional information, but you disagree with our denial decision, you have the right to appeal our decision and review pertinent documents in your claim file. If you do not agree with the reason why your claim was denied, in whole or in part, and you wish to appeal our decision, you must write to us within sixty (60) days of the date of this letter. Your letter, which must be signed and dated by you or your legal representative, should clearly outline your position and any issues or comments you have in connection with your claim and our decision to deny your request for benefits under the Policy.

Once we receive your appeal, we will again review your claim, based upon your statements and the documents and notes contained in your claim file. Upon completion of this review, we will advise you of our further determination.

We reserve all rights and defenses available to us in making our determination

If you have any questions, please feel free to contact our office at (800) 359-8391. Our office hours are 8:15 AM to 4:15 PM EST, Monday through Friday.

Sincerely,

Kim L. Gabrielsen, Senior Investigative Analyst
Special Investigations Unit, Group Benefits Division
Hartford Life and Accident Insurance Company

HL 012



**EDUCATORS MUTUAL LIFE**

202 North Prince Street      717-397-2751
P.O. Box 83149              800-233-0307
Lancaster, PA 17608-3149   FAX:  717-481-8252

August 26, 1999

Candi McCulloch MD
119 Turkey Hill Road
Florence, MA   91962

Re:     Long Term Disability Claim
        PG-85

Dear Dr. McCulloch:

Effective July 1, 1999, Educators Mutual Life Insurance Company has contracted with Group Reinsurance Plus (GRP), a service provider segment of Hartford Life and Accident Insurance Company, to administer your disability claim.

This in no way affects your rights under your Certificate of Insurance. None of the provisions of your policy which affect the determination of your disability benefit amount or duration of payments have changed as a result of this transfer.

This is your final check from Educators Mutual Life covering the period August 1, 1999 through October 31, 1999. This advance payment is necessary to allow enough lead time for the new claims administrator to transfer all claim information to their system. The benefit payment for November 1999 will come directly from GRP near the end of November. Details regarding future claim payments will be sent to you from GRP prior to their first payment.

If you have any questions regarding your claim, please feel free to contact GRP after September 20, 1999 by writing to the address below, or by calling their toll-free number.

        Group Reinsurance Plus
        P.O. Box 2993
        Hartford, CT   06101

        Toll free number:  800-359-8391

Sincerely,

                                H  2027

Jon D. Eisenberg
Disability Claims Specialist
Life and Disability Department



ADMINISTERED BY HARTFORD LIFE ON
BEHALF OF EDUCATORS MUTUAL LIFE CO.

December 15, 1999

Candi McCulloch MD
63 Grove Ave
Leeds, MA 01053

Dear Dr. McCulloch:

We are writing in regards to your claim for Long Term Disability (LTD) benefits.

In reviewing your claim, we have found that effective September 1st of each year; you are due a Cost of Living Adjustment (COLA). A recalculation of your monthly benefit was performed and has resulted in an underpayment of your claim. Figures used to perform this recalculation were taken from the Consumer Price Index (CPI) put out by the Bureau of Labor Statistics Data. Your underpayment is comprised as follows:

**Actually Paid:**
October 1, 1999 through November 30, 1999          $7475.30 x 2 = $14,950.60

**Should Have Paid:**
October 1, 1999 through November 30, 1999          $7658.00 x 2 = $15,316.00

**Underpayment:**
$15,316.00 - $14,950.60 = $365.40

A check in the amount of $8023.40 has been sent to you under separate cover. This amount represents your December benefit of $7658.00 as well as the underpayment amount of $365.40. Please note that your next LTD benefit payment of $7658 will be sent to you in January 2000, so as to reach you by the end of that month. You will continue receiving a monthly benefit in the amount of $7658.00 through August 2000. After that your benefit will be recalculated and will reflect your COLA.

If you have any questions regarding this matter, please feel free to contact me at 800-359-8391, ext.35413.

Sincerely,

*Susan A. Wilk*
Susan A. Wilk
Claims Examiner
Hartford Life and Accident Insurance Co.

Hartford Life Insurance Companies
Simsbury Disability Claim Office
175 Powder Forest Drive
Simsbury, CT 06089

Mailing Address: P.O. Box 2999
Hartford, CT 06104-2999
Toll Free 800 359 8391
Facsimile 860 843 4716

CMc 052

**ADMINISTERED BY HARTFORD LIFE ON
BEHALF OF EDUCATORS MUTUAL LIFE CO.**

December 15, 1999

Candi McCulloch MD
63 Grove Ave
Leeds, MA 01053

Dear Dr. McCulloch:

We are writing to you regarding your claim for Long Term Disability (LTD) benefits. In order to properly evaluate your LTD claim, it is necessary to periodically update our records with regard to your disability and other income benefits you are receiving or are eligible to receive.

Please complete and return the following:

Authorization to Obtain and Release Information
Claimant Questionnaire
~~Personal Profile Evaluation~~

Please have the physician treating you complete and return the following:

Attending Physician Statement

Please return all requested information within thirty (30) days in order to avoid any delays in the processing of your claim for benefits.

If you have any questions, please do not hesitate to contact me at 800-359-8391, ext. 35413.

Sincerely,

Susan A. Wilk
Claims Examiner
Hartford Life and Accident Insurance Co.

Hartford Life Insurance Companies
Simsbury Disability Claim Office
175 Powder Forest Drive
Simsbury, CT 06089

Mailing Address: P.O. Box 2999
Hartford, CT 06104-2999
Toll Free 800 359 8391
Facsimile 860 843 4716

CMc 053