UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
(BRIDGEPORT)

| | |
|---|---|
| CANDI McCULLOCH,<br>        Plaintiff, | NO. 3:01CV1115(AHN) |
| vs. | |
| HARTFORD LIFE AND ACCIDENT<br>INSURANCE COMPANY and EDUCATORS<br>MUTUAL LIFE INSURANCE COMPANY,<br>        Defendants. | NOVEMBER 18, 2003 |

**PLAINTIFF'S CORRECTED MEMORANDUM OF LAW
IN RESPONSE TO DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO FILE SECOND AMENDED COMPLAINT
AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION**

Taking one more shot in their war of attrition, defendants have filed an Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint ("Opposition") and a Motion to Dismiss ("Motion") the proposed amended claims. In summary, the Opposition and Motion are without any legal and factual merit:

(1) As defendants are well-aware, the final and critical act about which plaintiff has complained since the first pleading in this case is defendants' *November 17, 2000* termination of her disability benefits. Additionally, plaintiff's newly added claims all relate back to her previous pleadings. Accordingly, plaintiff's October 2003 amended pleading is within the applicable three year statutes of limitation. Plaintiff's claims are not time barred.

(2) Plaintiff's tortious interference claim is well pled. Plaintiff has alleged that

defendant Hartford Life and Accident Insurance Company ("Hartford") interfered with plaintiff's insurance contract with defendant Educators Mutual Life Insurance Company ("Educators"). Defendant Hartford was not a party to that contract, and has consistently represented, prior to the present motion, that it was not a party to that contract, and in recent deposition testimony that the "Reinsurance Agreement" was specifically designed to avoid assuming the Educator's contract with insureds.

(3) Defendants have failed to meet their burden to show that they will be prejudiced by the proposed amendments. Any delay in filing was the result of defendants' misrepresentations and failure to disclose the information upon which the amendments are based despite discovery requests and court orders; and

(4) Defendants completely mischaracterize plaintiff's last count as arising under CUIPA, when that count simply and properly pleads the defendants' violation of CUIPA as part of the CUTPA claim.

Accordingly, the Court should grant plaintiff's Motion for Leave to Amend, and deny defendants' Motion to Dismiss.

**FACTS**

On June 15, 2001, plaintiff filed her initial complaint (the "Complaint") in the above-captioned action. The Complaint alleged that plaintiff was insured by Educators, which accepted her claim for disability benefits in 1995. Complaint, ¶¶ 5-7. The Complaint further alleged that Hartford, on Educator's behalf, terminated plaintiff's benefits on November 17, 2000. Id., ¶19. The Complaint contained one

2

count, which alleged that the termination constituted a breach of plaintiff's insurance contract. Id., Count One.

On November 26, 2001, plaintiff requested that defendants identify and produce all documents that reflected the relationship between defendants. Defendants sought numerous extensions of time to respond to plaintiff's discovery requests, and ultimately refused to respond to these requests. In April 2002, plaintiff also requested that defendants produce all communications, including documents and contracts, relating to Hartford's assumption of the function of "administrator" for Educator's claimants. In July, 2002, plaintiff finally obtained a court order requiring defendants to comply with her November 2001 discovery requests. (Order, dated July 2002.) In the Order, the Court specifically noted that, through disclosure of the information related to defendants' relationship "plaintiff could likely discover information relating to her breach of contract claim, or perhaps discover information which could lead to an amendment of her complaint," particularly the addition of a bad faith claim. Order, at p.4 & n.5. Defendants waited for two months,[1] until September 2002, before they identified and produced the Reinsurance Agreement between them.

Soon thereafter, in October, 2002, plaintiff amended her complaint (the "First Amended Complaint") to incorporate allegations related to the Reinsurance

---

[1] Defendants did not seek an extension of time for compliance as otherwise required by local rules, but consistently sought and obtained consent from plaintiff for this delay which finally resulted in several filings of "supplemental compliance".

