UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

| | | |
|---|---|---|
| CANDI McCULLOCH | § | CIVIL ACTION NO. |
| Plaintiff, | § | 301CV1115(AHN) |
| | § | |
| vs. | § | |
| | § | |
| HARTFORD LIFE AND ACCIDENT | § | |
| INSURANCE COMPANY AND | § | |
| EDUCATORS MUTUAL LIFE | § | |
| INSURANCE COMPANY | § | |
| Defendants. | § | November 20, 2003 |

2003 NOV 21 A 10: 17

US DISTRICT COURT
BRIDGEPORT CT

## DEFENDANT HARTFORD LIFE & ACCIDENT INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR DEFAULT

Since this suit was filed, Defendants have produced more than 5000 pages of documents and thirteen witnesses for depositions. As discovery has progressed, some additional documents have been identified and produced. Other documents have been withheld subject to stated objections and are the subject of motions pending before the Court.

Where discovery responses have been supplemented, Plaintiff complains that it was not done sooner—although she has not demonstrated any prejudice from the timing of the production. In each instance in which Defendants have stated objections and/or sought protection from the Court, Plaintiff complains that Defendants have abused the discovery process by seeking the Court's protection.

Against this backdrop, Plaintiff's motion for default is without basis in law or fact, and is itself a frivolous motion that needlessly increases the parties' costs. The Court should deny Plaintiff's motion and award Defendants their costs in responding to this motion.

1

063670.0229 WEST 5405138 v1

## HISTORY OF DISCOVERY[1]

On or about March 25, 2002, Hartford produced Plaintiff's claim file in response to Plaintiff's First Set of Interrogatories and Requests for Production. In its responses to Plaintiff's Interrogatories, Hartford responded to many requests by referring Plaintiff to the claim file, in accordance with Rule 33(d) of the Federal Rules of Civil Procedure. On or about April 8, 2002, Plaintiff filed a Motion to Compel more specific answers to her Interrogatories and to compel the production of certain documents, including Hartford's claim manual and the Reinsurance Agreement with Educators Mutual Life Insurance Company ("Educators"). On July 9, 2002, the Court ordered Hartford to identify the specific documents that were responsive to specific Interrogatories, and to produce the Reinsurance Agreement and its claim manual. Hartford promptly complied with the Court's order, producing supplemental responses to Plaintiff's Interrogatories on August 6, 2002, as well as a complete copy of its claim manual and a copy of the Reinsurance Agreement.

In August 2002, Hartford sought to compel Plaintiff to respond to its First Set of Interrogatories and Request for Production because Plaintiff contended Hartford was limited to relying on her claim file to defend her claims, and therefore, was not entitled to any discovery from her. On December 20, 2002, the Court granted Hartford's motion.[2] In late March, 2003, Plaintiff finally produced responsive documents to Hartford.

In December 2002, Plaintiff served Educators with her Interrogatories and Request for Production. In those requests, Plaintiff requested for the first time documents pertaining to communications between Hartford and Educators regarding the Reinsurance Agreement. After a

---

[1] Hartford refers the Court to the discovery motions and responses recently filed by Hartford. Those documents repeatedly set forth the procedural background in this case.

[2] Docket #83.

2

diligent search for documents relating to this four-year-old transaction, in March 2003 Hartford and Educators produced approximately 170 pages of documents relating to negotiations leading up to the Reinsurance Agreement, actuarial documents relating to pricing, and documents reflecting the "true up" performed after the Reinsurance Agreement was executed.

On May 13, 2003, Plaintiff deposed two corporate representatives of Educators regarding the Reinsurance Agreement—Kimberly Rankin, a vice president and corporate secretary for Educators and Kenneth Wasnock, the life and disability claim manager for Educators. Wasnock testified that Educators had no communications with Hartford regarding Plaintiff's specific claim.

