# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CANDI McCULLOCH | : | CIVIL ACTION NO. 301CV1115(AHN) |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| HARTFORD LIFE AND ACCIDENT | : | |
| INSURANCE COMPANY AND EDUCATORS | : | |
| MUTUAL LIFE INSURANCE COMPANY | : | |
| Defendants. | : | November 28, 2003 |

## PLAINTIFF'S LOCAL RULE 56(a)(2) STATEMENT

In accordance with Local Rule 56(a)(2), Plaintiff Candi McCulloch ("plaintiff") respectfully submits this Statement of Facts in Opposition to Educators Mutual Life Insurance Company's ("Educators") Motion for Summary Judgment:

Response to Educators' Statement of Facts:

1. Admitted in part. Educators underwrites group life, dental and short and long-term disability insurance policies, and also administers and pays claims under those policies. (Def. Exhibit B(1), at p.5:10-12. p.5:21-24; Def. Ex. B(2), p.35; Def. Ex. C(1)-(4).)

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted, subject to the Additional Disputed Inference, paragraph 1, infra.

6. Admitted, subject to the Additional Disputed Inference, paragraph 2, infra.

7. Admitted subject to the following: Plaintiff requested a leave of absence from her

1

employment on October 3, 1995, not October 3, 1999.  (Def. Ex. C(3).)

8.    Admitted.

9.    Admitted, subject to the Additional Disputed Inference, paragraph 3, infra.

10.   Admitted.

11.   Denied. As to the ceding of liability, the Agreement specifically states that it "shall not create any right or legal relation between the Reinsurer and the Claimant on a Reinsured Claim, and the Company shall be and remain solely liable to the Claimant on the Reinsured Claim."   (Pl. Ex. 1, Recitals; Def. Ex. B(1), Recitals.) As to the ceding of administration, the Agreement authorized Hartford to administer the claims, but provided that Hartford would do so as Educators' agent and reserved the right to Educators to require that any claim be paid on a basis determined by Educators.  (Id., §§ 2.1.2, 2.1.4).   The Agreement only authorized Hartford to "correspond with Claimants and issue payments directly to the Claimants in the Reinsurer's name," and "provided the Reinsurer discloses that it is acting as agent for the Company in the performance of such functions."  (Id., § 2.1.2.)   In the Agreement, the defendants acknowledged that Educators would remain liable for Hartford's conduct in the administration of Educators' claims, requiring Hartford to "indemnify, defend and hold Company harmless in connection with any Loss (including punitive, exemplary and other form of extra-contractual damages, fines, penalties and defense costs) incurred by the Company as a result of the Reinsurer's claims adjustment actions and determinations."  (Id., § 2.1.3.)   The defendants executed the Agreement on August 6, 1999 and August 10, 1999, not on July 1,

1999. (Id., p.22.)

12.     Denied.  The Agreement was not a sale of the claims.  (Pl. Exs. 1, 7 at pp.47-48; Def.
        Ex. B(1).)  The Agreement was entitled "Reinsurance," and provided that it "shall
        operate as indemnity reinsurance under which the Reinsurer shall coinsure (on a
        100% quota share basis) the Reinsured Claims as of the Effective Date."  (Pl. Ex. 1,
        Recitals; Def. Ex. (B)(1), Recitals.)  The claims remained Educators' claims, and
        Hartford merely agreed to administer the claims and accept the risk that the cost of
        paying the claims would exceed the funds that Educators had transferred to Hartford
        to pay the claimants.  (Pl. Exs. 1, 7.)  Educators did not sell the claims to Hartford;
        Educators paid Hartford to reinsure the claims and to administer them. (Pl. Exs. 1,
        7 at 47-48.)  Educators continues to report these claims in its statutory financial
        statements as Educators' claims, but represents in those statements that the claims are
        reinsured by Hartford.  (Pl. Ex. 1, §§ 2.4-2.8.)

13.     Admitted that the August 1999 letter informed plaintiff and other claimants that
        Educators had contracted with "a service provider segment of Hartford" to
        "administer" their disability claims.  The letter further stated that "[t]his in no way
        affects your rights under your Certificate of Insurance. None of the provisions of your
        policy which affect the determination of your disability benefit amount or duration
        of payments have changed as a result of this transfer."  (Pl. Ex. 3; Def. Ex. C(4).)
        Denied that the August 1999 letter informed plaintiff and other claimants that
        Hartford would be "responsible" for their claims.  (Id.)

