14

existing and in good standing under the laws of the State of Connecticut.

9.2. <u>Authorization</u>. The Reinsurer has all requisite power and authority to enter into this Agreement, and to perform its obligations hereunder. The execution and delivery by Reinsurer of this Agreement, and the performance by Reinsurer of its obligations hereunder have been duly authorized and are valid and binding obligations of Reinsurer, enforceable against it in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, moratorium or other similar laws affecting creditors rights generally or by the principles governing the availability of equitable remedies.

9.3. <u>No Conflict or Violation</u>. The execution, delivery and performance of this Agreement will not (a) violate any provision of the Articles or Certificate of Incorporation, By-laws or other charter or organizational document of the Reinsurer; (b) violate, conflict with or result in the breach of any of the terms of, result in any modification of, give any counterparty the right to terminate, or constitute a default under, any material contract or other material agreement to which the Reinsurer is a party; (c) violate any order, judgment, injunction, award or decree of, or any agreement with or condition imposed by, any court, arbitrator or governmental or regulatory body against, binding upon or applicable to the Reinsurer; or (d) violate any statute, law or regulation of any jurisdiction.

9.4. <u>Consents and Approvals</u>. To the best of the Reinsurer's current knowledge, the execution, delivery and performance of this Agreement do not require the Reinsurer to obtain any approval from, to make any filing with or to give any notice to, any person.

9.5. <u>Brokers and Finders</u>. Reinsurer has not employed any broker or finder or incurred any liability for any brokerage fees, commissions or finders' fees in connection with the transactions contemplated by this Agreement other than Merger Acquisition Profiles for whose fees and expenses Reinsurer shall be solely liable.

### ARTICLE X: <u>Indemnification</u>

10.1. <u>Indemnification by the Company</u>. The Company shall reimburse the Reinsurer for, shall indemnify and hold the Reinsurer harmless of and from, and shall defend the Reinsurer against all Losses sustained or incurred by, or asserted against, the Reinsurer as a result of (i) the breach of any of the Company's obligations under this Agreement, (ii) benefit payments due on the Reinsured Claims in the Pre-Effective Date Period, (iii) acts or omissions to act on the part of the Company in connection with the Reinsured Claims after the Effective Date that are without reasonable cause and without the prior specific written approval of the Reinsurer, and/or (iv) any enforcement of this indemnity.

15

10.2. <u>Indemnification by the Reinsurer</u>. The Reinsurer shall reimburse the Company for, shall indemnify and hold the Company harmless of and from, and shall defend the Company against all Losses sustained or incurred by, or asserted against, the Company which arise out of, or otherwise result from (i) the breach of any of the Reinsurer's obligations under this Agreement, (ii) benefit payments due on the Reinsured Claims in the Post-Effective Date Period, (iii) the Reinsurer's claims adjustment actions and determinations (except as set forth at Section 2.1.4), and (iv) any other act, omission, event or occurrence in respect of the Reinsured Claims on or after the Effective Date, unless the Loss is incurred as a result of the Company's breach of the Agreement or independent action undertaken by the Company without reasonable cause and without the prior specific written approval of the Reinsurer.

10.3. <u>Indemnification Procedures</u>.

10.3.1. <u>Notice of Claims</u>. If a claim is made, or any suit or action is commenced for which defense or indemnity is claimed to be due under Sections 10.1 or 10.2 hereof, or if knowledge is received of any other state of facts which, if not corrected, may give rise to a right of defense or indemnification under Sections 10.1 or 10.2, the party seeking defense or indemnity ("Indemnified Party") shall give written notice to the party claimed to be liable on the defense or indemnity obligation ("Indemnifying Party") as soon as practicable after, but in no event (i) more than twenty (20) days following notice to the Indemnified Party of any claim, suit or action for which defense or indemnity will be sought, or (ii) more than thirty (30) days following the Indemnified Party's knowledge of any other state of facts which may give rise to a right to defense or indemnity under Sections 10.1 or 10.2. Notwithstanding the foregoing, each party shall advise the other in writing within one (1) business day of the receipt of any complaint or other type of regulatory inquiry involving the Reinsured Claims that may give rise to a claim for indemnification hereunder. A failure to give prompt notice shall not relieve an Indemnifying Party of its obligation to defend or indemnify, except to the extent the Indemnifying Party is prejudiced by such failure. The Indemnified Party shall make available to the Indemnifying Party and its counsel and accountants at reasonable times and for reasonable periods, during normal business hours, all books and records of the Indemnified Party relating to the matter for which defense or indemnity has been claimed, and each party hereunder will render to the other such assistance as the other may reasonably require in order to assure prompt and adequate defense of any suit, claim or proceeding to which this Section 10.3 applies.

