UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CANDI McCULLOCH | CIVIL ACTION NO. 301CV1115(AHN) |
| Plaintiff, | |
| vs. | |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, and EDUCATORS MUTUAL LIFE INSURANCE COMPANY | |
| Defendants. | December 4, 2003 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR DEFAULT**

Defendant Hartford Life and Accident Insurance Company's ("Hartford") opposition to plaintiff's Motion for Default only further illustrates defendant's bad faith. Hartford's revisionist history of discovery and attack on plaintiff's credibility should not distract this court.

A. **HARTFORD VIOLATED COURT ORDERS**

(1) **Hartford failed and refused to produce documents related to its relationship with Educators, despite this court's order that it do so.**

The July 2002 Court order required Hartford to produce all documents that describe its relationship with Educators. (Order, pp.2, 5.) Hartford produced only the Reinsurance Agreement. To appear as if this production complied with the Order, Hartford currently represents that the Court merely ordered Hartford "to produce the Reinsurance Agreement." (Def. Br., p.2.)[1]

---

[1] The Court could not have ordered Hartford to produce the Reinsurance Agreement at that time because neither of the defendants had yet disclosed that plaintiff's claim was the subject of "reinsurance" and, instead, had represented that Hartford was merely a third party administrator for Educators. Further, Hartford's statement that it "promptly complied with the Court's order" by providing plaintiff with a complete copy of the Reinsurance Agreement on August 6, 2002, is untrue. See Def. Br., p.2. On August 9, 2002, Hartford responded to the Interrogatory Number 21 with: "This answer will be provided shortly," although Hartford clearly knew that the Reinsurance Agreement was responsive to the interrogatory. Hartford waited until September 20, 2002 to identify or produce the Reinsurance Agreement. Educators' motion for judgment on plaintiff's claims related to the Reinsurance Agreement,

Hartford then inexplicably transforms *Educators'* subsequent production of documents related to the Reinsurance Agreement into Educators' *and Hartford's* production of documents, and pretends that Hartford's production of internal due diligence documents constitutes production of documents related to its relationship with Educators. (Def. Br., pp.2-3, 7-8, and Def. Ex. A(2) ("Enclosed are documents produced on behalf of Educators Mutual Life Insurance Company.") Neither Educator's production in response to a request from plaintiff attempting to obtain a complete file nor Hartford's production of due diligence materials *one year after the court's order*, constitute Hartford's production of all documents that describe its relationship with Educators.

### (2) Hartford misrepresented to plaintiff and the court that it had produced plaintiff's entire claim file, a significant portion of which it produced for the first time at a recent deposition.

Hartford *admits* that it failed to produce plaintiff's SIU claim file, does not even attempt to justify its failure to identify and produce the file, and simply argues that plaintiff was not prejudiced by the non-production. Def. Br., pp.5-6. First and foremost, the file has been in Hartford's exclusive possession for the past three years of this litigation and it appears to have been accessed by Hartford personnel during this time. (See McGoldrick Trans., pp.24-25, attached to Plaintiff's Motion for Default.) There is no way of knowing whether Hartford's employees have removed documents from the file during the course of this litigation and of quantifying this prejudice to plaintiff.

Second, defendant's failure to produce the file has prejudiced plaintiff because the existence of the so-called "duplicate" file in the SIU department, in itself, is significant and a fact

---

on the ground that they accrued on the date the Agreement was executed, which is August 10, 1999, reveals the reason for the delay in disclosure.

2

that was only disclosed during the deposition of Mr. McGoldrick, which followed two other subordinates of his department. Had plaintiff known that the SIU department maintained this file, plaintiff would have been able to question the two previous SIU employees deposed regarding the contents of the file which contained information not previously known to plaintiff. Third, by waiting to produce the file until the morning of the deposition of the last SIU employee, defendant required plaintiff to spend an entire day of the deposition reviewing and organizing the file, rather than having the benefit of reviewing the file in preparation for the deposition.[2]

