

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CANDI McCULLOCH<br>Plaintiff, | §<br>§<br>§ | CIVIL ACTION NO.<br>301CV1115(AHN) |
| vs. | §<br>§ | |
| HARTFORD LIFE AND ACCIDENT<br>INSURANCE COMPANY AND<br>EDUCATORS MUTUAL LIFE<br>INSURANCE COMPANY<br>Defendants. | §<br>§<br>§<br>§<br>§ | December 12, 2003 |

**EDUCATORS MUTUAL LIFE INSURANCE COMPANY'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff did not suffer independent injury as a result of Educators Mutual Life Insurance Company entering into a Reinsurance Agreement with Hartford Life & Accident Insurance Company. The issue in this case is not whether Educators and Hartford engaged in some sort of "wrongful reinsurance," but whether Plaintiff is entitled to benefits under the policy and bad faith damages. If she is so entitled, she can only recover once, from one insurance company. Her extraneous claims against Educators and for other forms of extracontractual damages will not provide her with any additional remedy, and Educator's presence in this case needlessly complicates the issues and wastes judicial resources. Educators should be dismissed from this case.

## ARGUMENT

Plaintiff's claims against Educators are based on a theory of "wrongful reinsurance," even though Plaintiff's chief complaint and only alleged damages stem from the termination of her disability benefits by Hartford. Plaintiff asserts alternative arguments for her theory: either Hartford assumed all of Educators' responsibilities and did not obtain her consent or that of the

063670.0229  5416024 v1 WEST                                    1

Insurance Commissioner, or Hartford did not assume all of its responsibilities and Educators failed to oversee Hartford's administration of her claim. Both arguments fail because Plaintiff ignores the fact that Educators only transferred open disability claims to Hartford, not disability insurance.

Plaintiff's lengthy argument regarding the logistics of the Reinsurance Agreement is irrelevant because Educators ceased providing disability insurance to Plaintiff's group policyholder, the American College of Physicians ("ACP"), on April 15, 1997, more than two years prior to the execution of the agreement with Hartford.[1] After April 1997, Educators did not write any professional association policies or accept premiums; its only involvement was the administration of open disability claims that predated the termination of Educators' insurance relationship with ACP.[2] Educators was not providing disability insurance to ACP at the time the Reinsurance Agreement was executed; it was merely administering the remaining open disability claims.

Even if the Reinsurance Agreement involved the transfer of insurance, rather than the liability for and the administration of open disability claims, the insurance statutes Plaintiff cites in her response do not support her assumption argument. For example, the Pennsylvania statute requires that insurers issue certificates of assumption to Pennsylvania *resident* individual and group policyholders and certificate holders. 31 PA. CODE § 90i.1(a). Plaintiff was not a resident of Pennsylvania, nor was she a "policyholder" under the policy.[3] Further, the statute does not require the insurer to obtain the consent of the insured or the Insurance Department prior to the assumption. *Id.* Similarly, the Connecticut statute applies solely to Connecticut insurers

---

[1] See Exhibit B, Tab 2 to Educators' Local Rule 56(a)(1) Statement, at 9:15-21.
[2] *Id.* at 11:10-12:13.
[3] The policyholder was the American College of Physicians. See the policy, at 1, 5, which is attached as Exhibit C, Tab 2, to Educators' Local Rule 56(a)(1) Statement.

providing insurance coverage in Connecticut. CONN. GEN. STAT. § 38a-66. Plaintiff was not a resident of Connecticut at the time the Reinsurance Agreement was executed. Moreover, the statute does not mandate disclosure to or consent from insureds prior to the execution of an assumption agreement. *Id.* Plaintiff's assumption arguments fail.

Plaintiff's alternative argument also fails because it is based on her conclusory assumption that her disability benefits would not have been terminated had Educators continued to oversee the administration of her claim. Plaintiff cannot make this tenuous connection, nor can she establish any independent damages as a result of the agreement.

