UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2004 JAN 14 A 10: 12
US DISTRICT COURT
BRIDGEPORT CT

| | | |
|---|---|---|
| CANDI McCULLOCH<br>Plaintiff,<br><br>vs.<br><br>HARTFORD LIFE AND ACCIDENT<br>INSURANCE COMPANY AND<br>EDUCATORS MUTUAL LIFE<br>INSURANCE COMPANY<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.:<br>301CV1115(AHN)<br><br><br><br><br><br><br><br>January 13, 2004 |

## HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Plaintiff selectively culls through the claim file for data points she believes support her disability claim, and from these selected threads weaves a one-sided tapestry. This is not the standard for "bad faith"; Connecticut law requires the Court to look to the totality of evidence that was before Hartford at the time of its decision and determine whether a reasonable insurer could reach the conclusion that Plaintiff was not disabled within the meaning of the Policy.

The totality of the evidence and Hartford's investigation showed (1) Plaintiff's medical records, though undeniably voluminous, failed to identify the nature or extent of her disability; and (2) Plaintiff's functionality in everyday activities was inconsistent with the limitations reported to her physicians and to Hartford.

Not surprisingly, Plaintiff asks the Court to ignore the *results* of Hartford's investigation and find instead that the very acts of investigating a claim and ultimately terminating benefits based on that investigation constitute "bad faith." This nonsensical theory finds no support in law, regulation, or public policy. Hartford respectfully asks that the Court grant summary judgment on Plaintiff's extra-contractual claims.

I. **THE DECISION TO TERMINATE PLAINTIFF'S BENEFITS MUST BE JUDGED AGAINST THE TOTALITY OF EVIDENCE BEFORE HARTFORD.**

To establish a cause of action for "bad faith," Plaintiff must present a genuine issue of material fact that Hartford engaged in conduct designed to mislead or deceive her or it refused to fulfill a duty not prompted by honest mistake. *Martin v. American Equity Ins. Co.*, 185 F. Supp. 2d 162, 164 (D.Conn. 2002).[1] In reviewing Hartford's conduct, the Court must look to the totality of the evidence that was before Hartford when it made its decision. *See Uberti v. Lincoln National Life Ins. Co.*, 144 F. Supp. 2d 90, 103-04 (D. Conn. 2001) (bad faith must be determined on a case-by-case basis upon all the information available to the insurer at the time it decided to deny a claim). Even the cases from other jurisdictions cited by Plaintiff support the proposition that alleged "bad faith" is reviewed through a wide-angle lens, not a microscope.[2]

In her Opposition, Plaintiff has woven together the information and allegations she contends should have demonstrated to Hartford that she was disabled. Even if Plaintiff's conclusory allegations constituted competent summary judgment evidence,[3] Plaintiff may not ask this Court to disregard all the information in the claim file on the *other* side of the scale that was before Hartford when the termination decision was weighed. The question before the Court

---

[1] In this diversity case, the Court must apply Connecticut law to Plaintiff's bad faith claims. *Martin* 185 F. Supp. 2d at 164. Plaintiff's inexplicable citations to California, Wisconsin, Louisiana and Virginia cases provide no insight into either the facts or the law applicable to this case.

[2] *See e.g., Hangarter v. Paul Revere Life Ins. Co.*, 236 F. Supp. 2d 1069 (N.D. Cal. 2002) (ample evidence indicated insurer had a company wide scheme of terminating expensive claims after 18 months, insurer sent plaintiff to an IME doctor who always found in favor of the insurer, agent misrepresented to plaintiff chiropractor that she would be entitled to disability benefits even if she could perform only administrative work, and insurer attached plaintiff's bank account for premium payment after terminating her benefits,); *Hines v. Unum Life Ins. Co.*, 110 F. Supp. 2d 458, 462-464 (W.D. Va. 2000) (insurer ignored unanimous medical findings of disability, thus failing to consider the totality of the evidence, in favor of inconclusive surveillance video); *Marziale v. Hartford Life & Accident Ins. Co.*, 2002 U.S. Dist. LEXIS 11321, at *18-19 (D. La. June 19, 2002) (same).

[3] Plaintiff's Opposition is based on just that – information and allegations, and does not meet the standards for summary judgment evidence. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) ("the non-moving party may not rely on conclusory allegations or unsubstantiated speculation"); *Goldwasser v. Smith Corona Corp.*, 817 F. Supp. 263, 275 (D. Conn. 1993) (same). The deficiencies in Plaintiff's "evidence" are set forth in detail in Hartford's Objections to Plaintiff's Summary Judgment Evidence and Local Rule 56(a)(2) Statement.

is not whether a jury may weigh the same evidence and find the balance tips the other way – i.e., that Plaintiff is entitled to disability benefits[4] – the question here is whether in making its decision Hartford refused to fulfill a duty not prompted by honest mistake.

