UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

| | | |
|---|---|---|
| CANDI McCULLOCH<br>Plaintiff, | §<br>§<br>§ | CIVIL ACTION NO. 2004 JAN 29 A 9:32<br>301CV1115(AHN) |
| vs. | §<br>§ | US DISTRICT<br>BRIDGEPORT |
| HARTFORD LIFE AND ACCIDENT<br>INSURANCE COMPANY AND<br>EDUCATORS MUTUAL LIFE<br>INSURANCE COMPANY<br>Defendants. | §<br>§<br>§<br>§<br>§ | December 18, 2003 |

**DEFENDANT HARTFORD LIFE & ACCIDENT INSURANCE COMPANY'S
SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR DEFAULT**

Hartford has complied with its discovery obligations in good faith by promptly supplementing its discovery responses upon finding additional documents, by timely and properly raising objections and by submitting its objections to the Court when the parties could not agree. Plaintiff's contention that this conduct constitutes bad faith is without merit. She cannot identify any instance in which Hartford failed to comply with a court order, destroyed evidence or made misrepresentations to this Court.

Plaintiff's only complaint is with the timing of Hartford's discovery responses and she is unable to demonstrate any prejudice from any purported delay in the production of documents. The timing of Hartford's responses has been the result of Plaintiff's steadfast refusal to narrow or refine her requests as discovery develops, and her attempt to turn this Court's prior rulings into some sort of blanket order to produce all documents Plaintiff believes are relevant to the case.

Most importantly, Plaintiff's motion for default is without basis in law or fact because Plaintiff fails to identify any occasion on which the Court provided Hartford notice that it would

1

063670.0229 5422657 v2 WEST

impose death penalty sanctions. The Court should deny Plaintiff's motion and award Hartford its costs in having to respond.

## ARGUMENT

### I. HARTFORD COMPLIED WITH THE JULY 2002 COURT ORDER.

**A. Hartford complied with the Court's ruling that it identify any document describing the relationship between Educators and Hartford.**

Hartford complied with the Court's July 9, 2002 Ruling requiring Hartford to identify any document describing the relationship between Educators and Hartford, by identifying and producing the Reinsurance Agreement.[1] The Court ordered the identification of this agreement so that "plaintiff could likely discover information regarding the apportionment of liability between the two defendants, or perhaps discover information which could lead to dismissal of one of the two defendants."[2] The production of the Reinsurance Agreement provided Plaintiff with the precise information contemplated by the Court's Ruling.

With Plaintiff's latest Reply brief, it has become unclear whether Plaintiff is complaining about documents she speculates may exist but were not produced (if so, she has not hinted what these documents may be), documents she claims were not responsive but were produced anyway (if so, the harm to Plaintiff is inexplicable), or documents that were responsive but should have been produced sooner. In any event, any delay in identification and production of documents relating to the due diligence conducted by Hartford in connection with the Reinsurance Agreement (which Hartford continues to maintain are utterly irrelevant this lawsuit) is attributable to Plaintiff's delay in refining her discovery requests. In its Ruling, the Court

---

[1] Plaintiff alleges Hartford delayed in identifying and producing the Reinsurance Agreement after the Court made its ruling. However, Plaintiff does not show how she was prejudiced by the time that passed between the Court's Ruling and production of the document.

[2] July 9, 2002 Ruling, Docket #53, at 5.

2

recognized the "breadth of plaintiff's interrogatories" and advised Hartford to apply reasonable and common sense meanings to Plaintiff's discovery requests.[3] Unless Plaintiff can shed some light on the documents Hartford has allegedly failed to produce in response to this interrogatory, the only reasonable and common sense interpretation compels the conclusion that Hartford complied with the Court's ruling.

In fact, Hartford went beyond its discovery obligations in voluntarily conducting a search for and producing documents responsive to a request directed only to Educators. In Plaintiff's Second Set of Interrogatories to Educators served on December 6, 2002, she requested "any and all transmittals by Educators and Hartford relating to the Reinsurance Agreement of July 1, 1999, including any communications on the transmittal of funds exchanged between Educators and Hartford and any reporting on the status of claims set forth in the Reinsurance Agreement." Hartford advised Plaintiff on March 28, 2003 that Hartford had conducted a parallel search for documents responsive to this request and that Plaintiff did not need to send a formal discovery request to Hartford because the documents had already been produced.[4]

**B.     Hartford Complied With the Ruling That It Produce Claim Handling Documents.**

Plaintiff's interpretation of the Court's ruling regarding the production of documents describing Hartford's "claims handling process" would require the production of thousands of documents having absolutely no relevance to Plaintiff's claims. A reasonable and common sense interpretation of Plaintiff's request for such documents leads to the conclusion that Plaintiff was seeking claim handling manuals. Any other interpretation would mean Hartford would be in

---

[3] *Id.* at 16, 20.

