**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

CANDI McCULLOCH                              : CIVIL ACTION NO. 301CV1115(AHN)
    Plaintiff,                              :
                                  :
vs.                                          :
                                  :
HARTFORD LIFE AND ACCIDENT                   :
INSURANCE COMPANY AND EDUCATORS :
MUTUAL LIFE INSURANCE COMPANY                :
    Defendants.                             : January 23, 2004

## PLAINTIFF'S SUR-REPLY IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In its Reply, Hartford Life and Accident Insurance Company ("Hartford") does not

dispute the substantial evidence of its bad faith, including that:

    (1) Hartford misrepresented the duties of plaintiff's occupation to the Independent
Medical Examination ("IME") physician, Dr. Garg (Plaintiff's Opposition, pp.16-18);

    (2) Hartford knowingly provided the tainted IME, as well as false test results (the
"summary" of a Functional Capacities Evaluation ("FCE") that it knew had never been
performed)[1] to plaintiff's physicians and its own physician reviewer to serve as the basis for their
opinions on plaintiff's functionality (Id., pp.18-21); and

    (3) Terminated plaintiff's benefits on the basis of the tainted IME, false test results,
physician opinions based on the tainted IME and false test results, as well as plaintiff's medical
records, which Hartford has now admitted did not indicate that plaintiff was no longer disabled.
Def. Ex. A(30); Pl. Ex. GG at 59, 62-67.

Rather than to address these undisputable facts, Hartford has made new arguments, and attached

---

[1] Hartford ambiguously claims that it did not know that Dr. Garg had failed to perform an FCE
"until later." Reply, p.9. The undisputable evidence shows that, as of at least September 28, 2000,
Hartford knew that Dr. Garg did not perform an FCE. Def. Ex. A(5) at H2449; Pl. Ex. OO at 140-142.
Yet on October 13, 2000, Hartford provided what purported to be the "summary of a Functional
Capacities Evaluation done on August 14, 2000", but which was never done, to plaintiff's physicians,
including Dr. Magana. Def. Ex. A(26). Continuing this pattern of creating misimpression, Dr. Amato
recently relied on the same FCE summary believing it documented the results of an FCE that Dr. Garg
had actually performed. Pl. Ex. WW at 63.

ten new exhibits, to its Reply in Further Support of its Motion for Summary Judgment. These

new arguments and exhibits also cannot justify summary judgment in Hartford's favor.

## I.    HARTFORD HAS MISSTATED THE APPLICABLE LEGAL STANDARD

In its Motion, Hartford failed to set forth the standard to be applied to its motion. Now,

relying on Uberti v. Lincoln Nat'l Life Ins. Co., 144 F.Supp.2d 90, 103-104 (D.Conn. 2001), a

decision after a bench trial, Hartford claims that, on its motion for summary judgment, the Court

should weigh the plaintiff's undisputed evidence and clear inferences of bad faith against

defendant's purporting competing evidence, and rule in Hartford's favor if, in the *Court's*

assessment, the "totality of the evidence" shows that Hartford did not "refuse to fulfill a duty not

prompted by honest mistake." Reply, pp.1, 2-3. That is not the standard. "[T]he court, on a

motion for summary judgment, cannot try issues of fact but can only determine whether there are

issues of fact to be tried." Union Ins. Soc. v. Gluckin, 353 F.2d 946, 951 (2nd Cir. 1965).

Hartford may only prevail on its motion for summary judgment if "only one inference could be

reasonably drawn from the undisputed evidentiary facts" Id., at 952; Hangarter v. Paul Revere

Life Ins. Co., 236 F.Supp.2d 1069 (N.D.Cal. 2002). Hartford has failed to meet its burden.

## II.    A REASONABLE JUROR COULD CONCLUDE THAT HARTFORD HAD NO REASONABLE BASIS TO TERMINATE PLAINTIFF'S BENEFITS

### A.    There Is, At Minimum, A Genuine Dispute As To Whether Hartford Had Any Legitimate Medical Evidence To Justify Terminating Plaintiff's Benefits

1. In its opening brief, Hartford claimed that plaintiff's medical records were insufficient

because they were "based primarily on Plaintiff's self-reporting." Def. Br., p.20. Confronted

with the admissions of Educators, the Independent Medical Reviewer hired by Educators, as well

as its own medical personnel, that plaintiff's records contained substantial objective evidence of

plaintiff's injuries (Pl. Opposition, pp.14-15), Hartford implicitly acknowledges this fact but it's

*counsel* now claims (without citation to any evidence) that, instead, what plaintiff's records were

lacking was "any finding of *limitation impacting Plaintiff's ability to perform the material and*

*substantial duties of her occupation . . .*" other than a 1996 IME conducted by Dr. Alshon.

Reply, pp.3 (emphasis in original); See also, Id., p.5.

    A reasonable juror could easily reject this after-the-fact claim because in addition to Dr.

Alshon's IME, which stated that plaintiff's disability was permanent (Pl. Ex. I), plaintiff's records

included the following findings:

    • The in-depth interviews that Dr. Walters participated in with Dr. Stern, and Educators,
in which she was "VERY consistent in feeling ee [employee] is unable to work." Pl. Exs. K & S
at 2011.

    • Dr. Theofolis' statement that plaintiff had "severe limitation of functional capacity" and
is totally disabled from her own job and from any other work. Def. Ex. A(31).

    • Dr. Santos' conclusion that plaintiff was only capable of sedentary activity. Def. Ex.
A(32).

    • Dr. Katzell's medical records, which stated that plaintiff "is not in any condition to do
the type of work that she is trained to do." Pl. Ex. M at H2223, 2225;

    • Dr. Porifiri's Attending Physician Statement ("APS") that plaintiff was disabled from
her occupation. Def. Ex. A(8); and

    **Indeed, it was the opinion of plaintiff's own insurer, Educators, that "[i]n review of**

**your file, it is clearly documented that you have sustained functional limitations which**

**prevent you from performing the substantial requirements of your occupation."** Pl. Ex. T.

Dr. Stern, the physician whom Educators had hired to conduct an independent review of

plaintiff's medical records, concluded, based on those records, that: "the appropriateness of an

impairment determination . . . certainly appears to be documented," Pl. Ex. J; See also Pl. Exs. K

& L. Indeed, Hartford itself admitted in its termination letter that the evidence plaintiff submitted to Educators "showed that you were unable to perform the material and substantial duties of your occupation" (Def. Ex. A(30), p.3), and has since admitted that nothing in any of the updated medical records that plaintiff provided to Hartford indicated that plaintiff was no longer disabled (Pl. Ex. GG at 59, 62-67.)[2]

If Educators, the physician hired by Educators to conduct an Independent Medical Review, and Hartford's own personnel could conclude that plaintiff's medical records "clearly documented" plaintiff's inability to function as a physician, certainly a disinterested, juror could do the same.[3]

Further, to the extent a reasonable juror did credit Hartford's claim that the one thing lacking from plaintiff's records was an assessment of her ability to function as a physician, that juror could reasonably conclude that Hartford's reliance on a false FCE summary, and failure to obtain a true FCE, was in bad faith. The nurse in charge of plaintiff's file testified that an FCE was the only way to determine plaintiff's level of functionality and that the failure to obtain an FCE under these circumstances was completely contrary to Hartford's protocols, practice and

---

[2] Hartford's former employee also admitted that all of the physicians that examined plaintiff were unanimous in their diagnosis of plaintiff's injuries. (Pl. Ex. OO at 185-186.) Hartford claims that this citation is inaccurate. Reply, p.4, fn.7. Plaintiff's counsel asked: "Isn't it true that there was unanimity that the objective evidence in the file revealed that Dr. McCulloch had in fact suffered the kind of injury that she described in her personal statement to you?" to which Nurse Sterle responded: "Yes, sir." Pl. Ex. OO at 186.

[3] Defendant's argument that plaintiff has rested on her *counsel's* claim that the medical records established plaintiff's disability is specious. Reply, pp.3-4 & fn.7. Plaintiff cited and quoted or summarized all of these records, as well as numerous other medical reports. See Opposition, pp.2-3 & fns.2-5; pp.14-15 & fn.18; pp.25-27, 28 & fn.34. These documents create, at minimum, an issue of fact as to Hartford's bad faith, irrespective of defendant's contention that plaintiff should have re-cited to each of these numerous exhibits every time she referred, generally and in *toto*, to these medical reports that she had previously cited, quoted, and summarized.

