3

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
(BRIDGEPORT)

| | |
|---|---|
| CANDI McCULLOCH<br>Plaintiff, | : CIVIL ACTION NO. 301CV1115(AHN)<br>:<br>: |
| vs. | :<br>: |
| HARTFORD LIFE AND ACCIDENT<br>INSURANCE COMPANY AND EDUCATORS<br>MUTUAL LIFE INSURANCE COMPANY<br>Defendants. | :<br>:<br>:<br>: |

## AFFIDAVIT

I, CANDI McCULLOCH, do hereby depose and say the following:

1. I am over the age of eighteen years and believe in the obligation of an oath.

2. I am the plaintiff in this matter.

3. I have personal knowledge of the facts set forth herein.

4. The attached documents, Exhibits 1 and 5, are copies of documents which were included as documents produced by Hartford Life and Accident Insurance Company ("Hartford") in response to the plaintiff's to request for production of documents to the defendants in this matter.

5. Between 1995 and 2000, defendants led me to believe that I had supplied sufficient medical evidence to establish my entitlement to long-term disability benefits. Defendants did so by informing me that my continued receipt of benefits was dependent upon defendants' receipt of satisfactory medical evidence of my disability, by continuing to pay me benefits after receiving my medical records, and by correspondence in which they stated that my inability to perform the material and substantial duties of my occupation was well-documented.

6. The first time I had any notice that Hartford disputed by entitlement to disability benefits between October 1999 and August 2000 was when Hartford filed its counterclaim in this law suit. The first time I had any notice that either of the defendants disputed that the medical records submitted by my physicians between October 1995 and October 2000 established my inability to perform the material and substantial duties of my occupation and, in fact, showed that I was not disabled, was in September 2003, when defendants disclosed their expert reports.

7. Had defendants challenged the adequacy of my medical records when I submitted those records, I could have sought additional evidence to establish my inability to function as a physician at that time by obtaining additional medical evaluations, including a Functional Capacities Evaluation ("FCE"), which is specifically designed to determine the tasks that can and cannot be performed with reference to the nationally accepted requirements of my profession. I also could have initiated litigation to establish my functionality at that time.

8. During the entire period that Hartford administered my claim, I understood that Hartford was acting as a third party administrator for Educators. When I represented that I was disabled to Hartford, I did so with the understanding that Hartford was acting as an administrator on behalf of Educators. I represented to Hartford that I was disabled in order to receive disability benefits under my policy with Educators. Neither Educators nor Hartford ever informed me that Hartford had a financial interest in my claim.

AFFIANT,

*Candi McCulloch*

Candi McCulloch

Subscribed and sworn to before me, this 27 day of May, 2004.

*Cheryl A. Turner*

**CHERYL A. TURNER**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES NOV. 30, 2004

4

Page 100

```
 1   needed to be done next within the policy, and within
 2   The Hartford's policies and procedures.
 3       Q   And by the way, you mentioned you got the whole
 4   file delivered to you?
 5       A   Yes.  To review.
 6       Q   And I presume that's the whole file that was in
 7   the hands of Wilk before it got to you; is that the
 8   way it works?
 9       A   Yes.
10       Q   And before it came to Wilk, it was at
11   Educator's?
12       A   I believe so, yes.
13       Q   And while at Educator's, based upon your
14   understanding, that's where this lady -- I'll get her
15   name in a minute -- Pam?
16       A   Mormino?  Yeah.
17       Q   Mormino.  That's where she becomes involved in
18   doing the due diligence, to review the files before
19   they're transferred over to The Hartford?
20           MS. SHARP:  Object to the form.
21           THE WITNESS:  I don't know if Pam reviewed
22   this file.  I know that as a matter of -- what I know
23   about takeover files and how, mechanically, that is
24   accomplished, that sometimes claims staff -- usually
25   Pam and some staff -- go out and actually look at
```