Kimberly Gregory v. Progressive Northern Insurance Company et al.

CV030826713S

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF HARTFORD, AT HARTFORD

2004 Conn. Super. LEXIS 1238

May 13, 2004, Decided
May 13, 2004, Filed

NOTICE:

[*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff injured person sued defendants, an insurance company and an agent, seeking damages and other relief for failure to cover claims of loss suffered by the injured person in a motor vehicle accident. The insurance company and the agent moved to strike all nine counts of the complaint.

OVERVIEW: The injured person alleged that the insurer accepted late premium payments on her auto policy, but denied coverage for the accident. The court found that the injured person failed to show that there was any ill will involved. The three counts alleging breach of the covenant of good faith/fair dealing/bad faith were stricken. The complaint alleged that the insurer and the agent accepted premium payments, knowing that the car was inoperable, and knowing that such payments were in excess of that required to maintain the policy. The complaint also alleged that the retention of this money was civil theft as set forth in Conn. Gen. Stat § 52-564. These facts alleged a claim for civil theft. The complaint also alleged facts sufficient to establish that a fiduciary relationship existed between the parties, and that the relationship was breached. The facts alleged were insufficient to establish that the actions of the insurer and the agent constituted a general business practice, as required by the Connecticut Unfair Insurance Practices Act, Conn. Gen. Stat. § 38a-815 et seq., and thereby the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq.

OUTCOME: The motion to strike counts two, three, seven, and nine was granted. The motion to strike counts one, four, five, six, and eight was denied.

CORE TERMS: breach of contract, motion to strike, grace period, eight-day, coverage, theft, fair dealing, proven, duty, reasonably expected, right to receive, premium, lapsed

LexisNexis (TM) HEADNOTES - Core Concepts:

Torts: Insurance Claims: Insurers Bad Faith
Insurance Law: Bad Faith & Extracontractual Liability: Payment Delay
[HN1] Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Bad faith means more than mere negligence; it involves a dishonest purpose.

Contracts Law: Contract Interpretation: Good Faith & Fair Dealing
[HN2] An action for breach of the covenant of good faith and fair dealing requires proof of three essential elements, which the plaintiff must duly plead: first, that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; second, that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits; and third, that when committing the acts by which it injured the plaintiff's right to receive benefits it reasonably expected to receive under the contract, the defendant was acting in bad faith.

JUDGES: Wagner, JTR.

OPINIONBY: Wagner

OPINION: MEMORANDUM OF DECISION ON MOTION TO STRIKE

This is a nine-count action against defendant Progressive Insurance Co. (Progressive) and its agent Norcom Insurance, Inc. (Norcom) seeking damages and other relief for failure to cover claims of loss suffered by plaintiff in a motor vehicle accident occurring on February 17, 2002. Progressive justifies its failure to cover damages on the ground that its insurance policy with plaintiff had lapsed prior to the accident.

Defendants have moved to strike all nine counts of the complaint sounding respectively in breach of contract, complaint in bad faith, civil theft, breach of fiduciary relationship, and CUTPA.

The underlying facts alleged in the complaint are as follows.

The plaintiff, Kimberly Gregory (Gregory), had purchased automobile insurance coverage provided by the defendant Progressive obtained through defendant Norcom, an authorized agent of Progressive. Gregory began coverage with Progressive in August of 1999 under policy number 60358568-0, and[*2] ended coverage in August of 2002. Payments were made during this time on an installment basis. Norcom informed Gregory that the incremental payments were acceptable as long as they were paid within eight days of the specified payment date. Over the term of the policy Gregory consistently made over twenty payments to Progressive past the specified payment dates but within the eight-day grace period.

The renewal premium for the auto insurance coverage for the period of February 15-August 15, 2002 had a payment due date of February 15, 2002. The eight-day grace period on this payment would run on February 23. Gregory had an auto accident on February 17, 2002, and on that date, Gregory made her premium payment via credit card to Progressive over the telephone. On February 18, Gregory called Progressive to inform them of the February 17 accident. During the conversation, Progressive informed Gregory that it would deny coverage for the accident because the policy had lapsed. Progressive has continued to deny coverage.

I

Motion to strike counts one and six breach of contract is denied because the complaint contains sufficient facts to properly allege a breach of contract claim.

II[*3]

Motion to Strike Counts Two, Three and Seven Breach of Covenant of Good Faith/Fair Dealing/Bad Faith is granted. Although the complaint contains facts that

allege the defendant accepted late payments without penalty until a claim was made, and the defendant consciously disregarded the actions of its agent, Norcom, thereby "tortuously" repudiating the agreement concerning the eight-day grace period, Gregory has failed to establish that there was any ill will involved. Our Supreme Court has stated: [HN1] "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some . contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive . Bad faith means more than mere negligence; it involves a dishonest purpose." Habetz v. Condon, 224 Conn. 231, 237, 618 A.2d 501 (1992).

In Share America, Inc. v. Ernst & Young, Superior Court, judicial district of Waterbury at Waterbury, Docket No. 150132 (July 2, 1999), Judge Sheldon stated:

[HN2] An action for breach of the covenant of good faith and fair dealing requires proof[*4] of three essential elements, which the plaintiff must duly plead: first, that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; second, that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits; and third, that when committing the acts by which it injured the plaintiff's right to receive benefits it reasonably expected to receive under the contract, the defendant was acting in bad faith.

III

Motion to strike count five and eight alleging civil theft is denied.

The complaint alleges that Progressive and Norcom accepted premium payments for the car involved in the Feb. 17 accident, knowing that it had been rendered inoperable, and knowing that such payments were in excess of payments required to maintain the policy. The complaint also alleges that the retention of these monies "constituted civil theft as that term is set forth in C.G.S. § 52-564 and as it is defined by case law."

The facts alleged, if proven, are sufficient to establish that the defendants wrongfully took, obtained, or withheld Gregory's property[*5] with the intent to appropriate it to itself. See Suarez-Negrete v. Trotta, 47 Conn.App. 517, 520, 705 A.2d 215 (1998) (holding that the word "steals" as used by § 52-564 is synonymous with the definition of larceny found in § 53a-119).

IV

Ilona Smith v. Allstate Indemnity Co.

CV 980354137S

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF FAIRFIELD, AT BRIDGEPORT

1999 Conn. Super. LEXIS 3259

November 30, 1999, Decided
November 30, 1999, Filed

NOTICE:

[*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

DISPOSITION: Defendant's motion to strike Count Two of the plaintiff's complaint GRANTED. Defendant's motion to strike the third count DENIED.

CASE SUMMARY:

PROCEDURAL POSTURE: Before the court was defendant insurance carrier's motion to strike counts two and three of plaintiff's complaint on the grounds that those claims are premature. Plaintiff sued her own insurance carrier for failing to pay an uninsured motorist claim. The second count involved an unfair insurance practices claim under *Conn. Gen. Stat. § 38a-815* et seq., and an unfair/deceptive trade practices claim under *Conn. Gen. Stat. § 42-110g* et seq.

OVERVIEW: Plaintiff insured sued defendant insurance carrier following defendant's refusal to settle an uninsured motorist claim pursuant to its policy not to settle minimum property damage cases. Plaintiff claimed breach of contract, unfair insurance practices claim under *Conn. Gen. Stat. § 38a-815* et seq., (CUIPA) and unfair/deceptive trade practices claim under *Conn. Gen. Stat. § 42-110g* et seq. (CUTPA). The court held that: (1) because both the factual and legal inquiries on the latter two claims differed substantially from the breach of contract claim, they were not dependent on the breach of contract claim and consequently, there was no valid reason to await the outcome of the breach of contract claim before proceeding with the statutory claims; (2) refusing to settle minimum property damage cases was not a prohibited insurance practice as delineated by CUIPA; and (3) plaintiff's CUTPA claim could be grounded in the uninsured motorist statute.

OUTCOME: Motion to strike granted in part and denied in part; plaintiff failed to sufficiently allege a prohibited insurance practice as required by the unfair insurance practices statute, but plaintiff's unfair/deceptive trade practice claim was legally sufficient since defendant's minimum damage/impact rule was a violation of public policy.

CORE TERMS: insurer, insured, public policy, settlement, coverage, property damage, unfair, premium, breach of contract, cause of action, settle, sufficient basis, uninsured motorist statute, uninsured motorist claim, uninsured motorist, insurance policy, motion to strike, deceptive, await, claimant, insurance contract, grounded, remedial, violation of public policy, insurance policies, file suit, bargained, paying, incur, construed liberally

LexisNexis(TM) HEADNOTES - Core Concepts:

Insurance Law: Bad Faith & Extracontractual Liability: Failure to Settle

[HN1] In an action on an insurance policy, the conduct giving rise to the insurer's liability is a failure to pay out the policy proceeds when the insurer is contractually bound to do so. The factual inquiry focuses on the nature of the loss, the coverage of the policy and whether the parties have complied with all the terms of the policy. In an unfair insurance practices claim under *Conn. Gen. Stat. § 38a-815* et seq. (CUIPA) and an unfair/deceptive trade practices claim under *Conn. Gen. Stat. § 42-110g* et seq. (CUTPA), the insurer's liability is ordinarily based on its conduct in settling or failing to settle the insured's claim and on its claim settlement policies in general. The factual inquiry focuses, not on the nature of the loss and the terms of the insurance contract, but on the conduct of the insurer. In an action on the policy, the insurer's duty to comply with the policy provisions stems from the insurance agreement and is contractual in nature. In a

Wagner, JTR

The motion to strike count four, based on violation of fiduciary relationship is denied. Although Progressive argues that count four contains no facts separate from the breach of contract cause of action and therefore the court should strike the count, the complaint specifically alleges facts, which if proven, would establish that a fiduciary relationship existed between the parties, and that relationship was breached. *Cadle v. D'Addario*, 268 Conn. 441, 455, 844 A.2d 836 (2004); *Smith v. Allstate Indemnity Co.*, 1999 Ct.Sup. 15554 (Judicial District of Fairfield at Bridgeport, No. CV 98 0354137, 26 Conn. L. Rptr. 83, November 30, 1999, Melville, J.).

Motion to strike count nine; CUIPTA/CUIPA is granted. The facts alleged in count nine are not sufficient to establish that the actions of Progressive and/or Norcom constitute a general business practice, as required by CUIPA, and thereby[*6] CUIPA, under *Lees v. Middlesex*, 229 Conn. 842, 849, 643 A.2d 1282 (1994).

In summary, motion to strike counts two, three, seven and nine is granted. Motion to strike counts one, four, five, six and eight is denied.

*Torts: Business & Employment Torts: Unfair Business Practices*

CUIPA and CUTPA claim, the insurer's duty stems from a duty imposed by statute.

*Torts: Business & Employment Torts: Unfair Business Practices*

[HN2] A cause of action based upon unfair or deceptive trade practices must build upon the public policy embodied in a specific statutory provision and be consistent with the regulatory principles established by this underlying statute.

*Torts: Business & Employment Torts: Unfair Business Practices*

[HN3] *Conn. Gen. Stat. § 42-110g* et seq. is a remedial statute and must be construed liberally in an effort to effectuate its public policy goals.

*Governments: Legislation: Statutory Remedies & Rights*

[HN4] The public policy and public interest intended to be promoted by remedial social legislation are ordinarily advanced by implying therefrom a judicially cognizable cause of action which enforces the legislative purpose.

*Insurance Law: Bad Faith & Extracontractual Liability: Failure to Settle*

[HN5] It is against public policy to allow insurers to gamble with the insured's claim by refusing to settle and by making outright denials of claims. This is especially true in the situation of an uninsured motorist claim considering a denial perpetuates the length of time the insured must incur financial loss and hardship. It also forces the insured to file suit and incur legal expenses.

*Torts: Intentional Torts: Abuse of Process & Malicious Prosecution*

[HN6] Connecticut courts have recognized abuse of process as a cause of action in tort whose gravamen is the misuse or misapplication of process, its use in an improper manner or to accomplish a purpose for which it was not designed. The legal system was not designed to be used as a tool by insurers to delay or deny payment of all claims involving minimum property damage nor was it designed to help insurance companies avoid assuming liability when they are required by contract to do so.

JUDGES: MELVILLE

OPINIONBY: MELVILLE, J.

OPINION: Memorandum of Decision

This dispute arises out of an uninsured motorist claim against plaintiff's own insurance carrier alleging a breach of contract in the first count (not relevant here), an unfair insurance practices claim under *General Statutes 38a-815* et seq (CUIPA) in the second count and an unfair/deceptive trade practices claim under *General Statutes 42-110g* et seq. (CUTPA) in the third count. The defendant insurance carrier filed a motion to strike counts two and three of the plaintiff's complaint on the grounds that those claims are premature. Specifically, the defendant claims that since they are legally insufficient because they must await disposition of the underlying claim. The defendant cites several cases from both foreign and Connecticut jurisdictions in support of this argument.

Suffice[*2] it to say that all of the cases cited by the defendant hold that a claim against the insurer for bad faith in settlement practices based on the common law principle of good faith and fair dealing must await the disposition of the underlying cause of action before such a claim for bad faith may be instituted. The defendant, however, has misconstrued the thrust of the plaintiff's claim. In Counts Two and Three, the plaintiff does not claim the defendant acted in bad faith because it refused to settle the plaintiff's uninsured motorist claim. Rather, the plaintiff attacks the defendant's policy behind its decision not to settle claims involving what it considers minimum damage/impact accidents as being in violation of public policy. As such, that policy is in violation of CUIPA and CUTPA. Furthermore, plaintiff claims that its CUIPA and CUTPA claims are independent of its breach of contract claim alleged in the first count, which the defendant has characterized as the "underlying claim." Consequently, there is no valid reason why these claims may not be pursued simultaneously. This court agrees.

Although this precise issue has not been ruled on directly by any Connecticut [*3]Appellate Court, it was obliquely addressed by our Supreme Court in *Lees v. Middlesex Insurance Company, 219 Conn. 644, 594 A.2d 952 (1991)* in the context of a breach of a homeowner's insurance contract joined in the same action as CUIPA and CUTPA claims. In holding that an action on a policy differed significantly from an action grounded in CUIPA and CUTPA, the court observed at p. 653:

[HN1] In an action on an insurance policy, the conduct giving rise to the insurer's liability is a failure to pay out the policy proceeds when the insurer is contractually bound to do so. The factual inquiry focuses on the nature of the loss, the coverage of the policy and whether the parties have complied with all the terms of the policy. In a CUIPA and CUTPA claim, however, the insurer's liability is ordinarily based on its conduct in setting or failing to settle the insured's claim and on its claim settlement policies in general. The factual inquiry focuses, not on the nature of the loss and the terms of the insurer's insurance contract, but on the nature of the insurer's conduct. Furthermore, in an action "on [the] policy," the insurer's duty to comply with the policy provisions stems from the[*4] . . . insurance agreement and is contractual in nature. In a CUIPA and CUTPA claim, the insurer's duty stems . . . from a duty imposed by statute. See also, *Heyman Associates No. 1 v. Insurance Company of the State of Pennsylvania, 231 Conn. 756, 790, 653 A.2d 122 (1994).*

The analogy to this case is inescapable. Here the plaintiff has brought a breach of contract claim (first count) and a CUIPA and CUTPA claim attacking the insurer's settlement policies. Both the factual and legal inquiries on the latter two claims differ substantially from the breach of contract claim. The result in the latter two claims is not dependent on the result of the breach claim. n1 Consequently, there is no valid reason to await the outcome of the breach of contract claim before proceeding with the statutory claims. Moreover, recent Superior Court decisions have permitted such actions to proceed simultaneously. See *Jones v. Safeco Insurance Company of Illinois, 1999 Conn. Super. LEXIS 1128, Sup. Court, Judicial District of Fairfield at Bridgeport, Docket No. CV98 035 76 14 S (April 28, 1999) (Melville, J.), citing with approval Khamhavong v. Allstate Ins. Co., Sup. Court, Judicial District of Fairfield at Bridgeport, [*5] Docket No. 328574 (Jan. 24, 1996) (Levin, J.) (18 CONN. L. RPTR. 304, 308).*

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n1 In fact, the major portion of the damages claimed in the statutory claims are likely to be the same as those sought in the breach of contract claim, i.e., the non-economic damages sought in the breach claim. Aside from that element, the statutory claims also provide for punitive damages which the breach claim does not. Under these circumstances, there is no reason for the parties to await the outcome of the breach action to pursue the statutory actions.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

CUIPA CLAIM

Count Two of the plaintiff's complaint claims a CUIPA cause of action. In *Mead v. Burns, 199 Conn. 651, 509 A.2d 11 (1986)*, our Supreme Court stated that the applicable section of CUIPA reflected what the legislature had determined [*6]would be an unfair or deceptive insurance practice. The practice complained of by the plaintiff, refusing to settle minimum property damage cases is not a prohibited insurance practice as delineated by CUIPA, 38a-816(1) through (16). n2 As a result, CUIPA is inapplicable. This does not, however, preclude recovery based on CUTPA.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n2 The prohibited acts that come closest to this situation but do not cover it are found in 38a-816(6)(f) and (g): "(f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become clear; (g) compelling insureds to institute litigation to recover amounts due under an insurance policy offering substantially less than the amounts ultimately recovered in actions brought by such insureds." [Emphasis added.] These do not apply to the instant case as (f) contemplates a theory of recovery of good faith while (g) contemplates a result predicated on the result in the underlying claims. As already explained, plaintiff relies on neither of these concepts.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[*7]

CUTPA CLAIM

Count Three of the plaintiff's complaint asserts a CUTPA cause of action. [HN2] A CUTPA cause of action based upon unfair or deceptive practices must build upon public policy embodied in a specific statutory provision and be consistent with the regulatory principles established by this underlying statute. *Calnan v. Allstate Indemnity Company, 1998 Conn. Super. LEXIS 3464, No. 98-02641605, 23 CONN. L. RPTR. 476, 1998 Ct.Sup. 14636 (Dec. 3, 1998).* The purpose behind CUTPA is to protect the public from unfair practices in the conduct of trade or commerce. The policy behind CUTPA is to encourage litigants to act as private attorneys general by

For the foregoing reasons, this court finds defendant's theory underlying its motion to strike and supporting case law to be inapplicable to the plaintiff's claims as pled in Counts Two and Three of her complaint.

CUIPA CLAIM

bringing actions for unfair or deceptive practices. *Hernandez v. Monterey Village Associates Ltd. Partnership, 553 A.2d 617, 17 Conn. App. 421 (1989).* Whether such a practice is unfair depends upon finding a violation of public policy. *Krawiec v. Blake Manor Development Corp., 602 A.2d 1062, 26 Conn. App. 601 (1992).* In addition, [HN3] CUTPA is a remedial statute and must be construed liberally in an effort to effectuate its public policy goals. *Web Press Corp. v. New London Motors, Inc., 203 Conn. 342, 354, 525 A.2d 57 (1987).*[*8] Therefore, although the plaintiff failed to sufficiently state a CUTPA claim based on the regulatory principles established by CUIPA, in light of the aforementioned policy and construction considerations, plaintiff's Count Three CUTPA claim, is not precluded.

In *Blakeslee Arpaia Chapman v. U.S.F.&G. Co., 1994 Conn. Super. LEXIS 573, 11 CONN. L. RPTR. 169, 175-76 (March 4, 1994) (Hurley, J.)*, the court held that defendant's alleged violation of General Statutes 49-42 could provide a basis for the plaintiff's CUTPA claim notwithstanding the fact that the plaintiff's CUTPA claim must be dismissed. This is analogous to the instant case. Judge Hurley reasoned that since both 49-42 [enforcing payment under a performance bond] and CUTPA are remedial statutes which must be construed liberally and, therefore, a violation of that section provided the foundation for a CUTPA cause of action. *1994 Conn. Super. LEXIS 573, 11 CONN. L. PRTR. at 176.*

Similarly, in the instant case, the plaintiff has sufficiently alleged actions which, if proven to be offensive, are in contravention of the public policy advanced by 38a-336 [the uninsured motorist statute], whose purpose it is to protect citizens from sustaining losses incurred from uninsured[*9] drivers. *Four Beaches Condo v. W.C. Brescia Plumb, 1997 Conn. Super. LEXIS 1458, No. CV96 0384124, 20 CONN. L. RPTR. 442, 1997 Ct.Sup. 5563, 5571 (May 23, 1997), citing Amendola v. Gianmattei, No. 260230, 4 CONN. L. RPTR. 587 (June 27, 1991) (Ramsey, S.T.R.).* Therefore, even though the plaintiff's CUIPA claim must fail, her CUTPA claim can be grounded in the uninsured motorist statute.

Although a violation of the public policy of this statute is not specifically alleged by the plaintiff, it is implicated by the very nature of the instant case. This case involves, inter alia, an action brought by the plaintiff to recover under its uninsured motorist policy with the defendant. This type of insurance policy is predicated on the law set forth in 38a-336.

Several Connecticut courts have recognized

... the principle that [HN4] the public policy and public interest intended to be promoted by remedial social

legislation are ordinarily advanced by implying therefrom a judicially cognizable cause of action which enforces the legislative purpose. *Yale-New Haven Hospital v. Mitchell, 44 Conn. Supp. 274, 14 CONN. L. RPTR. 265, 683 A.2d 1362 (1995); see also, Euresti v. Stenner, 458 F.2d 1115[*10] Lathy v. Copygraphics, 173 N.J. Super. 162, 413 A.2d 960 (1980).*

In addition, other types of statutory violations have been held to supply a sufficient basis for a CUTPA claim. See *Premier Roofing Co. v. Insurance Co. Of N.A., 1995 Conn. Super. LEXIS 633, No. 312438, 13 CONN. L. RPTR. 544, 1995 Ct. Sup. 1933 (March 3, 1995).* n3

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n3 Different statutory violations have been held to supply a sufficient basis for a CUTPA claim. See, e.g., *Cheshire Mortgage Service, Inc. v. Montes, 223 Conn. 80, 107-10, 612 A.2d 1130 (1992)* (violation of Federal Truth in Lending Act's public policy of promoting the informed use of consumer credit and violation of *General Statute 36-224*'s public policy of protecting consumers of credit provide a sufficient basis for a CUTPA claim); *Conaway v. Prestia, 191 Conn. 484, 491, 464 A.2d 847 (1983)* (violations of *General Statute 47a-57 and 47a-5* requiring a landlord to obtain a certificate of occupancy prior to renting to tenant provides a sufficient basis for a CUTPA claim); *Connecticut National Bank v. Carbonella, 1993 Conn. Super. LEXIS 2102, 9 Conn. L. Rptr. 615, 8 CSCR 1010, 1010-11 (August 9, 1993) (Leheny, J.)* (violation of *12 U.S.C. 1701x(c)(5)* which requires creditor to give homeowner notice of credit counseling opportunities provides sufficient basis for CUTPA claim); *Lenz v. CNA Assurance Company of Connecticut, 1992 Conn. Super. LEXIS 379, 6 Conn. L. Rptr. 55, 56 (1992) (Maiocco, J.)* (wrongful discontinuance of workers' compensation benefits by carrier in violation of *General Statute 31-296a* provides a basis for a CUTPA claim).

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*11]

The public policy established by the uninsured motorist statute is that every insured is entitled to recover for the damages he or she would have been able to recover if the

uninsured motorist had maintained a policy of liability insurance. *Allessa v. Allstate Insurance Co., 1995 Conn. Super. LEXIS 3114, No. CV95 05 05 50, 1995 Ct. Sup. 12772 (Nov. 7, 1995) citing Caulfield v. Amica Mutual Ins. Co., 31 Conn. App. 781 at 787, 627 A.2d 466.* Therefore, for the defendant to offhandedly deny its own insured's uninsured motorist claim based on a business practice--a practice that the defendant admittedly stated applies to all minimum property damage/impact cases (plaintiff's complaint at 2)--offends the public policy of 38a-336. In view of the remedial aspects of both 42-110g and 38a-336, and in light of the liberal construction afforded these statutes, combined with the plaintiff's allegations that the defendant's minimum damage/impact policy was the basis for its decision in refusing to settle plaintiff's claim, the defendant insurer has sufficiently implicated public policy to allow plaintiff to maintain her CUTPA claim.

OTHER PUBLIC POLICY CONSIDERATIONS

By its very nature, insurance is[*12] designed to protect individuals and/or businesses from risk. Insurance is generally understood to be an arrangement for transferring risks. ROBERT E. KEETON & ALAN I. WIDISS, INSURANCE LAW: A GUIDE TO FUNDAMENTAL PRINCIPLES, LEGAL DOCTRINES, AND COMMERCIAL PRACTICES (Practitioner's Ed. 1988), 3. An individual pays sums of money in the form of premiums to transfer a particular risk. That protection or indemnity is what is bargained for. It is, therefore, unfair and illogical for an insurance company to have a minimum property damage policy, such as the one involved in this case, as it forgoes the very purpose of insurance. The defendant, as well as all insurance companies, cannot be allowed to take an individual's money and then pass the risk back to that individual, by precluding them from obtaining reasonable damages and/or the coverage they have been paying for. This is a violation of the public policy established by the uninsured motorist statute. The defendant's enforcement of a policy of no settlement in minimum impact cases forces insureds, claimants and accident victims to file suit to be compensated for any resulting losses sustained in such accidents. Passing this risk is [*13]an unconscionable advantage for the insurance company. Id. at 615. This is because it received payment to undertake precisely such a risk. Therefore, in the absence of prior notice to its insureds, it is contrary to public policy for an insurance company to forgo the very nature of its existence and oppressively use its superior bargaining position to hold out on settlement or claims requests and force the other parties to absorb the loss or file suit and expend more just to obtain what they bargained for.

The insurer-insured relationship discloses an insurance companies' function to protect society. In *Joseph v. Hannan Agency, Inc., 1997 Conn. Super. LEXIS 45, No. 323310, 18 CONN. L. RPTR. 552, 1997 Ct.Sup. 17 (Jan. 9, 1997)*, the court held:

Taking the facts as true, it is against the public policy of CUTPA for an insurer to accept several premium payments, make statements to the plaintiffs that General Liability . . . insurance policies had been secured on their behalf, and produce a Certificate of Insurance purporting to provide the plaintiffs with coverage when then and now, the plaintiffs were not covered by any such insurance policies.

This rationale is comparable to the instant case. The plaintiff believed at all times that a policy was issued in return for her premiums that covered damage or injury sustained from an uninsured motorist--irrespective of the force involved in the accident. However, then and now, if the[*15] accident she was involved in was characterized by the carrier as a minimum property damage case, the coverage would not be provided, at least to the extent she expected by the policy terms.

In *Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 588-89, 573 A.2d 699 (1990)*, the court explained:

Provisions in insurance policies excepting particular losses from the coverage thereof are ordinarily valid, for the parties to a contract of insurance have the right to limit or qualify the extent of the insurer's liability in any manner . . . The word "exclusion" signifies . . . circumstances in which the insurance company will not assume liability for a specific risk or hazard that

The insured is supposed to receive a measure of certainty in exchange for his or her premium. This certainty is that if a loss of a specified type occurs, payment from the insurer provides an indemnification for the loss. Id. at 12. Insureds reasonably expect that they will be covered for their injuries or any other losses under their policy and that the insurer will pay them. See, *Alinath v. National Grange, 1997 Conn. Super. LEXIS 1086, No. CV95 014 65 71 S, 1997 Ct. Sup. 4763 (Apr. 24, 1997).*

The presumption in the instant case is that if the insured gets injured or incurs property damage at the hands of an uninsured motorist she will be indemnified by the insurer to whom she has been[*14] paying premiums. In short, premiums are paid to be used later as an offset. They do not expect the policy will be ignored for the financial benefit of the insurance company and that the coverage or benefits they are entitled to depends on the force of the collision.

otherwise would be included within the general scope of the policy. (Citations omitted; emphasis added.)

That being said, the inverse is also true. Both parties can presumably have a policy negotiated by the parties that the insurer will assume liability. In the instant case, we contract to include a particular loss as a result of which explicitly includes coverage for the type of accident in which the plaintiff was involved.

Further, Connecticut and all states[*16] have a public interest in providing compensation for accident victims and preventing the wholesale liquidation of familial assets which must be sold in the event of an exigency arising from a specified loss or injury. KEETON & WIDISS, supra, 2, 11. The reasonable expectations of the insureds, and in some instances, third-party beneficiaries, should be protected. This is especially true when the rights asserted by the claimant are in accord with the applicable insurance contract, as in the instant case, Id. at 615. Therefore, it is against public policy for an insurance company to do anything to injure the rights of its policyholders to receive the benefits of their contracts. The interests of the individual protected by this public policy include money, time, missed work, mental and physical health, etc. It would seem that these are the same interests that are supposed to be protected by insurance companies through the process of risk transference.

In addition, in recent times there has been a great movement toward effectuating alternative dispute resolution. LEONARD L. RISKIN & JAMES E. WESTBROOK, DISPUTE RESOLUTION AND LAWYERS, p. 1 (American Casebook[*17] Series, 1987); see also, JON BERK & MICHAEL C. JAINCHILL, CONNECTICUT LAW OF UNINSURED AND UNDERINSURED MOTORIST COVERAGE, p. 441, n. 23 (2d ed. 1999). It is evident that many states hold it to be in the public's interest to make valid efforts to resolve disputes outside the courtroom in such ways as settlements, arbitration, and mediation. Moreover, Connecticut has a strong policy, both legislative and judicial, favoring arbitration as a means of settling disputes. Town of East Haven v. AFSCME, 212 Conn. 368, 371, 561 A.2d 1388 (1989). The synonymy of settlement with arbitration as an alternative to litigation suggests that Connecticut also has a strong policy favoring settlement. See Black v. Goodwin, Loomis and Britton, Inc. 239 Conn. 144, 681 A.2d 293 (1996), citing Grayson v. Wofsey, Rosen, Kweskin & Kurlansky, 231 Conn. 168, 174, 646 A.2d 195 (stating Connecticut has a strong policy favoring the pretrial resolution of disputes; cf. BERK & JAINCHILL, supra 407. The plaintiff correctly observes that an insurer cannot denounce settlement and police its claims for those that involve minimum property damage because it is company policy[*18] to do so. See plaintiff's complaint, p.2. It is indeed contrary to the present trend toward alternative dispute resolution for insurers to impose their settlement policy on the unsuspecting public.

The prohibition of such practices by insurance companies is further grounded in the contractual doctrine of detrimental reliance. KEETON & WIDISS, supra, 652. That is to say, it is against public policy for an insurance company to allow a claimant, whether they be an insured or other person intended to receive benefits under the policy, to rely to their detriment on the representation that since they paid for coverage they will get coverage when a claim is made, when in fact they may get something less than they bargained for. Individuals rely on insurance coverage that they went through the painstaking process of researching, selecting and paying monthly premiums for to protect them from risk, namely physical injury and property damage. A minimum property damage rule makes such a reliance detrimental in that when the coverage they expected is denied, less than expected or has to be fought for, they suffer incredible financial losses ranging from medical expenses to replacement[*19] of essential property, such as motor vehicles.

An insurance company must be mandated to give equal, if not more, consideration to the insured's interest when making decisions concerning the settlement or litigation of a claim covered by an insurance policy. Id. at 884. The principal supporting rationale is that an insurer ought not to be permitted to favor its own interests unless it is then prepared to protect its insured by absorbing the losses which result from the implementation of its business policies. See id. at 887; see also its discussions n. 7, Rova Farms Resort, Inc. v. Investors Ins. Co. of Amer., 65 N.J. 474, 323 A.2d 495, 509 (NJ 1974). A breach of the duties imposed by the fiduciary relationship between the insurer and insured is not tolerable. Therefore, [HN5] it is against public policy to allow insurers to gamble with the insured's claim by refusing to settle and by making outright denials of claims. Id. This is especially true in the situation of an uninsured motorist claim considering a denial perpetuates the length of time the insured must incur financial loss and hardship. It also forces the insured to file suit and incur legal expenses. [*20]

Moreover, "the [HN6] Courts of this state have recognized abuse of process as 'a cause of action in tort whose gravamen is the misuse or misapplication of process, its use in an improper manner or to accomplish a purpose for which it was not designed.'" Sussman v. D.A.N. Joint Venture, 1997 Conn. Super. LEXIS 325, No. CV96056216S, 19 CONN. L. RPTR. 92, 1997 Ct.Sup. 1067 (Feb. 10, 1997), citing Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 475, 427 A.2d 385 (1980), quoting Varga v. Pareles, 137 Conn. 663, 667, 81 A.2d 112 (1951).; 3 Restatement (Second), Torts 682. The legal system was not designed to be used as a tool by insurers to delay or deny payment of all claims involving minimum property damage nor was it designed to help insurance companies avoid assuming liability when they are required by contract to do so. Although the plaintiff has not alleged such a tort violation, the defendants' practices amount to a violation of this policy. Thus such conduct is contrary to public policy and therefore the defendant has provided the plaintiff with alternative grounds for a CUTPA claim.

Finally, this type of abuse causes hardship in other areas of life, such as credit[*21] standing, loss of job and loss of business. KEETON & WIDISS, supra, 871. In contrast, early settlement offers the advantage of avoiding the expenses of litigation, to both claimants and insureds. Id. at 996. Allowing these types of claims (minimum damage/impact) to run their routine course may actually serve as a greater deterrent to irresponsible rejection of claims. Further, imposing sanctions for the implementation of such policies even though the insurer acts reasonably in doing so, serves to compensate the insured for both the delay in receipt of payment and the costs of engaging in litigation with the insurer in order to recover. Id. at 871.

CONCLUSION

The defendant's motion to strike Count Two of the plaintiff's complaint is hereby GRANTED because the plaintiff failed to sufficiently allege a prohibited insurance practice as required by CUIPA.

Count Three of the plaintiff's complaint is legally sufficient. It is not based on a common law bad faith claim and does not require the disposition of the underlying suit as a prerequisite. The defendant's minimum damage/impact rule is a violation of public policy for the above stated reasons and, therefore, if [*22]proven, would be an unfair trade practice under CUTPA. Accordingly, the defendant's motion to strike the third count is hereby DENIED.

MELVILLE, J.

Jadwiga Grazynski v. Hartford Insurance Company
CV 96037594

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF FAIRFIELD, AT BRIDGEPORT

1997 Conn. Super. LEXIS 1876

July 10, 1997, Decided
July 11, 1997, Filed

NOTICE:
[*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

DISPOSITION: Defendant's motion for summary judgment is DENIED.

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff insured brought a claim against defendant insurance company seeking coverage for damages arising from an automobile accident with an underinsured driver. The insurance company brought an action for summary judgment.

OVERVIEW: The insurance company claimed that the issue had been resolved by binding arbitration and that payment had been made to the insured. The insured argued that the insurance company was not a party to the arbitration and, thus, the insured was not estopped from seeking underinsured motorist payments from the insurance company. The court found that the arbitration was not a party to the arbitration. The court also found that, though the relationship between insured and its insurance company could be a fiduciary one, where it was based solely upon contract and the parties had become adversaries, a fiduciary relationship could not be inferred. Thus, the insurance company was not in privity with the insured for the purposes of estoppel based upon the arbitration. The court also found that the issues being litigated were different than those in the arbitration proceeding. The insurance company, therefore, was not entitled to summary judgment.

OUTCOME: The court denied the insurance company's motion for summary judgment.

CORE TERMS: summary judgment, binding arbitration, tortfeasor, insurer, privity, insured, collateral estoppel, duty, insurance carrier, legal right, fiduciary, fair dealing, third person, legal rights, first-party, contradictory, uncertified, grounded, judicata, opposing, carrier, sworn, underinsured motorist, underinsured, admissible, litigated, recovered, supplied

LexisNexis (TM) HEADNOTES - Core Concepts:

Civil Procedure: Summary Judgment: Summary Judgment Standard
Civil Procedure: Trials: Judgment as Matter of Law
Civil Procedure: Preclusion & Effect of Judgments: Res Judicata
[HN1] A motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried. A directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed. Because res judicata or collateral estoppel, if raised, may be dispositive of a claim, summary judgment is the appropriate method for resolving res judicata.

Civil Procedure: Preclusion & Effect of Judgments: Collateral Estoppel
[HN2] Because collateral estoppel, when properly raised and established, will preclude an issue, the defendant's invocation of this principle must first be resolved. Collateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. To invoke collateral estoppel, the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding. A key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity. This is to ensure that the interests of the party against whom collateral estoppel is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding.

Insurance Law: Motor Vehicle Insurance: Underinsured Motorists Coverage
[HN3] An insurer is not the alter ego of a tortfeasor that harmed its insured, with regard to underinsured motorist claims and, although its contractual liability is premised in part on the contingency of the tortfeasor's liability, they do not share the same legal right. The commonality of "proving or disproving the same facts" is not enough to establish privity.

Insurance Law: Claims & Contracts: Fiduciary Responsibilities
[HN4] A trial in which one party contests a claim against another should be held to estop a third person only when it is realistic to say that the third person was fully protected in the first trial.

Insurance Law: Claims & Contracts: Fiduciary Responsibilities
[HN5] The relationship of an insured and insurer does not always lead to a relationship supporting a finding of privity.

Insurance Law: Claims & Contracts: Fiduciary Responsibilities
[HN6] A fiduciary is a person having a duty, created by his or her undertaking, to act principally for the benefit of another in matters connected with that undertaking. Because the insurer-insured relationship is contractually based, both parties have a duty to protect their own interests, although each party also owes the other a duty of good faith and fair dealing.

Insurance Law: Claims & Contracts: Contract Formation
Insurance Law: Claims & Contracts: Fiduciary Responsibilities
[HN7] Traditionally, the relationship between insurer and insured has been one based solely upon contract. While there are circumstances, particularly when dealing with third-party claims, in which fiduciary-like duties may be placed on the insurer to benefit the insured, such situations do not arise in first-party disputes between insurer and insured.

Insurance Law: Claims & Contracts: Good Faith & Fair Dealing
[HN8] When an insured brings suit against his or her own insurer, there is a lessening of the contractual duties of good faith and fair dealing between the two.

Civil Procedure: Summary Judgment: Supporting Papers & Affidavits
[HN9] A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. Conn. Gen. Prac. Book, R. Super. Ct. § 380. When a party moves for summary judgment and there are no contradictory affidavits, the court properly decides the motion by looking only to the sufficiency of the movant's affidavits and other proof.

Civil Procedure: Summary Judgment: Supporting Papers & Affidavits
[HN10] Conn. Gen. Prac. Book, R. Super. Ct. § 381 states that supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto.

JUDGES: Melville, Judge

OPINIONBY: Melville

OPINION: Memorandum of Decision Motion for Summary Judgment No. 110

On October 29, 1996, the plaintiff, Jadwiga Grazynski, filed a complaint against the defendant, Hartford Insurance Company of Midwest (Hartford), alleging the following facts. Sometime prior to August of 1994, Hartford issued to the plaintiff an insurance policy "wherein it agreed to pay all sums which the plaintiff shall be legally entitled to recover as damages from the owner or operator of an underinsured highway vehicle because of bodily injury sustained by the plaintiff as a result of an accident arising out of the ownership, maintenance, or use of such an underinsured vehicle."

The plaintiff was involved in a motor vehicle accident on August 20, 1994 with an underinsured motorist, Felix Stepien, while the policy was in full force and effect, and as a result was permanently injured. n1 The plaintiff notified Hartford of the accident, but despite due demand, [*2] Hartford has failed to pay the plaintiff's claim for damages.

------------Footnotes--------------

n1 The plaintiff's claim against Felix Stepien (tortfeasor) was settled by binding arbitration on March 5, 1997. The plaintiff received an award of $20,750. The tortfeasor was insured through Allstate Insurance Company under a $20,000 liability policy.

------End Footnotes------

On March 11, 1997, Hartford filed a motion for summary judgment, claiming there is no genuine issue of material fact regarding the plaintiff's allegations, and that it is entitled to judgment as a matter of law. Supplemental memoranda in support of the motion for summary judgment were filed on April 3 and April 10, 1997. The defendant claims that the plaintiff's damages have been determined in binding arbitration, and together with a prior payment by the defendant of $2,810, the plaintiff will have collected more than her full damages and thus will not be entitled to any underinsured motorist benefits.

The plaintiff filed an objection to the Hartford's motion for summary judgment on May 21, 1997. First, the plaintiff argues that the binding arbitration award does not prevent her from pursuing this claim. Second, the plaintiff claims that because there are numerous issues of material facts in dispute, summary judgment would be improper. Third, the plaintiff claims that Hartford has failed to provide a proper affidavit or documents to support its motion, making its motion for summary judgment technically deficient.

[HN1] A motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried. Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989), "A directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." (Brackets omitted; emphasis omitted.) Miller v. United Technologies Corp. 233 Conn. 732, 752, 660 A.2d 810 (1995). Because res judicata or collateral estoppel, if raised, may be dispositive of a claim, summary judgment [is] the appropriate method for resolving res judicata. Jackson v. R.G. Whipple, Inc., 225 Conn. [*4] 705, 712, 627 A.2d 374 (1993).

The defendant first argues that through the binding arbitration, the plaintiff has fully litigated the issue of her damages, and is bound by the arbitrator's finding that damages are $20,750. Therefore, collateral estoppel should apply to the issue of damages. The defendant next argues that the plaintiff should not be allowed to recover double damages under overlapping insurance coverage. The defendant argues that because the plaintiff has been awarded $20,750 damages from the binding arbitration and $2,810 from the tortfeasor, in payment of medical expenses, the plaintiff has recovered $2,060 in excess of her damages.

The plaintiff argues that collateral estoppel should not apply here based on the Supreme Court's recent decision in Mazziotti v. Allstate Insurance Co., 240 Conn. 799 (1997). The plaintiff argues that the defendant was not a party to the binding arbitration and was not in privity with the plaintiff or tortfeasor to such an extent that the arbitration decision regarding damages should apply to it. The plaintiff also argues that during the arbitration hearing, the plaintiff, who had a limited policy of $20,000 available[*5] to her from the tortfeasor, "did not put forward the same detailed evidence on damages or liability as will be presented in a claim against the Hartford with a policy of $250,000."

[HN2] "Because . . . collateral estoppel, when properly raised and established, will preclude an . . . issue, . . . the defendant's invocation of this principle must first be resolved." Mazziotti v. Allstate Ins. Co., supra, 240 Conn. 811.

Collateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. Mazziotti v. Allstate Ins. Co., supra, 240 Conn. 812. To invoke collateral estoppel, the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding. Id.

A key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity. Mazziotti v. Allstate Ins. Co., supra, 240 Conn. 813. This is to ensure that the interests of the party against whom collateral estoppel is being asserted have been adequately represented[*6] because of his purported privity with a party at the initial proceeding. Id.

[HN3] The insurer is not the alter ego of the tortfeasor and, although its contractual liability is premised in part on the contingency of the tortfeasor's liability, they do not share the same legal right. The commonality of "proving or disproving the same facts" is not enough to establish privity. Mazziotti v. Allstate Ins. Co., supra, 240 Conn. 817. Finally, the Court also "crowning consideration" in collateral estoppel cases and the basic requirement of privity -- that the interest of the party to be precluded must have been sufficiently represented in the prior action so that the application of collateral estoppel is not inequitable. Mazziotti v. Allstate Ins. Co., supra, 240 Conn. 818. [HN4] A trial in which one party contests a claim against another should be held to estop a third person only when it is realistic to say that the third person was fully protected in the first trial. Id.

The Mazziotti Court dealt with a situation where an injured plaintiff had already recovered from the tortfeasor, and thereafter sought to recover from the tortfeasor's insurance carrier. [*7] The Court determined that the difference between the tortfeasor's and the insurance carrier's exposure was a relevant factor in determining whether the tortfeasor had been sufficiently motivated to protect the rights and interests of the insurance carrier. The Court held that because the tortfeasor and the insurance carrier did not share the same legal right, they were not in privity. Mazziotti v. Allstate Ins. Co., supra, 240 Conn. 817. The Court also pointed to the fact that the substance of the plaintiff-tortfeasor action was grounded in tort, while the plaintiff-insurance carrier action was grounded in contract.

Here there is no question that the present plaintiff and defendant and the parties involved in the binding arbitration are different. Therefore, in order for collateral estoppel to apply, the plaintiff and Hartford must be in privity with each other. However this court concludes for the reasons herewith set forth that there is no privity between the plaintiff and the defendant, and therefore collateral estoppel would not apply.

[HN5] The relationship of the plaintiff as the insured and Hartford as the insurer does not always lead to a relationship supporting[*8] a finding of privity. For example, the plaintiff and Hartford do not have such a relationship that Hartford should be considered the plaintiff's fiduciary. [HN6] A fiduciary is a person having a duty, created by his or her undertaking, to act principally for the benefit of another in matters connected with that undertaking. Bailey v. Allstate Ins. Co., 844 P.2d 1336, 1339 (Colo. App. 1992). Because the insurer/insured relationship is contractually based, both parties have a duty to protect their own interests, although each party also owes the other a duty of good faith and fair dealing; therefore, it is impossible for the insurer to act as a fiduciary for its opposing contractee. Id. "The insurer has a right to protect its own interests along with those of the insured, and these interests run parallel to each other, neither being superior." Id. [HN7] Traditionally, the relationship between insurer and insured has been one based solely upon contract. While there are circumstances, particularly when dealing with third-party claims, in which fiduciary-like duties may be placed on the insurer to benefit the insured, such situations[*9] do not arise in first-party disputes between insurer and insured. Bailey v. Allstate Ins. Co., supra, 844 P.2d 1340.

------Footnotes------

n2 See also Gorman v. South Eastern Fidelity Ins. Co., 621 F. Supp. 33 (D. Miss), aff'd, 775 F.2d 655 (5th Cir. 1985) (in Mississippi, no fiduciary duty between the insured and the insurer unless litigation with a third party is involved).

------End Footnotes------

Thus, [HN8] when an insured brings suit against his or her own insurer, there is a lessening of the contractual duties of good faith and fair dealing between the two. It is doubtful that the plaintiff was representing the defendant's interests during the binding arbitration, or that the defendant's legal rights were fully protected by the plaintiff during the binding arbitration, because the plaintiff and Hartford are now advancing conflicting points of argument. "What gives rise to the duty [to exercise good faith or due care] and measures its extent is the conflict between the insurer's interest to pay less than the policy limits and the insured's interest[*10] not to suffer liability for any judgment exceeding them." Bourget v. Government Employees Insurance Co., 456 F.2d 282, 285 (2nd Cir. 1972). Here, there was a conflict between the parties, as the plaintiff and Hartford did not share the same legal rights.

Second, the issues decided during the binding arbitration are not identical to those to be litigated in the present case. At the binding arbitration, the plaintiff's focus was to collect money from the tortfeasor under the tortfeasor's motorist policy. The thrust of this litigation is for the plaintiff to collect on a different and larger policy from her own insurance carrier. Different pieces of evidence will be relevant, as the issue of the tortfeasor's fault will not be a focal point of the litigation between the plaintiff and Hartford. For these reasons, the doctrine of collateral estoppel does not apply.

The plaintiff further argues in its opposition memorandum that Hartford has not filed any supporting

documents, because a party's attorney's affidavit alone is insufficient to meet the requirements of Practice Book 380, and consequently no admissible documents have been supplied in support of Hartford's motion[*11] for summary judgment as required by Practice Book 380.

[HN9] A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. Practice Book 380. When a party moves for summary judgment and there are no contradictory affidavits, the court properly decides the motion by looking only to the sufficiency of the [movant's] affidavits and other proof. *Heyman Associates No. 1 v. Insurance Co. of Pennsylvania*, 231 Conn. 756, 795, 653 A.2d 122 (1995).

Here, Hartford's motion for summary judgment is supported by two documents, an affidavit and an uncertified photo copy of the binding arbitration order. Because no contradictory affidavits have been filed, the motion for summary judgment must be decided based upon these two documents alone. It has been repeatedly held that an affidavit filed by a party's attorney should not be used to oppose a summary judgment motion. 2830 *Whitney Ave. v. Heritage Can. Dev. Assoc.*, 33 Conn. App. 563, 567, 636 A.2d 1377 (1994). See also *Farrell v.*

*Farrell*, 182 Conn. 34, 37 n.2, 438 A.2d 415 (1980).[*12] For this reason, the court will not consider the attorney's affidavit. Further, the copy of the binding arbitration order supplied by Hartford and referred to in the attorney's affidavit has not been sworn to or certified. [HN10] Practice Book 381 states that supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto. Here, the plaintiff has specifically objected to the fact that the copy of the binding arbitration award is uncertified. Therefore, the court will not consider that exhibit as a document supporting Hartford's motion for summary judgment. See *Country Lumber v. New Haven Sav. Bank*, 1994 Conn. Super. LEXIS 533, Superior Court, judicial district of New Haven at New Haven, Docket No. 341488 (March 7, 1994) (Hartmere, J.). As a result, the court concludes that Hartford has failed to supply the court with the required documents to support its motion for summary judgment. Accordingly, for all the foregoing reasons defendant['s*13] motion for summary judgment is DENIED.

Melville, Judge

Connecticut Trial Ct. Unpublished Decisions

SMITH v. ALLSTATE INDEMNITY CO., No. CV98 035 41 37 S (Nov. 30, 1999)

ILONA SMITH v. ALLSTATE INDEMNITY CO.

*1999 Ct. Sup. 15554*

No. CV98 035 41 37 S

Superior Court

Judicial District of Fairfield at Bridgeport

November 30, 1999

**MEMORANDUM OF DECISION**

MELVILLE, JUDGE.

This dispute arises out of an uninsured motorist claim against plaintiff's own insurance carrier alleging a breach of contract in the first count (not relevant here), an unfair insurance practices claim under General Statutes § 38a-815 et seq (CUIPA) in the second count and an unfair/deceptive trade practices claim under General Statutes § 42-110g et seq (CUTPA) in the third count. The defendant insurance carrier filed a motion to strike counts two and three of the plaintiff's complaint on the grounds that those claims are premature. Specifically, the defendant claims that since they are based on the bad faith of an insurer they are legally insufficient because they must await disposition of the underlying claim. The defendant cites several cases from both foreign and Connecticut jurisdictions in support of this argument.
CT Page 15555

Suffice it to say that all of the cases cited by the defendant hold that a claim against the insurer for bad faith in settlement practices based on the common law principle of good faith and fair dealing must await the disposition of the underlying cause of action before such a claim for bad faith may be instituted. The defendant, however, has misconstrued the thrust of the plaintiff's claim. In Counts Two and Three, the plaintiff does *not* claim the defendant acted in *bad faith* because it refused to settle the plaintiff's uninsured motorist claim. Rather, the plaintiff attacks the defendant's *policy* behind its decision not to settle claims involving what it considers minimum damage/impact accidents as being in violation of public policy. As such, that policy is in violation of CUTPA and CUTPA. Furthermore, plaintiff claims that its CUTPA and CUTPA claims are independent of its breach of contract claim alleged in the first count, which the defendant has characterized as the "underlying claim." Consequently, there is no valid reason why these claims may not be pursued simultaneously. This court agrees.

Although this precise issue has not been ruled on directly by any Connecticut Appellate Court, it was obliquely addressed by our Supreme Court in Lees v. Middlesex Insurance Company,

219 Conn. 644 (1991) in the context of a breach of a homeowner's insurance contract joined in the same action as CUTPA and CUTPA claims. In holding that an action on a policy differed significantly from an action grounded in CUTPA and CUTPA, the court observed at p. 653:

> "In an action on an insurance policy, the conduct giving rise to the insurer's liability is a failure to pay out the policy proceeds when the insurer is contractually bound to do so. The factual inquiry focuses on the nature of the loss, the coverage of the policy and whether the parties have complied with all the terms of the policy. In a CUTPA and CUTPA claim, however, the insurer's liability is ordinarily based on its conduct in settling or failing to settle the insured's claim and on its claim settlement policies in general. The factual inquiry focuses, not on the nature of the loss and the terms of the insurance contract, but on the conduct of the insurer. Furthermore, in an action `on [the] policy', the insurer's duty to comply with the policy provisions stems from the . . . insurance agreement and is contractual in nature. In a CUIPA and CUTPA claim, the insurer's duty stems . . . from a duty imposed by statute."

CT Page 15556

See also, Heyman Associates No. 1 v. Insurance Company of the State of Pennsylvania, 231 Conn. 756, 790 (1994)

The analogy to this case is inescapable. Here the plaintiff has brought a breach of contract claim (first count) and a CUIPA and CUTPA claim attacking the insurer's settlement policies. Both the factual and legal inquiries on the latter two claims differ substantially from the breach of contract claim. The result in the latter two claims is not dependent on the result of the breach claim.[fn1] Consequently, there is no valid reason to await the outcome of the breach of contract claim before proceeding with the statutory claims. Moreover, recent Superior Court decisions have permitted such actions to proceed simultaneously. See Jones v. Safeco Insurance Company of Illinois, Sup. Court, Judicial District of Fairfield at Bridgeport, Docket No. CV98 035 76 14 S (April 28, 1999, Melville, J.), citing with approval Khanthavong v. Allstate Ins. Co., Sup. Court, Judicial District of Fairfield at Bridgeport, Docket No. 32 85 74 (Jan. 24, 1996 Levin, J.) (18 Conn. L. Rptr. 304, 308)

For the foregoing reasons, this court finds defendant's theory underlying its motion to strike and supporting case law to be inapplicable to the plaintiff's claims as plead in Counts Two and Three of her complaint.

### CUTPA CLAIM

Count Two of the plaintiff's complaint claims a CUIPA cause of action. In Mead v. Burns, 199 Conn. 651 (1986), our Supreme Court stated that the applicable section of CUIPA reflected what the legislature had determined would be an unfair or deceptive insurance practice. The practice complained of by the plaintiff is the defendant's minimum damage policy. However, refusing to settle minimum property damage cases is not a prohibited insurance practice as delineated by CUIPA, § 38a-816 (1) through (16).[fn2] As a result, CUIPA is inapplicable. This does not,

however, preclude recovery based on CUTPA.

## CUTPA CLAIM

Count Three of the plaintiff's complaint asserts a CUTPA cause of action. A CUTPA cause of action based upon unfair or deceptive practices must build upon the public policy embodied in a specific statutory provision and be consistent with the
CT Page 15557
regulatory principles established by this underlying statute. Calnan v. Allstate Indemnity Company, No. 98-0264160S, 1998 Ct. Sup. 14636 (Dec. 3, 1998). The purpose of CUTPA is to protect the public from unfair practices in the conduct of trade or commerce. The policy behind CUTPA is to encourage litigants to act as private attorneys general by bringing actions for unfair or deceptive practices. Hernandez v. Monterey Village Associates Ltd. Partnership, 553 A.2d 617, 17 Conn. App. 421 (1989) Whether such a practice is unfair depends upon finding a violation of public policy. Krawiec v. Blake Manor Development Corp., 602 A.2d 1062, 26 Conn. App. 601 (1992). In addition, CUTPA is a remedial statute and must be construed liberally in an effort to effectuate its public policy goals. Web Press Corp. v. New London Motors, Inc., 203 Conn. 342, 354 (1987). Therefore, although the plaintiff failed to sufficiently state a CUTPA claim based on the regulatory principles established by CUIPA, in light of the aforementioned policy and construction considerations, plaintiff's Count Three CUTPA claim, is not precluded.

In Blakeslee Arpaia Chapman v. U.S.F.&G. Co., 11 Conn. L. Rptr. 169, 175-76 (March 4, 1994, Hurley, J.), the court held that the defendant's alleged violation of General Statutes § 49-42 could provide a basis for the plaintiff's CUTPA claim notwithstanding the fact that the plaintiff's CUIPA claim must be dismissed. This is analogous to the instant case. Judge Hurley reasoned that since both § 49-42 [enforcing payment under a performance bond] and CUTPA are remedial statutes which must be construed liberally and, therefore, a violation of that section provided the foundation for a CUTPA cause of action. Id., 176.

Similarly, in the instant case, the plaintiff has sufficiently alleged actions which, if proven to be offensive, are in contravention of the public policy advanced by § 38a-336 [the uninsured motorist statute], whose purpose it is to protect citizens from sustaining losses incurred from uninsured drivers. Four Beaches Condo v. W.C. Brescia Plumb, No. CV96 0384124, 1997 Ct. Sup. 5563, 5571 (May we, 1997), citing Amendola v. Giammattei, No. 260230 (June 27, 1991, Ramsey, S.T.R.) Therefore, even though the plaintiff's CUIPA claim must fail, her CUTPA claim can be grounded in the uninsured motorist statute.

Although a violation of the public policy of this statute is not specifically alleged by the plaintiff, it is implicated by the very nature of the instant case. This case involves, inter alia, an action brought by the plaintiff to recover under its
CT Page 15558
uninsured motorist policy with the defendant. This type of insurance policy is predicated on the law set forth in § 38a-336.

Several Connecticut courts have recognized

". . . . the principle that the public policy and public interest intended to be promoted by remedial social legislation are ordinarily advanced by implying therefrom a judicially cognizable cause of action which enforces the legislative purpose." Yale-New Haven Hospital v. Mitchell, 44 Conn. Sup. 274 (1995); see also, Euresti v. Stenner, 458 F.2d 1115; Lally v. Copygraphics, 173 N.J. Super 16.

In addition, other types of statutory violations have been held to supply a sufficient basis for a CUTPA claim. See Premier Roofing Co. v. Insurance Co. of N.A., No. 31 24 38, 1995 Ct. Sup. 1933 (March 3, 1995.[fn3]

The public policy established by the uninsured motorist statute is that every insured is entitled to recover for the damages he or she would have been able to recover if the uninsured motorist had maintained a policy of liability insurance. Allessa v. Allstate Insurance Co., No. CV95 05 05 50, 1995 Ct. Sup. 12772 (Nov. 7, 1995) citing Caulfield v. Amica Mutual Ins. Co., 31 Conn. App. 787-88. Therefore, for the defendant to offhandedly deny its own insured's uninsured motorist claim based on a business practice — a practice that the defendant admittedly stated applies to all minimum property damage/impact cases (plaintiff's complaint at 2) — offends the public policy of § 38a-336. In view of the remedial aspects of both § 42-110g and § 38a-336, and in light of the liberal construction afforded these statutes, combined with the plaintiff's allegations that the defendant's minimum damage/impact policy was the basis for its decision in refusing to settle plaintiff's claim, the defendant insurer has sufficiently implicated public policy to allow plaintiff to maintain her CUTPA claim.

## OTHER PUBLIC POLICY CONSIDERATIONS

By its very nature, insurance is designed to protect individuals and/or businesses from risk. Insurance is generally understood to be an arrangement for transferring risks. ROBERT E. KEETON & ALAN I. WIDISS, INSURANCE LAW: A GUIDE TO FUNDAMENTAL PRINCIPLES, LEGAL DOCTRINES, AND COMMERCIAL PRACTICES
CT Page 15559
(Practicitioner's Ed. 1988), 3. An individual pays sums of money in the form of premiums to transfer a particular risk. That protection or indemnity is what is bargained for. It is, therefore, unfair and illogical for an insurance company to have a minimum property damage policy, such as the one involved in this case, as it foregoes the very purpose of insurance. The defendant, as well as all insurance companies, cannot be allowed to take an individual's money and then pass the risk back to that individual, by precluding them from obtaining reasonable damages and/or the coverage they have been paying for. This is a violation of the public policy established by the uninsured motorist statute. The defendant's enforcement of a policy of no settlement in minimum impact cases forces insureds, claimants and accident victims to file suit to be compensated for any resulting losses sustained in such accidents. Passing this risk is an unconscionable advantage for the insurance company. Id. at 615. This is because it received payment to undertake precisely such a risk. Therefore, in the absence of prior notice to its insureds, it is contrary to public policy for an insurance company to

forego the very nature of its existence and oppressively use its superior bargaining position to hold out on settlement or claims requests and force the other parties to absorb the loss or file suit and expend more just to obtain what they bargained for.

The insured is supposed to receive a measure of certainty in exchange for his or her premium. This certainty is that if a loss of a specified type occurs, payment from the insurer provides an indemnification for the loss. Id. at 12. Insureds reasonably expect that they will be covered for their injuries or any other losses under their policy and that the insurer will pay them. See, Alintah v. National Grange, No. CV95 014 65 71 S, 1997 Ct. Sup. 4763 (Apr. 24, 1997)

The presumption in the instant case is that if the insured gets injured or incurs property damage at the hands of an uninsured motorist she will be indemnified by the insurer to whom she has been paying premiums. In short, premiums are paid to be used later as an offset. They do not expect the policy will be ignored for the financial benefit of the insurance company and that the coverage or benefits they are entitled to depends on the force of the collision.

The insurer-insured relationship discloses an insurance companies' function to protect society. In Joseph v. Hannan Agency, Inc., No. 32 33 10, 1997 Ct. Sup. 17 (Jan. 9, 1997), the
CT Page 15560
court held:

> Taking the facts as true, it is against the public policy of CUTPA for an insurer to accept several premium payments, make statements to the plaintiffs that General Liability . . . insurance policies had been secured on their behalf, and produce a Certificate of Insurance purporting to provide the plaintiffs with coverage when then and now, the plaintiffs were not covered by any such insurance policies.

This rationale is comparable to the instant case. The plaintiff believed at all times that a policy was issued in return for her premiums that covered damage or injury sustained from an uninsured motorist — irrespective of the force involved in the accident. However, then and now, if the accident she was involved in was characterized by the carrier as a minimum property damage case, the coverage would not be provided, at least to the extent she expected by the policy terms.

In Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 588-89 (1990), the court explained:

> "Provisions in insurance policies excepting particular losses from the coverage thereof are ordinarily valid, for the parties to a contract of insurance have the right to limit or qualify the extent of the insurer's liability in any manner. . . . [T]he word `exclusion' signifies . . . circumstances in which the insurance company will **not** assume liability for a specific risk or hazard that otherwise would be included within the general scope of the policy." (Citations omitted; emphasis added.)

That being said, the inverse is also true. Both parties can

contract to include a particular loss as a result of which the insurer will assume liability. In the instant case, we presumably have a policy negotiated by the parties that explicitly <u>includes</u> coverage for the type of accident in which the plaintiff was involved.

Further, Connecticut and all states have a public interest in providing compensation for accident victims and preventing the wholesale liquidation of familial assets which must be sold in the event of an exigency arising from a specified loss or injury. **KEETON & WIDISS**, supra, 2, 11. The reasonable expectations of the insureds, and in some instances, third party beneficiaries,
CT Page 15561
should be protected. This is especially true when the rights asserted by the claimant are in accord with the applicable insurance contract, as in the instant case. Id. at 615. Therefore, it is against public policy for an insurance company to do anything to injure the rights of its policyholders to receive the benefits of their contracts. Id. at 625. The interests of the individuals protected by this public policy include money, time, missed work, mental and physical health, etc. It would seem that these are the same interests that are supposed to be protected by insurance companies through the process of risk transference.

In addition, in recent times there has been a great movement toward effectuating alternative dispute resolution. **LEONARD L. RISKIN & JAMES E. WESTBROOK, DISPUTE RESOLUTION AND LAWYERS**, p. 1 (American Casebook Series, 1987); see also, **JON BERK & MICHAEL C. JAINCHILL, CONNECTICUT LAW OF UNINSURED AND UNDERINSURED MOTORIST COVERAGE**, p. 441, n. 23 (2d ed. 1999). It is evident that many states hold it to be in the public's interest to make valid efforts to resolve disputes outside the courtroom in such ways as settlements, arbitration, and mediation. Moreover, Connecticut has a strong policy, both legislative and judicial, favoring arbitration as a means of settling disputes. <u>Town of East Haven v. AFSCME</u>, 212 Conn. 368, 371 (1989). The synonymy of settlement with arbitration as an alternative to litigation suggests that Connecticut also has a strong policy favoring settlement. See <u>Black v. Goodwin, Loomis and Britton, Inc.</u>, 239 Conn. 14 (1996) citing <u>Gravson v. Wofsey, Rosen, Kweskin & Kuriansky</u>, 231 Conn. 186, 174 (stating Connecticut has a strong policy favoring the pretrial resolution of disputes; cf. <u>BERK & JAINCHILL</u>, supra 407. The plaintiff correctly observes that an insurer cannot denounce settlement and police its claims for those that involve minimum property damage because it is company policy to do so. See plaintiff's complaint, p. 2. It is indeed contrary to the present trend toward alternative dispute resolution for insurers to impose their settlement policy on the unsuspecting public.

The prohibition of such practices by insurance companies is further grounded in the contractual doctrine of detrimental reliance. **KEETON & WIDISS**, supra, 652. That is to say, it is against public policy for an insurance company to allow a claimant, whether they be an insured or other person intended to receive benefits under the policy, to rely to their detriment on the representation that since they paid for coverage they will get coverage when a claim is made, when in fact they may get
CT Page 15562
something less than they bargained for. Individuals rely on

insurance coverage that they went through the painstaking process of researching, selecting and paying monthly premiums for to protect them from risk, namely physical injury and property damage. A minimum property damage rule makes such a reliance detrimental in that when the coverage they expected is denied, less than expected or has to be fought for, they suffer incredible financial losses ranging from medical expenses to replacement of essential property, such as motor vehicles.

An insurance company must be mandated to give equal, if not more, consideration to the insured's interest when making decisions concerning the settlement or litigation of a claim covered by an insurance policy. Id. at 884. The principal supporting rationale is that an insurer ought not to be permitted to favor its own interests unless it is then prepared to protect its insured by absorbing the losses which result from the implementation of its business policies. See Id. at 887; see also its discussions n. 7, Rova Farms Resort, Inc. v. Investors Ins. Co. of Amer., 323 A.2d 495, 509 (NJ 1974). A breach of the duties imposed by the fiduciary relationship between the insurer and insured is not tolerable. Therefore, it is against public policy to allow insurers to gamble with the insured's claim by refusing to settle and by making outright denials of claims. Id. This is especially true in the situation of an uninsured motorist claim considering a denial perpetuates the length of time the insured must incur financial loss and hardship. It also forces the insured to file suit and incur legal expenses.

Moreover, [t]he Courts of this state have recognized abuse of process as `a cause of action in tort whose gravamen is the misuse or misapplication of process, its use in an improper manner or to accomplish a purpose for which it was not designed.'" Sussman v. D.A.N. Joint Venture, No. CV96 056 21 63 5, 1997 Ct. Sup. 1067 (Feb. 10, 1997) citing Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 475 (1980) quoting Varga v. Pareles, 137 Conn. 663, 667 (1951); 3 Restatement (Second), Torts 682. The legal system was not designed to be used as a tool by insurers to delay or deny payment of all claims involving minimum property damage nor was it designed to help insurance companies avoid assuming liability when they are required by contract to do so. Although the plaintiff has not alleged such a tort violation, the defendant's practices amount to a violation of this policy. Thus such conduct is contrary to public policy and therefore the defendant has provided the plaintiff with alternative grounds for
CT Page 15563
a CUTPA claim.

Finally, this type of abuse causes hardship in other areas of life, such as credit standing, loss of job and loss of business. **KEETON & WIDISS**, supra, 871. In contrast, early settlement offers the advantage of avoiding the expenses of litigation, to both claimants and insureds. Id. at 996. Allowing these types of claims (minimum damage/impact) to run their routine course may actually serve as a greater deterrent to irresponsible rejection of claims. Further, imposing sanctions for the implementation of such policies even though the insurer acts reasonably in doing so, serves to compensate the insured for both the delay in receipt of payment and the costs of engaging in litigation with the insurer in order to recover. Id. at 871.

CONCLUSION

The defendant's motion to strike Count Two of the plaintiff's complaint is hereby **GRANTED** because the plaintiff failed to sufficiently allege a prohibited insurance practice as required by CUIPA.

Count Three of the plaintiff's complaint is legally sufficient. It is not based on a common law bad faith claim and does not require the disposition of the underlying suit as a prerequisite. The defendant's minimum damage/impact rule is a violation of public policy for the above stated reasons and, therefore, if proven, would be an unfair trade practice under CUTPA. Accordingly, the defendant's motion to strike the third count is hereby **DENIED**.

MELVILLE, J.

[fn1] In fact, the major portion of the damages claimed in the statutory claims are likely to be the same as those sought in the breach of contract claim, i.e., the non-economic damages sought in the breach claim. Aside from that element, the statutory claims also provide for punitive damages which the breach claim does not. Under these circumstances, there is no reason for the parties to await the outcome of the breach action to pursue the statutory actions.

[fn2] The prohibited acts that come closest to this situation but do not cover it are found in § 38a-816 (6)(f) and (g) Not attempting in good faith to effectuate prompt, fair and equitable
CT Page 15564
settlements of claims in which liability has become clear; (g) compelling insureds to institute litigation to recover amounts due under an insurance policy offering substantially less than the amounts ultimately recovered in actions brought by such insureds." [Emphasis added.] These do not apply to the instant case as (f) contemplates a theory of recovery of good faith while (g) contemplates a result predicated on the result in the underlying claims. As already explained, plaintiff relies on neither of these concepts.

[fn3] Different statutory violations have been held to supply a sufficient basis for a CUTPA claim. See, e.g., Cheshire Mortgage Service, Inc. v. Montes, supra, 107-10 (violation of Federal Truth in Lending Act's public policy of promoting the informed use of consumer credit and violation of General Statute § 36-2241's public policy of protecting consumers of credit provide a sufficient basis for a CUTPA claim); Conaway v. Prestia, 191 Conn. 484, 491, 464 A.2d 847 (1983) (violations of General Statute §§ 47a-57 and 47a-5 requiring a landlord to obtain a certificate of occupancy prior to renting to tenant provides a sufficient basis for a CUTPA claim); Connecticut National Bank v. Carbonella, 8 CSCR 1010, 1010-11 (August 9, 1993, Leheny, J.) (violation of 12 U.S.C. § 1701x(c)(5) which requires creditor to give homeowner notice of credit counseling opportunities provides sufficient basis for CUTPA claim); Lenz v. CNA Assurance Company of Connecticut, 6 Conn. L. Rptr. 55, 56 (1992) (Maiocco, J.) (wrongful discontinuance of workers' compensation benefits by carrier in violation of General Statute § 31-296a provides a basis for a CUTPA claim).

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved