UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CANDI McCULLOCH             :   CIVIL ACTION NO.
                             :   301CV1115(AHN)
        Plaintiff,           :
                             :
vs.                          :
                             :
HARTFORD LIFE AND ACCIDENT    :
INSURANCE COMPANY AND EDUCATORS :
MUTUAL LIFE INSURANCE COMPANY   :
        Defendants.            :   July 6, 2004

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

I.     **INTRODUCTION**

The court should enter judgment in plaintiff's favor on the counterclaim of defendant Hartford Life and Accident Insurance Company ("Hartford") because, as a matter of undisputed fact and law:

(A)  Hartford does not have standing to sue plaintiff to recover disability benefits that it paid to plaintiff on behalf of plaintiff's insurer, Educators Mutual Life Insurance Company ("Educators"), as Educators third party administrator;

(B)  Hartford's status as Educators' reinsurer does not provide it with standing;

(C)  Hartford cannot establish that plaintiff's alleged misrepresentation of her disability caused it damages because, as a direct result of this alleged misrepresentation, Educators transferred to Hartford over one million dollars, the vast majority of which Hartford was able to keep; and

(D)  Hartford is precluded from recovering the benefit payments it made to plaintiff between August and November 2000 because it had all of the information upon which it seeks to recover these payments, prior to August 2000.

## II.    ARGUMENT

### A.    HARTFORD DOES NOT HAVE STANDING

"The burden of establishing standing lies squarely with" Hartford, which was required to present evidence beyond conclusory allegations to establish its standing. Bauer v. Veneman, 352 F.3d 625, 636 (2nd Cir. 2003). Summary judgment is warranted on Hartford's counterclaim because Hartford utterly failed to meet its burden. Hartford asserted its counterclaim against plaintiff in its capacity as Educators' third party administrator. First Amended Counterclaim, ¶ 45. Hartford has now invoked its status as Educators' reinsurer to support its standing to bring the counterclaim. Def. Br., p.11; Def. L.R. 56(a)(2) Stmt., ¶ 15.[1] As a matter of undisputed fact and law, Hartford does not have standing to sue plaintiff for alleged misrepresentations she made to Hartford in its capacity as Educators' third party administrator, and Hartford's status as Educators' reinsurer does not change this outcome.

### 1. Hartford's Role As Educators' Third Party Administrator Does Not Confer Standing

Hartford has not refuted that, as a matter of law, an agent does not have standing to sue for misrepresentations directed to its principal. Def. Br., pp.10-11. Nor does Hartford dispute that it administered and paid plaintiff's claim as Educators' agent and that plaintiff made her alleged misrepresentations to Hartford in response to its request for information "on behalf of Educators" and for the purpose of receiving benefits under her Educators' policy. Def. L.R. 56(a)(2) Stmt., ¶¶ 6, 14, 15, 16; Pl. Reply to Def. L.R.

---

[1]    Typically, when an insurer obtains reinsurance, the insurer continues to administer its insured's claims and pays the claims directly (or hires a third party to do so). See e.g. Skandia America Reinsurance Corp. v. Schenck, 441 F.Supp. 715, 724 (S.D.N.Y. 1977) (the ceding company typically "handles all matters prior to and subsequent to loss.") (quoting 13A J. Appleman & J. Appleman, *Insurance Law & Practice* § 7681, ch. 278, at 480 (rev. ed.1976). In this case, Educators chose to delegate its duty to administer and pay the claims, to the same company that reinsured the claims - Hartford. Exhibit B(1) to Hartford's Motion for Summary Judgment, § 2.1.2; Def. L.R. 56(a)(2) Stmt., ¶¶ 15, 35.

56(a)(2) Stmt. Re ¶¶ 15, 16.[2]

Instead, Hartford argues that it has standing because plaintiff knew that Hartford was administering her claim, and made representations to Hartford with intent to induce reliance. Def. Br., pp.10-11. This argument overlooks the dispositive (and undisputed) point – that Hartford was administering her claim **on Educators' behalf**, and that plaintiff made the alleged misrepresentations to Hartford **in its capacity as Educators' agent**, in response to requests for information **"on behalf of Educators"** to receive benefits under her policy with **Educators'**. Def. L.R. 56(a)(2) Stmt., ¶¶ 6, 14, 15, 16; Pl. Reply to Def. L.r. 56(a)(2) Stmt., re: ¶¶ 15, 16; First Amended Counterclaim, ¶¶ 5, 46.

Under these circumstances, to establish standing, an agent such as Hartford can only prevail if it presents evidence that the plaintiff "acted for the purpose of harming the agent's interests." Moorer v. Hartz Seed Co., 120 F.Supp.2d 1283, 1289 (M.D. Ala. 2000), citing, Restatement (Second) Agency, § 374(2), cmt. b, Cf, Lab. Loc. 17 Hlth & Ben. Fund v. Philip Morris, 191 F.3d 229, 241-242 (2nd Cir. 1999) (indirectly injured plaintiff has no standing to sue even if the defendant intended to harm the plaintiff). Hartford has not, and cannot, meet this burden because Hartford has admitted that plaintiff acted only for the purpose of receiving her insurance benefits. See Def. L.R.

---

[2]  Hartford's assertion that plaintiff cannot sue Hartford because it was acting as Educators' agent is specious. See Cary v. United Of Omaha Life Ins. Co., 68 P.3d 462 (Colo. 2003), contra, Def. Br., p.10, fn.13 (third party administrator may be held liable for misconduct in administering claim.) The only case that Hartford cites for this proposition, Elementary School Bldg. Comm. V. Placko, 2003 Conn.Super.LEXIS 474, at *4-5 (February 21, 2003), did not even involve a claim *against* an agent. It involved a claim *by* an agent, such as Hartford, and the court held that plaintiff/agent did not have standing because "[a] plaintiff [can] not sue [a defendant] in its own name [where] it is merely an agent and not an assignee of the claim . . ." That case, and the statement upon which Hartford relies, thus support plaintiff's position, not Hartford's. It is "black letter law" that an agent may be held personally liable for its own misconduct or for conduct undertaken for its own financial gain. Kilduff v. Adams, Inc., 219 Conn. 314, 331, 593 A.2d 47 (1991); Bowman v. Grolsche Bierbrouweij B.V., 474 F.Supp. 725, 733-734 (D. Conn. 1979). Hartford has now admitted that it did not administer plaintiff's claim "solely" as Educators' agent, but that it did so in consideration of its personal financial interest, as well. Def. L.R. 56(a)(2) Stmt., ¶ 15.

56(a)(2) Stmt., ¶ 16; Pl. Reply to Def. L.R. 56(a)(2) Stmt., ¶ 16.[3]

The court in Moorer v. Hartz Seed Co., 120 F.Supp.2d 1283, 1289 (M.D. Ala. 2000) addressed the same argument that Hartford makes in this case. In that case, the plaintiff, who also was acting as an agent for a disclosed principal, argued that the court should permit it to sue the defendant because the defendant made statements to the plaintiff with intent that the plaintiff rely on those statements in a manner that affected the plaintiff. Id. The court rejected this argument, explaining that "[t]he difficulty with this approach is that it would allow virtually any employee 'affected' by an adverse action taken against his employer to sue the adverse actor. This standard would, of course, lead to absurd results. That is precisely why the drafters of the Restatement (Second) of Agency included comment b. to section 374(2)."[4]

## 2. Hartford's Status as Educators' Reinsurer Does Not Confer Standing

Hartford appears to argue that it has standing by virtue of "a transaction in which Educators transferred, and Hartford assumed . . . the claims." Def. Br., p.11; See also Def. L.R. 56(a)(2) Stmt., ¶ 15 (claiming Hartford was not acting solely as Educators' agent because it had assumed financial liability for the claims.) As a matter of undisputed fact, Educators did not "transfer" plaintiff's claim to Hartford, and Hartford

---

[3]  Indeed, Hartford also has not cited any evidence, nor could it, that plaintiff even knew about Hartford's financial interest in plaintiff's claim. Def. L.R. 56(a)(2) Stmt., ¶ 10; Pl. Reply to Def. L.R. 56(a)(2) Stmt., re: ¶ 10.  In its statement of additional facts, though, Hartford represents that Educators informed plaintiff by letter that "it was paying her benefits through October 31, 1999 to accommodate the transfer of her claim." Def. L.R. 56(a)(2) Stmt., ¶ 38 citing, Def Ex. A(38). Educators did not state that it was transferring plaintiff's **claim** to Hartford, but only that Hartford, as Educators' "new claims administrator" needed time to "transfer all claim information into their system." Def. Ex. A(38). Educators specifically stated in that letter that its contract for administrative services with Hartford "in no way affects your rights under your Certificate of insurance." Id. Hartford has admitted that Educators did not transfer plaintiff's claim to Hartford. Def. L.R. 56(a)(2) Stmt., ¶ 15 (acknowledging that the policies remained "on Educators' paper.")
[4]  Section 374(2) provides that "[i]n conformity with the normal tort rule, a servant who loses his job or otherwise suffers economic loss as a result of the principal's misfortune, tortiously caused by another, has not thereby an action against the other."

did not "assume" plaintiff's claim.  Def. L.R. 56(a)(2) Stmt., ¶¶ 7, 15; Exhibit B(1) to

Hartford's Motion for Summary Judgment, § 2.2; See Footnote 3, supra. Hartford has not

even attempted to present evidence to support this erroneous assertion.  Def. Br., p.11.

In the only "transaction" of record between Hartford and Educators, the

reinsurance agreement, Hartford agreed to insure Educators against the future risk of loss

associated with Educators' open disability claims.  Exhibit B(1) to Hartford's Motion for

Summary Judgment, § 2.2.[5]  Pursuant to the Agreement, Educators remained solely

liable to pay the claims, and Hartford agreed to indemnify Educators for this liability.[6]

Exhibit B(1) to Hartford's Motion for Summary Judgment, § 2.2 (stating that the

Agreement provides for "indemnity reinsurance solely between the Company [Educators]

and the Reinsurer [Hartford]" and "shall not create any right or legal relationship

between" Hartford and Educators' insureds and that Educators "shall be and remain

solely liable to" its insureds); Id., § 5.5 (providing that, if Educators' pays a claim after

the effective date of the Agreement, Hartford will reimburse Educators.); Def. L.R.

56(a)(2) Stmt., ¶ 7.

---

[5]  As the Second Circuit has explained "'[r]einsurance is a contract by which one insurer insures the risks of another insurer.' Under a reinsurance contract, the original insuring entity (the 'reinsured') transfers, or 'cedes,' part **or all** of its risk under its policy of insurance to another entity (the 'reinsurer'). When entering into a reinsurance contract, a reinsured agrees to pay a particular premium to a reinsurer in return for the reinsurer assuming the risk of a portion of the reinsured's potential financial exposure under certain direct insurance policies it has issued to its insured." North River Ins. v. Ace American Reins. Co., 361 F.3d 134, 137 (2nd Cir. 2004) (emphasis added) (citations omitted). "Obviously, reinsurance is predicated on the existence of insurance . . . Basically, reinsurance is a contract between a primary insurer and another insurance company where the former is indemnified by the latter for losses on paid claims to policyholders. The indemnitor is called the reinsurer. With such a contract, the primary insurer is reinsured." Bluewater Insurance Limited v. Balzano, 823 P.2d 1365, 1367 (Colo. 1992); See also generally 1-2 Holmes' Appleman on Insurance 2d § 2.15; 14-105 Appleman § 105.4; 14-106 Appleman § 106.7; Fontenot v. Marquette Casualty Co., 247 So.2d 572 (La. 1971), quoting, 19 Couch on Insurance 2d § 80.2.

[6]  However, because Educators authorized Hartford, as its claims administrator, to pay the claims directly, albeit on Educators' behalf, there was no need for Educators to seek indemnification from Hartford in its capacity as Educators' reinsurer. Exhibit B(1) to Hartford's Motion for Summary Judgment, § 2.1.2; Def. L.R. 56(a)(2) Stmt., ¶ 6.

As a matter of law, "[a]n insurance company cannot recover from a wrongdoer, who causes the loss insured against, the money paid to satisfy such loss." See e.g. Philip Morris, 191 F.3d at 235-243 (holding that, as a matter of law, health funds had no standing to sue cigarette manufacturers directly to recover payments made for benefit of insureds), quoting, 1 J.G. Sutherland, *A Treatise on the Law of Damages* 55, 56 (1883) (citing Connecticut authority), and Great Am. Ins. Co. v. United States, 575 F.2d 1031, 1033 & n. 3 (2d Cir. 1978) (collecting cases) (insurer barred from suing tortfeasor directly), and Connecticut Mutual Life Ins. Co. v. New York & New Haven R. Co., 25 Conn. 265, 274, 276-277 (1856) (directing verdict for defendant on the ground that an insurer could not "successfully claim a legal injury to himself from another, because the latter has injured [the insured] in such a manner that the [insurer's] contract liabilities are thereby affected.")

As Educators' insurer, Hartford's standing to bring action against plaintiff is no different from the standing of the insurers in Philip Morris, and Connecticut Mutual Life Ins. Co., supra to bring action against the tortfeasors in those cases. Hartford insured Educators against its future liability to pay disability benefits, plaintiff allegedly "cause[d] the loss insured against" when she improperly sought and received disability benefits under her policy with Educators, and Hartford is seeking to recover from plaintiff the money paid to satisfy that loss. Def. L.R. 56(a)(2) Stmt., ¶¶ 15, 35; Counterclaim, ¶ 56. As in Philip Morris, and Connecticut Mutual Life Ins. Co., supra, as a matter of undisputed fact, the injury claimed by Hartford is derivative of Educators'

injury, and cannot support an action by Hartford against plaintiff. See Philip Morris, at 238-239[7]

Moreover, precluding Hartford from asserting a direct action against plaintiff is not inequitable – it is the result of Hartford's own calculated business decisions, which it made for its own benefit.  Hartford chose not to assume direct responsibility or liability to the insureds as their insurer, expressly provided that Educators would remain solely liable to the insureds, and purported to claim that the insureds were not even third party beneficiaries of the reinsurance Agreement.  Exhibit B(1) to Hartford's Motion for Summary Judgment, §§ 2.2, 12.5. That decision had implications that were clearly favorable to Hartford and detrimental to plaintiff: it was intended to shield Hartford, in its capacity as Educators' reinsurer, from direct liability to plaintiff,[8] and allowed Hartford to avoid the regulatory oversight of the Insurance Commissioner and the obligation to provide the claimants with "fair, adequate and not misleading" written notice that would have been required if it had assumed direct liability as plaintiff's insurer.[9]  Having chosen to avoid direct liability and, and the regulations applicable to, plaintiff's insurer, Hartford cannot complain that it is now precluded from bringing a direct action as if it were plaintiff's insurer.

---

[7]  See also West Hartford v. Cullina, No. X06 CV02-0172051 S (Nov. 4, 2002) (attached), citing, Connecticut Mutual Life Ins. Co. and Philip Morris, supra, discussing Connecticut and U.S. Supreme Court authority, and holding that "the existence of a directly injured party who can remedy the harm is dispositive" of the standing of a third party whose injury is derivative of the directly injured party (attached).  In this case, plaintiff's insurer, Educators, would clearly have been the directly injured party to seek redress for plaintiff's alleged misrepresentation, and this is dispositive of Hartford's standing.

[8]  As set forth in footnote 2, supra, plaintiff may sue Hartford for its misconduct in its capacity as Educators' third party administrator. In this action, plaintiff is not suing Hartford in its capacity as Educators' reinsurer (for example by claiming that Hartford breached the reinsurance agreement or seeking to establish Hartford's direct liability to plaintiff upon Educators' insolvency.)

[9]  See 14-109 Appleman § 109.3 & fns. 20; C.G.S. § 38a-66(b)(1)-(3); 18 Del. Code § 4944(b)(1)-(3); 31 Pa. Code § 90i.1(a), 90i.2, 90i.3.

Defendant's final argument, that "Plaintiff does not suggest how [Educators'] cause of action was extinguished" by the reinsurance agreement is specious. Def. Br., p.11. Hartford, not Educators, has asserted a claim against plaintiff. For this reason, plaintiff motion does not claim that "**Educators'** cause of action was extinguished," and plaintiff need not explain "how Educators' cause of action was extinguished." The only issue presented by Hartford's counterclaim and plaintiff's motion is whether **Hartford** has standing to maintain an action against plaintiff. F As set forth in plaintiff's moving papers and herein, as a matter of law and undisputed fact, Hartford does not have standing.

## B. HARTFORD CANNOT ESTABLISH DAMAGES

Summary judgment would be appropriate even if Hartford had established standing because, as a matter of undisputed fact, Hartford cannot establish that it was damaged as a result of plaintiff's alleged misrepresentation:

- Hartford admits that plaintiff's insurer, Educators, transfered over $1 million dollars to Hartford to make the alleged improper benefit payments. Def. L.R. 56(a)(2) Stmt., ¶ ¶8. [10]

- Hartford admits that it paid plaintiff only $91,896 out of this money, and only claims $19,655.33 of this amount as damages from plaintiff's alleged misrepresentation. Id., ¶¶ 18, 29, 46.

- Hartford has failed to cite or provide any evidence to refute that, after terminating plaintiff's claim, Hartford released over $ 1 million dollars to its own

---

[10] Hartford disputes that Educators transferred the full $1,294,206 in statutory reserves associated with plaintiff's claim to Hartford, on the ground that the Agreement provided that Educators would transfer 93.3%, rather than 100%, of the statutory reserves for the claims that were subject to the Agreement. Def. L.R. 56(a)(2) Stmt., ¶¶ 8, 31. Accepting defendant's claim, Educators transferred $1,207,494 to Hartford in connection with plaintiff's claim.

use out of the money that Educators had transferred to Hartford allocated to plaintiff's claim. Id., ¶ 30. Accordingly, this fact is deemed admitted. See Pl. Reply to Def. L.R. 56(a)(2) Stmt., re: ¶¶ 30.

•     Hartford has failed to cite or provide any evidence to refute that it received a financial benefit from plaintiff's representation to Educators that she was disabled.. Id., ¶ 33. Accordingly, this fact is deemed admitted. See Pl. Reply to Def. L.R. 56(a)(2) Stmt., re: ¶ 33.

•     Hartford has not even attempted to deny that the income Hartford received from Educators in connection with plaintiff's claim exceeded the expenses incurred by Hartford in administering plaintiff's claim. Compare, Pl. L.R. 56(a)(1) Stmt., ¶ 32; Def. L.R. 56(a)(2) Stmt., ¶ 32. Accordingly, this fact is deemed admitted. Pl. Reply to Def. L.R. 56(a)(2) Stmt., re: ¶ 32.

•     Finally, Hartford admits that it would not have received any of this money in the absence of plaintiff's alleged misrepresentation. Def. L.R. 56(a)(2) Stmt., ¶ 9, 31.

As set forth in plaintiff's Memorandum of Law in Support of Motion for Summary Judgment, under these circumstances, Hartford cannot establish that it suffered damages as a result of plaintiff's misrepresentation.

In an attempt to avoid this simple conclusion, Hartford misstates plaintiff's argument, pretends that it was plaintiff's insurer, and engages in convoluted hypothetical speculation about fictitious scenarios. Def. Br., pp.8-11. The court should not allow Hartford to mislead or confuse it:

First, and foremost, as a matter of undisputed fact, Hartford was not plaintiff's insurer, but a **third party administrator**, and **reinsurer** of plaintiff's insurer, to which plaintiff's insurer had transferred the funds necessary to pay plaintiff's claim. Def. L.R.56(a)(2) Stmt., ¶¶ 1, 5-8, 14, 16. Hartford conveniently overlooks this fact to argue that it would be entitled to recover an overpayment of disability benefits if plaintiff died, returned to work, or her medical condition improved. Def. Br., pp.9-10.[11] As explained in Section A, supra, Hartford does not, and would not under any of the circumstances described by Hartford, have standing to recover the benefit payments that it made on behalf of plaintiff's insurer, Educators, and dismissal of Hartford's claim would have absolutely no implication on the ability of an **insurer**, to recover an overpayment of benefits under any of these scenarios, as Hartford suggests. Def. Br. p.10.[12]

Second, plaintiff's "theory" is **not** that Hartford profited from its "release of reserves allocated to her claim," but that it profited by Educators' transfer of over one million dollars to Hartford as a direct result of plaintiff's alleged misrepresentation – which is a matter of undisputed fact. Def. Br., p.8 & Pl. Br., pp.10-13; Def. L.R. 56(a)(2) Stmt., ¶¶ 8-9, 30-33; Compare, Pl. L.R. 56(a)(1) Stmt., ¶ 32 and Def. L.R. 56(a)(2) Smtt., ¶ 32; Pl. Reply to Def. L.R. 56(a)(2) Stmt., re: ¶ 32. Regardless of how Hartford

---

[11]   Hartford also overlooks this fact when it claims, without citation to any supporting evidence, that it had the same financial interest in the administration of plaintiff's claim as Educators. Def. Br., p.11, fn.15; Def L.R. 56(a)(2) Stmt., ¶ 10. Hartford has not presented any evidence, nor could it, to support that, after plaintiff made her claim for benefits a third party gave **Educators** over $1 million dollars to pay plaintiff's benefits, and allowed Educators to keep that money if it terminated plaintiff's benefits.

[12]   For this reason, as well, the case of Paul Revere Life Ins. Co. v. Bass, 423  F.Supp. 134 (N.D.Cal. 1981), upon which Hartford relies, has no bearing on this case.  That case involved a claim by an insurer, not a third party administrator or reinsurer. Moreover, that case did not discuss, much less purport to create a special exception to the rule that a party may not recover damages, when the benefits it received as a result of the act complained of exceed its losses.  Byrnes v. Faulkner, Dawkins & Sullivan, 550 F.2d 1303, 1313-14 (2nd Cir. 1977).  Significantly, while Hartford received a reinsurance premium of over one million dollars from Educators as a direct result of plaintiff's alleged misrepresentation, in Paul Revere, the insurer had waived the premium as a result of the insured's misrepresentation, so the court had no occasion to offset any benefits to Paul Revere from its losses. Def. L.R. 56(a)(2) Stmt., ¶¶ 7-9, 18, 29-33, 46; Paul Revere, at 137.

calculated the consideration for its agreement with Educators, regardless of how Hartford calculated its own reserves for plaintiff's claim, and regardless of whether Hartford ultimately profits from its agreement with Educators, the simple and undisputed fact remains that **Educators transferred over $1 million dollars to Hartford in connection with plaintiff's claim, which it would not have transferred to Hartford in the absence of plaintiff's alleged misrepresentation, and Hartford was able to keep the vast majority of this money.** Def. L.R. 56(a)(2) Stmt., ¶¶ 7-9, 18, 29-33; Pl. Reply to Def. L.R. 56(a)(2) Stmt., re: ¶¶ 9, 30, 32, 33.[13]

For the foregoing reasons, in addition to those set forth in plaintiff's memorandum of law in support of summary judgment, Hartford cannot establish that it was damaged by plaintiff's misrepresentation and summary judgment is warranted.

## C. HARTFORD IS PRECLUDED FROM RECOVERING THE BENEFIT PAYMENTS IT MADE

Even if Hartford could establish standing and damages, it is precluded from recovering the benefit payments it made between August 14, 2000 and November 2000. As a matter of undisputed fact, before Hartford made the payments that it seeks to recover, Hartford knew, or upon inquiry might have informed itself, of the grounds upon which it now seeks to recover those payments. Def. L.R. 56(a)(2) Stmt., ¶¶ 21-22, 25:

- Hartford claims that, when it assumed administration of plaintiff's claim in October 1999, plaintiff's medical records showed that she was not, and **never**

---

[13]  Hartford's claim that it "will now know whether it 'profited' from the Reinsurance Agreement until the last benefit payment to a claimant in the pool," which it does not support with citation to any evidence, is insufficient to justify denying plaintiff's motion for summary judgment. Def. Br., pp.8-9. Even if Hartford ultimately suffers a net loss from the Reinsurance Agreement, as a matter of undisputed fact, that loss will be over $1 million dollars less than it would have been had plaintiff never made her alleged misrepresentation. Def. L.R. 56(a)(2) Stmt., ¶ 8-9, 31. Moreover, Hartford's argument supports denying Hartford standing. See Philip Morris, 191 F.3d at 236-237 (explaining that the policy factors that support denying standing to a derivatively injured party include the difficulty in attributing the amount of damages attributable to the wrongdoing.)

was, disabled and admits that it received and reviewed these medical records at that time. Def. L.R. 56(a)(2) Stmt., ¶¶ 21-22; and

•       Hartford admits that it obtained the video surveillance, which it now claims showed that plaintiff was not disabled, in June 2000. Id., ¶¶ 19, 25.

Under these circumstances, Hartford is precluded from recovering the payments it made to plaintiff as a matter of law. Mutual Ben. Life Ins. Co. v. Lindenman, 911 F.Supp. 619 (E.D.N.Y. 1995).

The case of Lindenman is squarely on point with this case, and the court should admonish Hartford for blatantly misstating the fact and holding of that case in an attempt to distinguish it. Def. Br., p.6, fn.6. First, defendant's misstate that Lindenman did not involve a misrepresentation made in a claim for benefits, and merely "involve[] the *rescission* of a disability policy based on the insured's misrepresentations in the application for the policy." Def. Br., p.6, fn.6 (emphasis in original). The insurer in Lindenman brought "an action . . . **to recover benefits** alleged to have been improperly received by the defendant" based on misrepresentations in both the policy application **and** the application for benefits. Lindenman, at 620, 622 (emphasis added). Further, defendant misrepresents that "the court held the insurer could not rescind the policy." Compare Def. Br., p.6, fn.6 with Lindenman, at 630 (holding that the insurer "MBL **can** rescind the policy.") Finally, and most significantly, Lindenman held that the insurer "should not be able to reclaim the money paid to Lindenman" because it had the information upon which it was relying to reclaim the money, at the time it paid the money. Lindenman, at 630 (emphasis added).

As in Lindenman, this court should also hold that Hartford cannot reclaim the money it paid to plaintiff because Hartford had the information in its possession upon which it relies to disclaim plaintiff's entitlement to benefits, at the time it paid plaintiff's benefits. Def. L.R. 56(a)(2) Stmt., ¶¶ 21-22, 25.

**CONCLUSION**

For the foregoing reasons, plaintiff respectfully requests that the court enter judgment in plaintiff's favor on Hartford's counterclaim.

PLAINTIFF,

CANDI McCULLOCH

By:     _____
Eliot B. Gersten (ct05213)
GERSTEN & CLIFFORD
214 Main Street
Hartford, CT 06106
Tel: 860-527-7044
Fax: 860-527-4968
Her Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed, via first class mail, postage prepaid, on July 6, 2004 to all counsel and pro se parties of record, as follows:

Roberta J. Sharp, Esq.
Barry A. Chasnoff, Esq.
Jessica Spangler Taylor, Esq.
Akin Gump Strauss Hauer & Feld, LLP
300 Convent Street, Suite 1500
San Antonio, TX 78205
*Tel: 210-281-7146*
*Fax: 210-224-2035*


Donald E. Frechette, Esq. (ct08930)
Joshua L. Milrad, Esq. (ct19321)
Charles F. Gfeller, Esq. (ct18119)
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103
Phone (860) 525-5065
Facsimile (860) 527-4198

Eliot B. Gersten