UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CANDI McCULLOCH | § | CIVIL ACTION NO.: |
| Plaintiff, | § | 301CV1115(AHN) |
| | § | |
| vs. | § | |
| | § | |
| HARTFORD LIFE AND ACCIDENT | § | |
| INSURANCE COMPANY AND | § | |
| EDUCATORS MUTUAL LIFE | § | |
| INSURANCE COMPANY | § | |
| Defendants. | § | July 14, 2004 |

**EDUCATORS MUTUAL LIFE INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT**

This is a suit alleging breach of contract and bad faith arising out of Hartford Life and Accident Insurance Company's November 2000 termination of Plaintiff's disability benefits. In her motion for summary judgment against Educators Mutual Life Insurance Company, the company that originally issued the policy in question, Plaintiff asks the Court to rule that Educators committed a breach separate and apart from the termination of benefits, in transferring responsibility for administration of her claim to Hartford pursuant to a June 1999 agreement. Plaintiff's motion for summary judgment should be denied on her breach of contract claim first because she has identified no contract term or other duty that would make claim administration a nondelegable duty, and second because she did not suffer any identifiable, independent injury as a result of the transfer. Plaintiff's motion for summary judgment should be denied with respect to her claim that Educators breached a duty of good faith and fair dealing, again because there is no contractual or other duty breached by the transfer of claim administration responsibility and because there is no evidence that Educators acted with the ill will or evil intent necessary to establish bad faith.

## **UNDISPUTED FACTS**

In 1969, Educators contracted with Group Insurance Administrators ("GIA") to underwrite and administer a group long-term disability plan for the American College of Physicians ("ACP"). Educators' Local Rule 56(a)(2) Statement, ¶ 52. Plaintiff had no role in the selection of Educators as an insurer or in the negotiation or selection of the terms of coverage. Plaintiff Candi McCulloch applied for disability benefits through ACP in September 1994. *Id.* ¶ 1. Her disability coverage became effective on September 24, 1994. *Id.*

Under Plaintiff's Policy, an insured is Totally Disabled when she is "unable to perform the material and substantial duties of [her] occupation as it existed at the time [her] disability began." *Id.* ¶ 44. Payment of benefits is subject to a number of terms contemplating that benefits are payable only for such period as disability continues. For example, in the event of Total Disability, the monthly benefit amount will be paid "for each complete month of disability," and "benefits will be paid *for the period that disability continues* beyond the Disability Waiting Period shown in the Schedule of Benefits." *Id.* ¶ 45-46. (emphasis added.)

The Policy provides that Educators or Hartford may review an insured's right to continuing disability payments at reasonable intervals. For example, the insured must provide timely written notice and written proof of loss to the insurer, and must provide "[l]ater proofs of the continuance of [her] disability…at such intervals as [the insurer] reasonably require." *Id.* ¶ 47. The Policy also reserves to Educators and Hartford the right to examine the insured "when and as often as it may reasonably require while a claim is pending." *Id.* ¶ 49.

The Policy may be changed at any time and "no consent of any person insured hereunder is needed for such a change." *Id.* ¶ 51. Finally, the Policy contained the following merger

clause: "the master policy, the copy of the application of the policyholder attached to it and the applications submitted by members constitute the entire contract between the parties." *Id.* ¶ 50.

In October 1995, plaintiff applied for total disability insurance benefits from Educators. *Id.* ¶ 3. Based on representations Plaintiff made regarding her disability and condition, Educators determined she was entitled to receive disability benefits. *Id.*

On April 15, 1997, GIA and ACP terminated their relationship with Educators, and moved their long-term disability plan to another insurance company. *Id.* ¶ 53. After April 1997, Educators was no longer writing professional association policies, accepting premiums or insuring any ACP member; its only involvement was the administration of open disability claims such as Plaintiff's. *Id.* ¶ 6, 53. This prompted Educators to begin negotiations to transfer to another insurer responsibility for the administration of its open professional association disability claims. *Id.* ¶ 53.

On July 1, 1999, Educators ceded 100 percent of its liability for and the administration of its open professional association claims, including Plaintiff's, to Hartford, pursuant to a document entitled "Reinsurance Agreement." *Id..* ¶ 54. Notwithstanding the title, the agreement dealt only with open disability claims and there was no "insurance" that was the subject of this agreement. Plaintiff was not "insured" with Educators after April 1997. Educators was only paying Plaintiff her disability benefits and administering her open disability claim. *Id.* ¶ 6. Under the Agreement, Hartford was given the sole authority to administer, pay and adjudicate claims and was given the responsibility for processing, payment and settlement of disputed claims. *Id.* ¶ 8. The Agreement requires Hartford to indemnify, defend, and hold Educators harmless in connection with any loss incurred by Educators as a result of Hartford's handling of the transferred claims. *Id.* While the policy remains written on Educators' paper and Plaintiff

has the right to sue Educators for breach of the policy terms, as a practical matter Hartford stands in Educators' shoes for all purposes and is contractually liable to indemnify Educators for any contractual or extracontractual liability to Plaintiff, thus making Educators a superfluous party to this suit.

Educators paid Hartford a lump sum or "reinsurance premium" in consideration for taking over the administration and payment of the claims. *Id.* ¶ 9. The reserves allocated to each of the claims were only one factor used in the calculation of the reinsurance premium. *Id.* Hartford conducted due diligence of eleven of the claims to be transferred in order to determine whether information supplied by Educators for each claim, including data such as diagnosis code, age and COLA benefits was correct. *Id.* ¶ 55. Hartford also reviewed the files to determine how well Educators managed its claim files and conducted ongoing investigations of claims. *Id.* ¶ 56. The final reinsurance premium calculated was less than the aggregate of all of the reserves. *Id.* ¶ 9.

Between March 1996 and May 1999, prior to ceding of this responsibility to Hartford, Educators reviewed plaintiff's continuing entitlement to disability benefits on several occasions. *Id.* ¶ 4. Twice Educators informed Plaintiff that it "had no objective, clinical evidence of a disabling condition on her claim." *Id.* On one occasion, Educators suspended the payment of her benefits. *Id.* At the time Hartford assumed responsibility for administration of Plaintiff's claim, the claim was in approved status and benefits were being paid monthly by Educators.

Educators informed Plaintiff that Hartford would be responsible for the administration of her claim after August 1999. *Id.* ¶ 10. In an August 26, 1999 letter to Plaintiff, Educators explained it had contracted with Hartford to administer her benefits and that after October 31, 1999 she would receive her benefit payments from Hartford. Educators advised Plaintiff to

contact Hartford directly if she had any questions regarding her claim. *Id.* After the Reinsurance Agreement was executed, Plaintiff no longer had any contact with Educators.

Shortly after assuming responsibility for Plaintiff's claim, Hartford undertook a routine annual review of her claim, gathering information from Plaintiff and updated medical records from her doctors. *Id.* ¶ 58. In conducting this review of Plaintiff's claim, the claim examiner assigned to Plaintiff's claim encountered several "red flags"[1] which prompted her to refer Plaintiff's claim to Hartford's Special Investigation Unit ("SIU"). *Id.* ¶ 59. Hartford's investigation of Plaintiff's claim included video surveillance, an in-person interview with Plaintiff, arrangement for Plaintiff to undergo an Independent Medical Examination, and a paper review of her file by another physician, among other activities. *Id.*

Based on all the information gathered in connection with Plaintiff's claim, Hartford determined that Plaintiff no longer met the definition of Total Disability under the Policy. *Id.* ¶ 60. On November 17, 2000, Hartford sent Plaintiff a termination letter. *Id.* ¶ 61.

The termination letter advised Plaintiff that that the evidence submitted in support of her claim did not establish that she continued to meet the policy's definition of Total Disability. *Id.* ¶ 62. The letter expressly invited Plaintiff to appeal Hartford's decision and to provide any additional information she wished Hartford to consider. *Id.* ¶ 63. Rather than appeal Hartford's decision or provide any additional information to support her claim, Plaintiff filed this lawsuit on June 15, 2001. *Id.* ¶ 64. Plaintiff never contacted Educators to question Hartford's decision to terminate her disability benefits prior to filing her lawsuit.

---

[1] These red flags included apparent reluctance by Plaintiff to provide Hartford with her drivers license or birth certificate to verify her birth date, the submission of an Attending Physician Statement ("APS") by an out-of-state physician and information provided by the attending physician's office staff that was inconsistent with the APS. Rule 56(a)(2) Statement, ¶ 59.

## ARGUMENTS & AUTHORITIES

### I. PLAINTIFF HAS NOT MET HER HEAVY BURDEN TO SHOW ENTITLEMENT TO SUMMARY JUDGMENT

Plaintiff cannot meet her burden on summary judgment by merely "presenting evidence showing there is no dispute of material fact" as she claims;[2] she must also establish that no reasonable trier of fact could find other than for her on her claims. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (*quoting Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). In order to make this showing, Plaintiff must establish each of the essential elements of her claims as a matter of law. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1985); *Southern Calif. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). Plaintiff has failed to present evidence entitling her to judgment as a matter of law on each of the elements of her breach of contract and bad faith claims. In particular, she has presented no evidence of the duty she claims was breached by Educators, no evidence of independent damages (*i.e.*, other than her underlying claim for policy benefits) arising from any breach by Educators, and no evidence that Educators acted with evil motive or intent. Plaintiff's motion for summary judgment should be denied.

### II. THE SUMMARY JUDGMENT EVIDENCE FAILS TO SHOW EDUCATORS BREACHED EITHER THE POLICY OR ITS DUTY OF GOOD FAITH.

Plaintiff's motion for summary judgment against Educators does not address the termination of her disability payments, which Plaintiff concedes is a disputed fact issue for the jury.[3] Rather, the subject of Plaintiff's motion for summary judgment is the allegation that Educators breached a contractual duty to her by transferring responsibility for administration of

---

[2] Plaintiff's Motion, at 8.

[3] Plaintiff does not argue or present any evidence regarding the termination of her benefits. If she intended to make this argument, Plaintiff's motion fails to meet her summary judgment burden of establishing that she meets the definition of "totally disabled" under the policy.

her claim to Hartford, by purportedly entering into a joint defense agreement with Hartford after this suit was filed, and by its actions in responding to discovery requests in this lawsuit.[4]

Plaintiff's "breach of contract" claim based on these allegations fails as a matter of law because Plaintiff has identified no term of the policy (or any other agreement) that Educators breached. *Martin v. DuPont Flooring Sys.*, 2004 U.S. Dist. LEXIS 5486 at *8 (D. Conn. March 31, 2004) (breach of contract is the "unjustified failure to perform all or any part of what is promised in a contract"). The policy at issue does not give Plaintiff a vested right in administration of her claim by Educators, does not give preclude Educators from contracting with another company for the administration of her claim, and does not give Plaintiff any veto over Educators' decision to do so.

Plaintiff's claim for breach of the duty of good faith and fair dealing fails as a matter of law not only because Educators did not breach any contract term by its action, but because Plaintiff has not identified any tangible benefit she reasonably expected to receive *other* than disability benefits under the policy. *Franco v. Yale Univ.*, 238 F. Supp. 2d 449, 455 (D. Conn.

---

[4] Plaintiff has no support for her argument that Educators' conduct during discovery or its decision to enter into a joint defense agreement with Hartford constitutes bad faith. The one case Plaintiff cites—*O'Donnell v. Allstate Insur. Co.*, 734 A.2d 901, 904 (Pa. Super. 1999)—does not stand for the proposition that an insured can recover for bad faith from an insurer defending a claim predicated on its alleged prior bad faith handling of an insurance claim. *W.V. Realty, Inc. v. Northern Ins. Co.*, 334 F.3d 306, 313 (3d Cir. 2003). Rather, litigation conduct is relevant to bad faith only if the insurer's discovery violations were an attempt to evade the insurer's obligation under the insurance contract. *Id.* at 314. In *W.V. Realty*, the Third Circuit concluded that the insurer's discovery conduct in failing to disclose other bad faith lawsuits, and the subsequent sanctions imposed by the trial court, were inadmissible to establish bad faith by the plaintiff. *Id.* at 314-15. Plaintiff has provided no explanation as to how Educators' alleged delay in producing the Reinsurance Agreement was an attempt to evade Educators' obligations under the insurance contract. Thus, even assuming Educators engaged in discovery violations—it did not—those violations do not constitute evidence of bad faith.

In any event, Plaintiff has failed to establish that Educators was attempting to hide the Reinsurance Agreement from her. Plaintiff initially requested that Hartford "identify any document which describes the relationship between Defendant Educators and Defendant Hartford, including any assignments or indemnities." Although the Court ordered Hartford to respond to this Interrogatory by "identifying" the responding information, the Court found that Hartford had "substantial justification" for its objections. Educators' Rule 56(a)(2) Statement, ¶ 33. Plaintiff did not serve Educators with requests for production or interrogatories until December 6, 2002, three months after the reinsurance agreement had been produced to Plaintiff. *Id.* ¶ 33. Further, Plaintiff did not notice the depositions of Educators' corporate representatives—who purportedly disclosed that Educators treated the agreement as a "sale" of the claims—until April 15, 2003; the depositions were held on May 13, 2003. *Id.* ¶ 39.

2002). The plaintiff in *Franco* was a physician who claimed the defendant breached a duty of good faith by not considering his interests when it modified the nature of its cardiothoracic surgery section during the term of his appointment. *Id.* at 451-52. The court held that the plaintiff could not recover on his claim because his written contract did not include any term or condition that gave rise to a reasonable expectation that there would be no changes within the section.

Here, Plaintiff has presented no evidence of any term or condition in her disability policy that prevented Educators from contracting with Hartford for the administration of her claim. Plaintiff's conclusory statement that she "expected" Educators to administer and pay her claim is even more patently unreasonable than the "expectation" at issue in *Franco*, because Plaintiff did not participate in the negotiation of the contract terms at issue or the selection of an insurance company to insure or administer the claims.

### III. PLAINTIFF SUSTAINED NO INDEPENDENT OR IDENTIFIABLE INJURY AS A RESULT OF EDUCATORS' ACTIONS.

Even if Plaintiff had offered evidence that Educators was in breach (and she has not), her motion for summary judgment fails as a matter of law because she has not identified any injury separate and apart from the same injuries she seeks in her underlying claim against both Defendants for terminating her policy benefits.

#### A. Plaintiff has identified no actual damages separate and apart from the termination of her disability benefits and litigation expenses.

The only evidence of injury Plaintiff has offered is the loss of her disability benefits and litigation expenses.[5] Her entitlement to disability benefits under the policy is not the subject of her motion for summary judgment against Educators.

---

[5] Plaintiff's Second Amended Complaint, ¶ 38.

Under Connecticut law, Plaintiff may recover her litigation expenses, including expert witness fees, only if she establishes a right to recover punitive damages. *Uberti v. Lincoln Nati'l Life Ins. Co.*, 144 F. Supp. 2d 90, 107 (D. Conn. 2001) (plaintiff who recovered damages for insurer's breach of contract and breach of the duty of good faith and fair dealing in terminating his disability benefits was not entitled to recover his costs and expenses because he did not establish that insurer acted with bad motive, wantonness, or outrageousness); *LeBlanc v. Meneo v. George D. Porto Plumbing and Heating, Inc.*, No. CV 906386025S, 1997 WL 148710 at *1 (Conn. Super. March 19, 1997) ("expenses of litigation are not recoverable as actual or compensatory damages because such expenses are not the natural and proximate cause of the wrongful act") (quoting *Maisenbacker v. Society Concordia*, 42 A. 67 (Conn. 1899).[6] Plaintiff has presented no evidence that Educators acted with bad motive, wantonness, or outrageousness and thus may not recover her litigation expenses as damages. Moreover, her litigation expenses cannot serve as her only form of damages purportedly caused by Educators' alleged breach. To claim that litigation expenses standing alone constitute damages sufficient to support a cause of action is an unwarranted "bootstrap" claim that would enable any vexed party missing the damage element of a cause of action to provide the missing element merely by filing a lawsuit.

Plaintiff is not entitled to a "presumption" of injury that alleviated her burden of proving actually damages flowing from Educators' alleged breach. The cases Plaintiff cites from Washington, New Jersey, and Nebraska for the proposition that injury is "presumed" all involved an insurer's undertaking of a defense under a liability policy, and do not stand for the proposition that prejudice may be presumed from an insurer's untimely disclaimer of coverage. *See, e.g., City of Carter Lake v. Aetna Cas. &Sur. Co.*, 604 F.2d 1052, 1061 (8th Cir. 1979) (when insurer

---

[6] The *only* case Plaintiff cites for the proposition that she is entitled to recover her litigation expenses as actual damages is *Coventry Associates v. American States Insurance Co.*, 961 P.2d 933 (Wash. 1998), a case decided under Washington law.

-

had sufficient knowledge of facts to put it on notice of the possibility of noncoverage of a third-party claim six months prior to undertaking a defense of the claims, prejudice to the insured was presumed, and insurer was estopped from denying coverage); *Safeco, Inc. v. Butler*, 823 P.2d 499, 506 (Wash. 1992) (where a liability insurer acts in bad faith in handling a claim under a reservation of rights, the insurer is estopped from denying coverage);[7] *Sneed v. Concord Ins. Co.*, 237 A.2d 289 (N.J. App. Div. 1967) (insured's prejudice was presumed and liability insurer was estopped from disclaiming coverage for and defense of third-party claim 22 months after insurer received notice that there was a basis for lack of coverage).

Plaintiff's argument that Educators is "estopped" from denying her right to received policy benefits falls equally wide of the mark. As a matter of law, Plaintiff cannot establish that Educators' actions prejudiced her "ability to protect her rights under her insurance policy."[8] At the outset, Plaintiff had no contractual right to "object" to Educators' transfer of claim administration responsibility to Hartford. Once transferred, Hartford's duties and rights under the policy remained one and the same as Educators were, and Plaintiffs' duties and rights— including the "ability to protect her rights"—remained unchanged as well. Moreover, Plaintiff had precisely the same interest in providing complete, truthful, and accurate information regarding her claim to Hartford as she would have to Educators. Finally, Plaintiff never asked either Hartford *or* Educators to review the decision.[9] Under these circumstances, neither Plaintiff's "ability to protect her rights under her insurance policy" nor any other right was prejudiced by Educators' transfer of claim administration responsibility to Hartford.

---

[7] The Supreme Court of Washington held, in a case heavily relied on by Plaintiff, that there is no presumption of harm in a first party insurance context. *Coventry Assoc. v. American States Ins. Co.*, 960 P.2d 933, 938 (Wash. 1998).

[8] Plaintiff's Motion, at 18-19.

[9] Educators' Rule 56(1)(2) Statement, ¶ 64.

The absence of any independent injury associated with Educators' transfer of claim administration responsibility to Hartford is perhaps best demonstrated by Plaintiff's motion for summary judgment itself, which is devoid of any hint as to what, precisely, the Court should award as "damages" for this claim.

**B.  Plaintiff suffered no loss of "security" as a result of Educators' transfer of claim administration responsibility to Hartford.**

The transfer of responsibility for administration of the ACP claims to Hartford preserved all of Plaintiff's contractual rights and duties and in no way altered the "security" of the disability policy issued by Educators. The policy provided for benefit payments only so long as Plaintiff met the definition of total disability; had Educators retained responsibility for administration of her claim, Educators would have had the same right to review and terminate her claim that Hartford had.

Plaintiff argues that Hartford had a "financial incentive" to terminate her claim but offers no evidence or authority to explain how Hartford's supposed "financial incentive" to terminate her claim differed from Educators.[10]

**C.  Educators' transfer of responsibility for administration of her claim did not proximately cause Plaintiff's harm.**

In order to establish a right to recover from Educators for breach of contract or a duty of good faith, Plaintiff would have to show that Educators' actions were the proximate cause of her injuries, whatever they might be. *Lettick v. Nationwide Mut. Ins. Co.*, 2000 U.S. Dist. LEXIS 20476 at *19 (D. Conn. March 31, 2000) (to be entitled to damages in contract a plaintiff must establish a causal relation between the alleged breach and the damages flowing from the

---

[10] Plaintiff incurred no loss of financial "security" in connection with the transfer of claim administration responsibility, as it is undisputed that Hartford set aside reserves to pay benefits due under the policy and there is no evidence Hartford is not financially able to meet the obligations under the policy.

breaqch); *Devito v. Defrancesco*, 1999 Conn. Super. LEXIS 2081 at *54 (Conn. Super. Aug. 4, 1999) (plaintiff must show damages claimed were proximately caused by defendant's breach of the duty of good faith and fair dealing).

As noted above, Plaintiff's rights and duties under the policy were in no way altered by the assignment of responsibility to Hartford. Plaintiff's claim that, "but for" execution of the Reinsurance Agreement, her benefits would not have been terminated, is utterly speculative. The undisputed evidence shows that Educators had questioned her entitlement to benefits prior to execution of the Reinsurance Agreement, and it is undisputed that Educators would have retained the right to question her entitlement in the future, had the Reinsurance Agreement never been executed. Plaintiff has offered no evidence at all—certainly no summary judgment proof—that Educators would not have terminated her benefits at some point in the future.

Hartford determined her entitlement to benefits pursuant to the same standard Educators was bound to apply—if Hartford did not, then Plaintiff has the same remedy and right to seek recovery for breach of contract against Hartford that she would have had against Educators. If Plaintiff's benefits were wrongfully terminated and/or if Plaintiff can establish the heightened elements of intent necessary to show bad faith by Hartford in connection with that termination, her remedy is with Hartford for its actions and there is no evidence Hartford cannot make her whole if found liable on any theory. Plaintiff has not identified any independent injury that would entitle her to double (or additional) recovery from Educators.

## IV. PLAINTIFF MAY NOT RECOVER FOR "WRONGFUL REINSURANCE."

It is undisputed that Educators was paying Plaintiff's disability benefits at the time responsibility for claim administration was transferred to Hartford; it is undisputed Educators took no action even arguably relating to termination of her benefits. In an effort to establish

some sort of contractual (or extracontractual) liability against Educators for this action, remote in time from the termination by at least a year and a half, Plaintiff is left to allege that Educators' transfer of claim administration responsibility to Hartford was an independent breach of duty to her, separate and apart from the termination of her disability benefits. This theory of recovery is fatally deficient not only for the absence of a breach or identifiable damages, but for lack of any statutory, regulatory, common law, or contractual authority creating a cause of action for the transfer of responsibility for administration of claims under a group disability policy.

## V.  PLAINTIFF HAS NO EVIDENCE THAT EDUCATORS ACTED WITH "ILL WILL" OR A "DISHONEST PURPOSE"

Plaintiff is not entitled to summary judgment because she has failed to present any evidence that Educators acted in bad faith. Plaintiff erroneously attempts to shift this burden to Educators, incorrectly stating that Educators owed Plaintiff a fiduciary duty. However, an insurer does not owe an insured a fiduciary duty in first-party insurance disputes. *Sheltry v. Unum Life Ins. Co. of America*, 247 F. Supp. 2d 169 (D.Conn. 2003); *1049 Asylum Ltd. v. Kinney Pike Ins., Inc.*, 2003 WL 21496543, at *2 (Conn. Super. May 30, 2003); *Grazynksi v. Hartford Ins. Co.*, No. CV960337594, 1997 WL 407897, at *3 (Conn.Super. July 10, 1997); *see also Uberti*, 144 F. Supp. 2d at 90 n.6 (discussing other courts' imposition of fiduciary duties on insurers, but still recognizing plaintiff has the burden to prove bad faith). Even if Educators did owe Plaintiff fiduciary duties, Plaintiff has cited to absolutely no authority that the burden to prove bad faith shifts to Educators on summary judgment.

In order to be entitled to summary judgment, Plaintiff must present evidence that Educators acted with "dishonest purpose," "furtive design or ill will." *Buchman v. People Express, Inc.* 530 A.2d 596 (1987). Bad faith is more than mere negligence or a dispute over coverage. *Uberti*, 144 F. Supp. 2d at 104. Plaintiff has produced no evidence that Educators had

a dishonest purpose, furtive design or ill will in entering the agreement with Hartford. Plaintiff has no evidence that Educators singled her out in any way; Educators entered into the agreement because its policy with ACP had lapsed, it was no longer accepting premiums, and it was left only with the expense of administering and paying open disability claims.[11] Educators' business decision does not constitute bad faith towards Plaintiff. *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, No. CV 980580129, 2002 WL 31170496, at *7 (Conn. Super. Aug. 23, 2002) (although defendant pursued its own self interest in limiting its losses, plaintiff presented no evidence that defendant did so because of a furtive design or ill will toward plaintiff). Even if, as Plaintiff claims, Educators somehow "misrepresented" the nature of its relationship with Hartford to her, simply alleging a misrepresentation occurred does not amount to conscious deception by Educators to mislead Plaintiff. *1049 Asylum Ltd.*, 2003 WL 21496543, at *3. Plaintiff is not entitled to summary judgment.

## CONCLUSION

The evidence at trial will demonstrate Plaintiff is not entitled to recover damages for breach of contract or bad faith from either Hartford or Educators. However, even if Plaintiff establishes liability for one or both causes of action, she can recover only once. Hartford assumed the duty to indemnify Educators for any liability under the policy that resulted from Hartford's claim adjustment actions and determinations. Hartford, not Educators, had the exclusive role in the handling of Plaintiff's claim and the decision to terminate her benefits that is the subject of this suit. Hartford has not renounced its defense of Plaintiff's claims to Educators; rather, as a result of the agreement, Hartford stepped into Educators' shoes for purposes of Plaintiff's claims. In light of the undisputed facts and the terms set forth in the Reinsurance Agreement, Educators' presence in this lawsuit with respect to Plaintiff's claims

---

[11] Educators' Rule 56(a)(2) Statement, ¶ 5, 6, 53.

arising out of termination of her benefits, while sustainable as a cause of action, is superfluous. Beyond these claims, Plaintiff has established no cause of action against Educators for breach associated with the "reinsurance agreement." Her claim for summary judgment against Educators should be denied.

By: /s/

Barry A. Chasnoff (ct11162)
Roberta J. Sharp (ct24407)
Jessica Spangler Taylor (ct24408)
AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.
300 Convent Street, Suite 1500
San Antonio, Texas 78205
Telephone: (210) 281-7000
Telecopier: (210) 224-2035

AND

Donald E. Frechette (ct 08930)
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103
Phone: (860) 525-5065
Facsimile: (860) 527-4198

ATTORNEYS FOR DEFENDANT
HARTFORD LIFE & ACCIDENT
INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was sent via certified mail, return receipt requested to the following attorney on the ___14th___ day of July, 2004:

Eliot B. Gersten
Gersten & Clifford
214 Main Street
Hartford, CT 06106
Phone (860) 527-7044
Facsimile (860) 527-4968

_____
ROBERTA J. SHARP
JESSICA SPANGLER TAYLOR

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| CANDI McCULLOCH Plaintiff, | § § § | CIVIL ACTION NO.: 301CV1115(AHN) |
|---|---|---|
| vs. | § § | |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY AND EDUCATORS MUTUAL LIFE INSURANCE COMPANY Defendants. | § § § § § § | July 14, 2004 |

ORDER DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

On this date, the Court considered Plaintiff's Motion for Partial Summary Judgment Against Educators. After considering Plaintiff's Motion for Partial Summary Judgment, Educators' response, and all other evidence on file, the court finds there are genuine issues of material fact and that Plaintiff has not presented evidence on all of the essential elements of her claims. Therefore, the Court DENIES the motion.

SIGNED on _____, 2004.

_____
UNITED STATES DISTRICT JUDGE