1               IN THE UNITED STATES DISTRICT COURT
                     DISTRICT OF CONNECTICUT
2                       CIVIL ACTION - LAW

3

CANDI MCCULLOCH                         :
4
            Plaintiff                   :
5
            v.                          :
6
HARTFORD LIFE and ACCIDENT INSURANCE : No. 3:01CV1115 (AHN)
7  COMPANY and EDUCATORS MUTUAL LIFE     :
   INSURANCE COMPANY                     :
8
            Defendants                  :
9

10          The deposition of KIMBERLY A. RANKIN, held
   at the Law Offices of Barley Snyder Senft & Cohen, 126 East
   King Street, Lancaster, Pennsylvania 17602-2893, on
11 Tuesday, May 13, 2003 beginning at 1:55 p.m., before DEBRA
   ROSE KEENAN, Professional Court Reporter and Notary Public.
12
   APPEARANCES:
13
                  ELIOT B. GERSTEN, ESQUIRE
14                GERSTEIN & CLIFFORD
                  214 Main Street
15                Hartford, Connecticut 06106-1881
                    Appearing on behalf of the Plaintiff
16
                  JESSICA TAYLOR, ESQUIRE
17                AKIN GUMP
                  300 Convent Street, Suite 1500
18                San Antonio, Texas 78205
                    Appearing on behalf of the Defendants
19

20                  - - - - -

21

                  KEENAN REPORTING SERVICE
22                   DEBRA ROSE KEENAN
                    87 South Grant Street
23                Manheim, Pennsylvania 17545

24



1    requesting.   It could have been a change in law to mandated

2    benefits.   It could have been something that we wanted to

3    initiate to tighten up the contract.

4         Q.    Okay.  So that if one were to get a hold of

5    PG-37 and be able to compare to it each one of the later

6    revisions, you would be able to determine what changed each

7    year, based upon the negotiations on terms and negotiations

8    on price?

9         A.    I don't believe that you will see anything

10   with regard to price in the policy form, but you would

11   definitely see any changes to the contract language in each

12   policy version.

13        Q.    Okay.  And how difficult is it for you to

14   gather those documents together?

15        A.    It would be very difficult.  We haven't been

16   in that business for years.

17        Q.    When did you go out of the business?

18        A.    In April of 1997, the American College,

19   through AG, moved the plan to New York Life.  And so we

20   were no longer actively writing professional association

21   policies.

22        Q.    And what happened to those files?

23        A.    I'm sure that there would be archive files

24   stored somewhere.  Whether or not PG-37 would still be in

1    those files, I'm not certain.  I mean, that goes back to

2    the 1970's, 1960's.  That would be beyond our record

3    retention policy.

4         Q.    Now you were involved in the negotiations of

5    this re-insurance agreement?

6         A.    Yes.

7         Q.    Did you show drafts or, strike that.  Did you

8    show form number PG-37 to anyone at Hartford prior to the

9    time the agreement was entered into?

10         A.    I'm not sure I understand your question.

11         Q.    Okay.  I'm trying to understand if there is

12    any form of PG-37 that was shown to The Hartford.

13         A.    I don't know.

14         Q.    Okay.  Well, do you know if any form of any

15    one of those policies that is listed on that schedule was

16    provided to The Hartford prior to closing?

17         A.    Not specifically I don't, no.

18         Q.    Okay.  Who would know that?

19         A.    I'm not sure if anyone at Educators would

20    know that today.

21         Q.    Okay.  And why is that?  No one is still

22    employed?

23         A.    The individual that was responsible for this

24    project, our corporate actuary, is no longer with the

1    a number of professional association groups that we had in

2    place.  We also had relationships with the Philadelphia

3    Bar, Pennsylvania Bar, and those were much smaller blocks

4    which had terminated prior to the American College of

5    Physicians plan.  So once it left, all we had left were

6    open claims through any one of those professional

7    association groups.

8        Q.      What is an open claim?  I heard that today

9    and forgot to ask about it.

10       A.      An active claim.

11       Q.      And an active claim is one that is not

12   closed?

13       A.      Correct.

14       Q.      Do you have any experience in the claim

15   handling end of the business?

16       A.      No.

17       Q.      Okay.  Now you said you assisted Mr. Burd in

18   connection with the associations with The Hartford; is that

19   a fair way to describe it?

20       A.      Yes.

21       Q.      What did you do personally?

22       A.      I worked with him to review the terms of the

23   re-insurance agreement and to negotiate and finalize the

24   contract language using our outside counsel.

1      Q.      And I'm presuming outside counsel was Barley

2  Snyder?

3      A.      No, the outside counsel used in this was

4  Morgan Lewis and Bockius, out of Philadelphia.

5      Q.      And who was it there?

6      A.      David Harbaugh.    H-A-R-B-A-U-G-H.

7      Q.      Okay.  What was the reason for a re-insurance

8  agreement being entered into, as opposed to a sale of the

9  business?

10     A.      There was no business.  There were no

11  policies.  The policies had terminated.  There were open

12  claims that we were still paying.  So we reinsured the

13  liability of those claims.

14     Q.      Those are terms of art, so forgive me if I'm

15  going to act like I'm stupid.  I don't think I am, but I

16  don't know what I'm talking about, so please forgive me.

17              What do you mean by re-insurance, the

18  liability for those claims?

19     A.      The business was, the block of claims was 100

20  percent ceded to The Hartford, meaning that they took full

21  responsibility for the liability of those claims.

22     Q.      Okay.  And then you paid them?

23     A.      There was, as part of the agreement, there

24  was a transfer of, or an amount representing the reserves

1    pages of, I guess, I just want to be able to introduce a

2    complete document, ma'am, so either your document or we can

3    add pages into what I brought with me, not really knowing

4    what the whole deal was.  Is it easier to just use your

5    copy?

6                    MS. TAYLOR:  That's fine.

7                    THE WITNESS:  You are talking about the

8    entire copy of the re-insurance agreement?

9                    MR. GERSTEN:  Correct.  Pages 126 through 155

10   as the document and I am going to ask the witness just to

11   authenticate for us.  And mark that as Exhibit Number 10.

12                    **(Plaintiff's Deposition Exhibit Number 10 was**

13                    **produced and marked for identification.)**

14   BY MR. GERSTEN:

15        Q.      Okay.  Can you identify this, ma'am, this

16   document?

17        A.      Yes.  This is the re-insurance agreement

18   between Educators Mutual Life and The Hartford.

19        Q.      Okay.  Now one thing I'd like you to do is

20   turn to page 148.

21        A.      Yes.

22        Q.      And if I understand you correctly, these are

23   all the claims that, what you have called the active

24   claims, that you have transferred to The Hartford pursuant

1    to this agreement; am I correct?

2         A.      Yes.

3         Q.      And just so that I can understand how this

4    all works, the policy number on the left there, that would

5    be the group number?

6         A.      And that refers back to that same chart we

7    just looked at.

8         Q.      That's why I asked.  Where you see five

9    columns in, it says incurred?

10        A.      Yes.

11        Q.      What would that mean?

12        A.      That would be the date the claim incurred,

13   the date the claim began.

14        Q.      Does that mean you started making payments on

15   that date, or when the Claimant came in seeking acceptance?

16        A.      I can tell you what I think it is.  I can't

17   tell you with certainty.

18        Q.      Okay.  Tell me what you think it is?

19        A.      I believe it is the date of disability.  So

20   it would not necessarily be the date that payment was first

21   made, depending on when they made the claim.  But I believe

22   it is the date that benefits started.

23        Q.      The next benefit period refers to what?

24        A.      I believe that's, for example, the first item

```
1                    C E R T I F I C A T E

2

3           I, DEBRA ROSE KEENAN, a Notary Public duly

4   commissioned and qualified in and for the Commonwealth of

5   Pennsylvania with due authority, do hereby certify that

6   KIMBERLY A. RANKIN, who was by me duly sworn to testify to

7   the truth and nothing but the truth of her knowledge

8   touching and concerning the matters in controversy in this

9   cause; that she was thereupon carefully examined upon her

10  oath and the examination reduced to writing under my

11  supervision; that the deposition is a true record of the

12  testimony given by the witness.

13           I further certify that I am neither attorney

14  nor counsel for, nor employed by any of the parties to the

15  action in which this deposition is taken, and further that

16  I am not an employee of any attorney or counsel employed by

17  the parties hereto or financially interested in the action.

18           In witness whereof, I have hereunto set my

19  hand and affixed my notarial seal this ___21st___ day of

20  May_____ of 2003.

21

22                              Debra Rose Keenan

23                              Debra Rose Keenan

24                              Notary Public
```

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
CIVIL ACTION - LAW


CANDI MCCULLOCH                          :
                                         :
        Plaintiff                        :
                                         :
        v.                               :
                                         :
HARTFORD LIFE and ACCIDENT INSURANCE : No. 3:01CV1115 (AHN)
COMPANY and EDUCATORS MUTUAL LIFE        :
INSURANCE COMPANY                        :
                                         :
        Defendants                       :


        The deposition of KIMBERLY A. RANKIN, held
at the Law Offices of Barley Snyder Senft & Cohen, 126 East
King Street, Lancaster, Pennsylvania 17602-2893, on
Tuesday, May 13, 2003 beginning at 1:55 p.m., before DEBRA
ROSE KEENAN, Professional Court Reporter and Notary Public.

APPEARANCES:

                ELIOT B. GERSTEN, ESQUIRE
                GERSTEIN & CLIFFORD
                214 Main Street
                Hartford, Connecticut 06106-1881
                  Appearing on behalf of the Plaintiff

                JESSICA TAYLOR, ESQUIRE
                AKIN GUMP
                300 Convent Street, Suite 1500
                San Antonio, Texas 78205
                  Appearing on behalf of the Defendants


                    - - - - -


              KEENAN REPORTING SERVICE
                 DEBRA ROSE KEENAN
                87 South Grant Street
              Manheim, Pennsylvania 17545

EXHIBIT
B



1    A.        That would be a function of taking the

2    monthly benefit times the life of the claim.  I mean, that

3    would depend on when the claim ended.  And that would be

4    dependent upon the person's continued disability or death,

5    or.

6    Q.        Sure.  But the reserve is what you set aside

7    for purposes of satisfying the formula required by statute

8    to satisfy that claim?

9    A.        Yes.

10   Q.        Okay.  And then am I correctly understanding

11   this, that that $8,882 figure was the one used as part of

12   the entire calculation to transfer funds to Hartford?

13   A.        Yes.

14   Q.        Okay.  So they got that $8,882 transferred?

15   A.        They got a function of that.

16   Q.        Okay.  I read the agreement, perhaps you can

17   tell me.  What is the function?

18   A.        It was my understanding that the formula

19   included three pieces.  The first piece was the total

20   amount of the entire reserve for that block of business.

21   Q.        Go slow.  So that would be the $8,882?

22   A.        No, it would be the, whatever the entire

23   amount is.

24             And I think there are pieces that you need to

1    add up.

2        Q.    All right.  Well, I'm adding this up, and it

3    says $25 million 100 --

4        A.    Yes, and then there is another $2.8 million.

5        Q.    Okay.

6        A.    And it looks like the grand total is

7    $28,489,153.

8        Q.    It's more than I had in my bank account last

9    week.

10        A.    And then I believe there was a settlement

11    amount that was agreed upon, which was approximately 94

12    percent, that was multiplied against the total reserve

13    amount.  And then there was an interest factor.

14        Q.    Okay.  So you had to pay them 94 percent of

15    $28 million, plus an interest factor that got adjusted to

16    give the final check amount of whatever the final check

17    amount was; correct?

18        A.    Yes. And then after the actual initial

19    transfer there was a period of time that passed and then a

20    trueup was done, to adjust for any other items to arrive at

21    the final figure.

22        Q.    All right.  Such as if you overpaid on a

23    particular account previously you should get credit for

24    that $1,500 monthly benefit, for example?

1      A.      That would be an example, but typically it

2  wouldn't be an overpayment.  It would be payments that

3  Educators continued to make on a claim that was transferred

4  to The Hartford.  It could be that a claim was closed out

5  before the actual transfer took place.

6      Q.      Okay.  And what do you mean by the term

7  closed out?

8      A.      Closed.

9      Q.      Okay.  So that a reserve wouldn't have to be

10 included on that?

11     A.      Correct.

12     Q.      Okay.  Now, in particular, looking at page

13 0149 of this exhibit, the next page?

14     A.      Yes.

15     Q.      Candi McCulloch, do you see her name there?

16     A.      At the bottom of the page, yes.

17     Q.      There is another column there that says 7723.

18 Do you see where it has the numbers there?

19     A.      Yes.

20     Q.      What does that mean?

21     A.      That is her certificate number.  So she was

22 group 85, certificate number 7723.

23     Q.      Okay.  Was that certificate number

24 individualized to her or would each -- do each of the

1                    C E R T I F I C A T E

2

3            I, DEBRA ROSE KEENAN, a Notary Public duly

4     commissioned and qualified in and for the Commonwealth of

5     Pennsylvania with due authority, do hereby certify that

6     KIMBERLY A. RANKIN, who was by me duly sworn to testify to

7     the truth and nothing but the truth of her knowledge

8     touching and concerning the matters in controversy in this

9     cause; that she was thereupon carefully examined upon her

10    oath and the examination reduced to writing under my

11    supervision; that the deposition is a true record of the

12    testimony given by the witness.

13            I further certify that I am neither attorney

14    nor counsel for, nor employed by any of the parties to the

15    action in which this deposition is taken, and further that

16    I am not an employee of any attorney or counsel employed by

17    the parties hereto or financially interested in the action.

18            In witness whereof, I have hereunto set my

19    hand and affixed my notarial seal this ___21st___ day of

20    May____ of 2003.

21

22                    Debra Rose Keenan

23                    Debra Rose Keenan

24                    Notary Public

McCulloch vs Hartford Life

7/28/2003                                              Pamela M. Mormino

Page 1

```
 1                  UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
 2                        (BRIDGEPORT)
 3
 4                                       COPY
                          )
 5    CANDI McCULLOCH,     )
                Plaintiff  )
 6                         )    Civil Action No:
      Vs.                  )    301CV1115 (AHN)
 7                         )
      HARTFORD LIFE AND ACCIDENT )
 8    INSURANCE COMPANY and )
      EDUCATORS MUTUAL LIFE )
 9    INSURANCE COMPANY,    )
                Defendant   )
10                         )
11
12
              Deposition of PAMELA M. MORMINO, taken
13    before Judith L. Kline, Certified Shorthand
      Reporter/Notary Public in and for the State of
14    Connecticut, pursuant to notice, at the law offices of
      Gersten & Clifford, 214 Main Street, Hartford,
15    Connecticut, on July 28, 2003 at approximately 9:05
      a.m.
16
17    APPEARANCES:
18    FOR THE PLAINTIFF:
            ELIOT B. GERSTEN, ESQUIRE
19          GERSTEN & CLIFFORD
            214 Main Street
20          Hartford, CT 06106
21    FOR THE DEFENDANTS:
            ROBERTA JILL SHARP, ESQUIRE
22          AKIN, GUMP, STRAUSS, HAUER & FELD, LLP
            300 Convent Street
23          Suite 1500
            San Antonio, TX 78205
24
                                       EXHIBIT
25    ALSO PRESENT:                        C
            Jeffery Apuzzo, Esquire
            Candi McCulloch
```

ca337c4d-8692-4f4f-ba9f-42c749d62989

McCulloch vs Hartford Life

Page 47

1   that -- again, there's that assume word.  I do think

2   that information is kept, but I'm not privy to that.

3      Q    Okay.  Who keeps that kind of information?

4      A    The actuarial accounting area.  I don't know

5   exactly what reports they do keep, what data they do

6   keep, and how long they keep it.  But that would be

7   who I would go, to find out if it was available.

8      Q    Okay.  And by the way, you've indicated to it

9   as being a buy out of claims.

10     A    Uh-huh.

11     Q    Are you referring to the so-called reinsurance

12  agreement between Employer's and The Hartford; am I

13  correct?

14          MS. SHARP:   You said Employer's.  You mean

15  Educator's?

16          MR. GERSTEN:  Educator's.  Sorry.  I did it

17  again. I apologize.  Thanks for the clarification.

18          THE WITNESS:   In this particular instance,

19  yes.

20     Q    (By Mr. Gersten)  And when you say a buy out of

21  claims, are you aware that The Hartford was actually

22  paid money to take over the claims?

23     A    Yes.

24     Q    And how much money was The Hartford paid?

25     A    I don't know for sure.  I think it was in the

ca337c4d-8692-4f4f-ba9f-42c749d62989

McCulloch vs Hartford Life

Pamela M. Mormino

Page 48

1    -- I believe it was around 25 million, but I don't

2    know for sure what the exact number was.

3        Q    Okay.  Do you know how that number was arrived

4    at?

5        A    By evaluating the claims that were given to us.

6    And, in part, by the due diligence that we performed

7    on the Educator's business prior to the sale.

8        Q    Okay.  All right.  Is there any information

9    that -- you used the term evaluation of claims.

10            If I wanted to find out what The Hartford

11   currently considered the evaluation of the claims are

12   for this book of business, what would I have to look

13   for?

14       A    Can you rephrase that?

15       Q    Sure.  You used the term evaluation of claims.

16       A    Uh-huh.

17       Q    So I'm trying to find out if there's

18   information you could find, about the evaluation of

19   the claims contained in Exhibit 109 currently?

20       A    I would go to our accountant if I wanted -- the

21   aggregate information?

22       Q    Uh-huh.

23       A    I would go to Jason.

24       Q    Okay.  And what is it you would ask Jason?

25       A    I believe we already discussed this.  I would

ca337c4d-8692-4f4f-ba9f-42c749d62989

McCulloch vs Hartford Life

7/28/2003                                                    Pamela M. Mormino

Page 231

1                    STATE OF CONNECTICUT
2
          I, Judith L. Kline, a Notary Public duly
3    commissioned and qualified in and for the State of
     Connecticut, do hereby certify that pursuant to notice
4    there came before me on the 28th day of July, 2003 the
     following named person, to wit: PAMELA M. MORMINO, who
5    was by me duly sworn to testify to the truth and
     nothing but the truth; that she was thereupon
6    carefully examined upon her oath and her examination
     reduced to print under my supervision; that this
7    deposition is a true record of the testimony given by
     the witness.
8
          I further certify that I am neither
9    attorney nor counsel for, not related to, nor employed
     by any of the parties to the action in which this
10·  deposition was taken.  And further that I am not a
     relative or employee of any attorney or counsel
11   employed by the parties hereto, or financially
     interested in this action.
12
          IN WITNESS THEREOF, I have hereunto set my
13   hand and affixed my seal this 4th day of August, 2003.
14
15
16
17
18
19                    _Judith L. Kline_
          Judith L. Kline, CSR No. 014
20        Court Reporter/Notary Public
          Connecticut License No. 00090
21
22
     My Commission Expires:
23   November 30, 2006
24
25

ca337c4d-8692-4f4f-ba9f-42c749d62989



**THE HARTFORD**

IME/FCE
2 August, 2000
Joseph R. Sterle III, RN, CCRN, FCLA/WCLA
P.O. Box 2999
Hartford, CT  06104-2999
Tel: 860-843-4747
Fax: 860-392-6280

Asha Garg, M.D.
Vernon Medical Center
10 Winthrop Street
Worchester, MA  01604

RE:      Candi McCulloch
Claim #:   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
Account:  Hartford Life Insurance Company

Dear Dr. Garg,

This is to confirm that an appointment for a Functional Capacities Evaluation and Independent Medical Evaluation has been scheduled on the above named claimant for Monday, August 14th, 2000 at 1:00 pm. *Please require picture I.D. verification prior to starting the exam.*

When writing your report, please address your report to the insurance company: Hartford Life Insurance Company. Please enclose your original bill with your report. Notify my office immediately should there be any delay in forwarding the report.

I am requesting your opinion as to whether the claimant demonstrates a functional capacity that would reasonably allow them to function as a physician in the capacity of an Internist (clinic only, no surgical requirements) at 16 hrs a week, and as Director/Administrator for a women's clinic at 30 hrs a week. What are the claimant's specific limitations and abilities. What other ongoing rehabilitative treatment do you suggest. Are there any signs of symptom magnification or sub-maximal effort.  As agreed, a $150.00 Prepayment has been sent to your office under separate cover.

Any medical records that we have obtained will be forwarded to your office. This office prior to changes must confirm revisions or changes. *Please do not re-schedule with the claimant or attorney directly. As an independent examiner, no follow-up treatment will be rendered.*

Sincerely,

Joseph R. Sterle III, RN, CCRN, FCLA/WCLA
Disability Case Manager
Hartford Life Insurance Company

H 2662

Hartford Life Insurance Companies
Life & Disability Claim Office
200 Great Pond Drive
Windsor, CT 06095

Mailing Address: P.O. Box 2999
Hartford, CT 06104-2999
Toll Free 800 359 8391
Facsimile 800 843 4716



EXHIBIT
D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

CANDI McCULLOCH,                    )
                                    )
            Plaintiff,              )    CIVIL ACTION FILE
                                    )
        -vs-                        )    NO. 301CV1115 (AHN)
                                    )
HARTFORD LIFE AND ACCIDENT)
INSURANCE COMPANY and               )
EDUCATORS MUTUAL LIFE               )
INSURANCE COMPANY,                  )
                                    )
            Defendants.             )


                    - - -


        Deposition of JOSEPH L. STERLE,

    taken on behalf of the Plaintiff, in

    accordance with the Federal Rules of Civil

    Procedure, before Susan M. Shaw, Certified

    Court Reporter, at 4550 North Point

    Parkway, Alpharetta, Georgia, on the 15th

    day of August 2003, commencing at the hour

    of 12:05 p.m.

    ------------------------------------------------

                REGENCY-BRENTANO, INC.

            Certified Court Reporters

                    Suite 140

                13 Corporate Square

            Atlanta, Georgia  30329

                (404) 321-3333

EXHIBIT
E

```
 1          Q     Okay.  Now, looking at Dr. Garg's report,

 2   Exhibit 21; right?

 3          A     Yes, sir.

 4          Q     If I understand your previous testimony,

 5   you had received a draft of this report; correct?

 6          A     Correct.

 7          Q     And you made comments on it?

 8          A     Okay.

 9          Q     Is that correct?

10          A     I'm not sure what you mean by made

11   comments on it.

12          Q     Well --

13          A     Are you talking about my phone call back

14   to Dr. Garg's office?

15          Q     That's correct.

16          A     Yes, sir.

17          Q     And you found some typographical

18   corrections to make?

19          A     Correct.

20          Q     Do you know what portions of this report

21   had typographical errors in it?

22          A     No, I don't.

23          Q     And then you requested a formal FCE

24   opinion; correct?

25          A     I requested that he give me the
```

1    information I requested, yes.

2        Q      And what portion of this report was the

3    portion in the FCE that wasn't on the draft report?

4        A      There is the IME report and looks like a

5    summation of a functional capacity evaluation.   No

6    actual report.

7        Q      What does that mean?

8        A      That would be what I would be looking for

9    is the actual functional limitations, the actual

10   report.

11       Q      Okay.  So did you or did you not get an

12   actual functional report?

13       A      By the time I left, I had not received the

14   formal report.

15       Q      Okay.  So the last page of Exhibit 21

16   that's entitled a summary, do you see that?

17       A      Right.

18       Q      That is not the report that you were

19   looking for?

20       A      No, this would be a summary of the five to

21   ten pages report that I would be expecting from the

22   FCE.

23       Q      And when you said you would be expecting a

24   five to ten pages report, what's the kind of

25   information that would be in that report?

```
 1                C E R T I F I C A T E

 2    G E O R G I A:

 3    DEKALB COUNTY:

 4

 5           I hereby certify that the foregoing

 6        transcript was taken down, as stated in the

 7        caption, and the questions and answers thereto

 8        were reduced to typewriting under my direction;

 9        that the foregoing pages 1 through 188

10        represent a true and correct transcript of the

11        evidence given upon said hearing, and I further

12        certify that I am not of kin or counsel to the

13        parties in the case; am not in the regular

14        employ of counsel for any of said parties; nor

15        am I in anywise interested in the result of

16        said case.

17             This, the 4th day of September 2003.

18

19

20                              _____

21                              SUSAN M. SHAW,
                                CCR-B-1037
22

23

24

25
```

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CANDI McCULLOCH,                          :    CIVIL ACTION NO.: 301CV1115(AHN)
          Plaintiff,                       :
                                           :
vs.                                        :
                                           :
HARTFORD LIFE AND ACCIDENT                 :
INSURANCE COMPANY and EDUCATORS            :
MUTUAL LIFE INSURANCE COMPANY              :
          Defendants.                      :    DECEMBER 6, 2002

## PLAINTIFF'S INTERROGATORIES
## AND REQUESTS FOR PRODUCTION

Pursuant to Fed. R. Civ. P. 33 and 34, Plaintiff Candi McCulloch hereby requests that the

Defendant, Educators Mutual Life Insurance Company, answer the Interrogatories and Requests for

Production set forth herein, separately, fully, in writing and under oath within thirty days (January

2, 2003).

## DEFINITIONS

As used in these interrogatories and production requests, the terms listed below are defined

as follows:

1.      The terms "you" and "your" mean the entity to which these interrogatories are

addressed, including any divisions, departments, subsidiaries, affiliates, or predecessors, present or

former officers, directors, employees, owners or agents of each such entity and all other persons

acting or purporting to act on behalf of each such entity or person, as well as each partnership in

which that entity or person is a partner.

2.      The term "document" means all writings of any kind, including the originals and

identical copies, whether different from the originals by reason of any notation made on such copies

or otherwise including, without limitation correspondence, memoranda, notes, diaries, studies,



checks, statements, receipts, returns, summaries, pamphlets, books, prospectuses, interoffice and intra office communications (including email messages), offers, notations of any sort of conversations, telephone calls, meetings or other communications, bulletins, printed matter, computer printouts, teletypes, telefaxes, invoices, work sheets, and all drafts, alterations, modifications, changes and amendments of any of the foregoing, graphic or aural records of representations of any kind (including, without limitation, tapes, cassettes, discs, recordings).

3.     The term "all documents" means every document as above defined known to you and every such document which can be located or discovered by reasonably diligent efforts.

4.     The term "person" means any natural person, corporation, partnership, proprietorship, association, organization, team, or group of natural persons.

5.     The term "identify," when used in reference to a natural person, means to state to the fullest extent possible his or her full name, present or last known address, business address, occupation and position at the time in question.

6.     The term "identify," when used in reference to any person other than a natural person means to state to the fullest extent possible the full name and present or last known address of the principal place of business of the corporation, partnership, proprietorship, association or other organization to be identified.

7.     The term "identify" when used in reference to a document, means to state the date, author and type of document (e.g., letter, memorandum, telegram, chart, etc.), or to provide some other means of identifying it, and to disclose its present location and custodian. If any document was but is no longer in your possession or subject to your control, state what disposition was made of it.

8.     The terms "describe" and "state" shall mean to describe and/or state fully by reference

to underlying facts rather than by alternate facts or conclusions of fact or law, and particularized as to time, place, and manner.

9.    The term "describe" when referring to oral communications, requires you to state: (a) the type of communication (<u>e.g.</u>, meeting, telephone conversation, etc.); (b) the identity of the persons involved in the communication, present during it or who listened to it; and (c) the location and date of the communications.

10.    The terms "regard," "concern," "mention," "refer to," or "relate to" with regard to any given subject matter shall mean all material that constitutes, contains, embodies, reflects, identifies, states, or in any way deals with that subject, including, without limitation, documents which relate to the preparation of another document or are attached to or constitute enclosures with another document.

11.    The term "McCulloch" refers to the plaintiff Candi McCulloch. The term "Hartford" refers to defendant Hartford Life and Accident Insurance Company. The term "Educators" refers to Educators Mutual Life Insurance Company.

12.    The term "Policy" refers to the group disability insurance policy issued by defendant Educators and attached as Exhibit A to the plaintiff's complaint.

13.    The term "Reinsurance Agreement" refers to the Reinsurance Agreement dated July 1, 1999.

14.    The relevant time period for purposes of answering these interrogatories shall be from September 1995 to present.

## INSTRUCTIONS

A.     The rules of construction set forth in Rule 39 of the Local Rules of Civil Procedure of the United States District Court for the District of Connecticut are incorporated herein by reference.

B.     If you are unable to respond to or comply with any interrogatory completely, respond to the extent possible.

C.     With respect to each interrogatory, the disclosure Plaintiff seeks is all information known to you, or available to you by reasonably diligent efforts, including without limitation all information which is in your files (whether personal, business, or any other file), possession, custody or control or those of your present or former attorneys, advisors, accountants, agents, representatives, directors, officers, or employees.

D.     With respect to any information sought in an interrogatory which is withheld on the basis of privilege, state the grounds on which the privilege is claimed.

E.     Unless otherwise indicated, these interrogatories refer to the times, places, events, and occurrences mentioned and/or complained of in the Amended Complaint.

## INTERROGATORIES

1.     State the name, address, and position of all persons who provided information for answering these interrogatories.

**ANSWER**

-4-

2.      Identify any file (local, regional and home office), including all documents, regarding the processing, payment and/or denial of plaintiff's claim.

**ANSWER**

3.      Identify any and all medical reports of the plaintiff obtained by Educators.

**ANSWER**

4.      Identify any and all investigative reports of the plaintiff.

**ANSWER**

5.    Identify any and all underwriting manuals used by Educators.

**ANSWER**

6.    Identify any and all manuals used to train adjustors.

**ANSWER**

7.    Identify any and all advertising or marketing materials concerning the policy purchased by plaintiff.

**ANSWER**

8.      Identify any and all training materials for use by any agent to teach how to advertise, promote or sell the policy purchased by the plaintiff.

**ANSWER**

9.      Identify any and all transmittals by Educators and Hartford relating to the Reinsurance Agreement of July 1, 1999, including any communications on the transmittal of funds exchanged between Educators and Hartford and any reporting on the status of claims set forth in the Reinsurance Agreement.

**ANSWER**

10.     Identify any claims manuals used by Educators during the time period of January, 1992 through September, 1999.

**ANSWER**

## REQUESTS FOR PRODUCTION

If you contend that any requested document is privileged or otherwise not subject to discovery, please identify the document (including the author, date, addressee, and intended recipient) and state in your response to the request the basis for such contention and the grounds upon which you contend the document is not subject to discovery. With respect to the documents for which you claim the attorney-client privilege or protection of the work product doctrine, please also identify or state (a) the attorney and the client; (b) the complete bases for every claim of privilege; (c) the complete basis for every claim that the document contains the mental impression, conclusion, opinion or legal theory of any attorney concerning the litigation or that such material was prepared in anticipation of litigation, the identity of such attorney and the litigation for which the document was prepared; (d) all persons who received a copy of the document; and (e) all persons to whom the substance of the document has been disclosed, in whole or in part, at any time.

Furthermore, please identify all documents responsive to any request which are no longer in existence or which are no longer in your possession and describe the circumstances under which such documents were destroyed or left your possession, and identify all persons or locations from which copies of the documents might be obtained.

1.    Any and all documents identified in response to the third set of interrogatories not already produced.

PLAINTIFF,
CANDI McCULLOCH

By: _____

Eliot B. Gersten (ct05321)
Gersten & Clifford
214 Main Street
Hartford, CT 06106
(860) 527-7044
Her Attorney

## __CERTIFICATION__

I hereby certify that I have reviewed the foregoing Interrogatories and responses thereto and

verify that they are true and accurate to the best of my knowledge and belief this _____ day of

_____, 2002.

### Educators Mutual Life Insurance Company

By: _____

Its:
Duly Authorized

STATE OF                          :
                                        :      ss:
COUNTY OF                     :

On this _____ day of _____, 2002, before me the undersigned officer, personally

appeared _____, who acknowledged himself/herself to be the _____

of Educators Mutual Life Insurance Company, and that he/she as such officer, being duly authorized

so to do, executed the foregoing instrument for the purposes therein contained.

**IN WITNESS WHEREOF**, I hereunto set my hand.

_____

Commissioner of the Superior Court
Notary Public
My Commission Expires: _____

-10-

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2002, a copy of the foregoing was mailed, via first class mail, postage prepaid to the following:

Donald E. Frechette, Esq. (ct 08930)
Charles F. Gfeller, Esq. (ct18119)
Joshua L. Milrad, Esq. (ct19321)
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103
Phone (860) 525-5065
Facsimile (860) 527-4198

Keith D. Post, Esq.
Gallwey Gillman Curtis & Vento, P.A..E.
200 S.E. First Street, #1100
Miami, FL 33131
Tel: (305) 358-1313
Fax: (305) 371-5826

_____
Eliot B. Gersten

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT
## (BRIDGEPORT)

| | |
|---|---|
| CANDI McCULLOCH<br>Plaintiff,<br><br>vs.<br><br>HARTFORD LIFE AND ACCIDENT<br>INSURANCE COMPANY, and EDUCATORS<br>MUTUAL LIFE INSURANCE COMPANY<br>Defendants. | : CIVIL ACTION NO. 301CV1115(AHN)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: APRIL 15, 2003 |

### NOTICE OF DEPOSITION

**PLEASE TAKE NOTICE THAT**, pursuant to Rule 30 (b) (6) of the Federal Rules of Civil Procedure, the Plaintiff will take the deposition, upon oral examination, of the **corporate representative(s) of the defendant Educators Mutual Life Insurance Company**, designated by the defendant as the individual(s) most knowledgeable to testify in the above-referenced matter on its behalf, on **Tuesday, May 13, 2003** at **10:00 a.m.** at the law offices of Gersten & Clifford, or such other place that the parties can agree on, before a court reporter or other authority competent to administer an oath. This deposition is being taken for the purpose of discovery or for use at trial (or both), or for such purposes as are permitted under the Federal Rules of Civil Procedure. The corporate representative(s) should be someone knowledgeable with respect to:

1)      the defendant's disability insurance file and records of plaintiff Candi McCulloch;

2)      the negotiation and execution of the reinsurance agreement signed in July, 1999 between the defendants, including the selection of claimants subject to the agreement;

3)      claims handling procedures in effect between 1994 to 2000;



4)    approval of the plaintiff's claim between 1994 through 2000, and any investigation of the plaintiff's claim;

5)    advertising or marketing procedures concerning the policy purchased by plaintiff;

6)    procedures in place during the time period of 1992 to 1996 for advertising , promoting or otherwise selling the policy purchased by the plaintiff; and

7)    the relationship between this defendant and the American College of Physicians.

The deponent should bring with him/her/ them any documents in possession or control of the defendant relating to any of the above topics.

You are invited to attend and cross-examine.


                                    PLAINTIFF,
                                    CANDI McCULLOCH


                    By          _____
                                    Eliot B. Gersten, Esq.
                                    Fed. Bar No. ct05213
                                    GERSTEN & CLIFFORD
                                    214 Main Street
                                    Hartford, CT 06106
                                    (860) 527-7044
                                    Her Attorney

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Notice of Deposition was mailed, **via certified mail, return receipt requested**, on April 15, 2003, 2002 to all counsel and pro se parties of record, as follows:

Roberta J. Sharp, Esq.
Barry A. Chasnoff, Esq.
Jessica Spangler Taylor, Esq.
Akin Gump Strauss Hauer & Feld, LLP
300 Convent Street, Suite 1500
San Antonio, TX 78205
*Tel: 210-281-7146*
*Fax: 210-224-2035*

*Via first class mail only:*

Donald E. Frechette, Esq
Joshua L. Milrad, Esq.
Charles F. Gfeller, Esq.
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103
*Tel: (860) 525-5065*
*Fax: (860) 527-4198*

Eliot B. Gersten