UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CANDI McCULLOCH | : CIVIL ACTION NO.<br>: 301CV1115(AHN) |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| HARTFORD LIFE AND ACCIDENT | : |
| INSURANCE COMPANY AND EDUCATORS | : |
| MUTUAL LIFE INSURANCE COMPANY | : |
| Defendants. | : July 28, 2004 |

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
HER MOTION FOR SUMMARY JUDGMENT

**INTRODUCTION**

Educators' opposition to plaintiff's motion for summary judgment discloses that, as a matter of undisputed fact, Educators (1) delegated unfettered authority to unilaterally terminate plaintiff's disability benefits to a self-interested third party administrator; (2) improperly abdicated its role as plaintiff's insurer both before and after plaintiff initiated this litigation; (3) abandoned its legal obligations to plaintiff in this action by baldly mischaracterizing its agreement with defendant Hartford Life and Accident Insurance Company ("Hartford"); and (4) intentionally misled plaintiff regarding its contract with Hartford and attempted to conceal that agreement from plaintiff.[1] As a matter of law, Educators breached its contract and acted in bad faith to the detriment and injury of plaintiff.

---

[1] Plaintiff's accompanying reply to the statement of material facts pursuant to Local Rule 56 sets forth several grounds upon which the court can make findings of fact pursuant to Rule 56(e) based either on Educators' admissions, lack of response, or failure to otherwise comply with Local Rule 56. Securities and Exch. Comm'n v. Global Telecom Services LLC, Civ. No. 3:03cv418, Slip. Op. at pp.13-14 (July 2004) (Dorsey, J.); Shoaf v. Matteo, 100 F.Supp.2d 114, 117 (D.Conn. 2000) (Eginton, J.); Soares v. University of New Haven, Civ. No. 3:99cv1107 (JBA) (D.Conn. August 16, 2001).

**ARGUMENT**

    **A.    EDUCATORS BREACHED ITS OBLIGATIONS TO PLAINTIFF AS A MATTER OF UNDISPUTED FACT AND LAW**

        **1. It is Undisputed That Educators Delegated Authority to Administer Plaintiff's Claim to a Self-Interested Entity; As A Matter of Law, This Violated Educators' Obligation of Good Faith**

Educators has not refuted that it had a contractual obligation to administer plaintiff's claim reasonably and in good faith and to refrain from taking any action that would injure plaintiff's right to receive reasonable and good faith claim administration. See, Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment ("Pl. Br."), pp.10-12; Educators' Opposition to Motion for Summary Judgment ("Educ. Br."), pp.7-8.[2] Educators has also not refuted that, as a matter of law, granting a third party unfettered authority to terminate plaintiff's claim, along with a financial incentive to do so, would violate Educators' duty to refrain from doing anything to injure plaintiff's right to receive fair, good faith claim administration. Id. Nor could Educators refute this when the legislature of at least thirty states have expressly prohibited such agreements between insurers and third party administrators. See, Pl. Br., p.12, fn.6 (citing statutes).

Educators has admitted that it gave Hartford, its claim administrator, authority to terminate plaintiff's claim in addition to providing Hartford a material financial incentive to do so. See Plaintiff's Local Rule 56(a)(1) Statement ("Pl. Stmt."), ¶¶ 7-9, 12; Educators' Local Rule 56(a)(2) Statement ("Educ. Stmt."), ¶¶ 7-9, 12. Moreover, Hartford has admitted that, pursuant to its agreement with Educators, Hartford's income is contingent on claim experience. Hartford's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, pp.8-9 ("Hartford will not know whether it

---

[2] Instead, Educators asserts that "Plaintiff has identified no term of the policy . . . that Educators breached." Educ. Br., p.7. This claim is specious. See Pl. Br., p.10.

'profited' from the Reinsurance Agreement until the last benefit payment to a claimant in the pool.")[3]

Instead, Educators' incredulously asserts that "Hartford's 'financial interest' in Plaintiff's claim was no different than Educators' financial interest." Educ. Stmt., ¶ 12; Educ. Br., p.11. This assertion does nothing to help Educators and is conclusory. First, this statement, which Educators has not supported with citation to any evidence, is nothing more than hype.[4] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986); Shoaf v. Matteo, 100 F.Supp.2d 114, 117 (D.Conn. 2000) (Eginton, J.)  Second, Hartford's financial interest in the disposition of plaintiff's claim was dramatically different from Educators'.  While Educators, like any insurer, may have had a motivation to terminate plaintiff's claim to **save** itself from paying an indeterminate amount of benefits in the future, if Hartford terminated plaintiff's claim it would instantly earn over one million dollars.  Finally, even if, as Educators contends, Educators granted Hartford, as its administrator, the same interest in terminating plaintiff's' claim that Educators had, this grant is against public policy and materially impaired plaintiff's interest in fair claim administration, as evidenced by numerous statutes that prohibit such agreements.[5]

---

[3] These admissions by Educators and Hartford render Educators' dispute regarding the precise of amount of money it transferred to Hartford, and whether Hartford was entitled to release these funds "to its own use" ((Educ. Stmt., ¶ 9), immaterial.  Educators admits that it transferred 93.3% of the $1,294,206 in reserves (this is in excess of $1 million dollars) associated with plaintiff's claim to Hartford (Id.) and the Agreement prevented Educators from "recapturing" these funds when Hartford terminated plaintiff's claim. Pl. Opp. Ex. B(1), §2.1.2.

[4] Educators has not presented any evidence, nor could it, that after plaintiff's claim for benefits was accepted, a third party gave it over $1 million dollars and allowed it to keep that money if it terminated plaintiff's benefits, as Educators did with Hartford. Pl. Stmt., ¶ 9; Educ. Stmt., ¶ 9; Pl. Reply to Educ. Stmt., ¶ 9.

[5] There is a rational basis to distinguish between an insurer's financial interest in terminating benefits based on potential savings affected, and agreements wherein the insurer renders the income of a third party administrator's contingent on claim experience. At the time an insurer decides to reject or terminate a disability claim, the insurer does not know how long the claimant will otherwise continue to qualify for

3

Finally, Educators' breach of its obligation of good faith was "not prompted by an honest mistake as to [Educators'] rights or duties." <u>Buchman v. People Express, Inc.</u>, 205 Conn. 166, 171, 530 A.2d 596 (1987). It was prompted by Educators' admitted desire to abandon all responsibility to its disability claimants. (Def. Stmt., ¶ 5) without subjecting itself to the regulatory oversight and consent of the insureds that would have attended an assignment of its obligations to Hartford. Def. Stmt., ¶ 6.[6] In doing so, Educators evidenced a patent intention to disregard the interests of disabled claimants based on Hartford's assurance that it would indemnify Educators for any resulting liability. Def. Stmt., ¶ 8. This conduct is repugnant and is nothing more than placing financial gain over Educator's legal obligations to its disabled claimants. Accordingly, as a matter of undisputed fact and law, Educators violated the covenant of good faith inherent in its contractual obligation to administer plaintiff's claim.

---

benefits and thus does not know what amount it will save by terminating the claim. Thus, the benefits of terminating a claim without sufficient supporting evidence are less likely to outweigh the potential cost of litigation. By contrast, if Hartford or another third party administrator terminates a claim pursuant to an agreement that sets forth its compensation in the event of termination, the administrator can determine that the benefit of termination, even without sufficient evidence, outweighs the potential cost of litigation. For example, in this case, Hartford knew that the benefits of terminating plaintiff's claim, over $1 million dollars, would most likely outweigh the potential cost of litigation.

[6] Educators admits that, under the agreement, plaintiff's policy remained "written on Educators' paper (Educ. Br., pp.3-4, Educ. Stmt., ¶ 6) and that it would have been required to seek the consent of the insurance commissioners if Hartford had assumed Educators' "paper." Educ. Stmt., ¶¶ 6, 37; Educ. Br., pp.3-4; <u>See</u> e.g. 31 Pa. Code § 90i.3 (requiring that insurer that assumes the "liability and obligations" of another insurer to disclose this fact to the insureds and to issue a new certificate of insurance.); C.G.S. § 38a-66(b) (requiring reinsurer to issue certificate evidencing "assumption of liability."). Educators' contention that "there were no policies" and that "plaintiff was not 'insured' with Educators after April 1997" (Educ. Stmt., ¶¶ 5, 6) and that the reinsurance agreement was not actually a reinsurance agreement (Educ. Br., p.3), is absurd. This contention cannot be reconciled with Educators' attempt to enforce the terms of this purportedly non-existent insurance policy. Educ. Stmt., ¶¶ 44-51; Educ. Br., pp.2-3, 11. The contention that plaintiff was no longer insured by Educators after 1997 is also contrary to Educators' representation to plaintiff in August 1999 that her rights under her Certificate of Insurance remained unchanged. Pl. Stmt., ¶ 10. According to Educators' argument, the policy is in full force and effect only to the extent it protects Educators' interests, and is non-existent where this would protect plaintiff's interests – this is unsupported and unsupportable by any evidence or authority.

2.  **It Is Undisputed That Educators Abdicated Its Role As Plaintiff's Insurer Both Prior To and After This Litigation; As A Matter of Law, This Violated Educators' Contract and the Obligation of Good Faith**

Educators has also admitted that, even though the agreement was for third party administrative services, it treated the agreement with Hartford as a "sale" of plaintiff's claim, after which it had, and exercised, no responsibility to plaintiff. Educ. Stmt., ¶¶ 7-8, 13, 34-36. Educators argues that this did not violate its contractual and good faith obligation to plaintiff because, even though plaintiff purchased and paid for disability insurance from Educators (Educ. Stmt., ¶ 1)[7], it was "patently unreasonable" for plaintiff to expect that Educators would actually take responsibility for, and participate in, the administration of her claim. Educ. Br., pp.7-8. This argument is specious.

Plaintiff's insurance policy gave rise to a reasonable expectation that Educators would administer and pay plaintiff's claim in good faith in the event that she became disabled Uberti v. Lincoln Nat'l Life Ins. Co., 144 F.Supp.2d 90 (D.Conn. 2001); Coventry v. American States Ins. Co., supra at 282-283, 961 P.2d 933 (1998) citing, William M. Shernoff et al., Insurance Bad Faith Litigation § 3.04[5], at 3-26 (1991). Educators' admittedly complete *abdication* (not mere delegation) of its responsibilities to a different insurer was a clear violation of its contractual obligation and plaintiff's reasonable expectation when she purchased insurance from Educators. Educ. Stmt., ¶¶ 35, 36, 43 (claiming the Agreement precluded Educators from reversing, or even reviewing, Hartford's decision to terminate plaintiff's benefits); American F. & C. v. Penn. T. & F.M. Cas. Ins., 280 F.2d 453 (5th Cir. 1960) (An insurer cannot simply step

---

[7] Educators' claim that plaintiff did not participate in the "selection" of Educators as her insurance company overlooks the evidence. Plaintiff selected Educators as her disability insurer when she chose to participate in the group insurance plan that Educators offered to her and paid premiums for that insurance. Pl. Stmt., ¶ 1.

aside, abdicate its role, and "impose upon its assured a company unknown and unrelated to the assured.")[8]

> In the absence of any conduct by the insurance carrier that is inconsistent with, or is clearly indicative of a repudiation of, its contractual rights, the insured is justified in believing the insurer is vigorously exercising these rights in a manner which will fully protect the insured's interest under the policy. The insurance policy itself, with the implied but compelling fiduciary duty to deal fairly, effectively and in good faith with the insured, generates this reasonable expectation.

Griggs v. Bertram, 88 N.J. 347, 361-362, 443 A.2d 163 (N.J. 1982). Accordingly, as a matter of undisputed fact and law, Educators breached its contractual obligation to administer plaintiff's claim and the implied covenant of good faith inherent in that obligation to plaintiff.[9]

Further, Educators breach of its obligation of good faith was "not prompted by an honest mistake as to [Educators'] rights or duties." Buchman v. People Express, Inc., 205 Conn. 166, 171, 530 A.2d 596 (1987). Educators now admits, as it must, that, pursuant to the plain terms of the agreement with Hartford, Educators it did not assign plaintiff's claim to Hartford and Educators remained ultimately responsible for the proper administration of plaintiff's claim. Educ. Br., pp.3-4. Under these circumstances, Educators' repudiation and abdication of its responsibilities to plaintiff, and treatment of

---

[8] See also Holland v. Fahnestock & Co., Inc., 210 F.R.D. 487 (S.D.N.Y. 2002), quoting, J. Calamari & J. Perillo, The Law of Contracts § 18-25 ("[d]elegation . . . does not free the obligor-delegant from his duty to see to it that performance is rendered . . ."); Contemporary Mission v. Famous Music Corp., 557 F.2d 918, 924 (2nd Cir. 1977) (same); Gateway Co. v. DiNoia, 232 Conn. 223, 233, 654 A.2d 342 (1995) (same)

[9] The only authority that Educators cites to support the novel proposition that it is unreasonable for an insured to expect that her insurer will participate, at least in *some* fashion, in the administration of her claim, Franco v. Yale Univ., 238 F.Supp.2d 449 (D.Conn. 2002), has absolutely no bearing on this case. That case involved a claim by an employee that his employer breached the covenant of good faith in the employment contract. The obligation of good faith imposed on an employer is not comparable to the obligation imposed on an insurer. Carbone v. Atlantic Richfield Co., 204 Conn. 460, 470, 528 A.2d 1137 (1987) (to establish employer's breach of covenant of good faith, employee must show an impropriety that contravenes an important public policy). In Franco, the plaintiff failed to even establish the existence of a contract. Id., at 445. Here, there is no dispute that Educators was contractually bound to administer and pay plaintiff's claim. Pl. Stmt., ¶¶ 1-2; Educ. Stmt., ¶¶ 1-2.

the agreement as a "sale" of claims, establishes Educators' bad faith. See e.g. United Technologies v. American Home Assur. Co., 118 F.Supp.2d 174, 177-178 (D.Conn. 2000) (insurer's "design to injure" for purposes of punitive damage award was established by insurer's abdication of its role as insurer.)[10]

### 3. It Is Undisputed That Educators Wrongfully Repudiated Its Legal Responsibility In This Action; As A Matter of Law, This Violated Educators' Contract and the Obligation of Good Faith

When Educators accepted plaintiff's application for insurance coverage and issued her certificate of insurance, Educators accepted not only the obligation to administer plaintiff's claim and pay her benefits if she became disabled, but the corresponding legal responsibility for a breach of this obligation; Educators expressly acknowledged this obligation when it entered the Agreement with Hartford, which provided that Educators would be and remain solely liable to the claimants. Pl. Stmt., ¶ 8; Educ. Stmt., ¶ 8.

It is now unequivocally undisputed that Educators' attempt to repudiate its legal responsibility to plaintiff as her insurer in its Motion for Summary Judgment in this action, based on its purported "sale" and "assignment" of all liability to Hartford, was without an iota of legal or factual merit. Educators now admits that, directly contrary to its claims in its pending Motion for Summary Judgment, "[p]laintiff has the right to sue Educators for breach of the policy terms." Compare: Educ. Br., p.11; pp.14-15 ("in light of the undisputed terms set forth in the Reinsurance Agreement . . . Plaintiff's claims arising out of the termination of her benefits" **is** a "sustainable as a cause of action"

---

[10] The standard applied to awards for punitive damages is higher than that required to establish a breach of the covenant of good faith and fair dealing. See Uberti v. Lincoln Nat'l Life Ins. Co., 144 F.Supp.2d 90 (D.Conn. 2001) (finding that insurer breached covenant of good faith but that evidence was insufficient to warrant award of punitive damages.)

7

against Educators); Educ. Br., p.4 (admitting that the Agreement "preserved all of Plaintiff's contractual rights."); with, Educators' Memorandum of Law in Support of Motion for Summary Judgment (claiming that plaintiff could not state a claim against Educators because it had "assigned" her claim, and that her only remedy was against Hartford.)[11]

Educators' motion for summary judgment was a clear and unequivocal attempt to injure plaintiff's right to receive one of the most fundamental benefits of her insurance contract with Educators – the right to recourse against Educators for a breach of her insurance contract – which, in light of the plain language of its contract with Hartford, and Educators' current admissions quoted above, cannot be deemed to have been the result of an "honest mistake." As recognized in W.V. Realty, Inc. v. Northern Ins. Co., 334 F.3d 306, 314 (3rd Cir. 2003), cited by Educators, an insurer's attempt to evade its obligation under the insurance contract during litigation is a violation of the covenant of good faith. See also O'Donnell v. Allstate Ins. Co., 734 A.2d 901, 907 (Pa.Super.Ct. 1999).

    **4.    It Is Undisputed That Educators Misled Plaintiff To Believe That Hartford Was Merely A Disinterested Claims Administrator and Attempted to Conceal the Agreement from Her; As A Matter Of Law, This Violated Educators' Obligation of Good Faith**

Educators also has not disputed that plaintiff had a reasonable expectation that Educators would disclose a purported "sale" of her claim to, and substitution of, a different insurer, or that the failure to disclose such an agreement, accompanied by the

---

[11] Compare also: Educ. Motion for Summary Judgment, p.2 (claiming Educators negotiated with Hartford "to sell all of its open professional association disability claims") with Educ. Opp. To Pl. Motion for Summary Judgment, p.3 (claiming Educators negotiated with Hartford "for the administration of its open professional disability claims.")

representation that its contract did not alter any of plaintiff's rights under her certificate of insurance, would violate Educators' obligation of good faith and fair dealing. See Pl. Br., pp.15-17. Instead, to avoid liability, Educators now claims that the agreement with Hartford was not a sale of plaintiff's claim, and characterizes it as merely a contract "for the administration of her claim." Educ. Br., pp.7-8; See also Footnote 11, supra. Nevertheless, and despite the duplicity of admitting it both ways, Educators has not withdrawn its motion for summary judgment, and Educators' decision to finally acknowledge the nature of its agreement with Hartford does not change the undisputed fact that, when Educators entered the agreement with Hartford it represented that this did not alter plaintiff's rights under her Certificate of Insurance, then claimed in this action that the agreement constituted a sale of her claim to Hartford, and disclosed that, after the Agreement, Educators had and exercised no responsibility to plaintiff. Pl. Stmt., ¶¶ 10, 12, 33, 34, 39; Educ. Stmt., ¶¶ 10, 12, 33, 34, 39.

Educators' argument, that it had no obligation to disclose this critical information to plaintiff until after plaintiff requested it from Educators in discovery in this litigation, is misguided. Educ. Br., p.7, fn.4. First, plaintiff's right to be informed of Educators' "sale" of her claim and substitution of a different insurer was not contingent on her initiating litigation and obtaining formal discovery - as a matter of law, Educators' had a duty to disclose this information to its insureds long before this litigation even commenced - its failure to do so was a violation of its obligation of good faith and fair dealing. Federal Home Loan Mtg. v. Scottsdale Ins., 316 F.3d 431 (3rd Cir. 2003), quoting, Griggs v. Bertram, 443 A.2d 163 (N.J. 1982); See also e.g. Renz v. Allstate Ins. Co., 61 Conn.App. 336, 346-47, 736 A.2d 1072 (2001). Second, even if Educators had

9

no obligation to disclose this information prior to the litigation, Educators was obligated to disclose it prior to discovery, pursuant to Federal Rule of Civil Procedure 26(a)(1)(B) (requiring disclosure of documents supporting defenses) and 26(a)(1)(D) (requiring disclosure of indemnity agreements.)[12] Third, Educators was aware of plaintiff's request for this information from Hartford, which is represented by the same counsel as Educators and is participating in a joint defense with Educators, and should have ensured that plaintiff promptly received this information. See Pl. Stmt., ¶ 36; Educ. Stmt., ¶ 36; Federal Home Loan Mtg., 316 F.3d at 447-448 (requests to a party represented by same counsel as insurer gave rise to insurer's responsibility of disclosure.) Finally, Educators' failure to disclose the agreement was directly connected with its immoral and unethical attempt to evade its obligation under the insurance contract. See Section 3, supra.

### B.    EDUCATORS' CONDUCT WAS IN BAD FAITH

Summary judgment is warranted because plaintiff has presented evidence (which is either undisputed or admitted) showing that Educators' conduct was in bad faith, as set forth in plaintiff's Memorandum of Law in Support of Summary Judgment, and in Section A, supra. Moreover, summary judgment is warranted because Educators failed to meet its burden to present evidence to show that it acted in good faith, or even to rebut plaintiff's evidence of bad faith. Educ. Br., pp.13-14. Instead, Educators' makes a number of erroneous legal arguments. First, contrary to Educators' argument, Educators did owe plaintiff a fiduciary duty. See Educ. Br., p.13. The court in Sheltry v. Unum Life Ins. Co. of America, 247 F.Supp.2d 169 (D.Conn. 2003), upon which Educators relies, recognized that the Connecticut Supreme Court has declined to "define a fiduciary

---

[12] As of the date of oral argument on plaintiff's motion to compel discovery from Hartford, Educators clearly intended to rely on the Agreement and its treatment of the agreement as a sale of plaintiff's claim as a complete defense in this action. See Ruling dated June 28, 2002, p.5, fn.7.

10

relationship in precise detail and in such a manner to exclude new situations, [the Supreme Court has] chosen to leave the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence to the other." Id., at 178. As set forth in plaintiff's memorandum of law in support of summary judgment, plaintiff's claims related to Educators agreement with Hartford and abdication of its role as plaintiff's insurer, do not present a "first party insurance dispute," as in the cases upon which Educators relies, but, instead, present a situation in which plaintiff was uniquely dependant upon Educators' superior power to protect plaintiff's interests. Pl. Br., pp.10-11.[13] Second, Educators' assertion that a fiduciary does not bear the burden to show good faith, is also misguided: it is a matter of well-established law that, "[o]nce `a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary.'" Konover Development Corp. v. Zeller, 228 Conn. 206, 219, 635 A.2d 708 (1994).

Third, contrary to Educators' assertion, plaintiff need not establish that Educators directed its bad faith conduct to plaintiff, alone or that Educators did not have a business motive for its conduct. Educ. Br., p.14. A commercial entity could almost always point to a business benefit it hoped to achieve when it undertook its bad faith acts, and this is no excuse. For example, in United Technologies, supra, the insurer was "faced, to its financial horror, with unanticipated environmental contamination coverage claims under 'all risk' policies that did not contain contamination exclusion clauses." Id., at 176. In response, the insurer made the 'business decision' to delegate administration

---

[13] As Educators' acknowledges, plaintiff was in a uniquely vulnerable position because she was receiving total disability benefits under a group policy for which Educators was no longer receiving premiums (Educ. Stmt., ¶¶ 5-6), and Educators claims that plaintiff had no power to "veto" Educators' decision to contract with Hartford for the administration of her claim. Educ. Br., p.7.

11

of <u>all</u> first party environmental claims to its attorneys, abdicating its responsibility as an insurer. <u>Id</u>. Regardless of the insurer's primary motivation – which was 'business related', and that fact the insurer treated all first party claims in the same fashion as the plaintiff insured's - this court concluded that the insurer's conduct established "a design to injure" the plaintiff that warranted punitive damages. <u>Id</u>., at 177. Similarly, in this case, Educators was faced with an unwanted, ongoing obligation to administer and pay disability claims under a group policy for which it was no longer receiving premiums. Educators made a 'business decision' to abdicate all of its responsibilities and abandon the insureds to a third party with a pre-established financial motivation to deal unfairly with the insureds. Educators went even further, however, by placing the insureds at a decided disadvantage by failing to disclose these facts to them and misleading them to believe that Hartford was merely acting as a "service provider" to Educators. As in <u>United Technologies</u>, <u>supra</u>, this conduct is sufficient to establish a "design to injure" plaintiff.[14]

      Finally, even if the court concludes that there are issues of fact relating to Educators' bad faith, summary judgment is still warranted on plaintiff's claim that Educators breached the contract when it admittedly abdicated its role as her insurer, because bad faith is not an element of this claim.

---

[14] Even if the court accepts Educators' argument that plaintiff must establish a specific intent to injure this plaintiff, the undisputed evidence shows that Educators engaged in bad faith conduct directed specifically to plaintiff in this case. Educators agreed to a joint defense with Hartford before it had any information to support such an agreement, and without conducting any critical review of Hartford's administration of plaintiff's claim (Pl. Stmt., ¶¶ 35-36; Educ. Stmt., ¶¶ 35-36), and attempted to repudiate its legal responsibility for Hartford's conduct by representing that it had "assigned" and "sold" plaintiff's claim to Hartford so that plaintiff could not assert a cause of action for breach of contract against Educators, which it now admits was not the case. Educators' Motion for Summary Judgment; Educ. Stmt., ¶¶ 6, 7, 37; Educ. Br., pp.3-4, 11, 14-15.

12

### C. EDUCATORS' BREACH OF CONTRACT AND THE COVENANT OF GOOD FAITH HAS INJURED PLAINTIFF

The court should also reject Educators' argument that plaintiff was required to establish an injury "separate and apart from the termination of her disability benefits." First, Educators has not cited any authority, nor could it, that plaintiff must establish damages "separate and apart from the termination of her disability benefits" to prevail on her breach of contract and bad faith claims. Second, contrary to Educators' argument, it is appropriate for the court to presume that plaintiff was prejudiced by Educators' delegation of authority to Hartford to unilaterally terminate her benefits, an incentive of over one million dollars to do so, combined with Educators' complete abdication of its responsibilities and abandonment as her insurer, and failure to inform plaintiff of these facts. The presumption of harm from such conduct is not limited to third party insurance cases, as Educators claims, but is based on black-letter principles of equitable estoppel. See e.g. Mutual Ben. Life Ins. Co. v. Lindenman, 911 F.Supp. 619, 626-627 (E.D.N.Y. 1995) (applying principles of equitable estoppel to termination of disability benefits); Federal Home Loan Mtg. v. Scottsdale Ins., 316 F.3d 431, 446-448 (3rd Cir. 2003). Because an insured has a right to assume that her insurer is protecting her rights, when it fails to do so, including when it fails to give prompt notice of a conflict or potential conflict, "given the "equitable nature of estoppel, actual prejudice is presumed and need not be proven by the insured." Griggs, at 355-356; Id., at 362 ("It would be speculative, unproductive and unfair to try to surmise or recreate what avenues the insured might otherwise have pursued in such a situation if it had had a clear field to act on its own during the time the matter is preempted by the carrier.")

Nevertheless, third, plaintiff has presented unrebutted evidence of actual prejudice caused by Educators' abdication of its obligations as plaintiff's insurer and failure to inform plaintiff of that abdication. Educ. Stmt., ¶¶ 38-43. Educators does not deny that, if plaintiff had known that Educators was not protecting her interests, she could have taken action to do so herself. Educ. Stmt., ¶ 42. Further, unlike in Griggs, the evidence shows that the defendants not only failed to inform plaintiff of Educators' abdication of responsibility, but intentionally misled plaintiff to believe that Educators was still acting as her insurer. Pl. Stmt., ¶ 10; Educ. Stmt., ¶ 10. Throughout Hartford's administration of plaintiff's claim, and in the letter terminating plaintiff's benefits, Hartford represented that it was acting "on behalf of Educators." Pl. Stmt., ¶¶ 10-11; Educ. Stmt., ¶¶ 10-11.

In the absence of evidence that Educators informed plaintiff of its repudiation of its responsibilities, plaintiff had every reason to believe that Educators had reviewed, approved of, and authorized, Hartford's termination of her benefits. See Griggs, 88 N.J. at 361-362. Yet, Educators asks the court to *infer* that plaintiff knew that Educators was no longer "her insurer," because she did not contact Educators after Hartford terminated her benefits. Educ. Stmt., ¶¶ 10, 40. To draw this inference, which is not supported by a single fact,[15] the court would need to disregard, and infer that plaintiff disregarded, Educators' representation to plaintiff that the Agreement did not change plaintiff's rights under her Certificate of Insurance, and Hartford's representations that it was acting on behalf of Educators. Under these circumstances, the inference that Educators asks the court to draw is not sufficient to avoid summary judgment. See Little v. Liquid Air

---

[15] The only evidence to which Educators is able to cite to show that Educators was not aware of the termination, is the disclosure it made during a deposition taken after plaintiff initiated this litigation. Educ. Stmt., ¶ 40. This is not evidence of what plaintiff knew at the time Hartford terminated her benefits.

14

Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (party cannot avoid summary judgment by creating some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.) [16]

Finally, plaintiff is entitled to recover as damages the expenses she incurred in performing the duties that Educators failed to perform, and in opposing Educators' spurious attempt to repudiate its legal obligation to her in this action, because she incurred these expenses as a direct and proximate result of Educators' misconduct. Coventry v. American States Ins. Co., 961 P.2d 933 (Wash. 1998). None of the cases upon which Educators relies support its claim to the contrary. The plaintiff in Uberti sought litigation expenses as an item of punitive damages, he did not claim expenses incurred to perform the insurer's duty and the court did not address whether such expenses would be recoverable as an item of damages. In Meneo v. George D. Porto Plumbing and Heating, Inc., 1997 WL 148710 (Conn.Super. March 19, 1997), the plaintiff claimed as damages the expense of hiring an adjuster to estimate the damages to his property caused by the defendant plumbing company's negligence. The court held that this expense would be recoverable as damages if the defendant's negligence had required the plaintiff to hire the adjuster.

---

[16] Educators' argument that plaintiff's failure to appeal Hartford's termination of her benefits somehow shows that plaintiff would not have taken action to protect herself during Hartford's administration of her claim (Educ. Stmt., ¶¶ 42-43) is completely specious. In contract to an ERISA process, there is nothing evidencing or supporting a claim that Plaintiff had an obligation to appeal this decision, and Hartford's intent to terminate plaintiff's benefits, regardless of the medical evidence, had made manifest that an appeal would do nothing more than extend the time in which plaintiff would be deprived of her benefits. Among other things, Hartford had subjected plaintiff to an emotionally abusive "interview" by its investigators under false pretenses (Pl. Stmt., ¶¶ 26-29, 31); quoted the "results" of a Functional Capacities Evaluation that both plaintiff and Hartford knew had never been performed as a basis to terminate plaintiff's benefits (Pl. Stmt., ¶¶ 24, 31); sent the results of the FCE that it knew had not been performed to plaintiff's physicians for comment, without informing plaintiff (Pl. Stmt., ¶ 31); and improperly claimed in the letter terminating plaintiff's benefits that Hartford had informed the physicians that it would deem their failure to respond as an agreement with the IME and FCE, and treated the failure to respond as such to justify terminating her benefits, when it had merely informed the physicians that it would assume they had no comment if they failed to respond. (Pl. Stmt., ¶ 31.)

In this case, plaintiff is not claiming as damages the expense of hiring her damages expert for this litigation (which <u>Meneo</u> held would not be recoverable) – she is claiming as damages (a) the expenses incurred in reviewing Hartford's claim administration activities and obtaining information regarding the administrative services agreement, both of which Educators was obligated to provide to plaintiff before this litigation even ensued, and (b) the expenses incurred in responding to Educators' attempt to repudiate its status as her insurer in this action – all of which are a direct result of Educators' breach of its obligation. Thus, contrary to Educators' argument, this is not a "bootstrap claim that would enable any vexed party missing the damage element of a cause of action to provide the missing element merely by filing a lawsuit." It was Educators' complete abdication of its responsibilities to plaintiff and failure to inform plaintiff of its purported "sale" of her claim, not the filing of this lawsuit, which required plaintiff to incur the expenses claimed.

**CONCLUSION**

For the foregoing reasons, in addition to those set forth in plaintiff's Memorandum of Law in Support of Summary Judgment, plaintiff respectfully requests that the court grant judgment in her favor against Educators on the second and third counts of her Second Amended Complaint.

PLAINTIFF,
CANDI MCCULLOCH

By: _____
Eliot B. Gersten, Esq.
Fed. Bar No. ct05213
GERSTEN & CLIFFORD
214 Main Street
Hartford, CT 06106
(860) 527-7044
Her Attorney

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was faxed and mailed, via regular U.S. Mail, postage prepaid, on July 28, 2004 to all counsel and pro se parties of record, as follows:

Roberta J. Sharp, Esq.
Jessica Spangler Taylor, Esq.
Barry A. Chasnoff, Esq.
Akin Gump Strauss Hauer & Feld, LLP
300 Convent Street, Suite 1500
San Antonio, TX 78205
*Tel: 210-281-7146*
*Fax: 210-224-2035*

Donald E. Frechette, Esq
Joshua L. Milrad, Esq.
Charles F. Gfeller, Esq.
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103
*Tel: (860) 525-5065*
*Fax: (860) 527-4198*

_____
Eliot B. Gersten, Esq.