**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CANDI McCULLOCH | : | CIVIL ACTION NO. 301CV1115(AHN) |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY AND EDUCATORS MUTUAL LIFE INSURANCE COMPANY | : | |
| Defendants. | : | July 28, 2004 |

**PLAINTIFF'S REPLY TO**
**EDUCATORS' LOCAL RULE 56(a)(2) STATEMENT**

On the basis of Educators' Local Rule 56(a)(2) Statement, plaintiff respectfully requests that the court find the following facts undisputed pursuant to Federal Rule of Civil Procedure 56(e):

1. Beginning on or about September 24, 1994, plaintiff purchased disability insurance from Educators through a group disability policy maintained by her employer. Plaintiff's Rule 56(a)(1) Statement in Support of Motion for Summary Judgment ("Pl. Stmt."), ¶ 1; Educators' Rule 56(a)(2) Statement ("Educ. Stmt., ¶ 1.)

2. Educators provided plaintiff with a copy of her policy and a certificate of insurance. Pl. Stmt., ¶ 2; Educ. Stmt., ¶ 2.

3. In October 1995, plaintiff applied to Educators for total disability insurance benefits. Educators determined that plaintiff became disabled in October 1995. Pl. Stmt., ¶ 3; Educ. Stmt., ¶ 3.

4. Between March 1996 and May 1999, Educators questioned plaintiff's continuing entitlement to benefits and demanded that she provide updated "objective, clinical evidence of a disabling condition." Educators obtained an Independent Medical

Examination ("IME") and independent medical reviews of plaintiff's updated medical records by Dr. Alshon of U.S. Medical Review. Pl. Stmt., ¶ 4; Educ. Stmt., ¶ 4. Dr. Alshon's IME concluded that plaintiff was totally and permanently disabled, and his independent medical reviews of plaintiff's updated medical records all concluded that plaintiff was disabled from her occupation. Id.[1]

5. During this time period, Educators ceased writing professional association policies and accepting premiums – open disability claims such as plaintiff's had become an expense to Educators for which it was no longer earning new income. Pl. Stmt., ¶ 5; Educ. Stmt., ¶ 5. As a result, Educators wanted to sell its open disability claims, including plaintiff's claim. Id.

6. In August 1999, Educators entered a contract with Hartford ("the Agreement") related to a group of its insureds, including plaintiff, to whom Educators was paying disability benefits. The Agreement required Hartford to administer and pay the disability claims of Educators' insureds. Pl. Stmt., ¶ 7; Educ. Stmt., ¶ 7.

7. In the Agreement, Hartford did not assume Educators' "paper" – meaning plaintiff's policy with Educators. If Hartford had agreed to assume Educators' disability policies, Educators would have been required to submit the Agreement to the insurance commissioner of a multitude of states for approval and obtain the consent of the claimants. Pl. Stmt., ¶ 6; Educ. Stmt., ¶ 6.

8. The Agreement provided that, as Educators' claim administrator, Hartford could issue correspondence and benefit payments directly to Educators' insureds,

[1] Educators has failed to either admit or deny that the IME concluded that plaintiff was totally and permanently disabled, or that the medical reviews concluded that plaintiff was disabled from her occupation. Pl. Stmt., ¶ 4; Educ. Stmt., ¶ 4. Accordingly, these facts are deemed admitted. D. Conn. L.R. 56(a)(2), (3); Shoaf v. Matteo, 100 F.Supp.2d 114, 117 (D.Conn. 2000) (Eginton, J.); Soares v. University of New Haven, Civ. No. 3:99cv1107 (JBA) (D.Conn. August 16, 2001)

provided that Hartford "discloses that it is acting as agent for the Company [Educators] in the performance of such functions." The Agreement specifically stated that it would not "create any right or legal relation between" Hartford and Educators' insureds and that Educators "shall be and remain solely liable to the" insureds on their claims. Pl. Stmt., ¶ 8; Educ. Stmt., ¶ 8.

9. Pursuant to the Agreement, Educators transferred 93.3% of the statutory reserves associated with the claims that were included in the Agreement to Hartford. The statutory reserve associated with plaintiff's claim was $1,294,206. Pursuant to the Agreement, Hartford was entitled to keep these funds if it terminated a claim. Pl. Stmt., ¶ 9; Educ. Stmt., ¶ 9.[2]

10. On August 26, 1999, Educators described the Agreement to its insureds as follows: "Effective July 1, 1999, Educators Mutual Life Insurance Company has contracted with Group Reinsurance Plus (GRP), a service provider segment of Hartford Life and Accident Insurance Company, to administer your disability claim. This in no way affects your rights under your Certificate of Insurance." Pl. Stmt., ¶ 10; Educ. Stmt., ¶ 10.

11. As required by the Agreement, Hartford's subsequent correspondence to plaintiff included a stamp that stated "Administered by Hartford on Behalf of Educators Mutual Life Co." Pl. Stmt., ¶ 11; Educ. Stmt., ¶ 11.

---

[2] Educators has denied that Hartford would be entitled to release the reserves associated with a terminated claim "to its own use." Educ. Stmt., ¶ 9. However, Educators has not cited any evidence to support this denial. There is nothing in the Agreement that required Hartford to return these funds to Educators. To the contrary, the Agreement precluded Educators from "recapturing" any claim that Hartford terminated. Pl. Stmt., ¶ 9, citing, Educ. Opp. Ex. 1, § 2.3. Moreover, Hartford has admitted that its profit on the Agreement is contingent on the amount of benefits it ultimately pays to the claimants out of the funds transferred by Educators to Hartford. Hartford's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, pp.8-9.

12. Neither Hartford nor Educators disclosed to plaintiff, or the other insureds, that Hartford had any financial interest in the disposition of the claims it was administering. Pl. Stmt., ¶ 12; Educ. Stmt., ¶ 12.[3]

13. Neither Hartford nor Educators submitted the Agreement to any Insurance Commissioner for review and approval, nor did they obtain the consent of the policy holders, nor did Hartford issue a new certificate of insurance to the insureds informing them that Hartford had assumed primary responsibility to them as their insurer. Pl. Stmt., ¶ 13; Educ. Stmt., ¶ 13.

14. After Hartford assumed administration of plaintiff's claim, Hartford's "Special Investigation Unit" ("SIU") contacted a different insurance company, UNUM, which it believed might have information to support that plaintiff had not been eligible for benefits at the time her disability began because she was not working the number of hours required for eligibility under her Educators' policy. Pl. Stmt., ¶ 14; Educ. Stmt., ¶ 14.

15. At the time that Hartford initiated this investigation, no medical personnel at Hartford had reviewed plaintiff's medical records. Pl. Stmt., ¶ 15; Educ. Stmt., ¶ 15.

16. Hartford mailed its first request for plaintiff's updated medical records to plaintiff's physicians on the same day that it initiated its fraud investigation. Pl. Stmt., ¶

[3] While Educators has denied this statement, it has not cited to any evidence that supports the denial, as required by Local Rule 56. Instead, it challenges the sufficiency of plaintiff's evidence to establish the statement, and makes the conclusory claim that "Hartford's 'financial interest' in Plaintiff's claim was no different than Educators' 'financial interest' in her claim," also without citation to any evidence. Both Educators' denial and its conclusory statement, are insufficient under Local Rule 56. Moreover, these claims are meritless. The letter in which Educators purported to describe its contract with Hartford stated only that Educators had contracted with a "service provider segment" of Hartford to "administer your disability claim," and further assured plaintiff that "this in no way affects your rights under your Certificate of Insurance." Pl. Stmt., ¶ 12, citing, Pl. Educ. Opp. Ex. 3; See also Pl. Stmt., ¶ 10; Educ. Stmt., ¶ 10. There is nothing in the letter that discloses that Hartford had any financial interest in the disposition of her claim, much less that Educators had granted Hartford the "same financial interest" in the disposition of her claim that Educators had.

16; Educ. Stmt., ¶ 16.

17. At the time Hartford initiated its fraud investigation, the only updated medical record that Hartford had received was an attending physician statement, which stated that plaintiff was "unable to perform the material duties of her profession." Pl. Stmt., ¶ 17; Educ. Stmt., ¶ 17.

18. After Hartford learned that UNUM had settled plaintiff's claim for benefits, the SIU ordered covert surveillance of plaintiff. Hartford had still not obtained a review of plaintiff's medical records by medical personnel, or any opinion that refuted Educators' conclusion that plaintiff was disabled. Pl. Stmt., ¶ 18; Educ. Stmt., ¶ 18.[4]

19. Hartford then demanded that plaintiff undergo an IME and Functional Capacities Evaluation ("FCE"). Pl. Stmt., ¶ 19; Educ. Stmt., ¶ 19.

20. Hartford represented to Dr. Garg, the IME physician, that plaintiff was "a physician in the capacity of an Internist (clinic only, no surgical requirements) at 16 hrs a week, and [a] Director/administrator for a women's clinic at 30 hrs a week." Educ. Stmt., ¶ 20.

21. Plaintiff's policy was occupation specific, not job specific. Nevertheless, plaintiff's job at the time of her disability specifically required plaintiff to perform all of

---

[4] Educators has neither admitted nor denied that, as of the date Hartford ordered covert surveillance of plaintiff, it had not obtained any opinion that refuted Educators' conclusion that plaintiff was disabled. Educ. Stmt., ¶ 18. Accordingly, this statement is deemed admitted. Educators' claim that it has not "always" concluded that plaintiff was disabled, on the ground that, in 1997, is unsupported by the "evidence" cited and is, more importantly, immaterial. Educ. Stmt., ¶ 18, referring to ¶ 4. Educators demand that plaintiff provide updated evidence of her continuing disability in 1997, as a condition for its continued payment of benefits does not show that Educators ever concluded that plaintiff was not disabled. To the contrary, after receiving updated medical records and obtaining an independent review of those records in 1997, Educators unequivocally acknowledged plaintiff's continuing entitlement to benefits. Pl. Stmt., ¶ 4; Educ. Stmt., ¶ 4. As of the date in 1999 that Hartford assumed administration of plaintiff's claim, Educators had clearly concluded that plaintiff was disabled because it was continuing to pay her disability benefits, which it stated it would not do in the absence of objective clinical evidence of plaintiff's disability. Pl. Stmt., ¶ 7; Educ. Stmt., ¶ 7.

the duties normally and customarily rendered by an internal medicine physician for a minimum of 16 hours per week, which included conducting full medical examinations, providing urgent/emergent care, performing invasive medical procedures, making hospital rounds as well as managing a women's medical clinic for a minimum of 30 hours per week, which included participating in on-site visits to successful women's health centers, marketing, fund-raising, and training other physicians and nurses. Pl. Stmt., ¶ 21; Educ. Stmt., ¶ 21.

22. Hartford's representations to Dr. Garg regarding plaintiff's job requirements were not consistent with the duties normally required of an internal medicine physician. Pl. Stmt., ¶ 22; Educ. Stmt., ¶ 22.[5] Dr. Garg based her conclusion that plaintiff could return to work, at least in part, on Hartford's representations regarding the requirements of plaintiff's job. Pl. Stmt., ¶ 22; Educ. Stmt., ¶ 22.

23. At Hartford's request, Dr. Garg's added a document to her report which purported to be a "summary of a Functional Capacities Evaluation done on August 14, 2000." A "Functional Capacities Evaluation" is a term of art that refers to a specific series of tests performed on an individual over a number of hours that is supposed to produce for the tester limitations of strength, mobility and endurance. The tester has guidelines to go by and references from the Department of Labor and extrapolates from the testing an individual's restrictions and limitations and an individual's ability to perform either a sedentary, light, medium or heavy occupation. The test can take up to two to three hours. Pl. Stmt., ¶ 23; Educ. Stmt., ¶ 23.[6]

---

[5] Educators has neither admitted nor denied this statement. Accordingly, it is deemed admitted. D. Conn. L.R. 56(a)(2), (3); Shoaf, 100 F.Supp.2d at 117; Soares, supra.

[6] Educators has denied that "there is a standard definition of a 'FCE'", but has not denied that the definition provided in plaintiff's statement is a correct definition of an FCE. Moreover, there is no conflict

24. Dr. Garg did not perform an FCE and, by September 28, 2000, at the latest, Hartford knew that Dr. Garg did not perform an FCE. Pl. Stmt., ¶ 24; Educ. Stmt., ¶ 24.

25. On October 13, 2000, without informing plaintiff, Hartford forwarded the IME report and FCE "results" to plaintiff's physicians and asked them to comment on her functionality in light of these reports. Pl. Stmt., ¶ 25; Educ. Stmt., ¶ 25.[7]

26. Hartford stated to plaintiff that it required her to participate in a "routine" and "informal" "interview" with a "field representative" to go over some "formatted questions" in response to plaintiff's inquiry regarding the purpose of the interview. Pl. Stmt., ¶ 26; Educ. Stmt., ¶ 26.[8]

27. Hartford now claims that purposes of the interview included identifying plaintiff as the person depicted in the covert video surveillance and confronting plaintiff with video surveillance. Hartford intentionally failed to disclose these facts to plaintiff. Pl. Stmt., ¶ 27; Educ. Stmt., ¶ 27.[9]

28. Hartford staff met on two separate occasions to plan the interview. Pl.

---

between Dr. Arnold's statement and Dr. Amato's (erroneously referred to as Nurse Sterle by Educators) statement, which merely contains more detail. Dr. Arnold testified that the tester correlates the functional limitations disclosed by the FCE to the tasks required by an individual's employment, and Dr. Amato explained that it is the Department of Labor that provides a list of the tasks required by an individual's employment.

[7] Educators has not admitted or denied that Hartford forwarded the FCE "results" to plaintiff's physicians, or cited to any evidence that would support such a denial. Educ. Stmt., ¶ 25. Accordingly, this statement is deemed admitted. D. Conn. L.R. 56(a)(2), (3); Shoaf, 100 F.Supp.2d at 117; Soares, supra.

[8] Educators has not denied that Hartford made the quoted representations to plaintiff, but has only denied that Hartford "induced," plaintiff to attend the meeting by making those representations. Educ. Stmt., ¶ 26. Educators has not cited any evidence to support that denial, as required by Local Rule 56.

[9] While Educators purports to deny that the purpose of the interview was to confront plaintiff with the video surveillance, Educators has not cited any evidence to support the denial. Accordingly, this statement is deemed admitted. D. Conn. L.R. 56(a)(2), (3); Shoaf, 100 F.Supp.2d at 117; Soares, supra. Educators' claim that the cited evidence does not support the statement is without any merit. Ms. Wilk testified that the purpose of the meeting was to confront plaintiff with the surveillance and that there was a conscious decision by Ms. Wilk and Ms. Favreau not to disclose this fact to plaintiff in response to plaintiff's inquiry about the purpose of the meeting.. Pl. Htfd. Opp. Exs. E at 165-168.

Stmt., ¶ 28; Educ. Stmt., ¶ 28.

29. On November 17, 2000, Hartford terminated plaintiff's disability benefits on the ground that while the evidence submitted to Educators showed that plaintiff was disabled, the evidence submitted to Hartford showed that plaintiff was no longer disabled as of August 14, 2000. Hartford began to draft the letter terminating plaintiff's benefits before Hartford's medical director had even reviewed plaintiff's file. Pl. Stmt., ¶ 30; Educ. Stmt., ¶ 30.[10]

30. In terminating plaintiff's benefits, Hartford relied on, among other things, the IME report, the results of the FCE that it knew had not been performed, plaintiff's physicians' failure to comment on these reports, and plaintiff's signed statement. Hartford had requested the physicians to state whether they agreed or disagreed with the IME physician, Dr. Garg's assessment, and informed the physicians that, "[i]f no response is received, we will assume that you have no comment." In the letter terminating plaintiff's benefits, Hartford represented that it had informed the physicians that, "if responses were not received, we would assume that they were in agreement with Dr. Garg's assessment." Pl. Stmt., ¶ 31; Educ. Stmt., ¶ 31.

31. As a result of terminating plaintiff's benefits, Hartford was able to release, to its own use, over one million dollars of the funds that Educators had transferred to Hartford associated with plaintiff's claim. Pl. Stmt., ¶ 32; Educ. Stmt., ¶

---

[10] Educators has denied that "the evidence submitted to Educators showed that plaintiff was disabled." Educ. Stmt., ¶30. This denial is not responsive to the statement set forth in paragraph 30 of plaintiff's statement, which addresses Hartford's stated ground for terminating plaintiff's benefits. Pl. Stmt., ¶ 30. Educators has neither admitted nor denied that, when Hartford terminated plaintiff's disability benefits, it stated that the evidence submitted to Educators showed that plaintiff was disabled. Pl. Stmt., ¶ 30; Educ. Stmt., ¶ 30. Accordingly, this fact is deemed admitted. D. Conn. L.R. 56(a)(2), (3); Shoaf, 100 F.Supp.2d at 117; Soares, supra. Educators' paragraph 4, which it cites in support of its denial, does not support its denial, as explained in footnote 4, supra.

32.[11]

32. On June 15, 2001, plaintiff filed her initial complaint in this action. Soon thereafter, plaintiff requested that defendant Hartford produce documents relating to Hartford's assumption of the function of administrator for her claim. Hartford refused to produce any such documents, including the Agreement, until September 2002 on the ground that this information was confidential. Hartford finally disclosed the Agreement in September 2002, almost one year after plaintiff had requested this information and only after the court ordered it to do so.[12] Pl. Stmt., ¶ 33; Educ. Stmt., ¶ 33.

33. During depositions this past summer, Educators disclosed to plaintiff, for the first time, that Educators had treated the Agreement as a sale of its claims. Educators did not believe that this information was pertinent to plaintiff. Pl. Stmt., ¶ 34; Educ. Stmt., ¶ 34.

34. According to Educators, following the Agreement, Educators had ceased to act as plaintiff's insurer in any capacity and was not even aware that Hartford had terminated plaintiff's benefits until she filed the above-captioned action. Educators did not supervise Hartford's administration of plaintiff's claim or question its conduct in any way. Pl. Stmt., ¶ 35; Educ. Stmt., ¶ 35.

35. Educators and Hartford have asserted that every communication between them after plaintiff initiated this lawsuit is subject to the joint defense privilege, which means that, from Educators' first communications with Hartford after being served with

---

[11] Educators has denied that Hartford was able to release these funds "to its own use." Educators has not cited any evidence to support this denial and it is thus deemed admitted. D. Conn. L.R. 56(a)(2), (3); Shoaf, 100 F.Supp.2d at 117; Soares, supra. As explained in footnote 2, supra, Educators' challenge to the sufficiency of plaintiff's supporting evidence is without any merit.

[12] Educators has claimed that "the Court found Hartford had 'substantial justification' for its objections." Educ. Stmt., ¶ 12. The Court's found that Hartford had substantial justification for its objection to interrogatories that the Court had concluded were broadly worded. Ruling dated June 28, 2002, p.20. It did not find that Hartford had a substantial justification to object to disclosing the Agreement.

plaintiff's complaint, Educators agreed with Hartford to formulate a common legal strategy and defense against plaintiff's claim. Pl. Stmt., ¶ 36; Educ. Stmt., ¶ 36.

36. Hartford's Regional Vice President of Group Reinsurance Plus has acknowledged that Hartford did not assume Educators' policies, that Educators remained ultimately responsible for the claims, and, therefore, that the parties did not fulfill the review and consent requirements of an assumption agreement or novation of plaintiff's claim. Pl. Stmt., ¶ 37; Educ. Stmt., ¶ 37.

37. Plaintiff has expended time, money and effort, including hiring an insurance industry expert to review Hartford's claim administration, and hiring a medical expert to review plaintiff's medical records, to render opinions on whether Hartford engaged in good faith in administering her claim, and whether she was entitled to disability benefits when Hartford terminated her claim. Pl. Stmt., ¶ 38; Educ. Stmt., ¶ 38.[13]

38. Plaintiff spent substantial time, money and effort for the first two years of this action, including motions to compel and depositions, to simply obtain discovery of the Agreement, which disclosed that Hartford had a financial interest in the disposition of her claim, and to discover that Educators had treated the Agreement as a sale of plaintiff's claim after which it had, and exercise, absolutely no legal or contractual responsibility to plaintiff. Pl. Stmt., ¶ 39; Educ. Stmt., ¶ 39.[14]

---

[13] Educators admits that "plaintiff's affidavit states what Plaintiff claims it states." Educ. Stmt., ¶ 38. Educators has not denied the truth of the statement made in paragraph 38 of plaintiff's Rule 56(a)(1) Statement, or cited to any evidence to support such a denial. Accordingly, this statement is deemed admitted. D. Conn. L.R. 56(a)(2), (3); Shoaf, 100 F.Supp.2d at 117; Soares, supra.

[14] Educators only ground for denying this statement is that "plaintiff did not notice the depositions of Educators' corporate representative until April 5, 2003." Educ. Stmt., ¶ 39. As set forth more fully in plaintiff's reply brief, this assertion ignores that Educators had an obligation to disclose the information to plaintiff at the time of the agreement and when plaintiff initiated this action pursuant to Rule 26, and that, had Educators fulfilled that obligation, plaintiff would not have been required to seek discovery, and move

39. Plaintiff would have objected to the purported "sale" of her claim by Educators to Hartford if she had been informed of the "sale" at the time it occurred.[15] Plaintiff purchased and paid for disability benefits from Educators, not Hartford, and expected Educators perform the function of her insurer when she did become disabled. [16] Pl. Stmt., ¶ 40; Educ. Stmt., ¶ 40.

40. Plaintiff would have objected to Hartford's administration of her claim had she known that Educators had transferred over one million dollars in reserves associated with her claim to Hartford, with an agreement that Hartford could keep that money if it terminated her claim, and further, that Educators had "ceded" all responsibility for her claim to Hartford, and had no intent to oversee Hartford's activities. Pl. Stmt., ¶ 41; Educ. Stmt., ¶ 41.

41. Plaintiff would have taken action to protect herself during Hartford's administration of her claim had she known that Hartford was actually a rival for her future benefits.[17] Plaintiff would have refused to meet with Hartford's investigators outside the presence of her attorney, ensured that the IME physician had all of her

---

to compel disclosure, of this information from either Hartford or Educators in this action.

[15] Educators does not dispute that plaintiff would have objected to such a sale, but asserts that plaintiff's "policy does not give her a right to object." Educ. Stmt., ¶ 40. As set forth in plaintiff's memorandum of law in support of summary judgment and reply brief, plaintiff would have had a right to object to a "sale" of her claim as a matter of law.

[16] Educators does not dispute this statement or cite to any evidence that would support such a denial. Accordingly, the statement is deemed admitted. D. Conn. L.R. 56(a)(2), (3); Shoaf, 100 F.Supp.2d at 117; Soares, supra. Educators does ask the court to infer that plaintiff did not expect that Educators was her insurer because she did not contact Educators directly after Hartford terminated her benefits. Educ. Stmt., ¶ 40. Educators has not cited to a single fact that would support this inference, nor could it. As a matter of undisputed fact, Hartford represented, at all times, that it was acting on Educators' behalf. Pl. Stmt., ¶ 11; Educ. Stmt., ¶ 11. Thus, plaintiff had every reason to believe that Educators was not only aware of the termination, but that it had reviewed and approved the termination. Indeed, the only evidence to which Educators is able to cite to show that Educators was not aware of the termination, is the disclosure it made during a deposition taken after plaintiff initiated this litigation. Educ. Stmt., ¶ 40.

[17] While Educators purports to deny that Hartford was a rival for plaintiff's future benefits, it has not cited to any evidence to support such a denial as required by Local Rule 56. Educ. Stmt., ¶ 42. Educators' claim that plaintiff "does not cite to any evidence to suggest that Hartford was in any more of an adversarial relationship with Plaintiff than Educators" is specious. See Pl. Stmt., ¶¶ 9, 32; Educ. Stmt., ¶¶ 9, 32.

medical records and an appropriate description of her occupation before rendering an opinion, and required Hartford to copy plaintiff on all correspondence issued in her case. Pl. Stmt., ¶ 42; Educ. Stmt., ¶ 42.[18]

42. Had plaintiff known, prior to this litigation, that Educators had no knowledge of Hartford's conduct in administering her claim and terminating her benefits, plaintiff would have demanded that Educators review Hartford's conduct, and potentially avoided the necessity of this litigation. Pl. Stmt., ¶ 43; Educ. Stmt., ¶ 43.[19]

---

[18] Educators asserts that plaintiff failed to appeal Hartford's termination. Educ. Stmt., ¶ 42. It is unclear what relevance this fact has to the statement asserted in plaintiff's paragraph 42. Nevertheless, as set forth more fully in plaintiff's reply brief, Hartford's bad faith was manifest in its conduct prior to terminating plaintiff's benefits as well as in the letter terminating her benefits, and this made the futility of any appeal was manifest. This policy was not subject to ERISA and plaintiff had no obligation to appeal the termination, which would have served only to preserve the status quo of Hartford's non-payment of plaintiff's benefits for a longer period before plaintiff could seek court intervention.

[19] Educators' asserts that the agreement with Hartford gave Hartford the sole authority to administer plaintiff's claim. Educ. Stmt., ¶ 43. This overlooks that Educators "reserved [the] right to require that a Reinsured Claim be paid on a basis determined by the Company [Educators]." Educ. Def. Ex. B(1), § 2.1.4. If, as Educators' claims, the Agreement precluded Educators from having any input into the administration of its insured's claims, and granted Hartford unreviewable discretion to terminate the benefits of Educators' insureds, this fact would only further establish that Educators' abdicated, and breached, of its continuing responsibility to is insureds, including plaintiff.

PLAINTIFF,
CANDI MCCULLOCH

By: ______________________

Eliot B. Gersten, Esq.
Fed. Bar No. ct05213
GERSTEN & CLIFFORD
214 Main Street
Hartford, CT 06106
(860) 527-7044
Her Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was faxed and mailed, via regular U.S. Mail, postage prepaid, on July 28, 2004 to all counsel and pro se parties of record, as follows:

Roberta J. Sharp, Esq.
Jessica Spangler Taylor, Esq.
Barry A. Chasnoff, Esq.
Akin Gump Strauss Hauer & Feld, LLP
300 Convent Street, Suite 1500
San Antonio, TX 78205
*Tel: 210-281-7146*
*Fax: 210-224-2035*

Donald E. Frechette, Esq
Joshua L. Milrad, Esq.
Charles F. Gfeller, Esq.
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103
*Tel: (860) 525-5065*
*Fax: (860) 527-4198*

________________________
Eliot B. Gersten, Esq.

PLAINTIFF,
CANDI MCCULLOCH

By: ______________________

Eliot B. Gersten, Esq.
Fed. Bar No. ct05213
GERSTEN & CLIFFORD
214 Main Street
Hartford, CT 06106
(860) 527-7044
Her Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was faxed and mailed, via regular U.S. Mail, postage prepaid, on July 28, 2004 to all counsel and pro se parties of record, as follows:

Roberta J. Sharp, Esq.
Jessica Spangler Taylor, Esq.
Barry A. Chasnoff, Esq.
Akin Gump Strauss Hauer & Feld, LLP
300 Convent Street, Suite 1500
San Antonio, TX 78205
*Tel: 210-281-7146*
*Fax: 210-224-2035*

Donald E. Frechette, Esq
Joshua L. Milrad, Esq.
Charles F. Gfeller, Esq.
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103
*Tel: (860) 525-5065*
*Fax: (860) 527-4198*

________________________
Eliot B. Gersten, Esq.