UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CANDI MCCULLOCH, | : | |
| | : | CIVIL ACTION NO. |
| Plaintiff | : | 3:01CV1115 (AHN) |
| v. | : | |
| | : | |
| HARTFORD LIFE AND ACCIDENT | : | |
| INSURANCE COMPANY and | : | |
| EDUCATORS MUTUAL LIFE | : | |
| INSURANCE COMPANY, | : | |
| | : | MARCH 2, 2005 |
| Defendants. | : | |

## SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO SECOND AMENDED COMPLAINT

Defendants, Hartford Life and Accident Insurance Co. ("Hartford") and Educators Mutual Life Insurance Company ("Educators") (collectively, "Defendants"), by and through their undersigned counsel, answer the Second Amended Complaint by plaintiff Candi McCulloch ("Plaintiff") dated October 22, 2003 and filed on September 22, 2004, as follows:

1.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 1 of the Second Amended Complaint and, accordingly, deny the same and leave the Plaintiff to her proof.

2.    Educators admits the allegations contained in paragraph 2 of the Second Amended Complaint.    Hartford does not respond to the allegations contained in paragraph 2 of the Second Amended Complaint, as such allegations are not properly directed to it.

3.    Hartford admits the allegations contained in paragraph 3 of the Second Amended Complaint.    Educators does not respond to the allegations contained in

paragraph 3 of the Second Amended Complaint, as such allegations are not properly directed to it.

4.      Defendants admit that this Court has jurisdiction over this matter and that venue is proper in this district, but except as so specifically admitted, Defendants deny the remaining allegations contained in paragraph 4 of the Second Amended Complaint.

5.      Defendants admit that as of September, 1995, Plaintiff was employed by The Phyllis Rothman Women's Health Center and, further, that as of September, 1995, Plaintiff was insured under a group disability policy issued by Educators (the "Policy"), but, except as so specifically admitted, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 5 of the Second Amended Complaint and, accordingly, deny the same and leave Plaintiff to her proof.

6.      Defendants deny that the Policy definition of "Disability" or "Total Disability" is "the inability to 'perform the material and substantial duties of the member's occupation as it existed at the time disability began,'" as that is an incomplete statement of the Definition set forth in the Policy.  Defendants admit that the Definition of "Disability" or "Total Disability" includes "the inability to 'perform the material and substantial duties of the member's occupation as it existed at the time disability began,'" and refers Plaintiff to the Policy for the complete Definition of those terms.  Defendants are without knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegation that the Policy was a "profession-specific" policy as this term is not defined.

2

7.     Defendants admit that on or about October 3, 1995, Plaintiff stopped working but, except as so specifically admitted, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 7 of the Second Amended Complaint and, accordingly, deny the same and leave Plaintiff to her proof.

8.     Educators admits that in December of 1995, upon receipt of Plaintiff's claims for long-term disability benefits, Educators reached a determination that McCulloch met the Policy's definition of "Totally Disabled" and that she was entitled to long-term disability benefits because she was unable to perform the material and substantial duties of her occupation. Educators denies that this initial determination is conclusive. Educators further denies that this determination operates as a waiver of the Policy requirement that "Later proofs of the continuance of this disability must be furnished to us at such intervals as we may reasonably require," or as a waiver of the provision that Educators "shall have the right to examine. . .any person whose injury or sickness is the basis of a claim hereunder" and "may examine said person when and as often as it may reasonably require while a claim is pending." Finally, Educators denies that this initial determination on the basis of information submitted by Plaintiff is conclusive, determinative, or even probative as to the material fact issues in this case. Defendant Hartford does not respond to the allegations contained in paragraph 8 of the Second Amended Complaint, as such allegations are not properly directed to it.

9.     Defendants admit that Plaintiff treated with a variety of medical providers from October, 1995 to on or about September 2000, but, except as so specifically admitted, Defendants are without knowledge or information sufficient to form a belief as

to the truth of the allegations contained in paragraph 9 of the Second Amended Complaint and, accordingly, deny the same and leave Plaintiff to her proof.

10.     Defendants are without knowledge or information sufficient to form a belief as to the truth thereof and, accordingly, deny the same and leave the Plaintiff to her proof.

11.     Defendants admit that they executed a document entitled "Reinsurance Agreement" dated as of July 1, 1999. Defendants admit that the consideration for the Reinsurance Agreement included delivery by Educators to Hartford, at closing, of an Estimated Settlement Amount based on the reserves for the reinsured claims that were included in Educator's statutory financial statements as of June 30, 1999. Defendants admit that under the Reinsurance Agreement, Hartford assumed responsibility for the administration and management of the Reinsured Claims, including, without limitation, claims management, processing and payment. Defendants specifically deny the allegation that the document is properly characterized as "purported." Defendants further deny that Plaintiff represented the third highest monthly benefit obligation under the Reinsurance Agreement and that her disability benefits "exceeded $7,500 per month for the rest of her life."

12.     Educators admits that it entered the Reinsurance Agreement in order to cede the liability for and administration of the open professional association disability claims to Hartford. Educators denies that it "accepted" the claims of the persons whose disability claims were subject to the Reinsurance Agreement. Educators admits that it was no longer involved in administering the claims subject to the Reinsurance Agreement after the agreement was executed. Educators denies the remaining allegations contained

4

in paragraph 12 of the Second Amended Complaint. Defendant Hartford does not respond to the allegations contained in paragraph 12 of the Second Amended Complaint, as such allegations are not properly directed to it.

13. Defendants deny the allegations of paragraph 13 of the Second Amended Complaint.

14. Hartford admits that it contacted Plaintiff in December of 1999 and requested that she provide information regarding her disability, including a statement from her attending physician, and that an update of its records regarding her disability was one reason for the request. Hartford denies the remaining allegations in paragraph 14 of the Second Amended Complaint.

15. Hartford specifically denies that Plaintiff provided Hartford with all the information requested. Hartford admits that it received an Attending Physicians Statement dated November 18, 1999 from Dr. Carine Porfiri. Hartford admits that Dr. Porfiri's Statement relayed a diagnosis of "chronic pain, herniated cervical disc, TMJ, [and] migraines" and referenced a 9/98 MRI and "Fusion C6-C7." Hartford admits that the Statement includes the handwritten remark, "The patient is unable to perform the material duties of her profession. Hartford admits the Statement includes the handwritten remark, "The chronic condition of [illegible] likely to worsen, rather than improve over time." Hartford denies that Paragraph 15 is a complete statement of Dr. Porfiri's Statement. Hartford is without knowledge or information sufficient to form a belief as to the truth of the statements in Dr. Porfiri's Statement. Harford further denies that such statements are conclusive or determinative of the material fact issues in this case. As to the remaining allegations contained in Paragraph 15 of the Second Amended Complaint,

5

Hartford is without knowledge or information sufficient to form a belief as to the truth thereof and, accordingly, denies same and leaves Plaintiff to her proof. Educators is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 and, accordingly, denies same and leaves Plaintiff to her proof.

16.     Defendants admit that Plaintiff provided medical records in support of her claim that she was injured in an auto accident in or about February 2000, but, except as so specifically admitted, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the Second Amended Complaint, and, accordingly, deny the same and leave Plaintiff to her proof.

17.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 and, accordingly, deny the same and leave Plaintiff to her proof.

18.     Educators is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 and 18a through 18e of the Second Amended Complaint, and, accordingly, deny the same and leave Plaintiff to her proof. Hartford admits that in or about April 2000, it engaged in additional review to assess Plaintiff's claim and entitlement for long-term disability benefits. Hartford denies that this review is properly characterized as a "campaign." Hartford further denies that the statements of treating physicians are conclusive or determinative of the material fact issues in the case. Harford admits that its review included video surveillance of Plaintiff, and that a private investigating firm conducted a canvass of pharmacies in connection with this review. Hartford admits that it requested that Plaintiff be evaluated by a

6

Functional Capacities Evaluation ("FCE") pursuant to the policy provisions, but denies that this is properly characterized as a "demand." Hartford is without knowledge or information sufficient to form a belief as to the truth of the allegation that the physician chosen by Hartford to perform the FCE was more than 100 miles from Plaintiff's home; in any event, Hartford rescheduled the FCE with a different physician. Hartford admits it contacted Plaintiff's treating physicians, but denies that it attempted to "induce" these physicians to change their diagnosis of Plaintiff's disability.

18a.    Hartford admits it conducted surveillance of McCulloch on May 22 and 23, 2000, and on June 20 and 21, 2000, and that it did not inform Plaintiff of the surveillance at the time. Hartford denies the allegation that the surveillance did not disclose any activity inconsistent with Plaintiff's disability. Hartford denies the allegation that it did not inquire about Plaintiff's conduct.

18b.    Hartford admits it requested a Functional Capacities Evaluation for Plaintiff pursuant to the policy provision stating that "We (The Insurance Company) shall have the right to examine, at our own expense, any person whose injury or sickness is the basis of a claim hereunder. We may examine said person as often as it may reasonably require while a claim is pending." Hartford denies the remaining allegations of paragraph 17b and leaves Plaintiff to her proof.

18c.    Hartford admits that it intended to show the FCE physician the videotape surveillance of Plaintiff. Hartford denies that it intended the FCE as a "basis to terminate McCulloch's disability benefits." Hartford admits that Joseph Sterle, Disability Case Manager, informed Plaintiff that an FCE was being requested "to evaluate the claim in order to *offer* any vocational rehabilitation benefits for

which you may qualify" and Sterle stated he would be "remiss in my obligation to you not to explore this benefit that is available to you." Hartford admits Sterle informed Plaintiff that the FCE was necessary "due to an inability to obtain adequate medical documentation as well as care and treatment." Hartford denies the remaining allegations of paragraph 17c, and specifically the characterization that statements were made "notwithstanding" other documentation.

18d.    Hartford admits that by letter dated August 15, 2000, it requested that a Hartford Life and Accident field representative contact Plaintiff for a continuation of her disability interview. Hartford admits it informed Plaintiff that this request was made pursuant to the "Examination" and "Proof of Loss" provisions of the policy. Hartford denies the allegation that these statements may be properly characterized as "purported." Hartford admits that it represented the interview would involve "meeting you and going through some formatted questions regarding your disability claim" and that the interview would be "informal, and you will not need to have any documentation." Hartford is without knowledge or information to form a belief as to the truth of the allegation that Plaintiff did not know the field representative was a member of Hartford's Special Investigation Unit, or whether Plaintiff knew what Hartford planned to inform Plaintiff of during the interview. Hartford admits Plaintiff was asked to sign a statement during the interview but denies that this request is properly characterized as a "demand." Hartford denies the remaining allegations of paragraph 17d and leaves Plaintiff to her proof.

063670.0229 WEST 5655022 v1

18e.    Hartford admits it provided copies of the videotaped surveillance of Plaintiff to Plaintiff's physicians. Hartford denies that in attempted to induce any physician to change his or her diagnosis of Plaintiff. Hartford denies the allegation that Plaintiff's treating physicians "refused to alter their opinions." Hartford admits that Dr. Magana agreed to review the IME report and videotape and provide a letter, at his hourly rate of $500/hour. Hartford denies the remaining allegations of paragraph 17e, and specifically denies that Dr. Magana agreed to alter .his opinion in exchange for a fee, that Dr. Magana's fee was in any way determined by his conclusion, or that Dr. Magana's conclusion was in any way determined by his fee.

19.    Defendants admit Dr. Garg's report includes diagnoses of "lumbosacral strain," "disk bulging and protruded disk at L4-5 level and exaggeration of the neck injury secondary to motor vehicle accident from February, 2000," and chronic pain. Defendants admit that Dr. Garg's report concludes that Plaintiff could "work as an internist 16 hours a week and administrator work in the Women's clinic 30 hours a week." As to the remaining allegations contained in paragraph 19 of the Second Amended Complaint, and in particular the allegations that Dr. Garg's findings are "consistent" with Plaintiff's own physicians and/or that pain medications were "necessary" for Plaintiff's conditions, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations thereof and, accordingly, deny the same and leave Plaintiff to her proof.

20.    Defendants admit that Dr. Garg's Functional Capacity Evaluation Summary includes the following Restrictions & Limitations: "1. Avoidance of heavy

lifting, more than 10 lbs. 2. Frequent bending, stooping, twisting, and kneeling should be avoided. 3. Avoidance of one continuance constant positioning for more than an 1 hour. She should be able to do light duty work without any problems with above limitations." Defendants deny the remaining allegations of paragraph 20.

21.    Defendants deny the allegations of paragraph 21 of the Second Amended Complaint.

22.    Defendants deny the allegations of paragraph 22 of the Second Amended Complaint.

23.    Defendants deny the word "nevertheless" as it appears in Paragraph 23 of the First Amended Complaint and admit that Hartford informed Plaintiff by letter dated November 17, 2000 that she was not entitled to benefits as of August 14, 2000 and, therefore, is obligated to return to Hartford the long-term disability benefits paid between August and October, 2000. Defendants deny the remaining allegations of paragraph 23 of the Second Amended Complaint.

24.    Defendants admit that its November 17, 2000 letter states that "The weight of the evidence contained in your file does not support your inability to perform the duties of your occupation as it existed at the time of your leave from work on or after 8/14/00." Hartford admits that in reaching its determination, it relied in part upon medical records from Plaintiff's physicians, video surveillance of Plaintiff, and Dr. Garg's Functional Capacity Evaluation. Defendants deny the remaining allegations of paragraph 24.

25.    Defendants deny the allegations of paragraph 25 of the Second Amended Complaint.

063670.0229 WBST 5655022 v1

26      Defendants admit the allegations of paragraph 26 of the Second Amended Complaint.

## COUNT ONE – BREACH OF CONTRACT

27.     Defendants hereby incorporate by reference their responses to paragraphs 1 through 27 of the Second Amended Complaint as though more fully set forth herein.

28.     Defendants deny the allegations contained in paragraph 28 of the Second Amended Complaint.

29.     Defendants deny the allegations contained in paragraph 29 of the Second Amended Complaint.

## COUNT TWO – BREACH OF CONTRACT (As to Educators)

30.     Defendants hereby incorporate by reference their responses to paragraphs 1 through 29 of the Second Amended Complaint as though more fully set forth herein.

31.     Defendant Educators denies the allegations contained in paragraph 31 of the Second Amended Complaint.

32.     Defendant Educators denies the allegations contained in paragraph 32 of the Second Amended Complaint.

## COUNT THREE – BAD FAITH

33.     Defendants hereby incorporate by reference their responses to paragraphs 1 through 32 of the Second Amended Complaint as though more fully set forth herein.

34.     Defendants deny the allegations contained in paragraph 34 of the Second Amended Complaint.

35.     Defendants deny the allegations contained in paragraph 35 of the Second Amended Complaint.

063670.0229 WEST 5655022 v1

36.     Defendants deny the allegations contained in paragraph 36 of the Second Amended Complaint.

37.     Defendants deny the allegations contained in paragraph 37 of the Second Amended Complaint.

38.     Defendants deny the allegations contained in paragraph 38 of the Second Amended Complaint.

## COUNT FOUR – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AND EXPECTATIONS

39.     Defendants hereby incorporate by reference their responses to paragraphs 1 through 38 of the Second Amended Complaint as though more fully set forth herein.

40.     Defendants deny the allegations contained in paragraph 40 of the Second Amended Complaint.

41.     Defendants deny the allegations contained in paragraph 41 of the Second Amended Complaint.

## COUNT FIVE – VIOLATION OF CONNECTICUT INSURANCE PRACTICES ACT AND CONNECTICUT UNFAIR TRADE PRACTICES ACT

42.     Defendants hereby incorporate by reference their responses to paragraphs 1 through 41 of the Second Amended Complaint as though more fully set forth herein.

43.     Hartford admits it was engaged in trade or commerce in the State of Connecticut.  Defendants deny the remaining allegations contained in paragraph 43 of the Second Amended Complaint.

44.     Defendants deny the allegations contained in paragraph 44 of the Second Amended Complaint.

063670.0229 WEST 5655022 v1

45.    Defendants deny the allegations contained in paragraph 45 of the Second Amended Complaint.

46.    Defendants deny the allegations contained in paragraph 46 of the Second Amended Complaint.

47.    Defendants deny the allegations contained in paragraph 47 of the Second Amended Complaint.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

33.    On or about April 23, 2000, Plaintiff submitted a statement ("Statement") to Hartford regarding her claims of disability.  In the statement, Plaintiff represents that she has been and continues to be prevented from returning to work due to, inter alia, physical limitations from chronic pain.

34.    Despite Plaintiff's representations, an investigation conducted by Hartford reveals that Plaintiff is not restricted in her physical movement.  As part of this investigation, Plaintiff was video taped dancing with full range of motion including, but not limited to, bending, standing, swaying, and shaking for a considerable amount of time.

35.    In addition, on September 8, 2000, Plaintiff was interviewed by representatives of Hartford regarding her claims of disability.  At that meeting, again, Plaintiff represented that she has been and continues to be prevented from returning to work due to, inter alia, constant and/or burning pain in her neck, shoulder blades, scapula, lower back and thigh.  Plaintiff also represented that, since at least February 2000, her

physical movement has been restricted; that she could not stand in one position very long; that she was prevented from bending; and that she was unable to practice internal medicine. In addition, Plaintiff stated that she was unable to dance.

36.    Prior to the completion of Hartford's investigation, Hartford relied upon Plaintiff's representations that she was disabled.

37.    All of such statements by Plaintiff were untrue, and Plaintiff intended that Hartford rely upon them to its detriment. Harford's investigation of Plaintiff's alleged disability demonstrates that Plaintiff is not and was not, at the time of such representations, disabled, and, that Plaintiff has engaged in a fraudulent course of conduct which has enabled her to receive disability benefits to which she was otherwise not entitled.

**Second Affirmative Defense**

38.    Plaintiff has failed to allege facts sufficient to state a claim for relief against Hartford and Educators.

**Third Affirmative Defense**

39.    If Plaintiff is entitled to any recovery in this proceeding, which entitlement is denied, she is only entitled to recover those amounts for the period that she may have been Totally Disabled, if any, offset by any amount allowed by virtue of the Policy or by law.

14

## COUNTERCLAIM

In its Counterclaim for recovery of payments made to Plaintiff ("Counterclaim Defendant"), Hartford ("Counterclaim Plaintiff") alleges as follows:

## COUNT I (Fraud)

40.    Upon information and belief, Counterclaim Defendant was and still is a resident of the Commonwealth of Massachusetts.

41.    Counterclaim Plaintiff maintains a principal place of business in the State of Pennsylvania.

42.    On or about December 6, 1995, Counterclaim Defendant was insured under the Policy.

43.    On or about December 6, 1995, Educators received Plaintiff's claim for long-term disability benefits under the Policy, based on her alleged shoulder injury and neck pain.    Counterclaim Defendant further represented that in February, 2000 she allegedly injured her back and re-injured her neck in an auto accident.    Counterclaim Defendant intended that Educators or Hartford or both rely upon these representations.

44.    In order for Plaintiff to be eligible for benefits under the Policy, Plaintiff must be "Totally Disabled" as defined by the Policy.

45.    On or after January 2000, Hartford as administrator of the Policy, investigated Counterclaim Defendant's claim for long-term disability benefits.

46.    As a result of its investigation, Hartford determined that Counterclaim Defendant is not, in actuality, disabled and, in fact, has instead engaged in a fraudulent

063670.0229 WEST 5655022 v1

course of conduct which has enabled her to receive long-term disability benefits to which she was otherwise not entitled.

47.    Specifically, the Plaintiff represents in the Statement that she has been and continues to be prevented from returning from work due to, inter alia, physical limitations from chronic pain.

48.    Further, Plaintiff represented in the Statement that her alleged disability restricted her physical movement and that, as a result, she was unable to perform the duties of a doctor of internal medicine.

49.    Despite the representations in the Statement, an investigation by Hartford of Plaintiff's alleged disability reveals that Plaintiff is not restricted in her physical movement.

50.    As part of Hartford's investigation of Plaintiff's alleged disability, Plaintiff was video taped dancing with full range of motion including, but not limited to, bending, standing, swaying and shaking in one place for a considerable amount of time.

51.    In addition, on September 8, 2000, Plaintiff was interviewed by representatives of Hartford regarding her claims of disability.

52.    At that meeting, again, Plaintiff represented that she had been and continues to be prevented from returning to work due to, inter alia, constant and/or burning pain in her neck, shoulder blades, scapula, lower back and thigh.

53.    Plaintiff also represented that since at least February 2000, her alleged disability has severely restricted her physical movement; that due to her alleged pain, she could not stand in one position very long; that she was prevented from bending because of pain; and that she was unable to practice medicine.

16

54.    In addition, Plaintiff represented that she could no longer dance.

55.    Despite these representations, Hartford's investigation, including the videotape, demonstrates that Plaintiff is not restricted in her physical movement and, that, in actuality, she is not disabled.

56.    Disability benefits were paid to Plaintiff until August 14, 2000 based, at least, on her representations in the Statement that she was disabled when, in actuality, she was not, and, in fact, she has engaged in a fraudulent course of conduct which has enabled her to receive disability benefits to which she was otherwise not entitled.

57.    In fact, Counterclaim Defendant falsely and fraudulently represented to Counterclaim Plaintiff that her alleged medical condition rendered her Totally Disabled, as defined by the Policy.

58.    The representations made by the Counterclaim Defendant were false and fraudulent, and, in truth and in fact, Counterclaim Defendant was not, in actuality, disabled.

59.    The representations were known by the Counterclaim Defendant to be false when made, and were made with the intent to deceive Counterclaim Plaintiff and to induce it to pay long-term disability benefits to the Counterclaim Defendant.

60.    Counterclaim Plaintiff, at the time the representations were made in the Statement, believed them and in reliance thereupon was induced to pay Counterclaim Defendant long-term disability benefits.

61.    By reason of the foregoing, Counterclaim Plaintiff seeks damages, interest, costs and attorney's fees.

063670.0229 WBST 5655022 v1

## COUNT II (Unjust Enrichment)

62.    Counterclaim Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 61 as though more fully set forth herein.

63.    Counterclaim Defendant was not entitled to receive long-term disability benefits for that period of time during which the Counterclaim Defendant was not Totally Disabled as defined by the Policy but was receiving long-term disability benefits.

64.    On or about November 17, 2001, Hartford made demand on Counterclaim Defendant for the return of disability benefits paid to Counterclaim Defendant.

65.    Notwithstanding the demand, Counterclaim Defendant has wrongfully failed, refused and/or neglected to return the amounts due and owing, and Counterclaim Plaintiff has been damaged as a result.

66.    Counterclaim Defendant has been unjustly enriched by virtue of her failure to return money due and owing to Counterclaim Plaintiff.

WHEREFORE, Defendants respectfully request that this Court deny Plaintiff's claims and, further, that it enter judgment in favor of Hartford on its counterclaim, together with costs, legal fees and all further relief this Court deems just and proper.

063670.0229 WBST 5655022 v1

By: _____

Barry A. Chasnoff (ct11162)
Roberta J. Sharp (ct24407)
Jessica S. Taylor (ct24408)
AKIN GUMP STRAUSS HAUER & FELD L.L.P.
300 Convent Street, Suite 1500
San Antonio, Texas  78205
Telephone:  (210) 281-7000
Telecopier: (210) 224-2035

AND

Donald E. Frechette (ct 08930)
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103
Phone:  (860) 525-5065
Facsimile: (860) 527-4198

ATTORNEYS FOR DEFENDANT
EDUCATORS MUTUAL LIFE
INSURANCE COMPANY

## CERTIFICATION OF SERVICE

This is to certify that on the 2nd day of March, 2005, a copy of Defendants' Answer, Affirmative Defenses and Counterclaims to Second Amended Complaint was mailed, via U.S. Mail, to:

Eliot B. Gersten
Gersten & Clifford
214 Main Street
Hartford, CT 06106

Jessica Spangler Taylor

063670.0229 WEST 5655022 v1