# SPECIAL INVESTIGATION UNIT
## EMPLOYEE PERFORMANCE EVALUATION  THE HARTFORD

## General Information

| | |
|---|---|
| **Employee Name** Kim Gabrielsen | **Social Security Number** |
| **Employee ID Number** 121714 | **Date in job** 1997 |
| **Title** Senior Investigative Analyst | **Job Code** 818800 |
| **Last Performance Evaluation Date** 4/1/2001 | **This Performance Evaluation Date** 3/1/2002 |

## Objectives

**1** Appropriate Review and Identification of Suspicious Claims for Investigation
- ⇒ Provide effective supervision of subordinate Investigative Analysts through the application of effective leadership and interpersonal skills. Lead by example and influence others to adopt positive attitudes and the willing cooperation of others. Demonstrate persuasiveness and a take charge attitude to ensure that the team mission gets accomplished.
- ⇒ Ensure that investigations are being conducted appropriately and within established guidelines by reviewing the work product and results of subordinates. Through these reviews, identify training and development opportunities and providing the training that is necessary.
- ⇒ Evaluate and properly document overall subordinate performance. Provide timely and constructive feedback through positive oral and written communication. Use influence to motivate subordinates to achieve challenging standards and perform with enthusiasm, intensity and a positive attitude.
- ⇒ Demonstrate principled leadership and sound business ethics, show consistency among principles, values and behaviors.

**Manager Comments**
For much of the last year, Kim had supervised the I/A staff of 2 at the Group Re Office at Windsor. In August, Kim relocated to the Focus Review office at Aurora and is supporting the IB and FR staff there. Since the relocation, Kim has evolved away from being a supervisor and is now primarily an individual contributor.

While supervising, Kim had an excellent relationship with her staff. She was approachable and did a very good job supporting and teaching the junior staff. Results at the Group Re office were not as significant as at some of the other offices with similar business and this was attributed to an ongoing culture that Kim was effectively helping to change over time.

Since relocating to Aurora, Kim has established a good working relationship with her customers there. She has been able to train the staff in Hartford's way of approaching and investigating potential fraudulent claims. She has also assumed responsibility for the investigation of numerous cases that a former Sacramento office I/A (now promoted) had been investigating. These cases are ongoing and results are still expected from these investigations.

Kim consistently displays sound ethics and ensures that the manner in which the investigations are conducted is appropriate and within established guidelines.

REDACTED    [-1-]    H13042

**2 Conduct Thorough Investigations of Suspicious Claims**
- ⇒ Complete prompt reviews of referrals and accept or reject them for investigation as appropriate.
- ⇒ Conduct Proactive Reviews of claims files and identify suspicious claims.
- ⇒ Consider red flags and established claim selection criteria in addition to policy/contract language.
- ⇒ Maintain appropriate investigative case load.
- ⇒ Develop and execute appropriate investigative strategies in accordance with established procedures.
- ⇒ Selection, direction, and proper utilization of investigative resources including data search services and surveillance vendors in a financially responsible manner.
- ⇒ Communicate effectively with Investigators, Claim Examiners, and all other BMS staff members.
- ⇒ Guide, recommend, and influence the proper claim decision.
- ⇒ Accurately and promptly complete the SOAP note and termination letter when appropriate.
- ⇒ Correctly identify and report SIU claim impacts according to established criteria.
- ⇒ Support the Appeals Unit as necessary.

*Manager Comments*
This was an off year for Kim and results were not as expected or experienced in the past. During 2001, Kim had 12 impacts and reserve savings of $1.34m. There were also numerous cases that were not updated within the expected time frame or did not receive meaningful investigative actions within a reasonable time. This shortcoming has been pointed out to Kim and is expected to improve and not reoccur. Kim's proactive reviews were very low at one and this is significantly less than what would be expected for someone in this position.

Some of the problems cited are attributable to the relocation and the major changes that have occurred during the last year. I fully expect that Kim will have a banner year in 2002 and I sense that any shortcomings are resolved.

Overall, Kim produced quality work, although with her skill and experience I would have expected greater results during 2001.

**3 Promote Fraud Awareness**
- ⇒ Provide ongoing guidance and information to Benefit Management Services staff.
- ⇒ Conduct annual and new employee training sessions as required and according to the established time schedule.
- ⇒ Foster frequent and positive communication between the SIU and the claim staff.

*Manager Comments*
Training and communication are some of Kim's strongest skills. She has done a very good job of training all staff in fraud awareness. Her enthusiasm and knowledge provide a very positive message that goes a long way to strengthening our program.

**4 Teamwork / Special Projects**
- ⇒ Review system exception reports to identify oversights.
- ⇒ Participate in team projects.

*Manager Comments*
Kim always volunteers for committees and participates willingly and effectively. She displays leadership in her participation with groups such as the annual team conference committee and others.

# Competencies

Describe demonstration of the competency during the evaluation period. Give specific examples.

| Competencies | Manager Comments |
|---|---|
| Team player | Kim is a strong team player and is committed to improving our team's effectiveness. |
| Results focused | Kim understands the importance of results and is expected to have a huge impact in 2002. |
| Quality Focused | Kim works hard to assure a quality product. |
| Integrity and professionalism | Kim's integrity and professionalism are exemplary. |
| Fosters open communication | Kim is a good communicator. |
| Analytical skill | Kim has analytical skills |
| Manages Details | Kim works hard to avoid getting bogged down in detail. She recognizes that this is a challenge. |
| Manages Delegation | Kim does manage delegation. |
| Exercises Diplomacy | Kim tries to approach problems with diplomacy in mind. |
| Manages Conflict | Kim works hard to effectively manage any conflict that is confronted. |
| Adaptable | Kim has shown her adaptability during her recent relocation to Aurora. |

H13044

## Performance Summary

Describe overall performance in regard to objectives, critical competencies, and progress on development plans.

*Manager Comments*
Kim's overall performance was at a **Quality** level.

As previously discussed, Kim had an off year in 2001 and results were not what had been expected or experienced in the past. This is understandable considering the major upheaval in her life during the relocation in the middle of the year. She has established herself at the new FR assignment and is building an effective program there.

It's important to manage all assigned cases and not get distracted by focussing on only a few at a time. She must work hard to remain organized so that all work gets the proper attention.

I expect a great year in 2002 and congratulate Kim on her new assignment and on building good working relationships with her new customers.

*Employee Comments*

## Signatures

_____  3/14/02
Employee*                         Date

_____  3/15/02
Supervisor                        Date

_____  3/31/02
Next Level Supervisor             Date

*The employee's signature here indicates that s/he has read the document and has discussed it with his/her immediate supervisor. It does not imply agreement with the content.

H13045

SIU Employee Performance Evaluation        [-4-]        03/14/02

<u>Notes of one on one teleconference</u>
<u>Kim Gabrielsen and Jack McGoldrick</u>

<u>December 13, 2001, 8:30 AM to 10:07 AM</u>

By prior arrangement, I called Kim at 8:30 AM for a one on one discussion, specifically to discuss cases and any impediments to getting results. Prior to going over cases I asked Kim if there was anything that she wanted to discuss. She said that there wasn't so we started reviewing Activity Logs of her cases.

Kim said that she has 25 cases that she had taken over from Sacramento, 12 Focus Review cases and 2 Allstate cases. It is notable that most of the 25 cases taken from Sacramento were well developed by the previous I/A. Kim and I have had prior talks about these cases and I told her that I wanted her to focus on, and make a priority of those case investigations where a significant surveillance had been done and our team investigators had done interviews. This is a priority because of the likelihood of quick success and the fact that we have expended significant time and monetary resources already. Kim has said that she understood and would handle those. As recently as 12/11/01 I asked if there were any cases of that sort that had not been handled and Kim said there wasn't. It turns out that there were several.

We went over each case and these will be noted on a spreadsheet. Additionally, I kept paper copies of the Activity Logs as of 12/11.

From the review of the investigations done, it is clear that there are many inadequacies. I noted that approximately 75% of the cases had not had any <u>meaningful</u> investigative action in well over 2 months. Several cases had not been looked at yet, although Kim assumed responsibility for them in early September 2001. I also found that 16 cases have had no updates whatever in over 60 days and of these, 7 have not had any investigative actions whatever taken by Kim since she assumed responsibility for them.

Kim stated that I was making it sound like she doesn't do any work at all. I told her that this was not the case, but that she needs to handle <u>all</u> of her cases, not just some of them. I also pointed out that most of the work had been done on these cases and that her responsibility was to bring them to conclusion (which should be quicker and easier than handling from the initial case acceptance.) She said that she does have a tendency to focus on a few cases and lets others go.

I told Kim that the inadequacies observed in my review of these cases is not acceptable. There is a lot of the company's resources at stake and that we had to handle these quickly and properly. Many of the surveillances and interviews are now very old and may even be irrelevant at this point.

I asked Kim to commit to a date to have all of these cases receive <u>meaningful</u> updates. Km said that she was sure that I wanted it sooner rather than later. I told her that I would be reasonable and suggested the end of January. She said that she would do it sooner and

H12815

we agreed on Friday January 11, 2002. I explained that these cases must have meaningful steps taken towards a resolution. We also talked about the lack of claim impacts by Kim this year (8) and that cases must be worked to get the results that we're committed to.

Many of the cases reviewed noted that Kim had called or written to the examiner and had not received a response. I told her that this wasn't acceptable and that she didn't get a response from anyone she should raise it to the team leader level or let me know and I'll help. I also suggested direct telephone contact rather than an exchange of e-mails.

It should also be noted that the desired caseload for an I/A, particularly for one as experienced as Kim, should be about 50 to 60 active investigations. Further, it's expected that cases will be accepted (through referral and/or proactive review) each month while others evolve away. Of these, typically our team impacts about 1/3. Kim has not consistently had a full case load and the assignment of the Sacramento cases was intended to help her get up to the desired caseload as she established herself at the new office assignment at Aurora. I expected that claims would be added as the Sacramento claims were resolved. The present claim resolutions as well as the new case assignments are not happening as quickly as anticipated and this needs attention.

I will forward a copy of these notes to Kim and accept any comments that she wishes to make.

**H12816**

Notes of one on one teleconference
Kim Gabrielsen and Jack McGoldrick

January 10, 2002 – 11:00 AM to 11:40 AM

On this date at 11, I called Kim by phone for a prearranged one on one. This had originally been scheduled for tomorrow but had been rescheduled at her request because she wanted to take tomorrow off to prepare for the trip to CT for the conference.

The first thing that we discussed was the _____ case and all the e-mails that have been generated about it. Kim said that she had made the mistake of believing that the Examiner (Nicole) had done what had been asked of her. She has now learned to deal directly with rehab and clinical if needed.

We had a general discussion about the Sacramento office and what is being done to improve our results there.

I asked Kim for a case count. She told me that presently she has 23 Sacramento case, 13 Focus Review and 2 Allstate. There are another 5 to 10 for data entry, giving an estimate total count of 42 to 48. I told Kim that I wanted a total maintained of about 50 going forward. We discussed the long history of not having enough cases and how she had committed to getting to 50 last May but then was unable to do this because of accident. We also discussed how important it is to have cases come in and cases go out every month. I told Kim that she had to pay attention to all cases and not get distracted by a very few "hot" cases while others went untouched for extended periods. She agreed that she will do this going forward.

Kim assured me that every case that we went over in our 12/13/01 one on one has been meaningfully updated. She will keep them that way.

I told Kim that I understood the pressures and stress that she had been under, particularly since leaving CT to relocate to IL. I told her that this was now behind her and she needed to step up and get focussed again at work. I further said that she was too valuable a resource for us not to get her best efforts and that we needed great results from the Aurora office. We talked about the poor year that Kim had in 2001 and she agreed. We resolved to improve in this area greatly.

We discussed the _____ case and my advice was to close the case and not take credit for the upcoming termination. She agreed.

**REDACTED**

H12817

Kim: She is a tenacious investigator. Kim will follow up aggressively on those claims that possess potential for business outcome. Kim is helpful, taking on responsibilities from examiners that would not be required of her. recent ex. - sending material to BHCM to encourage them to act in a more timely manner pertinent to the requested help. Kim appears to have a healthy cynicism that questions those things that we could take for granted regarding a person's ability to function. She seems to have an eye for detail and picks up quickly on incongruities and questions them.

There appears to me to be that there are reversed roles than may have less to do with Kim and more to do with how IA is allowed to function in the LTD dept. I'm not used to having an SIU take "ownership" of claim responsibility where the examiner is given the appearance, in my interpretation, of collecting data for IA to resolve the claim for business outcomes. The more I speak with her on the workings of IA in the LTD dept., the more it seems that the examiner/investigator roles are flipped if not at least decidedly blurred. Also, getting credit for reserve takedown means possibly getting involved on claims that would not necessarily warrant SIU involvement. Also, once IA gets involved, it appears we have to take it to the end (clmt interview and IDing) even though the clmt may be terminated based on what med evidence is already in file. I have at least 5-6 files currently in IA awaiting ID and interview, at least 2-3 of which may be able to be closed now, though admittedly, the IA info could possibly strengthen the term. Again, this does not have as much to do with Kim are much as how the role of IA has been established and possible relative weakness of the examining roles.

Steven L. Foster
Claims Specialist
phone: 630 692-8810
fax: 860 392-1417
Cassandra L. Jones

Cassandra L. Jones
01/24/2003 08:26 AM

To: Steven L Foster/HLIFE@HARTFORD_LIFE, Janet Fricano/HLIFE@Hartford_Life, Kim L

02/04/2003   03:44PM

H12805