UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CANDI McCULLOCH | : CIVIL ACTION NO. |
| | : 301CV1115(AHN) |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| HARTFORD LIFE AND ACCIDENT | : |
| INSURANCE COMPANY AND EDUCATORS | : |
| MUTUAL LIFE INSURANCE COMPANY | : |
| Defendants. | : May 17, 2005 |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR RECONSIDERATION OF OMNIBUS RULING ON
THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

In her pending Motion for Reconsideration, plaintiff pointed to evidence and law that the court overlooked in its Omnibus Ruling on the parties' motions for summary judgment.

Defendant Educators Mutual Life Insurance Company ("Educators") has not filed any opposition to plaintiff's Motion for Reconsideration of the Court's ruling granting Educators' Motion for Summary Judgment in part.

While defendant Hartford Life and Accident Insurance Company ("Hartford") partially opposes plaintiff's Motion for Reconsideration of the Court's ruling on the motions related to claims by and against Hartford, it has conceded that the court made the factual errors to which plaintiff pointed in her motion. Unable to refute these facts, Hartford unabashedly presents arguments and evidence that it did not present in support of its initial motion. These arguments and supplemental evidence, however, only highlight the existence of disputed questions of fact and disputed inferences to be drawn from the facts, and thus the impropriety of the court's ruling.

## II. WHETHER HARTFORD HAD REASONABLE GROUNDS TO TERMINATE PLAINTIFF'S BENEFITS IS A DISPUTED ISSUE

Defendants argue that the court properly granted summary judgment in Hartford's favor on plaintiff's bad faith claim, because Hartford had "voluminous evidence" to support the termination. Def. Opp., pp.4-5. As set forth in plaintiff's Motion for Reconsideration, summary judgment was not appropriate because plaintiff presented, and this court overlooked, evidence from which a trier of fact could conclude that Hartford obtained this so-called evidence by improper means, including by **knowingly using *fabricated* FCE results, and the IME opinion of the physician whom it knew fabricated the test results,** and thus, that this evidence did not give Hartford a reasonable ground to terminate plaintiff's benefits.

Further, while defendants now assert that the video surveillance, alone, was conclusive evidence of plaintiff's functionality, upon which Hartford and the physicians could rely, even in the absence of an FCE (Def. Opp.8-11), plaintiff presented the testimony of Hartford's Disability Case Manager, which directly contradicts this argument. He testified, clearly and unequivocally, that the video surveillance was insufficient to establish plaintiff's regular functionality, and that, without a "formal" FCE, it would be impossible for Hartford to ascertain whether plaintiff was capable of performing the duties of her occupation on a full time basis.[1]

Additionally, while defendants attempt to excuse their use of fabricated FCE results, and their failure to obtain an FCE, by distinguishing between a "formal" and "informal" FCE, and implying that Dr. Garg properly performed an "informal" FCE, the results of which she summarized in the document that purported to be "summary of a Functional Capacities

---

[1] See Exhibit 2 to Plaintiff's Motion for Reconsideration; and Pl. Ex. OO, pp.49:1-4, p.51:23-52:2; 93:13-94:2; 112-113; 122:12-124:4 ("the FCE would have been essential"), 126:4-127:11. In light of this testimony by Hartford's own Disability Case Manager, defendants' representation that plaintiff's counsel has somehow manufactured the opinion that Hartford needed to obtain an FCE (Def. Opp., pp.1, 4, 7), cannot be reconciled with the mandates of Rule 11.

2

Evaluation performed on August 14, 2000." This argument is disingenuous at best. Both Hartford's Disability Case Manager who scheduled the FCE and Hartford's contracted physician reviewer testified that there is no such thing as an "informal" FCE, and that the "summary" that Dr. Garg provided to Hartford, which Hartford forwarded to the other physicians, purported to summarize the results of a "formal" FCE – which Dr. Garg has admitted she did not perform.[2] In light of this testimony, whether Dr. Garg's distinction between a "formal" and "informal" FCE is credible, or is simply a transparent, but ineffective, attempt to avoid admitting that she had fabricated the FCE results and improperly billed Hartford for conducting a test that she did not perform, is a question for the trier of fact based on the evidence and its assessment of the credibility of the witnesses – it is not properly resolved on a motion for summary judgment.[3]

Moreover, regardless of whether Hartford, and the physicians *could have* concluded that plaintiff was not disabled in the absence of a "formal" FCE, the fact is that both Hartford and the physicians relied on the *fabricated* results of a "formal" FCE to reach their conclusions.[4] In light of the testimony of Hartford's Disability Case Manager that the results of a formal FCE were

---

[2] See Amato Deposition, pp.61:17-62:14 (attached hereto); Pl. Ex. OO, p.113:7-12, pp.126:4-127:11 ("**A nonformal or informal FCE is not an FCE** . . . An FCE, a requested FCE, is a formal FCE. **There's no way around that**."), pp.144:25-145:25, p.149:12-19; Ex. WW at 56-57, cited in Pl. Stmt. – Add'l Facts, ¶ 74 and attached as **Exhibit 3** to Plaintiff's Motion for Reconsideration.

[3] Moreover, regardless of whether Hartford, and the physicians *could have* concluded that plaintiff was not disabled in the absence of a "formal" FCE, the fact is that both Hartford and the physicians relied on the *fabricated* results of a "formal" FCE to reach their conclusions. See Pl. Ex. OO, p.144:25-145:25, p.149:12-19 (Dr. Garg's FCE Summary would indicate to any medical professional that it reflected the results of a formal FCE); cited in Pl. Stmt. – Add'l Facts, ¶ 74 and attached as **Exhibit 2** to Plaintiff's Motion for Reconsideration; Pl. Ex. WW at 56-57 (same), cited in Pl. Stmt. – Add'l Facts, ¶ 74 and attached as **Exhibit 3** to Plaintiff's Motion for Reconsideration . In light of the testimony of Hartford's Disability Case Manager that the results of a formal FCE were essential to determine plaintiff's level of functionality, whether Hartford and the physicians would have reached the same conclusion in the absence of the fabricated FCE results is a disputed question of fact.

[4] See Pl. Ex. OO, p.144:25-145:25, p.149:12-19 (Dr. Garg's FCE Summary would indicate to any medical professional that it reflected the results of a formal FCE); cited in Pl. Stmt. – Add'l Facts, ¶ 74 and attached as **Exhibit 2** to Plaintiff's Motion for Reconsideration; Pl. Ex. WW at 56-57 (same – and that he did assume that the report reflected the results of a formal FCE), cited in Pl. Stmt. – Add'l Facts, ¶ 74 and attached as **Exhibit 3** to Plaintiff's Motion for Reconsideration .

essential to determine plaintiff's level of functionality, whether Hartford and the physicians would have reached the same conclusion in the absence of the fabricated FCE results is a disputed question of fact.

Finally, defendants utterly contradict their argument that an FCE was unnecessary, to argue that the termination was justified because of a "virtual absence of any treating physician's statement of *restrictions* or *limitations* (as opposed to *diagnosis* or *treatments*) that would prevent Plaintiff from performing the material and substantial duties of her occupation." Def. Opp., pp.4-5 (emphasis in original). Plaintiff, however, presented evidence from which a reasonable juror could reject this argument. Plaintiff provided Hartford with all of the documentation it requested, including an Attending Physician Statement, which clearly stated that plaintiff "is unable to perform the material duties of her profession" due to the "chronic condition of . . . cervical neck pathology" (Htfd. Ex. A(8)), and yet another physician, Dr. Walters, had clearly expressed her opinion that plaintiff was not capable of performing the duties of her occupation. Pl. Ex. K, pp.3, 5 ("It is Dr. Walter's opinion that her patient's clinical status does impact on her occupational functionality. The patient has persistent chronic interscapular pain and cervical radicular pain to both shoulders and to the trapezius muscles and she gets spasms." "Dr. Walters feels definitively that the [sic] Dr. McCulloch's pain and difficulty functioning prevents her from working as an internist.")[5] Moreover, Drs. Garg and Magana both

---

5   Hartford never asserted this alleged absence of evidence to plaintiff at any time prior to terminating her benefits, or in its termination letter, or in its motion for summary judgment, until its reply brief. Hartford's claim manual requires that when information outstanding is necessary for a claim determination, Hartford must provide a "30 day" notice of possible denial or termination to the claimant, so that the claimant can supply the missing information prior to termination. Htfd. Ex. A(1), pp.20, 25, cited in Pl. Stmt. – Add'l Facts, ¶80. Thus, to the extent, if any, that a trier of fact accepted Hartford's claim that plaintiff's Attending Physician Statement and the other statements from plaintiff's treating physicians, were deficient because they failed to contain a "statement of *restrictions* or *limitations* (as opposed to *diagnosis* or *treatments*)," the trier of fact could, nevertheless, conclude that Hartford was guilty of bad faith because it failed to provide plaintiff with advance notice and an opportunity to supply

stated that plaintiff was restricted from bending, and plaintiff provided evidence that the material duties of an internist require much bending. Htfd. Exs. A(23), (28); Pl. Ex. M, pp.4-5, cited in Pl. Stmt. – Add'l Facts, ¶ 87.

Regardless of defendants' evidence and arguments, "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial. There must either be a lack of evidence in support of the plaintiff's position, or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." Danzer v. Norden Systems, Inc., 151 F.3d 50, 54 (2nd Cir. 1998). Plaintiff has presented evidence that counters defendants' contention that Hartford had an "arguably justifiable" reason to terminate plaintiff's benefits – the court may not properly determine which evidence will be most persuasive at trial on a motion for summary judgment.[6]

### III. WHETHER HARTFORD INVESTIGATED PLAINTIFF'S CLAIM IN BAD FAITH INVOLVES DISPUTED ISSUES OF FACT AND INFERRENCES

Defendants pretend that the primary issue raised by plaintiff's motion for reconsideration is whether Hartford's failure to obtain a Functional Capacities Evaluations ("FCE") of plaintiff prior to terminating her benefits, was in bad faith.[7] The court should not allow defendants to mislead it, once again. The critical evidence that this court overlooked is that Hartford **knowingly relied on *fabricated and misleading* FCE results, and the opinion of the physician**

---

this allegedly critical information.

[6] The court should disregard defendants' patently improper attempt to sway the court by out of context quotation from five exhibits that defendants did not submit in support of the motion for summary judgment, including medical reports of plaintiff's condition years after Hartford terminated plaintiff's benefits. Def. Opp., pp.33-34, fn.33 and new Exhibits D, E, F, G, & H. Defendants did not address their motion for summary judgment to plaintiff's claim that she was disabled at the time of the termination, plaintiff has not had the opportunity to present opposing evidence and arguments, and, for purposes of the motion, the court must assume that plaintiff was, in fact, disabled at the time Hartford terminated her benefits.

[7] See Def. Opp., p.1; p. 3 ("There is no evidence a formal 'functional capacities evaluation' would have changed Hartford's decision, and the absence of one should not change this court's decision"); p. 5 ("There is no evidence to suggest that the omission of an FCE was an act of ill will."); p.7 ("Plaintiff's counsel may not substitute his lay opinion that an FCE was necessary . . .")

5

**whom it knew fabricated the test results,** both to justify terminating plaintiff's benefits and to generate additional evidence to support terminating plaintiff's benefits.  Moreover, contrary to defendants' argument, plaintiff has presented compelling evidence from which a trier of fact could conclude that this conduct was in bad faith, and was not merely "oversight or poor judgment." Def. Opp., pp.5-6.

### A. AS OF SEPTEMBER 28, 2000, HARTFORD KNEW THAT DR. GARG HAD IMPROPERLY PROVIDED IT WITH A FABRICATED AND MISLEADING SUMMARY OF THE RESULTS OF AN FCE THAT SHE HAD FAILED TO PERFORM AND FOR WHICH SHE HAD BILLED HARTFORD

Plaintiff presented unequivocal testimony of Hartford's Disability Case Manager who scheduled the FCE that that, as of September 28, 2000, Hartford knew that Dr. Garg had billed Hartford for an FCE that she did not conduct and provided Hartford with a misleading document that purported to summarize the results of the FCE that she did not perform:

     1.  Hartford expressly contracted and paid for Dr. Garg to perform a 2-4 hour Functional Capacities Evaluation, separate and apart from the IME.  Pl. Ex. OO, pp. 123:10-124:4, 126:11-12 & line 22; See also Id., pp.51:23-52:2, 111:14-21; 112:4-8; 113:16-21, 140:21-23.  The FCE was "essential to the IME . . . Because the reason for the IME was to find out what Ms. McCulloch's functional capabilities were," and he informed Dr. Garg's office of this fact.  Pl. Ex. OO, p.123:4-9.  There is no doubt in his mind that it would have been clear from the case notes that he left for Marcia Esson-Anderson, who took over his position when he left Hartford, that Hartford had scheduled, paid for, and expected, a full FCE from Dr. Garg.  Pl. Ex. OO, pp.139:2-21, 141:10-14.

     2.    "**A nonformal or informal FCE is not an FCE** . . . An FCE, a requested FCE, is a formal FCE.  **There's no way around that**," and that is what he expected of Dr. Garg.  Pl. Ex. OO, p.127:2-11.

     3.    The document that Dr. Garg provided, which purported to be a "summary of a Functional Capacities Evaluation done on August 14, 2000" indicates that Dr. Garg performed a formal Functional Capacities Evaluation.  Pl. Ex. OO, p.144:25-145:25.  If Dr. Garg had failed to perform the formal FCE for which Hartford had paid her, Hartford's Disability Case Manager would not have expected Dr. Garg to provide such a document.  Pl. Ex. OO, pp.113:7-12; 145:12-25.  The purported FCE summary is not the type of document that a doctor who had only performed an "informal" FCE would provide.  Id., p.145:12-25.

     .

      4.      The case notes make clear that, as of September 28, 2000, Hartford was aware that Dr. Garg had failed to perform the FCE for which Hartford had paid her, and that she purported to have performed. 140:8-142:5, 146:12-21.

### B. THE FCE "SUMMARY" THAT HARTFORD FORWARDED TO OTHER DOCTORS WAS MISLEADING AND HARTFORD KNEW, OR WAS RECKLESS IN NOT KNOWING, THAT IT WAS MISLEADING

Plaintiff also presented testimony that Hartford knew, or was reckless in not knowing, that the FCE "summary" that it sent to plaintiff's physicians and to its own contracted physician reviewer, would lead them to believe that Dr. Garg had performed a "formal" FCE, that this document was an accurate summary of the results of that FCE, and that these physicians would rely on the summary as such. Specifically, plaintiff presented:

      1.      The testimony of Hartford's Disability Case Manager that the document that Dr. Garg provided, which purported to be a "summary of a Functional Capacities Evaluation done on August 14, 2000" indicates that Dr. Garg performed a formal Functional Capacities Evaluation. Pl. Ex. OO, p.144:25-145:25. If Dr. Garg had failed to perform the formal FCE for which Hartford had paid her, he would not have expected Dr. Garg to provide such a document. Pl. Ex. OO, pp.113:7-12; 145:12-25. The purported FCE summary is not the type of document that a doctor who had only performed an "informal" FCE would provide. Id., p.145:12-25.

      2. The testimony of Hartford's Disability Case Manager, Nurse Sterle, and Hartford's contracted physician reviewer, Dr. Amato that any healthcare professional that received the FCE report that Dr. Garg provided to Hartford would believe that the report reflected the results of an FCE that Dr. Garg had performed. Pl. Ex. OO, pp.144:25-145:18, p.149:12-19 ("Q . . . if you were a healthcare professional, a treating physician, if you will, and you received the summary, is it fair to say, sir, that the summary would lead you to believe as a healthcare professional that full test was done? A: Yes."), cited in Pl. Stmt. – Add'l Facts, ¶ 74 and attached as **Exhibit 2** to Plaintiff's Motion for Reconsideration; Pl. Ex. WW at 56-57,[8] cited in Pl. Stmt. – Add'l Facts, ¶ 74 and attached as **Exhibit 3** to Plaintiff's Motion for Reconsideration; and

---

[8] Dr. Amato testified as follows regarding the purported FCE Summary: "Q Do you know if a test was performed on Dr. McCulloch, as you've referenced? A I received the report. And I would assume that a physician would not make up a report without performing a test. Q Do you know if the physician in this case conducted the -- what you're calling a two or three hour test on Dr. McCulloch? . . .THE WITNESS: I have to accept the fact that a report was generated, and, therefore, that a test was done . . . Q . . . -- you've indicated you made an assumption that a test was performed, based upon your review of a report? A I had no reason to assume one was not done, just as when you receive any kind of report on a test you must make an assumption the test was done."

7

3. The testimony of Hartford's Disability Case Manager that the results of the FCE that Hartford scheduled were intended to be, and would be, the primary indication of plaintiff's level of functionality. Pl. Ex. OO, pp.76:1-77:77, 92:13-17, 94:3-11, 123:4-9, 182:9-11, cited in Pl. Stmt. – Add'l Facts, ¶ 69-70, 76-77 and attached as **Exhibit 2** to Plaintiff's Motion for Reconsideration.

### C. HARTFORD SHOULD HAVE, AND NORMALLY WOULD HAVE, IMMEDIATELY SCHEDULED AN FCE AND QUESTIONED DR. GARG

Plaintiff also presented the testimony of Hartford's Disability Case Manager that Hartford's failure to obtain an FCE and to question Dr. Garg was an abnormal and inappropriate response to Dr. Garg's deception. Hartford's Disability Case Manager testified that:

1. Had he still been employed at Hartford, upon discovering Dr. Garg's deception, he would have been very upset. Pl. Ex. OO, pp.123:22-124:4, 126:17-22. He would have "immediately set up a real FCE and then question what was going on with Dr. Garg." Pl. Ex. OO, p.142:22-24, cited in Pl. Stmt., ¶ 66 & Pl. Stmt. – Add'l Facts, ¶¶ 69-70, 76-77, and attached as **Exhibit 2** to Plaintiff's Motion for Reconsideration.[9] Based upon his experience at Hartford, this is what should have been done. Id., pp.146:22-147:5.

2. Nurse Esson, the replacement Disability Case Manager, would not have been doing her job to simply note that Dr. Garg had failed to perform the FCE. Pl. Ex. OO, p.142:14-16.

Notwithstanding the foregoing testimony, defendants have the audacity to ask the court to *infer* that Hartford did not act in bad faith when it decided not to schedule an FCE after it discovered that Dr. Garg had failed to perform an FCE, because: (a) Dr. Garg made the unilateral decision that it was "unnecessary" to actually conduct the FCE (Def. Opp., pp.7-8); (b) defendants have retained "experts" in this litigation who have opined that an FCE was unnecessary (Def. Opp., p.9); (c) the physicians to whom Hartford knowingly provided the

---

[9] Defendants' claim that "Plaintiff does not suggest to the Court exactly what she believes Hartford *should have* done" upon discovering that the test results were fabricated, is patently absurd. Def. Opp., p.6. Clearly, at the minimum, what Hartford should not have done, is forward these false and misleading test results to other physicians to serve as a basis for their opinions on plaintiff's functionality and then rely on these opinions, as well as the false FCE results themselves, to justify terminating plaintiff's benefits. See Hines v. UNUM, 110 F.Supp.2d 458, 466 (W.D.Va. 2000.) (granting plaintiff's motion for summary judgment on bad faith claim where Unum relied on questionable test results); Stenger v. Provident Life & Accident Ins. Co., 121 F.Supp.2d 1238 (E.D.Wis. 2000).

fabricated document that purported to be a "summary of a Functional Capacities Evaluation done on August 14, 2000" did not request that Hartford provide them with the underlying data from which the fabricated results were purportedly derived (Def. Opp., p.10); and (d) Hartford initially had made the effort to schedule an FCE and Nurse Esson noted the absence of an FCE in the case notes. Def. Opp., p.6.

A trier of fact could, and most likely would, view these arguments with the contempt that they deserve.  The fact that Dr. Garg "did not see the need to send Dr. McCulloch for a 'formal' FCE," even though she had contracted with Hartford to perform such a test, she purported to have performed such a test, and she billed Hartford for having performed such a test - is hardly evidence that an FCE was unnecessary.  The evidence shows that the sole reason that Dr. Garg did not perform an FCE is that, contrary to her representations to Hartford, **Dr. Garg does not have the equipment or expertise necessary to perform an FCE.** [10]  If Dr. Garg, "a board certified physiatrist" (Def. Opp., p.8), truly believed that the FCE that Hartford had requested that she perform was unnecessary, she should have informed Hartford of this fact, instead of sending Hartford a document that purported to summarize the results of a "formal" FCE, and billing Hartford for conducting a "formal" FCE.

Even assuming the expert opinions are admissible for purposes of the motion, the opinions of defendants' retained experts are utterly irrelevant to the determination of whether Hartford acted in bad faith. As Hartford has previously recognized, the determination of whether Hartford acted in bad faith must be based on the evidence "available to the insurer at the time it

---

[10]  The Disability Case Manager testified that, when he selected the physician to perform the IME and FCE, he specifically required that the physician be capable of personally performing or attending the FCE (Pl. Ex. OO, p.49:1-14), that he discussed this requirement with Dr. Garg (Pl. Ex. OO, p.51:23-52:1), and that Dr. Garg contracted with him to perform both an IME and FCE and to be paid for both examinations (Pl. Ex. OO, p.112:4-8, p.113:1--21).  In her deposition, Dr. Garg admitted that she does not perform Functional Capacities Evaluations and does not have the equipment to do so.  Pl. Ex. UU, p.90:2-6.

decided to deny a claim." Hartford's Reply in Support of Summary Judgment, p.2, citing, Uberti v. Lincoln Nat'l Life Ins. Co., 144 F.Supp.2d 90, 103-104 (D.Conn. 2001). The sole issue of relevance is whether, at the time it was administering plaintiff's claim, Hartford believed that an FCE was necessary but, nevertheless, consciously chose to forego obtaining an FCE in favor of using the fabricated FCE results provided by Dr. Garg. The evidence cited herein creates, at a minimum, a disputed issue of fact as to whether Hartford not only believed that an FCE was necessary, but believed that the FCE results would be important enough to the opinions of plaintiff's physicians and to the opinion of its contracted physician reviewer that it made the decision to send the fabricated FCE results to them to serve as a basis for their opinions.[11]

Moreover, the inference that must be drawn in plaintiff's favor from the fact that these physicians did not request the underlying results is not that the physicians believed an FCE was unnecessary (for which defendants have no supporting evidence), but that the physicians accepted the purported summary as an accurate depiction of the underlying test results and relied on those results in forming their opinions, a proposition for which plaintiff has offered the supporting testimony of both the Disability Case Manager and Hartford's contracted physician reviewer. Exhibits Pl. Ex. OO, pp.144:25-145:18; p.149:12-19, cited in Pl. Stmt. – Add'l Facts, ¶ 74 and attached as **Exhibit 2** to plaintiff's Motion for Reconsideration (quoted, supra); Pl. Ex. WW at 56-57, cited in Pl. Stmt. – Add'l Facts, ¶ 74 and attached as **Exhibit 3** to plaintiff's Motion for Reconsideration (quoted, supra).[12]

---

[11] At most, these opinions, which Hartford claims show that the video surveillance was conclusive evidence of plaintiff's functionality, create a disputed issue of fact. A trier of fact could reject the opinions of Hartford's retained experts in favor of the more credible and contrary testimony of Hartford's former Disability Case Manager, that the FCE was essential and that the surveillance could not establish plaintiff's regular functionality (cited herein and attached as Exhibit 2 to Plaintiff's Motion for Reconsideration).

[12] Defendants also argue, without citation to any facts or law, that, even though Hartford knew that the FCE results were fabricated, plaintiff's failure to inform Hartford that the FCE results were fabricated

Finally, whether the fact that the Disability Case Manager scheduled an FCE, and whether Nurse Esson's notation in the case log that an FCE had not been performed, are sufficient to overcome the evidence and inference of bad faith from Hartford's subsequent use of fabricated FCE results and of Dr. Garg's IME opinion, and failure to schedule an FCE, upon learning that Dr. Garg had failed to perform an FCE, is a question for the trier of fact that is not properly resolved on a motion for summary judgment.  A reasonable trier of fact could conclude, on the basis of the evidence, that while Hartford's *medical* personnel, to whom Hartford does not provide financial incentives and does not pressure to obtain net termination ratios, acted in good faith, Hartford's *claim* personnel, which made the decision to use the fabricated FCE results and IME opinion, did act in bad faith.

### D. THE OTHER MEMBERS OF THE CLAIM "TEAM" WERE ALSO AWARE THAT DR. GARG HAD FABRICATED THE FCE RESULTS

Without citation to any facts or law, Hartford argues that, to prevail on her bad faith claim, plaintiff must present evidence that, in addition to Nurse Esson (who admittedly discovered that Dr. Garg had fabricated the FCE results), plaintiff must also establish that "Kim Gabrielson or Sue Wilk actually read the notation [by Nurse Esson] or considered it in connection with their review."  Def. Opp., pp.3-4, 6.  Hartford does not explain why it has designated these two individuals, in particular, and it did not make this specious argument in support of its motion for summary judgment.[13]  However, even accepting this argument, and

---

upon receiving Hartford's termination letter, somehow immunizes them from their bad faith conduct. Def. Opp., pp.10-11. Plaintiff had no obligation to appeal Hartford's decision, nor did she have any reason to believe that Hartford would have exercised good faith in adjudicating any such appeal. Hartford had known, for at least two months, that the FCE results were fabricated, and rather than to take corrective action, had sent these fabricated results to plaintiff's physicians without even informing plaintiff that it had obtained the results, much less that it had sent the results to her physicians, as required by Hartford protocol.  Htfd. Ex. A(1), pp.20, 25, Htfd. Ex. C(1), p.5, cited in Pl. Stmt. – Add'l Facts, ¶ 80; Pl. Ex. C at 187-188, cited in Pl. Stmt. – Add'l Facts, ¶ 84.
[13]  This argument is particularly specious because plaintiff is not pursuing a claim against any of these

disregarding the clear implication of bad faith that a trier of fact could draw from the suggestion that Kim Gabrielson, who admittedly had no medical background, did not even bother to read Hartford's medical personnel's evaluation of Dr. Garg's reports before terminating plaintiff's benefits, summary judgment would not be appropriate:

First, Kim Huber, Hartford's senior employee responsible to ensure that the statements made in the termination letter were accurate, and to ensure that the other members of the "team" had followed proper procedures, and thus to provide Hartford's final stamp of approval to the decision to terminate plaintiff's benefits,[14] **admitted that, at the time she conducted her review and approved the termination letter, she had read Nurse Esson's notation and knew that Dr. Garg had not conducted the FCE which Hartford represented in the letter that Dr. Garg had conducted and on which Hartford relied to terminate plaintiff's benefits.** Huber Depo., pp.38-39 (attached hereto).

Second, plaintiff presented evidence from which a reasonable trier of fact could infer that both Ms. Gabrielson and Ms. Wilk were aware that Dr. Garg had fabricated the FCE results before they forwarded those results to plaintiff's physician and Hartford's internal physician reviewer. One week after Nurse Esson discovered that Dr. Garg had failed to perform the FCE, Ms. Gabrielson and Ms. Wilk met with Nurse Esson specifically to discuss whether, and to

---

individuals, but against Hartford, a corporation that acts by and through its agents. Educators has admitted that "Hartford . . . learn[ed] Dr. Garg had not performed an FCE . . . September 28, 2000." Educ. Rule 56(a)(2) Stmt. in Opp. to Pl. MSJ, ¶ 24 (emphasis added). Hartford has admitted that, on September 28, 2000, its employee, Nurse Esson, learned, in the course and scope of her employment, and noted in the company's computer case log, that Dr. Garg had not performed the FCE that she purported to have performed and for which she had billed Hartford. Htfd. Memo. in Support of Summary Judgment, p.12, fn.64. As a matter of law, Nurse Esson's knowledge is imputed to Hartford. Consolidated Edison Co. of New York, Inc. v. U.S., 221 F.3d 364, 370 (2nd Cir. 2000) ("when an agent is employed to perform certain duties for his principal and acquires knowledge material to those duties, the agent's knowledge is imputed to the principal.").

[14] See Hartford's Motion for Summary Judgment, pp.13-14; Htfd. Rule 56(a)(1) Statement, ¶ 75; Deposition Transcript of Kim Huber, pp.12:8-16, 14:23-15:23 (attached hereto).

whom, Hartford should send Dr. Garg's reports. Pl. Ex. U at H 3628. Moreover, Hartford has repeatedly represented to this court that "throughout the investigation of Plaintiff's claim, Wilk and Gabrielson sought advice from, and plaintiff's claim was reviewed by, others in the claim and investigative units. These individuals included . . . Kim Huber . . . Marsha Esson . . . The decision to terminate Plaintiff's benefits was the result of a consensus developed through this team approach." See Hartford's Memorandum in Support of Summary Judgment, p.14; Order dated June 27, 2003.[15]

On Hartford's motion for summary judgment, the court must draw all inferences in *plaintiff's* favor, not Hartford's favor. Danzer v. Norden Systems, Inc., 151 F.3d 50, 54 (2nd Cir. 1998). Thus, even if plaintiff were required to prove that either Susan Wilk or Kim Gabrielson, rather than Hartford, had actual knowledge that Dr. Garg had fabricated the test results (which she is not required to do), the admission that both Nurse Esson and Kim Huber knew that Dr. Garg had fabricated the test results, in conjunction with Hartford's repeated representation that Ms. Wilk and Ms. Gabrielson continually communicated with Nurse Esson and Kim Huber during the course of administering plaintiff's claim, and that the decision to terminate plaintiff's benefits was made by all of these employees in collaboration, is more than sufficient to support an inference that Ms. Wilk and/or Ms. Gabrielson had actual knowledge of this fact.

---

[15] As shown by the Order dated June 27, 2003, during discovery, Hartford forced plaintiff to conduct depositions of each individual involved in the termination of benefits because it successfully avoided designating any single individual as being responsible for the termination of plaintiff's benefits, including Kim Gabrielson or Sue Wilk, by representing to the court that the administration and termination of plaintiff's claim was the result of a collaborative effort among the whole team, that could not be attributed to any single individual. If for no other reason, this inconsistency allows the court to hold that Hartford is judicially estopped from now taking the position that only Kim Gabrielson or Sue Wilk can be held responsible for the administration and termination of plaintiff's claim or that individual knowledge counts as presently asserted.

### E.  THE INFERENCE TO BE DRAWN FROM HARTFORD'S CONDUCT MUST BE DRAWN IN PLAINTIFF'S FAVOR

Given the testimony described above, whether Hartford's decision to send the knowingly false and misleading test results to other physicians to serve as a basis for their opinion, and its decision to rely on the false test results and Dr. Garg's suspect IME opinion to justify terminating plaintiff's benefits, was merely the result of "poor judgment" or was a reckless or intentional act designed to mislead and deceive other physicians into providing an opinion that plaintiff was not disabled from her occupation, and to terminate plaintiff's benefits regardless of her ability to perform her occupation, is at *minimum*, a question of fact for the trier of fact.  See e.g.  Hines v. UNUM, 110 F.Supp.2d 458, 466 (W.D.Va. 2000.) (granting plaintiff's motion for summary judgment on bad faith claim where Unum relied on questionable test results and 20+ hours of surveillance video.); Sprague v. Equifax, Inc., 166 Cal.App.2d 1012, 213 Cal.Rptr. 69, 79 (1985) (fraudulent termination exists if insurer arranges "an inadequate medical examination, producing a false conclusion, which would form an apparently plausible basis for wrongfully terminating payments."); Stenger v. Provident Life & Accident Ins. Co., 121 F.Supp.2d 1238 (E.D.Wis. 2000) (evidence that insurer failed to question IME opinion when it had reason to do so, precluded summary judgment on insured's bad faith claim.)

### IV.  THE COURT SHOULD RECONSIDER ITS RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO HARTFORD'S FIRST AFFIRMATIVE DEFENSE AND COUNTERCLAIM

The court should also not allow Hartford to obscure the relevance of the evidence that Hartford did not pay Educators any money in connection with its agreement to reinsure and administer plaintiff's claim.  While Hartford asserts that its "counterclaim seeks to recover disability payments made to Plaintiff that she was not entitled to under the policy," it omits the most relevant, and undisputed, fact –these payments to plaintiff were made as *Educators' agent*

on *Educators' behalf,* and out of *money supplied entirely by Educators for this purpose.* For this reason, as set forth in plaintiff's Memorandum of Law in Support of Summary Judgment, Reply Memorandum and Motion for Reconsideration, (1) Hartford does not have standing to seek a return of the money; and (2) Hartford did not suffer any direct damages. See e.g. Moorer v. Hartz Seed Co., 120 F.Supp.2d 1283, 1289 (M.D. Ala. 2000), citing, Restatement (Second) Agency, § 374(2), cmt. b.[16]

**CONCLUSION**

For the foregoing reasons, in addition to those stated in plaintiff's Memorandum of Law in Support of Motion for Reconsideration, plaintiff respectfully requests that the court reconsider its ruling and (1) allow plaintiff to present the evidence in support of her bad faith claims against Educators and Hartford at trial; (2) allow plaintiff to present the evidence in support of her CUTPA claims against Educators and Hartford at trial; (3) preclude Hartford from pursing its claim for reimbursement of benefits paid to plaintiff and (4) preclude defendants from presenting evidence or testimony to support their claim that plaintiff was not disabled prior to August 14, 2000.

```
                                        PLAINTIFF,
                                        CANDI McCULLOCH

                                    By: /s/ Eliot B. Gersten
                                        Eliot B. Gersten, Esq.
                                        Fed. Bar No. ct05213
                                        GERSTEN & CLIFFORD
                                        214 Main Street
                                        Hartford, CT 06106
                                        Tel: (860) 527-7044
```

---

[16] The court should not overlook that Hartford's lack of standing is the result of its own failure to comply with the requirements of C.G.S. § 38a-66, from which defendants have, significantly, not even attempted to claim they were exempt. Had Hartford complied with its statutory obligations, it would have assumed direct liability to plaintiff as her insurer, it would have disclosed this assumption to plaintiff, it would have paid plaintiff benefits on its own behalf, rather than on Educators' behalf, and would it would have thus had standing to seek a return of the benefit payments.