STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CANDI MCCULLOCH,<br>    Plaintiff | :<br>:<br>: |
| vs. | :   CIVIL ACTION NO.:<br>:   301CV1115 (AHN) |
| HARTFORD LIFE AND ACCIDENT<br>INSURANCE COMPANY and EDUCATORS<br>MUTUAL LIFE INSURANCE COMPANY,<br>    Defendants | :<br>:<br>:<br>: |

**DEFENDANTS' SUR-REPLY IN OPPOSITION TO
PLAINTIFF'S MOTION FOR RECONSIDERATION**

"Bad faith" is the *absence* of evidence to support Hartford's decision, not the existence of some evidence the decision process was imperfect. Plaintiff steadfastly refuses to acknowledge or address the medical and other evidence supporting Hartford's conclusion that Plaintiff was not disabled within the meaning of the policy. Instead, she focuses entirely on an oversight that proved irrelevant in the view of Plaintiff's own expert and every other qualified expert in the case.

In an attempt to further inflate the significance of the omitted FCE, Plaintiff turns to the deposition testimony of nurse Joseph Sterle, a former Hartford employee who departed before the claim decision was made, has no first hand knowledge of information gathered after he left, and whose opinion as to the role of an FCE cannot overcome the opinions of the medical doctors qualified to make that assessment. Whatever Sterle's reasons for requesting an FCE from the perspective of one concerned with vocational rehabilitation, other Hartford employees tasked with making a claim decision, and having the benefit of information Sterle did not, determined that a claim decision could be made without an FCE. Right or wrong, this is not bad faith.

**I.      OMISSION OF AN FCE FROM A CLAIM FILE CHOCK FULL OF EVIDENCE SUPPORTING HARTFORD'S DECISION IS NOT BAD FAITH.**

The summary judgment evidence shows that Dr. Garg's report referred to an FCE when in fact Dr. Garg based her conclusions on her examination and interview of Plaintiff and her review of medical records; Marsha Esson, a Hartford staff nurse, learned that an FCE had not been performed and noted it in the activity log; Kim Gabrielson and Sue Wilk, the two individuals primarily responsible for communicating with Plaintiff and her medical providers, were unaware of the omission and forwarded Dr. Garg's report to Plaintiff's treating physicians exactly as it was received (neither they nor anyone else "fabricated" tests results as Plaintiff continues to insist); Kim Huber, a senior claim specialist who subsequently gave the file a final review, saw that an FCE had not been performed but concluded it was not necessary in light of other evidence in the file. Plaintiff, who clearly knew an FCE had not been performed, received Hartford's termination letter referring to the FCE and said nothing. None of this remotely suggests bad faith.

Bad faith requires "conscious wrongdoing because of a dishonest purpose." There is *no* evidence of conscious wrongdoing or dishonest purpose here: Hartford's claim file documents the efforts of numerous Hartford employees to gather information from Plaintiff's medical providers and other sources, to properly evaluate that information with the guidance of qualified experts (Dr. Garg, Dr. Amato, and Plaintiff's treating physicians), and to give Plaintiff every opportunity to explain and offer information in support of her claim.

Plaintiff attempts to fill this conspicuous gap in her case by "imputing" Marsha Esson's discovery that Dr. Garg did not perform a formal FCE to Kim Gabrielson and Sue Wilk, thus piecing together "conscious wrongdoing" or "dishonest purpose" from some sort of composite sketch. The sum cannot be greater than the parts: Plaintiff offers no evidence of any malicious

motive on the part of any individual at Hartford, and the sum of honest effort and oversight cannot equal conscious wrong.

## II.  THE OMISSION OF AN FCE DID NOT IMPACT THE DECISION.

In seeking to avoid summary judgment, Plaintiff may be entitled to inferences in her favor, but those inferences must be reasonable—Plaintiff's are not.  Plaintiff asks the Court to infer that Hartford sent Plaintiff to a doctor Hartford scarcely knew for an FCE, requested in writing that the doctor perform an FCE, and although Hartford could not possibly have known in advance the doctor would not perform the requested test, Hartford's subsequent forwarding of that doctor's report to others was all part of an elaborate scheme to mislead other doctors into *believing* an FCE had been performed when one had not.  Besides failing to address the evidence supporting Hartford's decision, Plaintiff's theory fails to explain why, if Hartford were intent upon deceiving Plaintiff's treating physicians, it would have chosen a "deception" utterly uncalculated to impact the decision.

As shown in Defendant's Opposition to Plaintiff's Motion for Reconsideration, every expert qualified by education, training, and experience to determine the role of an FCE in measuring Plaintiff's functionality has opined that it was irrelevant—knowing full well that an FCE was not performed (Drs. Arnold, Taub, Ketroser, and of course Dr. Garg).  Rather than address the fact that even her own expert, Dr. Arnold, testified that an FCE would have been of no value, Plaintiff turns to the deposition testimony of a former Hartford employee, nurse Joseph Sterle.[1]  Sterle is a nurse[2] whose former role at Hartford was to work with a vocational rehab

---

[1] Plaintiff also purports to rely on the testimony of Dr. Amato, an internist who reviewed Plaintiff's claim file for Hartford.  Dr. Amato did not, as Plaintiff contends, testify that he accepted the "[FCE] summary as an accurate depiction of the underlying test results and relied on those results in forming [his] opinions" (Reply at 10).  Rather, Dr. Amato testified that he did not note the absence of the underlying FCE testing results, something he usually sees when a FCE is performed on a claimant, because he "didn't feel it was necessary, or think of it."  Deposition of Dr. Amato, at 60:3-12, attached as Exhibit A.

specialist to determine whether any rehabilitation benefits could be extended and to help claimants find gainful employment.[3]  Sterle left Hartford in September 2000, two months before the termination of Plaintiff's benefits.[4]

Sterle's parochial view of the role of an FCE is irrelevant to the question before the Court: whether there is evidence in the claim file to support Hartford's decision.  His is the view of a former employee, who was not involved in claim handling,[5] who was not privy to the information obtained after his departure,[6] and who is not qualified to make a medical determination as to the necessity or relevance of an FCE.  Whatever Sterle's thoughts in requesting an FCE at the time, the evidence establishes that others who came behind him at Hartford thought otherwise: as Plaintiff points out, both nurse Marsha Esson and reviewer Kim Huber knew an FCE had not been performed but did not deem it necessary to obtain one.  Their decision to go forward with a decision on the basis of the information at hand has been *vindicated*, not questioned, by both Plaintiff's and Defendants' medical experts.

### III.   HARTFORD AND EDUCATORS OPPOSED PLAINTIFF'S <u>ENTIRE</u> MOTION FOR RECONSIDERATION.

Contrary to Plaintiff's representation to the Court, both Hartford and Educators oppose her motion to reconsider in its entirety.  In their opposition brief, Defendants noted that much of Plaintiff's motion for reconsideration raised nothing new; rather than burden the Court with unnecessary briefing, Defendants simply adopted by reference the arguments already made in prior summary judgment briefs.  In the same vein, the limitation of this Sur-Reply to certain of

---

[2] Sterle practiced as a nurse for approximately three years in trauma and cardiology after nursing school. Deposition of Joseph Sterle, at 5:23-8:21, attached as Exhibit B.
[3] *Id.* at 9:7-17.
[4] *Id.* at 3:10-4:5.
[5] *Id.* at 161:18-163:5.
[6] *Id.* at 142:17-21.

Plaintiff's arguments in the interest of brevity is in no way a waiver of Defendants' opposition to Plaintiff's Motion to Reconsider in its entirety.

Hartford and Educators opposed but did not respond to sections IV, V and VII (C) of Plaintiff's motion for reconsideration because those sections were merely Plaintiff's attempt to reassert arguments and evidence already considered by the Court when it ruled on the parties' motions for summary judgment.[7] Plaintiff cited no law or evidence the Court overlooked that would have a material effect on this Court's ruling dismissing her claims against Educators and her CUTPA claims[8] against Hartford.

The Court granted summary judgment in Educators' favor on Plaintiff's breach of contract and bad faith claims relating to the Reinsurance Agreement because Plaintiff was unable to establish that the language of her policy or applicable law prevented Educators from delegating the administration of her claim to Hartford and because she failed to create a triable issue of fact that Hartford acted in bad faith by terminating her claim.[9] In connection with her CUTPA and CUIPA claims, the Court specifically found that Plaintiff did "not establish that the reinsurance agreement constituted a prohibited act,"[10] a statement that infers the Court specifically considered Plaintiff's assertion that Hartford and Educators violated C.G.S. § 38a-66.[11] Even if the Court "overlooked" that statute as Plaintiff claims, it would have no effect on the Court's ruling, because the Court specifically found that she could not establish she suffered an ascertainable loss proximately caused by Defendants' alleged CUTPA or CUIPA violations.[12]

---

[7] In their Opposition, Defendants noted these sections constituted reargument from Plaintiff's summary judgment briefing, and referred the Court to Defendants' previous briefing on those matters.

[8] Plaintiff did not seek reconsideration of the dismissal of her tortious interference claims.

[9] Ruling, at 31-32.

[10] *Id.* at 32.

[11] Plaintiff has never been able to rebut Defendants' assertion that insurance statutes do not govern the reinsurance agreement because the agreement transferred only open disability claims and not disability insurance.

[12] Ruling, at 24-27.

Even though Plaintiff claims in her motion for reconsideration that she suffered harm other than the loss of her disability benefits, Plaintiff has never been able to articulate what other harm she allegedly suffered.[13] The Court should not reconsider its summary judgment in Defendants' favor on these claims.

## CONCLUSION

The FCE issue is a tempest in a teapot, created by Plaintiff in an effort to distract the Court from the legal standard for bad faith and the voluminous evidence supporting Hartford's decision. Because the Court thoroughly examined the facts and correctly found that the undisputed evidence supported summary judgment in Hartford and Educators' favor on Plaintiff's extracontractual claims, the Court should not accept Plaintiff's invitation to reconsider its rulings.

---

[13] Plaintiff's motion, at 16-17. Plaintiff only states she lost her "statutory right" under C.G.S. § 38a-66, which assumes that statute is even applicable, and does not explain what harm resulted from her inability to exercise that alleged right.

Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD L.L.P.

By:_____
       Barry A. Chasnoff (ct11162)
       Roberta J. Benson (ct24407)
       Jessica S. Taylor (ct24408)
       300 Convent Street, Suite 1500
       San Antonio, Texas 78205
       Telephone: (210) 281-7000
       Telecopier: (210) 224-2035

            AND

Donald E. Frechette (ct 08930)
EDWARDS & ANGELL, LLP
90 State House Square
Hartford, CT 06103
Phone: (860) 525-5065
Facsimile: (860) 527-4198

ATTORNEYS FOR DEFENDANT
EDUCATORS MUTUAL LIFE
INSURANCE COMPANY

## CERTIFICATION OF SERVICE

This is to certify that on the ___ day of May, 2005, a copy of Defendants' Sur-Reply In Opposition To Plaintiff's Motion For Reconsideration was mailed, *Via Certified Mail Return Receipt Requested* to:

>Eliot B. Gersten
>Gersten & Clifford
>214 Main Street
>Hartford, CT  06106

_____
Jessica Spangler Taylor
Roberta J. Benson