UNITED STATES DISTRICT COURT **FILED**
DISTRICT OF CONNECTICUT

CANDI McCULLOCH,              :
                             :                    2005 SEP 29 P 1: 31
          v.                 :     CIVIL NO. 3:01CV1S·DISTRICT COURT
                             :                    BRIDGEPORT, CONN
HARTFORD LIFE & ACCIDENT     :
INS. CO. AND EDUCATORS       :
MUTUAL LIFE INS. CO.,        :

<u>RULING ON PLAINTIFF'S MOTION FOR RECONSIDERATION</u>

Pending before the court is plaintiff Candi McCulloch's

("McCulloch") motion for reconsideration of the court's

March 2005, omnibus ruling granting defendant Hartford Life

Insurance Company's ("Hartford") partial motion for summary

judgment; granting in part and denying in part defendant

Educators Mutual Life Insurance Company's ("Educators")

motion for summary judgment; and denying McCulloch's summary

judgment motions on Hartford's counterclaim and on

Educators' claim.

For the following reasons, McCulloch's motion [dkt. #

221] is granted.  Upon reconsideration, the court adheres to

its prior ruling.

<u>BACKGROUND</u>

This case arises from Hartford's termination of

McCulloch's disability benefits.  The facts relevant to the

motion are set forth in the court's summary judgment ruling

and will not be repeated herein, except as necessary.

STANDARD

The Second Circuit has held that a motion for reconsideration should not be granted where the moving party seeks solely to relitigate an issue already decided. See Shrader v. CSX Transp., Inc., 70 F.3d 255, 27 (2d Cir. 1995). "Such a motion generally will be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Id.

DISCUSSION

McCulloch contends that the court overlooked material evidence and committed errors of law in its summary judgment ruling with respect to her (1) bad faith claim against Hartford; (2) breach of contract and bad faith claims against Educators; (3) CUTPA/CUIPA claim against Hartford; and (4) motion for summary judgment on Hartford's counterclaim. Although the court adheres to its previous ruling, it nonetheless finds that reconsideration is warranted for purposes of clarification.

I.   Bad Faith

McCulloch submits that the court erroneously granted summary judgment for Hartford on the bad faith claim because

-2-

it overlooked evidence that Hartford: (1) knowingly relied
on Dr. Garg's "fabricated" FCE results to terminate her
benefits; (2) forwarded the FCE summary to Drs. Magana and
Amato; (3) did not schedule another FCE exam; (4)
mischaracterized her duties as an internist; (4) improperly
relied on the surveillance video; and (5) did not properly
conduct a field interview.  However, none of this evidence
compels a different conclusion.

    As the court previously stated, to prove a claim of bad
faith against Hartford, McCulloch must demonstrate the
absence of any reasonable basis for Hartford's termination
of her benefits.  See Summ. J. Op. at 13-14 (citing United
Techs. Corp. v. American Home Assur. Co., 118 F. Supp.2d
181, 188 (D. Conn. 2000)) (finding no liability for denial
of coverage where coverage was "fairly debatable"); McCauley
Enters., Inc. v. New Hampshire Ins. Co., 716 F. Supp. 718,
723 (D. Conn. 1989) (reasoning that "when a good faith legal
controversy exists . . . insurer's withholding of the policy
proceeds cannot be found to be in bad faith").  None of the
foregoing evidence shows that  Hartford did not have a
reasonable basis for terminating McCulloch's benefits.

    Contrary to McCulloch's assertions, evidence that
Hartford relied on the FCE, that Hartford forwarded the FCE

-3-

to Drs. Magana and Amato, and that Hartford did not perform
another FCE does not negate evidence in the record showing
that Hartford had a reasonable basis for concluding that she
was not disabled and that her claim was "fairly debatable."
First, McCulloch submits no factual support for her
assertion that Dr. Garg "fabricated" the FCE results.
Although Dr. Garg did not perform an FCE examination as
requested by Hartford, that does not necessarily mean that
she fabricated the FCE results. Rather, the record shows
that Dr. Garg submitted an FCE summary reflecting her
conclusions and opinion of McCulloch's functional capacity
based on her review of the medical records, MRI results, the
video surveillance, and the IME. Thus, even if the trier of
fact were to disagree with Dr. Garg's conclusions, it could
not, consistent with the evidence, find that her conclusions
were fabricated. Moreover, even if, as McCulloch claims,
the basis for Dr. Garg's report was inadequate and
misleading, that alone does not mean that Hartford acted in
bad faith by relying on it as a basis for terminating her
benefits. Further, as discussed in the court's prior
ruling, Hartford's decision to terminate McCulloch's
benefits was not based on the FCE alone, but was based on
the opinions of other doctors, the video surveillance, and

-4-

the field interview.  Significantly, McCulloch does not
demonstrate that any of the doctors could have reached a
different opinion if Dr. Garg had based her conclusions on
an actual FCE examination.  In sum, the fact that Dr. Garg
did not perform an FCE examination does not establish that
Hartford lacked any basis for its action.  See Stenger v.
Provident Life & Accident Ins., 121 F. Supp.2d 1238, 1249
(E.D. Wis. 2000) ("to prove a claim of bad faith, an insured
must show . . . [inter alia] the insurer's knowledge or
reckless disregard for the lack of a reasonable basis for
denying the claim").

McCulloch also fails to demonstrate that Hartford's
failure to perform a second FCE examination before
terminating her benefits could be considered evidence of bad
faith.  Bad faith is not established by evidence that
Hartford's Disability Case Manager, Joseph Sterle
("Sterle"), stated that, without an FCE, Hartford could not
identify the extent of the limitations reflected in
McCulloch's IME.  While such evidence might show that
Hartford was negligent in relying on the report, or used
bad judgment in doing so, it does not establish that
Hartford acted with reckless disregard or without a
reasonable basis for its decision.  See id.  Moreover, there

-5-

is ample evidence showing that an FCE examination was not
even required under the circumstances.  McCulloch's own
expert stated that, because of the nature of her claimed
disability, an FCE was not needed to determine her
functional capacity.  Likewise, two neurologists retained by
Hartford concluded that an FCE would have been of negligible
value in light of the fact that Hartford had obtained
surveillance video of McCulloch's "untimed, continuous,
behavior in the real world," which is precisely what an FCE
is designed to measure.  In sum, McCulloch submits no
additional or overlooked evidence showing that Hartford did
not have some reasonable basis for determining that
McCulloch was not entitled to benefits.  See Kubrick v.
Allstate Ins. Co., No. Civ. 01-6541, 2004 WL 45489, at *8-*9
(E.D. Pa. 2004) ("a defendant may prevail at the summary
judgment stage by 'affirmatively demonstrating a reasonable
basis for its actions'") (citation omitted)).  McCulloch is
simply wrong in her contention that Hartford must show that
its investigation and the conclusions it drew are completely
irrefutable.  See Stenger 121 F. Supp.2d at 1250 (citing
Mills v. Regent Ins. Co., 449 N.W.2d 294, 297-98 (Ct. App.
1989)).

    For similar reasons, there is no support for

-6-

McCulloch's contention that Hartford could not use the video surveillance as a basis for terminating her benefits.  As discussed, Hartford's decision to terminate McCulloch's benefits was based on more than just the video surveillance. It was also based on the opinions of doctors who, after reviewing the videos, concluded that McCulloch's activities in the video were not consistent with her claimed disability.  Also meritless is McCulloch's contention that Hartford's reliance on her signed statement shows bad faith because it was the product of intimidation by Hartford's field investigator.  Because Hartford was entitled to rely on both the surveillance video and her signed statement, as well as the other evidence discussed, McCulloch cannot show that Hartford had no reasonable basis for terminating her benefits.

Finally, McCulloch's new evidence, consisting of monthly management letters, performance appraisals, and proof of bonuses relating to Hartford's investigation unit, does not show "that Hartford pressured its [claims] investigators to identify high reserve claims such as [hers] and to generate evidence to terminate those claims . . ." This type of evidence is too general to satisfy the clear and convincing evidence standard that is required to survive

-7-

summary judgment on a bad faith claim.  See Polselli v.
Nationwide Mut. Fire Ins. Co., 23 F.3d 747, 752 (3d Cir.
1994) ("clear and convincing standard requires evidence of
bad faith so clear, direct, weighty and convincing so as to
enable the [factfinder] to make its decision with a clear
conviction").[1]

In sum, although the record reflects numerous issues of
fact relating to whether McCulloch is indeed disabled, those
factual disputes are not material to the bad faith claim and

---

[1]In this regard, McCulloch's reliance on Hangarter v. Paul
Revere Life Ins. Co., 236 F. Supp.2d 1069 (N.D. Cal. 2002), is
unavailing.  Even if Hartford provided incentives to its claims
investigators for identifying suspicious claims, McCulloch's new
evidence does not demonstrate that the statutory reserves
associated with a claim played a part in Hartford's investigation
process.  As Hartford points out, it is undisputed that neither
Susan Wilk ("Wilk") nor Kim Gabrielson ("Gabrielson") knew of the
amount of reserves associated with McCulloch's claim until at
least after her claim was identified as suspicious and accepted
for investigation.  Moreover, McCulloch exaggerates and
mischaracterizes the import of a March 2002, performance
evaluation and a February 2003, internal email regarding
Gabrielson's performance.  If anything, that evidence refutes her
contention that Hartford targeted claims solely because they had
high reserves.  For example, the internal email states that once
a claim was chosen for investigation, claims specialists had "to
take [the investigation process] to the end . . . even though the
claimant may be terminated based on what med[ical] evidence is
already in [the] file."  As Hartford points out, an insurer
should be entitled to investigate claims, earn profits, and
provide incentives and rewards to its employees without being
liable for bad faith, per se.  Thus, without more, the new
evidence McCulloch proffers cannot meet the "clear and
convincing" threshold required to support a bad faith claim
against an insurer.

do not refute Hartford's showing that it had a reasonable basis for terminating McCulloch's benefits. Indeed, such factual disputes merely demonstrate that McCulloch's claim was "fairly debatable." As discussed in the court's prior ruling, Hartford has not moved for summary judgment on McCulloch's claim that Hartford wrongfully terminated her benefits, and to that extent, McCulloch is not without recourse. However, she is not entitled to an additional avenue of relief merely because there may have been flaws in the manner in which Hartford investigated her claim. Indeed, "to permit recovery against an insurer because of flaws in the investigation even though the insurer has, in fact, an objectively reasonable basis for denying coverage . . . would be to remove most of the protection for insurers and premium payers" allowed under the laws of Connecticut and virtually every other state. See Stenger, 121 F. Supp.2d at 1250 (quoting Mills, 449 N.W.2d at 297-98). Because McCulloch has the burden in a bad faith claim -- even on a summary judgment motion against her -- to demonstrate the absence of any reasonable basis for the termination of her benefits through clear and convincing evidence, see id. at 1249; Polselli, 23 F.3d at 752, and because she fails to meet that burden, her bad faith claim

-9-

cannot stand as matter of law.

II.  Ruling as to Educators

McCulloch also contends that the court overlooked material facts and controlling law with regard to her breach of contract and bad faith claims against Educators.  In its prior ruling, the court held that Educators was entitled to summary judgment on those claims because McCulloch failed to demonstrate, by way of relevant statutory law, case law, or a policy provision, that Educators could not assign the open claims to Hartford.  See Summ. J. Op. 27-28.  McCulloch now submits that the court overlooked Conn. Gen. Stat. § 38a-66, which she claims required Educators to submit its agreement with Hartford to the Insurance Commissioner for approval and provide her with a certificate evidencing Hartford's assumption of liability.  This claim is without merit.

The plain language of this statute does not pertain to McCulloch's claims for relief based on breach of contract or bad faith.  Further, McCulloch does not show how this statute is applicable to Educators, i.e., she does not show that Educators is an "insurance company authorized to do business" in Connecticut or that her insurance policy -- as opposed to the assumption of liability of her policy -- was "to be performed in" Connecticut.

-10-

Similarly baseless is McCulloch's reliance on a portion of the Pennsylvania Administrative Code, 31 Pa. Code § 90i.1. McCulloch fails to demonstrate that a violation of § 90i.1 provides a basis for relief under a breach of contract or bad faith theory of liability. Nonetheless, even assuming Educators violated § 90i.1, and that McCulloch could seek relief under the statute on those theories, she does not demonstrate that the statute is applicable based on the facts of this case, i.e., that she is a "Pennsylvania resident individual" or "group" policyholder as defined by the statute.

Also unavailing is McCulloch's claim that, pursuant to O'Donnell v. Allstate Ins. Co., 734 A.2d 901 (Pa. Super. Ct. 1999), it was erroneous for the court to grant summary judgment on the breach of contract and bad faith claims because Educators "repudiated" its "status as her insurer" by virtue of its contract with Hartford. Although O'Donnell holds that "the conduct of an insurer during the pendency of litigation may be considered as evidence of bad faith," it is a stretch to conclude that raising a legal defense constitutes such "conduct." Nonetheless, even if McCulloch could show that by raising a legal defense Educators engaged in the type of "conduct" referred to in O'Donnell, summary

-11-

judgment was still proper because McCulloch fails to provide "clear and convincing evidence" that Educators' "conduct" of raising a liability defense was based on ill-will.  See Polselli, 23 F.3d at 752.  That is, under Pennsylvania law, as in Connecticut, bad faith in the insurance context is defined as "any frivolous or unfounded refusal to pay proceeds of a policy."  W.V. Realty Inc. v. Northern Ins. Co., 334 F.3d 306, 312 (3d Cir. 2003).  Because McCulloch has failed to show by "clear and convincing evidence that the insurer did not have a reasonable basis for denying benefits," she cannot recover for bad faith.  See Polselli, 23 F.3d at 752.

## III. CUTPA/CUIPA Claims

McCulloch further contends that the court overlooked material facts and made errors of law when it granted summary judgment for both defendants on her CUTPA/CUIPA claims.  In its prior ruling, the court concluded that those claims could not survive summary judgment because McCulloch failed to demonstrate (1) an ascertainable loss proximately caused by the alleged unfair trade practice, i.e., the reinsurance agreement; (2) that reinsurance agreements are not the type of practice that CUIPA was intended to prohibit; and (3) that neither defendant engaged in the

-12-

alleged unfair practice with such frequency as to indicate a general business practice.  <u>See</u> Summ. J. Op. at 22-26 & 30.

McCulloch still fails to make any of these showings. Most important, McCulloch has not offered any evidence showing that defendants' alleged misconduct was more than an isolated act.  <u>See</u> <u>Peck v. Public Serv. Mut. Insur. Co.</u>, 114 F. Supp.2d 51, 58 (D. Conn. 2000) (citing Mead v. Burns, 199 Conn. 651, 659 & 666 (1986)).  She has still not produced any evidence showing that Hartford unfairly settled claims as a general practice or that Hartford unfairly settled any other claims.  Because McCulloch fails to point to any facts or law to overcome the court's finding, the court adheres to its grant of summary of judgment for both Hartford and Educators.

IV.  <u>Hartford's Counterclaim</u>

Finally, McCulloch asserts that the court overlooked evidence and made errors of law when it denied her motion for summary judgment on Hartford's counterclaim seeking repayment of benefits she received from August 14, 2000, to October 31, 2000, totaling $19,655.53.  Specifically, McCulloch submits that the court erroneously found that Hartford has standing to assert a claim against her; that it suffered damages; and that it is not estopped from seeking

-13-

damages. See Summ. J. Op. at 30-39. McCulloch has not met her burden of showing that no material factual dispute exists and that she is entitled to relief as a matter of law. See Ginsberg v. Healey Car & Truck Leasing, Inc., 189 F.3d 268, 270 (2d Cir. 1999) (citing cases).

As to the standing issue, while the court may have incorrectly presumed Hartford paid money to Educators, McCulloch has not demonstrated that Hartford gave no legal consideration whatsoever to Educators in connection with the transferred reserves. That is, based on the record, it is reasonable to conclude that Hartford provided consideration by virtue of the fact that it agreed to indemnify Educators for any liability in excess of the total amount of reserves for the open claims. Because McCulloch fails to show that Hartford did not take on this additional liability or that it is insufficient to constitute legal consideration, the court's prior ruling on this issue will stand.

Similarly, McCulloch's argument that she is entitled to summary judgment because Hartford cannot demonstrate damages as to its counterclaim also fails. Despite the fact that Hartford did not give Educators monetary consideration, a jury nonetheless could find that it suffered damages as a result of McCulloch's alleged fraudulent receipt of

-14-

benefits.  As discussed in the court's previous ruling --
albeit in slightly different terms -- if a jury were to find
that McCulloch was not entitled to benefit payments after
August 14, 2000, then it could also find that (1) there is a
marginally greater risk that the total benefit payments on
the pool of open claims transferred to Hartford would exceed
the statutory reserves set aside for those claims, and, as a
result, Hartford would have to indemnify Educators for a
marginally greater amount of money; and (2) even if the
total benefit payments ultimately do not exceed the
statutory reserves, there would be marginally less reserves
for Hartford to retain.  See Summ. J. Op. at 33-34.  Because
McCulloch fails to address, much less dispose of these
significant questions of fact, the court adheres to its
denial of summary judgment on this basis.

        Finally, McCulloch submits that the court overlooked
evidence showing that Hartford waived its right to claim
that she was not disabled after August 14, 2000, and as a
result, is now estopped from recovering benefits paid during
that time.  As the court stated in its prior ruling,
Hartford could not have waived and is not estopped from
recovering benefits it alleges were wrongfully paid to
McCulloch because, under the terms of her policy, she had a

duty to continually provide proof of an ongoing disability.
Thus, she could not have had a justified expectation that
she would unconditionally receive disability benefits.
Moreover, to the extent McCulloch objects to Hartford's use
of evidence to support its wrongful payment of benefits
claim, i.e., evidence that predates August 14, 2000, that is
an evidentiary issue which is not properly raised in a
motion for summary judgment.

<u>CONCLUSION</u>

For the foregoing reasons, McCulloch's motion for
reconsideration [dkt. # 221] is granted.  Upon
reconsideration, the court adheres to its earlier ruling in
all respects.

So ordered this **28** day of September, 2005, at
Bridgeport, Connecticut.

_____
Alan H. Nevas
United States District Judge

-16-