Not Reported in F.Supp.2d                                                                                                          Page 1
Not Reported in F.Supp.2d, 2005 WL 807045 (N.D.Cal.)
**(Cite as: 2005 WL 807045 (N.D.Cal.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
Barbara L. DAVISON, Plaintiff,
v.
THE **HARTFORD** LIFE AND ACCIDENT
INSURANCE COMPANY, et al., Defendants
No. C-05-0132 MMC.

April 7, 2005.
Arnold R. Levinson, Arnold R. Levison, Rebecca Grey, Terrence J. Coleman, Pillsbury & Levinson LLP, San Francisco, CA, for Plaintiff.

Bruce D. Celebrezze, Dennis G. Rolstad, **Sedgwick, Detert,** Moran & Arnold LLP, Emily R. Epstein, Joseph Liburt, Lynne C. Hermle, Orrick Herrington & Sutcliffe LLP, San Francisco, CA, for Defendants.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT PRICEWATERHOUSE COOPER
LLP'S MOTION TO DISMISS AND TO STRIKE; VACATING HEARING

CHESNEY, J.

>Docket Nos. 13, 17)
*1 Before the Court is defendant PricewaterhouseCoopers LLP's ("PwC") motion to dismiss plaintiff Barbara L. Davison's ("Davison") complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and to strike Davison's jury demand, pursuant to Rule 12(f). Defendants **Hartford** Life and Accident Insurance Company ("**Hartford**") and PwC Health and Benefits Plan ("the Plan") have filed a notice of joinder in PwC's motion, to the extent PwC moves to strike Davison's jury demand. Davison has filed opposition, to which PwC and the Plan separately replied. [FN1] Having considered the papers filed in support of and in opposition to the motion, the Court deems the matter suitable for decision on the papers, VACATES the hearing scheduled for April 8, 2005, and rules as follows.

> FN1. **Hartford** and the Plan did not provide the Court with a chambers copy of either their joinder or their reply in support of the motion to strike Davison's jury demand, which documents were electronically filed on, respectively, March 4, 2005 and March 25, 2005. The Court, nonetheless, has considered the filings. For future reference, said parties are reminded of the following provision in the Court's Standing Orders: "In all cases that have been assigned to the Electronic Case Filing Program, the parties are required to provide for use in chambers one paper copy of each document that is filed electronically. The paper copy of each such document shall be delivered no later than noon on the day after the document is filed electronically. The paper copy shall be marked 'Chambers Copy' and shall be delivered to the Clerk's Office in an envelope clearly marked with the judge's name, case number, and 'E-Filing Chambers Copy.' "

1. Davison is not entitled to a jury trial on her First Cause of Action, alleging a claim to recover employee benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). [FN2] See *Thomas v. Oregon Fruit Products Co.,* 228 F.3d 991, 996-97 (9th Cir.2000) (holding "remedies available to a participant or beneficiary under ERISA are equitable in nature and the Seventh Amendment does not require that a jury trial be afforded for claims made by participants or beneficiaries"). [FN3]

> FN2. Davison does not argue that she is entitled to a jury trial as to her Second Cause of Action.

> FN3. Contrary to plaintiff's argument, *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) does not call into question the holding set forth in *Thomas,* as *Great-West* did not address a claim under § 1132(a)(1)(B) or any issue pertaining to the right to a jury trial under ERISA. See *id.* at 221 (holding claim for damages inconsistent with ERISA and therefore barred).

2. Davison's First Cause of Action is subject to dismissal as against PwC because a claim under § 1132(a)(1)(B) may be stated "only against the Plan as an entity." See *Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323, 1324 (9th Cir.1985).

3. Davison's Second Cause of Action, alleging a breach of fiduciary duty pursuant to 29 U.S.C. § §

1104(a)(1), 1109, 1132(a)(2), and 1132(a)(3), is subject to dismissal, in part, as against PwC:

a. Davison cannot base a breach of fiduciary duty claim on the inclusion in the Plan of a "discretionary" clause, (see Compl. ¶ 23), because "an employer's decisions about the content of a plan are not themselves fiduciary acts," see Pegram v. Herdrich, 530 U.S. 211, 226, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). Moreover, because the United States Supreme Court has held a "benefit plan [may] give[ ] the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," see Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), inclusion of such a clause is not a breach of fiduciary duty under ERISA. [FN4] Further, because the plan documents fully disclose to participants that PwC, the "plan administrator," has designated Hartford as "claims administrator," and that Hartford has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy", (see Epstein Decl., filed February 28, 2005, at 19, 28), and because Davison does not allege PwC made any misrepresentation regarding the discretionary clause, plaintiff cannot state a claim against PwC under the theory that PwC failed to properly disclose the discretionary clause. Cf. Varity Corporation v. Howe, 516 U.S. 489, 502-03, 506, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (holding plan administrator breaches fiduciary duty by misrepresenting plan provision to beneficiaries).

>FN4. Davison relies on an opinion letter and notice issued by the California Department of Insurance ("DOI") in February 2004, which expresses the DOI's opinion that "discretionary clauses" are "objectionable" under California law and states the DOI will no longer approve policies including such clauses. (See Coleman Decl. Ex. B and C.) Although not expressly argued, it appears Davison is contending PwC, in light of the DOI's opinion letter and notice, owed Davison a fiduciary duty to remove the discretionary clause from the Plan. The DOI, however, has explained that its notice "does not effect policies already sold," (see Epstein Decl., filed March 25, 2005, Ex. 1 at 3); thus, the DOI documents are inapplicable to the instant policy, which was issued in 1999, (see Epstein Decl., filed February 28, 2005, Ex. 1 at 3). Further, PwC, at the time it selected the policy at issue for the Plan, was entitled to rely on any prior approval of the policy by the DOI, which approval would have necessitated the DOI's finding said policy did not contain provisions that are "unintelligible, uncertain, ambiguous, or abstruse, or likely to mislead a person to whom the policy is offered, delivered or issued." See Cal. Ins.Code § 10291.5(b)(1).

*2 b. Davison's allegation that PwC failed to conduct any investigation into Hartford's claims administration practices is sufficient to state a claim against PwC. [FN5] See Batchelor v. Oak Hill Medical Group, 870 F.2d 1446, 1448-49 (9th Cir.1989) (holding employer acts as fiduciary when it selects and retains claims administrator; recognizing cause of action based on alleged breach of fiduciary duty with respect to such selection and retention) (citing 29 C.F.R. § 2509.75-8, D-4); see also Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1465-66 (4th Cir.1996) (holding plan sponsor, which had power under plan to appoint plan administrator, had fiduciary duty to "monitor appropriately" plan administrator it appointed) (citing 29 C.F.R. § 2509.7508, FR-17). Secondly, contrary to PwC's argument, plaintiff, as a remedy for such alleged breach of fiduciary duty, does not seek an award of damages; rather, plaintiff seeks equitable relief, specifically, removal of PwC as plan administrator. (See Compl. ¶¶ 38, 41.)

>FN5. Davison alleges that Hartford has, inter alia, a practice of adopting "unreasonable interpretations" of Plan provisions and ignoring "relevant evidence" in order to "generat[e] improper denials" of claims. (See Compl. ¶ 20.)

CONCLUSION

For the reasons stated above, PwC's motion to dismiss and to strike is hereby GRANTED in part and DENIED in part, as follows:

1. Davison's jury demand is stricken.

2. Davison's First Cause of Action is dismissed, as against PwC.

3. Davison's Second Cause of Action is dismissed, as against PwC, except to the extent the claim is based on the theory that PwC failed to conduct any investigation into Hartford's performance.

This order terminates Docket Nos. 13 and 17.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 807045 (N.D.Cal.)
**(Cite as: 2005 WL 807045 (N.D.Cal.))**

Page 3

IT IS SO ORDERED.

Not Reported in F.Supp.2d, 2005 WL 807045 (N.D.Cal.)

**Motions, Pleadings and Filings (Back to top)**

• 3:05cv00132 (Docket) (Jan. 07, 2005)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                             Page 1
Not Reported in F.Supp.2d, 2004 WL 2254550 (N.D.Cal.)
**(Cite as: 2004 WL 2254550 (N.D.Cal.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
Bernita BROWN, Plaintiff,
v.
**HARTFORD** LIFE AND ACCIDENT
INSURANCE COMPANY, et al., Defendant.
**No. C-03-02466RMW.**

Oct. 5, 2004.
Michael Scott Henderson, Steven O. Teal, Teal & Montgomery, Santa Rosa, CA, for Plaintiff.

Allison Marie Dibley, Esq., Dennis G. Rolstad, **Sedgwick, Detert,** Moran & Arnold, LLP, San Francisco, CA, for Defendant.

ORDER DETERMINING STANDARD OF REVIEW

WHYTE, J.

[Re Docket No. 30, 34]
*1 Plaintiff Bernita Brown claims that she is entitled to long term disability benefits under an employer-sponsored benefits plan governed by the Employment Retirement Income Security Act ("ERISA"). Plaintiff and defendant **Hartford** Life and Accident Insurance Company ("**Hartford**") have filed cross-motions to determine the standard of review to be applied in reviewing **Hartford's** denial of plaintiff's claim. Plaintiff asserts the court should review **Hartford's** denial under a *de novo* standard. **Hartford** contends that an abuse of discretion standard is appropriate. For the reasons set forth below, the court finds that a *de novo* review is appropriate. [FN1]

> FN1. The court recognizes that it previously denied discovery on the conflict of interest issue finding that plaintiff had not shown more than the mere fact of an apparent conflict. Plaintiff's current showing is more persuasive than that made in her discovery motion.

I. BACKGROUND
Plaintiff was employed by Reply Corporation, which offered a benefits plan ("Plan") to employees including long-term disability benefits. **Hartford** underwrote the long-term disability ("LTD") benefits portion of the Plan. (Dibley Decl. in Support of Def. Mot. ("Dibley Decl."), Ex. 1). The Plan provided benefits to Reply's employees in the event they became disabled.

Under the terms of the Plan, **Hartford** is solely responsible for both determining eligibility for benefits and for paying those benefits. The Plan includes a notice detailing the right to appeal a termination of benefits. (Dibley Decl., Ex. 1, p. P025). The Plan also includes the following provision:
  Who interprets policy terms and conditions?
  The **Hartford** has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy.
(*Id.* at p. P026).

On June 17, 1994 plaintiff became disabled as a result of substantial and chronic pain in her right shoulder, right arm, right wrist and neck, as well as what was believed at the time to be carpal tunnel syndrome. Plaintiff was diagnosed with Reflex Sympathetic Dystrophy ("RSD") and fibromyalgia. Plaintiff's claim for LTD benefits was approved, and she received benefits until May 31, 2002.

The Social Security Administration denied plaintiff's claim for disability income benefits in 1997, and subsequently denied her appeal in 2001.

Plaintiff must remain "Totally Disabled" to be entitled to LTD benefits under the Plan, As part of its periodic review of plaintiff's claim for LTD benefits, defendant's investigators captured approximately sixty-minutes of surveillance videotape which showed plaintiff driving a manual transmission car, going to church, lifting grocery bags into her truck, and taking an extended walk with a companion. **Hartford** submitted plaintiff's claim file to Dr. Dibble, the Associate Medical Director for **Hartford**, who reviewed her medical records and the surveillance video. After speaking with plaintiff's treating physician, Dr. Silver, Dr. Dibble concluded that plaintiff was capable of sedentary employment with restrictions against repetitive activities involving her right arm.

**Hartford** conducted an Employability Analysis which searched for sedentary occupations that plaintiff could perform despite her functional restrictions. The Employability Analysis identified two occupations that plaintiff could perform, information clerk and surveillance system monitor.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Hartford** terminated plaintiff's LTD benefits effective May 31, 2002, because it determined, based on its review of plaintiff's claim file, that plaintiff's disability no longer met the definition of "Total Disability" set forth in the Plan.

*2 On October 11, 2002, plaintiff submitted her appeal to **Hartford**, enclosing new medical reports from her treating doctors, including a report from Dr. Newkirk, her neurologist. Dr. Newkirk described plaintiff's disability and explained that plaintiff may have been misdiagnosed previously. He felt she suffered from thoracic outlet syndrome and was disabled. **Hartford** responded to plaintiff's appeal by conducting further investigation, including sending plaintiff's medical records to Dr. Roaf, who is board certified in physical medicine and rehabilitation and internal medicine, for an independent review. Dr. Roaf reported that plaintiff's upper extremity difficulties were the result of thoracic outlet syndrome and that "(b)ased on the limitations in her upper extremities, I think it is unlikely that the insured will be able to perform a sedentary occupation at this time." (AR 86). Nevertheless, by letter dated April 3, 2003, **Hartford** informed plaintiff that it was upholding its decision to terminate her LTD benefits because the documentation in her claim file, taken as a whole, did not support the conclusion that she was physically incapable of performing the essential duties of any occupation. **Hartford's** letter noted that plaintiff's condition would not preclude her, with reasonable and appropriate restrictions, from performing a sedentary occupation. Plaintiff then filed the current action.

II. ANALYSIS
A. *Legal Standard for Determining Standard of Review*

The Plan grants **Hartford** discretion to interpret terms of the policy. The vesting of discretion usually means the court applies an abuse of discretion standard when reviewing a decision to deny benefits. However, if an actual conflict of interest exists, the court applies a *de novo* standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Plan administrator or fiduciary has an apparent conflict when, as here, it both funds the plan and makes discretionary claims decisions. In determining the standard of review to apply in cases where the plan administrator has an apparent conflict of interest, courts apply a burden shifting analysis. See *Waggener v. Unum Life Ins. Co. of Am.,* 238 F.Supp.2d 1179, 1182 (S.D.Cal.2002).

If ... the program participant presents material, probative evidence, beyond the mere fact of [an] apparent conflict, tending to show that the fiduciary's self interest caused a breach of the administrator's fiduciary obligations to the beneficiary, a rebuttable presumption arises in favor of the participant. The plan then bears the burden of rebutting the presumption by producing evidence to show that the conflict of interest did not affect its decision to deny or terminate benefits. If the plan fails to carry this burden of rebutting the presumption, we review de novo its decision to deny benefits.

*Tremain v. Bell Indus. Inc.,* 196 F.3d 970, 976 (9th Cir.1999) (internal citations omitted); see *McDaniel v. Chevron Corp.,* 203 F.3d 1099, 1108 (9th Cir.2000). What constitutes material probative evidence of an actual conflict of interest has not been conclusively defined.

B. *Evidence Tending to Show an Actual Conflict Contributed to the Denial Decision*

*3 In support of her appeal of **Hartford's** June 13, 2002 decision denying benefits, plaintiff submitted a letter explaining that Dr. Newkirk and Dr. Silver, her treating physicians, believed that she could not return to work. (Ex. 1, AR 090). [FN2] The updated medical records were sent by **Hartford** to Dr. Roaf for an independent physician's review. (*Id.*). Dr. Roaf reviewed plaintiff's medical history, examined the surveillance video, and spoke with Dr. Newkirk about plaintiff's condition and functional status. (Ex. 1, AR 091). Dr. Roaf summarized Dr. Newkirk's opinion in a detailed letter. (Ex. 17, AR 088-089). In her March 19, 2003 report, Dr. Roaf concluded that based upon all the evidence it was "unlikely that [plaintiff] will be able to perform a sedentary occupation at this time." (AR 86).

> FN2. Unless otherwise designated, citation to an exhibit refers to the exhibits attached to defendant's opposition to plaintiff's motion. The court also adopts the Bates stamp references used by the parties of "AR," "FN," and "P."

Nevertheless, **Hartford** decided that plaintiff was not totally physically disabled because she was capable of performing the physical demands of sedentary employment. (Ex. 2, AR 091). **Hartford** based this conclusion primarily on the opinion of Dr. Dibble, the Associate Medical Director for The **Hartford**. (Ex. 13, AR 213). On May 23, 2002, Dr.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 3
Not Reported in F.Supp.2d, 2004 WL 2254550 (N.D.Cal.)
(Cite as: 2004 WL 2254550 (N.D.Cal.))

Dibble reviewed plaintiff's medical reports along with the video surveillance and opined that plaintiff was capable of sedentary employment. (*Id.*). Plaintiff claims that **Hartford's** reliance on Dr. Dibble, as opposed to plaintiff's treating physicians and Dr. Roaf, is material, probative evidence, beyond the mere fact of an apparent conflict, tending to show that **Hartford's** self interest caused a breach of the fiduciary obligation owed to her.

In *Regula v. Delta Family-Care Disability Survivorship Plan*, 266 F.3d 1130 (9th Cir.2001) abrogated by *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003), the Ninth Circuit extended the "treating physician rule" used in Social Security benefits cases to ERISA claims. This rule gives greater weight to the opinion of a treating versus that of a non-treating physician. However, the Supreme Court abrogated the *Regula* rule, finding that plan administrators are not automatically required to accord special weight to the opinions of the treating physician. *Black & Decker Disability Plan v. Nord*, 538 U.S. at 834. Nevertheless, the Court explained that "[p]lan administrators ... may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinion of a treating physician." *Id.* The Court noted that "physicians repeatedly retained by benefits plans may have an 'incentive to make a finding of 'not disabled' in order to save their employers money and to preserve their own consulting arrangements." ' *Id.* at 832 (quoting *Regula*, 266 F.3d at 1143).

Plaintiff submits that in this case the acceptance of Dr. Dibble's opinion over that of Dr. Roaf tends to show an actual conflict of interest. The court agrees. Beginning in 1995, plaintiff was diagnosed as suffering from RSD. In September 2002, Dr. Newkirk personally examined plaintiff and concluded that her condition was misdiagnosed as RSD. (Ex. 16, AR159). Instead, he found that she suffered from thoracic outlet syndrome. (Ex. 16, AR 160). He explained that plaintiff had "bilateral upper extremity pain, as well as hand tremor, which are not characteristic of [RSD]." (*Id.*). After independently reviewing the evidence, Dr. Roaf agreed with Dr. Newkirk that plaintiff suffered from "thoracic outlet-type syndrome affecting the bilateral upper extremities." (Ex. 15, AR 086).

*4 Despite acknowledging the misdiagnosis (Ex.2, AR 091), **Hartford** continued to rely on Dr. Dibble's report. Dr. Dibble never personally examined plaintiff. (Ex. 13, AR 210). He simply reviewed the medical reports plaintiff's various physicians had submitted between July 11, 1994 and September 7, 2001. (*Id.*). All of these reports were based upon a diagnosis of and treatment for RSD. (*Id.*). These physicians had indicated that the plaintiff's functional restrictions were limited to the right arm, yet Dr. Newkirk and Dr. Roaf diagnosed plaintiff as having thoracic outlet syndrome which explained plaintiff's bilateral upper extremity pain that affected both her right and left arms. **Hartford** chose to rely on Dr. Dibble's medical report despite the fact that it may have been based upon a misdiagnosis.

Dr. Roaf, who was selected by **Hartford** to give an independent opinion, appears more qualified to diagnose and treat the type of disability plaintiff has than Dr. Dibble. Dr. Dibble is trained generally in family medicine. (Henderson Decl. in Support of Pl. Reply, Ex. A). On the other hand, Dr. Roaf is a physiatrist, board certified in "Physical Medicine and Rehabilitation," and teaches Rehabilitation Medicine at the University of Massachusetts Medical School. (*Id.*, Ex. B). In addition, Dr. Roaf is an independent reviewer, whereas Dr. Dibble is the Assistant Medical Director for defendant. Although **Hartford** is not automatically required to accept any particular physician's opinion, its choice to rely upon Dr. Dibble's opinion under the circumstances is evidence tending to show the denial of benefits was caused by an actual conflict of interest.

Additionally, the evidence suggests that **Hartford** may not have provided a full and fair review after the receipt of Dr. Roaf's opinion. **Hartford's** claims log shows that it received Dr. Roaf's opinion on March 31, 2003 at 4:23 p.m. (Henderson Decl. in Support of Pl. Mot., Ex. A at FN 001). The log also shows that nurse Valerie Gay, the claims examiner, called plaintiff on March 31, 2003 at 4:34 p.m. to notify her that **Hartford** would be upholding its denial. (*Id.*). Even if there was some delay in logging the receipt of Dr. Roaf's opinion, it does not appear that much time was spent reviewing and evaluating Dr. Roaf's eight page opinion. See *Friedrich v. Intel Corp.*, 181 F.3d 1105, 110 (9th Cir.1999) (procedural irregularities in the claims process and an unfair appeals process denied claimant the opportunity to prove his disability and demonstrated defendant's denial decision was affected by an actual conflict of interest).

**Hartford** argues that it did not disregard Dr. Roaf's opinion. Dr. Roaf concluded that:
> Activities that would involve any kind of reaching with the upper extremities or sitting with the arms

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:01-cv-01115-AHN    Document 241-3    Filed 11/04/2005    Page 7 of 16

Not Reported in F.Supp.2d                                                                                           Page 4
Not Reported in F.Supp.2d, 2004 WL 2254550 (N.D.Cal.)
(Cite as: 2004 WL 2254550 (N.D.Cal.))

in any sort of forward manner, may exacerbate her symptoms causing worsening of the swollen, reddened, modeled-appearing hands that have been documented by multiple physicians. As a result, she should be precluded from *any forward reaching,* abduction, pushing, pulling, or lifting using the upper extremities. She should not have any keyboarding activity with the upper extremities because of the type of posture.

*5 (Ex. 15, AR 086 (emphasis added)). According to **Hartford**, Ms. Gay considered Dr. Roaf's opinion but concluded that Dr. Roaf did not provide an explicit determination that plaintiff was unable to perform the two jobs identified in the Employability Analysis, information clerk and surveillance system monitor. (Henderson Decl. in Support of Pl. Mot., Ex. A. at FN 001). However, the Employment Analysis was based on the outdated information supplied by Dr. Dibble's report. Specifically, the search criteria used allowed for occupations that required occasional reaching. (Ex. 14, AR 198). In fact, the occupation of information clerk is described as requiring occasional reaching. (*Id.*). Dr. Roaf explicitly stated that plaintiff "should be precluded from *any* forward reaching." (Ex. 15, AR 086). Moreover, the Employability Analysis fails to indicate whether either occupation it found plaintiff could perform would require "sitting with the arms in any sort of forward manner," which Dr. Roaf also said should be avoided. Consequently, **Hartford's** reliance on the May 31, 2002 Employability Analysis is further evidence tending to show an actual conflict of interest.

For the above reasons, the court finds plaintiff has submitted material, probative evidence tending to show that **Hartford's** denial was influenced by an actual conflict of interest.

C. *Rebutting the Presumption of an Actual Conflict*

**Hartford** attempts to rebut the presumption that the decision to deny benefits was influenced by a conflict of interest by first arguing that the surveillance video demonstrated that plaintiff had the functional capacity to work sedentary jobs. Generally, the sixty-minute video showed plaintiff driving, attending church, lifting groceries into her truck, and taking an extended walk wearing women's shoes (low-heeled pumps). **Hartford** contends that this video proved plaintiff could work as an information clerk or surveillance system monitor because plaintiff was able to perform the daily activities shown in the video.

**Hartford** stresses that plaintiff's ability to walk smoothly demonstrates her ability to perform sedentary jobs, yet plaintiff's disability exists in her arms. When Dr. Roaf reviewed the video, she observed that plaintiff's movements were consistent with her stated complaints. (Ex. 15, AR 087). Notably, Dr. Roaf explained that even though plaintiff was able to walk smoothly she demonstrated very limited mobility and use of her upper extremities throughout the entire video. (*Id.*). This objective fact pointed out by Dr. Roaf was apparently ignored by **Hartford**.

**Hartford** also argues the video is inconsistent with plaintiff's statements to defendant's investigator. Plaintiff told the investigator she had trouble driving cars with a manual transmission. (Ex. 21, AR 021). In the video plaintiff is seen driving a car with manual transmission. The problem is the video was taken close to a year prior to plaintiff speaking with the investigator. She specifically told the investigator that her inability to drive stick shift cars had arisen within the previous three months. (*Id.*). Dr. Roaf believed that plaintiff's ability to operate the car and pull on the safety belt was "actually very consistent with the diagnosis of thoracic outlet syndrome." (Ex. 15, AR 085). Thus, the video fails to show any significant inconsistencies with the existing medical opinions. **Hartford's** undue reliance on the video does not rebut the presumption that an actual conflict affected defendant's decision.

*6 Next **Hartford** argues that its denial was based on the Employability Analysis Report. However, as discussed, **Hartford's** reliance on the Employability Analysis does not suggest that defendant's decision was free of influence by a conflict of interest.

Finally, **Hartford's** reliance on the Social Security Administration's ("SSA") denial of plaintiff's benefits does not rebut the presumption. The decisional criteria for social security cases is different than the individualized criteria set forth by a particular disability plan. *Black & Decker,* 538 U.S. at 834 (observing critical differences exist between the Social Security disability program and ERISA benefit plans). **Hartford** provides no analysis comparing the SSA disability criteria with the criteria under defendant's policy. In addition, the SSA was not provided the opinions of Dr. Newkirk or Dr. Roaf. *See* 20 C.F.R. § § 404.1527(d)(2), 416.927(d)(2). Therefore, **Hartford** has failed to rebut the presumption that its decision was affected by a conflict of interest.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 5
Not Reported in F.Supp.2d, 2004 WL 2254550 (N.D.Cal.)
**(Cite as: 2004 WL 2254550 (N.D.Cal.))**

### III. ORDER
The court will review **Hartford's** denial of LTD benefits *de novo*.

Not Reported in F.Supp.2d, 2004 WL 2254550 (N.D.Cal.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 1697045 (Trial Motion, Memorandum and Affidavit) Plaintiff's Supplemental Memorandum of Points and Authorities in Support of Motion for Ruling on Standard of Review (May. 28, 2004)

• 2004 WL 1697047 (Trial Motion, Memorandum and Affidavit) Defendant Hartford Life and Accident Insurance Company's Opposition to Plaintiff's Supplemental Memorandum of Points and Authorities in Support of Motion for Ruling on Standard of Review (May. 28, 2004)

• 2004 WL 1697049 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Defendant's Supplemental Brief on Applicability of California Insurance Commissioner's Letter Opinion (May. 28, 2004)

• 2004 WL 1697052 (Trial Motion, Memorandum and Affidavit) Reply to Opposition in Support of Plaintiff's Supplemental Memorandum of Points and Authorities in Support of Motion for Ruling on Standard of Review (May. 28, 2004)

• 2004 WL 1697055 (Trial Motion, Memorandum and Affidavit) Defendants Reply to Plaintiffs Opposition to Supplemental Brief on Applicability of California Insurance Commission Letter of Opinion (May. 28, 2004)

• 2004 WL 1697036 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Motion for Ruling on Standard of Review (Mar. 26, 2004)

• 2004 WL 1697038 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Defendant's Cross-Motion for Ruling on Standard of Review (Mar. 26, 2004)

• 2004 WL 1697039 (Trial Motion, Memorandum and Affidavit) Defendant Hartford Life and Accident Insurance Company's Memorandum of Points and Authorities in Opposition to Plaintiff Bernita Brown's Motion for Ruling on Standard of Review (Mar. 26, 2004)

• 2004 WL 1697042 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply to Defendant's Opposition Re Motion for Ruling On Standard of Review (Mar. 26, 2004)

• 2003 WL 23689175 (Trial Motion, Memorandum and Affidavit) Defendant Hartford Life and Accident Insurance Company's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Leave to Conduct Discovery (Nov. 21, 2003)

• 2003 WL 23689176 (Trial Motion, Memorandum and Affidavit) Reply in Support of Plaintiff's Motion for Leave to Conduct Discovery (Nov. 21, 2003)

• 2003 WL 23689174 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Plaintiff's Motion for Leave to Conduct Discovery (Nov. 17, 2003)

• 2003 WL 23688499 (Trial Pleading) Defendant Hartford Life and Accident Insurance Company's Answer to Plaintiff Bernita Brown's Complaint (Aug. 15, 2003)

• 2003 WL 23688497 (Trial Pleading) Complaint for Benefits Under 29 U.S.C. § 1132 (May. 23, 2003)

• 5:03cv02466 (Docket) (May. 23, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 2043896 (9th Cir.(Cal.))
**(Cite as: 2005 WL 2043896 (9th Cir.(Cal.)))**

Page 1

**Briefs and Other Related Documents**

Only the Westlaw citation is currently available.

This case was not selected for publication in the Federal Reporter.

Please use FIND to look at the applicable circuit court rule before citing this opinion. (FIND CTA9 Rule 36-3.)

United States Court of Appeals,
Ninth Circuit.
Terry L. MIZZELL, Plaintiff--Appellant,
v.
PAUL REVERE LIFE INSURANCE CO.; Unum Provident Corporation, Defendants,
and
**Hartford** Life Insurance Company; **Hartford** Life & Accident Insurance Company,
Defendants--Appellees.
Terry L. Mizzell, Plaintiff--Appellee,
v.
Paul Revere Life Insurance Company; Unum Provident Corporation, Defendants,
and
**Hartford** Life Insurance Company; **Hartford** Life & Accident Insurance Company,
Defendants--Appellants.
**No. 03-57130, 03-57211.
D.C. No. CV-03-00823-JVS.**

Argued and Submitted June 8, 2005.
Decided Aug. 25, 2005.

Scott A. Martin, Esq., Pivo, Halbreich, Cahill and Yim LLP, Irvine, CA, for Plaintiff-Appellant.

Edwin A. Oster, Esq., Barger & Wolen LLP, Irvine, CA, for Defendants.

Bruce D. Celebrezze, Esq., Dennis G. Rolstad, Esq., **Sedgwick Detert** Moran & Arnold, San Francisco, CA, for Defendants-Appellees.

Appeal from the United States District Court for the Central District of California, James V. Selna, District Judge, Presiding.

Before TROTT and W. FLETCHER, Circuit Judges, and RESTANI, [FN**] Judge.

FN** The Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

MEMORANDUM [FN*]

FN* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

*1 Terry Mizzell appeals the district court's grant of summary judgment in favor of **Hartford** Life Insurance Co. on Mizzell's action for recovery of benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"). **Hartford** cross-appeals the district court's denial of **Hartford's** motion for attorneys' fees under 29 U.S.C. § 1132(g), the fee provision under ERISA. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm both decisions.

In support of his argument that the district court incorrectly granted summary judgment in favor of **Hartford**, Mizzell argues in part (1) that **Hartford** failed to comply with ERISA's procedural requirements; (2) that **Hartford** did not meet its burden of showing that the plan unambiguously confers discretion upon the plan administrator; and (3) that material probative evidence demonstrated an actual conflict of interest. In addition, Mizzell has filed several Requests for Judicial Notice on Appeal under Fed.R.Evid. 201(b) asking us to take notice of various documents relating to the California Department of Insurance's recent opinion letter and notice of revocation of approval of discretionary clauses in California insurance contracts. He argues that these actions by the California Department of Insurance change the standard of review to de novo.

We need not address any of these arguments or requests because, even if we were to agree with Mizzell on any of these points, the effect would be only that we review the plan administrator's denial of benefits de novo. See Gatti v. Reliance Std. Life Ins. Co., No. 03-15562, 415 F.3d 978, 2005 WL 1705509, at *5 (9th Cir. July 22, 2005) (holding that failure to comply with ERISA's procedural requirements may, under certain circumstances, change the standard of review from abuse of discretion to de novo); Sandy v. Reliance Std. Life Ins. Co., 222 F.3d 1202, 1204-07 (9th Cir.2000) (holding that unless a plan unambiguously confers discretion on the plan administrator, the standard of review is de novo); Bendixen v. Std. Ins. Co., 185 F.3d 939, 943-44 (9th Cir.1999) (noting that a serious conflict of interest can heighten the abuse of discretion standard of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

review). Even assuming that de novo review applies to the plan administrator's decision to deny benefits in this case, we conclude that Mizzell's claim nevertheless fails.

The meaning of the term "total disability" in the **Hartford** plan is informed by the definition of "partial disability." Reading the policy as a whole, we conclude that Mizzell would be considered totally disabled under this policy only if he was able to perform none of the material and substantial duties of his own occupation prior to the expiration of the plan. On this record, Mizzell cannot make this showing as a matter of law. *See Kearney v. Std. Ins. Co., 175 F.3d 1084, 1090 (9th Cir.1999)* ("If a court reviews the administrator's decision, whether de novo ... or for abuse of discretion, the record that was before the administrator furnishes the primary basis for review.").

**\*2** There is no doubt that Mizzell's ability to perform his job was significantly reduced following his heart attack, but reading his application for benefits as a whole, there is no genuine issue of material fact as to whether he was performing some of his material and substantial duties. His responsibilities were many, but by his own admission, before he stopped working he was limited by his fatigue and his ability to travel to corporate and client meetings. According to this record, Mizzell's condition--particularly his fatigue-- eventually made it impossible for him to perform any of his duties, but that was not until February 28, 1997. By that time, **Hartford** was no longer the insurer. Consequently, Mizzell was not totally disabled within the meaning of **Hartford's** policy while the policy was still in effect.

We reject **Hartford's** assertion that the district court abused its discretion in denying attorneys' fees. In fact, the district court correctly applied the factors set forth in *Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir.1980)*, in determining that **Hartford** was not entitled to attorneys' fees as the prevailing party. The district court's decision not to award fees was absolutely correct.

AFFIRMED.

Slip Copy, 2005 WL 2043896 (9th Cir.(Cal.))

**Briefs and Other Related Documents (Back to top)**

• 2004 WL 3141342 (Appellate Brief) 3rd Cross-Appeal Brief by Plaintiff/Appellant/Cross-Ap0pellee Terry L. Mizzell (Dec. 13, 2004)Original Image of this Document (PDF)

• 2004 WL 2599240 (Appellate Brief) Defendants, Appellees and Cross-Appellants Hartford Life Insurance Company's 2nd Cross-Appeal Brief (Oct. 12, 2004)Original Image of this Document (PDF)

• 2004 WL 2097227 (Appellate Brief) 1st Cross-Appeal Brief By Plaintiff/Appellant/Cross-Appellee Terry L. Mizzell (Aug. 10, 2004)Original Image of this Document (PDF)

• 03-57211 (Docket) (Dec. 23, 2003)

• 03-57130 (Docket) (Dec. 10, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw Download Summary Report for CAYLER,AUVA 5150842**

| | |
|---|---|
| Your Search: | SEDGWICK & DISABILITY & HARTFORD |
| Date/Time of Request: | Friday, October 28, 2005 14:23:00 Central |
| Client Identifier: | MCCULLOCH |
| Database: | ALLCASES |
| Citation Text: | Slip Copy |
| Lines: | 361 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.

**Westlaw**

Slip Copy                                                                                                       Page 1
Slip Copy, 2005 WL 1962254 (E.D.N.Y.)
(Cite as: 2005 WL 1962254 (E.D.N.Y.))

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Richard J. SALUTE, Plaintiff,
v.
AETNA LIFE INSURANCE COMPANY and Arthur
Andersen LLP Group Long Term Disability
Insurance Plan, Defendants.
No. 04CV2035(TCP)(MLO).

Aug. 9, 2005.

Aba Heiman, Fusco, Brandenstein & Rada, PC, Woodbury, NY, for Plaintiff.

Michael H. Bernstein, Sedgwick, Detert, Moran & Arnold LLP, New York, NY, for Defendants.

MEMORANDUM AND ORDER

PLATT, J.

*1 Plaintiff Richard J. Salute ("Plaintiff or "Salute") moves this Court for a motion for judgment on the pleadings and the administrative record and Defendants Arthur Andersen LLP Group Long Term Disability Insurance Plan ("Defendant" or "Plan") and Aetna Life and Casualty Company ("Defendant" or "Aetna"), (collectively "Defendants"), cross move for summary judgment.

For the following reasons, the Plaintiff's motion for summary judgment is DENIED and the Defendants' motion for summary judgment is GRANTED.

BACKGROUND
Plaintiff worked at Arthur Andersen ("AA") from October 1, 1973 until December 31, 2001. Most recently, he was a senior auditing partner at AA and worked as a CPA with thirty (30) business clients, performing audits, accounting and financing for public companies, mergers and acquisitions, and headed several Arthur Andersen Business groups. His final annual salary was $1,000,926. Aetna Life and Casualty Company ("Aetna") provides group long-term disability ("LTD") benefits to those who are approved by Aetna. The Arthur Andersen LLP Long Term Disability Plan ("Plan") is an employee welfare benefit plan and may be sued as an entity under the Employment Retirement Income and Security Act of 1974 ("ERISA").

Plaintiff retired from AA on December 31, 2001. Salute retired because he claims was "disabled within the meaning of the Plan." (Compl. at ¶ 12)

Pursuant to the Plan, a "total disability" is defined in two (2) ways, depending on when the disability clock begins. For "Active partners or for Retired Partners disabled while active" a "total disability" is defined as follows:
 For Active Partners or for Retired Partners disabled while active that solely because of an illness, pregnancy or accidental bodily injury, an insured partner is unable:
 (1) To perform each of the material duties of the partner's own occupation on a full-time basis;
 (2) Benefits paid to age 62.
 (Exh. A). Under the Plan, a "total disability" for "Retired Partners disabled *after* retirement" is defined as follows:
 For Retired Partners disabled after retirement that solely because of an illness, pregnancy or accidental bodily injury, an insured partner is unable:
 (1) To perform independently one of the following functions needed for the basic Activities of Daily Living:
 (A) Bathing
 (B) Dressing
 (C) Feeding
 (D) Continence
 (E) Toileting
 (F) Transferring (getting in and out of a chair, bed, toilet, etc.
 (2) Benefits may be paid to age 62 unless otherwise specified in II.A.2.
 (Exh. A).

On or about November 15, 2002 (over 11 months after his retirement), Plaintiff submitted a Disability Claim Notice to Aetna seeking long term disability benefits under the Plan. According to the Disability Claim Notice, Salute's disability commenced on January 1, 2002, the day after his retirement, and identified asthma and hypertension induced by stress as his disabling conditions. Along with the Disability

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Claim Notice, Salute and AA submitted a Physical Demands Analysis Worksheet which indicated that Salute's job was a sedentary position that required 20% repetitive hand movements using keyboard or writing, 60% sitting, 10% standing, and 10% walking. (Exh. B).

*2 By letter dated February 14, 2003, Aetna denied Salute's claim for LTD benefits because it found that he was not totally disabled as defined by the Plan. On June 2, 2003, Salute (through counsel) appealed the denial of benefits. Upon submitting his administrative appeal, the Plaintiff disagreed that his occupation was "sedentary." He claimed that he worked 70-80 hours per week. He claimed that his material duties included traveling with his laptop and briefcase to see clients both within Manhattan and out of town. The Plaintiff submitted additional records for Aetna's review in support of his appeal.

By letter dated September 8, 2003, Aetna advised the Plaintiff that it was adhering to its original decision to deny benefits. It stated, "We have reviewed your client's file in its entirety and have determined that the clinical information presented does not demonstrate a loss of functional capabilities preventing him from performing the material duties of his own occupation as a partner for Arthur Andersen."

1. Medical Evidence in the Administrative Record

The Defendants' decision was based on the following medical information:

On June 22, 1994, the Plaintiff was examined by a Dr. Stephen Gulotta. His report of that examination indicated that the Plaintiff was able to walk or jog 2 miles in 30 minutes several times per day, that a cardiac Stress Test was negative. He concluded that Plaintiff "does not have coronary disease."

In January 1994, Dr. Melvin Holden reported that Salute "appears to have exercise induced asthma of a mild degree, his pulmonary function testing was positive for "marked, but partially reversible obstructive airway disease" and he anticipated that "Mr. Salute will have recurrent respiratory symptoms."

Dr. Frederick Kaplan was the Plaintiff's treating physician from March 28, 1994 until February 10, 2003. Dr. Kaplan noted on November 26, 2001 that Salute was "short of breath at rest and worse on walking," and that "he is unable to walk without using an inhaler every block." Dr. Kaplan also stated that he found Salute to be "capable of clerical/administrative (sedentary) activity" and felt that Salute's prognosis was "worsening."

A cardiac Stress Test was performed on January 30, 2002 (within a month of the claimed **disability**) and indicated that Plaintiff had only achieved 80% of the predicted heart rate, that there was "hypertension noted at rest with exertion," the test was discontinued because of difficulty in breathing, and the conclusion was that "slow heart rate recovery implies level of autonomic dysfunction and is considered to be a cardiovascular risk factor."

The Administrative Record contains a note dated November 12, 2002, in which Dr. Kaplan indicate a clinical finding of "Lungs--occ wheezes" and notes "Retired 12/31/01 due to inability to walk or work."

On May 19, 2003, Dr. Lester Ploss produced a consultative report on the Plaintiff. In this report, he concluded that Dr. Salute's job at AA was "extremely hectic and demanding and the claimant worked 12 hour days which included a great deal of traveling all over the world ... The claimant often had a great deal of documents and a lap top computer which he had to carry by himself."

*3 As to his physical condition, Dr. Ploss noted that the Plaintiff was obese (Ht. 5'7, Wt. 251 lbs.), hypertension, distant sound breaths and bilateral course ronchi. Diagnostic tests revealed: (a) an abnormal x-ray showing "increased broncho vascular and interstitial lung markings in the lower left lung field"; (2) an abnormal EKG with "poor progression of the R wave across the precordium. There are diffuse abnormal ST-T changes present with particular flattening of the T wave across the infero lateral myocardial wall"; and (3) an abnormal pulmonary function test which indicated "significant reversible airway disease (bronchial asthma) ... as well as restrictive lung disease secondary to obesity."

Dr. Ploss concluded that Salute was "without a doubt unable to perform the duties necessary for his top level work as a partner of Arthur Andersen or any other accounting firm due to his progressive pulmonary and cardiovascular and diabetic conditions."

One of Aetna's Medical Directors, Dr. Tracey Schmidt, then reviewed the file on July 21, 2003 and stated that "File lacks sufficient medical to comment on severity of diabetes." She then notes that Salute's

Slip Copy
Slip Copy, 2005 WL 1962254 (E.D.N.Y.)
(Cite as: 2005 WL 1962254 (E.D.N.Y.))

Page 3

hypertension did not result in "end organ damage" and his abnormal cardiac status did not result in hospitalization. Dr. Schmidt opined that his pulmonary function test from 1993 and 2003 are "almost exactly the same" and concludes, "File lacks sufficient medical to support objective evidence of a physical functional capacity impairment to own job."

*2. Additional Medical Evidence*

Following Aetna's final administrative decision on September 8, 2003, Plaintiff requested "copies of all documents, records and other information relevant to the claim ..." Upon receipt of Dr. Schmidt's report, it was shown to Dr. Ploss for comment, and he responded with an affidavit dated November 5, 2003, which was sent to defense counsel on September 27, 2004 as part of Rule 16(a)(1) disclosures. This Affidavit analyzes the reasonableness of Dr. Schmidt's opinions.

DISCUSSION
I. *Applicable Legal Standards*

A. *Treated as Rule 12(c) or Rule 56 Motion?*

Plaintiff moves this Court for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The Defendants cross-move for summary judgment on the same points as the Plaintiff; however, they do so pursuant to Federal Rule 56. The standard to be applied on a Rule 12(c) motion is identical to that used on a Rule 12(b)(6) motion; in other words, the Court should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief under the governing substantive law. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Deravin v. Kerik*, 335 F.3d 195 (2d Cir.2003). If, however, "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(c).

*4 Both parties have submitted Rule 56.1 Statements and attached various exhibits and affidavits in support of their papers. Indeed, since the issue in this case is whether the claim administrator, based on the administrative record before her, acted in an arbitrary or capricious fashion, it would seem impossible for the Court to entertain the issue based on the pleadings alone. [FN1] Accordingly, the Plaintiff's motion for judgment on the pleadings should be converted to one for summary judgment.

> FN1. Traditionally, when converting to a motion for summary judgment, all parties should be so notified and given the opportunity to present all additional material made relevant by Rule 56. Fed.R.Civ.P. 12(c). Here, however, the parties have anticipated that the Court may transform their motion into one for summary judgment and have submitted 56.1 statements, as well as various exhibits. Thus, no prior notice need be given to the parties.

Under a Rule 56 motion, the Defendant bears the burden of demonstrating, even after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, that there are no genuine issues of material fact, and that the Defendant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Material facts are those which may effect the outcome of the case, and a factual dispute is genuine where a reasonable jury may return a verdict for the nonmoving party. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

B. *Standard of Review under ERISA*

The parties dispute the appropriate standard of review this Court should apply to Plaintiff's claim under 29 U.S.C. 1132(a)(1)(B) of ERISA. The Plaintiff argues that the Court should use a *de novo* standard when reviewing the denial of his benefits; whereas the Defendants argue that the more deferential "arbitrary and capricious" standard should be applied. A denial of benefits challenged under ERISA is to be reviewed under a *de novo* standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. V. Burch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). When the claims administrator is granted express authority to determine eligibility issues, however, the Court "will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir.1995). "Although no 'magic words' are required to trigger one or the other level of review, 'when making this determination, courts must examine the relevant plan documents to construe doubtful terms

or to resolve disputes over benefit eligibility." ' _Winter v. Hartford Life and Accident Ins. Co., 309 F.Supp.2d 409, 413 (E.D.N.Y.2004)_ (citing _Zisel v. Prudential Ins. Co. of Amer., 845 F.Supp. 949, 950 (E.D.N.Y.1994)_.

Here, discretion was given to Aetna and thus, the arbitrary and capricious standard should be used. A review of the applicable Plan documents reveals that the Plan grants AETNA complete discretion to make long-term benefit eligibility decisions and to construe the terms of the Plan. According to the provision of the Plan entitled "ERISA Claim Fiduciary": "... Aetna shall have discretionary authority to: ... determine whether and to what extent employees and beneficiaries are entitled to benefits; and construe any disputed or doubtful terms of the policy. Aetna shall be deemed to have properly exercised such authority unless Aetna abuses its discretion by acting arbitrarily and capriciously. [FN2] (Exh. A).

> FN2. The Plaintiff contends that the Court should not apply this deferential standard of review because discretion was not given over to Aetna. To bolster his claim, he points to a letter he received he received from Aetna on April 8, 2003 in which Aetna stated: "Since benefits under this plan are entirely self-funded by Arthur Andersen, not by Aetna, you will have to request a copy of the Arthur Andersen Long Term **Disability** Plan by writing to ..." Defendants admit that this letter is incorrect and was a mistake on their part; however, they correctly state that this mistake is irrelevant to the issue at hand. Courts may only examine the relevant plan documents to discern who was given discretionary authority. _Winter, 309 F.Supp.2d at 413_. In this case, the plan documents reveal that it was Aetna who was given discretion.

*5 Under the arbitrary and capricious standard, the Court must review the administrative record to determine if there is any reason to conclude that the denial of benefits was based on a consideration of the relevant factors and whether there has been a clear error of judgment. _Miller v. United Welfare Fund, 72 F.3d 1066, 1070 (2d Cir.1995)_. In addition, the Court must grant significant deference to the claim administrator's determination. _Pagan, 52 F.3d at 442_ ("This scope of review is narrow, thus [the court is] not free to substitute [its] judgment for that of the [plan administrator] as if [the court were] considering the issue of eligibility anew"). Thus, this Court may only reverse if the fiduciary's decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." _Miller v. United Welfare Fund, 72 F.3d 1066, 1070 (2d Cir.1995)_. " 'Substantial evidence" ' is 'such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [claims administrator] and requires more than a scintilla but less than a preponderance." ' _Id. at 1072_. Moreover, "[w]here both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the [administrator's] interpretation must be allowed to control." _Pulvers v. First Unum Life Ins. Co., 210 F.3d 89, 92-93 (2d Cir.2000)_.

II. _Application of the "Arbitrary and Capricious" Standard_

The Defendants' denial of LTD benefits was not arbitrary and capricious, thus summary judgment is granted as to the Defendants and denied as to the Plaintiff.

In his complaint, Plaintiff alleges that his claim for LTD benefits was based on his inability to "perform the material duties of his occupation on a full-time basis as of December 31, 2001." (Compl. at ¶ ¶ 12, 15, 17) In other words, Plaintiff's claim is based on the definition of "total **disability**" for "Active Partners or for Retired Partners disabled while active," [FN3] rather than the definition of "total **disability**" for "Retired Partners disabled after retirement" (a definition which is contingent on the Plaintiff not being able to independently perform the basic activities of living, such as bathing and eating). Though the parties quibble about which definition of "total **disability**" should be used to evaluate Salute's claim (the Defendants point out that Salute stated in his claim forms that his **disability** began one day after he retired), the issue really is inconsequential. Though Defendants now claim that the Court should utilize the stricter definition of "total **disability**" for retired partners, the fact is that the Defendants actually evaluated Plaintiff's claim under the looser definition. Defendants may not now claim that the Court should use a different definition than they themselves used. Consequently, the task of this Court is to evaluate whether Aetna was arbitrary and capricious in their finding that Salute, as a "Retired Partner disabled while active," was not totally disabled within the meaning of the Plan.

> FN3. Under the Plan, "total **disability**" for Active Partners or for Retired Partners disabled is defined as "solely because of an

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

illness, pregnancy or accidental bodily injury, an insured partner is unable:
(1) To perform each of the material duties of the partner's own occupation on a full-time basis;

*6 Salute's claim is that he is unable to perform the duties of his occupation as a CPA-auditor because he can no longer travel to audit clients or even carry his briefcase, laptop, and luggage. The Plaintiff argues that Aetna's decision must have been arbitrary and capricious because all of the doctors' files in the administrative record-except one-agreed that the Plaintiff was disabled in this regard. For example, Dr. Kaplan, Salute's treating primary care physician, indicated that the Plaintiff is "short of breath at rest and worse on walking" and that he is "unable to walk without using inhaler every block," but that he is "capable of clerical/administrative (sedentary) activity."

Defendants, however, point out that the Plaintiff's job was sedentary and thus at the time of his **disability**, Salute was still able to perform "each of the material duties of the partner's own occupation." (Exh. A) To bolster their claim, they point to the Physical Demands Analysis Worksheet which Salute and AA submitted in which Salute's job was described essentially as a sedentary position that required 20% repetitive hand movements using keyboard or writing, 60% sitting, 10% standing, and 10% walking. (Exh. B). Plaintiff now disagrees with this description and states that a good majority of his job involves traveling and carrying heavy items- neither of which he is able to do.

Giving due deference to the Defendants', the Court finds that it did not act in an arbitrary and capricious fashion when denying Plaintiff LTD benefits. Substantial evidence exists, such as the Physical Demands Analysis, which describes the Plaintiff's job as primarily sedentary, as doctors' opinions that the Plaintiff was not totally disabled within the meaning of the Plan. Accordingly, the motion for summary judgment is granted as to the Defendants and denied as to the Plaintiff.

III. *May the Court examine documents outside of the administrative record?*

In reviewing decisions of plan fiduciaries under the arbitrary and capricious standard, the Court is limited to evaluating only the evidence that was before the plan administrator at the time of the denial of benefits. *Miller v. United Welfare Fund,* 72 F.3d 1066, 1071 (2d Cir.1995). This rule is consistent with the fact that nothing in the " 'legislative history suggests that Congress intended that federal district courts would function as substitute plan administrators." ' *Id.* (citing *Perry v. Simplicity Eng'g,* 900 F.2d 963, 966 (6th Cir.1990)).

Salute requests that the Court consider a "rebuttal" affidavit dated November 5, 2003 signed by a Dr. Lester N. Ploss, a pulminary specialist, who was hired to review and comment on the reasonableness of Aetna's denial of the Plaintiff's appeal. Salute, however, may not ask this Court to improperly re-open the administrative record to permit admission of evidence that arose after the record closed unless he can show that Aetna acted pursuant to a conflict of interest or that Aetna denied him the opportunity to present evidence during his administrative appeal. *Locher v. Unum Life Ins. Co. of America,* 389 F.2d 288, 295 (2d Cir.2004). The Plaintiff does not even allege a conflict of interest here nor does he provide sufficient proof that the record was incomplete at the time of its review.

*7 Accordingly, summary judgment is GRANTED to the Defendants as to this claim and the administrative record should not be expanded to include Dr. Ploss' affidavit.

*CONCLUSION*
For the foregoing reasons, the motion for summary judgment is GRANTED as to the Defendants and DENIED as to the Plaintiff.

SO ORDERED.

Slip Copy, 2005 WL 1962254 (E.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 2409433 (Trial Pleading) Answer (Jul. 23, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.