UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CANDI McCULLOCH,                  :
    Plaintiff,                    :
                      :
      v.                            :     Civil No. 3:01CV1115(AHN)
                      :
HARTFORD LIFE AND ACCIDENT        :
INSURANCE COMPANY AND             :
EDUCATORS MUTUAL LIFE             :
INSURANCE COMPANY,                :
    Defendants.                   :

RULING ON MOTION TO DISQUALIFY AND TO VACATE

Presently pending before the court is the motion of the plaintiff, Candi McCulloch ("McCulloch") to disqualify this Court from further proceedings in this case and to vacate the Court's prior rulings.  For the following reasons, the motion is DENIED.

BACKGROUND

Previously, this Court granted defendant Hartford Life Insurance Company's ("Hartford") motion for summary judgment on many of McCulloch's causes of action, granted in part and denied in part defendant Educators Mutual Life Insurance Company's ("Educators") motion for summary judgment against McCulloch, and denied McCulloch's motion for summary judgment.  Thereafter, McCulloch filed a motion for reconsideration and a motion for entry of judgment to permit her to take an immediate appeal. Also, only after the Court, during a Chambers conference with counsel, pointed out that the complaint, which was filed in 2001, did not contain a jury claim and that no party had thereafter filed a demand for a jury trial and thus the remaining claims

would be tried to the Court, McCulloch filed a request for permission to file a jury demand.  On September 29, 2005, the Court issued its written opinion granting the motion for reconsideration, but on reconsideration, upheld its previous ruling in all respects.  On September 30, 2005, the Court issued written rulings denying McCulloch's motion for permission to file a jury demand and to take an immediate appeal.  More than one month later, on November 4, 2005, McCulloch filed the instant motion to disqualify the Court pursuant to 28 U.S.C. § 455(a).

<u>DISCUSSION</u>

McCulloch moves for § 455(a) disqualification on the grounds that the Court's former law clerk continued to work on the motions after he accepted employment with, and began working for, a law firm in New York that "regularly represents defendant Hartford" in unrelated matters and also "regularly" defends Hartford and other insurance companies against claims by disabled insureds that are similar to the claims in this action. McCulloch does not claim, nor could she, that the law clerk's current employer represents any party in this case or in any other case that is or was ever pending before this Court.

As discussed below, McCulloch's motion is so totally lacking in factual and legal grounds that it borders on the frivolous.

A.  <u>Facts</u>

McCulloch's attorney, Elliot Gersten ("Gersten"), has

-2-

submitted an affidavit in which he avers that on September 13, 2005, he called the Court to find out when the Court would issue its rulings on the pending motions.  He says that the Court's new law clerk told him that the law clerk who was working on the case had left and had taken the court file with him so that he could finish the pending motions.  Gersten further alleges that in early October 2005, he learned, without stating how, that the law clerk, after leaving his clerkship, commenced work at a law firm in New York City that regularly represents Hartford and other insurance companies.

At the Court's request, its former law clerk has submitted a statement setting forth the facts pertaining to his involvement in this matter and his current employment with the New York law firm (the "Firm").  According to his statement, the law clerk first became involved with this case in September 2004, when the Court was preparing to hear argument on the parties' motions for summary judgment.  After oral argument, the law clerk worked on a draft ruling under the direction of the Court.  The Court issued its written decision in March 2005.  A few weeks later, in April 2005, McCulloch's counsel filed the three motions at issue. After the Court held a conference with the parties to discuss the motions, the Court instructed the law clerk to begin drafting a ruling that granted reconsideration, but denied the relief McCulloch sought.  The Court was explicit in its instructions to

-3-

the law clerk as to the reasons for denying the relief sought and affirming its prior ruling.  The Court also instructed the law clerk to draft rulings denying the motion for a jury trial because counsel for McCulloch had not shown excusable neglect for failing to timely file a jury demand, and denying the motion for partial final judgment because counsel had not shown that an immediate appeal was necessary to avoid harshness or injustice. The law clerk began working on the draft rulings in April 2005, but he interrupted his work in May 2005, to work on a criminal trial.

On June 14, 2005, after he learned of the employment opportunity from a recruiter, the law clerk interviewed at the Firm.  During the interview he did not discuss the Firm's clients or any cases the Firm had previously handled or was currently handling for any clients.  He also did not mention any of the cases or parties in any of the cases that he was working on or had worked on during his clerkship.  On June 22, 2005, the law clerk received an offer of employment as a salaried associate with the Firm.  He accepted the offer that same day.

Thereafter, in August 2005, the law clerk resumed his work on the draft rulings.  At the time his clerkship ended on September 1, 2005, his work on this case was substantially finished.  He did not take the court file with him when he left. He commenced his employment with the Firm on September 6, 2005.

-4-

After he started working at the Firm he had no substantive
discussions about this case with the Court and did not discuss
the merits of the pending motions with the Court.  His work
consisted of finishing up the drafts, primarily editing and doing
some minor research.  He submitted his drafts to the Court
sometime during the last week of September 2005.  The drafts he
submitted were revised, edited, and reviewed by the Court before
they were issued on September 29 and 30, 2005.

The law clerk avers that he did not know that Hartford had
been a Firm client until he was contacted by the Court in
connection with Gersten's motion for disqualification.  He states
that he has never discussed the Firm's past or present
representation of Hartford with any member of the Firm or other
Firm employee, and has no knowledge of any past or present
matters that the Firm may be handling or may have handled on
behalf of Hartford or any other insurance company.  He is not a
member of any of the Firm's insurance practice groups and, until
last week, had not worked on any insurance-related issues for the
Firm.

    B.    The Standard For Disqualification Under § 455(a)

Section 455(a) requires a federal judge to disqualify
himself in any proceeding in which his impartiality might
reasonably be questioned.  See 28 U.S.C. § 455(a).
Disqualification under "455(a) is triggered by an attitude or

-5-

state of mind so resistant to fair and dispassionate inquiry as
to cause a party, the public, or a reviewing court to have
reasonable grounds to question the neutral and objective
character of a judge's rulings or findings." Liteky v. United
States, 510 U.S. 540, 557-58 (1994) (Kennedy, J., concurring).
The test for disqualification under this section is whether there
is an appearance of a wrongful or inappropriate bias or
prejudice, not whether the judge actually harbored such a bias or
prejudice against a party or his counsel. See id. at 548.  The
test is an objective one. See In re Drexel Burnham Lambert,
Inc., 861 F.2d 1307, 1313 (2d Cir. 1988).  In determining whether
there is an appearance of bias or impartiality, a judge must
consider whether a reasonable person knowing and understanding
all of the relevant facts and circumstances would harbor doubts
as to the judge's impartiality.  See, e.g., Apple v. Jewish Hosp.
& Med. Ctr., 829 F.2d 326, 333 (2d Cir. 1987).  An alleged
disqualifying interest that is remote, contingent, or speculative
is not sufficient to reasonably question the judge's
impartiality.  See Drexel, 861 F.2d at 1313.  "It is vital to the
integrity of the system of justice that a judge not recuse
himself on unsupported, irrational or highly tenuous speculation,
and he is as much obliged not to recuse himself when it is not
called for as he is obliged to when it is." McCann v.
Communications Design Corp., 775 F. Supp. 1506, 1523 (D. Conn.

1991) (citing Drexel, 861 F.2d at 1312).  Judges are presumed to be impartial.  See id.  Thus, the party moving for disqualification has a substantial burden to overcome that presumption.  See, e.g., id. at 1522.  He must produce clear and convincing evidence that the court should be disqualified pursuant to § 455.  See Cobell v. Norton, 237 F. Supp. 2d 71, 79 (D. D.C. 2003).

Further, the timing of a disqualification motion is subject to scrutiny.  See Liteky, 510 U.S. at 557-58.  Disqualification motions must be made at the earliest possible moment after the movant obtains knowledge of facts demonstrating the bases for the claim.  See Apple, 829 F.2d at 333.  Thus, a central focus of the timeliness requirement is whether the movant held back and waited to file the motion, hedging his bets against the eventual outcome.  See id. at 324; see also Bivens Gardens Office Bldg. Inc. v. Barnett Bank of Fla., Inc., 140 F.3d 898 (11th Cir. 1998) (noting that the disqualification statute was intended as a shield, not a sword, and that disqualification cannot be used as "an insurance policy to be cashed in if a party's assessment of his litigation risks turns out to be off and a loss occurs.").

C.   Asserted Grounds for Disqualification

Gersten contends that a reasonable person might question the Court's impartiality because its former law clerk continued to work on this case after he interviewed, accepted employment, and

began working at a law firm that specializes in advising and
defending insurance companies, including Hartford.  Regardless of
the fact that the Firm does not represent any party in this
action or have any involvement in, or any connection whatsoever
to this case, Gersten maintains that the Court is disqualified
under § 455(a) because the law clerk's employer is admittedly
partisan in favor of insurers.  He contends that the law clerk's
employer has a direct interest in this case because it could use
the Court's rulings as precedent in favor of its insurance
companies clients, including Hartford, in unspecified,
unidentified pending and future cases.  He also alleges that the
law clerk could not be impartial in this case after he accepted
employment with the Firm because the issues that were being
determined in the pending motions are issues that will arise in
other cases in which the Firm represents Hartford or its other
insurer clients and thus the law clerk was "virtually compelled
to take a position in [this] matter that would result in holdings
that were not only favorable to [the Firm's] insurance industry
clients in general, but to Hartford specifically."  Gersten
further asserts that it is irrelevant that the law clerk and the
Court did not know that the Firm specialized in representing
Hartford and other insurers or that the Court had independently
decided the outcome of the motions.  According to Gersten, the
Court's rulings also give rise to reasonable questions regarding

-8-

the Court's impartiality because they were wrongfully decided and impermissibly disregarded undisputed facts that supported McCulloch's claims, resolved disputed questions of fact in Hartford's favor, and drew every conceivable inference in Hartford's favor.

Finally, Gersten erroneously assumes that the Court had <u>ex parte</u> conversations with its law clerk after he left his clerkship regarding the merits of this case and that its unspecified and unidentified communications "contributed to the taint" and further warrant disqualification.

D.   <u>Analysis</u>

Gersten's arguments in support of disqualification are based on unsupported, irrational and highly tenuous, rank speculation. Moreover, the legal authority on which he relies as compelling the Court's disqualification is totally inapposite and factually distinguishable in that it involves situations where the disqualifying conflicts arise because a law clerk accepted employment with a firm that represented a party in the same case on which he worked during his clerkship. Gersten does not cite, nor can the Court find, one case in which disqualification was required because the law clerk, or other individual with a close relationship to the court, accepted employment with, or worked for, a firm that represented, in totally unrelated matters, one of the parties in a pending case or with a firm that regularly

-9-

litigated cases involving the same issues as those the law clerk worked on during his clerkship.  Moreover, Gersten impermissibly relies on the Court's rulings as evidence of impartiality.  But most troubling, and telling, is the timing of his motion.  Even a disinterested observer would question his motives in moving for disqualification only after he learned of the Court's rulings on the merits of his pending motions and it became clear that the case would proceed to trial before the Court.[1]  Indeed, the total absence of merit and the suspicious timing suggest that the motion to disqualify is nothing more that a strategic device to judge shop and a thinly-veiled attempt to intimidate the Court.[2]

    1.   <u>Timing</u>

The requirement that a motion for disqualification be made at the earliest possible moment after the movant learns the facts that allegedly require disqualification is not a mere formality.  <u>See</u> <u>Apple</u>, 829 F.2d at 333.  Rather, the timeliness requirement

---

[1]It is also possible that Gersten delayed filing the motion so that he could use the possibility of the Court's disqualification as a strategic device in settlement negotiations that had been scheduled by Magistrate Judge Garfinkle for the beginning of November 2005.  It would not be unreasonable to assume that Gersten believed the defendant would be more amenable to settlement if the threat of starting over with a new judge on the eve of trial in this already protracted litigation was looming.

[2]In this regard, the Court notes Gersten's pre-filing offer in the presence of opposing counsel to file the disqualification motion under seal to "avoid embarrassing" the Court, an offer that the Court summarily rejected.

is designed to prevent a situation where the movant knows the facts on which the motion is based, but makes a strategic decision not to raise the issue until and if it's needed to avoid an unfavorable outcome.  See In re Kansas Pub. Employees Ret. Sys., 85 F.3d 1353, 1360 (8th Cir. 1996) (subscribing to the view that motions for disqualification are not "additional arrows in the quiver of advocates" to be used in the face of adverse rulings); United States v. Eniqwe, 155 F. Supp. 2d 365, 370 (E.D. Pa. 2001) (stating that a litigant with knowledge of circumstances suggesting possible bias cannot hold back, hoping for favorable rulings, then seek disqualification when they are not forthcoming).

        Here, Gersten knew the facts on which his motion to disqualify is based shortly before or about the time the Court issued the rulings that he now seeks to vacate, yet he did not file the motion until it became apparent that a settlement was not likely and the case would proceed to trial before the Court. Because he does not offer any explanation for his failure to file the motion as soon as he learned the facts allegedly supporting disqualification, it is reasonable to conclude that his challenge to the Court's impartiality was motivated by displeasure with the Court's rulings rather than by a reasonable doubt as to the Court's impartiality.  See Welch v. Board of Dir. of Wildwood Golf Club, 918 F. Supp. 134, 137 (W.D. Pa. 1996).

        2.    <u>Alleged Bias</u>

     The question of whether a disqualifying conflict exists does
not depend on "whether a line can be drawn connecting a person
within chambers to a person or firm related, no matter how
remotely, to a party in a case." <u>Hamid v. Price Waterhouse</u>, 51
F.3d 1411, 1417 (9th Cir. 1995).  Rather, the line must connect
the court or a member of its staff to a person or firm directly
related to a case that is pending on its docket.  <u>E.g.</u>, <u>id.</u>

     Thus, it is well settled that a law clerk should not
participate in litigation in which his future employer appears as
counsel for one of the parties.  <u>See, e.g.</u>, A. DeLeo & A. Rubin,
Law Clerk Handbook § 2250.  In fact, it is universally accepted
that the court must be disqualified where its law clerk continued
to participate in a case in which his future employer represented
one of the parties.  <u>See, e.g.</u>, <u>Hall v. Small Bus. Admin.</u>, 695
F.2d 175 (5th Cir. 1983) (holding that disqualification was
required where the law clerk continued to work on a case in which
her future employers were counsel for plaintiffs); <u>Miller Indus.
Inc. v. Caterpillar Tractor Co.</u>, 516 F. Supp. 84 (S.D. Ala. 1980)
(holding that disqualification was required where the law clerk
was actively involved in a case for eight months after he
accepted employment with the firm that represented one of the
parties).

     It is also settled that a judge should not preside in a case

                              -12-

in which he has a direct personal, fiduciary or financial relationship with one of the parties or counsel.  See Liljeberg v. Health Serv. Acquisition Corp., 486 U.S. 847 (1988) (holding that disqualification was required where the judge was a trustee of a university that had a direct and substantial financial stake in the outcome of the litigation over which he was presiding by virtue of its contractual relationship with one of the parties).

But it is equally well settled that disqualification is not required where the court's or the law clerk's alleged disqualifying relationship with a party or a law firm is unrelated to the case in which disqualification is sought. See, e.g., In re Billedeaux, 972 F.2d 104, 106 (5th Cir. 1992) (holding that disqualification was not required where the judge's husband was a partner in a firm that actively represented the defendant in many other cases); Hook v. McDade, 89 F.3d 350, 355 (7th Cir. 1996) (holding that disqualification was not required where the judge's wife's firm formerly represented a defendant in an unrelated matter); Perkins v. General Motors Corp., 965 F.2d 597 (8th Cir. 1992) (upholding the trial court's imposition of sanctions imposed on an attorney who filed a meritless disqualification motion without citing any legal authority even suggesting that disqualification was appropriate where the law clerk accepted a position with a firm that did some work for one of the parties) (emphasis in original); Welch, 918 F. Supp. at

-13-

137-38 (noting that no reasonable person would question the
judge's impartiality where his sons were employed by a law firm
that regularly represented the defendant in other matters, but
had no involvement in the pending litigation); Strey v. Hunt
Int'l Res. Group, 516 F. Supp. 22 (D. Col. 1981) (denying motion
for disqualification where the defendant was a client of the
judge's husband's law firm in unrelated matters); see also In re
Drexel Burnham Lambert, 861 F.2d 1307 (2d Cir. 1988) (holding
disqualification was not required where one of the parties was
arranging financing for the purchase of a corporation in which
the judge's wife was a controlling stockholder and there was no
nexus between that financial interest and the pending case).

    Simply put, as these cases inform, disqualification is not
required where the court or the law clerk is not connected
directly to a party or law firm in a pending case, but is
connected only remotely or tangentially, if at all.  Where there
is no direct nexus between the court or its law clerk and a
party or counsel, it is highly likely that what a movant sees as
smoke and claims to be fire is merely a smokescreen.  See Drexel,
861 F.2d at 1309.

    There is no smoke or fire here.  Just a smokescreen.
The only facts to which Gersten points as requiring
disqualification are that the Court's former law clerk worked on
this case after he accepted employment with, and began working

-14-

for a law firm that regularly represents Hartford and other insurance companies in other, unrelated cases.  There are no facts suggesting that the law clerk's current employer has any connection to, or is involved in any way with, this case.  These facts would not cause an objective, reasonable observer to harbor doubts as to the Court's impartiality.  And that reasonable observer would not be convinced otherwise by Gersten's speculative and ethereal arguments that bias somehow exists because, for example, the rulings on which the law clerk worked might be used by his employer in some unspecified future case as precedent in favor of some unspecified insurance-company client. To the contrary, the only conclusion that such a reasonable observer could draw is that the only cloud on the Court's impartiality is created by Gersten's unfounded insinuations and rank speculation.  And the court will not yield to his unsupported aspersions of impropriety.  See In re United States, 158 F.3d 26, 35 (1st Cir. 1998) (admonishing that "a party cannot cast sinister aspersions, fail to provide a factual basis for those aspersions, and then claim that the judge must disqualify herself because the aspersions, ex proprio vigore, create a cloud on her impartiality.").  To do so would render this disqualification motion "a tactical weapon" that was triggered by Gersten's "manipulation of the gossamer strands of speculation and surmise."  Id.

### 3.   Extrajudicial Source of Alleged Bias

It cannot be disputed that the disqualifying bias under § 455(a) must arise from extrajudicial sources and not from the court's rulings.  See Liteky v. United States, 510 U.S. at 555; In re IBM Corp., 618 F.2d 923, 929 (2d Cir. 1980).  Nonetheless, Gersten makes the baseless claim that the Court's recent rulings require disqualification, not because they are based on extrajudicial sources or display deep-seated antagonism towards his client, but because they favor Hartford and are incorrectly decided.

It has long been settled law that the disqualification statute "was never intended to enable a litigant to oust a judge for adverse rulings . . . ."  Id. (quoting Ex parte American Steel Barrel Co., 230 U.S. 35, 44 (1913)).  Thus, even if the rulings are incorrect, "it of course does not follow that they were motivated by personal bias."  Id. at 930; see also, e.g., McLaughlin v. Union Oil Co. of Cal., 869 F.2d 1039, 1047 (7th Cir. 1989) ("Bias cannot be inferred from a mere pattern of rulings by a judicial officer, but require evidence that the officer had it 'in' for the party for reasons unrelated to the officer's view of the law, erroneous as that view might be.").  Only rulings that (1) rely on knowledge acquired outside court proceedings or (2) display deep-seated and unequivocal antagonism that would render fair judgment impossible can serve as a basis

-16-

for disqualification under 455(a).  See Liteky, 510 U.S. at 556.
Otherwise, judicial rulings are grounds for appeal, not
disqualification.  E.g., Hook v. McDade, 89 F.3d at 355.

In the absence of evidence that the Court's rulings rely on
extrajudicial sources or display the necessary antagonism towards
McCulloch, the question of whether they are correct is irrelevant
to the issue of disqualification.  See IBM, 618 F.2d at 930.
"Any legal, logical or factual errors that the court has made [in
its rulings] may be corrected on appeal."  McBeth v. Nissan Motor
Corp., 921 F. Supp. 1473, 1484-85 (D. S.C. 1996).  Thus, there is
no basis for Gersten's allegations that the Court's rulings
support a disqualifying bias.  See Johnson v. Trueblood, 629 F.2d
287, 291 (3d Cir. 1980).

### 4.   Ex Parte Communications

Finally, Gersten claims that disqualification is required
because the Court had ex parte communications with its law clerk
concerning the merits of the pending motions after he left his
clerkship.  Once again, his unfounded and unsupported accusations
are baseless and do not support disqualification.

First, his contention is based on an erroneous assumption
that the law clerk has a conflict of interest as a result of his
employment with a Firm that represents insurance companies,
including Hartford, in unrelated cases.  However, as discussed,
because the law clerk's employer has no connection to this

-17-

litigation, there is no disqualifying conflict of interest.  See
In re Kingston Int'l Ltd., 368 F.3d 289 (3d Cir. 2004) (holding
that if the persons with whom the court had ex parte
communications did not have an actual conflict of interest the
disqualification inquiry ends).  Second, Gersten makes the
factually unsupported and erroneous assumption that the Court
engaged in ex parte communications with its former law clerk
concerning the merits of this case or the pending motions.
However, as the law clerk attests, he had no substantive
discussions with the Court on the merits of the rulings or this
litigation after he left his clerkship.

        Gersten's reliance on Kingston is, therefore, totally
misplaced.  In that complex, asbestos-related bankruptcy case,
disqualification was required because the court had acquired
extrajudicial facts, information, and advice on almost all of the
major issues in the litigation during its ex parte meetings and
discussions with court-appointed advisors who, while serving as
advisors to the court, also represented entities that were
likely to assert claims against one or more of the parties in the
pending bankruptcy.  The Third Circuit ruled that the advisors
were conflicted by their dual roles as advisors to the court and
counsel to potential claimants.  See id. at 305, 307 (emphasizing
that ex parte communications alone -- in the absence of any
conflict of interest -- do not require recusal and that recusal

is required only when the <u>ex parte</u> communications involve the merits of a pending case). Indeed, in the absence of a conflict of interest or the exchange of extrajudicial information pertaining to a specific matter, courts, including the Second Circuit, have refused to mandate recusal on the bases of <u>ex parte</u> communications between the court and an outside advisor. <u>See</u>, <u>e.g.</u>, <u>United States v. Yonkers Bd. of Educ.</u>, 946 F.2d 180 (2d Cir. 1991) (affirming the denial of a disqualification motion under § 455(a) and (b)(1) that alleged improper <u>ex parte</u> communications between the court and an outside advisor because the advisor did not convey any extrajudicial information about the case). Accordingly, any alleged <u>ex parte</u> communications between the Court and its former law clerk do not require disqualification.

<u>CONCLUSION</u>

For the foregoing reasons, McCulloch's motion to disqualify and to vacate the court's prior rulings [doc. # 241] is DENIED.

SO ORDERED this 23rd day of November, 2005, at Bridgeport, Connecticut.

<u>/s/</u>_____
    Alan H. Nevas
    United States District Judge