UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CANDI McCULLOCH<br>Plaintiff, | : CIVIL ACTION NO.<br>: 3:01CV1115 (AHN)<br>:<br>: |
| vs. | :<br>: |
| HARTFORD LIFE AND ACCIDENT<br>INSURANCE COMPANY AND EDUCATORS<br>MUTUAL LIFE INSURANCE COMPANY<br>Defendants. | :<br>:<br>:<br>: JANUARY 31, 2006 |

**PLAINTIFF'S OBJECTION TO
INTRODUCTION OF DEPOSITION OF PAUL MEYER**

**I.   INTRODUCTION**

Pursuant to this court's Pretrial Order, plaintiff respectfully submits the following objection to defendants' introduction of the deposition testimony of Paul Meyer based on Federal Rules of Evidence 402, 602, 611 and 802.[1] The cited testimony consisted primarily of (A) statements on matters for which there is no evidence that Mr. Meyer had personal knowledge; (B) statements on matters for which Mr. Meyer admitted an absence of any personal knowledge; and (C) Mr. Meyer or defendants' counsel reading hearsay statements contained in documents that Mr. Meyer did not author, on matters for which there is no evidence that Mr. Meyer had any personal knowledge, and about which Mr. Meyer did not even recall, after reviewing the documents. In addition to violating Rules 602 and 801, much of this questioning violates Rule 611(c)'s prohibition against leading questions. Finally, none of this testimony is relevant to the question of whether plaintiff is or was disabled within the meaning of her disability policy.

---

[1] Federal Rule of Evidence 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Rule 611(c) provides that "Leading questions should not be used on the direct examination of a witness." Rule 802 provides that "hearsay is not admissible . . ." Rule 801(c) of the Federal Rules of Evidence defines hearsay as a statement made by the declarant outside of the trial, to prove the truth of the matter asserted.

## II. BACKGROUND

Mr. Meyer was the president and executive director of Primary Care Medical Associates, Inc. ("PCMA"), between February 1995 and July 1998. Tr., p.7:8-17. During that time, PCMA owned and operated up to 30 separate physician practices throughout Florida and employed up to 60 physicians, one of which was the plaintiff. Id., pp.7:25-8:16. PCMA was a physician practice subsidiary of JFK Medical Center. Id., p.7:18-24. Mr. Meyer's role at PCMA was solely in a business capacity – he was not involved in managing the physicians' medical practices. Id., pp.9:19-10:10. Mr. Meyer did not have "anything to do with the Phyllis Rothman's Women's Clinic." Id., pp.10:11-19, 11:2-7.

Defendants have indicated their intent to introduce various portions of Mr. Meyer's deposition at trial. As set forth herein, there is no testimony to support that Mr. Meyer had any personal knowledge regarding the subjects on which defendants intend to use his testimony and, in most cases, Mr. Meyer's testimony discloses that he did not have such personal knowledge.

## II. OBJECTIONABLE TESTIMONY

### A. TESTIMONY REGARDING PLAINTIFF'S "WORK PATTERNS"

Defendants' designation cites testimony by Mr. Meyer regarding plaintiff's "work patterns" referring to the specific hours at which plaintiff was treating patients at her assigned practice location. Def. Designation, citing, Meyer Tr., pp.23:22-24:13; 59:7-9. However, there is no testimony to support that Mr. Meyer had any personal knowledge of the hours that plaintiff was at the practice location. To the contrary, Mr. Meyer testified that he could only recall <u>one</u> occasion that he made a visit to her practice location during patient care hours and that he could not recall anything about that visit. Tr., p.144:7-145:9. Accordingly, Rule 602 precludes the admission of this testimony. Moreover, plaintiff's work schedule is irrelevant to any issue in this

action. F.R.E. 402.

Additionally, defendants' designation cites testimony by Mr. Meyer regarding the number of patients that plaintiff saw per day. Tr., p.86:11-18. Mr. Meyer clearly had no personal knowledge regarding the number of patients that plaintiff saw per day as he was admittedly only at her practice site on one occasion during patient hours when she was there. Tr., p.144:7-145:9. Moreover, although PCMA "tracked" physician-patient encounters, Mr. Meyer acknowledged that there were a number of patients who, although assigned to other physicians before plaintiff began working at PCMA, were "being seen by and primarily being cared for by" plaintiff. PCMA did not record plaintiff's treatment of these patients to her record and thus, it was "impossible" for him to "determine exactly which patients and how much of their care was delivered by Dr. McCulloch." Tr., pp.69:23-70:25.[2]

### B.   TESTIMONY REGARDING PLAINTIFF'S WORK FOR JFK AND THE JFK WOMEN'S CENTER

Defendants' designation also cites testimony by Mr. Meyer regarding plaintiff's duties at the JFK women's center and her staff status (restrictions and staff re-appointment) at the JFK Medical Center. Def. Designation, citing Meyer Tr., pp.34:22-35:, 35:10, 35:17-35:19, 45:21-46:3, 46:2-24, 47:5-13, 47:19-20, 48:7-10, 48:12-23, 48:25-49:2; 85:19-86:1. There is no evidence that Mr. Meyer had any personal knowledge regarding these facts. In fact, Mr. Meyer specifically testified that (i) he did not have "anything to do with the Phyllis Rothman's Women's Clinic." (Tr., pp.10:11-19); (ii) he did not have any role at JFK medical center (Tr., p.7:18-22) (iii) his involvement with plaintiff was solely in her role as a physician at PCMA (Tr., p.11:2-7); (iv) the record keeping at JFK was entirely separate from PCMA (Tr., p.45:24-46:20); (v) he did not know anything about plaintiff's activities at the JFK Women's Center (Tr.,

---

[2] The document that contains this "tracking" is not admissible either, for the reasons set forth in plaintiff's objections to that exhibit.

3

p.66:25-67:11); and (iv) he had nothing to do with the reappointment process at JFK and could not recall any situation regarding plaintiff's appointments at JFK. (Tr., p.74:23-75:19). Accordingly, Rule 602 precludes the admission of this testimony.

### C.   TESTIMONY REGARDING MEMORANDA FROM ATTORNEY ANN LEOPOLD

Defendants' designation includes "testimony" that consists of either defendants' attorney or Mr. Meyer essentially reading into the record, or summarizing, hearsay contained in two memoranda that a PCMA attorney prepared. None of this testimony is relevant to the issues in this action. F.R.E. 402. As set forth below, this testimony is also inadmissible because there is no evidence to support that Mr. Meyer had personal knowledge of the facts upon which the hearsay allegations contained in the memoranda were based, and Mr. Meyer further testified that he did not even have any independent recollection of the subject matter of the hearsay allegations. Moreover, much of this testimony consists of leading questions by defense counsel reading from the documents.[3]

#### 1.   March 9, 1995 Memorandum

During the deposition, defense counsel presented as Exhibit 3 a March 9, 1995 memorandum and draft letter from an attorney representing PCMA, purportedly to refresh Mr. Meyer's recollection regarding certain alleged dispute between plaintiff and her employer at that time. Tr., pp.38:25-39:5. The information contained in the memorandum addressing issues between plaintiff and her employer, was plainly not based on the personal knowledge of the attorney. Meyer Ex. 3. Instead, it repeats information based on statement purportedly made by unnamed third parties – which, in some cases, consisted of the repetition of statements made by yet other unnamed third parties. Id., at H100088. ¶¶ 6-7.

---

[3] The documents themselves are patently inadmissible for the reasons set forth in plaintiff's separately filed objection to these exhibits.

The testimony regarding this memo that defendants have designated consists, entirely of either Mr. Meyer or defendants' counsel reading or summarizing the hearsay statements contained in the memorandum and letter into the record, after which Mr. Meyers testified, in each case, that he did not recall the matters contained in the memo and letter. Tr., 40:20-41:10, 42:2-25; 43:4-11. Accordingly, defendants' designation of this testimony is nothing more than an attempt to introduce a document that is inadmissible hearsay, by reading the document into the record of a deposition of a deponent who did not testify that he had personal knowledge of the events on which the hearsay contained in the document were based, and could not even recall hearing the hearsay allegations at the time they were allegedly made. The cited "testimony" is thus plainly inadmissible under both [hearsay rule] and 602.

### 2. May 1995 Memorandum

The May 1995 memo is the same was also from an attorney representing PCMA, that, on its face, acknowledges that it is based on "discussions" with unnamed third parties regarding plaintiff's work activities. Exhibit 5 to Meyer Depo. Again, the cited testimony consists of either Mr. Meyer reading or summarizing the hearsay contents of the letter, or defendants' counsel reading or summarizing the hearsay contents of the letter and Mr. Meyer confirming that he also sees that statement in the letter. Tr., pp.52:6-53:4; 53:14-17, 54:8-11, 54:18-21, 55:3-7, 56:6-10, 56:6-24. Mr. Meyer did not testify that he had first hand knowledge of the matters contained therein. At most, Mr. Meyer testified that he recalled hearing about the hearsay allegation. Tr., p.54:1-7. Most often, however, he testified that he did not have any recollection of the matter at all. Tr., pp.53:22-24, 54:8-13, 56:6-11; 56:25-57:3. There is no evidence that Mr. Meyer had first hand knowledge of the hearsay allegations contained in the memo, and defendants' counsel or Mr. Meyer reading the memo into the record of the deposition does not

5

change this fact. The testimony is not admissible under either [hearsay rule] or Rule 602.

### D. TESTIMONY REGARDING NOTES TAKEN BY UNUM REPRESENTATIVE

The balance of the designated testimony consists of defendants' attorney reading a UNUM insurance company representative's written characterization of statements purportedly made by Mr. Meyer to her in a telephone call, and asking Mr. Meyer whether he believed each of his alleged statements to the UNUM representative were accurate.[4] Def. Designation, citing, Tr., pp.84-88. Mr. Meyer had no recollections of having any discussion whatsoever with the UNUM representative. Tr., pp.84:22-85:2. Defendants' counsel's questions to Mr. Meyer regarding the UNUM record were leading questions in the worst sense because the implication was that if Mr. Meyer did not testify that the substance of the leading questions was accurate, he would be contradicting his own previous representations to the UNUM representative – and, he could not refute that he made those representations because he could not even recall having the alleged conversation in the first place.

There is no evidence that these leading questions were necessary for any other purpose than to obtain the admission of the substance of a document that contains inadmissible hearsay by reading it into the record of a deposition. Additionally, this testimony is irrelevant to the issues in this case. F.R.E. 402. Accordingly, the court should preclude this testimony.

### CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that the court preclude the testimony by deposition of Mr. Meyer.

---

[4] The document, itself, is inadmissible for the reasons set forth in plaintiff's separately filed objection to defendants' exhibits.

6

PLAINTIFF,
CANDI McCULLOCH

By _____
Eliot B. Gersten, Esq.
Fed. Bar No. ct05213
GERSTEN & CLIFFORD
214 Main Street
Hartford, CT  06106
(860) 527-7044
Her Attorney

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was faxed and mailed, via regular U.S. Mail, postage prepaid, on January 31, 2006 to all counsel and pro se parties of record, as follows:

Roberta J. Sharp, Esq.
Jessica Spangler Taylor, Esq.
Barry A. Chasnoff, Esq.
Akin Gump Strauss Hauer & Feld, LLP
300 Convent Street, Suite 1500
San Antonio, TX 78205
*Tel: 210/281-7146*
*Fax: 210/224-2035*

Donald E. Frechette, Esq.
Joshua L. Milrad, Esq.
Charles F. Gfeller, Esq.
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103
*Tel: 860/525-5065*
*Fax: 860/527-4198*

_____
Eliot B. Gersten