**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CANDI McCULLOCH | : | CIVIL ACTION NO. |
| | : | 301CV1115(AHN) |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| HARTFORD LIFE AND ACCIDENT | : | |
| INSURANCE COMPANY AND EDUCATORS | : | |
| MUTUAL LIFE INSURANCE COMPANY | : | |
| Defendants. | : | MARCH 9, 2006 |

**PLAINTIFF'S OPPOSITION TO**
**"DEFENDANTS' MOTION FOR LEAVE TO AMEND COUNTERCLAIMS"**

**I.    INTRODUCTION**

Federal Rule of Civil Procedure 9(b) recognizes that, unlike other causes of action, in order to prepare a meaningful defense to charges of fraud, the pleading that charges fraud must provide the defendant with a detailed account of the fraud with which the defendant is being charged. Nevertheless, just two months before trial, counter-plaintiffs ("defendants") seek to expand the counterclaim from one that was "limited to recovery of amounts paid by Hartford after August 14, 2000" into one that "encompasses amounts paid by either Defendant since the inception of Plaintiff's claim" in 1995 – i.e. to expand the counterclaim from a two month period during which plaintiff's entitlement to benefits was an issue, to a 5 year period, during which plaintiff's entitlement to benefits was not previously an issue in the case. (Def. Mot., p.2, ¶ 3). Plaintiff respectfully requests that the Court deny leave to amend counterclaim because:

A.    The amendment asserts new claims by a new party (Educators) and new claims by Hartford, that the statute of limitations and contractual period of limitations, bar;

B.    The amendment fails to comply with F.R.CP. 9(b);

    C.     Defendants have failed to show any justification for the late amendment; and

    D.     The amendment would severely prejudice plaintiff.

## II.    **BACKGROUND FACTS**

Plaintiff purchased a disability insurance policy (the "Policy") from defendant Educators Mutual Life Insurance Company ("Educators") in 1992. The Policy provided that "no action at law or equity shall be brought to recover on this policy . . . after three years from the end of the period within which proof of loss is required by the policy." Exhibit A, p.11. In October 1995, plaintiff submitted a claim for total disability benefits, with proof of loss, to Educators, which Educators accepted on March 21, 1996, retroactive to October 3, 1995. Educators administered plaintiff's claim and paid her disability benefits through November 1999. During this time, Educators requested that plaintiff furnish proof of her continuing disability and, each time, represented that plaintiff had furnished evidence that showed she was disabled. See e.g. Exhibit B.

In November 1999, Hartford began to administer plaintiff's claim and pay her disability benefits on Educators' behalf. On November 17, 2000, Hartford terminated plaintiff's benefits on the ground that "the evidence submitted in support of your claim does not establish that you continue to meet the policy's definition of 'Total Disability' on or after 8/14/00." Hartford also stated that "because benefits have been paid beyond 8/14/00, an overpayment of $19,655.53 has occurred," and requested that plaintiff submit a check to Hartford in that amount.

On June 15, 2001 plaintiff initiated the above-captioned action against Hartford and Educators to recover the disability benefits that were due and unpaid since Hartford's November 2000 termination of her benefits, as well as future benefits. (Dkt. # 1). On September 26, 2001, Hartford and Educators filed an answer and special defenses to the complaint, and Hartford,

alone, filed a two count counterclaim – all of which defendants took 3 ½ months to prepare. (Dkt. # 11). In the answer, Hartford refused to respond to allegations relating to Educators acceptance and administration of plaintiff's claim for disability benefits during the period between 1995 and 1999 on the ground that "such allegations . . . are not properly directed to it." (Dkt. # 11 - Answer, ¶ 7). Defendants' first affirmative defense contained the terse allegation that plaintiff engaged in a fraudulent course of conduct that enabled her to receive benefits to which she was otherwise not entitled. (Dkt. # 11 - First Affirmative Defense.)

The first count of Hartford's counterclaim, entitled "fraud," alleged that plaintiff made a claim for long-term disability benefits to Educators in December 1995 and February 2000, but it did not allege that these claims were false or fraudulent. (Dkt. # 11 - Counterclaim, Count One, . . 23, 24, 28.) To the contrary, Hartford only asserted that plaintiff □was not, in actuality, disabled as of at least August 14, 2000,□ which is seven (7) months **after** the last representation of disability to which Hartford referred. Id. Harford further alleged that "by reason of the foregoing, [Hartford] has been damaged in the sum of $19,655.53, plus interest, costs and attorneys' fees." (Dkt. # 11 - Counterclaim, Count One, ¶¶ 25-26.)

The second count of Hartford's original counterclaim, entitled "unjust enrichment," alleged that plaintiff "was not entitled to receive disability benefits from August 14, 2000 to October 31, 2000," (Dkt. # 11 – Counterclaim, Count Two, ¶ 33); that Hartford demanded return of this sum from plaintiff on November 17, 2000 (Id., ¶ 34); and that plaintiff had wrongfully refused to return this money to Hartford (Id., ¶ 35.) Plaintiff filed a motion to strike the first affirmative defense and to dismiss the fraud count of the counterclaim on the ground that they failed to plead fraud with the requisite particularity, including because they failed to identify any specific misrepresentations. (Dkt. # 17-20).

On November 26, 2001, before the court ruled on plaintiff's motion, defendants filed an amended answer, affirmative defenses and counterclaim. (Dkt. #25). The amended pleading specified *two* misrepresentations, both allegedly made to defendant Hartford: (1) an April 23, 2000 statement by plaintiff to Hartford, which defendants defined as "the Statement" (Id., First Affirmative Defense, ¶ 20; Counterclaim, ¶¶ 34-36); and (2) a representation by plaintiff in a September 8, 2000 interview with a Hartford representative (Id., First Affirmative Defense, ¶ 22; Counterclaim, ¶¶ 38-41).[1] The Unjust Enrichment count of the amended counterclaim alleged that plaintiff was unjustly enriched by her failure to return the benefits that Hartford demanded that she return in its November 17, 2000 letter to her. (Id., Counterclaim, ¶¶ 51-53).

On December 5, 2002, one and a half years into the case, defendants filed an Answer, Affirmative Defenses and Counterclaim to the First Amended Complaint, filed by plaintiff on October 18, 2002. (Dkt. # 80). Defendants did not amend the allegations of their first affirmative defense or Hartford's counterclaim. (Id.) Plaintiff moved to strike the first affirmative defense and first count of the counterclaim on the ground that they failed to comply with F.R.C.P. 9(b). (Dkt. # 81, 100). On January 6, 2003, defendants filed a First Amended Answer, Affirmative Defenses and Counterclaims to the First Amended Complaint. (Dkt. # 86). Again, defendants did not amend the allegations of the first affirmative defense, or the counterclaim. On February 10, 2003, the Court denied plaintiff's motion to strike and dismiss. (Dkt. # 100). On April 4, 2003, Hartford served plaintiff with a "Damage Analysis Regarding Counterclaim," which stated that the damages Hartford sought in the Counterclaim were limited

---

1   Again, although Hartford referred to plaintiff's initial disability claim and a February 2000 representation, Hartford did not allege that either of these representations were false at the time they were made, or explain how they were false, nor did it claim to have relied on these representations. Instead, Hartford purported to specify the statements it contended were false, as required by F.R.C.P. 9(b), and specified only the April 2000 and September 2000 representations. Counterclaim, ¶¶ 33-35.

to the $19,655.53 in benefit payments it had made to plaintiff between August 14, 2000 and October 31, 2000. See, Opposition to Plaintiff's Motion For Summary Judgment at p.5 footnote 5 (Dkt. # 189).

Defendants did not disclose any experts by the August 1, 2003 deadline set by the court. In response to plaintiff's inquiry about this failure, defendants responded on August 13, 2003 that: "The expert witnesses Defendants intend to call to testify at trial of this matter are rebuttal experts as defined by Federal Rules of Civil Procedure 26(a)(2)(C) . . . Accordingly, Defendants will not be designating any experts at this time, but will designate experts on or before September 1, 2003. Exhibit C. On September 1, 2003, defendants served their designation of rebuttal expert witnesses along with their reports. The reports of defendants' retained rebuttal experts including the opinion that plaintiff was not disabled in October 2, 1995 or at any time thereafter.

On October 24, 2003, plaintiff requested leave to file a Second Amended Complaint against defendants, based on additional information obtained during discovery. (Dkt. # 126). Defendants strenuously objected to the Second Amended Complaint. Defendants argued, among other things, that there could be "absolutely no justification" for plaintiff having "waited until October 22, 2003, almost two and a half years after initiating this litigation, to seek to amend her complaint," "discovery in this case is already substantially complete, and plaintiff sought leave to amend only two weeks before the dispositive motions deadline" and "defendants will be unduly prejudiced by Plaintiff's delay because they will not have sufficient time to investigate Plaintiff's new claims prior to the dispositive motions deadline." (Dkt. # 129, pp.2-3). The court, however, granted plaintiff's request. (Dkt. # 204).   Defendants did not file an answer to the Second Amended Complaint or seek the discovery they claimed they would need to respond to the amended pleading. Discovery closed on October 27, 2003. (Dkt. #106-1.)

On June 1, 2004, plaintiff filed a motion for summary judgment on Hartford's counterclaim and first affirmative defense to the extent, if any, that Hartford sought to thereby challenge plaintiff's disability during any time prior to August 2000. (Dkt. # 183-185). Plaintiff argued that Hartford was estopped from challenging plaintiff's disability or the adequacy of the medical records she had submitted in support of her claim during the period prior to August 2000, as the defendants' expert reports asserted. (Id., pp.5-6, 13-17). Plaintiff also argued that Hartford did not have standing to sue to recoup the benefit payments, for which Educators was the source of funds, and that, to the extent Hartford claimed that plaintiff's claim was fraudulent from its inception, Hartford could not establish damages because it profited from that alleged fraud. (Id., pp.8-13).

The first two sentences of Hartford's June 21, 2004 opposition to plaintiff's motion, were as follows: "**Hartford seeks to recover only the disability benefits paid to Plaintiff between August 14, 2000 and October 31, 2000.** Plaintiff's argument that she was somehow denied the opportunity to present evidence in support of her claim for disability prior to that date is moot, as **Hartford is not seeking to recover disability payment it made prior to August 14, 2000.**" (Dkt. # 189, p.1.) (emphasis added). Hartford's brief subsequently reiterated that "**Hartford's counterclaim for fraud seeks return only of $19,655.53,**"[2] and went so far as to say that Plaintiff's only basis to believe that Hartford sought return of disability benefits dating back to October 1995 was an "erroneous perception" that "Dr. Taub's opinion . . . operate[s] as an

---

2   The quote from Hartford's opposition brief included a footnote that stated: "Hartford's Damage Analysis Regarding Its Counterclaim, served on Plaintiff on April 4, 2003, provided Plaintiff with notice that Hartford seeks to recover those benefits Hartford was fraudulently induced to pay Plaintiff **after** August 14, 2002 [sic] . . ." (Id., p.5, fn.5.) (emphasis added).

amendment of Hartford's pleadings"[3] (Id., p.5) because "**Hartford has consistently taken the position, both before and after the filing of this suit, that Plaintiff did not meet the definition of Total Disability under the policy as of August 14, 2000,** and Hartford is entitled to return of the payments made **after** that date." (Id., p.7) (emphasis added.) In its Rule 56(a)(2) Statement in Opposition to Plaintiff's Motion for Summary Judgment, Hartford also stated: "Hartford denies that it seeks reimbursement of disability benefits it paid to Plaintiff prior to August 14, 2000. Hartford only seeks to recover the disability benefits it overpaid to Plaintiff during the period of August 14, 2000 to October 31, 2000." Dkt. # 190, ¶ 18.

On March 3, 2005, long after the close of discovery, and while the plaintiff's motion for summary judgment was pending, defendants sought leave to file an untimely answer, affirmative defenses and counterclaims to the Second Amended Complaint. (Dkt. # 216). The amended pleading did not alter any of the allegations of the First Affirmative Defense or the Counterclaim. (Id.) Nor did Hartford attempt to supplement its "Damage Analysis Regarding Its Counterclaim."

On March 29, 2005, based on the counterclaim and Hartford's representations, this Court denied plaintiff's motion for summary judgment, holding that: "Hartford's theory of liability and its alleged harm is not that McCulloch was never disabled, but that McCulloch ceased to be disabled on August 14, 2000 . . . Hartford's counterclaim only seeks to recover benefit payments it made from August 14, 2000 to October 31, 2000" (Dkt. # 218, p.37); and **"Hartford does not allege that McCulloch misrepresented her disability at the time it entered into the**

---

3    Hartford further confirmed that it only intended to use Dr. Taub opinion regarding plaintiff's condition between 1995 and 2000 to (1) defend against plaintiff's breach of contract claim, as this testimony would "assist the jury in determining whether Plaintiff **is currently disabled (or was when her benefits were terminated)**" and (2) rebut plaintiff's bad faith claim by assisting "a jury in understanding the medical information that was before Hartford when it made its decision." (Dkt. # 189, p.7, fn.10).

reinsurance agreement. **Instead, it alleges that she initially misrepresented her disability approximately one year after, on August 14, 2000 . . . no genuine issue exists here that McCulloch was disabled at the time the agreement was executed."** (Id., p.40) (emphasis added).

On February 16, 2006, just 2 months before trial, defendants served a proposed Second Amended Counterclaim.  (Dkt. # 268).  The proposed Second Amended Counterclaim alleges, for the first time:

(1) a counterclaim by Educators, which alleges that: (a) that plaintiff knowingly misrepresented her disability to Educators during its administration of her claim, and specifically, in her April 2, 1996 and December 5, 1997 statements to Educators; (b) plaintiff has not been disabled since the inception of her claim in October 3, 1995; (c) and that plaintiff is obligated to return to Educators all of the disability benefits it paid to her since the inception of her claim;

(2) that plaintiff was never disabled during the period of Hartford's administration of plaintiff's claim so that (a) plaintiff's statements in support of her disability to Hartford in January 18, 2000 was false; and (b) plaintiff is obligated to Hartford all of the disability benefits that it paid to her; and

(3) that "Hartford is subrogated to Educators' rights to the extent of costs incurred by Hartford in connection with this lawsuit."

In stark contrast to Hartford's representations to the court to avoid summary judgment, and this court's acceptance of that position , defendants now claim that the proposed amendment merely "clarifies" what has always been the case - that "Defendants' fraud claim is not limited to recovery of amounts paid by Hartford after August 14, 2000, but encompasses amounts paid by either Defendant since the inception of Plaintiff's claim." (Dkt. # 268 -Motion for Leave to

Amend, p.2, ¶ 3). The Court should deny defendants leave to file the requested amendment for the reasons set forth herein.

**III.    ARGUMENT**

**A.    STANDARD OF REVIEW**

The court should deny leave to amend where the proposed amendment is futile. <u>Lucente v. Int'l Business Machines Corp.</u>, 310 F.3d 243, 258 (2nd Cir. 2002). The court should also deny leave to amend where considerable time has elapsed between the filing of the complaint and the motion to amend, and the moving party fails to provide a satisfactory explanation for the delay. <u>Messier v. Southbury Training School</u>, 1999 WL 20907, at *3 (January 5, 1999, D.Conn.) Even where the moving party shows that the delay was justified, the court should deny leave to amend where the amendment would cause undue prejudice to the nonmovant. <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Block v. First Blood Assocs.</u>, 988 F.2d 344, 350 (2nd Cir. 1993); <u>Messier</u>, 1999 WL 20907, at *2-3. "The longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." <u>Messier</u>, 1999 WL 20907, at *2-3. A late amendment that requires the nonmovant to expend significant additional resources to conduct discovery and prepare for trial, causes prejudice. <u>Block</u>, 988 F.2d at 350.

**B.    THE COURT SHOULD DENY LEAVE TO AMEND THE FRAUD CLAIM**

**1.    The Statute of Limitations Bars The New Claims of Fraud**

A party may not assert a claim based on an allegedly fraudulent representation more than three years after the representation was first made. <u>Navin v. Essex Savings Bank</u>, 82 Conn.App. 255, 259, 843 A.2d 679 (2004); C.G.S. § 52-577. The fraud statute of limitation "is an occurrence statute, so the limitations period begins to run at the moment the act or omission complained of occurs. The start of the running of the limitations period is not delayed until the

cause of action has accrued or the injury has occurred. It is not delayed until the date when the

plaintiff first discovers the injury. When a court conducts its analysis, the only relevant facts are

the date of the alleged wrongful conduct and the date the complaint was filed. Bello v. Barden

Corp., 180 F.Supp.2d 300, 310 (D.Conn. 2002) (Thompson, J.)

In this case, defendants' pre-August 2000 fraud claims are plainly barred by the statute of

limitations because the representations on which the claims are based date back more than 11

years - the *earliest* representation on which defendants proposed amendment is based was made

more than 5 ½ years ago. (Dkt. # 268 - Counterclaim, ¶ 3). Moreover, the amendment, which

expand the period of the alleged fraud by 5 years by alleging additional misrepresentations and

adding in Educators as a counter-plaintiff, does not "relate back" to the previous pleadings. See

Bank Brussels Lambert v. The Chase Manhattan Bank, N.A., 1999 WL 672302 at *2 (April 27,

1999, S.D.N.Y.) (each alleged misrepresentation is a separate act of fraud, and amendment to

allege additional misrepresentations, even though made to induce the same action, does not relate

back) (attached); In re Bausch & Lomb, Inc. Secs. Litig., 941 F..Supp. 1352, 1365-66 (W.D.N.Y.

1996) (amendment that expanding the time period of the alleged fraud and damages sought by

alleging additional false statements and adding in plaintiff that relied on those statements, did not

meet prerequisites of Rule 15(c)(3)[4] and did not relate back); In re Alcatel Securities Litigation,

382 F.Supp.2d 513, 527-529 (S.D.N.Y. 2005) (same).[5]

---

[4] In Bausch and Lomb, supra, the court explained that Rule 15(c)(3) applies to both defendants and plaintiffs. Id., at 1364.

[5] Moreover, defendants are judicially estopped by the representations in opposition to plaintiff's motion for summary judgment, from arguing that the proposed amended pleading relates back to the original pleading. See State of New Hampshire v. State of Maine, 532 U.S. 742, 749, 121 S.Ct. 1808 (2001) (The doctrine of judicial estoppel, "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.") But the relation back doctrine, though, would only allow Hartford to go back, at most, three years from its original counterclaim, dated September 24, 2001, to September 24, 1998. Hartford, however, clearly does not have standing to seek

### 2. **The Counterclaim Does Not Comply With F.R.C.P. 9(b)**

The proposed amendment fails to comply with the requirement that counterclaim plaintiffs plead "the circumstances constituting fraud . . . with particularity." F.R.C.P. 9(b). Where, as here, there are multiple plaintiffs, the "circumstances constituting the fraud" include specific allegations of reliance and damages *as to each plaintiff*. North Central F.S. Inc. v. Brown, 951 F.Supp. 1383, 1407-1409 (N.D. Iowa 1996).[6]

In this case, the counterclaim does not specify, as to each alleged misrepresentation, which party plaintiff intended to rely on the misrepresentation  – or facts to support such a claim, the party that did rely on the alleged misrepresentation – or facts to support such a claim, facts to show that the specific parties' reliance was reasonable, or what each party did in reliance on the representation. For example, counterclaim plaintiffs allege that plaintiff made certain misrepresentations to *Educators* in 1996 and 1997 and then alleges that plaintiff made these representations "with intent to deceive *Counterclaim Plaintiffs* and induce *them* to pay long-term disability benefits to her" – but does not allege (a) any facts to show how plaintiff could have possibly intended, or reasonably expected, that Hartford, a third party, would rely on these representations; (b) any facts to show that Hartford did rely on these representations; or (c) any facts to show that Hartford did pay plaintiff benefits in reliance on these alleged misrepresentations. The same goes for the representations that plaintiff allegedly made to Hartford after the time that Educators "assigned" plaintiff's claim to Hartford.

The purpose of Rule 9(b) to prevent meritless assertion of fraud claims is well served by

---

return of the benefits that Educators paid to plaintiff up through November 1999.

6   The court explained that "logically, for a person to have been induced to contract by fraud, that person himself or herself must have been the victim of the materially false statements and those statements must

denying leave to amend the counterclaim. The clear purpose of counterclaim plaintiffs'

ambiguous pleading is to obfuscate that, in the proposed amended counterclaim, Educators is

attempting to assert new claims of fraud, for the first time, which Hartford did not, and could not

have, asserted in its previous pleadings – and which are now clearly barred by the statute of

limitations.

### C.     THE COURT SHOULD DENY LEAVE TO AMEND THE UNJUST ENRICHMENT CAUSE OF ACTION

Although defendants purport to only be expanding the fraud claim (Def. Mot., ¶ 3), the

proposed pleading contains a corresponding expansion of the unjust enrichment claim, because

(1) it incorporates the new allegations of the fraud cause of action that plaintiff was not entitled

to disability benefits as of October 3, 1995  and includes, for the first time, a claim by Educators

seeking the return of disability benefits it paid to plaintiff.  The court should deny defendants'

leave to amend the unjust enrichment count because the three year contractual period of

limitation bars these claims.   Even in the absence of the contractual limitations, the six year

statute of limitations bars any claim by Educators,[7] and bars any claim by Hartford for the return

of benefits that it paid to plaintiff before February 16, 2000.  See Gianetti v. Greater Bridgeport

Practice Assoc., , 2005 WL 2078546 at *8 (Conn.Super.) (July 21, 2005).[8]

Moreover, the claim by Educators could not relate back to the original pleading because

(1) the original pleading specifically sought only the $19,655.53 in benefits paid by Hartford

---

have induced" *that person* to take action. Id., at 1408, fn.18.

7  It is a matter of undisputed fact, the last benefit payment it made to plaintiff was in October 31, 1999.
See Educators Rule 56(a)(1) Statement in Support of Summary Judgment, ¶ 14.

8  In Gianetti, the court held that the six year statute of limitations for contract actions applies to unjust
enrichment claims because they are quasi-contractual in nature. Because Hartford served the proposed
amended pleading on February 16, 2006, the six year statute of limitation bars Hartford's claims for
reimbursement of the benefits it paid to plaintiff prior to February 16, 2000.  However, for the reasons set
forth in Section D, infra, the court should preclude Hartford from seeking return of the disability benefits it

between August 14, 2000 and October 31, 2000 (Dkt. #11); and (2) Educators was not a party to the original or any subsequent counterclaim, and there is thus no way that these pleadings could have placed plaintiff on notice that Educators was seeking the return of any disability benefits it had paid to her.  Not only is there nothing in the prior pleadings that would have put plaintiff on notice that Hartford sought the return of benefits paid before August 2000, but the unjust enrichment count of the previous pleadings specifically defined the amounts "due and owing" by reference to Hartford's November 17, 2000 letter, in which it sough return of the benefits paid between August 2000 and October 2000.  Dkt. # 11, ¶¶ 33-34; Dkt. # 25, ¶¶ 51-53; Dkt. ##80, 86, 216, ¶¶ 64-66.9

### D.    **DEFENDANTS HAVE NOT AND CANNOT JUSTIFY THEIR DELAY**

In order to obtain leave to amend at this late date, defendants are obligated to provide a satisfactory explanation for the delay.  Messier v. Southbury Training School, 1999 WL 20907, at *3 (January 5, 1999, D.Conn.)  Defendants have no excuse for the delay.  Plaintiff filed this action five and half years ago; defendants obtained the report of Dr. Taub, which concluded that plaintiff was never disabled, more than two and a half years ago; discovery has been closed for two years; and after the close of discovery and disclosure of Dr. Taub's report, defendants filed a proposed amendment to the answer, affirmative defenses, and counterclaim, in which they did not attempt to assert the claims made in the proposed Second Amended Counterclaim and also expressly stated to this Court that they had not, and did not intend to, assert claims against plaintiff cover the period prior to August 2000.  Even accepting defendants' contention that the purpose of the Second Amended Counterclaim is to make the counterclaim "consistent with

---

paid to plaintiff before August 14, 2000.

9  For the reasons set forth in footnote 5, supra, defendants are also judicially estopped from arguing that this claim relates back to the prior pleadings.  See Footnote 5, supra.

discovery in this matter," defendants have no excuse for waiting until now to seek leave to amend their pleading. Finally, defendants' assertion that the amendment is necessary to "clarify the scope of the fraud counterclaim. . . and the amount of damages sought," is an admission that (1) the prior pleadings did not clearly assert the scope of the claim, and thus failed to comply with F.R.C.P. 9(b) and could not relate back to the prior pleading; and (2) defendants had the facts on which they base their current allegations, at the time of the original pleading, but failed to clearly state these claims, as required by F.R.C.P. 9(b).

### E.    THE AMENDMENT WOULD SEVERELY PREJUDICE PLAINTIFF

Allowing defendants to amend the counterclaim to expand their fraud and unjust enrichment claims from a two month period (August 2000 to October 2000) to a five year period (October 1995 to October 2000) during which plaintiff's entitlement to disability benefits is at issue, would dramatically alter the entire nature of this case, and would be extremely prejudicial to plaintiff.

First, defendants' assertion that the proposed amendment does "not necessitate additional discovery, as the scope of discovery in this case already includes Plaintiff's medical history from the date of her claim to the present" misses the critical point. Had defendants timely challenged plaintiff's entitlement to benefits, and the sufficiency of her medical records to establish this entitlement, plaintiff could have obtained additional reports, evaluations, and tests to support her claim *at that time*. Plaintiff cannot obtain testing now to show her condition ten years ago.[10]

---

10  This situation is analogous to a fire insurer seeking, ten years after accepting a claim for fire damage to a home that was subsequently renovated, to challenge the extent of the fire damage and the sufficiency of the evidence submitted in support of the initial claim. As in this case, the insured in that case would suffer a patent prejudice. Had the insured timely asserted this claim, the insured could have obtained appraisals, pictures and other evidence to establish the extent of damage. Ten years later, after the house had been renovated, it would be impossible for the insured to gather such evidence. The fact that discovery included the documents submitted in support of the initial claim, which the insurer now claims were insufficient,

Further, the memories of plaintiff's former physicians regarding her condition, up to ten years ago, is likely to have faded.  See e.g. Navin, 82 Conn.App. at 260-261 (discussing purpose of statute of limitations).

Second, defendants' new claim opens the door to evidence and issues in this case far beyond plaintiff's medical records.  Among other things  the challenge to whether plaintiff was ever disabled opens the door for defendants to (a) introduce evidence regarding plaintiff's employment status at the time of her initial claim for disability benefits (presumably to establish a motivation to misrepresent her condition), which, up until now, was irrelevant because the validity of plaintiff's initial disability claim was not in dispute; (b) argue that the Policy requires plaintiff to show that she was, and is, unable to perform all of the material duties of her occupation, which defendants could not have credibly asserted before, since Educators accepted and continued to pay plaintiff's claim with out requiring plaintiff to prove this, and was not challenging her disability status during its administration; and (c) argue that chronic pain as not a sufficient basis to qualify for disability benefits under the Policy, which defendants also could not credibly argue before, because Educators had accepted and continued to pay plaintiff's claim based on this diagnosis, and was not challenging her right to disability benefits during its administration of her claim.

Third, if plaintiff had known that she would need to defend against a claim that she was not entitled to benefits during the period between October 1995 and August 2000, she would have conducted substantial additional discovery directed to that time period, including into defendants' historical interpretation and application of the policy terms to physicians and individuals suffering from chronic pains, as well as discovery to support her defenses to the

---

would be but a hollow consolation to the insured in that case – just as it is to plaintiff in this case.

newly asserted claim. Plaintiff promptly served some of this discovery on Educators and

Hartford after receiving the proposed amended counterclaim. However, even assuming that

defendants properly, fully and timely respond to these discovery requests, plaintiff is seriously

prejudiced by having had almost no time to consider and prepare the requests, to review the

responses and conduct follow-up discovery based on those responses, and to process the

responses in preparation for trial.

Fourth, plaintiff would have participated in discovery much differently had her

entitlement to benefits during the period before August 2000, and the subsidiary issues discussed

above, been an issue in the case. Just one example of many, was defendants deposition of

plaintiff's former supervisor, who was located in Indiana. At that time, because plaintiff's initial

entitlement to benefits was not an issue, this deposition seemed to be of little, if any, evidentiary

value - so plaintiff chose to participate by telephone and did not conduct an extensive cross-

examination. If plaintiff had known, at the time of the deposition, that defendants were

challenging plaintiff's initial disability, she would participated in the deposition in person, and

far more extensively.

Finally, by filing the amendment after the close of the dispositive motions deadline,

defendants have deprived plaintiff of the opportunity to dispose of the claims by summary

judgment.

In sum, while plaintiff has intended and prepared to present some of her past medical

records to provide context and support to the diagnosis of her condition as of August 2000 and

thereafter, she justifiably did not conduct discovery, or prepare her case, to prove that she was

totally disabled within the meaning of her policy between October 1995 and August 2000,

because this was not an issue in the case – defendants did not plead such a claim, defendants' did

not disclose any experts to testify in support of such a claim, [11] and Hartford specifically denied that it was asserting such a claim.

Accordingly, plaintiff has established substantial prejudice and the court should deny the defendants leave to amend.  See Grant v. New Group Boston, Inc., 55 F.3d 1, 5-6 (1st Cir. 1995) (denial of motion for leave to amend was appropriate where discovery had already completed and the defendant "had nearly completed its motion for summary judgment and undoubtedly was well into its trial preparation.")

## IV.    CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that the court deny defendants' motion for leave to amend the counterclaim.

---

11  Defendants disclosed Dr. Taub as a rebuttal expert. It is and was plaintiff's belief that the report is not admissible.  Even if admissible, however (a) as merely the disclosure of one individual's opinion, the report does not amend pleadings; (b) as a rebuttal report, it certainly could not serve to expand, or even support, Hartford's claims in its counterclaim; and (c) as a rebuttal report, the opinions related to plaintiff's pre-August 2000 condition would only be admissible if, and to the extent that, plaintiff presented testimony at trial regarding her pre-August 2000 status.

PLAINTIFF,
CANDI McCULLOCH

By_____

Eliot B. Gersten, Esq.
Fed. Bar No. ct05213
GERSTEN CLIFFORD & ROME, LLP
214 Main Street
Hartford, CT   06106
(860) 527-7044
Her Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was faxed and mailed, via regular U.S. Mail, postage prepaid, on March 9, 2006 to all counsel and pro se parties of record, as follows:

Roberta J. Sharp, Esq.
Jessica Spangler Taylor, Esq.
Barry A. Chasnoff, Esq.
Akin Gump Strauss Hauer & Feld, LLP
300 Convent Street, Suite 1500
San Antonio, TX 78205
*Tel: 210/281-7146*
*Fax: 210/224-2035*

Donald E. Frechette, Esq.
Joshua L. Milrad, Esq.
Charles F. Gfeller, Esq.
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103
*Tel: 860/525-5065*
*Fax: 860/527-4198*


_____
Eliot B. Gersten

## STANDARD PROVISIONS (cont'd.)

however, such proof must be given as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required.

### FORM OF PROOF

We will give to the person making claim such forms as may be needed to file proof of loss. If the person making claim does not receive these forms within 15 days after we receive notice of claim, they may file proof of loss without them. In this case, they can meet the requirements of the policy as to proof of loss by submitting written proof covering the occurrence, type and extent of such loss within the time fixed for filing proof of loss.

### EXAMINATION

We shall have the right to examine, at our own expense, any person whose injury or sickness is the basis of a claim hereunder. We may examine said person when and as often as it may reasonably require while a claim is pending.

### TIME LIMITS: SUITS

No action at law or in equity shall be brought to recover on this policy before 60 days after proof of loss has been filed. No such action shall be brought after three years from the end of the period within which proof of loss is required by the policy.

### PAYMENT OF CLAIM

All benefits are payable to the member. However, if (1) any such benefit remains unpaid at the member's death; or (2) the member is, in our opinion, not legally capable of giving a valid receipt and discharge for any payment, then we may, at our option, pay such benefit to any one or more of the member's relatives: Wife, husband, mother, father, child, sibling. Any payment so made shall fully discharge us to the extent of such payment. We will not be required to see to the use of the money so paid.

### TIME OF BENEFIT PAYMENT

Subject to due proof of loss, all accrued benefits to be paid under the policy for loss of time will be paid not later than at the end of each period of 30 days.

11

CMCL-009

**EDUCATORS
MUTUAL LIFE**

202 North Prin    eet
P.O. Box 83149
Lancaster, PA 17608-3149

717 397-2751
800 235-0307
FAX: 717 397-1621

September 3, 1997

Candi McCulloch, M.D.
130 Everglade Ave.
Palm Beach, FL 33480

RE: Disability Policy #PG-85-7723

Dear Dr. McCulloch:

You have been paid benefits on the disability claim under the policy number listed above through 8/31/97. At this time, we have no objective, clinical evidence of a disabling condition on your claim beyond 8/31/97. We have made requests for updated medical information from Dr. Jeffrey Katzell and Dr. John Upledger.

Once we receive the updated medical information requested from those two doctors, we will evaluate your claim for the consideration of disability benefits beyond 8/31/97. Please feel free to write to us with the names and addresses of any other medical treaters you have seen since 5/1/97, if applicable.

A return envelope is enclosed, if needed. Thank you for your time in this matter.

Respectfully,

Jophn Craft
Life and Disability Claims Department

H 2085

**EDUCATORS MUTUAL LIFE**

202 North Prince Street
P.O. Box 83149
Lancaster, PA 17608-3149

717 397-2751
800 233-0307
FAX: 717 397-1821

*file*

| | |
|---|---|
| Enrollee | Candi McCulloch MD |
| Claimant | Candi          McCulloch MD |
| Soc Sec Number | 266869400 |
| Claim Number | 608050345100 |
| Begin Date | 10/03/95 |
| Policyholder | PGGIA085 |
| | American College of Physician |
| Certificate | 7723 |
| Check Number | 25294 |
| Processor | John J. Craft, Jr. |
| | |
| Check Date | 01/13/98 |

TO:    Candi McCulloch MD
130 Everglade Ave
Palm Beach, FL 33480

DISABILITY INCOME PAYMENT
09/01/97 - 12/31/97

| | Payment for This Claim | Year to Date This Claim | Total to Date This Claim |
|---|---|---|---|
| Gross Benefit | 28,000.00 | 28,000.00 | 168,000.00 |
| COLA-w/o FIT Taxable | 1,291.73 | 1,291.73 | 3,587.73 |
| Net Benefits | 29,291.73 | | |
| Payment Totals | 29,291.73 | 29,291.73 | 171,587.73 |

Remarks:
-- ***** We have completed an additional evaluation of your claim, based upon receipt of updated medical information. As a result, benefits are payable beyond the previous paid-through date of 8/31/97. This benefit pays at the rate of $7,210.00 monthly for 9/1 - 10/2/97, and at the rate of $7,364.00 monthly for 10/3/97 onward, due to your cost of living increase which is effective on 10/3 of each year.

| From | To | Paid Days | Net Benefit | Plan Benefits | | Summary of Payment Period Day | |
|---|---|---|---|---|---|---|---|
| 09/01/97 | 09/30/97 | 30 | 7,210.00 | Frequency | Monthly | Total | 122.( |
| 10/01/97 | 10/02/97 | 2 | 480.66 | Amount | 7,000.00 | Eligible | 122.( |
| 10/03/97 | 10/31/97 | 29 | 6,873.07 | | | Payable | 122.( |
| 11/01/97 | 11/30/97 | 30 | 7,364.00 | | | | |
| 12/01/97 | 12/31/97 | 31 | 7,364.00 | | | | |

| Payment Amount | 29,291. |
|---|---|

H 2058



202 North Prince Street
P.O. Box 83149
Lancaster, PA 17608-3149

717 397-2751
800 233-0307
FAX: 717 397-1821

January 13, 1998

Candi McCulloch, MD
90 Oliver St.
EastHampton, MA  01027

Dear Dr. McCulloch:

We are in receipt of your letter dated December 15, 1997 and appreciate the
information.  Since you have now moved, will you be locating physicians in
your new locale?  If so, please provide the names of your new treating
physicians.

To explain my role with Educators, I provide vocational rehabilitation
services (consulting capacity) to the variety of claims Educators administers.
In review of your file, it is clearly documented that you have sustained
functional limitations which prevent you from performing the substantial
requirements of your occupation.  However, there are other meanful/fulfilling
occupations where your talents and current functional capabilites would be
an asset.  I would appreciate the opportunity to speak with you about
your possible interest in exploring other vocational options at your
earliest convenience.  I may be reached at Educators on Tuesdays and Thursdays
from 8:00 AM until Noon.

Looking forward to hearing from you.

Sincerely,

Leta R. Sharkey, M.S., N.C.C.

H 2080

# AKIN GUMP
# STRAUSS HAUER & FELD LLP
#### Attorneys at Law

ROBERTA J. SHARP
210.281.7146/fax 210.224.2035
rsharp@akingump.com

August 13, 2003

VIA FACSIMILE AND
U.S. FIRST CLASS MAIL

Eliot B. Gersten
Gersten & Clifford
214 Main Street
Hartford, CT 06106-1881

RE:   Candi McCulloch v. Hartford Life and Accident Insurance Company and Educators
      Mutual Life Insurance Company; Civil Action No. 3:01 cv 1115 (AHN); In the United
      States District Court, District of Connecticut

Dear Eliot:

The expert witnesses Defendants intend to call to testify at trial of this matter are rebuttal experts
as defined by Federal Rule of Civil Procedure 26(a)(2)(C). Defendants intend to designate
experts to rebut the opinions of Drs. Arnold and Stanton, including their opinions regarding
Plaintiff's past, present, and future limitations; Defendants also will designate fact and/or expert
witnesses to rebut the testimony of Mary Fuller and Arthur Wright. Accordingly, Defendants
will not be designating any experts at this time, but will designate experts on or before
September 1, 2003. For those retained or specially employed to provide expert testimony or any
whose duties as an employee of Hartford regularly involve giving expert testimony, Defendants
will submit a written report at that time.

As I have previously stated, Dr. Asha Garg is not a retained expert witness for the purposes of
this litigation, nor is she a "treating physician" as that term is generally understood. For
purposes of the Federal Rules of Civil Procedure I believe she is more like a treating physician
than a retained expert, in that she saw the claimant in her professional capacity prior to the onset
of litigation. In any event, the decision not to retain Dr. Garg for purposes of trial testimony is
not intended to suggest that Dr. Garg is not, in her own right, an expert, nor that she was not
qualified to conduct an IME or render a medical opinion during the adjudication of Plaintiff's
claim.

Regards,

Roberta J. Sharp

300 Convent Street, Suite 1600 / San Antonio, Texas 78205 / 210.281.7000 / fax 210.224.2035 / www.akingump.com
069570.0219 SAN ANTONIO 333947 v1