UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **CANDI McCULLOCH** | § | CIVIL ACTION NO.: |
| Plaintiff, | § | 301CV1115(AHN) |
| | § | |
| vs. | § | |
| | § | |
| **HARTFORD LIFE AND ACCIDENT** | § | |
| **INSURANCE COMPANY AND** | § | |
| **EDUCATORS MUTUAL LIFE** | § | |
| **INSURANCE COMPANY** | § | |
| Defendants. | § | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S OPPOSITION TO MOTION FOR LEAVE TO AMEND COUNTERCLAIMS**

Since at least November 2001, Defendants' pleading of fraud has been broad enough to encompass the entirety of Plaintiff's fraudulent course of conduct in connection with her claim for disability benefits. Early in the litigation of this case, and even as of the time of summary judgment briefing, Defendants sought return of only a portion of the benefits paid. However, in preparing the case for trial, Defendants concluded the evidence to be offered at trial supports return of the benefits from day one. Defendants promptly disclosed this in connection with the parties' exchange concerning the joint statement of the case.

The prejudice Plaintiff claims she will suffer if Defendants are permitted to seek these damages is illusory. Plaintiff's counsel provides a laundry list of discovery they would have undertaken with respect to these damages – but the discovery record reveals that Plaintiff made no effort to undertake any of these actions to defend the fraud claim even to the extent she understood it – i.e., for the period from August 14 through October 31, 2001. At most, Plaintiff's opposition supports a limited continuance to permit her to obtain the discovery she contends is necessary to defend this claim.

In fact, Plaintiff concedes that discovery in this case has targeted the very issues relevant to the Defendants' counterclaim.[1] Plaintiff took a calculated risk: that the facts Defendants systematically and thoroughly undertook to discover would not be admissible at trial. If Plaintiff believed that the discovery Defendants were conducting was utterly irrelevant to the case, Plaintiff could have sought a motion for protective order or otherwise brought the apparent disconnect to the attention of the parties and the Court. It was the Plaintiff who played her cards close to the chest, now professing surprise that the discovery Defendants went to such lengths to obtain has anything whatsoever to do with the case.

Plaintiff appears to argue that one who commits fraud may claim to have detrimentally relied on the victim having been fooled – that is, had she only known that her fraud would ultimately be discovered and challenged, she would have shored up her fraud more convincingly. This theory would turn fraud upon its head. The Defendants are entitled in this case to demonstrate that Plaintiff misrepresented the nature and extent of her limitations from the outset.

### I. ARGUMENT AND AUTHORITIES

**A. While nominally styled as an amended counterclaim, Defendants' pleading of fraud is already broad enough to encompass the entirety of Plaintiff's fraudulent course of conduct.**

The fraud counterclaim was initially asserted by Hartford in a pleading filed September 24, 2001; in that claim, filed before the benefit of extensive discovery, Hartford sought return of $19,655.53.

In an Amended Answer with Affirmative Defenses and Counterclaims filed on November 26, 2001, Defendants expressly <u>deleted</u> the reference to $19,655.53, amending the fraud counterclaim to state "Counterclaim Plaintiff seeks damages, interest, costs and attorneys' fees."

---

[1] Throughout this brief, Defendants refer to the parties by their original designations – that is, Dr. McCulloch as Plaintiff and Educators/Hartford as Defendants – rather than the unwieldy "Counterclaim-Plaintiff" and "Counterclaim-Defendant" designations.

*Id.* at paragraph 48.  This revised, unqualified language seeking damages for Plaintiff's fraud was carried forward in the Answer to Plaintiff's First Amended Complaint filed December 5, 2002 (see paragraph 61) and the Second Amended Answer filed March 14, 2005 (also paragraph 61). This revision should have put Plaintiff on notice that the counterclaim, by its terms, was not limited to the period from August 14, 2000 through October 31, 2000.

Neither Defendants' 2004 summary judgment briefing, nor the 2003 damage analysis, should operate as a bar to a party seeking damages consistent with the discovery and evidence in the case.  In effect, Plaintiff would turn these submissions, filed years before trial, into a bar on amendment to the pleadings.

Plaintiff's claim of prejudice from the assertion of a fraud claim by Educators fails for the same reason: Hartford's counterclaim has, since November 2001, broadly encompassed all fraud committed by Plaintiff.  Plaintiff cannot claim to be prejudiced in defending this claim because it was actually Educators she defrauded.[2]

**B.    Plaintiff has not demonstrated prejudice.**

By its nature, this case has always centered upon Plaintiff's <u>past</u> medical treatment and history – all of which have been the subject of extensive discovery.  Similarly, Plaintiff's motive to misrepresent her condition and the requirements to be entitled to benefits under the policy – which Plaintiff argues she would have conducted discovery on – have <u>always</u> been at the center of this case.  Finally, Plaintiff's credibility has always been at issue in the case, and the truth or falsity of her representations to Educators and Hartford at any point in time have thus been highly relevant and discoverable from the outset of this litigation.

Nonetheless, Plaintiff's claim of prejudice hinges upon the assertion that she would have done something different in discovery had she understood the scope of the fraud claim.  This

argument fails because Plaintiff did not conduct the very discovery she says she would have conducted with respect to the fraud claim that is undisputedly at issue in the case; Plaintiff's actual conduct of discovery speaks far louder than her argument as to what she "would have done" differently.

Plaintiff does not dispute that Defendants' counterclaim seeks to recover monies paid to her from August 14, 2000 through October 31, 2000. Nonetheless, Plaintiffs' treating physicians from this time period are conspicuously absent from her witness list. Plaintiff did not depose these treating physicians or retain them as experts. As noted above, Plaintiff chose to rely upon her retained expert Dr. Arnold and current treating physician Dr. Stanton to testify regarding her disability from October 1995 to the present, despite the fact that these physicians did not treat her during the relevant time period.

Moreover, Plaintiff's argument that it is now too late to obtain the necessary testimony from these physicians is unfounded. To the extent that her past medical treatment is relevant to proof (or rebuttal) of this claim, such proof has always been limited to the testimony of treating physicians based upon memory refreshed by reference to their records – all of which have already been included on one or both parties' exhibit lists.[3] The option of obtaining testimony from these physicians regarding their treatment of Plaintiff is as available today as it was two years ago.[4]

---

[2] Plaintiff's argument based on the statute of limitations is equally misplaced, because the claim for fraud was broad enough to encompass the entirety of the disability payments.

[3] By way of example, Drs. Saberski and Stanton both currently treat Dr. McCulloch; both referred – and deferred – to their medical records for any but the most recent treatment. *See* e.g., Stanton Depo at 24:1-8; 37:3-8; 37:23-38:2; Saberski Depo. at 24:13-20; 35:18-22; 37:10-20.

[4] Plaintiff has made no effort to obtain such testimony during the 10 week continuance of this trial. If, as Plaintiff contends, she "cannot obtain testing now to show her condition ten years ago," she would have been equally precluded from doing in 2003 or 2004, to show her condition at what was then eight or nine years after the fact.

### C. Discovery in this case has always encompassed the evidence Plaintiff asserts is newly relevant.

The discovery conducted by Defendants in this case underscores that the facts relevant to the counterclaim are not new.

Defendants obtained Plaintiff's employment records from the beginning of her employment period in June 1994 through her last day of employment in October 1995 and, at her deposition, questioned her at length concerning these records.

Defendants' counsel traveled to South Bend, Indiana to depose Plaintiff's former supervisor from January through October 1995, Paul Meyer. Plaintiff's counsel chose to participate by telephone and objected to the deposition on numerous grounds, noting his intention "to simply preserve all objections and preclude the evidence from being introduced at any trial in any case, but at the same time avoid the unnecessary, expensive and otherwise even more burdensome approach of filing motions." Meyer Deposition at 5:17 – 6:11. Plaintiff's counsel also participated by telephone when Defendants traveled to Florida to depose the treating physician who submitted a statement in support of Plaintiff's original disability claim, Dr. Porfiri. Defendants also obtained records from more than twenty other treating physicians by subpoena or deposition on written questions, covering Plaintiff's treatment from 1989 through 2005.

As Plaintiff readily concedes, she chose to participate only nominally in this discovery, apparently based on her unilateral determination that the information sought was neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Pltf. Opp. at p.16. This determination was, of course, for the Court to make, and Plaintiff assessed the relevance of this information at her own peril.

If Plaintiff indeed thought this discovery was neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, she chose to participate only nominally at her

5885115                                    5

own risk. Clearly Defendants viewed it as relevant, and undertook that discovery at no small expense. Plaintiff's options included participating fully in discovery, seeking a protective order from discovery she thought was irrelevant, or choosing (as she did) to bank on being right in her unilateral assessment of its relevance.

For the foregoing reasons Defendants ask that the Court grant Defendants' Motion for Leave to Amend Their Counterclaims.

        Respectfully submitted,

        AKIN GUMP STRAUSS HAUER & FELD L.L.P.


By:_____
    Barry A. Chasnoff (ct11162)
    Roberta J. Benson (ct24407)
    Jessica S. Taylor (ct24408)
    300 Convent Street, Suite 1500
    San Antonio, Texas 78205
    Telephone: (210) 281-7000
    Telecopier: (210) 224-2035

        - and -

    Donald E. Frechette (ct 08930)
    EDWARDS & ANGELL, LLP
    90 State House Square
    Hartford, CT 06103
    Phone: (860) 525-5065
    Facsimile: (860) 527-4198

    ATTORNEYS FOR DEFENDANTS
    HARTFORD LIFE AND ACCIDENT
    INSURANCE COMPANY and
    EDUCATORS MUTUAL LIFE
    INSURANCE COMPANY

## CERTIFICATE OF SERVICE

      I certify that a copy of the foregoing document was sent via *Facsimile and Overnight Mail* to the following attorney on the _____ day of March, 2006:

Eliot B. Gersten  
Gersten Clifford & Rome, LLP  
214 Main Street  
Hartford, CT 06106  
Phone (860) 527-7044  
Facsimile (860) 527-4968

_____  
ROBERTA BENSON