UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CANDI McCULLOCH<br>Plaintiff, | §<br>§<br>§ | CIVIL ACTION NO.:<br>301CV1115(AHN) |
| vs. | §<br>§ | |
| HARTFORD LIFE AND ACCIDENT<br>INSURANCE COMPANY AND<br>EDUCATORS MUTUAL LIFE<br>INSURANCE COMPANY<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§ | March 27, 2006 |

### DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO PRECLUDE SUPPLEMENTAL REPORT AND TESTIMONY OF DR. KETROSER

Plaintiff asks the Court to rule, in advance of trial, that Defense expert Dr. David Ketroser should not be permitted to offer certain testimony set forth in his report of January 23, 2006, but should be limited to testimony that is, in Plaintiff's view, within the scope of his first report dated August 22, 2003.[1]

Plaintiff's motion should be denied. First, the subject matter of Dr. Ketroser's second report is well within the scope of the opinions set forth in his first report. Second, Plaintiff's claim that the so-called "new" matters were not timely disclosed was rendered moot by the continuance of this matter and by Plaintiff's failure to depose Dr. Ketroser in the intervening 10 weeks. Third, the motion is premature, in seeking to preclude testimony without the benefit of the context in which that testimony may (or may not) be offered.

I.  **THE SUBJECT MATTER OF DR. KETROSER'S SECOND REPORT IS WELL WITHIN THE SCOPE OF OPINIONS EXPRESSED IN THE FIRST.**

In his first report of August 30, 2003, Dr. Ketroser disclosed his opinion in this case:

---

[1] Plaintiff also seeks to exclude the January 23, 2006, report itself. This request is moot, as Defendants do not seek to offer the report in evidence.

5892123                                    1

> To summarize, Dr. McCulloch's medical records do not support her claim of disabling neck and low back pain, her claim of disability due to her therapeutic use of medications over the past eight years is inconsistent with the pharmacologic effects of the medications in the doses she has received, and the videotapes of her 1996 and 2000 activities confirms that her claims of disability misrepresent both her potential and actual functioning.

Report of August 30, 2003 ("Ketroser I") at p. 6. Dr. Ketroser's detailed analysis also disclosed the basis for this opinion, including his review of Dr. McCulloch's medical history through her records, his review of surveillance videotapes reflecting Dr. McCulloch's real-world functionality, his review of her deposition videotapes, his expertise and 25 years of experience as a practicing neurologist, several peer-reviewed articles specifically noting the lack of correlation between MRI or discography findings and actual symptoms as well as the absence of cognitive or psychomotor effects of the types of medications prescribed for Dr. McCulloch. The upshot of this detailed review and the broadly stated opinion above is that none of the "objective" evidence supports the conclusion that Dr. McCulloch is unable to perform the material and substantial duties of her occupation as the director of a women's clinic and clinical internist.

Plaintiff chose not to depose Dr. Ketroser or, for that matter, even to request his file. The deposition of an opposing expert provides a party the opportunity to flesh out the details of the expert's opinion. A party who does not depose an opposing expert may not be heard to complain if details are elicited for the first time at trial, much less in a supplemental report submitted three months before trial.

Nor may a party limit an opposing expert to the precise words and phrasing used in his written report. A written opinion should disclose the subject matter, basis, and nature of the opinions; it is not a script to be followed a trial. As set forth below, each of the subjects Plaintiff claims should be excluded from Dr. Ketroser's testimony are simply a different way of stating the opinions that are fully disclosed in Ketroser I.

### A. Dr. Ketroser's challenge to the validity and efficacy of the IDET procedure is well within the scope of his prior disclosed opinion.

Plaintiff seeks to exclude Dr. Ketroser's opinion, noted in his January 23, 2006, report ("Ketroser II"), that an "intradiscal-electrotherapy, also known as IDET, is a relatively new procedure that is considered experimental by most medical providers, most medical literature and most insurers. . .[and a] marginal treatment modality." Ketroser II at p. 2. This statement is within the scope of Dr. Ketroser's prior disclosed opinion, and one that Plaintiff easily could have elicited at a deposition had she simply asked Dr. Ketroser to explain why Dr. McCulloch's "medical records do not support her claim of disabling neck and low back pain," as expressly stated in Ketroser I. Dr. Ketroser is a neurologist whose first report specifically noted that Dr. McCulloch's prior medical history included an IDET procedure (Ketroser I at p. 2), and specifically noted that her symptoms are "entirely without objective confirmation" (*id.* at p. 3).

Plaintiff's claim of surprise and prejudice from Dr. Ketroser's challenge to the validity and efficacy of the IDET procedure is untenable – even more so given that defense expert Dr. Arthur Taub expressly noted in *his* report that the procedure was contraindicated:[2] Plaintiff made no more effort to depose Dr. Taub than she did Dr. Ketroser. Plaintiff was on notice of both defense experts' views regarding the IDET procedure and had ample reason and opportunity to prepare for this testimony.

### B. Dr. Ketroser's challenge to Dr. Arnold's diagnosis of myofascial pain is well within the scope of his prior disclosed opinion.

At the outset, Dr. Ketroser's statements regarding the "myofascial pain" diagnosis of Plaintiff's retained expert Dr. Arnold are in large part uncontested by Dr. Arnold himself: Dr. Arnold agrees with Dr. Ketroser's statement that his diagnosis differs from that of other providers (Deposition of Dr. Arnold at 144:20 – 145:5), and Dr. Arnold agrees that there is no

---

[2] See August 31, 2003, report of Dr. Arthur Taub at p. 32.

known underlying pathophysiology for myofascial pain (*id.* at 162:17 – 163:9). And despite extensive questioning at his deposition, Dr. Arnold did not suggest any way to prove or disprove the existence of myofascial pain, and thus would have to agree with Dr. Ketroser's statement that it cannot be proven or disproven. This leaves only Dr. Ketroser's statement, in his second report, that the diagnosis of myofascial pain "has allowed a few physicians to avoid admitting their inability to identify the underlying cause of the patients' complaints and continue to treat the patient with extensive therapy possessing limited efficacy."

The expression of this viewpoint by Dr. Ketroser can be neither surprising nor prejudicial. Dr. Ketroser reviewed and considered Dr. Arnold's report in connection with his first report. See Ketroser I at p. 1. Having read Dr. Arnold's diagnosis and conclusion that Dr. McCulloch has "myofascial pain," Dr. Ketroser nonetheless expressly noted, in his first report, the absence of objective evidence or a credible underlying cause of Dr. McCulloch's reported symptoms. *Id.* at p. 3. He further noted the lack of objective confirmation of a significantly painful spinal disorder (*id.* at p. 5) and summarized that her "medical records do not support her claim." It could not be clearer that Dr. Ketroser questioned Dr. Arnold's diagnosis and conclusion regarding myofascial pain. Again, the particular semantic expression of this opinion included in Ketroser II is one that might well have been elicited through deposition, in response to questioning exploring the basis for Dr. Ketroser's disagreement with Dr. Arnold.

Finally, Plaintiff cannot claim to be prejudiced from learning that Dr. Ketroser disagrees with Dr. Arnold: by definition, Plaintiff has an expert to testify on this subject. Dr. Arnold claims to be an expert in the diagnosis and treatment of myofascial pain and is presumably prepared to defend his opinions at trial.

### C. Dr. Ketroser's statements regarding the reasons to restrict a patient's activities are well within the scope of his prior disclosed opinion.

In his first report, Dr. Ketroser opined that Dr. McCulloch's medical records do not support her claim of disabling neck and low back pain, and that the videotapes of her activities confirm that her claims of disability misrepresent both her potential and actual functioning. Dr. Ketroser reviewed and considered Dr. McCulloch's diagnoses and treatments, including posterior laminotomy, anterior discectomy, treatment by orthopedic surgeons, neurosurgeons, physiatrists, neurologists, and a masseuse, and concluded that none of these supported her claim of injury and none showed her to be unable to perform the duties of her occupation. Dr. Ketroser specifically noted that self-reports are unreliable (Ketroser I at p. 4) and that the medications prescribed for Dr. McCulloch do not cause impairment in the dosages prescribed (*id.* at p. 5). He further noted that the level of function shown on the videotapes confirm that her claim of disability misrepresents both her potential and actual functionality.

Despite these clear statements of his opinion, Plaintiff seeks to preclude Dr. Ketroser from testifying as to the *legitimate* reasons to restrict a patient's activities. Plaintiff cannot credibly claim to be surprised that this expert would offer his opinion as to the meaning of disability or the valid reasons for restricting activity.

## II. EVEN IF DR. KETROSER'S SECOND REPORT HAD DISCLOSED ANYTHING NEW, IT WAS TIMELY DISCLOSED.

Plaintiff's motion to limit Dr. Ketroser's testimony was based in part upon the timing of Dr. Ketroser's second report, "less than two weeks before trial." This argument was rendered moot by the ten-week continuance of this trial.

In that intervening time period, Plaintiff made no request to depose Dr. Ketroser. For that matter, as noted above, Plaintiff made no effort to depose Dr. Taub, whose August 2003 report touched upon at least one of the topics Plaintiff claims to be a surprise in Ketroser II. Plaintiff's considered decision not to depose either Dr. Ketroser or Dr. Taub belies her contention that she

5892123

5

would have taken Dr. Ketroser's deposition had his first report included the statements complained of.

Moreover, Plaintiff cannot plausibly claim to have been prejudiced by the disclosures in Ketroser II. As set forth above, the statements in Ketroser II are well within the scope of opinions expressed in Ketroser II (as well as Dr. Taub's reports). Plaintiff is bringing experts to trial to opine that she is disabled; Defendants are bringing experts to testify that she is not. The issue has been fully joined by both sides.

### III. PLAINTIFF'S MOTION TO PRECLUDE DR. KETROSER FROM OFFERING SPECIFIC STATEMENTS IS PREMATURE.

The questions at trial have yet to be asked. Plaintiff seeks what amounts to an advisory opinion, in advance of trial, that the Court will properly apply the rules regarding expert testimony when and if Defendants offer testimony outside the scope of their experts' disclosed opinions. As noted above, Defendants dispute that the passages Plaintiff complains of in Ketroser II would, if offered at trial, exceed the scope of Dr. Ketroser's disclosed opinion. But even if such testimony were outside that scope, the Court cannot rule in advance, or in a vacuum, as to the propriety of questions that may be asked or the answers that may be given; for example, Plaintiff herself may well open the door to these subjects through cross-examination.

There is no need for such a prophylactic ruling in advance of a bench trial. In fact, the only way the Court can consider Plaintiff's motion is to thoroughly review both of Dr. Ketroser's reports – thus "hearing" the very testimony Plaintiff seeks to keep the Court from hearing. Plaintiff's motion is thus not only premature, it is nonsensical in the context of a bench trial.

For the foregoing reasons, Defendants ask that the Court deny Plaintiff's motion to preclude certain testimony by Dr. Ketroser, and instead take up the merits of any objections to Dr. Ketroser's testimony in the ordinary course of trial when and as that testimony is offered.

Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD L.L.P.

By: *Roberta J. Benson*
Barry A. Chasnoff (ct11162)
Roberta J. Benson (ct24407)
Jessica S. Taylor (ct24408)
300 Convent Street, Suite 1500
San Antonio, Texas 78205
Telephone: (210) 281-7000
Telecopier: (210) 224-2035

- and -

Donald E. Frechette (ct 08930)
EDWARDS & ANGELL, LLP
90 State House Square
Hartford, CT 06103
Phone: (860) 525-5065
Facsimile: (860) 527-4198

ATTORNEYS FOR DEFENDANTS
HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY and
EDUCATORS MUTUAL LIFE
INSURANCE COMPANY

## CERTIFICATE OF SERVICE

      I certify that a copy of the foregoing document was sent via *Facsimile and Overnight Mail* to the following attorney on the 27th day of March, 2006:

Eliot B. Gersten
Gersten Clifford & Rome, LLP
214 Main Street
Hartford, CT 06106
Phone (860) 527-7044
Facsimile (860) 527-4968

                                            */s/ Roberta J. Benson*
                                            ROBERTA BENSON