UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CANDI McCULLOCH               :
                              :
        v.                    :    Civ. NO. 3:01cv1115(AHN)
                              :
HARTFORD LIFE AND ACCIDENT    :
 COMPANY and EDUCATORS MUTUAL :
 LIFE INSURANCE COMPANY       :

RULING ON MOTION TO AMEND COUNTERCLAIM AND
MOTION TO LIMIT ISSUES TO BE TRIED

Plaintiff Candi McCulloch ("McCulloch") brings this action against Hartford Life and Accident Insurance ("Hartford") and Educators Mutual Life Insurance Company ("Educators") (collectively "the Defendants"), alleging various claims arising out of Hartford's termination of her disability benefits.[1] Hartford filed a counterclaim against McCulloch alleging fraud and unjust enrichment.  The court has scheduled a bench trial on the claims that will begin April 17, 2006.

Now pending before the court are the Defendants' motion to amend their counterclaim [doc # 268] to expand the scope of their claims against McCulloch to include the period from 1995 to October 31, 2000, and McCulloch's motion to exclude evidence that she was gainfully employed or that she was able to perform the material duties of her occupation between 1995 and August 2000 [doc # 278].  For the following reasons, the court concludes that Educators has no counterclaim to amend, and Hartford has offered

_____

[1] After the court's March 29, 2005 omnibus ruling on motions for summary judgment [doc # 218], only McCulloch's breach of contract claim against both Defendants remains.

no legitimate reason for waiting until the eve of trial to amend
its counterclaim, and thus the motion to amend is denied.  The
court also determines that McCulloch's credibility is relevant to
the counterclaim, and thus her motion to limit the issues tried
is denied.

<u>FACTS</u>

The court determined in its earlier ruling on the motions
for summary judgment that the following facts are undisputed.

Prior to the onset of her disability, McCulloch was an
internist who split her time between practicing medicine and
serving as the administrative director of a women's health clinic
in Florida.  In September 1994, she purchased disability coverage
from Educators that would entitle her to $7,000 per month in the
event of her total disability.  In February 1995, McCulloch
injured her neck and shoulder in a skiing accident; in October
1995 she stopped working due to her chronic pain from these
injuries.  McCulloch submitted a disability claim, which
Educators accepted.

In July or August 1999, Educators assigned McCulloch's
claims and transferred reserve funds to Hartford as part of a
reinsurance agreement.  After assuming the claim, Hartford
requested that McCulloch provide an updated statement of her
condition from her attending physician.  Hartford received
McCulloch's statement ("Statement") on April 25, 2000, and

2

suspected that some of her assertions were false.  In May and
June 2000, Hartford began conducting surveillance of her, and on
August 15, 2000, it contacted her to set up an interview.  At the
interview ("the Interview"), which took place on September 8,
2000, a Hartford field investigator confronted McCulloch with
evidence that she had exaggerated the degree of pain she was
suffering.  Hartford undertook further investigation of
McCulloch, and in November 2000, it terminated her claim.
Hartford determined that as of October 14, 2000, McCulloch had
not been totally disabled as her policy required for coverage.

<u>DISCUSSION</u>

The central issue in these motions is the scope of the
counterclaim for fraud and unjust enrichment against McCulloch.
Hartford alleges that McCulloch committed fraud by representing
to it that she was totally disabled when in fact she had
considerable residual functional capacity.  Specifically,
Hartford alleges that McCulloch claimed that she was unable to
bend or stand in one position for very long, when in fact
Hartford's investigator videotaped her dancing with a full range
of motion.  Hartford also claims that McCulloch unjustly enriched
herself by collecting insurance payments from the Defendants to
which she was not entitled.  By way of damages, Hartford seeks
the return of disability payments made to McCulloch that, it
alleges, she has wrongfully retained.

3

I.  Educators' Failure to Assert a Counterclaim

     As a threshold matter, this court observes that although
Educators joins in Hartford's motion to amend the counterclaim,
Educators does not have a counterclaim to amend.  Hartford filed
an amended counterclaim [doc # 99] on February 7, 2003.
Educators did not join in this pleading;[2] nor did it join
Hartford's initial counterclaim or file a separate counterclaim.
Thus, Educators has no counterclaim to amend, and because it
answered McCulloch's complaint on September 26, 2001, it may no
longer assert a counterclaim by right.  See Fed. R. Civ. P.
13(a).

     The court thus construes Educators' motion to amend its
counterclaim as a motion under Fed. R. Civ. P. 13(f) to add a
counterclaim.  Rule 13(f) permits the court to grant leave to a
party to add a counterclaim "[w]hen a pleader fails to set up a
counterclaim through oversight, inadvertence, or excusable
neglect, or when justice requires."  Discretion to permit such an
amendment lies with the court.  See 6 Charles Alan Wright et al.,
Federal Practice and Procedure – Civil § 1410 (2d ed. 1990).  The
Second Circuit has explained that "a belated motion to file such
a pleading may properly be denied where the delay is lengthy or

_____

     [2] See Def.'s First Am. Answer, Affirmative Defenses and
Countercl. to First Am. Compl. [doc # 99], at 18 ("Defendants
respectfully request that this Court deny [McCulloch's] claims
and, further, that it enter judgment in favor of Hartford on its
counterclaim....").

4

where there is no reasonable explanation for the failure to assert it, or to make the motion, earlier." <u>Valley Disposal v. Cent. Vt. Solid Waste Mgmt. Dist.</u>, 113 F.3d 357, 365 (2d Cir. 1997).  In this case, Educators' delay is both lengthy and unreasonable.  It has waited more than four years since it filed its answer to assert these claims, and it points to no specific facts it has discovered since it filed for summary judgment in 2004 that would now render its claim viable.  Thus, the court denies Educators' motion to add a counterclaim.

II.  <u>Hartford's Counterclaim</u>

Hartford is therefore the only counterclaim plaintiff in this action.  The parties agree that the fraud it alleges must have concluded by October 31, 2000, when Hartford terminated payments to McCulloch.  Hartford maintains that the language of its counterclaim is broad enough to encompass fraud McCulloch may have committed as far back as 1995, when she first applied for benefits with Educators.  It further contends that if the court construes its counterclaim to permit recovery only for fraud committed in 2000, the court should allow it to amend its counterclaim to cover the entire five-year period.  McCulloch argues that Hartford's counterclaim encompassed only the period beginning April 23, 2000, and that Hartford, through its representations to the court, has narrowed its counterclaim to the period beginning on August 14, 2000.

For the following reasons, the court concludes that Hartford's counterclaim, as filed, encompassed fraud McCulloch is alleged to have committed between April 23, 2000 and October 31, 2000, and unjust enrichment that may have accrued to her between 1995 and October 31, 2000. However, Hartford's submissions to the court have narrowed the scope of its counterclaim on both counts to the period beginning August 14, 2000. The court further finds that Hartford has unreasonably delayed in filing its motion to amend, and thus denies the motion.

A.    Scope of Hartford's Counterclaim

Hartford contends that its proposed amendment is "already within the scope" of its counterclaim, as the counterclaim does not explicitly specify the period in which McCulloch allegedly committed fraud. McCulloch maintains that the counterclaim does not state a viable claim for fraud for the period before April 23, 2000, and that Hartford subsequently narrowed its counterclaim through its representations to the court. The court agrees.

Hartford's counterclaim does not contain an explicit temporal limitation. Rather, Hartford alleges that "[d]isability benefits were paid to [McCulloch] until August 14, 2000 based, at least, on her representations . . . that she was disabled when, in actuality, she was not . . . ." Hartford thus maintains that its proposed amendment would only clarify that its claim for

6

fraud and unjust enrichment encompass the entire period from
1995, when Educators first began paying McCulloch benefits, to
October 31, 2000, when Hartford discontinued the payments.

As McCulloch observes, however, the counterclaim does not
state a claim for fraud that occurred before April 23, 2000,
because Hartford did not allege reliance, an essential element of
fraud under Connecticut law, before that date.[3]  See Weinstein v.
Weinstein, 275 Conn. 671, 685 (2005).  Specifically Hartford does
not allege in either count of the counterclaim that McCulloch
made any false statements to either Hartford or Educators before
she submitted the Statement to Hartford on April 23, 2000.
Without such an allegation they could not have relied on any such
false statements before that date, and there could not have been
any fraud before that date.  So, based on the express language of
the counterclaim, the alleged fraud was limited to the period
from April 23, 2000, to October 31, 2000.

Under Connecticut law, however, a plaintiff need not prove
reliance on a misrepresentation to prevail on a claim for unjust
enrichment.  See Gagne v. Vaccaro, 255 Conn. 390, 409 (2001)
(elements of unjust enrichment are "(1) the defendant was

_____

[3] Under Connecticut law, the elements of fraud are: (1) a
false representation was made as a statement of fact; (2) the
statement was untrue and known to be so by its maker; (3) the
statement was made with the intent of inducing reliance thereon;
and (4) the other party relied on the statement to his detriment.
See Weinstein v. Weinstein, 275 Conn. 671, 685 (2005).

7

benefited, (2) the defendant unjustly failed to pay the plaintiff for the benefits, and (3) the failure of payment was to the plaintiff's detriment"). The Connecticut Supreme Court has explained that a right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. See id. at 408. Thus, Hartford's allegations that McCulloch received insurance payments to which she was not entitled between 1995 and October 31, 2000 is sufficient to support an unjust enrichment claim encompassing the five-year period, regardless of when her first alleged misrepresentation occurred. Hartford's counterclaim, as filed, encompassed unjust enrichment that may have accrued to McCulloch between 1995 and October 31, 2000.

Hartford, however, subsequently narrowed the scope of its counterclaim when it opened its brief in opposition to McCulloch's motion for summary judgment with the following statement:

> Hartford seeks to recover only the disability benefits paid to [McCulloch] between August 14, 2000 and October 31, 2000. [McCulloch's] argument that she was somehow denied the opportunity to present evidence to support her claim of prior disability is moot, as Hartford is not seeking to recover disability payments made prior to August 14, 2000.

(Def's Opp'n Mot. Summ. J. on Countercl. [doc #189], at 1).

Based on this characterization of its claims, the court denied
McCulloch's motion for summary judgment.  Specifically, the court
rejected McCulloch's argument that there could be no unjust
enrichment because if Educators had known she was not disabled at
the time it executed the reinsurance agreement, it would not have
transferred $1.3 million in reserves to Hartford.  The court also
observed that McCulloch alleged no causal connection between her
purported fraud and the transfer of the reserves.  The court
reasoned:

> Hartford's theory of liability and its alleged harm is
> not that McCulloch was never disabled, but that
> McCulloch ceased to be disabled on August 14, 2000,
> approximately one year after the reinsurance agreement
> was executed.  Hartford's counterclaim only seeks to
> recover benefit payments it made from August 14, 2000,
> to October 31, 2000; not from the date the reinsurance
> agreement was executed.  Thus, Hartford need not
> establish that McCulloch's allegedly fraudulent claim
> was causally connected to the reinsurance agreement.

(Ruling on Mot. Summ. J. [doc #218], at 37)  Therefore, because
Hartford explicitly and unequivocally limited its counterclaim on
both counts -- fraud and unjust enrichment -- to the period from
August 14, 2000, to October 31, 2000, it cannot now expand their
scope, especially in light of the ambiguous and nonspecific
language in its pleading.

    B.    Hartford's Proposed Amended Counterclaim

        Hartford contends that if its counterclaim is found not to
encompass the period from 1995 to 2000, the court should permit
it to amend that counterclaim to cover the entire five-year

period that McCulloch received disability payments.  In
oposition, McCulloch maintains that the proposed amendment would
be unduly prejudicial and should not be allowed because Hartford
has asserted no legitimate reason for its delay.  The court
agrees that allowing Hartford to amend the counterclaim at this
late date is not warranted.[4]

If more than 20 days have passed since a pleading was first
served, that pleading may be amended "only by leave of court or
by written consent of the adverse party." Fed. R. Civ. P. 15(a).
However, this "leave shall be freely given when justice so
requires." Id.  In the Second Circuit, a party may generally
amend its pleadings in the absence of a showing by the nonmovant
of prejudice or bad faith.  See Block v. First Blood Assocs., 988
F.2d 344, 350 (2d Cir. 1993).  In determining what constitutes
"prejudice," the court considers whether the assertion of the new
claim or defense would (1) require the opponent to expend
significant additional resources to conduct discovery and prepare
for trial; (2) significantly delay the resolution of the dispute;
or (3) prevent the plaintiff from bringing a timely action in
another jurisdiction.  See Monahan v. New York City Dep't of

---

[4] McCulloch also contends that the proposed counterclaim
does not conform with the heightened pleading requirements for
fraud contained in Fed. R. Civ. P. 9(b) and that the amendment
would be futile because the Defendants' fraud claims for the
period before April 23, 2000 are barred by the statute of
limitations.  The court does not reach these claims.

10

Corrections, 214 F.3d 275, 284 (2d Cir. 2000).

In this case, the proposed amendment could unduly prejudice McCulloch by delaying the trial.  In its ruling on the motions for summary judgment, this court did not consider whether there was any genuine issue of material fact on any question involving McCulloch's liability for the period from 1995 to August 14, 2000.  If the court were to permit Hartford to pursue such a counterclaim now, it should on equitable grounds allow McCulloch to bring a motion for partial summary judgment on this amended counterclaim to challenge the allegations Hartford insisted were moot in 2004.  Otherwise this court would be allowing Hartford to avoid a motion for summary judgment by abandoning a claim and then resurrecting it on the eve of trial.  Thus, Hartford's proposed amendment would impermissibly delay the bench trial scheduled for April 17, 2006.

But even if McCulloch would not suffer extreme prejudice, Hartford has provided no reasonable explanation as to why it has waited more than 19 months -- from June 22, 2004, when it represented to the court that it was not pursuing claims for the period before August 14, 2000, to February 17, 2006, when it filed this motion -- to attempt to amend its counterclaim.  As the Second Circuit has explained, "the longer the period of an unexplained delay [in moving to amend], the less will be required of the nonmoving party in terms of a showing of prejudice."

11

<u>Block</u>, 988 F.2d at 350.  Hartford attempts to explain its delay
by contending that even if it abandoned its claims for the period
1995 to 2000, or even if it never alleged them in the first
place, its preparations for trial have convinced it that
McCulloch's fraud began as early as 1995.  However, Hartford has
not identified any specific evidence that it has discovered since
June 2004, when it informed the court it was not pursuing claims
for the period 1995 to 2000, that now renders the broader claims
viable.  At no time since June 2004 did Hartford inform either
McCulloch or the court of its intention to focus on the entire
five-year period.  Hartford's delay is not excusable, and
therefore the court denies it leave to amend its counterclaim.

III.  <u>McCulloch's Motion to Limit the Issues to be Tried</u>

     In addition to opposing an expanded time frame for
Hartford's counterclaim, McCulloch also moves to limit the issues
for trial by excluding any evidence or testimony that (1) she was
able to perform the material duties of her occupation between
1995 and August 2000, or (2) she was or is gainfully employed.
McCulloch insists that such evidence is irrelevant because the
Defendants cannot recover for any fraud she may have committed
before 2000.  The Defendants respond that the issue of whether
McCulloch could have or did work is relevant because, when
considered in the context of her representations to Educators and
Hartford, this evidence bears on her credibility.  The court

agrees with the Defendants.

As a threshold matter, the court observes that while the rules of evidence apply with equal force in jury and bench trials, courts "often apply the relevance standard with little rigor during a bench trial." <u>Commerce Funding Corp. v. Comprehensive Habilitation Servs.</u>, 01 Civ. 3796 (PKL), 2004 U.S. Dist. LEXIS 17791, at *14 (S.D.N.Y. Sept. 3, 2003).  The Second Circuit has thus explained that "it may be the more prudent course in a bench trial to admit into evidence doubtfully admissible records, and testimony based on them. . . ." <u>See Van Alen v. Dominick & Dominick, Inc.,</u> 560 F.2d 547, 552 (2d Cir. 1977).  A leading treatise on federal practice has remarked that "[i]n nonjury cases the district court can commit reversible error by excluding evidence, but it is almost impossible for it to do so by admitting evidence."  11 Charles Alan Wright et al., Federal Practice and Procedure – Civil § 2885 (2d ed. 1995).

In light of this lenient standard for the admission of evidence in a bench trial, the court will not exclude evidence of whether McCulloch could have been or was gainfully employed before 2000.  Although Hartford cannot recover for fraud committed before August 14, 2000, the court agrees with the Defendants that the evidence McCulloch seeks to exclude could bear on her credibility.  The court will not limit the issues to be tried as McCulloch has requested, but she may make objections

when such evidence is offered at trial.

<u>CONCLUSION</u>

For the foregoing reasons, the Defendants' motion to amend their counterclaim [doc # 268] is DENIED.  The court finds that Educators has no counterclaim to amend and will not permit a new counterclaim to be asserted now.  The court also determines that Hartford's counterclaim for fraud and unjust enrichment covers the period from August 14, 2000, to October 31, 2000. McCulloch's motion to limit the issues tried [doc # 278] is DENIED.

SO ORDERED this 11th day of April, 2006, at Bridgeport, Connecticut.

_____/s/_____
Alan H. Nevas
United States District Judge
