UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CANDI MCCULLOCH, : | |
| : | CIVIL ACTION NO. |
| **Plaintiff** : | 3:01CV1115 (AHN) |
| v. : | |
| : | |
| HARTFORD LIFE AND ACCIDENT : | |
| INSURANCE COMPANY and : | |
| EDUCATORS MUTUAL LIFE : | |
| INSURANCE COMPANY, : | |
| : | |
| **Defendants.** : | |

## DEFENDANTS' BRIEF ON "TOTAL DISABILITY" and "RESIDUAL DISABILITY"

**TO THE HONORABLE JUDGE OF THIS COURT:**

This is a suit for damages arising from Defendants' termination of total disability benefits under a Policy issued to Plaintiff, Dr. Candi McCulloch. Prior to ceasing work, McCulloch was employed by JFK Medical Center pursuant to two written agreements. These employment agreements called for her to work a minimum of 16 hours a week practicing internal medicine, and 30 hours a week as a Director hired to assist in the creation and management of a comprehensive women's health care center.

Under the terms of the Policy, Dr. McCulloch is entitled to total disability benefits if she "is unable to perform the material and substantial duties of [her] occupation as it existed at the time disability began." Thus the Court's determination of whether Dr. McCulloch is totally disabled must begin with a determination of her occupation as it existed at the time her alleged disability began. Occupation is not determined by a title such as "doctor," or even "internist,"

but by the actual work that an insured was performing at the commencement of disability – in this case work that included both administrative and clinical components.

In addition, the Court must determine whether Dr. McCulloch is totally disabled – that is, whether she has restrictions and limitations such that she is unable to perform *any* of the material and substantial duties of her former position. If Dr. McCulloch can perform some of the duties of her occupation, or all of the duties some of the time, she is not totally disabled within the meaning of the policy.

## ARGUMENT AND AUTHORITIES

Under the policy in question, "Total Disability" means:

(a) As a direct result of injury or sickness the member is unable to perform the material and substantial duties of the member's occupation as it existed at the time the disability began; and

(b) The member is not working in any gainful occupation; and

(c) The disability began while this insurance was in force; and

(d) The member is under the regular and direct care of a licensed physician other than a person in the member's family.

The interpretation of an insurance policy involves a determination of the intent of the parties as expressed by the language of the policy. *R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co.*, 287 F.3d 242, 246 (2d Cir. 2002). A contract of insurance must be viewed in its entirety, and the intent of the parties entering it must be derived from the four corners of the policy. *Id.* Insurance policies containing provisions for total and partial disability must be construed as a whole, so as to give effect to the entire contract. *See, e.g., Ellis v. Liberty Life Assur. Co.*, 394 F.3d 262, 271-72 (5th Cir. 2005); *McOsker v. Paul Revere Life Ins. Co.*, 279 F.3d 586, 588 (8th Cir. 2001).

II. **DR. MCCULLOCH'S "OCCUPATION" AT THE ONSET OF DISABILITY INCLUDED HER DUAL ROLE AS DIRECTOR OF A WOMEN'S CENTER AND AN INTERNIST.**

    A. **"Occupation" is measured by the job the claimant is actually performing at the onset of disability.**

Disability turns upon the inability of an insured to perform the material and substantial duties of her occupation:

> Occupational disability policies protect against the loss of the ability to perform the principal duties of a particular occupation, not a particular position. Regular occupation is not limited to the insured's particular job but encompasses a position of the same general character as the insured's previous job, requiring similar skills and training, and involving comparable duties.

*Yahiro v. Northwestern Mut. Life Ins. Co.*, 168 F. Supp. 2d 511, 516 (D. Md. 2001 (citations and quotations omitted).

The relevant "material and substantial duties" are determined by the duties the insured was actually performing at his or her job at the time of the disability claim – not by a title or educational degree. *See, e.g., id.* at 515, 518 ("orthopedic surgeon" not totally disabled even though he could no longer perform surgery, which consumed 25% of his time; his nonsurgical duties consumed a large percentage of his time and generated significant portion of his income).

Determination of an insured's "occupation" for purposes of a disability policy is a "fact-oriented, functional approach." *Klein v. Nat'l Life of Vt.*, 7 F. Supp. 2d 223, 227 (E.D.N.Y. 1998). In *Klein*, for example, the court looked to the professional activities in which the insured was regularly engaged at the time of the onset of disability. *Id.* at 227. Dr. Klein was a partner in a practice of podiatric medicine, which included multiple offices and employed other podiatrists. Dr. Klein participated in the management and administration of these satellite clinics, at which he did not actually treat patients. *Id.* at 224-25.

Dr. Klein developed an arthritic thumb. His insurer denied his claim for disability benefits because Dr. Klein could perform his occupation as an administrator/manager of podiatric clinics even though he could not perform his occupation as a podiatric surgeon. *Id.* at 224, 226. The district court granted summary judgment in the insurer's favor because in the three years prior to filing his disability claim, the majority of Dr. Klein's time and most of his income was derived from performing his occupation as an administrator/manager. *Id.* at 224-25. In its analysis, the court applied the same definition of "total disability" at issue here: namely, total disability meant the inability to perform the material and substantial duties of the plaintiff's occupation. *Id.* at 224. Under this test, Dr. Klein was not totally disabled because he was able to perform the managerial and administrative duties of overseeing six podiatric clinics even though his arthritic thumb prevented him from continuing to treat patients. *Id.* at 227-28.

In another dual-role case, *Brumer v. Nat'l Life of Vt.*, 874 F. Supp. 60 (E.D.N.Y. 1995), the court granted summary judgment in favor of the insurer because "the plaintiff's managerial activities were not "peripheral or incidental…[to the] medical or surgical tasks he performed." *Id.* at 65. Because the plaintiff was able to function in his managerial occupation, his inability to perform surgery did not render him totally disabled. *Id.* The Second Circuit affirmed this holding, rejecting plaintiff's contention that the occupation of podiatrist is "purely scalpel-oriented," and noting that surgery was not the only professional activity in which he engaged. *Brumer v. Paul Revere Life Ins. Co.*, 133 F.3d 906, 1998 WL 40420 (2d Cir. 1998) (Table). The court focused on the fact that the plaintiff still had a medical license which he was using to operate podiatric clinics and that the majority of plaintiff's income was derived from performing the administrative and managerial duties of his occupation. *Id.* at *6. Therefore, plaintiff's occupation as a podiatrist was much broader than merely performing podiatric surgery.

A.   **The job Dr. McCulloch was actually performing at the time she submitted her claim included her duties as both "director" and "internist."**

It is undisputed that the job Dr. McCulloch was performing at the time she submitted her disability claim included dual roles. The terms of her employment were set forth in two written contracts. Under the first contract, she was hired by JFK Medical Center as the director to help create and manage a comprehensive women's health center. Exh. D-5010. Under the second contract, she was employed by Primary Care Medical Associates,[1] a primary care practice group affiliated with the JFK Medical Center. Exh. D-5009. The contracts called for her to dedicate approximately 30 hours per week to the Women's Center, and at least 16 hours per week to the clinical practice. Exh. D-5010.0011. Dr. McCulloch's contract for the Director position set forth a "Description of Director of Women's Health Center Services to be Performed" (D-5010.0011 through 0013), while her contract for the internist position set forth a "Description of Services to be Performed Internal Medicine Physician" (D-5009.0012 through 0014).

Like the plaintiffs in *Klein* and *Brumer*, Dr. McCulloch's duties included both clinical and non-clinical components. Under a "fact-oriented, functional approach," the Court should look to the *actual* job in which she was regularly engaged, and its concomitant duties, in determining the extent of her disability. It is undisputed that Dr. McCulloch's occupation included dual roles as both an internist and an administrator of a women's clinic. Her employment agreements called for her to dedicate fully two thirds of her time to the "director" component of her occupation. Therefore in determining whether she is disabled, the Court should determine the extent to which Dr. McCulloch is capable of performing the material and

---

[1] P.C.M.A. was the assignee of McCulloch's employment agreement, originally with H.C.M.S., Inc.

substantial duties of this dual-role job. That inquiry is facilitated by the fact that these duties are enumerated in her employment agreements.

## II. DR. MCCULLOCH IS "TOTALLY DISABLED" UNDER THE POLICY ONLY IF SHE IS UNABLE TO PERFORM *ANY* OF THE MATERIAL AND SUBSTANTIAL DUTIES OF HER DIRECTOR/INTERNIST POSITION.

### A. The Policy insures against two types of disability.

The Policy insures against both "total disability" and "residual disability." "Total Disability" means:

    (a) As a direct result of injury or sickness the member is unable to perform the material and substantial duties of the member's occupation as it existed at the time the disability began; and

    (b) The member is not working in any gainful occupation; and

    (c) The disability began while this insurance was in force; and

    (d) The member is under the regular and direct care of a licensed physician other than a person in the member's family.

"Residual Disability" is separately defined. It means:

    (a) The member is able to do:

        (i) Some but not all of the substantial and material duties of the member's regular occupation or profession; or

        (ii) All of the substantial and material duties of the member's regular occupation or profession, but for less than full-time; and

    (b) The member is working and the member's earnings do not exceed 80% of the member's indexed pre-disability earnings.

Exhibit P-2 at Bate No. H2376.[2]

---

[2] Exhibit numbers refer to Plaintiff's ("P-#s") and Defendants' ("D-#s") admitted thus far at trial.

B.  **"Total Disability" means inability to perform any of the material and substantial duties of the claimant's occupation at any time.**

The policy language at issue in this case has been consistently interpreted to mean that the claimant is unable to perform "any" of the material and substantial duties of the claimant's occupation; that is, the disability prevents the claimant from performing all of the occupation's duties, not just "some" of them. *E.g., Bond v. Cerner Corp.*, 309 F.3d 1064, 1068 (8th Cir. 2002); *Russell v. Paul Revere Life Ins. Co.*, 288 F.3d 78, 82 (3d Cir. 2002); *McOsker*, 279 F.3d at 588.

This interpretation is driven by the principle that courts should give effect to the entire contract. In order to give effect to provisions regarding "Partial" or "Residual" disability, "Total" disability must mean something different. *See Bond*, 309 F.3d at 1068; *Ellis*, 394 F.3d at 272 (plaintiff's interpretation of "disability" as inability to perform any one of material and substantial duties of his occupation would improperly meld definitions of "disability" and "partial disability" into one and negate the difference between eligibility prerequisites for total disability and those for partial disability); *McOsker*, 279 F.3d at 588 (policy language similar to language at issue here interpreted to mean insured claiming partial disability must show he could not perform *some* of important duties of his occupation, while insured claiming total disability benefits must show he was unable to perform *any* of the important duties of his occupation; any other construction would have made it impossible to give effect to both parts of contract); *Yahiro v. Northwestern Mut. Life Ins. Co.*, 168 F. Supp. 2d 511, 517-18 (D. Md. 2001) (plaintiff's argument that he was totally disabled unless he could perform "all the substantial and material acts necessary to the performance of his former occupation" effectively eliminated partial disability provisions contained in his policies because policies clearly envisioned that where insured is unable to perform one or more but not all of his principal duties he is partially disabled rather than totally disabled); *Dym v. Provident Life and Accident Ins. Co.*, 19 F. Supp. 2d 1147,

1149-50 (S.D. Cal. 1998) (noting that comparison of definitions of total and residual disability contained in policy suggested that phrase "you are not able to perform the substantial and material duties of your occupation" cannot reasonably be read as "you are not able to perform one or more of the substantial and material duties of your occupation" because if such a reading was intended, the language "one or more" would have been used, as it was in residual disability definition); *London v. Berkshire Life Ins. Co.*, No. 00-CV-078, 2002 WL 31677037 (N.D.N.Y. Oct. 7, 2002) (cardiologist who was still able to see patients, administer stress tests, conduct pacemaker clinics, and generally do his office work was not totally disabled within the meaning of the policy). In sum, to recover benefits for total disability, Dr. McCulloch must show that she is unable to perform *any* of the duties of her occupation.

### D. Residual Disability cannot be converted to "total disability" by the claimant's election not to work.

Under the Policy, a claimant must meet four requirements to recover benefits for residual disability: (1) the claimant is not totally disabled (i.e., is able to do some, but not all, of the substantial and material duties of the occupation, or is able to do all of the duties part-time); (2) the claimant is under the care of a physician; (3) the claimant is working; and (4) the claimant is making less than 80% of pre-disability earnings. Exh. P-2 at H2376. However, Plaintiff maintains that one who is "residually" disabled in essence can attain "total" disability status merely by insuring that her income does not exceed 20% of her pre-disability benefits, under the "Residual Disability Benefit" provision on page 7 of the policy. *Id.* at H2378. Plaintiff's strained interpretation of the contract would permit the residually disabled insured to simply "elect" total disability without regard to true work capacity.[3]

---

[3] Plaintiff's "alternative" theory of residual disability was first voiced in the parties' exchange of the proposed joint stipulation of disputed facts and law, apparently in response to Defendants' assertion that she must

As set forth above, "Total" and "Residual" disability are mutually exclusive conditions. *Potter v. Liberty Life. Assur. Co.*, 132 Fed. Appx. 253 (11th Cir. 2005); *Takacs v. Guardian Life Ins. Co. of Am*, 2004 WL 1260109 at *6 (D. Minn.). Under the terms of the Policy, to receive Total Disability benefits, the claimant cannot be working in any gainful occupation. On the other hand, to qualify for Residual Disability benefits under the Policy, the claimant must be working. *See Russell*, 288 F.3d at 82. The policy contemplates that the residually disabled claimant "will continue to work, in some capacity, in his or her occupation." *Russell v. Paul Revere Life Ins. Co.*, 148 F. Supp. 2d 392, 404 (D. Del. 2001), *aff'd*, 288 F.3d 78 (3d Cir. 2002). If the claimant can perform *some* of the material and substantial duties of her occupation, then she cannot qualify for Total Disability benefits. *See Falik v. Penn Mut. Life Ins. Co.*, 204 F. Supp. 2d 1155, 1157 (E.D. Wis. 2002).

A claimant may not simply choose not to work and collect full disability benefits, when the evidence shows she can perform some of her occupation's duties. *See Russell*, 288 F.3d at 82. In that case, the court held that a plaintiff who elected not to work, but who could perform some of the important duties of his occupation, was not entitled to any benefits under either partial or total disability, as he was neither totally disabled nor working as required by the policy to receive residual disability benefits. *See also Conway v. Paul Revere Life Ins. Co.*, 2002 WL 31770489 at *10 (concluding that where evidence revealed plaintiff was capable of performing heavy manual work, although he had not worked at gainful employment for ten years, he was not

---

show she is unable to perform any of the duties of her former occupation any of the time in order to qualify for total disability benefits. Even if Plaintiff's proffered interpretation of "residual disability" made sense (it does not), she cannot recover under this theory in this action, as this claim was never submitted to the Defendants. *See Walters v. Monarch Life Ins. Co.*, 57 F.3d 899, 905 (10th Cir. 1995) (court refused to instruct on residual disability where both parties sought an all or nothing resolution to the dispute; defendant insurer denied liability, and plaintiff sought only full total disability benefits).

totally disabled from performing all of the duties of his occupation as a furniture mover/truck driver).

Plaintiff argues that if she can perform "some but not all" of her former occupational duties but is not, in fact, performing them, then the Court should read the "residual disability benefit" provision to entitle her to total disability benefits. This strained construction would swallow the total/residual distinction whole. Even in a residual disability situation, the claimant's loss of earnings must be a function of incapacity, not election.

By: _____
BARRY A. CHASNOFF (CT11162)
ROBERTA J. BENSON (CT24407)
JESSICA S. TAYLOR (CT24408)
AKIN GUMP STRAUSS HAUER & FELD L.L.P.
300 Convent Street, Suite 1500
San Antonio, Texas 78205
Telephone: (210) 281-7000
Telecopier: (210) 224-2035

AND

Donald E. Frechette (ct 08930)
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103
Phone: (860) 525-5065
Facsimile: (860) 527-4198

ATTORNEYS FOR DEFENDANT
HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY AND
EDUCATORS MUTUAL LIFE
INSURANCE COMPANY

## CERTIFICATION OF SERVICE

This is to certify that on the 19th day of April, 2006, a copy of Defendants' Brief on Total Disability and Residual Disability was hand delivered to:

Eliot B. Gersten
Gersten & Clifford
214 Main Street
Hartford, CT 06106

Roberta J. Benson