UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CANDI McCULLOCH<br>Plaintiff, | : CIVIL ACTION NO. 301CV1115(AHN)<br>:<br>: |
| vs. | :<br>: |
| HARTFORD LIFE AND ACCIDENT<br>INSURANCE COMPANY AND EDUCATORS<br>MUTUAL LIFE INSURANCE COMPANY<br>Defendants. | :<br>:<br>:<br>: JANUARY 30, 2006 |

### BENCH BRIEF IN SUPPORT OF PLAINTIFF'S
### OBJECTION TO ADMISSION OF SURVEILLANCE VIDEO

As the Court aptly observed, surveillance video is not the same as a photograph:

"People who make their living by doing surveillance have an incentive to find something favorable to the party employing them. Video cameras can be selectively turned off and on. Tapes can be edited or altered, and advancing technology will make alternations harder to detect . . . the person operating the video camera ought to be exposed to cross-examination under oath."

Cirillo v. Davis, 732 So.2d 387, 388-389 (Fla.App. 1999) (holding that, where defendant hired investigator to conduct surveillance, and investigator's employee conducted the surveillance – defendant could only authenticate the video by presenting the testimony of the employee, and the trial court erred by admitting the video based on the testimony of the investigator, who did not conduct the surveillance himself – notwithstanding that the plaintiff did not dispute that she was depicted in the video.); See also See The Barnes Foundation v. The Township of Lower Merion, 982 F.Supp. 970, 996 (E.D.Pa. 1997) (witness who did not have first hand knowledge, could not

1

authenticate recording by simply stating that he was "so informed by the reporter," because the reporter's statement was hearsay.)

The law in this circuit is in accord: because "recordings are likely to have a strong effect" on the trier of fact "and are susceptible to alteration, the Second Circuit requires their authenticity to be established by **clear and convincing evidence**." Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd., 262 F.Supp.2d 251 (S.D.N.Y. 2003) (emphasis added). In determining whether this burden has been met, the Court should consider whether there is evidence:

> (1) that the operator of the device was competent to operate the device;
>
> (2) that the recording is authentic and correct;
>
> (3) that changes, additions or deletions have not been made in the recording;
>
> (4) that the recording has been preserved in a manner that has been shown to the court;
>
> (5) that the individuals subject to recording are identified; and
>
> (6) that the conduct elicited was made voluntarily and in good faith, without any kind of inducement.

In re Hunter Studios, Inc., 164 B.R. 431, 437-438 (E.D.N.Y. 1994), citing, U.S. v. Silker, 751 F.2d 477, 500 (2nd Cir. 1984); See also Mirabile v. The New York Central Railroad Company, 230 F.2d 498, 500 (2nd Cir. 1956) (holding trial court did not commit reversible error in admitting video surveillance of plaintiff because, among other things, "they were properly identified **and verified by the testimony of the private investigator on the stand at the time of their offer**.") (emphasis added).[1]

---

[1] Although Hunter involved a sound recording, similar standards apply to video recordings. See e.g. F.R.C.P. 30(b)(4) which requires the videographer of a deposition to certify his or her qualifications, the conditions under which the video was taken, including the absence of techniques that would alter the appearance of the deponent on the tape, and that the video is a true and accurate depiction of the deposition. The authority cited by defendants is not

In this case, while plaintiff has identified herself in the video, this is but one element of the necessary authentication. Plaintiff has not attested that the video was properly taken, or that the video is a fair and accurate portrayal of her activities on the days in question. Neither Mr. McGoldrick nor anyone at Hartford, has the personal knowledge necessary to attest to these facts. Hartford hired an outside vendor to conduct the surveillance. Ms. Gabrielson, the Hartford employee who ordered the surveillance testified that Hartford gave the vendor complete discretion to turn the video on and off and also to edit the video prior to sending it to Hartford. Specifically, Ms. Gabrielson, testified in her deposition as follows:

Q: When you send out a surveillance tape, do you send it out – or when you send out for surveillance to have a videotape done, do you send out any specific guidelines as to how you want it done?

A: I send out an assignment. And that should be part of what you got in production.

Q: And do you give any guidelines, as to recording without interruption?

A: I have to think for a minute, because we're talking three years ago. Let me make sure that I understand your question. **The video recordings that we receive may not be the complete videos.** There may be portions that are not pertinent, **in the vendor's opinion** . . . So the originals of those complete total – *whatever they recorded* – are with the vendors. **I only know what I'm given, as far as what I can see . . . It may not been depicted on video, is what my answer to you is.**

Gabrielson Depo., pp. 251:21-252:22. Accordingly, Ms. Gabrielson has disclosed that Hartford employees (a) do not know whether the vendor's taping was a fair, complete and accurate

---

to the contrary. In Carter v. The City of New York, to which defendants referred this Court, the District Court for the Southern District of New York held that the defendants' counsel had properly authenticated the photographs and videotape by showing them to "deponents" with personal knowledge, who verified that the photos and videos were an accurate depiction of the events on that day.

3

depiction of plaintiff's activities during the time of the surveillance, and (b) do not know whether the vendor provided *Hartford* with a fair, complete and accurate depiction of even the selected activities that the vendor chose to tape.

In fact, in this action, the tapes Hartford initially provided to plaintiff out of its files, were incomplete and had been edited. A few years later, Hartford provided plaintiff, for the first time, with a longer, but now digitized, version of the videotape, which Hartford represented it obtained after plaintiff alleged that the tapes had been edited. Plaintiff has no information regarding how or from whom Hartford obtained this new version of the videotape, the manner in which it was kept and maintained during the many years after the surveillance was conducted and before Hartford provided it to plaintiff, whether the vendor turned the tape on and off during taping, or whether any custodian of the tape during the long passage of time otherwise manipulated the tape.

In Penguin Books, supra, the Court held that certain recordings were not admissible because, among other things, the chain of custody was unclear, the integrity of the transcript of the recording had not been established, and the authenticating witnesses "had no knowledge as to whether or not the tapes had been, or could have been edited or altered," and "could not testify as to the integrity of the tapes and in fact noted that the tapes had been started and stopped in a number of places, leading to the conclusion that the tapes were not integral and complete." Id., at 264. In this case, the authenticating witness also cannot establish any of these factors and, moreover, the facts in this case provide a serious basis to question the authenticity of the proffered videos. Accordingly, plaintiff respectfully requests that, as in Cerillo and Penguin, supra, the Court preclude the video surveillance in this case.

4

Dated: April 20, 2006

                                        PLAINTIFF,
                                        CANDI MCCULLOCH

By: _____

Aviva Cuyler
Fed. Bar No. ca185284

Eliot B. Gersten
Fed. Bar No. ct05213
GERSTEN, CLIFFORD & ROME
214 Main Street
Hartford, CT 06106
(860) 527-7044

Her Attorney

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was hand-delivered on April 20, 2006 to all counsel and pro se parties of record, as follows:

Roberta J. Sharp, Esq.
Barry A. Chasnoff, Esq.
Akin Gump Strauss Hauer & Feld, LLP
300 Convent Street, Suite 1500
San Antonio, TX 78205
*Tel: 210-281-7146*
*Fax: 210-224-2035*

Donald E. Frechette, Esq
Joshua L. Milrad, Esq.
Charles F. Gfeller, Esq.
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103
*Tel: (860) 525-5065*
*Fax: (860) 527-4198*

Aviva Cuyler