3

Agreement. Plaintiff alleged among other things that, in July 1999, defendants executed a "Reinsurance Agreement" whereby "Educators provided Hartford with reserves allocated to certain benefits that Educators was obligated to pay, including Ms. McCulloch's benefits . . . Under the agreement, Hartford would be entitled to retain the reserves allocated for any beneficiary that Hartford eliminated from the payment schedule . . . If Hartford terminated McCulloch's benefits, it would be entitled to transfer the substantial reserves allocated to her benefits, to its own accounts. Almost immediately after the Reinsurance Agreement became effective, Hartford began a campaign to terminate McCulloch's benefits." Id., ¶¶ 11-12. Plaintiff also added a claim of bad faith against both defendants based on the Reinsurance Agreement and Hartford's improper campaign to terminate plaintiff's benefits. Id., Count Two.

Plaintiff continued to seek discovery related to the newly disclosed Reinsurance Agreement. Among other things, plaintiff requested that defendants identify and produce all transmittals between them relating to the Reinsurance Agreement. Plaintiff also sought long overdue responses to her April 2002 discovery request that defendants produce all documents relating to Hartford's assumption of the function of administrator. In November 2002, defendants represented that they were still searching for responsive documents, which they represented "may" exist. By February 12, 2003, after changing lead counsel again and seeking a postponement as a courtesy, defendants had still not provided responsive documents, but promised to "expedite responses" and provide production on a

4

"rolling basis." See e.g. Letter from Eliot Gersten, dated February 11, 2003 (Exhibit A, hereto); Response from Roberta Sharp, dated February 12, 2003 (Exhibit B, hereto).[2]

After finally receiving *some* responsive documents, plaintiff sought to depose defendants' corporate representatives regarding the Reinsurance Agreement. Defendants delayed these depositions until May and July 2002, again requiring intervention by the court. These depositions revealed that, *inter alia*, following the Reinsurance Agreement, Educators had absolutely no involvement, or financial interest, in Hartford's conduct with respect to the Educators' insureds that were the subject of the Reinsurance Agreement. See Defendants' Motion to Quash, pp.2-3. Educators claims that it was not even aware that Hartford had terminated plaintiff's benefits until she filed the above-captioned action.

Following the depositions, plaintiff served defendant with interrogatories and requests to admit related to the affect of the Reinsurance Agreement and defendants' communications with insured prior to and following the Reinsurance Agreement. Defendants denied the requests to admit, and have refused to respond to the interrogatories. To avoid filing a motion to compel, plaintiff noticed the deposition of defendants' representatives with knowledge of the basis for defendants' denials. Defendants have sought a protective order to prevent these

---

[2] Defendants have now represented to the court that plaintiff never requested the very documents defendants had previously promised to produce on a "rolling basis."

5

depositions.

On October 22, 2003, plaintiff moved for leave to file her second amended complaint, based on the information that defendants have admitted regarding the Reinsurance Agreement, *viz.* that "in the Reinsurance Agreement, Educators sought to cede all responsibility to claimants, including plaintiff, and following the 'Reinsurance Agreement,' Educators abdicated any responsibility to Hartford and no longer had any involvement in handling the benefits of these claimants, including plaintiff. See, Second Amended Complaint, ¶ 12.

Based on information disclosed in discovery to date, plaintiff's proposed amendment:

1. adds a separate breach of contract claim against Educators, which asserts that

"Educators breached its contract with plaintiff by entering into the Reinsurance Agreement, seeking to cede all of its responsibilities to plaintiff, failing to service plaintiff's benefits after November 1999, and failing to oversee Hartford's adjudication of plaintiff's claim, thereby abandoning all of its obligations to Plaintiff." Id., ¶ 31;

2. adds the following allegation to her existing Bad Faith count: "Defendant Educators also violated the covenant of good faith and fair dealing inherent in the Policy in entering the Reinsurance Agreement, thereby ceding to Hartford all of its responsibilities to plaintiff, failing to service plaintiff's benefits after November 1999,

failing to oversee Hartford's adjudication of plaintiff's claim, and thereby abdicating its responsibilities to plaintiff." Id., ¶ 36;

    3. adds a claim of tortious interference against Hartford, based on plaintiff's previous allegations regarding Hartford's improper campaign to terminate plaintiff's benefits as well as Hartford's misrepresentation that it "was acting as an administrator for Educators and/ or on behalf of Educators, when it was in fact acting on its own behalf and without any involvement of Educators;" Id., ¶ 40(a); and

    4. adds a claim that defendants conduct violated CUIPA and CUTPA, "including but not limited to misrepresenting that Hartford was administering the claims on behalf of Educators when, in fact, it was administering claims on its own behalf and for its own benefit, and failing to inform plaintiff and other claimants of this fact as well as the fact that Educators had ceded any and all responsibility regarding the claims to Hartford."

Id., ¶ 44.

**ARGUMENT**

**A.**    **THE COURT SHOULD ALLOW THE PROPOSED AMENDMENTS**

    **1.**    **APPLICABLE STANDARD**

The court should grant a motion for leave to amend with great liberality. Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); F.R.C.P. 15(a). In this Circuit, the court should only deny leave to amend where the non-movant shows that it will be prejudiced by the amendment or that the amendment is in bad

faith. <u>Block v. First Blood Assocs.</u>, 988 F.2d 344, 350 (2nd Cir. 1993), <u>citing</u>, <u>State Teachers Retirement Bd. v. Fluor Corp.</u>, 654 F.2d 843, 856 (2d Cir. 1981). A party shows "prejudice" if it establishes that the amendment would (i) require it to expend significant additional resources to conduct discovery and prepare for trial or (ii) significantly delay the resolution of the dispute. <u>Id</u>. "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." <u>Id</u>., <u>quoting</u>, <u>Fluor</u>, 654 F.2d at 856.

### 2. DEFENDANTS HAVE NOT MET THEIR BURDEN TO JUSTIFY DENYING PLAINTIFF LEAVE TO AMEND

Defendants' unsubstantiated statements that they will "not have sufficient time to investigate Plaintiff's new claims," and that the amendment will cause "significant additional expense" and "a significant delay in the resolution of the dispute," is not sufficient to meet defendant's burden to establish prejudice. <u>See</u> Def. Br., p.3; <u>Block</u>, <u>supra</u> (affirming leave to amend); <u>Flour</u>, <u>supra</u> (reversing denial of leave to amend). In <u>Block</u>, the Second Circuit explained that generalized claims that the proposed amendment would prejudice the opponent by requiring time, expense and effort, such as defendants in this case allege, are insufficient to justify denying leave to amend. The <u>Block</u> court explained that an *opponent must substantiate* its claim of prejudice. <u>Id</u>., <u>citing and distinguishing</u>, <u>Strauss v. Douglas Aircraft Co.</u>, 404 F.2d 1152, 1157-58 (2d Cir. 1968) (where defendant "successfully demonstrated that he could have timely brought his action in another forum had the defendant promptly raised its statute of limitations defense.") and <u>Evans v. Syracuse City Sch. Dist</u>., 704

8

F.2d 44, 47 (2d Cir. 1983) (where opponent presented evidence that the amendment was based on information known by the pleading party, who improperly failed to disclose the information to the opposing party.)

In Flour, supra, the Second Circuit held that the District Court abused its discretion in denying leave to amend to allege new and separate misrepresentations. The court explained that, even though amendment would result in delay, the opponent could not meet its burden to establish undue prejudice where the information upon which the amendment was based had been the subject of discovery and was better known to the defendants, the defendants had not yet filed a motion for summary judgment, and the relevant parties had already been deposed.

Similarly in this case, defendants cannot meet their burden to establish undue prejudice. The amendments are based on the Reinsurance Agreement that defendants executed and on defendants' own conduct relating to the Reinsurance Agreement. There is no information relevant to plaintiff's proposed amendment that is not already within the possession, custody, control or knowledge of the defendants and defendants have not argued otherwise. Clearly, the Reinsurance Agreement and defendants' conduct related thereto was better known to the defendants than to plaintiff. Further, defendants have not yet filed a motion for summary judgment and the claim that they will not have sufficient time to investigate plaintiff's claim prior to the dispositive motion deadline is not credible in light of the fact that plaintiff has

been seeking discovery related to these claims for two years now. [3] The majority of discovery requests related to these claims have already been served. The court should also disregard defendants' sudden concern with the expeditious resolution of this case when it is defendants that have continually delayed discovery and sought numerous extensions of time. Under these circumstances, defendants' complaint of prejudice rings hollow. See Flour, supra.

Finally, the court should reject defendants' argument that plaintiff's failure to assert the claims earlier is unjustified because "plaintiff has been aware of these theories of recovery since the early stages of litigation." As alleged in the proposed complaint, defendants misrepresented Hartford's relationship with Educators and improperly failed to inform plaintiff of the Reinsurance Agreement prior to the litigation. Second Amended Complaint, ¶ 40(a). Further, as set forth in detail above, besides misrepresenting the relationship between the defendants to the plaintiff while Hartford acted to terminate her benefits on behalf of Educators, defendants have since delayed and have continued to obstruct plaintiff at every turn in plaintiff's attempts to obtain discovery. Plaintiff's failure to plead additional theories until recently is a direct result of defendants' failure and refusal to comply with court orders and discovery requests. Id. The Court should not reward defendants for their

---

[3] Moreover, there are several motions seeking discovery compliance from the defendants pending before the court. If any of the motions are granted, the defendants' record in this case demonstrates that they will request an extension to comply and thus any delay in meeting deadlines will be a self inflicted one which adversely affects the plaintiff in bringing her case to court.

obstructionist tactics by denying plaintiff the right to amend her complaint on the ground that the so-called "late" amendment would prejudice defendants. See Flour (amendment was not untimely where plaintiff did not learn of the facts upon which the amendment was based prior to the deposition of a certain witness.)

### B. THE COURT SHOULD DENY THE MOTION TO DISMISS

#### 1. Standard for Granting Motion to Dismiss

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor. Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 127 (2d Cir. 2001). The case will not dismiss be dismissed unless the Court is "satisfied that the complaint cannot state any set of facts that would entitle [the plaintiff] to relief." Id.

#### 2. The Tortious Interference Count is Well Plead

##### a. The Claim Is Not Barred by the Statute of Limitation

Plaintiff's claim for tortious interference is patently not time barred, and defendants' claim to the contrary is specious. First, the tortious interference claim clearly relates back to the date of her previous pleadings because it arises "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading" F.R.C.P. 15(c); Travelers Ins. Co. v. Third Assoc., 14 F.3d 114, 125 (2nd Cir. 1994); Franc v. Bethel Holding Co., 73 Conn.App. 114, 136, 807 A.2d 519 (2002). The claim that Hartford's termination of plaintiff's benefits interfered with

11

plaintiff's disability contract with Educators, and that Hartford engaged in tortious conduct in pursuing its intent to terminate plaintiff's benefits, arises out of the same conduct, transaction, or occurrence as the previous pleadings, which alleged that Hartford wrongfully terminated plaintiff's disability benefits. Complaint, ¶¶ 19, 21; First Amended Complaint, ¶¶ 11-13, 17, 22-24, 29-31 ; Proposed Second Amended Complaint, ¶¶ ¶¶ 23, 39, 40, 41;[4]

Second, plaintiff filed her claim for tortious interference within the applicable three year limitation period. Pursuant to defendants' own authority, plaintiff's claim accrued on November 17, 2000, when Hartford terminated plaintiff's benefits, purportedly on behalf of Educators. Second Amended Complaint, ¶¶ 23, 39, 40, 41; Collum v. Chapin, 40 Conn.App. 449, 452, 671 A.2d 1329 (1996) (tortious interference claim accrues on the date the third party terminates the contractual relationship with the plaintiff); See also Goldman v. Feinberg, 130 Conn. 671, 675, 37 A.2d 344 (1944) ("the tort is not complete unless there has been actual damage suffered.")[5] Accordingly, plaintiff's October 22, 2003 filing was within the three year

---

[4] Paragraph 23 alleges that, "on November 17, 2000, Hartford, representing to act on behalf of Educators, terminated McCulloch's disability payments." Paragraph 39 incorporates paragraph 23 into the tortious interference count. Paragraph 40 states that, "[f]ollowing the execution of the "Reinsurance Agreement," Hartford engaged in a pattern of activity designed to interfere with plaintiff's contract and expectation, which included those actions set forth above." And paragraph 41 states that "[t]hese actions interfered with the receipt of benefits by plaintiff under the contract with Educators and have caused damages."

[5] Defendants' representation, that "the last act Plaintiff complains of occurred in September 2000," cannot conceivably be made in good faith

12

limitation period.

### b. Hartford Could Tortiously Interfere With Plaintiff's <u>Contract with Educators</u>

The court should also reject defendants' motion to dismiss the tortious interference claim on the ground that "Hartford and Educators could not tortiously interfere with their own contract." Def. Br. p.5. First, plaintiff has alleged that Hartford interfered with plaintiff's contract with Educators, not that defendants interfered with "their own" contract. Second Amended Complaint, ¶ 40. Plaintiff has not alleged that Educators tortiously interfered with her disability contract, as defendants pretend. <u>Id</u>.

Second, Hartford's status as a party to the insurance contract is, at minimum, questionable. Defendants' representation to the Court that "Hartford was a party to the [plaintiff's contract with Educators] contract as a result of the reinsurance agreement" (Def. Br., p.5) is unsubstantiated and contrary to the terms of the Reinsurance Agreement and defendants' prior positions:

a) The Reinsurance Agreement the defendants entered into between themselves specifically provides that Hartford would <u>not</u> become a party to Educators' insurance contracts. <u>See</u> Reinsurance Agreement, ¶ 2.2 (the Reinsurance Agreement "shall not create any right or legal relation between the Reinsurer [Hartford] and the Claimant [e.g. plaintiff] on a Reinsured Claim, and the Company

---

when defendants' November 2000 termination of plaintiff's disability benefits is the very basis for this action and plaintiff's damage claims.

13

[Educators] shall be and remain solely liable to the Claimant on the Reinsured Claim.").

b) Prior to filing their pending motion, including in the termination letter and in recent discovery responses, defendants consistently claimed that Hartford was merely administering plaintiff's disability policy with Educators on Educators' behalf. See Exhibit C, hereto (HL001, H2027, CMC052, 053); Exhibit D, hereto (Educators' Response to Plaintiff's Request for Admissions, Nos. 21, 22); Exhibit E, hereto (Hartford's Response to Plaintiff's Request for Admissions, Nos. 21, 22.)

Thus, it is disingenuous, at best, for defendants to represent to the court, as a foregone conclusion, that Hartford became a party to the disability contract pursuant to the Reinsurance Agreement. Plaintiff is entitled to plead that, if Hartford was not a party to the insurance contract, it interfered with plaintiff's rights under the contract, particularly given defendants' inconsistent position regarding Hartford's status. F.R.C.P. 8(e)(2); Henry v. Daytop Village, Inc., 42 F.3d 89 (2nd Cir. 1994) (Cabranes, J.) (party is entitled, under federal rules, to plead alternative, and even inconsistent, legal theories and facts.);[6] New Horizon Financial Svc. v. First Financial Equities,

---

[6] Plaintiff's breach of contract and tortious interference claims, however, are not inconsistent and need not be plead in the alternative because Hartford may be liable to plaintiff for bad faith breach of contract even if Hartford is not a party to the insurance agreement. See e.g. Cary v. United of Omaha Life Ins. Co., 68 P.3d 452 (Colo. 2003) (insurance administrator may be liable for bad faith breach of insurance contract.) As a general rule, a reinsurer is not a party to the insurance contract, but an insured may establish privity of contract with the reinsurer under certain circumstances. Fontenut v. Marquette Casualty Co., 247 So.2d 572 (La. 1971).

14

(refusing to dismiss tortious interference claim where status of parties was disputed.)[7] Accordingly, the court should deny defendants' Motion to Dismiss.

### 3. The CUTPA Claim is Not Barred by the Statute of Limitations

Plaintiff's CUTPA claim is not barred by the statute of limitations for the same reasons that her tortious interference claim is not barred. First, the claim relates back to the previous pleadings because it arises out of the same conduct and transaction. See Butler v. Dolphin Cove Yacht Club Corp., 1995 Ct.Sup. 10762 (Sept. 12 1995) (CUTPA claim relates back); See e.g. First Amended Complaint, ¶¶ 11, 13, 22, 31; Second Amended Complaint, ¶ 44 . Second, the October 2003 proposed second amended complaint is within the three year statute of limitations because, again pursuant to defendants' own authority, the CUTPA claim did not accrue until November 2000, when Hartford terminated plaintiff's benefits and plaintiff suffered ascertainable damages. Timmons v. City of Hartford, 2003 WL 22228989 (D.Conn.) (Sept. 16, 2003) (CUTPA claim accrued when the last act occurred - that being the date when defendant told plaintiff it would not be paid.);

### 4. The CUIPA Claim is Properly Part of the CUTPA Claim

Defendants' motion to dismiss plaintiff's alleged CUIPA claim is specious.

---

[7] In New Horizons, the court noted that agents may not be liable for interfering with contracts between their principal and a third party. Plaintiff has alleged that, despite its representations, Hartford was not acting as the agent of Educators and that Hartford was acting on its own behalf and for its own personal gain. Second Amended Complaint, ¶¶ 37, 40(a). Under these circumstances, Hartford could be liable for tortious interference even if it was Educator's agent. Bennett v. Beiersdorf, Inc., 889 F.Supp. 46, 51-52 (D.Conn. 1995)

Plaintiff has asserted a claim under CUTPA, and incorporated the alleged violations of CUIPA as predicate to plaintiff's CUTPA count.  <u>Mead v. Burns</u>, 199 Conn. 651, 663-66, 509 A.2d 11 (1986) (in the context of an insurance case, the plaintiff must assert a violation of CUIPA in order to state a violation of CUTPA.)

## **CONCLUSION**

For the foregoing reasons, plaintiff respectfully requests that the Court grant her Motion for Leave to File Second Amended Complaint and deny Defendant's Motion to Dismiss.

Dated: November 18, 2003

PLAINTIFF,
CANDI MCCULLOCH

By_____
Eliot B. Gersten,
Fed. Bar No. ct05213
GERSTEN & CLIFFORD
214 Main Street
Hartford, CT 06106
(860)527-7044
Her Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of November, 2003, a copy of the foregoing was mailed, postage prepaid to the following counsel of record via facsimile and U.S. mail:

Roberta J. Sharp, Esq.
Barry A. Chasnoff, Esq.
Jessica Spangler Taylor, Esq.
Akin Gump Strauss Hauer & Feld, LLP
300 Covent Street, Suite 1500
San Antonio, TX 78205
Tel: (210) 281-7146
Fax: (210) 224-2035

Donald E. Frechette, Esq. (ct 08930)
Joshua L. Milrad, Esq. (ct 19321)
Charles F. Gfeller, Esq.
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103
Phone (860) 525-5065
Facsimile (860) 527-4198

                                              Eliot B. Gersten