On May 24, 2003, Plaintiff served Hartford with a Notice of Deposition for Hartford's Corporate representative. In the notice, Plaintiff requested testimony and documents on a vast array of topics, including the status of other claims subject to the Reinsurance Agreement, the tracking of performance of the claims handling department, financial incentives and bonuses offered to employees, actuarial review, due diligence reports, and reserves. Hartford objected to the Notice on June 16, 2003, stating that the document requests were overly broad, constituted a fishing expedition, and were not reasonably calculated to lead to the discovery of admissible evidence. Hartford also objected to the various categories of topics for testimony and stated that it would produce a witness to testify to topics relating to the Reinsurance Agreement and the management of Plaintiff's disability claim.

Plaintiff sought to compel Hartford to produce documents and witnesses regarding certain topics, including the database Hartford uses to track claims, financial incentives offered to employees, performance tracking of the claim department, and the status of the other claims

3

subject to the Reinsurance Agreement.[3] The Court heard argument on Plaintiff's motions on June 26, 2003, and issued a ruling on Plaintiff's motion on August 11, 2003, denying in part and granting in part the discovery Plaintiff sought. Specifically, the Court ordered Hartford to only produce a summary of the status of the other claims subject to the reinsurance agreement.

After the June 26 hearing but prior to the Court's August 11, 2003 Order, Hartford produced Pamela Mormino to testify in response to Plaintiff's 30(b)(6) deposition notice regarding the Reinsurance Agreement. At that deposition, held on July 28, 2003, Hartford produced documents providing the information the Court ultimately determined should be produced, including the status of the other claims that were the subject of the reinsurance agreement. Hartford also produced, in advance of Ms. Mormino's deposition, the file (consisting of approximately 200 pages of documents) relating to the due diligence undertaken by Hartford in connection with the Reinsurance Agreement.[4] These are all of the documents Hartford has located relating to negotiations leading up to the Reinsurance Agreement and the "true up" performed after it was executed.

Pamela Mormino testified that Plaintiff's claim was the only claim of approximately ninety original claims that has been terminated for no longer meeting the definition of disability under the policy. Further, she testified that prior to the reinsurance agreement, Hartford conducted due diligence for pricing purposes. Hartford chose to review claims that appeared to

---

[3] Hartford refers the Court to Plaintiff's June 19, 2003 Letter Brief.

[4] Plaintiff completely misrepresents Hartford's production relating to the Reinsurance Agreement. In her motion she contends that Hartford has refused to produce any documentation exchanged between Hartford and Educators relating to the Reinsurance Agreement, other than the Reinsurance Agreement itself. Motion for Default, at 4. This is patently false. Hartford and Educators have produced approximately 370 pages of documents relating to the Reinsurance Agreement. Additionally, Plaintiff has conducted three depositions relating to the Reinsurance Agreement. She cannot honestly claim that she has been deprived of the information she needs to prepare her case. *Id.*

063670.0229 WEST 5405138 v1

have a discrepancy between the diagnosis, the length of disability, or the age of the claimant. Plaintiff's claim was not selected for review as part of the due diligence.

On August 8, 2003, Plaintiff noticed the depositions of the "Recordkeeper" of Hartford and Donald Loveland, the employee who conducted the Educators' due diligence. The Recordkeeper notice sought the production of a witness and documents on broad and varied subjects. Hartford objected to both of the deposition notices and filed a Motion for Protective Order. The Court heard argument on this and other motions on November 12, 2003, but has not yet ruled.

Plaintiff has deposed every employee who was involved in the handling of Plaintiff's claim and in the special investigation of Plaintiff's claim. Plaintiff deposed Sue Wilk, the claim examiner involved in handling her claim, Diane Favreau and Kim Huber, both claims specialists who supervised Wilk, Joseph Sterle, a clinical case manager who was involved in the clinical aspects of her claim, Dr. Joseph Amato, a contract physician who reviewed Plaintiff's medical records, and Deborah Laughran, the director of long and short term disability. Plaintiff has also deposed William Moryto, a field investigator in the SIU unit, Kim Gabrielsen, a special investigator in the SIU unit and John McGoldrick, the director of SIU.

Just before the deposition of Mr. McGoldrick, Hartford identified a small folder of documents in the SIU department, separate from the claim file maintained by the claim department and the subject of Hartford's previous document production. This file, which was promptly produced at Mr. McGoldrick's deposition, consisted of 130 pages (129 of which were duplicates of documents already produced with the claim file), some "still" shots extracted from surveillance videos (also already produced), and a CD-ROM version of the surveillance videos previously produced. The one document not previously produced was one page of typewritten

and handwritten notes from Kim Gabrielsen to William Moryto regarding questions he should ask during his interview of Plaintiff. Plaintiff had the opportunity to question Mr. McGoldrick about the one document not previously produced; however, she only asked four questions about the document.[5] Hartford's counsel made clear to Plaintiff's counsel that Kim Gabrielsen, the other SIU employee involved in Plaintiff's claim, would be made available for questioning on this and any other documents that had not been produced as of the time of her deposition, to eliminate any prejudice to Plaintiff as a result of the timing of the production. Rather than avail herself of the opportunity to redepose Kim Gabrielsen, Plaintiff seeks entry of default as a "sanction" for Hartford's conduct.

In sum, Defendants have objected to the breadth of discovery sought by Plaintiff as irrelevant and unduly burdensome. Defendants' objections have been timely and properly raised and submitted to the Court when the parties could not agree. The Court's rulings have favored Defendants in some instances, Plaintiff in some, and others are still pending. Neither Defendant's appeals to the Court for protection, nor Defendants' prompt supplementation of its discovery responses upon finding additional documents, support Plaintiff's request for death penalty sanctions, or any sanction at all.

### ARGUMENTS & AUTHORITIES

**I. HARTFORD HAS NOT REFUSED TO COMPLY WITH A COURT ORDER AND CANNOT BE SANCTIONED UNDER RULE 37(B).**

By its express terms, Rule 37(b) of the Federal Rules of Civil Procedure applies only to a party's "[f]ailure to comply with order." A court may sanction a party only "[i]f a party or an officer, director or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party *fails to obey an order* to provide or permit discovery."

---

[5] True and correct copies of excerpts from John McGoldrick's July 10, 2003 deposition, at 44:10-45:6, are attached as exhibit A.

6

063670.0229 WEST 5405138 v1

Plaintiff is not entitled to sanctions under Rule 37(b) because she fails to identify a *"clearly articulated order of the court requiring specified discovery"* with which Hartford has failed to comply.[6] *Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357(2d Cir. 1991) (the district court has the authority to impose 37(b) sanctions only for noncompliance with an order) (emphasis added). A death penalty sanction "should only be used in "extreme situations, and then only after (a) the court finds willfulness, bad faith, or fault on the part of the party refusing discovery, and (b) the court gives notice . . . that violation of the court's order will result in a dismissal of the case with prejudice." *Almonte v. Coca-Cola Bottling Co.*, 169 F.R.D. 246, 248 (D. Conn. 1996) *(citing Simmons v. Abruzzo*, 49 F.3d 83, 88 (2nd Cir. 1995)); *see also Cine Forty-Second Street Theatre Corp. v. Allied Artists Picture Corp.*, 602 F.2d 1062, 1064 (2d Cir. 1979) (death penalty sanctions are "rarely deployed").

A.  **Plaintiff Cannot Identify a Court Order Hartford Has Not Complied With.**

Hartford has promptly complied with all Court orders in this case, as well as its obligations under the Federal Rules of Civil Procedure. The only Court rulings Plaintiff references in her Motion are the November 2002 order relating to Hartford's responses to Interrogatories and Requests for Production and the August 11, 2003 order relating to her 30(b)(6) deposition notice to Hartford, both of which Hartford has complied with.

Hartford has fully complied with the November 2002 Order. It has produced its intranet claim manual,[7] all of Plaintiff's claim files, the Reinsurance Agreement, and approximately 370 pages of documents relating to the Reinsurance Agreement.[8]

---

[7] Plaintiff has not requested training materials from Hartford through formal discovery. Yet, she seeks to sanction Hartford for not producing training materials supplied to Sue Wilk when she was first hired by Hartford as a claims examiner. Sue Wilk testified in her deposition that during her six to eight weeks classroom training, Hartford supplied her five training manuals regarding the handling of claims. However, Wilk testified that the intranet claims manual, which was produced to Plaintiff in early October 2002, had "more information" than the

7

Hartford complied with the August 11, 2003 ruling in which this Court ordered Hartford to produce a summary of the status of the other Educators' claims. In fact, Hartford produced these documents two weeks prior to the Court issuing that ruling. The August 11 ruling did not, as Plaintiff contends, order Hartford to produce "actuarial records," which in any event, are part of the 370 pages of documents relating to the Reinsurance Agreement that have already been produced.

### B. Hartford Has Met Its Discovery Obligations In Good Faith.

The record demonstrates that Hartford has continued to search for responsive documents and has promptly supplemented its production when additional documents are uncovered.[9] Far from the "bad faith" Plaintiff must show to justify death penalty sanctions, Hartford's continued vigilance is consistent with the letter and spirit of the Federal Rules of Civil Procedure.

The cases cited by Plaintiff simply demonstrate that the egregious conduct necessary to support death penalty sanctions is not present here. *See, e.g., Metropolitan Opera Ass'n v. Local 100*, 212 F.R.D. 178 (S.D.N.Y. 2003)[10] (entering death penalty sanctions after two and a half years of discovery because defendant destroyed at least a year's worth of documents at a time when plaintiff had repeatedly requested their production, its counsel repeatedly misrepresented to the court and opposing counsel that all relevant documents had been produced, it failed to

---

"training manuals" and that it was Hartford's only claim manual. Contrary to Plaintiff's misstatements in her motion, Wilk never testified that she referred to her training manuals in adjudicating Plaintiff's claim; rather, she testified she used the intranet manual continually, "possibly every day." In any event, after the deposition Hartford searched for training manuals that would have been in use at the time Sue Wilk was trained; none were found.

[8] Plaintiff's claim that Hartford has only produced the Reinsurance Agreement is false.

[9] For example: on July 9, 2003, Hartford found the small folder described above and produced it the next day at Mr. McGoldrick's deposition. In August 2003, Hartford's counsel reviewed the information redacted from a previously produced document and determined the redaction had been inadvertently over-inclusive; Hartford produced the document on August 13, 2003 with the over-redaction corrected. In March 2003, Hartford searched for and produced documents relating to the negotiation of the reinsurance agreement, although the request for such documents was directed only to Educators.

[10] Despite the complete lack of evidence to the contrary, Plaintiff contends this case "practically mirrors" Hartford's conduct in this case. Motion for Default, at 12.

comply with at least four court orders, its counsel failed to instruct it about discovery obligations, and the documents it produced were produced in an untimely and disorganized fashion); *Daval Steel Products,* 951 F.2d at 1360-1363 (upholding sanction deeming defendant to be alter ego of other defendants because defendant failed to abide by a court order to produce a witness to testify and produce documents requested in subpoena duces tecum by refusing to produce large categories of documents at the deposition, by removing documents brought to the deposition and refusing to mark the documents for identification, and by refusing to continue to the unfinished deposition the next day); *Cine Forty-Second Street Theatre Corp.*, 602 F.2d at 1064-68 (upholding sanction precluding evidence on damages after plaintiff failed to comply with five orders directing it to provide appropriate responses to interrogatories); *Barsoum v. NYC Housing Authority,* 202 F.R.D. 396, 401 (S.D.N.Y. 2001) (imposing sanction under rule 37(d) in the form of preclusion of evidence regarding meeting because plaintiff destroyed tape recording of meeting); *Tarlton v. Cumberland County Correctional Facility,* 192 F.R.D. 165, 170 (D. N.J. 2000) (ordering defendants to pay plaintiff's expenses and fees incurred in deposing two witnesses and in making its motion for sanctions after defendants repeatedly represented to the court after witnesses lied in depositions regarding the existence of documents and defense counsel represented twice to the court that no other documents existed).

The common threads to these cases – defiance of court orders, destruction of evidence, and misrepresentations to the court – are utterly absent here.

## II.   HARTFORD IS ENTITLED TO ITS FEES AND EXPENSES IN OPPOSING PLAINTIFF'S MOTION

Hartford is entitled to its fees and costs in opposing Plaintiff's Motion under Local Rule 37(a)(2)and (4) and the Court's inherent power to sanction for bad faith conduct because the Motion was not warranted under existing law and Plaintiff made numerous misrepresentations to

the Court regarding Hartford's discovery conduct. Moreover, Plaintiff failed to confer with counsel for Hartford before filing her Motion.

Plaintiff made numerous misrepresentations to the Court regarding Hartford's discovery conduct, including but not limited to, that Hartford produced only the Reinsurance Agreement and no other documents relating to the agreement, that the Court's August 11, 2003 ruling required Hartford to produce "actuarial records," that Hartford refused to confer regarding her Recordkeeper notice, and that Sue Wilk testified there were five other claim manuals, other than the intranet manual, that she used in adjudicating Plaintiff's claim.[11] Plaintiff clearly made no attempt to confirm the veracity of her misrepresentations to the Court before filing her Motion, as it would have taken only a cursory review of this Court's order, the documents produced to date, and the deposition transcripts in this case to determine her statements were false.

Moreover, Plaintiff's Motion is completely devoid of support in either the Federal Rules of Civil Procedure or existing law. It is well-settled the imposition of death penalty sanctions under Rule 37 requires that Hartford be in violation of a court order. Further, the Court must have previously warned Hartford that it was in danger of being subject to extreme sanctions. Even if Plaintiff's misstatements regarding Hartford's discovery conduct were true, she could not establish the type of egregious conduct described in the cases cited by her in the Motion. Hartford has engaged in discovery in good faith and it is entitled to its fees and costs in having to oppose Plaintiff's groundless motion.

## CONCLUSION

Hartford respectfully requests that the Court deny Plaintiff's motion for entry of default, and award Hartford its costs in responding to this motion.

---

[11] A complete list of Plaintiff's misrepresentations are found in the table attached as Exhibit B.

063670.0229 WBST 5405138 v1

By: _____
Barry A. Chasnoff (ct11162)
Roberta J. Sharp (ct24407)
Jessica S. Taylor (ct24408)
AKIN GUMP STRAUSS HAUER & FELD L.L.P.
300 Convent Street, Suite 1500
San Antonio, Texas 78205
Telephone: (210) 281-7000
Telecopier: (210) 224-2035

AND

Donald E. Frechette (ct 08930)
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103
Phone: (860) 525-5065
Facsimile: (860) 527-4198

ATTORNEYS FOR DEFENDANT
HARTFORD LIFE & ACCIDENT
INSURANCE COMPANY

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing document was sent via facsimile and certified mail, return receipt requested to the following attorney on the __20th__ day of November, 2003:

Eliot B. Gersten
Gersten & Clifford
214 Main Street
Hartford, CT 06106
Phone (860) 527-7044
Facsimile (860) 527-4968

_____
ROBERTA J. SHARP
JESSICA S. TAYLOR

063670.0229 WBST 5405138 v1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CANDI McCULLOCH<br>Plaintiff, | §<br>§<br>§ | CIVIL ACTION NO.:<br>301CV1115(AHN) |
| vs. | §<br>§ | |
| HARTFORD LIFE AND ACCIDENT<br>INSURANCE COMPANY AND<br>EDUCATORS MUTUAL LIFE<br>INSURANCE COMPANY<br>Defendants. | §<br>§<br>§<br>§<br>§ | November 20, 2003 |

## ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT AND GRANTING HARTFORD'S MOTION FOR SANCTIONS

On this date, the Court considered Plaintiff's Motion to Compel and for Sanctions. Plaintiff's Motion for Default is DENIED. Hartford's Motion for Sanctions is GRANTED and the Court awards Hartford its attorneys' fees and expenses in opposing Plaintiff's Motion for Default.

SIGNED on _____, 2003, in Bridgeport, Connecticut.

_____
UNITED STATES DISTRICT JUDGE