14.     Admitted that the letter advised plaintiff that Educators had contracted with Hartford

3

to administer her disability claim and that Educators was paying plaintiff in advance
through October 31, 1999 to allow Hartford time to transfer claim information into
its system. Denied that the letter advised plaintiff that "thereafter, she would receive
her benefit payments from Hartford." The letter stated that "[t]he benefit payment
for November 1999 will come directly from GRP near the end of November. Details
regarding future payments will be sent to you from GRP prior to their first payment."
(Pl. Ex. 3; Def. Ex. C(4).)

Additional Undisputed Facts:

Plaintiff submits the following additional undisputed facts in accordance with Local Rule
56(a)(2):

1.      Prior to this litigation, Educators and Hartford represented that Hartford was acting
        as Educators' agent in administering plaintiff's claim. (Pl. Exs. 2-4.) The Agreement
        required Hartford to inform plaintiff that it was acting as Educators' agent in the
        performance of its claims administration function. (Pl. Ex. 1, § 2.1.2.) Hartford's
        correspondence to plaintiff included a stamp that stated "Administered by Hartford
        on Behalf of Educators Mutual Life Co." (Pl. Ex. 4.)  When Hartford terminated
        plaintiff's benefits, it claimed that it was doing so as administrator for Educators.
        (Pl. Ex. 2.)

2.      Defendants first disclosed the existence of the Reinsurance Agreement on September
        20, 2002, although this document was responsive to plaintiff's October 2001
        interrogatories, to which the court ordered Hartford to respond in July 2002. (Order
        dated July 2002, pp.2, 4; Pl. Ex. 6, No. 21; Pl. Ex. 9, No. 21.) On August 9, 2002,

Hartford served an "Unexecuted Better Answers," purporting to comply with the Corut's order, in which it responded to the interrogatory that requested Hartford to identify any documents that described the relationship between the defendants by stating "The answer will be provided shortly." (Pl. Ex. 9, No. 21.) As of August 9, 2002, Hartford knew that the Agreement was responsive to plaintiff's discovery request because it had argued to the court a few months earlier that the responsive document was confidential. (Order dated July 2002, pp.2, 4.)

3.     In the Agreement, Educators transferred reserves allocated to pay its claimants into the future, to Hartford, and further entitled Hartford to keep those funds even in the event that plaintiff's benefits were terminated. (Pl. Ex. 1, § 2.3, 4.2; Def. Ex. B(1) at pp.13:22-14:13.) The Agreement not only gave Hartford a significant financial incentive to terminate plaintiff's benefits, but delegated it the power to do so without requiring Hartford to assume primary liability for such a decision. (Pl. Ex. 1, § 2.1.2, 2.2.)

4.     During depositions this past summer, Educators disclosed to plaintiff, for the first time, that Educators had treated the Agreement as a sale of its claims after which it had no responsibility or liability to the claimants, notwithstanding (a) Educators' representations to plaintiff that it had merely contracted with Hartford to provide administrative services, (b) Hartford's representations to plaintiff that it was investigating her claim, and terminating it, on Educators' behalf, (c) the Agreement, which stated that Educators would remain solely liable to its claimants, and that Hartford would be administering the claims as Educators' agent, and (d) Educators'

statutory financial reports, which represent that the claims belong to Educators but are reinsured by Hartford. (See Def. Ex. B(1), at pp.11:19-22, 13:17-21, Def. Ex. B(2), at p.71:4-24; Pl. Exs. 7, 1, §§ 2.4-2.8.)

5. Following the Agreement, Educators had ceased to act as plaintiff's insurer in any capacity and was not even aware that Hartford had terminated plaintiff's benefits until she filed the above-captioned action. (Educ. Br., pp.1, 5, & fn.14; Def. Ex. B(3); Pl. Ex. 8, Nos.1-4, 7, 9-12.)

6. Educators and Hartford did not submit the Agreement to any Insurance Commissioner for review and approval. (Pl. Ex. 1, §§ 8.4, 9.4; Pl. Exs. 3, 7.)

7. Educators did not submit the Agreement to the policyholders or insureds and did not obtain their consent to sell or assign the claims or to substitute Hartford as the claimants' insurer. (Pl. Ex. 1, §§ 8.4, 9.4; Pl. Exs. 3, 7; Def. Ex. B(2), at p.71:4-24.)

8. Neither of the defendants issued the claimants a new certificate of insurance, or any other document, informing them that Hartford had assumed direct liability to them or evidencing such liability. (Pl. Ex. 1, §§ 8.4, 9.4; Pl. Exs. 3, 7; Def. Ex. B(2), at p.71:4-24.)

9. Educators' August 26, 1999 letter only informed the claimants that Hartford would be processing plaintiff's claim - it did not inform them that Educators had "sold" their claim to Hartford. (Pl. Ex. 3; Def. Ex. B(2), at p.71:4-24.) Educators did not believe that information would be "pertinent to the claimant." (Def. Ex. B(2), at p.71:4-24.)

10. Since 1999, Educators has administered its disability claims from Connecticut, by

and through Hartford, a Connecticut corporation (Pl. Exs. 1, 3; Def. Exhibit B(1).)

11.   Educators required Hartford to inform the insureds that it was acting as Educators' agent in the performance of its function as administrator. (Pl. Ex. 1, § 2.1.2.) Hartford repeatedly and continually represented to plaintiff, through correspondence from Connecticut, that it was administering her claim on behalf of Educators, pursuant to Educators' direction. (Pl. Exs. 2, 4.) These representations were false because Hartford, at Educators' direction and with Educators' knowledge, was administering plaintiff's claim for its own financial gain, and these false representations emanated from Connecticut. (Pl. Ex. 1.)

12.   Educators' last few reviews of plaintiff's claim before it abdicated all of its responsibilities, concluded that "the case has been exhaustively reviewed with determinations in regards to attempts to corroborate appropriate findings from the subjective and objective concerns . . . Documentation for the clinical symptomology is correlated well by several physicians in regards to the objective findings" (Pl. Ex. 10, at H2047) and that "[i]n review of your file, it is clearly documented that you have sustained functional limitations which prevent you from performing the substantial requirements of your job." (Pl. Ex. 10, at H 2080.)

13.   Plaintiff's benefits were only terminated after Hartford assumed "administration," investigated her claim based on a different standard for assessing disability (Pl. Ex. 7, p.205.), and with the incentive of keeping the substantial reserves that Educators allocated to pay her claim if it terminated her claim.

7

Additional Disputed Inferences:

Plaintiff submits the following additional disputed inferences in accordance with Local Rule 56(a)(2):

1. The contract provision that authorizes Educators to "change" the policy without the consent of the insureds does not purport to authorize Educators to assign the policy or effect a novation without the consent of the insureds. At the time of the Agreement, Educators acknowledge that the policy change provision did not apply to the Agreement, when it represented that the Agreement did <u>not</u> change any provision of the policy. (Pl. Ex. 3.)

2. The contract provision that states: "[n]o action at law or in equity shall be brought to recover on this policy before 60 days after proof of loss has been filed. No such action shall be brought after three years from the end of the period within which proof of loss is required by the policy" applies only to the initiation of an action and not to amendments to the complaint to allege additional theories of recovery or additional facts based on information obtained during discovery. (Def. Ex. C(2).)

3. While Educators sought to "sell all of its open professional association disability claims," the Agreement that it executed was not a sale of the claims. (Def. Stmt, ¶ 9; Pl. Ex. 1.)

4. Educators and Hartford entitled the Agreement "Reinsurance" and characterized it as "indemnity reinsurance" to avoid the statutory requirements of an assumption, but nevertheless treated the Agreement as an assumption. (Def. Stmt., ¶¶ 9-10; Def. Ex. A, ¶ 4; Pl. Ex. 1, Recitals & §§ 2.2, 2.4, 8.4, 9.4; Pl. Ex. 7.)

8

5.  Educators and Hartford represented to plaintiff and other claimants that Educators had merely contracted with Hartford to administer their claims, and that this contract would have no effect on their rights under their Certificates of Insurance in order to prevent the claimants from objecting to the Agreement and seeking the required regulatory oversight. (Pl. Exs. 2-4.)

6.  Defendants delayed disclosing the Agreement to plaintiff until September 20, 2002,preventing plaintiff from asserting claims related to the Agreement within the three year contractual limitation period that Educators now argues bars these claims. (Pl. Exs. 6, 9; Order dated July 2002.)

7.  Educators eroded the security of plaintiff's insurance by transferring all of the reserves to pay plaintiff's claim to Hartford and allowing Hartford to keep these reserves for its own use in the event that plaintiff's benefits were terminated, while at the same time allowing Hartford to terminate plaintiff's benefits without any oversight by Educators, without assuming direct liability to plaintiff, and without being subject to the statutory requirements imposed on a direct insurer. (Pl. Ex. 1.)

8.  The Agreement provided Hartford with a substantial financial incentive to terminate plaintiff's benefits. (Pl. Ex. 1, §§ 2.3, 4.2 .)

9.  The Insurance Commissioner would not have approved the Agreement because it transferred all of the reserves for the claims to Hartford, giving Hartford a financial incentive to terminate plaintiff's benefits, without protecting plaintiff by requiring Hartford to assume Educators' obligations as plaintiff's insurer and issue her a certificate of insurance evidence its alleged assumption of liability, as required by

statute.  C.G.S. § 38a-66; 31 Pa. Code 90i.1 to 90i.3.  (To the contrary, the Agreement required Hartford to represent that it was administering plaintiff's claim solely on Educators' behalf.  Id. )

10.    Plaintiff would still be receiving her benefits today had her claim remained under the supervision of Educators and subject to the same standards under which Educators had accepted plaintiff's claim since 1996.  (Def. Ex. C(1)-(4).)

11.    Educators acted in reckless disregard of, or indifference to, plaintiff's property rights when it (1) completely abdicated its responsibilities as plaintiff's insurer; (2) granted a third party, Hartford, a substantial financial incentive to terminate plaintiff's only source of income, and carte blanche to do so; (3) mischaracterized the Agreement as one for indemnity reinsurance and third party administration, thereby circumventing the oversight by the Insurance Commissioner that is intended to protect the rights of insureds, including plaintiff, from precisely the situation described, above; and (4) misrepresented to plaintiff, and required Hartford to misrepresent to plaintiff, that, pursuant to the Agreement, Hartford was merely acting as an administrator on Educators' behalf, and that "this in no way affects your rights under your Certificate of Insurance," thereby depriving plaintiff of the opportunity to object to Educators' arrangement with Hartford.

statutory requirements[16]; and (b) plaintiff would still be receiving her benefits today had her

claim remained, at least under the supervision of Educators, and subject to the same standards

under which Educators had accepted plaintiff's claim since 1996.

**CONCLUSION**

For the foregoing reasons, plaintiff respectfully requests that the Court deny Educators'

Motion for Summary Judgment. Plaintiff also requests that the Court issue an order pursuant to

Federal Rule of Civil Procedure 56(d) specifying the facts that appear without substantial

controversy.

PLAINTIFF

CANDI McCULLOCH

By_____
Eliot B. Gersten, Esq.
Fed. Bar No. ct05213
GERSTEN & CLIFFORD
214 Main Street
Hartford, CT 06106
(860) 527-7044
E-Mail: EliotG@gersten-clifford.com
Her Attorney

---

[16] The Insurance Commissioner would not have approved of the Agreement, which allowed
Hartford to terminate plaintiff's benefits, because it was directly contrary to the statutory requirements.
The Agreement gave Hartford a financial incentive to terminated plaintiff's benefits by transferring all of
the reserves for the claims to Hartford, without protecting plaintiff by requiring Hartford to assume
Educators' obligations as plaintiff's insurer and issue her a certificate of insurance evidencing this
alleged assumption of liability, as required by statute. C.G.S. § 38a-66; 31 Pa. Code 90i.1 to 90i.3. (To
the contrary, the Agreement required Hartford to misrepresent that it was administering plaintiff's claim
solely on Educators' behalf. Pl. Ex. 1, § 2.1.2.)

26

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of November, 2003, a copy of the foregoing was mailed, postage prepaid to the following counsel of record via U.S. mail:

Roberta J. Sharp, Esq.
Barry A. Chasnoff, Esq.
Jessica Spangler Taylor, Esq.
Akin Gump Strauss Hauer & Feld, LLP
300 Covent Street, Suite 1500
San Antonio, TX 78205
Tel: (210) 281-7146
Fax: (210) 224-2035

Donald E. Frechette, Esq. (ct 08930)
Joshua L. Milrad, Esq. (ct 19321)
Charles F. Gfeller, Esq.
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103
Phone (860) 525-5065
Facsimile (860) 527-4198

_____
Eliot B. Gersten