10.3.2. <u>Selection of Counsel</u>. If defense or indemnification is sought with respect to a claim, suit or other proceeding against the Indemnified Party, the Indemnifying Party shall have the right to defend, compromise and settle the matter in the name of the Indemnified Party to the extent that the Indemnifying Party may be liable to the Indemnified Party under Sections 10.1 or 10.2 hereof; provided, however, that the

16

Indemnifying Party shall not compromise or settle a suit, claim or proceeding unless it assumes the obligation to indemnify for all Losses relating thereto. The Indemnifying Party shall notify the Indemnified Party within twenty (20) days of having been notified pursuant to Section 10.3.1 of this Agreement if the Indemnifying Party elects to assume the defense of any such claim, suit or action. In assuming the defense of a matter hereunder, the Indemnifying Party shall have the right to select counsel, provided that the Indemnified Party does not object to such counsel based on a reasonable claim of conflict of interest. The Indemnified Party shall have the right to employ its own counsel who may associate with the counsel designated by the Indemnifying Party (upon the Indemnifying Party's assumption of the defense of the matter), but the fees and expenses of such counsel shall be at the Indemnified Party's expense unless (i) the employment of such counsel shall have been authorized in writing by the Indemnifying Party, (ii) the Indemnifying Party shall not have employed counsel to take charge of the defense of such action after electing to assume the defense thereof, or (iii) such Indemnified Party shall have reasonably concluded that there may be defenses available to it which are different from or additional to those available to the Indemnifying Party (in which case the Indemnifying Party shall not have the right to direct the defense of such action on behalf of the Indemnified Party), in any of which events the reasonable fees and expenses of separate counsel for the Indemnified Party shall be paid by the Indemnifying Party.

10.3.3. <u>Settlement of Claims</u>. The Indemnified Party may at any time notify the Indemnifying Party of its intention to settle or compromise any claim, suit or action against the Indemnified Party in respect of which indemnification payments may be sought from the Indemnifying Party hereunder, but shall not settle nor compromise any matter for which indemnification may be sought, notwithstanding this Section 10.3.3, in excess of $1,000 without the written consent of the Indemnifying Party, which shall not be unreasonably withheld. Any settlement or compromise of any claim, suit or action in accordance with the preceding sentence, or any final judgment or decree entered on or in, any claim, suit or action in which the Indemnifying Party did not assume the defense in accordance herewith, shall be deemed to have been consented to by, and shall be binding upon, the Indemnifying Party as fully as if the Indemnifying Party had assumed the defense thereof and a final judgment or decree had been entered in such suit or action, or with regard to such claim, by a court of competent jurisdiction for the amount of such settlement, compromise, judgment or decree.

10.3.4. <u>Subrogation</u>. The Indemnifying Party shall be subrogated to any claims or rights of the Indemnified Party as against any other persons with respect to any amount paid by the Indemnifying Party under this Article X. The Indemnified Party shall cooperate with the Indemnifying Party, at the Indemnifying Party's expense, in the assertion by the Indemnifying Party of any such claim against other persons.

17

10.4. <u>Indemnification Payments</u>. Amounts owing under this Article X shall be paid promptly upon written demand for indemnification containing in reasonable detail the facts giving rise to such liability; provided, however, that if the Indemnifying Party notifies the Indemnified Party in writing within thirty (30) days of receipt of such demand that it disputes its obligation to provide indemnity, the controversy shall be settled by arbitration as provided herein.

### ARTICLE XI: <u>Arbitration</u>

11.1. <u>Agreement to Arbitrate</u>. It is the intention of the Company and the Reinsurer that the customs and practices of the insurance and reinsurance business shall be given full effect in the operation and interpretation of this Agreement. The parties agree to act in all things with the highest good faith. Any dispute or difference between the parties with respect to the operation or interpretation of this Agreement on which an amicable understanding cannot be reached shall be decided by arbitration. The arbitrators shall reach their decision from the standpoint of equity and the customs and practices of the life insurance and reinsurance business (to the extent consistent with the terms of this Agreement) rather than solely from the strict interpretation of the applicable substantive and procedural law.

11.2. <u>Initiating Arbitration</u>. To initiate arbitration, either the Company or the Reinsurer shall notify the other party in writing of its desire to arbitrate, stating the nature of its dispute and the remedy sought. The party to which the notice is sent shall respond to the notification in writing within twenty (20) days of its receipt.

11.3. <u>Selection of Arbitrators</u>. The arbitration hearing shall be before a panel of three (3) arbitrators, each of whom must be a disinterested present or former officer of a life insurance company other than the Company or the Reinsurer or their affiliates. The Company and the Reinsurer shall each appoint one (1) arbitrator by written notification to the other party within twenty-five (25) days of the date of the mailing of the notification initiating the arbitration. These two (2) arbitrators shall then select the third arbitrator within fourteen (14) additional days of the date of the mailing of the notification initiating the arbitration. Should either the Company or the Reinsurer fail to appoint an arbitrator, or should the two (2) arbitrators be unable to agree upon the choice of a third arbitrator, such appointment shall be left to the American Arbitration Association or its successor organization. Once chosen, the arbitrators are empowered to decide all substantive and procedural issues by a majority of votes.

11.4. <u>Arbitration Hearing</u>. The arbitration hearing shall be held in New York, New York on the date fixed by the arbitrators. In no event shall this date be later than three (3) months after the appointment of the third arbitrator. The arbitrators shall establish pre-arbitration procedures as warranted by the facts and issues of the particular case. At least ten (10) days prior to the

18

arbitration hearing, each party shall provide the other party and the arbitrators with a detailed statement of the facts and arguments it will present at the arbitration hearing. The arbitrators may consider any relevant evidence; they shall give the evidence such weight as they deem appropriate after consideration of any objections raised. The party initiating the arbitration shall have the burden of proving its case by a preponderance of the evidence. Each party may examine any witnesses who testify at the arbitration hearing. Within twenty (20) days after the end of the arbitration hearing, the arbitrators shall issue a written decision, from which there shall be no appeal and which any court having jurisdiction of the subject matter and the parties may reduce to judgment. Each party shall bear the cost of any expenses it incurs in connection with the arbitration (including the fees and expenses of the party's appointed arbitrator); the fees and expense of the third arbitrator shall be paid by the parties in equal shares.

### ARTICLE XII: Miscellaneous

12.1. <u>Further Actions and Assurances</u>. The Reinsurer and the Company will each use their best efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things, and to execute all documents, reasonably necessary, proper or advisable to consummate and make effective the transactions contemplated by this Agreement.

12.2. <u>Errors</u>. Notwithstanding anything to the contrary contained herein, if either the Company or the Reinsurer shall fail to perform an obligation under this Agreement, and such failure is shown to be unintentional and the result of an oversight, misunderstanding or clerical error on the part of either party, then the party shall not be deemed in breach thereby, but such error shall be corrected promptly by restoring both parties to the positions they would have occupied had no such error occurred.

12.3. <u>Assignment</u>. This Agreement may not be assigned by a party hereto without the prior written approval of the other party which shall not be unreasonably withheld. The rights and obligations of the parties under this Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective transferees, successors and permitted assigns.

12.4. <u>Insolvency</u>. In the event of insolvency of the Company, all payments due from the Reinsurer shall be payable directly to the liquidator, receiver or statutory successor of the Company ("Liquidator") without diminution because of the insolvency and on the basis of claims allowed against the Company by the court having jurisdiction over the Company's insolvency proceedings. The Liquidator shall give written notice of the pendency of a Reinsured Claim against the Company within a reasonable time after such claim is filed and the Reinsurer may investigate such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated any defense or defenses which it may deem available to Company or the Liquidator. The expense thus incurred by the Reinsurer shall be payable, subject to court

19

approval, out of the estate of the Company as part of the expense of the insolvency proceedings to the extent of a proportionate share of the benefit which may accrue to the Company as a result of the defense undertaken by the Reinsurer.

12.5. No Third-Party Beneficiaries. None of the provisions of this Agreement shall confer rights or benefits as third-party beneficiaries or otherwise upon any third-party that is not expressly a party to this Agreement.

12.6. Survival.

12.6.1. Unless otherwise specifically set forth in this Agreement or in any of the exhibits, schedules, certificates or other agreements delivered pursuant hereto, all covenants, representations and warranties and other obligations of the parties hereto as expressed in this Agreement shall survive until all of the Reinsurer's obligations in respect of the Reinsured Claims have been discharged or otherwise have expired. Any obligation resulting from or arising out of the non-performance of any such covenant, agreement, obligation or commitment or of any representation or warranty being untrue as of the Closing Date as to which a written notice of possible Loss shall have been given to the indemnifying party in accordance with the requirements of Article X shall survive until barred by the limitation period provided by law.

12.6.2. The obligations of the parties and their affiliates under Sections 5.3 and 5.4 shall survive termination of this Agreement.

12.7. Notices. All notices and other communications hereunder shall be in writing and shall be either (i) deposited in first class United States mail, certified, with postage prepaid, (ii) delivered by messenger, (iii) sent by a nationally recognized overnight courier, or (iv) sent by fully completed and confirmed facsimile transmission (with a written confirmation simultaneously sent in first class United States mail), as follows:

If to the Company:

Richard H. Burd
Vice President and Corporate Actuary
Educators Mutual Life Insurance Company
202 North Prince Street
P.O. Box 83149
Lancaster, Pennsylvania 17608-3149
FAX No.: (717) 393-7014

I:\HOME\HARB5751\EMLIC\DISSALE\REINSK.006

20

Copy to:

Kimberly A. Rankin
Vice President and Corporate Secretary
Educators Mutual Life Insurance Company
202 North Prince Street
P.O. Box 83149
Lancaster, Pennsylvania 17608-3149
FAX No.: (717) 393-7014


If to the Reinsurer:

Stephen M. Maher
Vice President & Actuary
Hartford Life & Accident Insurance Company
200 Hopmeadow Street
Simsbury, Connecticut 06089

Copy to:

Lynda Godkin, Esquire
General Counsel
Hartford Life & Accident Insurance Company
200 Hopmeadow Street
Simsbury, Connecticut 06089

or such other address or fax number as any party may request by notice given under this section. Notices sent as provided herein shall be deemed given on the date received by the recipient. If a recipient rejects or refuses to accept a notice given pursuant to this section, or if a notice is not deliverable because of a changed address or fax number of which no notice was given in accordance with this section, such notice shall be deemed to be received two days after such notice was mailed (whether as the actual notice or as the confirmation of a faxed notice) in accordance with the terms hereof. The foregoing shall not preclude the effectiveness of actual written notice given to a party at any address or by any means.

12.8. Press Releases. The parties will consult with each other concerning any proposed press release or public announcement pertaining to the transactions contemplated by, or related to, this Agreement, and shall agree in advance in writing upon (a) the text of any such release or the content and/or making of any such public announcement, and (b) the manner and timing of any such release or announcement.

I:\HOME\HARB5751\EMLIC\DISSALE\REINSK.006

21

12.9. <u>Integration</u>. This Agreement sets forth the entire agreement and understanding of the parties with respect to the transactions contemplated hereby. This Agreement supersedes all prior and contemporaneous discussions and agreements between the parties with respect to the subject matter hereof, all of which are merged and integrated herein.

12.10. <u>Waiver</u>. Any term or condition of this Agreement may be waived at any time by the party which is entitled to the benefit thereof by a writing executed by the President, Vice President or other duly authorized officer of such party. A waiver on any one occasion shall not be deemed to be a waiver of the same term or condition or any other term or condition on any future occasion.

12.11. <u>Amendment</u>. This Agreement may be modified or amended only by a writing duly executed by the parties.

12.12. <u>Counterparts</u>. This Agreement may be executed simultaneously in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

12.13. <u>Governing Law</u>. This Agreement shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania, without regard to its conflict of laws rules.

12.14. <u>Headings</u>. The headings in this Agreement are for convenience only and shall not constitute a part hereof.

12.15. <u>Severability</u>. If any portion of this Agreement shall be determined by any court of competent jurisdiction to be unenforceable, the unenforceable term or provision shall be stricken or interpreted in such manner as may be necessary to permit it to be enforceable, and the remaining portions of this Agreement shall be enforced in accordance with their respective terms.

12.16. <u>Force Majeure</u>. Neither party shall be liable for any delay or non-performance of any covenant contained herein, nor shall any such delay or non-performance constitute a default hereunder, or give rise to any liability for damages if such delay or non-performance is caused by an event of "force majeure." As used herein, the term "force majeure" means any act or explosion, action of the elements, strike or other labor relations problem, restriction or restraint imposed by law, rule or regulation of any public authority, whether federal, state or local, and whether civil or military, act of any military authority, interruption of transportation, facilities, or any other cause which is beyond the reasonable control of such party and which by the exercise of reasonable diligence such party is unable to prevent. The existence of any event of force majeure shall extend the term of performance on the part of such party to complete performance in the exercise of reasonable diligence after the event of force majeure has been removed.

I:\HOME\HARB5751\EMLIC\DISSALE\REINSK.006

EDUC 0146

22

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers on the day and year first written above.

| EDUCATORS MUTUAL LIFE INSURANCE COMPANY | HARTFORD ACCIDENT & LIFE INSURANCE COMPANY |
|---|---|
| By: *Richard W Bird* | By: *[signature]* |
| Its: VP & Corp Actuary | Its: VP + Actuary |
| Date: 8/6/99 | Date: 8/10/99 |

I:\HOME\HARB5751\EMLIC\DISSALE\REINSK.006

EDUC 0147

REINSURANCE AGREEMENT
Schedule 1.20

PROFESSIONAL DISABILITY CLAIMS DATABASE
Active Claims - Sorted by Association and Policy Number
06/30/99

| Policy Number | Insured | State of Residence | Sex | Birth Date | Disability Age | Incurral Date | Benefit Period | Elim Period | Cause Type | Monthly Benefit Amount | 6/99 Dis Dur | 64 CDT 3% 87 CGDT 5% 6/30/99 Statutory Reserve |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | American College of Physicians | | | | | | | | | | | |
| 37 | REDACTED | FL | M | | 67 | 03/15/93 | A-75 | 07 | S | 650.00 | 7 | 8,882.00 |
| 37 | | NC | M | | 68 | 02/15/93 | A-75 | 60 | S | 650.00 | 7 | 8,307.00 |
| 37 | | PR | M | | 69 | 01/03/95 | A-75 | 07 | S | 542.00 | 5 | 36.00 |
| 37 | | ONT | M | | 66 | 12/15/92 | A-75 | 07 | S | 541.67 | 7 | 5,853.00 |
| 37 | | RI | M | | 69 | 02/01/95 | A-75 | 07 | S | 650.00 | 5 | 8,055.00 |
| 37 | | MD | M | | 66 | 10/15/84 | Life | 07 | A | 650.00 | 15 | 34,892.00 |
| 37 | | NY | M | | 67 | 02/15/92 | A-75 | 60 | S | 650.00 | 8 | 8,167.00 |
| 37 | | OH | M | | 58 | 04/15/81 | Life | 07 | A | 650.00 | 19 | 43,677.00 |
| 37 | | FL | M | | 65 | 03/15/90 | A-75 | 60 | S | 650.00 | 10 | 1,562.00 |
| 37 | | CA | M | | 41 | 04/15/83 | A-65 | 180 | S | 2,166.67 | 17 | 142,798.00 |
| 37 | | FL | M | | 37 | 11/15/79 | A-65 | 60 | S | 1,733.33 | 20 | 131,975.00 |
| 37 | | ME | M | | 66 | 01/15/91 | A-75 | 07 | S | 650.00 | 9 | 302.00 |
| 85 | | SC | M | | 42 | 10/15/88 | A-65 | 30 | S | 3,500.00 | 11 | 321,640.00 |
| 85 | | CA | M | | 45 | 02/15/92 | A-65 | 07 | S | 7,500.00 | 8 | 645,489.00 |
| 85 | | CA | M | | 37 | 07/15/91 | A-65 | 30 | S | 4,000.00 | 8 | 466,557.00 |
| 85 | | UT | M | | 40 | 11/27/95 | A-65 | 90 | S | 2,500.00 | 4 | 286,733.00 |
| 85 | | OH | M | | 50 | 01/15/94 | A-65 | 30 | S | 11,060.00 | 6 | 774,449.00 |
| 85 | | OH | M | | 50 | 01/15/94 | A-65 | 30 | S | COLA | 6 | 81,774.00 |
| 85 | | TX | M | | 49 | 07/31/96 | A-65 | 30 | S | 7,000.00 | 3 | 634,264.00 |
| 85 | | PA | M | | 42 | 11/15/90 | Life | 90 | S | 3,994.25 | 9 | 533,845.00 |
| 85 | | PA | M | | 42 | 11/15/90 | Life | 90 | A | COLA | 9 | 117,987.00 |
| 85 | | CA | M | | 60 | 01/01/97 | 5 yrs | 60 | A | 1,000.00 | 3 | 28,206.00 |
| 85 | | PA | M | | 58 | 12/11/95 | A-65 | 07 | S | 2,000.00 | 4 | 61,732.00 |
| 85 | | MS | M | | 56 | 07/15/94 | A-65 | 180 | S | 4,500.00 | 5 | 122,140.00 |
| 85 | | IL | M | | 55 | 09/15/86 | Life | 180 | A | 1,000.00 | 13 | 93,857.00 |
| 85 | | VA | M | | 61 | 06/02/94 | 5yrs | 60 | S | 1,500.00 | 6 | 1,493.00 |
| 85 | | FL | M | | 55 | 01/15/92 | A-65 | 60 | S | 1,500.00 | 8 | 33,201.00 |
| 85 | | NJ | M | | 54 | 10/29/94 | A-65 | 90 | S | 2,500.00 | 5 | 136,603.00 |
| 85 | | GA | M | | 50 | 05/15/89 | A-65 | 180 | S | 1,000.00 | 11 | 34,815.00 |
| 85 | | IL | M | | 57 | 03/17/95 | 5 yrs | 60 | S | 1,500.00 | 5 | 62,917.00 |
| 85 | | KY | M | | 60 | 01/25/96 | A-65 | 07 | S | 2,000.00 | 4 | 35,569.00 |
| 85 | | FL | M | | 44 | 04/15/90 | A-65 | 07 | S | 2,500.00 | 10 | 207,520.00 |
| 85 | | TX | M | | 45 | 06/15/87 | A-65 | 07 | S | 2,500.00 | 13 | 149,065.00 |
| 85 | | TX | M | | 46 | 10/02/93 | A-65 | 90 | S | 8,439.00 | 6 | 794,054.00 |
| 85 | | TX | M | | 46 | 10/02/93 | A-65 | 90 | S | COLA | 6 | 131,307.00 |
| 85 | | CA | M | | 46 | 08/15/90 | A-65 | 60 | S | 5,000.00 | 9 | 365,407.00 |
| 85 | | CA | M | | 42 | 08/15/92 | A-65 | 07 | S | 6,960.00 | 7 | 704,090.00 |
| 85 | | CA | M | | 42 | 08/15/92 | A-65 | 07 | S | COLA | 7 | 125,933.00 |
| 85 | | CA | M | | 49 | 02/15/94 | A-65 | 60 | S | 3,315.00 | 6 | 287,229.00 |

REINSURANCE AGREEMENT
Schedule 1.20

PROFESSIONAL DISABILITY CLAIMS DATABASE
Active Claims - Sorted by Association and Policy Number
06/30/99

07/29/99
11:34 AM

| Policy Number | Insured | State of Residence | Sex | Birth Date | Disability Age | Incurral Date | Benefit Period | Elim Period | Cause Type | Monthly Benefit Amount | 6/99 Dis Dur | 64 CDT 3 % 87 CGDT 5% 6/30/99 Statutory Reserve |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 85 | | CA | M | | 49 | 02/15/94 | A-65 | 60 | S | COLA | 6 | 39,444.00 |
| 85 | REDACTED | FL | F | | 50 | 08/24/95 | A-65 | 60 | S | 4,500.00 | 4 | 375,404.00 |
| 85 | | WI | M | | 51 | 12/15/89 | A-65 | 60 | S | 3,650.00 | 10 | 145,765.00 |
| 85 | | MA | M | | 50 | 11/26/95 | 5 yrs | 60 | S | 3,000.00 | 4 | 52,667.00 |
| 85 | | MA | M | | 50 | 11/26/95 | 5 yrs | 180 | S | 2,500.00 | 4 | 52,262.00 |
| 85 | | AL | M | | 48 | 03/15/92 | A-65 | 60 | S | 1,500.00 | 8 | 121,774.00 |
| 85 | | NC | F | | 45 | 08/15/91 | A-65 | 60 | S | 5,301.00 | 8 | 443,869.00 |
| 85 | | NC | F | | 45 | 08/15/91 | A-65 | 60 | S | COLA | 8 | 62,656.00 |
| 85 | | WA | M | | 58 | 05/31/95 | 5 yrs | 30 | S | 850.00 | 5 | 9,713.00 |
| 85 | | NM | M | | 38 | 03/06/97 | 5 yrs | 30 | S | 1,000.00 | 3 | 27,435.00 |
| 85 | | IL | F | | 38 | 08/10/94 | 5 yrs | 07 | S | 1,100.00 | 5 | 1,733.00 |
| 85 | | IL | F | | 38 | 08/10/94 | 5 yrs | 07 | S | COLA | 5 | 7.00 |
| 85 | | NY | M | | 54 | 05/08/95 | A-65 | 30 | S | 2,500.00 | 5 | 145,284.00 |
| 85 | | FL | M | | 61 | 06/30/94 | 5 yrs | 07 | S | 1,500.00 | 5 | 287.00 |
| 85 | | FL | M | | 41 | 09/15/90 | Life | 07 | A | 1,440.00 | 9 | 196,730.00 |
| 85 | | OH | F | | 38 | 11/15/93 | A-65 | 90 | S | 2,200.00 | 6 | 255,730.00 |
| 85 | | NY | M | | 49 | 07/15/89 | A-65 | 180 | S | 3,000.00 | 10 | 157,477.00 |
| 85 | | VA | M | | 39 | 04/03/97 | A-65 | 60 | S | 5,000.00 | 3 | 546,553.00 |
| 85 | | MO | M | | 50 | 03/23/95 | A-65 | 30 | S | 7,000.00 | 5 | 571,911.00 |
| 85 | | NJ | M | | 39 | 10/29/96 | A-65 | 90 | S | 768.75 | 3 | 85,588.00 |
| 85 | | CA | F | | 37 | 11/13/96 | A-65 | 60 | S | 1,500.00 | 3 | 171,058.00 |
| 85 | | NC | F | | 40 | 11/15/93 | A-65 | 90 | S | 4,000.00 | 6 | 466,782.00 |
| 85 | | WA | M | | 37 | 01/15/91 | A-65 | 30 | S | 6,737.50 | 9 | 781,915.00 |
| 85 | | WA | M | | 37 | 01/15/91 | A-65 | 60 | S | COLA | 9 | 156,604.00 |
| 85 | | CA | M | | 42 | 07/15/91 | A-65 | 07 | S | 2,200.00 | 8 | 215,582.00 |
| 85 | | MD | F | | 44 | 02/15/91 | A-65 | 60 | S | 6,000.00 | 9 | 551,308.00 |
| 85 | | TX | M | | 30 | 08/01/92 | A-65 | 60 | S | 4,000.00 | 9 | 503,834.00 |
| 85 | | CA | M | | 47 | 07/15/92 | A-65 | 60 | S | 5,815.00 | 7 | 481,047.00 |
| 85 | | CA | M | | 47 | 07/15/92 | A-65 | 60 | S | COLA | 7 | 68,473.00 |
| 85 | | NY | M | | 43 | 01/02/96 | A-65 | 90 | S | 4,248.00 | 4 | 461,089.00 |
| 85 | | NY | M | | 43 | 01/02/96 | A-65 | 90 | S | COLA | 4 | 94,061.00 |
| 85 | | CA | M | | 48 | 04/18/95 | A-65 | 30 | S | 8,023.50 | 5 | 731,584.00 |
| 85 | | CA | M | | 48 | 04/18/95 | A-65 | 30 | S | COLA | 5 | 105,475.00 |
| 85 | | NY | M | | 55 | 07/15/93 | A-65 | 60 | S | 3,387.00 | 6 | 123,518.00 |
| 85 | | NY | M | | 55 | 07/15/93 | A-65 | 60 | S | COLA | 6 | 8,022.00 |
| 85 | | NY | M | | 41 | 01/23/97 | A-65 | 90 | S | 6,701.50 | 3 | 726,862.00 |
| 85 | | NY | M | | 41 | 01/23/97 | A-65 | 90 | S | COLA | 3 | 162,754.00 |
| 85 | | ONT | M | | 44 | 11/03/95 | A-65 | 60 | S | 4,087.50 | 4 | 433,665.00 |
| 85 | | IA | F | | 43 | 02/08/97 | A-65 | 60 | S | 750.00 | 3 | 79,081.00 |
| 85 | 7723 McCulloch, Caitou | FL | F | 11/26/58 | 36 | 10/03/95 | A-65 | 90 | S | 7,475.35 | 4 | 904,598.00 |
| 85 | 7723 McCulloch, Candi | FL | F | 11/26/58 | 36 | 10/03/95 | A-65 | 90 | S | COLA | 4 | 236,013.00 |
| 85 | | CA | M | | 30 | 09/01/93 | A-65 | 30 | S | 7,889.00 | 6 | 1,058,193.00 |

G:\Actuary\Corp\Professional\Sales\(PRFDB17Sale.xls)A

EDUC 0149

REINSURANCE AGREEMENT
Schedule 1.20

PROFESSIONAL DISABILITY CLAIMS DATABASE
Active Claims - Sorted by Association and Policy Number
06/30/99

07/29/99
11:34 AM

| Policy Number | Insured | State of Residence | Sex | Birth Date | Disability Age | Incurral Date | Benefit Period | Elim Period | Cause Type | Monthly Benefit Amount | 6/99 Dis Dur | 64 CDT 3 %, 87 CGDT 5% 6/30/99 Statutory Reserve |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 85 | | CA | M | | 30 | 09/01/93 | A-65 | 30 | S | COLA | 6 | 307,948.00 |
| 85 | | CA | M | | 36 | 06/01/96 | A-65 | 30 | S | 3,000.00 | 4 | 356,373.00 |
| 85 | | CA | M | | 33 | 09/01/95 | A-65 | 30 | S | 2,138.00 | 4 | 265,541.00 |
| 85 | | CA | M | | 33 | 09/01/95 | A-65 | 30 | S | COLA | 4 | 74,825.00 |
| 85 | | FL | M | | 45 | 10/15/93 | Life | 60 | A | 5,650.00 | 6 | 742,261.00 |
| 85 | | FL | M | | 45 | 10/15/93 | Life | 60 | A | COLA | 6 | 180,740.00 |
| 85 | | MN | M | | 47 | 02/01/97 | A-65 | 180 | S | 3,080.00 | 3 | 288,423.00 |
| 85 | | CA | M | | 47 | 07/14/94 | A-65 | 90 | S | 7,700.00 | 5 | 714,100.00 |
| 85 | | CA | M | | 47 | 07/14/94 | A-65 | 90 | S | COLA | 5 | 121,316.00 |
| 85 | | PR | M | | 45 | 05/02/95 | A-65 | 180 | S | 5,000.00 | 5 | 527,774.00 |
| 85 | | NJ | M | | 42 | 02/10/97 | A-65 | 90 | S | 7,500.00 | 3 | 811,278.00 |
| 85 | | CO | F | | 37 | 03/26/96 | A-65 | 60 | S | 5,200.00 | 4 | 615,684.00 |
| 85 | | CO | F | | 37 | 03/26/96 | A-65 | 60 | S | COLA | 4 | 149,161.00 |
| 85 | | CT | M | | 55 | 11/25/98 | A-65 | 90 | S | 8,240.00 | 3 | 498,620.00 |
| 85 | | CT | M | | 55 | 11/25/96 | A-65 | 90 | S | COLA | 3 | 47,481.00 |
| | | | | | | | | | | 264,084.02 | | 25,148,714.00 |

96

REDACTED

EDUC 0150

REINSURANCE AGREEMENT
Schedule 1.20

PROFESSIONAL DISABILITY CLAIMS DATABASE
Active Claims - Sorted by Association and Policy Number
06/30/99

07/29/99
11:34 AM

### Philadelphia Bar Association

| Policy Number | Insured | State of Residence | Sex | Birth Date | Disability Age | Incurral Date | Benefit Period | Elim Period | Cause Type | Monthly Benefit Amount | 6/99 Dis Dur | 64 CDT 3 % 87 CGDT 5% 6/30/99 Statutory Reserve |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | REDACTED | PA | M | | 31 | 05/08/97 | A-65 | 180 | S | 1,500.00 | 3 | 164,807.00 |
| | | PA | M | | 53 | 06/01/96 | A-65 | 30 | A | 1,500.00 | 4 | 96,781.00 |
| | | PA | F | | 45 | 08/15/93 | A-65 | 90 | S | 1,500.00 | 6 | 146,492.00 |
| | | PA | M | | 38 | 08/15/93 | A-65 | 07 | S | 5,500.00 | 6 | 654,641.00 |
| | | PA | F | | 43 | 08/08/95 | A-65 | 30 | S | 1,500.00 | 4 | 162,702.00 |
| | | PA | M | | 43 | 01/15/92 | Life | 30 | A | 4,000.00 | 8 | 526,766.00 |
| | | FL | F | | 37 | 05/10/93 | A-65 | 07 | S | 8,000.00 | 7 | 989,154.00 |
| | | PA | M | | 44 | 09/10/83 | A-65 | 30 | S | 1,300.00 | 16 | 60,419.00 |
| | | | | | | | | | | 24,800.00 | | 2,801,762.00 |

G:\Actuary\Corp\Professional Sale\PRFDB17Sale.xls\A

EDUC 0151



26,580,380

= .933 * 28,489,153

EDUC 0152

G:\Actuary\Corp\Professional\Sale\PRFDB17Sale.xls|A

07/29/99
11:34 AM

# REINSURANCE AGREEMENT
## Schedule 1.20

### PROFESSIONAL DISABILITY CLAIMS DATABASE
Active Claims - Sorted by Association and Policy Number
06/30/99

#### Pennsylvania Bar Association

| Policy Number | Insured | State of Residence | Sex | Birth Date | Disability Age | Incurral Date | Benefit Period | Elim Period | Cause Type | Monthly Benefit Amount | 6/99 Dis Dur | 64 CDT 3 %<br>87 CGDT 5%<br>6/30/99<br>Statutory Reserve |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 93 | REDACTED | PA | M | | 50 | 09/15/93 | Life | 07 | A | 500.00 | 6 | 62,318.00 |
| 93 | REDACTED | PA | M | | 62 | 05/24/96 | 3 yrs | 90 | S | 521.00 | 4 | 887.00 |
| 93 | REDACTED | PA | F | | 51 | 08/01/94 | Life | 90 | A | 1,500.00 | 5 | 185,542.00 |
| 93 | REDACTED | PA | M | | 51 | 06/30/95 | A-65 | 90 | S | 3,500.00 | 4 | 289,930.00 |
| 4 | | | | | | | | | | 6,021.00 | | 538,677.00 |
| 108 | 20 COLA and 88 claims - 87 claimants (1 person has 2 claims) | | | | | | | | | 294,905.02 | | 28,489,153.00 |

EDUC 0153

# REINSURANCE AGREEMENT

## Schedule 1.4
### Association Policies

| Title | Form Number | Effective Date |
|---|---|---|
| GROUP LONG TERM DISABILITY INSURANCE for THE AMERICAN COLLEGE OF PHSICIANS INSURANCE TRUST | PG-37 | April 15, 1969 |
| GROUP INSURANCE POLICY for The American College of Physicians. | PG-85 | April 15, 1985 |
| GROUP INSURANCE POLICY for The American College of Physicians Insurance Trust | PG-85A | April 15, 1990 |
| GROUP INSURANCE POLICY for The American College of Physicians Insurance Trust | PG-85B | April 15, 1993 |
| American College of Physicians Group Disability Insurance Plan Certificate of Insurance | PG-85B-C | April 15, 1993 |
| American College of Physicians Group Disability Insurance Plan Certificate of Insurance | PG-85B-C.1 | April 15, 1993 |
| MASTER POLICY OF INSURANCE (Philadelphia Bar Association) | CG97 | July 10, 1961 |
| GROUP INSURANCE POLICY for THE PHILADELPHIA BAR ASSOCIATION | PG-88 | January 10, 1989 |
| GROUP INSURANCE POLICY for The Philadelphia Bar Association | PG-88A | July 10, 1993 |
| GROUP INSURANCE POLICY for The Philadelphia Bar Association | PG-88B | July 10, 1995 |
| GROUP DISABILITY INSURANCE PLAN (Certificate of Insurance Issued to the Philadelphia Bar Association) | PG88A-C | July 10, 1993 |
| GROUP DISABILITY INSURANCE PLAN (Certificate of Insurance Issued to the Philadelphia Bar Association) | PG88B-C | July 10, 1995 |
| CERTIFICATE OF INSURANCE (Philadelphia Bar Association) | U65 | Undated |

E:\M&A\Schedule I5.doc
July 15, 1999

EDUC 0154

| Title | Form Number | Effective Date |
|---|---|---|
| GROUP INSURANCE POLICY for The Pennsylvania Bar Association | PG-93 | September 1, 1993 |
| GROUP DISABILITY INSURANCE PLAN (Certificate of Insurance Issued to the Pennsylvania Bar Association) | PG93-C | September 1, 1993 |

E:\M&A\Schedule I5.doc
July 15, 1999

EDUC 0155