Fourth, the newly produced file contained handwritten notes from Kim Gabrielson to William Moryto regarding questions he should ask during his interview with plaintiff, which is a critical document. This document specifically relates to, and establishes, an express allegation in plaintiff's complaint.[3] Defendant deprived plaintiff, and plaintiff's expert, of the benefit of this document for two years. Finally, defendant claims that plaintiff could have "eliminate[d] any prejudice" as a result of defendants withholding this file for two years, simply by re-deposing Kim Gabrielson (the individual who compiled the withheld file and also <u>certified</u> Hartford's discovery responses wherein it misrepresented that it had produced plaintiff's entire claim file), is clearly erroneous. It sounds like a wonderful solution to defeat the pending motion, and while

---

[2] Hartford's attempt to show lack of prejudice by stating that plaintiff "only asked four questions about" one of the documents that was in the claim file that Hartford had not previously produced to plaintiff is misguided. Defendant deprived plaintiff of the opportunity to prepare questions relating to the document prior to the deposition.

[3] See First Amended Complaint, ¶ 17(d) ("Hartford represented to McCulloch simply that 'this interview involves meeting you and going through some **formatted questions** regarding your disability claim . . . Unbeknownst to McCulloch, the 'field representative' was actually a member of Hartford's Special Investigation Unit that focused on insurance fraud, and Hartford planned to . . . confront her . . . and demand that McCulloch sign a statement regarding her conduct.")

3

plaintiff concedes Hartford proposed a similar idea earlier, Hartford failed to follow up the proposal with any thing concrete which might have eliminated the prejudice created by the wasted time and costs already expended in depositions of the other witnesses and the need to have McGoldrick review the file for its completeness.. Extra costs and waste of time, and delay are real prejudice in this case as contrasted to the speculation of prejudice offered by the Hartford in opposing the pending proposed complaint. (See Def. Reply in Support of Opposition to Pl. Motion for Leave to File Second Amended Complaint, pp.2-3.)

> **(3) Hartford failed to produce claim manuals responsive to plaintiff's November 2000 request for production and that were subject to a court order compelling production, and misrepresented to plaintiff that it had produced all claim manuals.**

The July 2002 Court order required defendant to respond to the following interrogatory: "Identify any document which serves as a policy book for . . . investigating claims, review of claims, **or otherwise describes the claims handling process** and evaluation of any personnel involved in the review of claims." Order, pp.1, 3-4[4] Hartford argues that the Order did not require it to produce the five volumes of claim manuals disclosed for the first time one year later during a deposition because these manuals were "training manuals" rather than "claim manuals." Def. Br., pp.2 & 7, fn. 7. Ms. Wilk **specifically** testified that the manuals were **claims manuals**, not merely "training manuals," and that she used these manuals in 1999, which is when she began reviewing plaintiff's claim. See Def. Ex. A, Tab 5, p.12:5-13; p.13:12-14 (wherein plaintiff's counsel specifically asked: "Are these manuals for the handling of claims or is this a

---

[4] Plaintiff had served a concurrent request for production that not only required defendant to produce all documents identified in response to plaintiff's interrogatories, but that specifically requested defendant to "**[p]roduce all documents that contain or describe your policies and procedures for acceptance, or review, investigation, or adjudication claims** [sic] **for long-term disability such as plaintiff's claim.**" The interrogatories and requests for production identified the relevant time period as September 1995 to the present.

4

training program manual? A: **It's a manual for the handling of claims** . . . Both during and after the course is completed we are able to keep them at our desks for reference. - - - Q: When is the last time you looked at your manuals in terms of doing your job? A:1999.)

More importantly, even if they were training manuals, as Hartford claims, these publications clearly "describe the claims handling process," and "describe [Hartford's] policies and procedures for acceptance, or review, investigation, or adjudication [of] claims," and were thus responsive to plaintiff's discovery requests to which this Court ordered Hartford to respond. Hartford's failure to produce the manuals was in violation of the court's order. Moreover, Hartford's October 28, 2002 representation that it had identified and produced all responsive documents was not only false, but was without any reasonable basis because, as Hartford now admits, it did not even look for these manuals until recently, after the deposition in which they were disclosed. Def. Br., p.8, fn.7.

The prejudice to plaintiff is insurmountable. As this Court recognized in ordering Hartford to produce the manuals, the information they contain could have supported plaintiff's claim of bad faith. Order, p.4 & fns.4 & 5. Not only has Hartford deprived plaintiff and plaintiff's expert of the benefit of these manuals for the past two years, but Hartford has disclosed that these manuals are <u>now</u> unavailable to be produced at all. Plaintiff and the court are left to speculate whether the manuals would have been available two years ago, when plaintiff first requested them.[5]

---

[5] The interrogatories required Hartford to "identify all documents responsive to any request which are no longer in existence or which are no longer in your possession and describe the circumstances under which such documents were destroyed or left your possession, and identify all persons or locations from which copies of the documents might be obtained."

5

### B. HARTFORD'S CONDUCT HAS BEEN IN BAD FAITH

Hartford argues that its conduct has been consistent with the "letter and spirit of the Federal Rules." Hartford's decision, *one year after producing a redacted document and after the conclusion of all relevant depositions,* to finally disclose a portion of a document that it had improperly overly redacted, is hardly evidence of "vigilance" and good faith. (Def. Br., p.8, fn.9.) Similarly, Hartford's alleged decision to finally search for, and produce, documents relating to the negotiation of the Reinsurance Agreement in March 2003, when these documents were responsive to plaintiff's October 2001 discovery request, with which this Court ordered Hartford to comply in July 2002, is nothing less than an admission of bad faith - it is certainly not worthy of kudos. (Id.)

Further, Hartford's claims that it was, in good faith, offering to compromise on its objection to plaintiff's notice of deposition duces tecum of its record keeper when it "repeatedly requested Plaintiff serve a proper request for production or 30(b)(6) deposition notice" is misguided. Def. Ex. A, ¶ 1. Plaintiff already *had* served proper requests for production and deposition notices seeking these same documents, and witnesses with the appropriate knowledge, with which Hartford had failed and refused to comply, notwithstanding court orders and Hartford's February 2003 representation that it would produce these documents. See Motion for Default, pp.2-5 & Letter Brief re: Opposition to Defendants' Motion for Protective Order dated November 5, 2003.[6] Thus, this "repeated request" by Hartford was not a discussion or

---

[6] Hartford's attempt to justify its non-production on the ground that plaintiff failed to serve a "proper" discovery request echoes its representation that, notwithstanding plaintiff's November 2001 request for "any document which . . . describes the claims handling process," it had no obligation to produce the claims manuals used to train claims examiners, which obviously "describe the claims handling process," because plaintiff "has not requested training material from Hartford through formal discovery," (Def. Br., p.7, fn.7). This is not consistent with either the letter or the spirit of the Federal Rules.

6

compromise - it was an intractable refusal to produce the requested witness and documents. Contrary to Hartford's claim, the "common threads" of plaintiff's authorities are all present in this case. Hartford has utterly defied the Court's July 2002 order (and continues to do so), Hartford misrepresented that it had produced plaintiff's entire claim file and all claims manuals, and it appears that Hartford has irrevocably denied plaintiff access to evidence to which this court ordered Hartford to produce, claiming that it has now searched for the claim manuals that it should have produced two years ago, but "none were found."

**CONCLUSION**

For the foregoing reasons, plaintiff respectfully requests that the Court grant her motion for default.

PLAINTIFF,
CANDI MCCULLOGH

By_____
Eliot B. Gersten,
Fed. Bar No. ct05213
GERSTEN & CLIFFORD
214 Main Street
Hartford, CT 06106
EliotG@gersten-clifford.com
(860)527-7044
Her Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of December, 2003, a copy of the foregoing as mailed, postage prepaid to the following counsel of record via facsimile and U.S. mail:

Roberta J. Sharp, Esq.
Barry A. Chasnoff, Esq.
Jessica Spangler Taylor, Esq.
Akin Gump Strauss Hauer & Feld, LLP
300 Covent Street, Suite 1500
San Antonio, TX 78205
Tel: (210) 281-7146
Fax: (210) 224-2035

Donald E. Frechette, Esq. (ct 08930)
Joshua L. Milrad, Esq. (ct 19321)
Charles F. Gfeller, Esq.
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103
Phone (860) 525-5065
Facsimile (860) 527-4198

_____
Eliot B. Gersten