I. **PLAINTIFF HAS NOT BEEN DAMAGED BY THE REINSURANCE AGREEMENT.**

Plaintiff attempts to justify retaining a superfluous defendant in the case on the theory that Educators acted improperly in assigning responsibilities under the contract to Hartford. There is no evidence that Educators acted improperly in executing the Reinsurance Agreement, nor is there evidence that Plaintiff was damaged as a result of the agreement. Whether the Reinsurance Agreement was an assignment, assumption, novation or an indemnity reinsurance agreement is a red herring; Plaintiff has not alleged any injury independent of the termination of her disability benefit. The issue in this case is whether Plaintiff is entitled to disability benefits under her policy. Plaintiff's damages stem from the alleged wrongful termination of her disability benefits, not an unidentified injury she claims she suffered as a result of Educators entering into the Reinsurance Agreement.

Plaintiff's contention that Educators' execution of the Reinsurance Agreement somehow deprived her of the "security" of a disability policy issued by Educators is wholly without merit. Plaintiff's rights under the policy were no less secure after Hartford began administering her

claim. The policy did not mandate that Educators administer Plaintiff's benefits,[4] nor did the Reinsurance Agreement leave "plaintiff with no insurer."[5] As Plaintiff concedes, Hartford continued to pay Plaintiff's benefits for over a year after the execution of the Reinsurance Agreement and before it determined she was no longer eligible for benefits.[6] Further, the reserves set aside to pay Plaintiff's benefits were transferred from Educators to Hartford as part of the Reinsurance Agreement so that there were sufficient funds to pay her claim if she continued to meet the definition of disability under her policy.[7]

The alleged wrongful termination of Plaintiff's disability benefits was not proximately or even remotely caused by Educators' execution of the Reinsurance Agreement because the terms of her policy were not changed by the agreement. Plaintiffs' "security" argument is, at heart, an argument that her right to continued benefits was somehow "vested" or otherwise guaranteed, had Educators continued to administer the claim. This argument finds no support in the Policy.

Under the policy, Hartford had the same duties and the same rights Educators had, including the right to investigate her claim for continuing disability. Plaintiff's policy did not mandate the perpetual payment of disability payments merely because Educators made an initial determination she was totally disabled under the policy. The clear language of the policy provides for benefit payments only as long as Plaintiff meets the definition of total disability: benefits are payable "for each complete month of disability."[8] Further, the payment of benefits

---

[4] See the policy, which is attached as Tab 2 to Exhibit C to Educators' Local Rule 56(a)(1) Statement.
[5] Response, at 16.
[6] *Id.* at 7-8.
[7] Plaintiff argues that the transfer of reserves as part of the Reinsurance Agreement gave Hartford a "significant financial incentive to terminate plaintiff's benefits." Response, at 9. Plaintiff's theory ignores the vast body of common law, statutory law and regulatory prohibitions, not to mention customer relations and sound business practices standing in the way of such a farfetched approach to the business of insurance. This "incentive" would be the same for any insurer handling a claim for insurance benefits. Denying payment on a claim or terminating insurance benefits will always save an insurer money.
[8] *Id.* at 6.

is expressly conditioned upon a continuing disability and Plaintiff has a duty under the policy to provide "later proofs of the continuance of [her] disability" at such intervals as Hartford or Educators reasonably require.[9]

Plaintiff's right to disability benefits is determined solely by the language of the policy and not by the insurer that is administering her claim. Plaintiff erroneously contends Hartford investigated her continued eligibility for benefits based on a different standard from that used by Educators and that she would still be receiving disability benefits from Educators but for the Reinsurance Agreement.[10] Plaintiff has no evidence that Hartford used any standard to determine her eligibility for benefits other than the standard outlined in the policy. Further, Plaintiff's mere speculation that Educators would have continued to pay her disability benefits is not competent summary judgment evidence. Educators is entitled to summary judgment on Plaintiff's breach of contract and bad faith claims.

## II. PLAINTIFF CAN ONLY RECOVER ONCE FOR THE ALLEGED WRONGFUL TERMINATION OF HER BENEFITS.

Defendants contend the evidence at trial will demonstrate Plaintiff is not entitled to recover damages for breach of contract or bad faith from either Hartford or Educators. However, even if Plaintiff establishes liability for one or both causes of action, she can not recover more than once. Hartford assumed the duty to indemnify Educators for any liability under the policy that resulted from Hartford's claim adjustment actions and determinations.[11] Plaintiff has not identified any Connecticut or Second Circuit authority suggesting that Educators' duties under the Policy may not be assigned.

---

[9] *Id.* at 10.

[10] *Id.* at 25. Plaintiff misrepresents the testimony of Pamela Mormino in advancing this argument. Ms. Mormino did not testify Hartford used a different standard to assess Plaintiff's disability; rather, she testified that she believed Hartford did a better job of "getting more data" for its claim files than Educators. See Exhibit 7 to Plaintiff's Opposition, at 205.

[11] See the Reinsurance Agreement, attached as Exhibit 1 to Plaintiff's Opposition, ¶ 2.1.3.

Hartford, not Educators, had the exclusive role in the handling of Plaintiff's claim and the decision to terminate her benefits that is the subject of this suit. Hartford has not renounced its defense of Plaintiff's claims to Educators; rather, as a result of the Reinsurance Agreement Hartford has factually and legally stepped into Educators' shoes for purposes of Plaintiff's claims. In light of the undisputed facts and the terms set forth in the Reinsurance Agreement, Educators' presence in this lawsuit simply adds a superfluous party, complicates the case, and wastes judicial resources.

### III. PLAINTIFF FAILS TO STATE A CLAIM UNDER CUTPA BECAUSE SHE SUFFERED NO ASCERTAINABLE LOSS.

To recover under the Connecticut Unfair Trade Practices Act, Plaintiff must present evidence that she parted with her money reasonably expecting to receive a particular item or service. *Hinchcliffe v. American Motors Corp.*, 440 A.2d 810, 814 (Conn. 1981). Plaintiff has presented no evidence regarding what she reasonably believed she would receive from Educators, nor has she presented any evidence that "she received insurance services far different from those that Educators represented that [she] would, and was, receiving."[12]

Plaintiff has not presented any evidence that she had any expectations regarding the agreement between Educators and Hartford. Plaintiff was not a party to the Reinsurance Agreement, and therefore, could not have any expectations regarding the terms of that agreement. Plaintiff was not involved in the purchase or negotiation of the terms of the policy. She simply purchased the disability policy that was offered by the American College of Physicians, along with the underwriting insurance company. None of the cases cited by Plaintiff in support of her ascertainable loss argument suggest that an individual insured under a group insurance policy has a reasonable expectation interest in who will underwrite or administer her

---

[12] Response, at 23.

insurance. *See, e.g., Bristol Technology, Inc. v. Microsoft Corp.*, 114 F.Supp. 2d 59 (D. Conn. 2000) (involved contract between parties granting access to source code); *In re Bridgestone/Firestone Inc.*, F. Supp. 2d 1069 (S.D. Ind. 2001) (class action involving purchase or lease of vehicles with unsafe tires). Plaintiff's expectations regarding her disability policy could only have been based on the express terms of her policy. Plaintiff has presented no evidence that Educators or Hartford departed from the terms of the policy.[13]

Plaintiff has merely argued that she expected she would continue to receive her disability benefits, an expectation directly tied to her breach of contract and bad faith claims and not to any loss she may have suffered as a result of Educators' alleged CUTPA violations.

Plaintiff's CUTPA claims, which are essentially claims for "wrongful reinsurance" and misrepresentations not directly tied to the termination of her benefits, again unnecessarily complicate this case. All of Plaintiff's arguments reveal that Plaintiff's complaint in this case is the termination of her benefits. If Plaintiff recovers on her breach of contract and bad faith claims, her CUTPA claims will not enable her to recover anything more. By the same token, if Plaintiff does not prevail on her primary claims, she will not be able to recover under her CUTPA claim because she is unable to articulate any ascertainable loss other than the loss of her disability benefits. Plaintiff's CUTPA claim fails as a matter of law.

### IV. THE STATUTE OF LIMITATIONS ON PLAINTIFF'S BREACH OF CONTRACT AND CUTPA CLAIMS WERE NOT TOLLED.[14]

The statute of limitations on Plaintiff's breach of contract claim relating to the Reinsurance Agreement and her CUTPA claim against Educators was not tolled by the federal

---

[13] As noted above, Plaintiff incorrectly cites to the deposition of Pamela Mormino to argue that Hartford used a different standard to assess Plaintiff's eligibility for disability benefits.

[14] Educators incorporates by reference to Defendants' Reply in Support of its Motion to Dismiss, Docket #150, for arguments pertaining to whether Plaintiff's proposed amendments relate back to her First Amended Complaint and to when Plaintiff's causes of action accrued for purposes of the applicable statute of limitations.

doctrine of equitable tolling. The federal doctrine of equitable tolling is not applicable in this case because neither Plaintiff's breach of contract claim nor her CUTPA claims are governed by federal statutes of limitations.[15] *Barrett v. United States of America*, 689 F.2d 324, 327 (2d Cir. 1982) (read into every *federal statute of limitations* is the equitable doctrine of tolling); *Richards v. Mileski*, 662 F.2d 65, 68 (D.C. Cir. 1982) (tolling questions for common-law tort claims must be resolved under District of Columbia precedents). Plaintiff's breach of contract and CUTPA claims fail as a matter of law.

Plaintiff's CUTPA claim was also not tolled by the continuing course of conduct doctrine.[16] In order to establish a continuing course of conduct that will toll the statute of limitations, there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related to that duty and that the duty did not terminate prior to commencement of the period allowed for bringing an action for such a wrong. *Izzarelli v. P.J. Reynolds Tobacco Co.*, 117 F.Supp.2d 167, 177 (D. Conn. 2000) (*citing Fichera v. Mine Hill Corp.*, 207 Conn. 204, 209 (1988)). Plaintiff merely argues Educators had a continuing duty to her after execution of the Reinsurance Agreement.[17] She does not, however, allege Educators' continuing breach of duty under CUTPA. A cause of action under CUTPA accrues, not when Plaintiff's alleges her injury occurred[18]—i.e., the termination of her benefits in November 2000—but when the alleged violations of the statute occurred. *Fichera*, 541 A.2d at 475-76. The last violation of CUTPA by Educators occurred in August 2000 according to Plaintiff's own

---

[15] Moreover, Plaintiff has not alleged fraudulent concealment under Connecticut state law. Even if she had, it would not toll her breach of contract and CUTPA claims because she has no evidence Educators was aware of the facts necessary to establish these causes of action and intentionally concealed them from her for the purpose of obtaining delay in filing a complaint on the cause of action. *Izzarelli v. P.J. Reynolds Tobacco Co.*, 117 F.Supp.2d 167, 177 (D. Conn. 2000).

[16] Plaintiff does not argue that the continuous course of conduct doctrine tolled her breach of contract claim against Educators.

[17] Response, at 21.

[18] *Id.*

allegations in her amended complaint. Plaintiff cannot establish a continuous course of conduct that tolled her CUTPA claim, and therefore, it fails as a matter of law.

## CONCLUSION

Based on the foregoing, the Court should grant Educators' Motion for Summary Judgment and dismiss it from this lawsuit.

By: _____

Barry A. Chasnoff (ct11162)
Roberta J. Sharp (ct24407)
Jessica S. Taylor (ct24408)
AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.
300 Convent Street, Suite 1500
San Antonio, Texas 78205
Telephone: (210) 281-7000
Telecopier: (210) 224-2035

AND

Donald E. Frechette (ct 08930)
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103
Phone: (860) 525-5065
Facsimile: (860) 527-4198

ATTORNEYS FOR DEFENDANT
HARTFORD LIFE & ACCIDENT
INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was sent via certified mail, return receipt requested to the following attorney on the ___12th___ day of December, 2003:

Eliot B. Gersten
Gersten & Clifford
214 Main Street
Hartford, CT 06106
Phone (860) 527-7044
Facsimile (860) 527-4968

                                                             _____
                                                             ROBERTA J. SHARP
                                                             JESSICA S. TAYLOR