## II. THE TOTALITY OF THE EVIDENCE ESTABLISHES HARTFORD'S DECISION TO TERMINATE WAS REASONABLE AND IN GOOD FAITH.

### A. Plaintiff's medical records, though voluminous, failed to establish the nature or extent of her disability.

If the sheer volume of medical records could support a disability claim, would-be claimants could establish entitlement to benefits merely by seeing numerous doctors, numerous times, with numerous complaints. The Policy defines disability far more narrowly: "Total Disability means that; as a direct result of injury or sickness the member is *unable to perform the material and substantial duties of the members occupation* as it existed at the time disability began."[5] Injury, sickness, pain, or medication, without limited functionality, is not disability.[6]

Notwithstanding the volume of medical records, other than a 1996 IME conducted by Dr. Alshon any finding of *limitation impacting Plaintiff's ability to perform the material and substantial duties of her occupation* is notably scarce in these records. In her Opposition,

---

[4] While Hartford continues to maintain Plaintiff is not disabled within the meaning of the Policy, Plaintiff's underlying breach of contract claim is not the subject of its motion for summary judgment.

[5] Hartford's Local Rule 56(a) (1) Statement ("Hartford's Statement").

[6] For example, a missing digit might render a concert pianist disabled, but not an opera singer.

Plaintiff's *counsel* argues at length that these records establish her total disability,[7] but Plaintiff's counsel is not qualified to interpret medical records or to offer an opinion as to what they mean.

Prior to the termination of her benefits, four doctors concluded that Plaintiff could perform the material and substantial duties of her occupation, based on examination, a review of medical records, or both.[8] Dr. Wagner, an orthopedist, performed an IME in 1997 and found:

> From a medical standpoint, no further treatment is necessary or indicated. *This patient can work full time with the following restrictions.* The patient should not stand for greater than forty-five minutes to an hour at any one time. The patient should not stand for greater than two to three hours in an eight hour day. The patient can sit for six hours, three hours continuously. The patient should not lift anything greater than twenty-five pounds continuously and should never lift twenty [*sic*] pounds. The patient should avoid doing any prolonged kneeling, squatting, creeping or crawling. *The patient should be able to continue in her profession as an internist.*[9] (Emphasis added.)

Dr. Asha Garg, a physiatrist, examined and interviewed Plaintiff, reviewed medical records and videotape of Plaintiff's functioning in real world activities, and concluded she

---

[7] Opposition at p. 8 (plaintiff's previous medical records "confirmed plaintiff's disability" – purporting to cite a Claimant Questionnaire completed by Plaintiff, and Dr. Beverly Walters' report, which does not mention Plaintiff's ability to work *Id.* at p. 11 n. 13 ("all of the medical evidence supported plaintiff's disability" – no citation offered); *Id.* at p. 20 (Dr. Garg's IME "contradicted all of the medical reports in [the] file" – no citation); *Id.* at p. 22 (anular tear is "objective evidence of plaintiff's reported limitations" – purporting to cite report by Dr. Garg and deposition of Dr. Amato, neither of which makes the referenced finding *Id.* at p. 28 ("all of the physicians that examined plaintiff were unanimous in their diagnosis of plaintiff's injuries" – purporting to cite excerpts from the deposition of Joseph L. Sterle, which do not include the testimony cited *Id.* at p. 32 ("four years of medical reports. . .unanimously documented plaintiff's inability to work as a physician" – no citation offered); *Id.* at p. 34 ("volumes of medical evidence showing that plaintiff is totally disabled" – no citation offered).

The medical expert witnesses retained by Hartford to testify in this case *are* competent to interpret these medical records, and concluded in detailed written opinions that the medical records do not establish that Plaintiff was disabled. *See* Opinions of Drs. Taub and Ketroser, attached as Exhibits B and C. Hartford submits these opinions simply to demonstrate that Plaintiff's argument regarding what the medical records showed is incompetent.

[8] Two more medical experts retained by Hartford since suit was filed agree; even Plaintiff's retained expert, though of the opinion Plaintiff is disabled, believes that none of the medical records in the claim file properly diagnosed her condition. A true and correct copy of excerpts from Dr. Philip Arnold's deposition ("Arnold depo.") at 144-45, is attached as Exhibit D.

[9] *See* Tab 1 to Deborah Laughran's Supplemental Affidavit, attached as Exhibit A.

"should be able to work as an internist sixteen hours a week and administrator work in the woman's clinic thirty hours a week."[10]

Dr. Amato, an internist, reviewed medical records and videotape of Plaintiff's functionality in real world activities and concluded:

> The surveillance films reveal ability to stand for > 4 hours, twist, dance, squat, bend and turning neck for an entire day 11 a.m. to 9 p.m. with no fatigue or pain behaviors. This and medical data do not appear to support inability to perform 16 hrs Internist and 30 more hours/wk sedentary for total 46 hrs.[11]

Dr. Magana, an orthopedic surgeon, examined and interviewed Plaintiff, reviewed videotape of her functioning, and concluded she was capable of working as long as she changed her position every hour, avoided lifting more than twenty pounds occasionally or ten pounds repetitively. He further concluded Plaintiff was "capable of working a full eight hour day" and was "capable of practicing medicine two days a week as she was doing prior to her injury."[12]

Notwithstanding the extensive documentation of Plaintiff's various conditions and complaints, the only statements by physicians that she was *functionally limited in such a way as to be unable to perform the material and substantial duties of her occupation* was the statement by Dr. Alshon in 1996 and a statement by Dr. Porfiri in the APS in January 2000, based on an examination of Plaintiff almost a year earlier. Hartford reasonably considered the more recent conclusions by Drs. Garg, Magana, and Amato contradicting Dr. Alshon's four-year old IME and that of Dr. Porfiri, who refused to review the videotape of Plaintiff's activities.

---

[10] Hartford's Statement, ¶ 60. While Plaintiff attacks Hartford's claim handling on the basis of the omission of an FCE, nowhere does Plaintiff suggest that Dr. Garg was not a competent physiatrist or that a physiatrist was not appropriately qualified to assess Plaintiff's functionality.

[11] *Id.* ¶ 73.

[12] *Id.* ¶ 70.

**B.     Plaintiff's documented functionality in real world activities was inconsistent with the limitations she reported to her physicians and to Hartford.**

Against this backdrop of medical records, Hartford's investigation documented that Plaintiff's functionality in real world activities was inconsistent with the limitations she was reporting to her physicians and to Hartford. For example, Dr. Porfiri's records state that on April 20, 2000, Plaintiff called and told Dr. Porfiri that "low back flexibility is lost and [she] has stopped all P.T., all physical activity except yoga."[13] The video dispels this conclusion.[14] In the claimant questionnaire, Plaintiff told Hartford the "pain affects every aspect of my life . . . [and] restricts me in all activities."[15] She further stated she had "constant neck, interscapular, and low back pain which limit and restrict all [her] ordinary physical activities.[16] A reasonable jury could not view this videotape and conclude other than that Hartford had a good faith basis for terminating Plaintiff's benefits.

**III.    HARTFORD NOT ONLY IS ENTITLED, BUT HAS AN OBLIGATION TO INVESTIGATE CLAIMS AND MAY NOT BE FOUND TO HAVE ACTED IN BAD FAITH FOR CARRYING OUT THESE BUSINESS FUNCTIONS.**

**A.     Hartford is entitled to investigate without incurring liability for bad faith.**

Plaintiff attempts to negate the weight of the evidence revealed in Hartford's review and investigation by arguing that Hartford's very acts of investigating and ultimately terminating the claim in itself is evidence of "bad faith."[17] The conduct Plaintiff complains of—though

---

[13] *See* Exhibit 1 to the Deposition of Dr. Corine Porfiri, which is attached as Exhibit E.

[14] Dr. Porfiri admitted after reviewing the video that Plaintiff appeared to have flexibility in her lower back. True and correct copies of excerpts from Dr. Porfiri's deposition, at 159:2-20, are attached as Exhibit F.

[15] Hartford's Statement, ¶ 27-28.

[16] *Id.* ¶ 42.

[17] Plaintiff argues that Hartford violated its own internal guidelines in the investigation. Like counsel's lay interpretation of medical records, these arguments are nothing more than incompetent "evidence" offered by

studiously couched by Plaintiff in inflammatory terms such as "covert surveillance" and "interrogation"—boils down to the questioning of a claim that did not seem quite right, requests for additional information in connection with that claim, and the conduct of surveillance to verify information obtained from the insured and her health care providers. These activities are part of the ordinary course of business in the conduct of insurance. Plaintiff's theory would deny insurers the right to investigate questionable claims—a result that finds support nowhere in law or regulation and would in fact undermine the public policy reflected in anti-fraud statutes.

Thirty-nine states including Connecticut require insurers to investigate and report suspected insurance fraud. The obligation to investigate must carry with it the *right* to investigate. The legislatures and/or departments of insurance of the various states could surely prohibit or regulate such activity if they felt it consistent with the interest of insureds throughout the state; clearly they have not. Absent evidence of conscious wrongdoing or dishonest purpose, Hartford may also terminate a claim—even in error—without incurring liability for bad faith. *Martin v. American Equity Ins. Co.*, 185 F. Supp. at 164; *McCauley Enter. v. New Hampshire Ins. Co.*, 716 F. Supp. 718, 721 (D. Conn. 1989).

In Plaintiff's view, an insurer faces a Catch-22, damned if it investigates thoroughly, and damned if it does not. For example, Plaintiff points to Hartford's conduct of "four days" of surveillance as evidence of bad faith,[18] then argues that a single episode of videotaped activity may reflect only an isolated "good day" and is insufficient to counter a doctor's evaluation. Similarly, Plaintiff argues Hartford placed improper emphasis on the surveillance video[19] but

---

Plaintiff's counsel, who is not a competent witness to testify as to the interpretation or applicability of these guidelines to the case at hand. *See* Hartford's Objections to Plaintiff's Summary Judgment Evidence, at 3.

[18] *See* Plaintiff's Opposition, at 1, 9, 33.

[19] *Id.* at 29-30.

then complains of the length of the interview,[20] which was conducted by Hartford for the express purpose of giving Plaintiff an opportunity to explain in person the seeming inconsistencies between her reported limitations and her documented activities.[21]

### B. Viewed in total, Hartford's adjudication of Plaintiff's claim was balanced and thorough.

Hartford's handling of Plaintiff's claim is replete with evidence of Hartford's efforts to treat Plaintiff fairly and conduct a thorough and objective investigation of her claim. One of Hartford's first actions on this claim was to change the coding from illness to accident, thereby effectively extending the maximum benefit duration of Plaintiff's claim from "Age 65" to "Lifetime" and adding many years to the potential benefit duration.[22] Hartford contacted every one of the many physicians identified by Plaintiff, and continued to do so each time Plaintiff identified yet another.[23] Hartford elicited a supplemental assessment of Plaintiff's conditions, in light of the videotaped documentation of her functionality, from four different physicians from whom Plaintiff had sought treatment.[24] Following standard procedure, Hartford waited before sending the videotape to Plaintiff's physicians, in an effort to obtain a positive identification of the subject and avoid any possible mistaken identity or embarrassment.[25] Prior to making a final decision, Hartford subjected its own decision to internal review.[26] Upon terminating her benefits, Hartford detailed the basis for the decision and invited Plaintiff to submit any additional

---

[20] *Id.* at 1, 12, 33.

[21] True and correct copies of Gabrielsen's deposition ("Gabrielsen depo."), at 175:07-17, are attached as Exhibit G.

[22] Exhibit A (2).

[23] Hartford's Statement ¶ 36, 47, 54-55, 64.

[24] *Id.* ¶ 67-70.

[25] Gabrielsen Depo. at 248:25-249:17

[26] Hartford's Statement, ¶ 72-73.

information that might be pertinent (Plaintiff did not submit any).[27] These actions are not those of an insurance company intending to make the wrong decision.

Absent from this case is any evidence of a pervasive scheme such as was present in *Hangarter v. Paul Revere Life Insurance Co.*, a case from the 9th Circuit cited by Plaintiff. To the contrary, Plaintiff's claim is the only one of the approximately 87 in the book of claims the subject of the Reinsurance Agreement to be terminated under circumstances other than ordinary expiration of benefits.[28] Absent from this case is any evidence of effort by Hartford to obtain a biased IME, as in *Hangarter*. To the contrary, Dr. Asha Garg was a seldom used[29] physiatrist selected by Hartford only after Plaintiff rejected the first two offered.[30] Hartford requested an FCE from Dr. Garg; unbeknownst to Hartford until later, Dr. Garg did not actually conduct any formal testing. Whether by oversight, poor judgment, or even neglect, the omission of a functional capacities evaluation by an independent medical examiner does not a bad faith claim make. "Bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." *Martin v. American Equity Ins. Co.*, 185 F. Supp. 2d 162, 164 (D. Conn. 2002). Nor is there any evidence that the conduct of an FCE would have altered the outcome in light of the other evidence before Hartford.[31]

Plaintiff cites to inapposite cases in which there was a complete failure to consider the insured's medical records, not present here. *Hines v. UNUM Life Insurance Co., Purnell v.*

---

[27] Exhibit A (33) to Hartford's Statement.

[28] True and correct copies of excerpts from Pamela Mormino's deposition, at 73:15-23, 139:8-12, are attached as Exhibit H; *see also* Exhibit 109 to Mormino's depo. attached as Exhibit I.

[29] See Exhibit A, Tab 1, at 52:8-1, to Hartford's Objections to Plaintiff's Summary Judgment Evidence.

[30] Hartford's Statement, ¶ 46-50.

[31] Clearly Dr. Asha Garg felt she had sufficient basis to reach her conclusions without conducting a functional capacities evaluation, and even Plaintiff's own expert testified an FCE would have been irrelevant. Arnold depo. at 119. Plaintiff's argument that an FCE would have changed the outcome of the case amounts to an incompetent and inadmissible medical opinion by her counsel.

*UNUM Life Insurance Co.* and *Thorpe v. Continental Casualty Co.*, ERISA cases cited by Plaintiff. Here, Hartford went to great lengths to gather and consider Plaintiff's medical records, assigning her file to both a nurse and doctor for review, obtaining an IME, and giving her own physicians the opportunity to comment.

Hartford conducted a thorough and balanced investigation of Plaintiff's claim, following standard procedures and guidelines developed to balance the interests of Hartford's policyholders, Hartford's rights and obligations under the policy, and the policies reflected in anti-fraud statutes. The Court should dismiss as a matter of law Plaintiff's claims that these actions breached Hartford's duty of good faith.

## IV.    PLAINTIFF HAS SUFFERED NO ASCERTAINABLE LOSS TO SUPPORT A CLAIM UNDER CUTPA.

To recover under the Connecticut Unfair Trade Practices Act, Plaintiff must present evidence that she parted with her money reasonably expecting to receive a particular item or service. *Hinchcliffe v. American Motors Corp.*, 440 A.2d 810, 814 (Conn. 1981). Beyond the expectation to receive benefits consistent with the terms of the policy, Plaintiff can identify no reasonable expectation interest impacted by the Reinsurance Agreement.

Plaintiff cannot identify ascertainable loss separate and apart from the damages she seeks for breach of contract, as did the insured in *Coventry Assoc. v. American States Ins. Co.*, 961 P.2d 933, 939 (Wa. 1998). *Coventry* involved a claim under a property policy in which the insurer failed to conduct any investigation at all, and the insured incurred expenses investigating the cause of the damage itself. *Id.* at 939. The insured had a reasonable expectation that the insurer would absorb the expense of a reasonable investigation of its claim incurred ascertainable loss by incurring these expenses. *Id.* These investigation expenses constituted additional injury above and beyond the claim for coverage under the policy. Here, Hartford *did* investigate and made a

decision based on that investigation. This is precisely what Plaintiff should have reasonably expected in purchasing disability insurance.

Plaintiff's rights under the Policy remain precisely what they were prior to the Reinsurance Agreement. If she establishes that those rights have been breached, she may recover contract damages and her CUTPA claims will not enable her to recover anything more. If Plaintiff does not prevail on her underlying claims, she will not be able to recover under CUTPA because she suffered no ascertainable loss other than the termination of her disability benefits.

## CONCLUSION

Based on the foregoing, Hartford respectfully requests that the Court grant its Motion for Partial Summary Judgment.

By: _____

Barry A. Chasnoff (ct11162)
Roberta J. Sharp (ct24407)
Jessica S. Taylor (ct24408)
AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.
300 Convent Street, Suite 1500
San Antonio, Texas 78205
Telephone: (210) 281-7000
Telecopier: (210) 224-2035

AND

Donald E. Frechette (ct 08930)
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103
Phone: (860) 525-5065
Facsimile: (860) 527-4198

ATTORNEYS FOR DEFENDANT
HARTFORD LIFE & ACCIDENT
INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was sent via certified mail, return receipt requested to the following attorney on the __13th__ day of January, 2004:

Eliot B. Gersten
Gersten & Clifford
214 Main Street
Hartford, CT 06106
Phone (860) 527-7044
Facsimile (860) 527-4968

_____
ROBERTA J. SHARP
JESSICA S. TAYLOR