[4] A true and correct copy of the March 28, 2003 letter is attached as Exhibit A.

3

violation of the Court's ruling for failing to produce such documents as emails or log entries in claim files discussing how to handle claims other than Plaintiff's.

Hartford complied with the Court's ruling in good faith by producing the intranet manual. Upon learning in Sue Wilk's deposition on June 24, 2003 that Plaintiff considered training manuals responsive to her previous interrogatory, Hartford conducted a search for the manuals and found they were no longer in Wilk's possession or elsewhere. Plaintiff has no basis to speculate the training manuals would have been found if Hartford had looked earlier – particularly since Ms. Wilk testified she had not looked at them since 1999.[5] Hartford fully met its obligations in conducting a search for additional documents once the intent of Plaintiff's overly broad request was clarified.

### C. Hartford Complied With The Court's Ruling In Its Production Of The SIU Documents.

Plaintiff is not entitled to sanctions because she fails to identify how Hartford violated the Court's July 9, 2002 Ruling by not immediately producing Plaintiff's SIU file. *Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357 (2d Cir. 1991) (the imposition of sanctions under Rule 37(b) requires the identification of a clearly articulated order of the court requiring specified discovery). Plaintiff simply ignores the fact that the file of documents generated and maintained by the Special Investigations Unit is *not* part of the "claim file,"[6] and Plaintiff does not identify any discovery request to which the SIU file was responsive. In the absence of a proper discovery request and an order requiring its production, Hartford's production of the SIU file for the first

---

[5] Plaintiff's thinly veiled accusations throughout her brief that Hartford has destroyed evidence is without any foundation and is inconsistent with her counsel's ethical obligations under Rule 11 of the Federal Rules of Civil Procedure.

[6] John McGoldrick, the Director of SIU, testified that the SIU file is comprised of documents copied from the claim file and that are deemed necessary for SIU's investigation of the claim for fraud. True and correct copies of excerpts from Mr. McGoldrick's deposition, at 8:9-9:14; 37:12-17, are attached as Exhibit B.

4

time in connection with the SIU Director's deposition cannot serve as a basis for any type of sanctions against Hartford.

Plaintiff greatly exaggerates the prejudice she has allegedly suffered as a result of the SIU manual not having been produced earlier. Plaintiff concedes that there was only one one page document contained in the SIU file that was not contained in Plaintiff's previously produced claim file, yet she argues without basis that the SIU file constituted "a significant portion" of Plaintiff's claim file.[7] The claim file consists of approximately 4800 pages; the SIU file consists of 130 pages, 129 of which were simply copies of documents from the claim file. Plaintiff was not prejudiced in her ability to prepare for John McGoldrick's deposition because she deposed him on two days—July 10, 2003 and August 18, 2003. Hartford produced the SIU file on July 10, providing Plaintiff with more than five weeks to prepare questions regarding the SIU file. Moreover, Plaintiff made no effort to continue Kim Gabrielson's deposition as offered by Hartford and filed her motion for default instead. Hartford timely and properly supplemented its production and sanctions are clearly not warranted. Plaintiff's argument would put parties to a Hobson's choice between complying with their obligations under the Federal Rules and continuing to identify and produce responsive documents, or ignoring those obligations in order to avoid suffering a default.

## II. PLAINTIFF FAILS TO IDENTIFY AN ORDER THREATENING HARTFORD WITH DEATH PENALTY SANCTIONS.

The Court has never notified Hartford that a violation of any of its discovery orders would result in death penalty sanctions. Such notice is a prerequisite for the death penalty sanction Plaintiff seeks. *Almonte v. Coca-Cola Bottling Co.*, 169 F.R.D. 246, 248 (D. Conn. 1996) (*citing Simmons v. Abruzzo*, 49 F.3d 83, 88 (2nd Cir. 1995)) (death penalty sanctions may

---

[7] Reply, at 2-3

only be used after the court gives notice that a violation of an order will result in dismissal). In fact, the Court's discovery rulings to date have for the most part held in part for Hartford and in part for Plaintiff. Without notice of an imminent default, Plaintiff's motion is frivolous and has no basis in law or fact. Hartford is entitled to fees in costs in having to respond to Plaintiff's baseless motion.

## CONCLUSION

Plaintiff has failed to demonstrate any prejudice resulting from Hartford's timely supplementation of its production. Indeed, Plaintiff's utter lack of effort to take any additional discovery to remedy the purported prejudice caused by Hartford's supplementation demonstrates the complete absence of prejudice on her part. Hartford respectfully requests that the Court deny Plaintiff's motion for entry of default, and award Hartford its costs in responding to this motion.

Respectfully submitted,

By: _____
Barry A. Chasnoff (ct11162)
Roberta J. Sharp (ct24407)
Jessica S. Taylor (ct24408)
AKIN GUMP STRAUSS HAUER & FELD L.L.P.
300 Convent Street, Suite 1500
San Antonio, Texas 78205
Telephone: (210) 281-7000
Telecopier: (210) 224-2035

AND

Donald E. Frechette (ct 08930)
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103
Phone: (860) 525-5065
Facsimile: (860) 527-4198

ATTORNEYS FOR DEFENDANT
HARTFORD LIFE & ACCIDENT
INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was sent certified mail, return receipt requested to the following attorney on the ___18th___ day of December, 2003:

Eliot B. Gersten
Gersten & Clifford
214 Main Street
Hartford, CT 06106
Phone (860) 527-7044
Facsimile (860) 527-4968

ROBERTA J. SHARP
JESSICA S. TAYLOR

EX. A

# AKIN GUMP
# STRAUSS HAUER & FELD LLP
Attorneys at Law

ROBERTA J. SHARP
210.281.7146/fax: 210.224.2035
rsharp@akingump.com

March 28, 2003

VIA FACSIMILE AND
U.S. FIRST CLASS MAIL

Eliot B. Gersten
Gersten & Clifford
214 Main Street
Hartford, CT 06106-1881

RE:   *Candi McCulloch v. Hartford Life and Accident Insurance Company and Educators Mutual Life Insurance Company*; Civil Action No. 3:01 cv 1115 (AHN); In the United States District Court, District of Connecticut

Dear Attorney Gersten:

In response to your March 24, 2003 letter:

Thank you for contacting IKON. The IKON representative called me and has given a very high quote for the copying costs (more than $3000). Would you be willing to send the originals here so that we can inspect and determine which we need copies of?

I reviewed the previous document production. We have some of the page ranges you're missing, and I've attached the following to this letter:

    H 2345 - 46
    H 2397 - 98
    H 3493 - 96
    H 3932

The others are missing from our set as well (H 1864 - 1873, H 4114, and H 4131). I am still trying to track down the answer, whether it is simply a numbering error or other. Either way, I'll get back to you. I apologize for the delay but your letter happened to arrive on Monday of the week my legal assistant went on vacation, so we've been a little slower than usual in getting answers.

Regarding the documents we recently produced (bate nos. EDUC 0001 - 0170): these include both the documents I received from Educators (EDUC 0001 - 0014) in response to your written

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Eliot B. Gersten
Page 2
March 28, 2003

discovery request and those I received from Hartford in response to my request that they conduct a parallel search (EDUC 0015 - 0170). You do not need to send formal discovery.

Finally, I do not know what has been previously discussed as far as depositions. I will be in the office all next week except for Monday and will give you a call to discuss a mutually agreeable schedule. Please let me know if any particular time works for you; otherwise, I'll call you Tuesday morning.

Regards,

*Roberta J. Sharp*
Roberta J. Sharp

EX. B

Page 1

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF CONNECTICUT
                             (BRIDGEPORT)




                                        )
     CANDI McCULLOCH,                   )
              Plaintiff                 )
                                        )        Civil Action No:
     Vs.                                )        301CV1115 (AHN)
                                        )
     HARTFORD LIFE AND ACCIDENT         )
     INSURANCE COMPANY and              )
     EDUCATORS MUTUAL LIFE              )
     INSURANCE COMPANY,                 )
              Defendant                 )
                                        )


              Deposition of JOHN A. McGOLDRICK, taken
     before Judith L. Kline, Certified Shorthand
     Reporter/Notary Public in and for the State of
     Connecticut, pursuant to notice, at the law offices of
     Gersten & Clifford, 214 Main Street, Hartford,
     Connecticut, on July 10, 2003 at approximately 1:20
     p.m.

     APPEARANCES:

     FOR THE PLAINTIFF:
              ELIOT B. GERSTEN, ESQUIRE
              GERSTEN & CLIFFORD
              214 Main Street
              Hartford, CT 06106

     FOR THE DEFENDANTS:
              ROBERTA JILL SHARP, ESQUIRE
              AKIN, GUMP, STRAUSS, HAUER & FELD, LLP
              300 Convent Street
              Suite 1500
              San Antonio, TX 78205
     ALSO PRESENT:
              Candi McCulloch
```

Brandon Smith Reporting Service

ffb2fc91-ecf6-43b3-9bce-91d31337e433

McCulloch vs Hartford Life

7/10/2003                                                 John A. McGoldrick

Page 8

```
 1      Q   All right.  Did you bring any documents with
 2   you today?
 3      A   I did not.
 4      Q   Okay.
 5      A   Attorney Sharp did bring some.
 6      Q   Okay.  And did you hand the documents to
 7   Attorney Sharp?
 8      A   Yes.
 9      Q   And what -- in a general way, could you
10   describe -- did you hand to Attorney Sharp for
11   production today?
12      A   What I gave her was the case file, that's
13   maintained in the special investigation unit in this
14   matter.
15      Q   Okay.  And do you have any other documents in
16   your possession or control, as you were requested to
17   bring with you today, besides this case file you've
18   just described?
19      A   No, I don't.
20      Q   And can you tell me a little bit about why did
21   you bring the case file?
22      A   I was preparing for the deposition today, and
23   asked for the file.  The file was presented to me.  I
24   reviewed it and gave it to Attorney Sharp this
25   morning.
```

Page 9

1   Q   Okay. And who did you ask to get you the file?
2   A   The administrative assistant in the special
3   investigations unit.
4   Q   And what is her name?
5   A   Liz Ridel, R-I-D-E-L.
6   Q   And where does she work, physically?
7   A   Simsbury, in the Simsbury office with me.
8   Q   Okay. Is this the file that Kim Gabrielsen
9   compiled, or is this a file that you compiled? Can
10  you tell me how this thing gets put together?
11  A   Kim Gabrielsen compiled quite a bit of this.
12  And then the file would have been forwarded to
13  Investigator Moryto. And Mr. Moryto and Ms.
14  Gabrielsen together would have put the file together.
15  Q   Okay. By the way, this is Candi McCulloch who
16  just walked in.
17      When you said Mr. Moryto would put it
18  together, he described an accordion file, that's given
19  to him to do an investigation, when he testified here
20  about six weeks ago.
21  A   Okay.
22  Q   Is this the accordion file method of filing at
23  the SIU unit, that he was referring to?
24  A   I would think it would be. I don't know to
25  what he was referring. I do know that this is the

Brandon Smith Reporting Service

ffb2fc91-ecf6-43b3-9bce-91d31337e433

Page 37

1   Q   Okay. We're going to call that 64-1-b. I'm
2   going to come back to these, to ask you questions,
3   that's why I'm doing it this way.
4
         (Plaintiff's Exhibit No. 64-1-b--
5   Consultation Notes, marked for identification.)
6
7            THE WITNESS: We have this document.
8   Q   (By Mr. Gersten) Okay. So this isn't the way
9   these documents are maintained in the ordinary course
10  of business; am I correct?
11           MS. SHARP: Object to form.
12           THE WITNESS: I'm not sure what you mean.
13  These are documents that are copies from, generally,
14  the claim file. So in the regular course of business,
15  they're kept in the claim file.
16           Copies are put into this file, that are
17  deemed to be potentially necessary for the SIU to use.
18  Q   (By Mr. Gersten) Great. Looking at what --
19  I'm going to have that document that you have in your
20  left hand marked as 64-1-c.
21
         (Plaintiff's Exhibit No. 64-1-c-- November
22  5, 1998 Letter, marked for identification.)
23
24  Q   (By Mr. Gersten) All right. What's your next
25  document that you're going to identify?