4

procedure. Pl. Ex. OO at 120-124, 137-142; Def. Ex. C(1), p.6.

2.      A reasonable juror could also reject Hartford's new claim that it reasonably

relied on Dr. Wagner's 1997 IME. Reply, p.4. First, Hartford did <u>not</u> rely on Dr. Wagner's IME

when it terminated plaintiff's benefits. (Def. Ex. A(30); Hartford's "Better Answers" to

Plaintiff's First Set of Interrogatories, Dated September 20, 2002, No. 8, attached hereto as Pl.

Supp. Ex. 1.) Second, any reliance on Dr. Wagner's IME would have been unreasonable given

that (a) plaintiff's insurer, Educators, received Dr. Wagner's IME from a <u>different</u> insurer in

April 1997, and determined that plaintiff was still entitled benefits under her Educator's policy

(Pl. Ex. R at 2009-2010); and (b) since the date of Dr. Wagner's IME, Drs. Stern, Katzell,

Theofils, Porfiri, and Walters had all concluded that plaintiff was disabled. (<u>See</u> Section 1,

<u>supra</u>.)

3.      For the reasons set forth in plaintiff's Memorandum of Law in Opposition

to Motion for Summary Judgment at pp.16-22, 31, a reasonable juror could conclude that

Hartford's reliance on the opinions of Drs. Garg, Amato and Magana was in bad faith. <u>Contra</u>,

Reply, p.5. Other than the undisputed fact that Hartford obtained these opinions by

misrepresenting the duties of plaintiff's occupation and providing false test results, <u>all</u> of these

physicians merely concluded that plaintiff could work as a physician for only <u>two days</u> a week.

Def. Exs. A(23) at H3054; Def. Ex. A(28), A(29). Pursuant to her policy, plaintiff was entitled

to at least residual disability benefits under these circumstances. Def. Ex. A(3), p.5.

4.      Finally, the Court should disregard Hartford's creative attempt to insert, after

filing its moving papers and after plaintiff filed her opposition, the "expert" opinions it has

obtained since this lawsuit was filed, and disregardstrike those opinions from the summary

5

judgment record. Reply, p.4, fn.7 and Exhibits B & C. As Hartford acknowledges, resolution of

Hartford's motion must be based on the "evidence that was before Hartford at the time of its

decision" to terminate plaintiff's benefits (Reply, pp.1, 2); these post-termination, post-litigation

opinions are thus utterly irrelevant and are attempts to "mend the hold". Hartford not only made

the decision to terminate plaintiff's benefits in the absence of these opinions, but these opinions

contradict Hartford's admission at the time it terminated plaintiff's benefits, that the information

that plaintiff submitted to Educators showed that plaintiff was totally disabled within the

meaning of her policy. Def. Ex. A(30), p.3.

**B.    The Surveillance Video Does Not Establish A Good Faith Basis to Terminate Plaintiff's Benefits**

A reasonable juror could also conclude that the surveillance video did not furnish a good

faith basis to terminate plaintiff's benefits. At the time of termination Hartford did not have, and

has still not presented to this Court, a shred of evidence that <u>anything</u> in the videotape established

that plaintiff was able to perform the material and substantial duties of her occupation.[4] Nor

could defendant:

- The video depicts plaintiff performing activities while under the influence of narcotics and, in one case, while mixing narcotics with alcohol, which plaintiff could not do while practicing medicine. Pl. Ex. UU at 78-82, 95-96; Pl. Ex. M at 2225; Pl. Ex. OO at 87-88; Def. Ex. A(20) at H25.

- Hartford's own nurse in charge of the file, as well as Ms. Laughran, the Director of Long Term Disability Claims, testified that the videotape could not establish plaintiff's ability to function as a physician. Pl. Ex. OO at 76-77, 92-95, 122-123, 133; Pl. Ex. HH at 65-66.

---

[4] As Hartford acknowledges elsewhere (Reply, p.3), the issue here is whether Hartford had a good faith basis to conclude that plaintiff was able to perform the material and substantial duties of her occupation as a physician. The issue is <u>not</u>, as Hartford pretends, whether plaintiff made inconsistent statements to Hartford or to her physicians. Reply, p.6; <u>See</u> <u>Marziale v. Hartford Life & Accident Ins. Co.</u>, 2002 U.S.Dist.LEXIS 11321 (E.D.La. June 20, 2002) (attached to plaintiff's opposition); <u>Clausen v. Standard Ins. Co.</u>, 961 F.Supp. 1446 (D.Colo. 1997).

• Dr. Garg and Dr. Magana maintained their opinion, after reviewing the surveillance, that plaintiff could <u>not</u> perform the regular duties of an internist. Pl. Ex. UU at 190-191, 241-243, 254-256 263; Def. Ex. A(28).

• At the time Hartford terminated plaintiff's benefits, and to this day, none of the Hartford employees involved in adjudicating plaintiff's claim have been able to explain how the video relates to plaintiff's ability to function as a physician and can only, as Hartford does in this motion, state their alleged belief that plaintiff made "inconsistent" statements. (Pl. Ex. D at 156; Pl. Ex. C at 207-211; Pl. Ex. HH at 120, 123; Pl. Ex. V at 104-106.)

Clearly, a reasonable juror hearing this testimony, as well as the multitude of medical opinions that plaintiff was disabled, could come to the same conclusion as Hartford's own employees, Nurse Sterle and Ms. Laughran; Hartford's IME, Dr. Garg; and Dr. Magana.

Moreover, there is, at most, a genuine issue of material fact as to whether plaintiff's statements were "inconsistent" with the videotape. See Pl. Oppos., pp.10-11. As Hartford knew, the video depicts plaintiff's activities while taking narcotic medications and, in one instance, while mixing narcotics with alcohol[5] - it does not reflect plaintiff's limitations in the absence of pain inhibitors, which plaintiff expressed to her physicians in examination. Even Hartford's IME physician noted that "nothing in video tape to refute the c/o that this pt [patient] made regarding her functional limitations." (Pl. Ex. PP, at p.2.)[6]

---

[5] See e.g. Def. Ex A(5) at H2442 ("the claimant is taking narcotic pain medication."); Def. Ex. A(21)

[6] Contrary to Hartford's claim, Dr. Porfiri did not "admit" that plaintiff "appeared to have flexibility in her lower back" "after reviewing the video" Reply, p.6. Dr. Porfiri stated that she would need to view the video again in order to opine whether the video showed that plaintiff had flexibility in her back and that "if" plaintiff were bending at the waist in the video, it might "appear" that she had "some range of motion of her lower back."

7

## III.   A REASONABLE JUROR COULD CONCLUDE THAT HARTFORD'S INVESTIGATION WAS IN BAD FAITH

### A.   HARTFORD MAY BE HELD LIABLE FOR BAD FAITH INVESTIGATION AS A MATTER OF LAW

Hartford's argument that no law, regulation or public policy allows an insurer to be held liable for bad faith claim investigation, if the "results" supported termination, is misguided. Reply, pp.1, 6-8. Pursuant to Hartford's theory, the law immunizes, and thus rewards, a disability insurer for bad faith so long as its misconduct yields the intended "result" - a medical opinion that the insured is not disabled. Hartford is sadly mistaken. An insurer may be liable for bad faith investigation even if the insurer's decision to deny coverage is ultimately determined to be correct. Coventry v. American States Ins. Co., 136 Wn.2d 269, 961 P.2d 933 (Wash. 1998).[7]

### B.   A REASONABLE JUROR COULD CONCLUDE THAT HARTFORD ENGAGED IN A BAD FAITH INVESTIGATION

Hartford asks the court to simply ignore the undisputed evidence of its bad faith, and *infer* that Hartford acted in good faith because it (1) corrected a coding error;[8] (2) contacted plaintiff's physicians and requested their medical records (although it disregarded them completely); (3)

---

[7] The reasoning in Coventry is consistent with Connecticut law. Similar to Washington, Connecticut's Unfair Insurance Practices Act provides that a violation of the obligation to conduct a good faith investigation (C.G.S. § 38a-816(6)(d)) is a wrong that is distinct from the violation of the obligation to pay a claim (C.G.S. § 38a-816(6)(f)). As in Washington, Connecticut case law confirms this principle. See e.g. Celentano v. Home Ins. Co., 7 CSCR 1365 (November 6, 1992) (prosecution of bad faith claim is not dependant upon successful conclusion of breach of contract claim) (attached), citing, Buckman v. People Express, Inc., 205 Conn. 166, 530 A.2d 596 (1987) ("this court recognizes an independent cause of action in tort arising from an insurer's common law duty of good faith.")

[8] There has never been any question that plaintiff's disability was the result of an accident. See Def. Ex. A(4); Def. Ex. A(30), p.3 ("Your claim file reflects you stopped working . . . as a result of a disability caused by . . . a fall while skiing."); Exhibit A(1) to Defendant's Reply, p.1 ("Disability Def.: Accident.") Apparently, when Hartford initially input plaintiff's claim into the system, its clerical staff improperly identified the "cause code" as "I" for "illness" rather than "A" for "accident." Exhibit A(1), p.2 to Defendant's Reply. There is no basis for the Court to infer that Hartford conducted a good faith investigation of plaintiff's claim simply because Hartford's clerical staff corrected this error.

sent the videotape (along with the tainted IME and non-existent FCE) to plaintiff's physicians for comment; and (4) subjected its decision to "internal review" (which it now claims consisted of merely checking the termination letter for accuracy).  Reply, pp.8-9, Exhibit A to Hartford's Objection to Plaintiff's Evidence, p.3.  Hartford overlooks that all inferences are to be drawn in *plaintiff's* favor and that, based on the **undisputed** evidence of Hartford's bad faith, a juror could reasonably infer that the activities to which Hartford now cites to show its "good faith" were nothing more than a pretense.

Finally, Hartford erroneously implies that, to prevail on her bad faith claim, plaintiff must show a "pervasive scheme" to terminate the benefits of other insureds.  Reply, p.9.  Not only is this argument specious, but it highlights the impropriety of defendant's motion at a time when its refusal to disclose evidence that could establish just such a scheme is the subject of pending discovery motions.  See Hartford's Motion for Protective Order, dated August 25, 2003; Plaintiff's Motion for Default, dated October 30, 2003.

## CONCLUSION

It is for a jury to judge the weft and weight of plaintiff's so-called "one-sided tapestry" (Reply, p.1).  However gossamer Hartford claims it to be, this tapestry precludes judgment in Hartford's favor.  For the foregoing reasons, plaintiff respectfully requests that the Court deny Hartford's Motion for Summary Judgment.

PLAINTIFF,

CANDI MCCULLOCH

By_____
Eliot B. Gersten,
Fed. Bar No. ct05213
GERSTEN & CLIFFORD
214 Main Street
Hartford, CT 06106
EliotG@gersten-clifford.com
(860)527-7044
Her Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of January, 2004, a copy of the foregoing was mailed, postage prepaid to the following counsel of record via U.S. mail:

Roberta J. Sharp, Esq.
Barry A. Chasnoff, Esq.
Jessica Spangler Taylor, Esq.
Akin Gump Strauss Hauer & Feld, LLP
300 Covent Street, Suite 1500
San Antonio, TX 78205
Tel: (210) 281-7146
Fax: (210) 224-2035

Donald E. Frechette, Esq. (ct 08930)
Joshua L. Milrad, Esq. (ct 19321)
Charles F. Gfeller, Esq.
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103
Phone (860) 525-5065
Facsimile (860) 527-4198

_____
Eliot B. Gersten

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CANDI McCULLOCH
        Plaintiff,

CIVIL ACTION NO.:
301CV1115(AHN)

vs.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY and EDUCATORS
MUTUAL LIFE INSURANCE COMPANY
        Defendants.

September 20, 2002

_____/

### DEFENDANT, HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY'S NOTICE OF SERVICE OF BETTER ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant, Hartford Life and Accident Insurance Company, by and through its undersigned

counsel, herewith gives notice of serving its Better Answers to Plaintiffs' First Set of Interrogatories,

which were served on November 26, 2001 to Defendant.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY

Keith D. Post, Esq. (ct 23702)
Co-Counsel for Defendants
Gallwey Gillman Curtis & Vento, P.A.
200 S.E. First Street, Suite 1100
Miami, Florida 33131
Phone: (305) 358-1313
Facsimile: (305) 371-5826

Donald E. Frechette, Esq. (ct 08930)
Edwards & Angell, L.L.P.
90 State House Square, 9th Floor
Hartford, CT 06103
Phone: (860) 525-5065
Facsimile: (860) 527-4198

*Plaintiff's Supp. Ev. 1*

CIVIL ACTION NO.: 301CV1115(AHN)

## CERTIFICATE OF SERVICE

This is to certify that on September ___, 2002, a copy of the foregoing was furnished by United States Mail, to Plaintiff in this case:

Eliot B. Gersten, Esq.
(Fed. Bar No. CT 05213)
GERSTEN & CLIFFORD
214 Main Street
Hartford, CT 06106
Phone: (860) 527-7044

Keith D. Post, Esq.

G:\CASES\HARTFORD\McCulloch\Discovery\Ans-Bttr to Int-2
27.0122   9-20-02   KDP:mmb

-2-

CIVIL ACTION NO.: 301CV1115(AHN)

## DEFENDANT, HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY'S BETTER ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

<u>Interrogatory No. 2:</u>    Identify all documents and oral communications related to Educator's acceptance of McCulloch's October, 1995 claim for disability.

**RESPONSE:** **Documents bate-stamped: H 2096-2099, 2007, 2008, 2242-2243, 2091-2092, 2094-2095, 2235, 2234, 2179, 2228-2233, 2120, 2236, 2093, 2101, 2217, 2100, 2023, 2219, 4394-4395, 2168-2169, 595-604, 1662-1666, 1630-1640, 1647-1649, 1641-1646, 1650-1651, 505-506, 459-461, 462-464, 498-504, 936-937, 935, 500.**

**Hartford Life does not know what oral communications, if any, that are not reflected in Educators' claim file, occurred, however, Hartford Life is attempting to obtain this information from Educators and will supplement this response, if necessary. Hartford Life is attempting to accomplish same by the end of this month. To the extent the scope of this interrogatory includes non-substantive oral communications, such as for example, two employees discussing the time of day that they want to have a meeting, Hartford Life objections on the ground that such interrogatory is overly broad.**

<u>Interrogatory No. 3:</u>    Identify each and every person who participated in the adjudication of McCulloch's claim for Long Term Disability benefits under the Policy between 1995 to date.

### I.    Hartford Life

**RESPONSE:** **Kim Gabrielsen, Senior Investigative Analyst, 4245 Meridian Parkway, Aurora, IL 60504.**

**John McGoldrick, Director of Special Investigations Unit, 200 Hopmeadow Street, Simsbury, CT 06089.**

**William Moryto, Investigator SIU, Simsbury, CT.**

**Edward T. Golden, Jr., Investigator SIU, Simsbury, CT.**

**Susan A. Wilk, Claims Examiner, 7 Waterside Crossing, Suite 101, Windsor, CT 06095.**

**Carol Johnson, Claims Specialist, Windsor, CT.**

**Diane M. Favreau, Claim Specialist, Windsor, CT.**

-3-

CIVIL ACTION NO.: 301CV1115(AHN)

Kim Huber, Claims Specialist, Simsbury, CT.

Joseph R. Sterle, nurse, no longer employed by Hartford Life. Last known address is 1345 Towne Lake Hills South Drive, Building 700, Apt. 108, Woodstock, GA 30189.

Marcia P. Anderson-Esson, R.N., Nurse, Windsor, CT.

Deb Laughran, Manager Claims Department for Group Reinsurance, Windsor, CT.

Pam Mormino, Director of Claims, Windsor, CT.

Michelle Oneto, lawyer, Simbsury, CT.

## II.   Vendors/Independent Contractors/Independent Medical Examiners

Joseph Amato, M.D. ("Amato"), 7 Waterside Crossing, Suite 101, Windsor, CT 06095.

Master Sleuth Investigations, (Darren Bock & Gene Marchesen) 4700 Hiatus Road, Suite 359, Sunrise, FL 33351.

Fact Finders Investigations, (Gerry Hanahan, Daniel Whitney and Edwin Nieves), 179 Allyn Street, Suite 301, Hartford, CT 06103.

Asha Garg, M.D. ("Garg"), Vernon Medical Group, 10 Winthrop Street, Worcester, MA 01604.

Equifax (Laura Silvester) Miami Lakes Office, Miami Lakes, Florida.

International Claims Specialists (C. Brighton), Post Office Box 911487, Dallas, TX.

## III.   American College of Physicians

Joseph J. Calamita, Group Insurance Administrators for the American College of Physicians, 666 Township Line Road, Havertown, PA 19083.

Vincent T. Lallone, Havertown, PA.

## IV.   Educators

-4-

CIVIL ACTION NO.: 301CV1115(AHN)

John T. Craft, Jr., 202 North Prince Street, Post Office Box 83149, Lancaster, PA 17608-3149.

Leta R. Sharkey, M.S., N.C.C., Disability Management Consultant, Lancaster, PA.

Elaine Mayer, R.N., Lancaster, PA.

Margaret H. Ford, M.S., C.R.C., C.C.M. Disability Case Manager, Lancaster, PA.

John D. Eisenberg, Disability Benefits Specialist. Lancaster, PA.

Ken Warnock, Lancaster, PA.

Teal Busansky, Lancaster, PA.

Treasa A., Lancaster, PA.

To the extent the scope of this interrogatory or the definition of "participated" would also include those who contributed nothing of a substantive nature, but who were minimally involved in menial or other similar tasks, Hartford Life objects on the ground that such interrogatory is overly broad.

<u>Interrogatory No. 4:</u>    For each individual identified above, describe in detail the nature of that person's participation in the adjudication of McCulloch's claim for Long Term Disability benefits under the Policy.

<u>RESPONSE: Kim Gabrielsen ("Gabrielsen")</u> - Gabrielsen was actively involved in the claim including reviewing and obtaining medical records and reports, reviewing attending physician's reports, reviewing surveillance reports/videos, reviewing IME/FCE reports, reviewing claimant's statements, making recommendations and/or decisions regarding investigation of the claim, contacting and obtaining information from other insurance companies, communicating with and managed investigative vendors, conferring with SIU Investigations, conferring with claims personnel and being involved in the decision not to extend further policy benefits. She signed the denial letter. The activity log (# 2401-2411), the summary detail report (#2441-2465), and the e-mails (#2709, 2654, 4102, 4104, 2648, 2649, 2650, 2638, 2637, 2636, 3966, 2552, 2551, 2524 and 3641, contain information memorializing her involvement.

<u>John McGoldrick ("McGoldrick")</u> - McGoldrick supervised Gabrielsen, Moryto and Golden, reviewed and discussed surveillance video with Gabrielsen, participated in decision to have IME/FCE scheduled, participated in decisions regarding claimant being interviewed,

-5-

CIVIL ACTION NO.: 301CV1115(AHN)

was kept appraised of investigation by Gabrielsen, attended meeting on August 25, 2000, dealing with interview of claimant, concurred in decision to send surveillance video to IME physician, discussed scope of claimant's interview, advised of decision to send IME reports and surveillance video to treating physician(s), participated in decision whether there was a need for further surveillance and/or needed analysis, and discussed releasing information to claimant's attorney. The activity log and e-mails contain information memorializing his involvement.

William Moryto ("Moryto") - Moryto participated in the investigation of McCulloch's claim, principally regarding the setting up and taking of McCulloch's interview/statement on September 8, 2000. He participated in determining the scope of the interview with McCulloch, he dealt with McCulloch regarding the interview and it being scheduled, and he actually took McCulloch's statement. Moryto was kept appraised of other aspects of the investigation including the setting up of the FCE/IME and providing the report and surveillance to treating physicians. The activity Log and the e-mails contain information memorializing his involvement. Moryto also prepared an investigative report dated November 1, 2000.

Edward T. Golden ("Golden") - Golden attended a meeting on September 6, 2000, to discuss McCulloch's interview and was involved in the interview. Golden also attended and participated in interviewing McCulloch in September 2000.

Susan Wilk ("Wilk") - Wilk was the claims examiner who was primarily involved in McCulloch's claim. She gathered and reviewed medical information, claimant's statements and other documents pertaining to the claim. She participated in meetings and decisions involving the handling of the claim, such as interviewing the claimant and having an IME/FCE conducted. She communicated with physicians offices, she reviewed the surveillance video and she communicated with the claimant. The summary detail report and the e-mails contain information memorializing her involvement.

Carol Johnson ("Johnson") - She was involved in the initial review of the claim upon its receipt from Educators and the determination that additional claim information needed to be obtained.

Kim Huber ("Huber") - Huber reviewed the claim and concurred with the decision to not extend further benefits to McCulloch.

Diane Favreau ("Favreau") - Favreau acted as Susan Wilk's mentor. She was actively involved in handling the claim. Favreau participated in the decisions concerning the IME/FCE and conducting of an interview with Claimant. She was also involved in communicating with treating physicians and sending the surveillance and IME report to them. She also recommended requesting that additional information and forms be provided (a PPE and proof

-6-

CIVIL ACTION NO.: 301CV1115(AHN)

of age.) She also participated in preparation of the termination letter. The summary detail report, activity log and e-mails contain information memorializing her involvement.

**Marcia P. Anderson-Esson ("Esson")** - Esson participated in the discussion involving sending the IME report and surveillance tape to treating physicians.

**Joseph Sterle ("Sterle")** - Sterle was a nurse working for Hartford Life. He was involved in the decisions regarding conducting an IME/FCE and claimant's interview. He communicated both with the IME physician's office and McCulloch regarding the IME. He also reviewed the surveillance tape. He further cleared up a question involving a typo in Dr. Magana's records. The summary detail report, activity log and the e-mails contain information memorializing his involvement.

**Deb Laughran ("Laughran")** - She participated in meetings concerning the interview scheduling and the scope of the interview. She also participated in the decision to send the IME Report and surveillance tape to treating physicians. She further participated in the decision as to whether to conduct additional review of medicals.

**Pam Mormino ("Mormino)** - Supervised the claim staff.

**Michelle Oneto ("Oneto")** - She is a lawyer with Hartford Life who rendered legal advice. Her communications are attorney-client privileged.

**Joseph Amato, M.D. ("Amato")** - He was consulted regarding Plaintiff's medical condition and he reviewed information pertaining to Plaintiff, including, medical records, the video of Plaintiff, surveillance report and Plaintiff's interview.

**Master Sleuth Investigations (Darren Bock and Gene Marchesen)** - Performed pharmacy canvass and obtained medical records.

**Fact Finder Investigations (Gerry Hanahan, Daniel Whitney and Edwin Nieves)** - Performed surveillance and medical record retrieval.

**Asha Garg, M.D. ("Garg")** - Dr. Garg performed an independent medical examination, including examining McCulloch, reviewing records, and performing an FCE. She further reviewed videotape of McCulloch.

**Equifax (Lori Silvester)** - Interviewed McCulloch and checked public records.

**International Claims Specialists (C. Brighton)** - Checked public records and drove by McCulloch's house.

-7-

CIVIL ACTION NO.: 301CV1115(AHN)

**Joseph J. Calamita ("Calamita")** - Calamita participated in processing the claim. He corresponded with Plaintiff's counsel, medical providers and other carriers.

**Vincent T. Lallone ("Lallone")** - Lallone corresponded with other carriers.

**John J. Craft, Jr. ("Craft")** - Craft participated in handling of the claim. He corresponded with medical providers and McCulloch. He reviewed information pertaining to the claim.

**Leta R. Sharkey, M.S., N.C.C. ("Sharkey")** - Sharkey provided vocational rehabilitation consultation. She contacted medical providers, other carriers, McCulloch and reviewed information concerning the claim.

**Elaine Mayer, R.N. ("Mayer")** - She assisted in review of the claim and corresponded with medical providers.

**Margaret H. Ford, M.S., C.R.C., C.C.M. ("Ford")** - Ford participated in reviewing McCulloch's claim from a vocational standpoint.

**John D. Eisenberg ("Eisenberg")** - Eisenberg corresponded with medical providers and dealt with investigative vendor.

**Ken Warnock ("Warnock")** - Warnock assisted in handling the claim. Specifically, he dealt with investigative vendor(s).

**Teal Busansky ("Busansky")** - Busansky assisted John Craft and helped gather information.

**Treasa A. ("Treasa")** - Treasa assisted John Craft and helped gather information.

**Interrogatory No. 5:** Identify all documents and oral communications related to your statement that "Plaintiff treated with a variety of medical providers from October, 1995 to on or about September 2000" in paragraph 8 of your Answer to the Complaint.

**RESPONSE: Documents bate-stamped:** H 3989, 870-871, 874, 1465-1466, 1296-1297, 1295, 1303, 1332, 3591, 3132, 3131, 3130, 3133-3134, 3126-3129, 3002, 4482, 147, 153-154, 150, 2539, 2540, 195, 173, 839, 1397-1410, 1728, 1339, 1595, 4476-4477, 2581-2584, 1880, 1463, 908, 2548-2550, 2546-2547, 2511, 958-959, 2306-2311c, 2156, 3308, 2160, 1435, 1434, 3311, 1433, 3309, 3314, 3312, 3316, 3315, 3304, 99, 3001, 1334-1338, 1340-1373, 1393-1395, 4092-4097, 166-171, 1428, 958-959, 1582-1583, 1333, 1592, 1451-1452, 1589, 1454-1458, 2666-2668, 129-131, 128, 133, 135, 134, 132, 143-144, 126-127, 4180, 3417-3419, 4181, 113-114, 3121, 3646, 3038-

-8-

GALLWEY GILLMAN CURTIS & VENTO, P. A.
200 SOUTHEAST FIRST STREET, SUITE 1100, MIAMI, FLORIDA 33131-2104 • TEL. (305) 358-1313 • FAX (305) 371-5826

CIVIL ACTION NO.: 301CV1115(AHN)

3039, 3157, 3161, 3160, 3158-3159, 94, 4503-4517, 4162, 4146, 4127, 118, 117, 4113-4125, 4091-4097, 3066-3067, 3062-3063, 3068-3069, 3072-3077, 3080-3081, 3078-3079, 2496, 2545, 3041-3042, 177-178, 163-165, 115-116, 110-111, 2002, 2702, 23-26, 3139-3149, 2408-2410, 2444-2448, 2454-2460.

**No substantive oral communications remembered beyond those embodied in the documents.**

Interrogatory No. 6: Identify all documents and oral communications related to your statement that "Plaintiff provided medical records in support of her claim that she was injured in an auto accident in or about February 2000" in paragraph 12 of your Answer to the Complaint.

**RESPONSE: Documents bate-stamped: H** 4503-4504, 4116, 4095, 3985, 3851, 3650, 3652, 150, 2581-2584, 2548-2549, 2546-2547, 4095, 166, 134-135, 23, 2458, 2449, 113-114, 3648-3649, 3315-3316.

**No substantive oral communications remembered beyond those embodied in the documents.**

Interrogatory No. 7: Identify all documents and oral communications related to your statement that you "engaged in additional review to assess Plaintiff's claim for long-term disability benefits" in paragraph 14 of your Answer to the Complaint.

**RESPONSE: Documents bate-stamped: H** 2401-2402, 2403, 2408-2410, 2441-2444, 2446-2447, 2448-2449, 2450, 2453, 2455-2460, 3173, 3174, 3170-3172, 3168, 3135, 3136, 4109, 4108, 2664-2665, 3105-3106, 3103-3104, 4066, 2651, 3120, 3118, 3117, 3113, 4079, 3646, 3038, 3420, 3157, 3161, 3160, 3159, 3158, 94, 4503-4517, 4162, 4146, 4113-4125, 2691, -2692, 3102, 3110, 3066-3067, 3062-3063, 3068-3069, 3072-3073, 3074-3075, 3076-3077, 3080-3081, 3078-3079, 2496, 3041-3042, 177-178, 163-165, 115-116, 110-111, 3164-3165, 2656-2657, 4185-4189, 2702, 3491-3492, 3695, 4112, 3139-3156, 3317-3336, 2526, 3451-3458, 3459-3463, 3440-3444, 2776-2790, 2731-2733, 2743, 2741, 2631, 3989, 3647, 3985, 3986-3988, 3947-3948, 3851-3853, 3650, 3652-3653, 3661, 3664-3666, 3654-3660, 3662-3663, 3667, 3591, 3132, 3131, 3130, 3133-3134, 3126-3129, 3002, 4482, 3367, 147, 153-154, 150, 2539-2540, 195, 3055, 3056-3060, 173, 2581-2584, 180, 2548-2550, 2546-2547, 2245, 3308, 2160, 1435, 1434, 3311, 1433, 3309, 3314, 3312, 3316, 3315, 3304, 99, 1446, 2244, 3303, 4091-4097, 166-171, 2-5, 2793-2821, 2744-2775, 2616-2627, 2603-2604, 2602, 2587-2592, 4129-4130, 2484, 3001, 2703, 3417-3419, 113-114, 2700, 2697-2699, 3137, 4185-4188, 2702, 2523b, 2523a, 23-26 and UNUM surveillance tape.

**No substantive oral communications remembered beyond those embodied in the documents, except for a conversation between Kim Gabrielsen, John McGoldrick and Jeff Huston of UNUM in or around April 25, 2000, where McCulloch's claim was discussed, and**

-9-

CIVIL ACTION NO.: 301CV1115(AHN)

an oral communication relating to McCulloch's claim took place between Golden and Moryto right after McCulloch's interview during which the interview was discussed.

Interrogatory No. 8: Identify all facts upon which you based your determination that "Plaintiff was not entitled to long-term disability benefits as of August 14, 2000" as stated in paragraph 19 of your Answer to the Complaint and in your letter to McCulloch dated November 17, 2000, attached hereto as Exhibit A including without limitation the basis for your determination of August 14, 2000 as the date on which McCulloch was no longer entitled to long-term disability benefits.

RESPONSE: All facts are identified in Hartford Life's letter to McCulloch dated November 17, 2000.

Interrogatory No. 9: Describe all facts upon which you based your claim that plaintiff is "obligated to return to Hartford the long-term disability benefits paid between August and October 2000," as stated in paragraph 19 of your Answer to the Complaint and in your letter to McCulloch dated November 17, 2000.

RESPONSE: All facts are identified in Hartford Life's letter to McCulloch dated November 17, 2000.

Interrogatory No. 10: Identify all documents and oral communications upon which you base the statements in paragraph 19 of your Answer to the Complaint quoted above.

RESPONSE: Hartford Life reviewed, relied on and evaluated each and every document contained in the claim file in evaluating whether Plaintiff was entitled to disability benefits with specific reference to the decision to terminate benefits and seek reimbursement. See documents bate-stamped: H 2412-2423, 3163-3165, 3324-3336, 3308, 2160, 1435, 1434, 3311, 1433, 3309, 3314, 3312, 3316, 3315, 3304, 99, 1446, 2244, 3303, 113-114, 110-111, 113-114, 115-116, 2666-2668, 129-131, 128, 133, 135, 134, 132, 143-144, 126, 127, 4180-4181, 3367, 147, 153-154, 150, 2539-2540, 2548-2550, 2546-2547, 164, 163-164, 4091-4097, 166-171, 173, 2581-2584, 180, 177-178, 3417-3419, 2444, 3985-3986, 2731-2733, 2743, 2741, 2523b, 2523a, 23-26, 195-196, 3323, 3454-3458, 3460-3463, 3440-3444, 3055-3060, 1662-1664, 1647-1649, 3491-3492, 2-5, 3636-3637, 3682-3686, 3668-3669, 2441-1442, 2443, 2444, 2449-2450, 40-54, 2656-2657, 2664-2665, 3105-3106, 3121, 3103-3104, 2443-2444, 4185-4189, 2702 and master policy.

No substantive oral communications remembered beyond those embodied in the documents.

Interrogatory No. 12: Describe in detail the substance of the telephone call to Christine Baker, M.D. on October 13, 2000, referenced on page 2 of your letter to McCulloch dated November

-10-

CIVIL ACTION NO.: 301CV1115(AHN)

17, 2000, attached hereto as Exhibit A, including without limitation the identity of the participants in the telephone call.

**RESPONSE: On October 31, 2000 Diane Favreau called Dr. Baker's office to inquire about them reviewing the surveillance video and IME report. Tiffany, of Dr. Baker's office, advised that she checked with the office manager who stated that "Dr. Baker does not review IME's/videos for comment and not to bother sending anything."**

Interrogatory No. 13:  Describe your relationship with Asha Garg, M.D. including without limitation the details of any contractual or compensation agreement between you and Asha Garg, M.D., and the number, if any, of referrals made to him, and identify all documents and oral communications between you and Asha Garg, M.D. related to McCulloch.

**RESPONSE: Dr. Garg was requested by Hartford Life to review medical records pertaining to McCulloch, to perform an examination of McCulloch and to render her opinion as to McCulloch. She was paid $825.00 for her services. Documents bate-stamped: H 3055-3061, 2404, 2408, 2452-2453, 2454, 4066, 4079, 3554-3560, 3102, 3110, 2551, 2449-2451, 189-194, 3049-3061, 3082-3087, 4579-4584, 3392-3397, 3465-3484, 3547-3560, 3822-3827, 3905-3924, 4011-4024, 4045-4051.**

Interrogatory No. 14:  Identify all documents and oral communications between you and William Moryto related to McCulloch.

**RESPONSE: In addition to what is indicated in the file, Kim Gabrielsen spoke to William Moryto ("Moryto") before the interview and surveillance to see if he had any questions. Kim Gabrielsen also spoke with Moryto after the interview in order to be able to follow up on any further investigation. Further, Kim Gabrielsen and Moryto meet with an investigator from the Massachusetts' Insurance Fraud Bureau about McCulloch.  Also, Moryto and Golden spoke about McCulloch's interview after it occurred.**

Interrogatory No. 15:   Identify all documents and oral communications between you and Edward T. Golden related to McCulloch or your relationship with Golden.

**RESPONSE: In addition to what is indicated in the file, Kim Gabrielsen spoke to Edward Golden before the interview and surveillance to see if he had any questions.  Kim Gabrielsen also spoke with Edward Golden after the interview in order to be able to follow up on any further investigation. Also, Golden spoke with Moryto about McCulloch's interview after it occurred.**

Interrogatory No. 16:  Identify all documents and oral communications between you and Master Sleuth Investigations related to McCulloch.

-11-

CIVIL ACTION NO.: 301CV1115(AHN)

**RESPONSE:** When the case was initially assigned to Master Sleuth , Kim Gabrielsen called them to advise them that a written assignment would be forthcoming shortly.

Interrogatory No. 18: Identify the "evidence submitted" that "showed that" McCulloch was "unable to perform the material and substantial duties of her "occupation" as stated on page 3 of your letter to McCulloch dated November 17, 2000, attached hereto as Exhibit A.

**RESPONSE:** Documents bate-stamped: H 870-871, 874, 1465-1466, 1296-1297, 1303-1332, 1397-1403, 1882-1883, 954, 950-951, 1294, 1461, 839, 1880, 1463, 908, 2245, 3308, 2160, 1435, 540-541, 537-539, 542, 536, 535, 392, 533, 531-532, 1459, 543, 958-959, 967-968, 971, 963-966, 970, 961, 4394-4395, 2168-2169, 2219, 4327, 595-604, 1662-1666, 1630-1640, 1647-1649, 1641-1646, 1650-1651, 505-506, 459-464, 498-499, 501, 504, 936-937, 935.

Interrogatory No. 19: Identify all documents and oral and written communications related to your decision to require McCulloch to undergo a Functional Capacities Evaluation.

**RESPONSE:** Documents bate-stamped: H 2664-2665, 3105-3106, 3103-3104, 4109, 4108, 4066, 2401, 2402, 2453, 2731-2733, 2741, 2743, and surveillance tapes, 2001-2006, 3163-3165, 4185-4189, 2702, 2463, 870-871, 874, 1465-1466, 1295-1297, 1303-1332, 3591, 3130-3134, 3126-3129, 3367, 147, 153-154, 150, 2539-2540, 195-196, 3001, 173, 113-114, 1397-1410, 1728, 1339, 1595, 2581-2584, 180, 1882-1883, 954, 950-951, 1294, 1461, 1880, 1463, 908, 2548-2550, 2546-2547. 2306-2311c, 2156, 2245, 3308, 2160, 1435, 1434, 3311, 1433, 3309, 3314, 3312, 3315-3316, 3304, 99, 1446, 2244, 3303, 2656-2657, 537-540, 542, 536, 535, 392, 533, 531-532, 1459, 543, 1334-1338, 1340-1373, 1393-1395, 4092-4097, 166-171, 958-959, 1582-1583, 1333, 1592, 1451-1452, 1589, 1454-1458, 1573-1575, 2666-2668, 128-131, 132-135, 143-144, 126-127, 4180-4181.

**No substantive oral communications remembered beyond those embodied in the documents.**

Interrogatory No. 20: Identify any document which serves as a policy book for underwriting claims, investigating claims, review of claims, or otherwise describes the claims handling process and evaluation of any personnel involved in the review of claims.

**RESPONSE: LTD Policy and Procedures.**
**Also as to SIU - BMS Fraud Data Base Procedures.**

Interrogatory No. 21: Identify any document which describes the relationship between Defendant Educators and Defendant Hartford, including any assignments or indemnities.

-12-

CIVIL ACTION NO.: 301CV1115(AHN)

**RESPONSE: The reinsurance agreement recently produced to Plaintiff (bates stamped numbers H08113-140).**

Interrogatory No. 22: Identify the bases for the claim in your letter to McCulloch dated July 25, 2000, attached hereto as Exhibit C, that the Functional Capacities Evaluation was "due to an inability to obtain adequate medical documentation as well as care and treatment that made the necessity for this examination."

**RESPONSE: The medical records in Hartford Life's possession related to treatment being rendered to Plaintiff, but it was felt that they were lacking in information supporting treatment and/or why treatment rendered.**

Interrogatory No. 23: Identify all documents and oral and written communications related to your decision to require McCulloch to undergo an Independent Medical Examination.

**RESPONSE: Documents bate-stamped: H 2664-2665, 3105-3106, 3103-3104, 4109, 4108, 4066, 2401, 2402, 2453, 2731-2733, 2741, 2743, and surveillance tapes, 2001-2006, 3163-3165, 4185-4189, 2702, 2463, 870-871, 874, 1465-1466, 1295-1297, 1303-1332, 3591, 3130-3134, 3126-3129, 3367, 147, 153-154, 150, 2539-2540, 195-196, 3001, 173, 113-114, 1397-1410, 1728, 1339, 1595, 2581-2584, 180, 1882-1883, 954, 950-951, 1294, 1461, 1880, 1463, 908, 2548-2550, 2546-2547. 2306-2311c, 2156, 2245, 3308, 2160, 1435, 1434, 3311, 1433, 3309, 3314, 3312, 3315-3316, 3304, 99, 1446, 2244, 3303, 2656-2657, 537-540, 542, 536, 535, 392, 533, 531-532, 1459, 543, 1334-1338, 1340-1373, 1393-1395, 4092-4097, 166-171, 958-959, 1582-1583, 1333, 1592, 1451-1452, 1589, 1454-1458, 1573-1575, 2666-2668, 128-131, 132-135, 143-144, 126-127, 4180-4181.**

**No substantive oral communications remembered beyond those embodied in the documents.**

Interrogatory No. 24: Identify all documents and oral and written communications related to your decision to require McCulloch to participate in an interview with an investigator, including without limitation, all documents and oral communications upon which you based your statement that an interview with an investigator is part of McCulloch's "policy's continuing claims and proof of loss process" and constitutes an "examination" in your letter to McCulloch dated August 23, 2000, attached hereto as Exhibit D.

**RESPONSE: Documents bate-stamped: H 2651, 3120, 3118, 3117, 3113, 2709, 2402, 2452, 2401, 2403, 2404, 40-54, 2731-2733, 2741, 2743 and surveillance tapes, 2001-2006, 3163-3165, 4185-4189, 2702, 2463, 870-871, 874, 1465-1466, 1295-1297, 1303-1332, 3591, 3130-3134, 3126-3129, 3367, 147, 153-154, 150, 2539-2540, 195-196, 3001, 173, 113-114, 1397-1410, 1728, 1339, 1595, 2581-2584, 180, 1882-1883, 954, 950-951, 1294, 1461, 1880, 1463, 908, 2548-2550,**

-13-

CIVIL ACTION NO.: 301CV1115(AHN)

2546-2547. 2306-2311c, 2156, 2245, 3308, 2160, 1435, 1434, 3311, 1433, 3309, 3314, 3312, 3315-3316, 3304, 99, 1446, 2244, 3303, 2656-2657, 537-540, 542, 536, 535, 392, 533, 531-532, 1459, 543, 1334-1338, 1340-1373, 1393-1395, 4092-4097, 166-171, 958-959, 1582-1583, 1333, 1592, 1451-1452, 1589, 1454-1458, 1573-1575, 2666-2668, 128-131, 132-135, 143-144, 126-127, 4180-4181.

No substantive oral communications remembered beyond those embodied in the documents.

-14-

GALLWEY GILLMAN CURTIS & VENTO, P. A.

200 SOUTHEAST FIRST STREET, SUITE 1100, MIAMI, FLORIDA 33131-2104 • TEL (305) 358-1313 • FAX (305) 371-5826

CIVIL ACTION NO.: 301CV1115(AHN)

## CERTIFICATION

I hereby certify that I have reviewed the foregoing Better Answers to Interrogatories and and verify that they are true and accurate to the best of my knowledge and belief this _18_ day of _September_, 2002.

Hartford Life and Accident Insurance Company

By: _Kim S. Coke_

Its: _Senior Investigative Analyst_

Duly Authorized

STATE OF                          :
                                         : ss:
COUNTY OF                      :

On this _18_ day of _Sept._, 2002, before me the undersigned officer, personally appeared _Kim S. Gabrielsen_, who acknowledged himself/herself to be the _Sr. Investigative Analyst_ of Hartford Life and Accident Insurance Company, and that he/she as such officer, being duly authorized so to do, executed the foregoing instrument for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand.

_Louise Buchleitner_

Commissioner of the Superior Court
Notary Public
My Commission Expires: _03-09-03_

G:\CASES\HARTFORD\McCulloch\Discovery\Ans-Bttr to Int-2
27.0122          9-16-02          KDP:bb-sunb

OFFICIAL SEAL
LOUISE BUCHLEITNER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/09/03

-15-

GALLWEY GILLMAN CURTIS & VENTO, P.A.
200 SOUTHEAST FIRST STREET, SUITE 1100, MIAMI, FLORIDA 33131-2104 • TEL. (305) 358-4313 • FAX (305)

09/17/2002   09:31AM

Connecticut Trial Ct. Unpublished Decisions

CELENTANO> v. <HOME> INSURANCE COMPANY, No. CV91-034227 (Nov. 6, 1992)

JOSEPH E. <CELENTANO> v. <HOME INSURANCE COMPANY

1992 Ct. Sup. 11145, 7 CSCR 1365

No. CV91-034227

Superior Court

Judicial District of Ansonia-Milford, at Milford

November 6, 1992.

MEMORANDUM OF DECISION

McGRATH, J.

  This action arises out of three claims by the plaintiff, Joseph
Celentano, for compensation allegedly due him under an
insurance policy purchased from the defendant Home
Insurance Company ("Home") covering a vacant building located
in Bridgeport, Connecticut. The insured premises suffered
extensive damage in three separate incidents of vandalism which
occurred in July, 1989; September, 1989 and January 1990.
Plaintiff's claims for coverage have been denied by defendant.
Defendant asserts that it is not liable pursuant to the policy at
issue because plaintiff did not adequately safeguard the premises.

  On June 19, 1992, Home filed a Motion for Protective Order,
pursuant to Practice Book 221, requesting the entry of an order
limiting the scheduled out-of-state deposition of its Senior
Claims Analyst, Mr. Roger Spivey, "to questioning pertaining to
coverage for the loses allegedly sustained and precluding questioning
pertaining to Home's investigation of these loses, which
investigation was performed under the attorney-client privilege,
work product privilege and the privilege of self defense of this
action." (Emphasis added.) See #133.
CT Page 11146

Home requests (hereinafter referred to as "Requests #1-4"), that the court make the following findings:

[1a.] That the work product privilege asserted by the affidavit of attorney Gallagher is sustained as to the documents prepared at his direction;

[b.] That the work product privilege asserted by the affidavit of Counsel dated July 29, 1992 is sustained as to documents prepared at the direction of Halloran & Sage;

[2.] That the Motion for Protective Order of June 17, 1992 will be granted precluding questioning regarding investigation of and decision-making surrounding Home's evaluation of these claims;

[3.] That the nontestifying consultant privilege of Connecticut P.B. 220(B), asserted by the Affidavit of Counsel dated July 29, 1992, is sustained.

The work product of the lawyer covers the "written materials obtained or prepared by an adversary's counsel with an eye towards litigation . . ." and it includes "interviews, statements, memoranda, correspondence, briefs, mental impressions [and] personal beliefs." Hickman v. Taylor, supra, 511. "The burden of establishing that the information sought constitutes work product is upon the party asserting such a claim." Carrier Corporation v. The Home Insurance Company, 7, CSCR 823, 825 (June, 12, 1992, Schaller, J.)

An attorney's work product may be discovered only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means. Practice Book 219; Fed. R. Civ. 26(b)(3; Kriskey v. Chestnut Hill Bus. Co., 1 Conn. L. Rptr. 610, 611 (May 9, 1990, Landau, J.)

The protection offered by 219 is termed a "qualified immunity" from discovery. Lott v. Seaboard Systems R.R. Inc., 109 F.R.D. 554, 557 (S.D. Ga. 1985); see also Bird v. Penn Central Co., 61 F.R.D. 43 (E.D.Pa. 1973) (court found defendant made sufficient showing of substantial need to justify disclosure of sought-after work product because only through discovery of CT Page 11147

information in the hands of plaintiff and its agents could defendant
substantiate his defense); Kearney and Trecker Corp. v.
Giddings and Lewis, Inc., 296 F. Sup. 979 (E.D. Wis.
1969)(existence of exceptional need for discovery justifying disclosure
of opinion work product). In order for material to come
within the qualified immunity of 219, the material must be (1)
`documents and tangible things;' (2) `prepared in anticipation of
litigation or for trial;' (3) `by or for another party or by or for
that other party's representative.'" Falvey's Inc. v. Republic Oil
Co., 3 CSCR 931, 933 (November 3, 1988, Schimelman, J.)

   Where an adverse party has satisfied the threshold criteria, the
   work product concept furnishes no shield against discovery of
   relevant and non-privileged facts that the adverse party's
   lawyer has learned or the persons from whom he has learned
   such facts or the existence or non-existence of documents,
   even though perhaps the documents themselves may not be
   subject to discovery. Hydramar, Inc. v. General Dynamics
   Corp., 119 F.R.D. 367, 372. However, where the information
   sought relates to preparation, strategy, opinions, mental
   impressions and the like rather than the underlying evidence,
   it is protected.

Buckland v. New Haven Podiatry Associates, 4 CSCR 176 (January
10, 1989, Flanagan, J.)

   The attorney-client and attorney. State v. Burak, 201 Conn. 517,
518 A.2d 639 (186); Tait and Laplante, Handbook of
Connecticut Evidence (1976) 12.5.

   A widely cited formulation of the privilege states that: `(1)
   Where a legal advice of any kind is sought; (2) from a professional
   legal adviser in his capacity as such; (3) communications
   relating to that purpose; (4) made in confidence; (5) by
   the client; (6) are at his instance permanently protected; (7)
   from disclosure by himself or by the legal adviser; (8) except
   the protection be waived.' (Citations omitted.)

Carrier Corporation v. The Home Insurance Co., supra, 824.
Similar to the work product doctrine, the burden of proving facts
essential to the attorney-client privileges in on the person asserting
it. Id.

   In an affidavit by Attorney Gallagher, Gallagher testified that
(1) he was hired as an attorney for the defendant in January 1990

CT Page 11148

to conduct an investigation of multiple losses occurring at defendant's property, (2) that the documents he prepared as well as the documents prepared by the consultants and experts, who investigated the losses at issue were hired on behalf of the defendant were prepared at his direction and in anticipation of litigation, (3) that said documents contain confidential communications and legal advice in connection with his representation of the defendant, (4) that said documents contain his mental impressions, conclusions, opinions, legal strategies and theories, (5) that said documents are protected from discovery under the attorney-client and work product privileges. (See Defendant's Memorandum, 138, Exhibit 4).

The "Affidavit of Counsel" dated July 29, 1992 states that upon entering its appearance on behalf of the defendant on March 28, 1991, Halloran & Sage continued to work of its predecessor Attorney Gallagher and therein asserts facts essentially identical to those asserted by Gallagher. (See Defendant's Memorandum #138, Exhibit #5).

It's within the Court's discretion to find that the documents sought are privileged communications. In light of the facts alleged in the Affidavits of Counsel, the court finds that the defendant has met the threshold burden of establishing that the aforementioned documents were prepared in anticipation of litigation.

As the documents are deemed to have been prepared in anticipation of litigation, then the plaintiff may only discover such documents upon a showing of substantial need of the materials and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. Falvey's Inc. v. Republic Oil Co., supra.

In its memorandum in opposition to the defendant's motion for protective order, plaintiff argues that the information sought is "essential to the establishment of plaintiff's claims of bad faith and unfair settlement practices." Id. Plaintiff cites Robarge v. Patriot General Insurance Co., 7 CSCR 551 (May 11, 1992, Hammer, J.) and Bourget v. GEICO, 48 F.R.D. 29 (D. Conn. 1969), for the proposition that bad faith actions against an insurer can only be proved by showing the underlying claims process, Plaintiff claims that the information sought will shed light on the thoroughness and reasonableness of defendant's actions as well as enable plaintiff to prove that the insurer's unfair acts were part

of the insurer's general business practice in violation of the Connecticut
CT Page 11149
Unfair Insurance Practices Act. ("CUIPA").

It is clear that if the court finds that plaintiff has proven that he
has substantial need for the aforementioned information in the
preparation of its case and that he is unable, without undue hardship,
to obtain the substantial equivalent of the documents by
other means, then the information should not be precluded from
discovery pursuant to defendant's protective order. It is further
noted that without discovery for the non-mental impression work
product, plaintiff will be unable to demonstrate the bad faith of
the defendant. Accordingly, it is found that plaintiff has demonstrated
the substantial need for discovery justifying disclosure of
opinion work product as described in Request #1a and 1b.

II. Request #2: Questioning Pertaining to Defendant Home's
Investigation and Evaluation of Plaintiff's Claims.

The work product doctrine protects only documents and tangible
things; it does not protect facts learned from the document or
things. (Emphasis added). Lott v. Seaboard Systems R.R. Inc.,
supra, 557. "There is not shield against discovery, by interrogatories
or depositions of the facts that the opponent has acquired, or
the person from whom he obtained the facts, or the existence or
non-existence of documents, even thought the documents themselves
have qualified immunity." Falvey's Inc. v. Republic Oil
Co., supra.

It is clear that defendant' second request involving preclusion
of questioning pertaining to defendant's investigation and evaluation
of plaintiff's claim should by denied in that the work product
doctrine does not preclude discovery of the facts learned by
Roger Spivey from the investigation and evaluation of plaintiff's
claims.

III. Request #3.: Nontestifying Consultant Privilege

The defendant states that is "has not yet decided whether certain
of its experts, including a builder and public adjuster, that
have been retained in anticipation of litigation" will testify at
trial. Therefore, defendant requests that, pursuant to Practice
Book 220(B), the court should preclude the disclosure of said
Affidavit of Counsel: Exhibit 5, para. 9.)

Practice Book 220(B) provides that:
CT Page 11150

[A] party may discover facts known or opinions held by an
expert who had been retained or specially employed by another
party in anticipation of litigation or preparation for trial and
who is not expected to be called as a witness at trial
only . . . upon a showing of exceptional circumstances under
which it is impracticable for the party seeking discovery to
obtain facts or opinions on the same subject by other means.

In Grieg v. Koehring Construction Equipment Co.,
3 CSCR 458 (April 27, 1988, Satter, J.), the plaintiff moved to take the
deposition of a consulting engineer who was retained by the
defendant but who was not anticipated to be called by defendant
to testify at trial. The court ordered that the deposition of the
non-testifying consulting engineer be taken pursuant to Practice Book
220(B) based on it finding that plaintiff had made the requisite
showing that exceptional circumstances existed to obtain the
deposition in that said engineer, who had observed the machine
which caused plaintiff's death and was the only person who could
relate the effect a block affixed to the pedal of the machine may
have had on the operation of the machine. Id. The court held that
it would be impracticable for the plaintiff to obtain facts and
opinions on that subject by other means. Id.

In its memorandum in support of the motion for protective
order, defendant states that its experts and consultants, including
a public adjuster and building contractor, have been retained for
consultation in anticipation of litigation and that the information
prepared by same is protected under the nontestifying expert
privilege under Practice Book 220(B) in that Home's counsel
has not yet decided whether these experts will be testifying at
trial. Defendant further states that plaintiff can make no showing
of exceptional circumstances necessary to obtain this information
because plaintiff has hired a public adjuster and building contractor.
Plaintiff has not briefed this issue.

Plaintiff has failed to state any exceptional circumstances that
exist which would make it impracticable for plaintiff to obtain the
sought out information of these nontestifying experts. It is therefore
found that plaintiff has failed to meet its burden and the court
grants defendant's motion for protective order as to this request.

IV. Request #4: Bifurcation of the Issues Pertaining To

Coverage From the Claim For Bad Faith

Defendant next request that the case be bifurcated to allow the
CT Page 11151
issues pertaining to coverage and the amount of loss to be tried
prior to the issues raised by the plaintiff's allegations of bad faith,
CUTPA, and CUIPA. Defendant further requests that the issues
pertaining to the work product privilege be reexamined by the
court after there has been a ruling on coverage for said claims.
(See Defendant's Memorandum #138, p. 4.) Essentially, these
requests require the court to (1) bifurcate the issues presented
and, (2) delay the discovery regarding the bad faith claims until
after judgment has been entered in favor of coverage.

Connecticut caselaw provides that where an insurer denies
coverage two causes of action arise: one on the contract and, if it
is alleged that the insurer has acted in bad faith, one in tort. See
Buckman v. People Express, Inc., 205 Conn. 166, 530 A.2d 596
(1987); Grand Sheet Metal Product Co. v. Protection Mutual
Ins. Co., supra.

In Buckman v. People Express, Inc., supra, the plaintiff sought
damages from the defendant, his former employer, claiming that
(1) he had suffered emotional distress because of the defendant's
failure to enable him to continue his group health insurance as
statutorily required and, (2) the defendant had failed to act in
good faith with regard to his interests in the continued coverage.
The court rejected "[t]he premise of the defendant's argument
that the trial court erred in instructing the jury relative to the
claim of bad faith" because the basis for the assumption was that
the only cause of action available to the plaintiff was the statutory
claim for bad faith. Id. "This assumption, however, is erroneous
because this court recognizes an independent cause of
action in tort arising from an insurer's common law duty of good
faith. This cause of action is separate and distinct from the plaintiff's
statutory claims. (Citations omitted.)" Buckman v. People
Express, supra, 170.

Similarly, in Grand Sheet Metal Products Co. v. Protection
Mutual Ins. Co., supra, the court recognized that an insurer's
denial of coverage gives rise to a tort claim for bad faith as well
as a claim for breach of contract.

In its memorandum in support of the motion for protective
order, defendant asserts that Connecticut courts have not

addressed the issue at hand. Essentially, defendant claims that the plaintiff, by simultaneously pleading a claim for bad faith and for breach of contract, is prohibited from accessing information pertaining to defendant's investigation of the losses. However,
CT Page 11152
defendant argues that other jurisdictions have held that "claims discovery and discovery on extra-contractual claims brought by first-party insureds is premature under there has been a finding of liability on the coverage claims." (See Defendant's Memorandum, 138, p. 7).

Plaintiff argues in opposition to the motion for protective order that the information defendant seek is discoverable in that courts which have addressed discovery disputes similar to the instant case have rejected claims of privilege in connection with an insurer's investigation and handling of an insurance claim.

Research of Connecticut caselaw has revealed that the courts have not addressed the issue of whether an insurer's claim file, containing the investigation, correspondence and handling of a claim, is discoverable when simultaneous claims of bad faith and breach of contract against an insurer are filed. Additionally, research has shown no statutory requirement which requires that prosecution of the bad faith (tort) claim must await judgment on the coverage issue.

Therefore, there is no authority upon which the court may preclude discovery of the non-privileged information contained in the insurer's claim file for the reason that the plaintiff has filed simultaneous claims of bad faith and breach of contract against the insurer. Accordingly, it is found that defendant's motion for protective order in regard to Request #4 should be denied. The Request for Protective Order As to #1, #2 and #4 is denied.

The Request is granted as to #3.

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved